UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA J. HAMAMA, et al.,

        Petitioners,                    Case No. 17-cv-11910

vs.                                              HON. MARK A. GOLDSMITH

REBECCA ADDUCCI,

        Respondent.
_____/

## OPINION AND ORDER STAYING REMOVAL OF PETITIONERS PENDING COURT'S REVIEW OF JURISDICTION

This matter is before the Court on Petitioners' motion for temporary restraining order and/or stay of removal (Dkt. 11). Petitioners, all of whom are Iraqi nationals subject to final orders of removal, were detained on June 11, 2017 and informed of their imminent repatriation. They filed a habeas corpus class action petition (Dkt. 1) and now seek a temporary restraining order and/or stay of removal until the appropriate body determines whether they are entitled to withholding or deferral of removal in light of changed country conditions. Because the Court is unsure whether it has subject-matter jurisdiction, the Court stays the Government's execution of Petitioners' final orders of removal pending the Court's jurisdictional determination.

### I. BACKGROUND

On June 11, 2017, over 100 Iraqi nationals, including Petitioners, were arrested and detained by agents of the United States Immigration and Customs Enforcement ("ICE"). Youkhana Decl., Ex. B. to Pet. Mot., ¶ 4 (Dkt. 11-3). These individuals are all subject to final orders of removal, some decades old, after being convicted of various crimes, see Salman Decl., Ex. C. to Pet. Mot., ¶¶ 8-9 (Dkt. 11-4); Valk Decl., Ex. D to Pet. Mot., ¶¶ 3, 8 (Dkt. 11-5); Nissan Decl., Ex. E. to Pet. Mot., ¶¶ 4-5 (Dkt. 11-6). Despite the orders of removal, Petitioners had been

1

permitted to reside in their communities under orders of supervision. Hab. Pet. ¶ 2. According to Petitioners, the Government was unable to execute the orders of removal because of Iraq's refusal to issue travel documents for repatriation and, in some cases, for humanitarian reasons. Id. ¶¶ 29-30. Repatriation became possible recently when Iraq agreed to issue the requisite travel documents in exchange for being removed from the list of countries set forth in Executive Order 13780, issued March 6, 2017. Id. After their arrest, the vast majority of Petitioners were transferred to the Northeast Ohio Correction Center in Youngstown, Ohio where they face imminent removal to Iraq.[1] Id. ¶ 37.

On June 15, 2017, Petitioners filed this habeas corpus class action petition, seeking, among other relief, an order enjoining the Government from removing them to Iraq without first providing them an opportunity to demonstrate that, in light of changed country conditions, they would face persecution, torture, or death, if removed to Iraq. The relief would extend to all members of the class, defined as "all Iraqi nationals within the jurisdiction of the Detroit ICE Field Office, with final orders of removal, who have been, or will be, arrested and detained by ICE as a result of Iraq's recent decision to issue travel documents to facilitate U.S. removals." Id. ¶ 43. Petitioners state that because of their having resided in the United States and their status as religious minorities – many are Christian, others are members of oppressed Muslim sects – they are likely to be persecuted, tortured, or killed by members of the Islamic State in Iraq and Syria, the de facto government in many parts of Iraq. Id. ¶¶ 1, 32, 34.

Petitioners argue that they are eligible for relief from removal under both the Immigration and Nationality Act ("INA") and the Convention Against Torture ("CAT"). See id. ¶¶ 20-24

---

[1] The Government informed the Court at oral argument that some Petitioners have since been transferred to facilities in Louisiana and Arizona. The Government stated that it intends to begin removals as early as June 27, 2017.

(citing 8 U.S.C. § 1158(b)(1)(A) (providing asylum for refugees); 8 U.S.C. § 1231(b)(3) (barring removal to country where alien's life or freedom would be threatened); 8 C.F.R. § 208.16(c)(2) (implementing regulation for Convention Against Torture)).  Petitioners also argue that the Government is violating the Fifth Amendment's Due Process Clause by failing to give them the opportunity to be heard regarding Iraq's changed conditions prior to removal.  Id. ¶ 57.

Petitioners now move for a temporary restraining order and/or stay of removal, arguing that they are likely to succeed on their statutory and constitutional claims.  They also argue that they are likely to suffer irreparable harm in the form of persecution, torture, or death, while the Government may only suffer a brief delay in removal proceedings.  Finally, Petitioners argue that a temporary restraining order or stay is in the public interest because the public benefits from a fair immigration system.  The Government defends against the motion solely on the basis of a lack of jurisdiction, the complexity of which issue is discussed below.

## II. ANALYSIS

In its response, the Government does not address the merits of Petitioners' INA, CAT, or Due Process claims, or any of the other factors the Court must consider in determining whether to issue a temporary restraining order.  Instead, it argues that the REAL ID Act, 8 U.S.C. § 1252, divests this Court of subject-matter jurisdiction.  The pertinent section states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  This section, according to the Government, ousts the district court of any jurisdiction over removal orders, leaving review only with the court of appeals.  See 8 U.S.C.

3

§ 1252(a)(5) ("a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal.").

Petitioners argue that the statute is inapplicable where, as here, it would not have been possible to assert these claims by petition for review in the court of appeals, or where the individual is not directly challenging his removal order. Petitioners note that their claims could not have been raised in the courts of appeals at the time their removal orders were issued, because the changed country conditions in Iraq did not arise until well after issuance. Further, Petitioners argue that they are not directly challenging the removal order. They assert that the REAL ID Act only divests district courts of jurisdiction to review the Attorney General's discretionary actions – not actions based on mandatory duties, which Petitioners claim are at issue here, as they allege fear of death and torture if returned. If the REAL ID Act does divest this Court of jurisdiction over their claims, Petitioners argue that the act violates the Constitution's Suspension Clause, because it suspends the right to a writ of habeas corpus without providing an adequate and effective alternative means of review.

In light of these complex jurisdictional issues, and the speed with which the Government is moving to remove Petitioners, it is necessary to stay Petitioners' removal pending the Court's determination regarding its jurisdiction. It is well-settled, as the Government concedes, that a court has jurisdiction to determine its own jurisdiction. Derminer v. Kramer, 386 F. Supp. 2d 905, 906 (E.D. Mich. 2005) ("A court always has jurisdiction to determine its jurisdiction."). The Government also agrees that a court may stay the status quo until it can determine whether it has jurisdiction. See United States v. United Mine Workers of Am., 330 U.S. 258, 290 (1947) ("[T]he District Court unquestionably had the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction."); see also Am. Fed'n

of Musicians v. Stein, 213 F.2d 679, 689 (6th Cir. 1954) ("[T]hese and other questions going to the jurisdiction of the district court to entertain the case were grave and difficult, and justified the district court in its issuance of the preliminary injunction in order to reserve its decision on jurisdiction to a time when, after a hearing, adequate study and reflection would be afforded properly to interpret and apply the law."). These principles have been applied in the immigration context. See 3/1/2007 Order, Kumar v. Gonzales, No. CV 07-003 (W.D. Mich.) (order staying proceedings until jurisdiction determined in federal habeas case).

Case law does not expressly address whether the traditional factors for issuance of preliminary relief – success on the merits, irreparable harm, balance of harms, and public interest – should be addressed as part of a decision to maintain the status quo while jurisdiction is explored. At least one court has issued a stay order in the immigration context without articulating or applying the other factors. See id.

Even assuming such factors are relevant to the instant decision, a proper consideration of them counsels issuing a stay. Irreparable harm is made out by the significant chance of loss of life and lesser forms of persecution that Petitioners have substantiated. Such harm far outweighs any conceivable interest the Government might have in the immediate enforcement of the removal orders, before this Court can clarify whether it has jurisdiction to grant relief to Petitioners on the merits of their claims. The public interest is also better served by an orderly court process that assures that Petitioners' invocation of federal court relief is considered before the removal process continues. Finally, it is true that the likelihood of success on the merits – whether defined as winning the jurisdiction issue or the right to modification of the removal orders – cannot yet be determined. But no one factor is dispositive; rather, all factors are to be balanced. Hamad v. Woodcrest Condo. Ass'n, 328 F.3d 224, 230 (6th Cir. 2003). Given that the other factors clearly

favor a stay, the present indeterminacy of the merits does not undermine the conclusion that a stay is appropriate.

### III. CONCLUSION

For the foregoing reasons, the Court stays the Government's execution of Petitioners' final orders of removal pending the Court's determination regarding whether it has subject-matter jurisdiction. The stay extends to Respondent Adducci, Field Office Director for the Detroit District of ICE, and any other federal officials and personnel involved in the removal process. The stay applies to the removal of Petitioners and all members of the class, defined as all Iraqi nationals within the jurisdiction of the Detroit ICE Field Office with final orders of removal, who have been, or will be, arrested and detained by ICE, including those detained in Michigan and transferred outside of Michigan to other detention locations. The stay shall expire 14 days from today, unless otherwise ordered by the Court.

SO ORDERED.


Dated: June 22, 2017  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
  United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 22, 2017.

s/Karri Sandusky
Case Manager

.