UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA J. HAMAMA, et al.,

        Petitioners,                        Case No. 17-cv-11910

vs.                                                HON. MARK A. GOLDSMITH

REBECCA ADDUCCI, et al.,

        Respondents.
_____/

## OPINION & ORDER
## GRANTING PETITIONERS'/PLAINTIFFS' MOTION TO EXPAND ORDER STAYING REMOVAL TO PROTECT NATIONWIDE CLASS (Dkt. 36)

This matter is before the Court on Petitioners/Plaintiffs' ("Petitioners") motion to expand the order staying removal of Iraqi nationals subject to the jurisdiction of the Detroit Field Office of Immigration and Customs Enforcement ("ICE"), so as to protect a nationwide class of Iraqi nationals regardless of which ICE Office may have jurisdiction over them (Dkt. 36). For the reasons set forth below, the Court grants a stay of execution of the final removal orders pertaining to the expanded class members until the Court can determine whether it has subject matter jurisdiction over any portion of Petitioners' claims.

## I. BACKGROUND

Although the underlying factual background is fully set forth in the Court's June 22, 2017 Opinion and Order (Dkt. 32), the Court will briefly recite the facts pertinent to the instant motion.

On June 15, 2017, Petitioners filed a habeas corpus class action petition in which they stated they are among over 100 Iraqi nationals, each subject to final orders of removal and located within the jurisdiction of the Detroit ICE Field Office, who were arrested and detained by ICE on June 11, 2017. Hab. Pet. ¶¶ 2-4. Petitioners were then transferred to federal facilities in Michigan,

1

Ohio, Louisiana, and Arizona where they await removal to Iraq. Id. ¶ 3. In their petition, Petitioners stated they were eligible for relief from removal under both the Immigration and Nationality Act ("INA") and the Convention Against Torture. Id. ¶¶ 20-24 (citing 8 U.S.C. § 1158(b)(1)(A) (providing asylum for refugees); 8 U.S.C. § 1231(b)(3) (restricting removal to country where alien's life or freedom would be threatened; 8 C.F.R. § 208.16(c)(2) (implementing regulation for Convention Against Torture)). Petitioners also alleged violations of the Fifth Amendment's Due Process Clause. Id. ¶ 27.

On the same day, Petitioners filed a motion for a temporary restraining order and/or stay of removal, arguing that their removal should be enjoined until the appropriate body could determine, based on changed country conditions, whether they are eligible for relief under the CAT and/or the INA (Dkt. 11). In its response, the Government asserted that the REAL ID Act, 8 U.S.C. § 1252, divests this Court of subject-matter jurisdiction. After hearing oral argument, the Court issued an order staying Petitioners' and original class members' removal for 14 days so that the Court can determine whether it has subject-matter jurisdiction. See 6/22/2017 Op. & Order.

Two days later, Petitioners filed an amended habeas petition and class-action complaint on behalf of an expanded class, defined as "all Iraqi nationals in the United States with final orders of removal, who have been, or will be, arrested and detained by ICE as a result of Iraq's recent decision to issue travel documents to facilitate U.S. removal." Am. Hab. Pet. ¶ 62 (Dkt. 35). This class includes roughly 1,444 individuals nationwide, of whom approximately 85 have been detained and face removal as early as tomorrow, June 27, 2017. Id. ¶¶ 3, 6. They are located in different states, including Tennessee and New Mexico. Id. ¶ 8. The new pleading also adds as respondents/defendants Thomas Homan, acting national director of ICE, and John Kelly, Secretary of the United States Department of Homeland Security, in their official capacities.

2

With the new pleading, Petitioners filed an emergency motion to stay removal of members of the expanded class, arguing that the expanded class members face the same "imminent dangers" that face those whose removal is stayed by the current order. See Pet. Br. at 2 (Dkt. 36). The Government opposes expanding the order, arguing that a Sixth Circuit decision on the "immediate custodian rule" disposes of this motion, and that subject-matter jurisdiction is lacking.

As explained below, the Court rejects the Government's first argument, and it suspends judgment on the second as it continues to explore whether it has subject-matter jurisdiction to grant any portion of the relief Petitioners seek.

## II. ANALYSIS

The Government contends that the Sixth Circuit's decision in Roman v. Ashcroft, 340 F.3d 314 (6th Cir. 2003), addressing the "immediate custodian rule" is dispositive, mandating a denial based on lack of personal jurisdiction over the added parties. "Pursuant to the immediate custodian rule . . . a detained alien filing a habeas corpus petition should generally name as a respondent the person exercising daily control over his affairs." Id. at 320. This individual is generally the ICE district director for the district where the alien is detained. Id. The rule is grounded in the habeas statute's provision that a writ of habeas corpus should be directed "to the person having custody of the person detained." Id. at 319 (quoting 28 U.S.C. § 2243).

However, the Sixth Circuit recognized that the rule had a safety-valve exception to ensure that the constitutionally protected right to habeas corpus is not extinguished in exceptional circumstances: "Under certain extraordinary circumstances it may be necessary to depart from the immediate custodian rule in order to preserve a petitioner's access to habeas corpus relief." Id. at 325. The court in Roman found no exceptional circumstances in that case, where the petitioner named the Attorney General as his custodian and failed to file his action in the federal court

3

embracing the district where he was actually detained. The court rejected the petitioner's argument that the heavy backlog of the court where he was detained should excuse him from filing there and excuse him from naming his immediate ICE custodian. The court reasoned that even if he were removed before the petition was acted on, he could still proceed to litigate the habeas issue from foreign shores. Id. at 327 ("Roman will not be deprived of his opportunity to seek habeas corpus relief even if he is removed prior to a court's resolution of his petition.")

Our case could not be more different. The substantiated allegations made here are that detainees face extraordinarily grave consequences: death, persecution, and torture. See, e.g., Heller Decl., Ex. D to Pet. Reply (Dkt. 30-5). The first consequence obviously eliminates any possibility of pursuing habeas rights; the latter two severely impede it. The Roman petitioner faced nothing of the sort. When, as here, habeas rights may be forever foreclosed, it is myopic to contend that removals to locations that allegedly are lawless in the extreme do not present extreme circumstances.

The Government seeks solace in certain statements the Roman court made, which, upon examination, provide no support for the Government's position. It is true that the Roman court pointed to intentional government efforts to conceal a detainee's whereabouts in another case, Demjanjuk v. Meese, 784 F.2d 1114 (D.C. Cir. 1986), as an example of "exceptional circumstances," but the Sixth Circuit did not say that intentional government misconduct is a prerequisite for overriding the immediate custodian rule. And although the court stated that the "mere possibility of successive transfers" of detainees would not qualify as exceptional circumstances, it said nothing about whether substantiated transfers of detainees that impede the attorney-client relationship of detainees and prevent even obtaining signatures on necessary papers to file motions to reopen proceedings – as Petitioners allege here, see Reed Decl., Ex. B. to Pet.

4

Reply, ¶ 12 (Dkt. 30-3) – would come within that rubric. In sum, the court said nothing applicable to the circumstances of the instant case; and it expressly eschewed providing any overarching guidance on what would constitute exceptional circumstances. Roman, 340 F.3d at 326 ("[T]his court need not decide the appropriate scope of the extraordinary circumstances exception to the immediate custodian rule as a general matter.").

Because Petitioners have demonstrated extraordinary circumstances, the immediate custodian rule does not apply. Thus, personal jurisdiction is not lacking over the newly added respondents/defendants.

In any case, Petitioners have also styled their amended pleading as embodying or including a civil complaint. The immediate custodian rule has no application outside of the habeas context, as the Government concedes. But it argues technical defenses against the complaint, such as a lack of personal jurisdiction because the complaint has not been served. Petitioners dispute the lack of service, claiming that the newly added parties were served by certified mail, and that the United States Attorney's Office was notified by email.

Formal service is not a prerequisite to issuance of temporary relief. The rules of civil procedure envision emergencies requiring immediate court action before formal service can be accomplished. See Fed. R. Civ. P. 65(b)(1) (providing for temporary restraining order without notice). Here, even if formal service has not yet been accomplished, notice was given in writing to the new parties and the attorneys representing them. Any lack of service is no bar to temporary relief.[1]

---

[1] The Government also claims that the class has not been certified. But it offers no case prohibiting a TRO protecting class members while jurisdiction is being determined.

That leaves subject-matter jurisdiction as the Government's last arrow in its quiver. But the indeterminacy of that issue is precisely why this Court issued the initial TRO. And what was said in support of the issuance of that TRO supports the instant order. The same grave consequences face the expanded class, which establishes irreparable harm. Such harm far outweighs any interest the Government may have in proceeding with the removals immediately. And once again, the public interest is served by assuring that habeas rights are not lost before this Court can assess whether it has jurisdiction in this case.[2]

### III. CONCLUSION

For the foregoing reasons, the Court grants Petitioners' motion to expand the order staying removal to protect nationwide class (Dkt. 36). The stay extends to Respondents Adducci, Homan, Kelly, and any other federal officials and personnel involved in the removal process. The stay applies to the removal of Petitioners and all members of the class, defined as all Iraqi nationals in the United States with final orders of removal, who have been, or will be, arrested and detained by ICE as a result of Iraq's recent decision to issue travel documents to facilitate U.S. removal. The stay shall expire 14 days from today, unless otherwise ordered by the Court.

SO ORDERED.

Dated: June 26, 2017  s/Mark A. Goldsmith
    Detroit, Michigan  MARK A. GOLDSMITH
                                    United States District Judge

---

[2] The Government contends that by seeking to file a nationwide class action in this district, Petitioners have engaged in forum-shopping. The Government notes that the expanded class claims were added only after a stay has already been granted by this Court to the initial, more limited class of Detroit ICE detainees. But Roman offers no support for a defense based on forum-shopping. In that case, the concept of forum-shopping was discussed as part of an explanation for the rationale for the immediate custodian rule. However, the Government has presented no case where forum-shopping has been held to be a relevant factor when other facts – such as those present here – establish extraordinary circumstances. In any event, counsel for Petitioners plausibly indicated at oral argument that time and lack of information regarding the locations of members of the expanded class, not forum-shopping, led to the successive filings of petitions.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 26, 2017.

                                            s/Karri Sandusky
                                            Case Manager