<pre>
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3

 4   USAMA J. HAMAMA, et al,

 5        Petitioners and Plaintiffs,

 6   -v-                                  Case No. 17-cv-11910

 7   REBECCA ADDUCCI, et al,

 8        Respondents and Defendants.
     _____/

 9

10                  IN-PERSON STATUS CONFERENCE

11         BEFORE THE HONORABLE MARK A. GOLDSMITH

12        Detroit, Michigan, Thursday, July 13th, 2017.

13

14
     APPEARANCES:
15
     FOR THE PETITIONERS:     MARGO SCHLANGER
16                            ACLU FUND OF MICHIGAN
                              625 South State Street
17                            Suite LR910
                              Ann Arbor, MI 48109
18

19   FOR THE PETITIONERS:     MIRIAM J. AUKERMAN
                              American Civil Liberties Union
20                            1514 Wealth Street, SE
                              Grand Rapids, MI  49506
21

22   FOR THE PETITIONERS:     MICHAEL J. STEINBERG
                              ACLU FUND OF MICHIGAN
23                            2966 Woodward Avenue
                              Detroit, MI  48201
24

25
</pre>

```
 1    (Appearances, continued):

 2    FOR THE PETITIONERS:      KIMBERLY L. SCOTT
                                MILLER, CANFIELD
 3                              101 North Main Street
                                7th Floor
 4                              Ann Arbor, MI  48104

 5
      FOR THE PETITIONERS:      WENDOLYN W. RICHARDS
 6                              MILLER, CANFIELD
                                150 West Jefferson Avenue
 7                              Suite 2500
                                Detroit, MI  48226-4415
 8

 9    FOR THE PETITIONERS:      NORA YOUHKANA
                                FIEGER, FIEGER, KENNY & HARRINGTON
10                              19390 West Ten Mile Road
                                Southfield, MI  48075
11

12    FOR THE PETITIONERS:      WILLIAM W. SWOR
                                615 Griswold Street
13                              Suite 1120
                                Detroit, MI  48226
14

15    FOR THE RESPONDENTS:      WILLIAM C. SILVIS
                                U.S. DEPARTMENT OF JUSTICE
16                              Civil Division
                                P.O. Box 868
17                              Ben Franklin Station
                                Washington, DC  20044
18

19

20    David B. Yarbrough, CSR, RMR, FCRR
      Official Court Reporter
21    (313) 234-2619

22

23

24

25
```

TABLE OF CONTENTS

                                                                    PAGE

WITNESSES:


















EXHIBITS

NONE

```
 1          Detroit, Michigan.

 2          Thursday, July 13th, 2017.

 3          At or about 1:38 p.m.

 4                    --    ---    --

 5          THE CLERK OF THE COURT:  Please rise.  The United

 6   States District Court for the Eastern District of Michigan is

 7   now in session, the Honorable Mark Goldsmith presiding.  You

 8   maybe seated.  The Court calls case number 17-11910, Hamama

 9   versus Adducci.  Counsel, please state your appearances for the

10   record.

11          MS. SCHLANGER:  Margo Schlanger for the petitioners,

12   your Honor.

13          MS. AUCKERMAN:  Miriam Auckerman for the petitioners.

14          MR. STEINBERG:  Michael J. Steinberg for the

15   petitioners.

16          MS. SCOTT:  Kimberly Scott for the petitioners.

17          MS. RICHARDS:  Wendolyn Richards for the petitioners.

18          MS. YOUHKANA:  Nora Youhkana on behalf of the

19   petitioners.

20          MR. SWOR:  William Swor on behalf of the petitioners.

21          MR. SILVIS:  William Silvis, the Department of

22   Justice on behalf of respondents.

23          THE COURT:  Okay.  Good afternoon, everyone.  All

24   right, we are conducting a conference in this case following

25   the Court's ruling on jurisdiction and I asked for the
```

1   attorneys to confer on the next steps and also asked them to

2   submit letters to me which they did and I received them and

3   reviewed them, thank you.

4          I understand that the petitioners/plaintiffs, I'll

5   just call them petitioners, want to file a motion for

6   preliminary stay of removal and/or preliminary injunction.

7   They also want discovery.  They had made earlier requests for

8   accelerated discovery and I had deferred ruling on that until I

9   could issue an opinion on jurisdiction.

10         The question that I have initially for petitioners is

11  to understand better what petitioners want to cover in their

12  motion for stay and/or preliminary injunction because I want to

13  know how it relates to the discovery that they're asking for,

14  so Ms. Schlanger, are you going to go?

15         MS. SCHLANGER:  I am, your Honor.

16         THE COURT:  Okay.

17         MS. SCHLANGER:  As far as what we're going to cover

18  in the next filing, in some ways we'd like to cover the parts

19  that you think haven't been covered yet, but what our plan is

20  is to brief the CAT claim and the due process claim so that

21  we're actually briefing the merits of the case which you

22  haven't gotten to, so that's the plan and how it relates to

23  discovery --

24         THE COURT:  Let me stop you and I'm sorry to

25  interrupt you, but I want to understand when you say brief the

1  merits of the CAT claim, let me understand what you would be

2  doing when you say you're going to brief that.  Are you going

3  to apply whatever legal principles are to facts that apply

4  generally to all class members or are you going to get into

5  specifics about this particular class member or this particular

6  group versus another group?  They're not all the same.  They

7  come from different backgrounds.  They have different religions

8  in some cases or different affiliations with the United States

9  or different circumstances that may impact them differently, so

10  tell me what you mean by briefing those issues.

11       MS. SCHLANGER:  Yes, your Honor.  So we're definitely

12  not planning on briefing the individual CAT claims of

13  individual petitioners.  That was not our plan.  Our claim, the

14  claim for emergency or preliminary relief at this point is

15  that, umm, that CAT and the INA and due process require enough

16  time, a meaningful opportunity to raise real claims and so we

17  want to give you enough that you agree with us that those are

18  real claims and so the idea is to brief in a general way the

19  way that CAT works and the way that motions to reopen and stays

20  work under the applicable immigration law so that you

21  understand why continued, a continued district court stay of

22  removal is necessary to protect people's rights that they get

23  under the statute and under the Constitution.  So and you're

24  absolutely right as well that the circumstances for the

25  different class members may be different.  We don't think

1   they're all that different just to be clear, that's why we

2   think a class is appropriate, but to try to understand at least

3   a little bit of that is the very reason, this gets to the

4   discovery question you asked, is the very reason why we at

5   least want to know who are these people and how long have they

6   been here, just to get a really basic idea of what this class

7   looks like.  These are questions that are relevant to how their

8   immigration cases are going to proceed and therefore relevant

9   to whether they need the time that we're asking you to give

10  them and those facts about the different dates of their final

11  orders of removal and so on, those are the facts that, at each

12  of the hearings so far on this case, you've asked a little bit

13  about and the government has shared with you some tallies

14  overall on that stuff and we're not able to, umm, we're not

15  able to present that information to you.  We, we, we don't know

16  that we agree with the way the government is framing it and

17  bucketing the different, you know, last time they said well

18  there are, I don't remember what the number was, but there are

19  X number that have been here since 2010.  Well, that's not --

20  we don't think 2010 is an operative date, but we don't have the

21  information to present to you in a different way than that, so

22  that's both what the claims, how we hope to present the claims

23  and also what the discovery has to do with it.

24          THE COURT:  Okay.  Let me get very specific with you

25  then.  Do you want to know what percentage of the class has

1    orders of removal that predate a certain year?  Do you want to

2    see a distribution over years?  I mean, what would you be

3    presenting to me in a motion for preliminary injunction?

4         MS. SCHLANGER:  We asked to see actually just a list

5    of the class member and the year of their final order of

6    removal so that we could decide what the best way to present it

7    is, but a distribution over years is likely to be the kind of

8    thing that we want.  No, we'd rather see it than pick an

9    arbitrary cut-off and the cut-off might be different for

10   different kinds of, I mean, again the overall claim is that

11   they've got changed country conditions that matter, but for the

12   Chaldeans when those changed country conditions might be a

13   little different than for the Sunni Muslims and so if we can

14   get a list of who they are and their A numbers, we'd have some

15   hope of being able to figure out, you know, a little bit

16   thicker detail something to present to you.  We're -- just to

17   be clear, we're prepared to go forward without it, but we think

18   it would be better to have it.

19        THE COURT:  Okay.  Tell me other important facts as

20   they relate to the motion you want to file.  You mentioned

21   dates of removal orders.  What other facts would be important

22   for your motion as you see it?

23        MS. SCHLANGER:  We've asked for the transfer history

24   of the members of the class as well so that we can understand

25   what their obstacles have been up to today, so that's another

```
1   fact that we wanted and we've also asked for their current
2   detention location.  Again, if, umm, we can find out from the A
3   number, we can find out what court they were in when they, umm,
4   when they received that final order of removal.  There's a way
5   to look that up using a 1-800 number, so we can take a list of
6   the A numbers and figure out what the court is, but if we have
7   their current detention location, we can figure out how far
8   apart those are which, again, goes to the issues that they're
9   facing.
10           THE COURT:  When you say how far apart they are, what
11   do you mean by that?
12           MS. SCHLANGER:  Well, for example a person whose
13   immigration court for the final order was here in Detroit, but
14   who's currently being detained in New Mexico has a quite
15   different situation than a person who is being detained in
16   Saint Clair County, so we're trying to understand that piece of
17   it as well.  So that's -- we also asked for the criminal
18   history, not for all the criminal history because the
19   government informed us that getting a really full, a full
20   assessment of the criminal history, they might be able do it
21   from materials in their possession, but they don't have it in a
22   way that's readily accessible and we said okay, just give us
23   the parts that are readily accessible.  That allows us to
24   assess a little bit.  It gives us a head-start on assessing
25   some of the availability of, you know, are they still eligible
```

1    for asylum and what not, those kinds of things, and so we said

2    okay, only give us the part that's in a database, like that's,

3    that's it, and so, I'm just looking.  We had also asked for

4    their contact information, their home --

5            THE COURT:  I'm sorry, let me just ask you to step

6    back.  On the criminal history, how does that relate to the

7    motion?

8            MS. SCHLANGER:  It again relates to what kinds of

9    underlying entitlements they have in the immigration court.  I,

10   I want to say that given that ICE can't give us a full criminal

11   history, this has become a little bit less important for us.

12   When we thought that we could get the full criminal history

13   from ICE, then we could do an analysis of it and really

14   understand people's underlying, umm, if they were disqualified

15   from asylum for example, if they were not disqualified from

16   asylum.  Given that ICE now tells us that they can only readily

17   give us a partial criminal history, it does, you know, to be

18   frank, it undermines the usefulness, but we still think it's a

19   head-start on getting some of that analysis done and that puts

20   them in a stronger possession for the relief.

21           THE COURT:  Well, but for right now for purposes of

22   a preliminary injunction, if there's an incomplete history,

23   does that mean we're not able to tell whether anybody is

24   disqualified or how many are disqualified under the statutes?

25           MS. SCHLANGER:  It means we'll be able to tell that

1    some are disqualified, but we won't -- we'll know some of the

2    yeses, but we won't, yes you're disqualified and that's a

3    little bit backwards, excuse me.   We'll know some of the no,

4    you can't have asylum, but we won't know if the yeses are

5    solid.   So it may be that given that that's incomplete, it

6    recedes somewhat in its usefulness.

7           The other, we gave up on the idea of getting the

8    emergency contact information.   That would have told us

9    people's home city and enabled us to reach out to their family

10   more easily, but ICE told us that it would really be very,

11   very -- I'm sorry, I don't mean ICE, the Department of Justice

12   told us that for ICE, that would be very difficult and given

13   the emergency, the expedited request, we've receded on that as

14   well.   So what we have left is only information that's relevant

15   in the way that I just explained and only information that's

16   computerized that they can produce with relative ease.   They,

17   umm, they say it's divided into two buckets; one that they can

18   really produce right away and one that will take about a week

19   and I believe although you can ask the government that they may

20   have already gotten started so that that week may have started

21   yesterday.

22           THE COURT:   Okay.   Now one question that's raised by

23   the letters is what, what timetable should we be using.   The

24   government takes the position that any order that goes beyond

25   July 24 will be deemed a preliminary injunction, whether it's

1    called that or not and I think you take a different view based

2    on your letter, but let's say I were to agree with the

3    government on that point, what would be your recommendation

4    then as to how we should proceed?

5            MS. SCHLANGER:  Right.  If you agree with that point

6    that the order becomes an appealable preliminary injunction on

7    the 25th, you can really do one of two things.  You can say

8    okay, great, like go appeal it and we can all go up to the

9    Sixth Circuit on jurisdiction plus a stay that is extending

10   past 28 days or you can set a reasonable briefing schedule for

11   a PI and then it's up to the government whether they appeal or

12   not and we, we'll probably argue on appeal that it's not an

13   appealable order, the case law, you know, it depend on things

14   like, well, is the district court moving expeditiously?  It's

15   not -- it's not -- it's not so bright-lined that we know what

16   the Sixth Circuit is do with that, we just don't, but it could

17   go up on appeal or we can do a PI and it's up to the government

18   whether they appeal.

19           THE COURT:  So in that event, if I agree with the

20   government regarding any order beyond the 24th, what is your

21   preference?  Is your preference that I set a preliminary

22   injunction briefing schedule that allows for more time for this

23   discovery to be supplied and go beyond the 24th and in the

24   interim, I would issue some kind of order that would maintain

25   the status quo?  Is that your preference or, or not, or would

1    you rather have less of an opportunity for discovery, a bit

2    more accelerated briefing schedule and have the Court issue

3    some order by the 24th?

4         MS. SCHLANGER:  We're prepared to do it either way,

5    your Honor, and we can, we're --

6         THE COURT:  You want to consult?

7         MS. SCHLANGER:  I think I do want to consult, so give

8    me one second.

9         THE COURT:  Go ahead.  Go back to your corners.

10        (Pause)

11        MS. SCHLANGER:  Your Honor, we're not at all

12   proposing a long, drawn-out briefing schedule.  That's not --

13   so sometimes PIs can take months to get to and that's not what

14   we're proposing, but, umm, I guess what -- I shouldn't say I

15   guess because I'm telling you the answer.  What we prefer is

16   either to have a clean order that goes up on the 24th or to

17   have a little bit longer than that to give to you with a

18   reasonable briefing schedule fuller information.  We wouldn't

19   need a lot longer, but we would need a little bit longer.

20        The discovery that we're talking about, the first

21   Tranche of it I think the government's prepared to give us in a

22   matter -- I mean, again you'll have to ask them, but my

23   impression is that we could get the names and the A numbers and

24   the detention locations nearly right away.  We are -- we do

25   have an ongoing dispute about the non-detained individuals.  I

1    don't think that dispute is about timing, but whether we should

2    get it at all.  We think that given that we've made allegations

3    about a broader class that could be detained, that we should be

4    able to get all of that, but it's as urgent a need.  So we

5    could brief it next week and you could set a reasonable

6    briefing schedule after that and it wouldn't be the 24th, but

7    it wouldn't be long after the 24th or you could go forward on

8    the 24th with just an extended, an extension to the TRO that

9    lasts long enough TO do that.

10            I should say two things.  The first is the most

11   important thing to us is the stay of removal for our clients.

12   That's, I mean, that's the first priority because if that stay

13   gets lifted and they get deported, then all the relief that

14   we're seeking in this case is gone and they are in harm's way

15   so that's the most important thing.  The second thing that I

16   should say is that I think if you grant, if you extend your

17   existing emergency order, it has to be extended pending

18   something and the thing it would be pending would be a PI and

19   whether they appeal or not is really up to them, but it would

20   be extended pending a PI.

21            THE COURT:  All right.  As far as legal issues that

22   you wanted to brief, you mentioned the CAT or the ina merits

23   issues.  Are there other legal issues you want to brief?

24            MS. SCHLANGER:  The due process clause, your Honor.

25            THE COURT:  All right and anything else?

1      MS. SCHLANGER:  Umm, I guess there's the, you know,

2  the issues that have to do with the appropriateness of the

3  relief, I mean, just that that entitles us to a stay, but that

4  there's not much to that.  It's, you know, it's the balance of

5  the equities.  There will be sections in the brief that talk

6  about the balance of the equities, but there's not much to it.

7  You've already made some findings in that regard.

8      THE COURT:  Now in terms of the relief that you'd be

9  asking for, it's not crystal clear from the earlier submissions

10  exactly what petitioners are asking for, if they're asking for

11  a restraint on enforcement up until class members file a motion

12  for reopening or until the immigration courts rule or until an

13  a petition for review is filed in the Court of Appeals or until

14  the Court of Appeals rules?  So I'd like you to fine tune for

15  me what exactly is the relief?

16      MS. SCHLANGER:  Thank you, your Honor.  So the relief

17  that we're asking for is a stay of removal, a stay of the

18  execution of removal until the petitioners have had an

19  opportunity to get through the immigration court system; that

20  is to say for many of them that's just the BIA, but for some of

21  them it's the immigration court plus the BIA and have an

22  opportunity to file the petition review.  Once they filed a

23  petition for review or have the opportunity and decline to file

24  it, then there's robust stay practice in the Court of Appeals

25  and the stay is no longer necessary, but there's not a robust

```
 1    stay practice in the immigration court system and so the stay
 2    is necessary during that adjudication.
 3            For those members of the class who choose not to
 4    seek any kind of immigration, additional immigration court
 5    relief, they've had the opportunity -- well, they haven't had
 6    it yet, but once they've had the opportunity and they say okay,
 7    I'm done, then that's -- they've had the relief that we're
 8    seeking.
 9            THE COURT:  So there'd have to be some kind of time
10    limit.  They'd have X number of days to file a motion for
11    reopening.
12            MS. SCHLANGER:  Right.
13            THE COURT:  And if they didn't, then the injunction
14    would terminate as to them.  Is that part of what you're --
15            MS. SCHLANGER:  Yes, as long as --
16            THE COURT:  -- seeking?
17            MS. SCHLANGER:  As long as the time -- as long as
18    they've had a chance to consult with counsel and so if for
19    example and I don't mean that this is happening, but if it did
20    happen that a person was moved every three days during the
21    period leading up to the time limit so that they've never been
22    in one place to actually have a consultation with counsel, then
23    that wouldn't be right, but for a person who's stable in one
24    place and we're working very hard to connect all of these
25    people with counsel, then yes, we would anticipate that there
```

1    would be a time limit and if they get to the end of the time

2    limit and they say we're done or to be honest, if in a

3    voluntary and knowing way before that time limit they say we're

4    done, then they're done.

5         THE COURT:  I assume they can always say I don't want

6    the benefit of the injunction, I'm ready to be repatriated, I

7    assume we could easily provide for that.

8         MS. SCHLANGER:  I think so if it's voluntary and

9    knowing, yes.

10        THE COURT:  Okay.  Now I --

11        MS. SCHLANGER:  I'm sorry, I --

12        THE COURT:  Go ahead.

13        MS. SCHLANGER:  -- but that's on starting the process

14   up, right?  Once the process is started up, it's completely out

15   of the petitioner's control and it's actually in EOIR's control

16   which is a part of the justice department how fast those cases

17   get adjudicated.  They could get adjudicated quite speedily or

18   it could take longer.  That's really an EOIR question.  It

19   doesn't -- we just have nothing.  We have no way to influence

20   that.

21        THE COURT:  All right.  So, again, just working this

22   out conceptually, the class members would have X number of days

23   to file their motions for reopening with the immigration court.

24   If they did that, the injunction would continue as to them.  If

25   they didn't, it would terminate, you said subject to them

```
 1   having had an opportunity to get counsel and not being moved
 2   around which is something that would have to be explored, too,
 3   because it would seem to me that you'd have to be able to craft
 4   this injunction in a workable way with fairly objective rules
 5   that one could apply.  Otherwise, we're going to be faced maybe
 6   with having to decide on a case-by-case basis is the injunction
 7   removed for this person or isn't it based on were they moved
 8   around and deprived of an opportunity to have an attorney, but
 9   let me put that aside for just a minute.  Assuming they did
10   apply or that it ss they filed their motions for reopening, the
11   injunction would continue until the period for appeal to the
12   Court of Appeals had expired or they had applied for a
13   petition; that is, they had filed a petition?
14           MS. SCHLANGER:  That's right or as you said until
15   they knowingly and voluntarily say okay, I'm done.
16           THE COURT:  Okay.
17           MS. SCHLANGER:  I -- in terms of the workability,
18   your Honor, again the government knows better than we do where
19   everybody is, but our understanding is that the bulk of them
20   are in two facilities and that, that ought to make that a
21   little bit easier.  They were moved around quite a bit up until
22   now and perhaps, I don't know, the government plans to further
23   consolidate and move people a bit more, but our impression is
24   that something between 180 and 200 are in two facilities and
25   we're told by the government that there are 220 all tolled, so
```

1    and we know of about 11 in county jails in Michigan.  So doing

2    the math, I mean, again this is information that we've

3    requested and haven't, you know, you haven't order for us yet

4    and so it's all subject to being, to confirmation and so on,

5    but we don't think they're in so many facilities that the

6    moving around part is likely to be a big workability problem,

7    but we don't know that for sure.

8            THE COURT:  And what is your position on how much

9    time they should receive to file their motions for reopening?

10           MS. SCHLANGER:  For the people who are, umm, who

11   already have counsel, I would think another month -- it is very

12   hard to know and my colleagues are telling me that I'm giving

13   away the store.  Certainly two months would be enough and we'd

14   have to think a little bit about, about how much that would be.

15           For the people who are far away from their home

16   cities in detention right now and don't have counsel and so

17   what that mostly means is the people in Florence, Florence,

18   Arizona who are mostly not from Michigan and who we believe

19   mostly don't have counsel, but we don't know that for sure yet

20   and especially for that 10 or 20 or it could be 30 who are in

21   other facilities that we haven't been able to make contact with

22   them in, the clock is in some ways kind of starting now and

23   they're back at the six weeks, eight weeks kind of time that

24   we've stated from the beginning is kind of what people need to

25   get this done even when they're really racing, but they just

```
 1    haven't been able to get started yet, but, but we're working at
 2    it very hard and in Florence, we hope that that can start
 3    moving very soon and in the other facilities, we're really,
 4    umm, we don't even really know where they all are.
 5              THE COURT:  Okay.  Is there anything else you want to
 6    tell me.
 7              MS. SCHLANGER:  I have a couple little details on
 8    things, but would you want to -- I mean, they're not very
 9    central.  We could do them at the end or I can tell you what
10    they are now.
11              THE COURT:  Well, don't leave me in suspense.  Tell
12    me what these details are.
13              MS. SCHLANGER:  All right, so we have a pending
14    redaction order that has a mistake in it.  It skipped one of
15    the relevant documents that needs redacting.  I believe it's
16    document 38.
17              MS. SCOTT:  I think it's going to be a little bit
18    earlier.
19              MS. SCHLANGER:  Okay.  We'd have to look up the
20    number, sorry, but there's one document that was skipped in
21    that and it's got A numbers in it and so we'd like to add it to
22    the redaction order.
23              THE COURT:  Okay.
24              MS. SCHLANGER:  We're hopeful that the Court can give
25    us a little more in terms of the page limit.  If you wanted to
```

1  discuss that, of course we can do that out of court, too, and

2  finally there is one person who we know of who was a very

3  recent entrant to the United States.  He came here in February

4  and he has counsel and he's in detention and -- February, 2017

5  just to be clear.  He's in detention and his family is in Iraq.

6  They've actually already been deported to Iraq and so they're

7  waiting for him there and he, he would like while we're working

8  out this whole process, he would like to, umm, to not be

9  covered by the stay.  I don't think either we or the government

10 have any objection to that and so we'd like to just take care

11 of that one person.

12          THE COURT:  All right.  Can't you prepare an order

13 that you both can agree about?

14          MS. SCHLANGER:  I think so, your Honor, yes.

15          THE COURT:  Okay.  All right, is that it?

16          MS. SCHLANGER:  That's it.

17          THE COURT:  All right.

18          MS. SCHLANGER:  Umm, I believe the missing item is 39

19 and 17?  I thought 17 was on it.  If 17's not on the redaction

20 order, then it's 17 and 39.

21          THE COURT:  Just a minute.

22          (Pause)

23          THE COURT:  All right.  I'm told 17 is on it and that

24 you had not asked for 39?

25          MS. SCHLANGER:  Yes, 39 is the one that we --

1          THE COURT:  That's the one you wanted?

2          MS. SCHLANGER:  Correct and -- oh, we've asked for

3      various pieces of the information that we've requested to be

4      updated on the kind of approach that you've just sketched out

5      about watching these cases move through the system, the updates

6      would be very helpful to us.  Obviously this is a discovery

7      thing to make sure that the system is working and that people

8      are in fact moving through, have they filed their MTRs and so

9      on and I think, I think this was clear, but just in case it

10     wasn't, if we were to file the PI motion, say Monday or

11     Tuesday, if we could get the, the discovery that we talked

12     about, say Monday.  I mean, just the very basic tranche of

13     discovery, we could include that in a PI motion that's filed

14     Tuesday maybe or Wednesday and then the government could have a

15     couple weeks to respond and we would have a week to reply and

16     then a hearing and that would be a reasonable PI schedule and

17     in the meantime if they chose to appeal, they chose to appeal.

18     I mean, that's really their decision.

19         THE COURT:  And would it be your view that this Court

20     could continue proceeding with that motion unless and until

21     the Court of Appeals said that we shouldn't go forward with it?

22         MS. SCHLANGER:  Yes.  Yes, your Honor.  That is, that

23     is our view.

24         THE COURT:  Okay.  All right.

25         MS. SCHLANGER:  Thank you, your Honor.

1            THE COURT:  Thank you.  Mr. Silvis?  I'm told 39

2     might be a summons so maybe we have the numbers wrong.  You'll

3     have to check that.  All right.  Mr. Silvis, go ahead.

4            MR. SILVIS:  Thank you, your Honor.  I think the

5     Court had earlier identified our, the government's position or

6     understanding on the PI scheduling and the order.  Our position

7     would be that at the 24th, the TRO becomes an appealable as a

8     PI, so what the government has done is proposed in its letter

9     to the Court the dates that, you know, a reasonable schedule by

10    which if the plaintiffs filed their PI motion and we responded

11    a week letter, the Court would have an opportunity albeit over

12    the weekend or that Monday to consider the motion for

13    preliminary injunction.  You know, whether the Court has

14    authority beyond that date to continue to entertain the PI, I

15    think that's a different, but at that point we could appeal if

16    that was a determination that was made.

17            THE COURT:  So is the government just opposed to

18    consenting to the extension of the period for the few weeks

19    that the petitioners are proposing for this initial limited

20    discovery and a little lengthier briefing period?  Is the

21    government just opposed to extending the stay?

22            MR. SILVIS:  Yes.

23            THE COURT:  Okay.  Now in terms of the discovery,

24    what exactly is it that the government's prepared to turn over

25    and what time table?  I want to be clear because I understand

```
 1    there's already been some perhaps gathering of information, you
 2    might be in a position to turn something over on an immediate
 3    basis and something that might be coming down the Pike a little
 4    bit later.
 5         MR. SILVIS:  Correct and if I'll allow me a
 6    preliminary just statement on that, I think initially on
 7    discovery or initial objection was just based on jurisdiction
 8    because we didn't have a lot of time.  I think the request for
 9    expedited discovery was filed like on the 28th and we, before
10    the weekend and they were asking for discovery the following
11    Monday, so initially we put together saying look, there's no
12    jurisdiction, the Court has to determine that.  Given more time
13    we probably would have added some additional objections.
14         That said, I think really with the discovery, I think
15    the concern is that and I think the Court's touched on this
16    with its earlier questions is how does it relate really to the
17    motion for preliminary injunction.  Most of the information
18    that would go to the CAT claim, CAT is something that can't
19    really be granted by this Court.  It's relief that has to go
20    through the procedure that Congress created for determining
21    these claims.  We would agree that the government couldn't
22    remove someone with a colorable CAT claim, but that claim is
23    determined in a whole different proceeding, a whole proceeding
24    that Congress put together through the immigration courts and
25    the PFR process and the people in case have already had access
```

1    to that process.  So bringing that and trying in some way to

2    say we're going to in a preliminary injunction brief the merits

3    of a CAT claim, I don't see how the Court's going to be able to

4    go through, say that the Court got criminal history or

5    information about removal orders, how that would in any way

6    determine, be an issue that this Court could decide on a

7    preliminary basis and it's certainly not going to be --

8            THE COURT:  So it's the government's view then I

9    shouldn't even be getting into whether the petitioners have a

10   good claim, may have a good claim.  You're saying that that's

11   just not anything that I should be taking into account in

12   assessing whether they're entitled to a preliminary

13   injunction?

14           MR. SILVIS:  Correct your Honor and frankly I think

15   it would be extremely difficult to do.  You'd have to do it on

16   a case-by-case basis.  That's a case-by-case determination and

17   I don't see, I mean, the system has been set up so that the

18   immigration courts do this for an individual person.  They have

19   an appeal to the BIA if they want to exercise that and the PFR

20   and for this Court at this point, other than being precluded by

21   doing it from statute, you'd be sitting there trying to decide

22   in an individual case on a preliminary basis that someone has a

23   claim or they don't.

24           I think there's been some mention, too, about the

25   length how hold some of these removal orders are and one

1    preliminary point I want to make on that is just I don't think

2    there's been any allegation or could be that an old removal

3    order couldn't be executed.  So just to clarify that point, I

4    mean, they may want discovery on the date of certain orders and

5    what there is, so, but it doesn't make the removal

6    nonexecutable.  They don't become stale in other words so it

7    may be an interesting fact or, you know, for a brief, but it

8    doesn't really have any legal implication for the TRO or

9    otherwise.

10              THE COURT:  So the distribution over years in the

11   government's view again is irrelevant to anything that I would

12   have to take into account in deciding a preliminary injunction?

13              MR. SILVIS:  Certainly on a PI.  There may be, there

14   could be an argument maybe that they would make in their CAT

15   claim about that, but it still wouldn't go --

16              THE COURT:  I'm sorry, they would make what?

17              MR. SILVIS:  In their CAT claim.  Maybe they could

18   say that they didn't apply earlier because at that time, but

19   again for this Court on a preliminary injunction basis, I don't

20   see how that would be useful to anything that they would be

21   briefing.  I think --

22              THE COURT:  What about the transfer history?  They

23   mentioned also they thought that would be relevant.  Does the

24   government think that's relevant to the issues that I need to

25   decide?

1           MR. SILVIS:  Certainly not to the CAT claim.  They,

2     they're making a claim of, a due process claim about access, so

3     I don't know that they're -- it's a little bit hard to tell

4     from what's been filed so far whether that the core of their

5     claim is that the procedure in place is in some way defective

6     like the immigration court by themselves can't issue stays or

7     are unwilling to issue stays.  I don't think we've had a lot of

8     facts development on that and I don't know if that's really the

9     underlying claim because immigration courts certainly can issue

10    stays.  If -- but if that was the claim, I mean, that's one

11    half.

12          The other claim seems to be access and I think that

13    would be what they're getting to with the due process, whether

14    it's sort of an as-applied that these individuals because

15    they're being transferred, umm, in some way don't have the

16    access.  I guess the government's position there would be that,

17    I mean, that would be more related to a due process claim, but

18    it sort of gets to the whole timing issue that's like really

19    running this case.  I mean, these are individuals that are

20    claiming from the time I've been detained I haven't had an

21    opportunity to have perfect access to counsel or that.  Whether

22    that's true or not which the government isn't agreeing to, we

23    would submit that the time leading up to the arrest, there was

24    no restriction so that would be, or any restriction you had

25    certainly wasn't because you were being detained in a facility.

1    You had an opportunity prior to that date to seek the relief

2    that you're trying to seek now.

3              THE COURT:  Well, there's already evidence in the

4    record about petitioners; that is, individuals who contend that

5    they have had difficulty and others have attested that there's

6    difficulty in terms of the maintenance of the attorney/client

7    relationship or actually securing one, so I understood the

8    petitioners wanting discovery on the movement to show how

9    extensive this was, but maybe what you're telling me is I don't

10   need to hear all of that because there already is evidence in

11   the record about that and the government is saying it doesn't

12   want to turn over more information about that, at least on a

13   very quick basis.  So is the extent of that kind of inference

14   not something that I need to consider now with a motion for

15   preliminary injunction?

16             MR. SILVIS:  There seems to be some declarations in

17   the record I believe that the Judge is referring to about some

18   of those problems being transferred so to some extent it's

19   already in the record.  I guess the preliminary point we would

20   have even on the due process claim is that we're looking at it

21   in a snapshot of time right at detention, right when you're

22   leading up literally to removal that you're claiming I don't

23   have enough time now, but what the government's position would

24   be is you certainly had enough, in all of these cases you

25   certainly had enough time leading to your arrest to have gone

1    through the procedure that now you're seeking to do on an

2    expedited basis, so to the extent there's some evidence already

3    in the record about that, I mean, the Court can consider it.  I

4    don't think -- but, you know, there's additional evidence.

5           I think what the parties attempted to do was to

6    narrow this in the event that the Court ordered some amount of

7    discovery so in good faith we've been going back and forth and

8    sort of narrowing those initial three interrogatories.  The

9    government's position is still that it's not relevant really to

10   underlying, that they don't need it for the preliminary

11   injunction, but and we're not agreeing per se to do it, but if

12   the Court view is that it's going to order the government to do

13   this, then we have worked on some criteria in narrowing of this

14   information and I think that's what counsel's referring to and

15   we've referred to it in our letter as well I guess.

16          THE COURT:  Okay, so the letters are not of record,

17   but that's why I'm trying to explore here now what the

18   government's prepared to do and it's kind of a bit of a moving

19   target because I know we're all moving very quickly here, so

20   what is it that the government can turn over in the immediate

21   future?

22          MR. SILVIS:  If ordered by the Court to provide

23   discovery on an expedited basis, we have been -- there's

24   certain information that includes name, A number, I don't have

25   the letter in front of me, I laid it out in the letter, but

1    it's name, A number, current detention location and I believe

2    date of birth and the letter's sort of what I have.  I can pull

3    it in front of me, but that's information that readily

4    available meaning it's in a database that week pull without

5    having to go to individual files.  Clearly there's more

6    complete information if we were to pull together records and

7    sit down and pull all that information together, but we would

8    be able to do that and we have some of that information

9    already.  Now what we've done is we've gotten some of this

10   information for detained individuals because base on

11   conversations with counsel, that was the real, you know, the

12   real need for that expedited basis.

13           THE COURT:  All right.  When you say expedited, now

14   can you give me a time actually?  Is it something you can turn

15   over by tomorrow?

16           MR. SILVIS:  For detained individuals, if we can get

17   the protective order in place, if ordered to do so we could

18   give them that information tomorrow.

19           THE COURT:  Okay and that's name, date of birth,

20   alien number, current detention location?

21           MR. SILVIS:  That's correct.  I can look at my

22   letter.

23           MS. SCHLANGER:  Here's your letter.

24           MR. SILVIS:  Oh, thank you.

25           MS. SCHLANGER:  You're welcomed.

1          THE COURT:  I was reading from the petitioners'

2    letter on page three.

3          MR. SILVIS:  And the parties have largely discussed

4    this already so I think that that's, I just didn't want to

5    over, and that's what it was, it was correct names, birth

6    dates, A numbers, current detention locations and we said

7    within two days.

8          THE COURT:  Okay, so by tomorrow.

9          MR. SILVIS:  If a protective order is entered, that

10   it could be done if ordered to do so.

11         THE COURT:  Okay.

12         MR. SILVIS:  The other information I need just to

13   make clear, there was more information about immigration

14   history and, umm, sort of whether the people were represented

15   and that's not information that we can, is readily available

16   just to ICE.  That requires cooperation with another government

17   agency and some amount of crosschecking on records, so again

18   that was something and that's a little different because that's

19   not a party to the -- that is not really a party to this case

20   and that's more, umm, you know, as an assistance to kind of get

21   this information if ordered to do so.  That should take a week,

22   but, umm, it's hard to say for certain 'cause we're not really

23   in control of that process.

24         THE COURT:  All right.  So the next phase, I just

25   want to know if we're on the same, literally on the same page

1   because I'm on page three of the petitioners' letter and they

2   talked about the dates of final orders of removal, motion to

3   reopen information and detention location history.  Is that

4   what you think could be furnished in the next phase?

5           MR. SILVIS:  Correct.

6           THE COURT:  All right.

7           MR. SILVIS:  But just as a qualifier, you know,

8   without seeing it in preliminary, I can't make any assertions

9   for sure, but we have a belief that that can be done within a

10  week.

11          THE COURT:  Within a week from today?

12          MR. SILVIS:  Yeah or tomorrow, but yes.

13          THE COURT:  Okay, a week from tomorrow, all right,

14  and that would also include readily-available attorney

15  information?

16          MR. SILVIS:  Correct, yeah, if it's readily

17  available, correct.  Now and just to be, to clarify, these are

18  the best efforts of the government to do so from databases.  I

19  mean, really to know for sure you'd have to go to record of

20  proceedings, you'd have to go to files that would have to be

21  pulled so this is again on an expedited basis for discovery, to

22  be very clear that we don't think is relevant to the PI, so I

23  want to make that very clear that we don't think that you need

24  to resolve that for the preliminary injunction.  It seems like

25  a lot of this information is really more related to maybe class

1    cert or identifying people so that they know information or

2    that they can get legal representation which I think is

3    slightly beyond the purposes of discovery for this case and the

4    issues raised here.

5           THE COURT:  What about the detention movement

6    history?  Where does that fit into this?  Is this part of the

7    second batch of information?  Or is that something --

8           MR. SILVIS:  Correct.

9           THE COURT:  Okay.  Now the criminal history, some of

10   that I was told was readily available.  Is that going to be

11   part of the first batch or the second batch?

12          MR. SILVIS:  The readily available criminal history

13   we're objecting to or not agreeing to produce -- to the extent

14   that we are, we're not agreeing to produce anything, but that's

15   a little problematic in the sense that that's not a field.

16   There is some information that would be readily available

17   there, but that's not information, my understanding it's not in

18   a mandatory field.  It's not information you would use to

19   decide, you know, the basis of a removal order or if whether,

20   you know, for a bond determination or anything like that.  It's

21   sort of a more voluntary field that may or may not include

22   complete information, so I think the concern there is that

23   whatever the government would provide in that would be relied

24   upon to say this person is eligible for something or isn't or

25   this person, you know, isn't a criminal or isn't, and --

1          THE COURT:  Well, it could definitely tell us if

2     somebody is ineligible, right?  It wouldn't necessarily tell us

3     whether that person is eligible because it's incomplete; is

4     that correct?

5          MR. SILVIS:  Yeah.  It's not going to be a criminal

6     record to the extent that you'd have a federal court conviction

7     or you'd have a state court conviction for something.  I mean,

8     it's not that.  You might have a statement saying so, but it

9     would just reflect an agent or someone who put some data in

10    there about it.  It's not, you know, necessarily complete

11    docket information about that so it's not really what's used by

12    ICE to make those calls.  It's more of a voluntary, it may be

13    entered, it may not and the concern there is that it would be

14    relied upon in a way that it shouldn't be.  And again I guess

15    it gets to the point if this Court really is in a disadvantaged

16    position to kind of make these CAT determinations or

17    eligibility and I think that it seems like it would only be

18    relevant to that and I don't know that the Court can sit here

19    without reviewing these on a case-by-case basis and make that

20    determination.  I mean, that's really the process that's been

21    set up for immigration judges and the Board to do in the first

22    instance and then, you know, on a PFR and the Court's not in

23    the best position to make those determinations.

24          And one point I want to make, too, about eligibility

25    is I don't and I invite plaintiff's counsel to correct me on

```
 1    this if I'm wrong, but when we're talking about eligibility, I
 2    think we're talking about eligibility for certain types of
 3    relief, but I don't think the government's say and they can
 4    correct if this is incorrect, but you would be ineligible for
 5    any relief; that, you may not be eligible for asylum because of
 6    a particular conviction or a criminal record, but that it still
 7    would be a prohibition against removing someone to a country
 8    where they would be tortured or persecuted and I think that
 9    that's, I mean --
10              THE COURT:  So you're saying there's no disability
11    for CAT purposes; is that right?
12              MR. SILVIS:  Right.  I mean, so there would be some
13    level of relief available to anyone based on criminal record so
14    it's even, even to the extent we're saying we want this
15    information to show what they should be eligible or ineligible,
16    that's not entirely accurate because within the ineligible and
17    eligible, I mean, anyone would be eligible for some level
18    whether it's deferral or some lower level, but I think it's the
19    big issue is I don't want to be sent back to a place where I'm
20    going to be, you know, killed, prosecuted, tortured.  I mean,
21    there's even going to be a bottom level protection for that.
22    And again, I invite plaintiffs' counsel if I'm misconstruing
23    that in any way to correct me on that 'cause that's not
24    something my office deals with on a daily basis, but that's our
25    understanding.
```

1          THE COURT:  Was there more that you wanted to say,

2     counsel?

3          MR. SILVIS:  I think we mentioned a little bit about

4     the procedure for dealing with those individuals.  I mean,

5     we're aware of several individuals I guess that are sort of no

6     longer -- they want to be removed or they no longer want to

7     fight, they want to be part of the injunction so it's a little

8     bit problematic in the sense that their counsel aren't

9     necessarily counsel here or aren't counsel here and there is

10    the injunction in place or the TRO kind of preventing removal,

11    but --

12         THE COURT:  Well, can't you work out an order that

13    says Mr. So and So is not subject to whatever orders have been

14    entered or will be entered in the Hamama case?  Would that

15    solve the problem?

16         MR. SILVIS:  I guess it would be a matter that if

17    there was some concern that there was any sort of knowing and

18    voluntary waiver or if they were represented by counsel that

19    aren't here, how that person's sort of, umm, acknowledgment of

20    their client wanting to return was recorded.

21         THE COURT:  Just file something on our docket I

22    assume.  If that person has an attorney you're saying?

23         MR. SILVIS:  Yeah or if they don't, I guess.  I mean,

24    if the Court had a procedure.  I guess you're sort of answering

25    my question by saying that if we file something on the docket,

1        the Court would consider it?

2                THE COURT:  Yes.  I would think that certainly if

3        that person's represented by an attorney, some consent could be

4        fashioned showing that that person consents to not being

5        subject to any of the orders in this case and explain that

6        he/she does not want to avail himself/herself of the benefit of

7        any order that's been entered staying enforcement of his/her

8        removal order.  I would think that would do the trick.

9                MR. SILVIS:  Okay.  So the government's spoken just

10       as I guess to the PI scheduling and our belief that the

11       discovery isn't necessary for the preliminary injunction and

12       that we're not agreeing to do it, but I just wanted to lay out

13       the framework sort of what's been discussed should the Court

14       order it, but ultimately we think that we could proceed on the

15       schedule that the plaintiffs initially requested which was that

16       they would brief their PI by tomorrow and that we would

17       respond, you know, a week later and that the Court would have

18       the time and that was the additional, that was the initial --

19               THE COURT:  You want us to work over next weekend?

20       Is that it?

21               MR. SILVIS:  That was -- we hope that wouldn't be

22       necessary --

23               THE COURT:  Tell me where I turn in my overtime slips

24       and my law clerks can turn in their overtime slips.

25               MR. SILVIS:  Well, ideally from our perspective, the

1    PI, the motion would have been filed earlier.  It would have

2    been filed within a few days of the TRO and we wouldn't be in a

3    situation where the TRO is running out and in that time, it

4    certainly could have been done.  I mean, it could have been

5    filed even if this Court were still considering jurisdiction,

6    the plaintiffs weren't barred from doing so.  So now we've run

7    into this sort of problem where the time is running out and we

8    would think from the government's perspective that cant really

9    be counted against us, so I think that, I mean, I think that,

10   and they have had information where they could file a PI, we

11   don't think the discovery is necessary for doing so and our

12   proposal is that they file the PI by tomorrow and then we file

13   a week later.

14          THE COURT:  In terms of the discovery regarding

15   non-detainees, is there something you want to tell me further

16   about that other than what's in your letter?

17          MR. SILVIS:  Yes, thank you, your Honor.  I didn't

18   want to miss that point.  In terms of the non-detainees, I

19   think that, I don't see the due process claim or how that's

20   relevant to the PI motion at all.  I mean, for the individuals

21   who aren't detained, it seems the core of this is that to the

22   extent there's any due process challenge here for those who are

23   detained, if, if -- that seems to be maybe the substance of

24   what the plaintiffs are claiming here that by being detained or

25   having some limited access to counsel or by being moved around,

```
 1    they're not able to adequately proceed on these motions to
 2    reopen, but for anyone who is not detained, they've now had a
 3    lot of time, I mean, and should have been on notice that not
 4    only for years has it been that you may be removed, but now
 5    there's this case and there's this nationwide sort of, so I
 6    don't understand why they would need additional information and
 7    there's not going to be any due process challenge there that
 8    they can't avail themselves.  I mean, it certainly wouldn't be
 9    related to detention so I don't see -- the government's
10    position is that wouldn't, shouldn't be part of this discovery
11    if ordered.
12           THE COURT:  Are there any issues the government plans
13    on raising in opposition to the motion that might be in the
14    nature of an affirmative defense along the lines of
15    jurisdiction which is what the government raised in opposition
16    to the initial motion for TRO/stay?  Is there some new issue
17    that the government may be raising that's going to take more
18    time to process?
19           MR. SILVIS:  It's a little difficult to know, your
20    Honor, without seeing the motion for preliminary injunction,
21    but just based on on sort of what we've heard today, I think we
22    would be arguing, again, we would be raising jurisdiction.  I
23    think we would be raising what I've mentioned before about I
24    guess whether there is relief that this Court could provide on
25    the CAT claim here in this court and then the jurisdictional
```

1    reasons why that claim doesn't belong here and we'd certainly

2    be, umm, I think again I guess without seeing it, it's hard to

3    determine, but really there would be some defense, too, of the

4    system in place that's been in place for years that the

5    plaintiffs in this case and putative class members could have

6    availed themselves of before their arrests.

7            THE COURT:  In terms of the jurisdiction point you're

8    making, is it going to be the same point you've made before and

9    that I've already ruled on?

10           MR. SILVIS:  I think we would just preserve that

11   argument.  I understand the Court probably doesn't want to see

12   lot on the same issue, I think we want to preserve the issue.

13   It would be related.  I think in addition and I know we made

14   these arguments, too, but I think we would hit on as well just,

15   you know, what the process that's in place and that's been set

16   up by Congress and that this is the review and really that, you

17   know, there's no CAT or INA claim here for certain and no

18   jurisdiction and, you know, even a due process claim is sort of

19   created by the lack of a I guess earlier protection of your own

20   interests by the plaintiffs.

21           THE COURT:  So if I'm understanding your position,

22   it's that the plaintiffs don't really need to brief a CAT issue

23   because you're saying I don't have to ultimately rule on it and

24   I don't have to look into my crystal ball and make a prediction

25   about how the immigration courts or how the courts of appeal

1    may decide this issue.  Do I have that right?

2              MR. SILVIS:  Yeah.  Respectfully, your Honor, I think

3    that's right.  I think it's inherently a case-by-case, umm,

4    evaluation or analysis for each person's situation based on

5    their own, you know, their own records, their own experiences,

6    you know, and that's something that this Court's just not

7    well-positioned to do.  That's why we have this process of

8    immigration courts and the Board and the PFR process, so I just

9    don't see how on a preliminary basis this Court could really

10   enter any information.

11             I mean, everyone's aware of the treaty obligations

12   and the limitations on removing, but I think the question is

13   what's the venue for deciding that.  I mean, that he why we

14   have an immigration court system because those individuals'

15   determination can be made on a case-by-case basis, so kind of

16   flooding this Court with CAT arguments, whether it would be if

17   they try to argue it across the board or even if they try to

18   bring it in on an individual basis, I think that that's not the

19   system we have for setting it up and certainly satisfies due

20   process to have multiple levels of review ending up in a PFR to

21   the Circuit Court.

22             THE COURT:  Well, if I were to agree with you that

23   the CAT arguments really belong in the immigration courts and

24   the courts of appeal and that the only role of this Court is

25   to, if I agree with petitioners, to allow an opportunity for

1     them to present those issues to those other forums, what's

2     really left to argue about that's in any way new in the motion

3     for preliminary injunction?

4             MR. SILVIS:  Presumably and this is their motion so I

5     can only speculate, presumably it would be an argument sort of

6     about the adequacy of the procedures in place and an argument

7     about I guess if in this particular case for this particular

8     group of individuals, if there is -- if there is some special

9     due process problem that wouldn't apply to the system as a

10    whole, but I'm purely speculating, it's their motion to file,

11    but I think that there have been allegations about not having

12    time, that with changed country conditions and not having time

13    and being detained, that that somehow leads to a special

14    problem for this group of individuals.  I mean, that's, but I

15    can only speculate on what they were argue, but that would

16    be -- I don't if that's necessarily new to this Court, but I

17    don't think it's been fully addressed in briefing and whether

18    that -- and whether there's anything this Court could do as a,

19    on a preliminary injunction or maybe a later permanent

20    injunction for that situation even if -- assuming a

21    constitutional violation were found which of course the

22    government would argue that there is none.

23            THE COURT:  All right.  Anything else?

24            MR. SILVIS:  No, your Honor.  Thank you.

25            THE COURT:  Okay.  Thank you.  Any reply?

1          MS. SCHLANGER:  Your Honor, we agree with the

2     government that the easiest place and for our clients, the

3     place that they want to get their claims adjudicated is in the

4     immigration court system.  As you said, we're just looking to

5     make that be possible and so that's, that's the basic claim.

6     So we're not asking you and not proposing to brief CAT in a way

7     that goes deeper than that into individualized circumstances.

8     We're just proposing -- I was very happy to hear the government

9     just now say that the government cannot remove someone who's

10    CAT eligible.  That's actually not quite what was said in court

11    two hearings ago where what was said was no, we can do whatever

12    and until they raise a claim, then there's nothing there.  So

13    we agree, the government has an independent obligation under

14    CAT not to remove people who are CAT eligible and we think that

15    the petitioner class has a lot of people who are CAT eligible

16    and they just need the time to get those claims made.

17          As far as -- and that they have a due process right

18    and a right under CAT to do that with the way that the MTR

19    system is set up, but that the current rush towards deportation

20    is thwarting both their statutory and their due process rights.

21          The -- the -- the issue of criminal history, as I

22    said once we've learned that what we would be able to get is

23    partial criminal history, it does become somewhat less valuable

24    to us.

25          The issue of the date of their final order of

1    removal, that's quite different actually because if as we think

2    it turns out that most of the class has a pretty old final

3    order of removal date, then the changed country conditions

4    argument becomes much less plaus -- much more plausible and so

5    we just want to be able to substantiate that.  Right now what

6    we've given you is individual information and our best

7    understanding of the general situation, but we'd like to give

8    you something more firm than that and so that's the discovery

9    issue.  I think that --

10              THE COURT:  Is sounds like that may not be available

11   for a week or, so right?

12              MS. SCHLANGER:  Yes and so we can get the A numbers,

13   one of the things that we can do actually is, umm, we might be

14   able to.  We haven't -- I don't know that this will work, but

15   there is this 1-800 number and we might be able to sit there

16   and call it 220 times and get the information and then we can

17   get it faster.  It won't be as accurate as what the government

18   gives us.  The system that's in that 1-800 system is a little

19   bit less good, but we will try once we get the A numbers.

20              So I think the only other point is that people who

21   have a knowing and voluntary, made a knowing and voluntary

22   decision that they don't want to pursue anymore process, it's

23   not quite the case that they're out from under -- it's not that

24   they're not a part of the injunction -- I mean, the TRO as

25   currently framed as it is, but the relief that we're asking for

```
1    overall, the point will be that they have received the relief
2    that we're asking for overall which is an opportunity to
3    present the claims that they have and once they've received
4    that opportunity, then they're done.  So the point isn't
5    exactly an opt out as much as a, like they've used their chance
6    and now they're done and so that's the way we conceptualize
7    that, but I do think we can probably work out with the
8    government an order that for people in that situation and have
9    counsel will work out fine and we don't know of any people who
10   don't have counsel currently where we really understand their
11   situation yet.
12           THE COURT:  Okay.  Is that it?
13           MS. SCHLANGER:  That's it.  Thank you, your Honor.
14           THE COURT:  That's it, okay.  All right, I want to
15   talk about something that's not of immediate concern, but we're
16   all here so I think it's something we should at least touch on.
17   There's another piece of your case, the detention issue.  When
18   were you planning on bringing that up?
19           MS. SCHLANGER:  If, umm, if people are able to get
20   their motions to reopen granted, it may be that at that point,
21   that there is no longer an immediate plan to deport them at
22   which point they might become eligible to, umm, for release
23   from detention, but it's a couple steps ahead and so we're nt
24   planning on bringing that up in a preliminary injunction kind
25   of a posture.
```

1          THE COURT:  All right.  So it's something you may not

2    even have to bring up or you'd be bringing up on an individual

3    basis or how would you --

4          MS. SCHLANGER:  Oh, no, I don't think we'd do it on

5    an individual basis.  If it develops that there's a, umm -- we

6    didn't want to leave it out of the prayer and have it happen

7    later that we had left it out of the prayer, it's not exactly

8    ripe until the case develops further.

9          THE COURT:  All right.  I want to go back to

10   something that was said in an earlier hearing.  It has do with

11   whether the immigration courts will issue a stay while this

12   Court's stay is in effect and I thought what I had heard before

13   was that it will not entertain a stay or it won't enter a stay

14   while there's another stay in effect?

15         MS. SCHLANGER:  It depends on the court your Honor

16   and that's why it's hard for us to know and it may be that the

17   government knows this better because they are, umm, you know,

18   ICE is party to all of those cases and they actually get all of

19   the orders, but the -- it is the BIA practice is to not

20   entertain a stay until there's an imminent departure date.

21   They don't actually tell the detainee that there's an imminent

22   departure date, but there are some hints that kind of get told.

23   They don't tell the detainee what the departure date is, but

24   there are some hints at which point the detainee's lawyer can

25   go to the BIA and seek a stay.  Our understanding is that the

1    BIA will not entertain, because of this Court's stay there are

2    not scheduled departure dates and that means that the BIA will

3    not entertain a stay.  The practice is not as uniform for the

4    immigration courts, so different IJs or maybe different

5    immigration courts may be, maybe it' consistent across the

6    courts, we're not exactly clear, but the practice in different

7    cities for different immigration courts seems to be a little

8    more varied.  So it's our understanding that some of the

9    petitioners have gotten stays.  Now some of those happened

10   before this Court's stay.  We think maybe some more have

11   happened since.  The government would know better, they're the

12   ones who are party to all of that, but I don't believe the BIA

13   is currently entertaining any stay applications and a lot of

14   the petitioner class is before the BIA and in lots of the

15   immigration courts, it appears they're not entertaining them

16   either, so that's the best I can do for you, I'm sorry.

17           THE COURT:  All right.  Does that impact anything we

18   have to deal with in this phase?

19           MS. SCHLANGER:  It's our position that the stay

20   process in the immigration courts and in the BIA is not a

21   satisfactory substitute for this Court's pause on the

22   execution of these removal orders; that that process is, umm,

23   uncertain and insufficient.  The process to entertain the

24   motions to re -- the motions to reopen proceeds according to

25   plan, but the stay process has many, many flaws.  So even if

1    the BIA and the immigration courts were entertaining stays, we

2    don't think that gets in your way and we think that your stay

3    should stay in effect, but in any event, they're not right now.

4    Many of them are not.

5              THE COURT:  Is that anything you're going to be

6    explaining in your forthcoming motion?

7              MS. SCHLANGER:  Yes.

8              THE COURT:  The other issue I wanted to raise is

9    class certification.  Where does that fit into our time table?

10             MS. SCHLANGER:  We'll file a class certification

11   motion a few days after the preliminary injunction motion.  If

12   the government argues or if you find that you need a class to

13   be actually certified before you can issue class-wide

14   preliminary relief, then the two become very intertwined.  If

15   that's not an assertion or a finding, then one can proceed

16   later than the other.

17             THE COURT:  Okay.  Anything else?

18             MS. SCHLANGER:  I don't think so, your Honor.

19             THE COURT:  All right.  Mr. Silvis, anything else?

20             MR. SILVIS:  May I be heard on one point, your Honor?

21             THE COURT:  Yes, go ahead.  You can be heard on two

22   points actually.

23             MR. SILVIS:  Thank you.  I appreciate it

24             THE COURT:  My midafternoon special.  After 2:30, you

25   get two points.

1          MR. SILVIS:  Two points.  I think it's two answers

2     and then questions about them.  Just to clarify, I think I was

3     very clear earlier and I didn't, umm, counsel brought up the

4     government's position about the CAT claims.  What I want to be

5     clear about that is everyone here, all these, the plaintiffs in

6     this putative class has already had that opportunity for relief

7     in immigration court.  Everyone's been through that process, so

8     the real question I think that's being presented here is sort

9     of the second bite of the apple, have circumstances changed and

10    what should they have done had that happened and whether the

11    system we have in place now is adequate I guess and that's

12    really the challenge, so I think you could always raise an

13    argument and that's really sort of the danger here that you'd

14    always raise an argument, you know, at the last minute after

15    you have a final removal order hey wait, you know, go run to

16    district court and say I should get preliminary relief because

17    I can't go through the system that's been set up before and

18    that's sort of the harm here.  I mean, there is a procedure for

19    deciding who gets relief in an immigration court and who does

20    not and it goes all the way up to the federal courts and U.S.

21    Court of Appeals and everyone here has already been or had

22    access at least to process so this is really about a second

23    bite at the apple and whether those individuals who now claim

24    that they might be entitled to something should have acted

25    earlier to do so and instead at the eleventh hour sort of

```
 1    saying hey, I need immediately relief from this Court and
 2    protection from this Court because that other process is
 3    inadequate and I think that's really sort of what's at stake
 4    here.
 5              I guess second, too, in terms of the immigration
 6    courts, I don't think that's something we can say and I don't
 7    know if that would even resolve the preliminary injunction
 8    concerning the stays.  I think we'll be ready to better address
 9    that in the PI briefing, but to some extent it seems that even
10    if courts were or were not, I think the plaintiffs here would
11    want your stay to continue because it's an ultimate umbrella
12    protection and that they don't even need the immigration
13    court's stay, but that sort of interferes with the process
14    that's already in place.  I mean, there is a procedure by which
15    you can get a stay, but whether courts are entering or not
16    based on this order, you know, I think that that's sort of a --
17    I guess we'll see more of that on the preliminary injunction
18    hearing, but, you know, that seems like sort of a side issue as
19    well.
20              THE COURT:  All right.
21              MR. SILVIS:  Thank you.
22              THE COURT:  All right, thank you.  All right, let's
23    do this.  We're going to take a 20 minute recess.  We'll come
24    back at, make it 3:15.
25              (Recess taken at 2:53 p.m.)
```

1              (Reconvened at 3:26 p.m.)

2          THE CLERK OF THE COURT:  Please rise.  Court is back

3    in session.  You may be seated.

4          THE COURT:  I'm going to give you my rulings now on

5    how we're going to proceed in this case regarding the

6    preliminary injunction motion that petitioners intend to file.

7    Based on what I've been presented with so far from the parties

8    on the issue of timetable, I believe it would be prudent to

9    work on the assumption that the government is correct that any

10   order extending the restraint on enforcement beyond July 24

11   would be deemed a preliminary injunction order, whether the

12   Court denominated it as such or not.  I'm not ruling the

13   government's correct, I'm just saying I'm going to proceed

14   under the assumption that it is correct.

15          I've looked at the case law and this hasn't been

16   definitively briefed for me by the parties, but based on our

17   own research as well as some of the cases that have been

18   presented, it appears that the government may well be correct.

19   I'll just point out Sampson v. Murray, 416 United States, 61, a

20   1974 decision.  The Supreme Court agreed with what the Court of

21   Appeals had said below in that case that a temporary

22   restraining order continued beyond the time permissible under

23   Rule 65 must be treated as a preliminary injunction.

24          The Seventh Circuit has said more recently in 2012 in

25   HD Michigan, LLC v. Hellenic Duty-Free Shops, SA, quote:

1          "When a TRO is extended beyond the 28-day

2          limit without the consent of the enjoined

3          party, it becomes in effect a preliminary

4          injunction that is appealable, but the

5          order remains effective."

6          End quote.  I think given that there is solid

7    authority that supports the government's position, that the

8    prudent course for the Court would be to establish a timetable

9    that would provide for this Court to issue an order no later

10   than the end of July 24 if in fact it's going to extend the

11   restraint and grant the petitioners' motion which of course is

12   something the Court is not intimating any inclination for it,

13   I'm simply pointing out that I think that is the operative

14   timetable.  If the Court were to grant it, that's the end point

15   for granting it.  Otherwise any order that would stay matters

16   beyond that and allow for more extensive briefing and a hearing

17   later beyond July 24, I think any order staying matters might

18   well be considered a preliminary injunction, so I think it

19   would be prudent to have us all conduct ourselves on the

20   assumption that 11:59, July 24, 2017 is the point beyond which

21   any continuation of the stay would be a preliminary injunction

22   order.  Now have I correctly stated the government's position

23   on that?

24          MR. SILVIS:  Yes, your Honor.

25          THE COURT:  Okay.  Now given that time frame then the

1    Court's going to operate under, the question really becomes

2    what is the appropriate discovery that should be ordered and

3    what briefing schedule should the Court establish.  Initially

4    the Court notes that the Court has rejected the threshold

5    argument that the government has made here that the Court lacks

6    jurisdiction, so it certainly appears at this point that the

7    case is continuing and that discovery would be appropriate in

8    principle.  The parties have conferred about what discovery

9    could be furnished on an immediate basis and while the

10   government is not consenting to furnishing this discovery, it

11   maintains its position of the Court not having jurisdiction and

12   has other arguments regarding discoverability, the Court

13   believes that requiring the government to produce the initial

14   batch of discovery by tomorrow is appropriate.  That includes

15   the full name, dates of birth, alien number and current

16   detention location of detainees.  That information may be

17   useful in connection with the preliminary injunction; certainly

18   would be useful in connection with class certification.

19          With regard to the second batch of information, the

20   Court also thinks that it may be useful for preliminary

21   injunction, that it certainly would be useful for class

22   certification and so the second batch of information, the

23   Court's going to order the government to use its best efforts

24   to produce by next Friday; that is, a week from tomorrow and

25   that includes dates of final order of removal,

1   readily-available attorney information, information regarding

2   motions to reopen stay, detention and location history since

3   March, 2017.

4        The Court also beliefs that the information regarding

5   non-detained individuals should also be supplied on a best

6   efforts basis by the government.  Although the government may

7   have supportable arguments that non-detainees should be treated

8   differently, at this point the case includes them as part of a

9   putative class and presumably they're going to be the subject

10  of the motion for preliminary injunction as well as class

11  certification.  To the extent that information or parts of that

12  information can be included in the initial batch for tomorrow,

13  it should be included.  To the extent the government needs the

14  week, through a week from tomorrow to get that information,

15  then it should supply it at that point.

16       I'm establishing the following briefing schedule.

17  The petitioners' motion and brief for preliminary injunction

18  will be due 9:00 a.m. on Monday, July 17.  The respondents'

19  response brief will be due on Thursday, July 20 at 9:00 a.m.

20  Any reply brief will be due by Friday morning at 8:30.  I'm

21  going to establish a hearing time on Friday of 10:30 a.m.  I'm

22  not sure we're going to need a hearing.  I will let you know by

23  5:00 p.m. on Thursday whether we will have a hearing.

24       One question that we didn't address fully was page

25  limits.  Petitioners raised an issue regarding that so Ms.

1    Schlanger, what were you thinking about in terms of page

2    limits?

3              MS. SCHLANGER:  40 pages, your Honor.

4              THE COURT:  40 pages?

5              MS. SCHLANGER:  40.

6              THE COURT:  All right.  Is that okay with the

7    government?

8              MR. SILVIS:  Your Honor, we don't typically object to

9    that type of thing.  The only concern is given the time that we

10   have to respond, it seems that that might be difficult if, umm,

11   to exceed what the Court's normal which I believe is 25 pages.

12   If the Court would want to cut and sort of split the baby on

13   that and gives them some additional pages, I think that's okay.

14   It just seems that that's a lot to respond to in a couple days.

15             THE COURT:  All right.  Well, I understand the issues

16   that people are raising and so I don't want to foreclose people

17   from arguing what they want to argue, but this is not the first

18   round of briefing that we're seeing in this case so we've

19   actually visited and revisited these issues a few times.  Ms.

20   Schlanger, do you think you can do this in 30 pages?

21             MS. SCHLANGER:  Yes, your Honor.

22             THE COURT:  Okay.  Is that all right with the

23   government then?

24             MR. SILVIS:  Yes, your Honor and 30 pages for the

25   response as well?

```
 1          THE COURT:  Sure.  30 and 30 and I'm going to limit
 2    the reply to 10 pages.  I do want you to supply paper copies as
 3    well.  Are there any questions?
 4          MS. SCHLANGER:  No, your Honor.
 5          MR. SILVIS:  Your Honor, just on one point, I -- to
 6    clarify the non-detained, you talked about first batch and were
 7    you referring to a second batch as well, like sort of the
 8    broader discovery?
 9          THE COURT:  Right.  Well, I thought it would take you
10    more time for the non-detained as well as the detained.  If
11    that's doable, I know it's a larger class and I'm not sure
12    you're able to accomplish that which is why I did say best
13    efforts for that, but it may well be when you make a request
14    for the detained people, adding the non-detained people doesn't
15    significantly change the nature of the request or how much time
16    is involved, but that was my intent to include --
17          MR. SILVIS:  Best efforts.
18          THE COURT:  -- to include the non-detained in the
19    second batch of information for the one week from tomorrow and
20    if you can acquire the information, the identification
21    information for the non-detained by tomorrow as you can for the
22    detained, I would have you produce that tomorrow.  If that
23    somehow is a different exercise for you to obtain, then to do
24    it within a week.
25          MR. SILVIS:  I guess the government's larger concern
```

1   was on the second group, the broader information for the

2   non-detained because it's a larger group of people and we're

3   relying on a separate government agency to do that.  I just, I

4   don't know what the timetable for that would be.

5              THE COURT:  Right.  That's why I said best efforts,

6   all right?

7              MR. SILVIS:  Okay, thank you.

8              THE COURT:  All right.  Now can I ask the attorneys

9   to come up with an order that reflects all of that?

10             MS. SCHLANGER:  Yes.  Yes, your Honor.

11             MR. SILVIS:  Yes, your Honor.

12             THE COURT:  Okay, all right.  Now while we're all

13  together, is there anything else that we need to address?

14             MS. SCHLANGER:  No.  I think we're good, your Honor.

15  Thank you.

16             MR. SILVIS:  Nothing from the respondents.  Thank

17  you.

18             THE COURT:  Is there anything the attorneys want to

19  communicate in chambers to the Court off the record?

20             MR. SILVIS:  Just that with the protective order,

21  that we'll submit it to the Court as soon as possible.  It's

22  with the respondents now, but we would just as a prerequisite

23  that it be entered, but we know it's not before the Court at

24  the moment, but that before we produce the information to

25  plaintiffs, we need the protective order in place.

1          THE COURT:  Are there any issues that need to be

2    ironed out or is it just a matter of mechanics now?

3          MR. SILVIS:  I don't think they're real substantive.

4    I think it's generally pretty close to where we could agree.  I

5    just had to send it to a couple different entities so it's kind

6    of bringing it all back together and submitting it to the

7    Court, so I don't think it's -- I think it's something we can

8    get to the Court by today or first thing tomorrow.

9          MS. SCHLANGER:  We're just, umm, concerned.  We have

10   a lot to do with the information once we get it and if it gets

11   delayed for even a couple of hours, that makes this a little

12   more complicated, but maybe, umm -- we may have disagreements

13   about the protective order, I have no idea, but maybe, I mean,

14   if you want to give us the information under the understanding

15   that we are only using it for, you know, under some very strict

16   things and then when we negotiate it, we can loosen that up,

17   right, and that way we can just get it?  I don't want to have

18   any delay in the timing of the turn over of the information

19   while we're messing around with a protective order.

20         MR. SILVIS:  Yeah, I understand.  I think what we can

21   do is get it on file today and just so the Court's aware and,

22   you know, if the Court's aware that it's sitting there and can

23   be entered at some point today, that would facilitate us being

24   able to produce the information tomorrow.

25         THE COURT:  When do you plan on submitting it?

1       MR. SILVIS:  I got to, umm, I got to kind of talk to

2   people, but I don't think it will take that long.  Maybe a

3   couple hours hopefully.

4       THE COURT:  All right.  Well, the closer you get to

5   5:30, the closer you get to somebody not watching an inbox for

6   your proposed orders, so I would recommend getting it to us

7   before 5:30.  Can you do that?

8       MR. SILVIS:  I believe so, your Honor.

9       THE COURT:  Okay.  All right, anything else?  Do I

10  need to hang around to rule on anything because I'm happy to

11  work out anything if you think you're in disagreement about

12  anything of substance.

13      (Pause)

14      MS. SCHLANGER:  I think we worked it out so that we

15  don't need a ruling on anything today, your Honor.  Thank you.

16      THE COURT:  Okay.  I'm --

17      MR. SILVIS:  Well, wait, I just want to clarify that.

18  I think that -- I don't know -- if you mean a temporary one.  I

19  think we still need to enter one.  I thought the issue was that

20  there was a disagreement on sharing with that individual, we

21  would do a temporary one.  We'd still need to enter it, but we

22  might have to do a subsequent one.

23      MS. SCHLANGER:  Yes, yes, yes.  So we might if we

24  have a disagreement over a provision in the protective order,

25  we'll give you one that we can agree on that will be temporary.

1    We'll work out the disagreement and give you another one next

2    week.

3              THE COURT:  All right, that's fine.  I'm just letting

4    you know I have an appointment outside of the courthouse that I

5    have to leave for by 5:30 today, so if you want me to read

6    something and authorize its entry, you need to get it here

7    basically by I would say 5:20 or so so I can have a chance to

8    look at it and authorize it, okay?

9              MR. SILVIS:  Understood.

10             THE COURT:  All right, thank you.  That concludes our

11   hearing.

12             THE CLERK OF THE COURET:  Court is adjourned.

13             (Hearing concluded at 3:49 p.m.)

14                         --    ---    --

15

16

17

18

19

20

21

22

23

24

25

1                  C E R T I F I C A T E

2

3

4

5

6

7          I, David B. Yarbrough, Official Court

8     Reporter, do hereby certify that the foregoing pages

9     comprise a true and accurate transcript of the

10    proceedings taken by me in this matter on Thursday, July

11    13th, 2017.

12

13

14

15

16    7/13/2017               /s/ David B. Yarbrough

17    Date                    David B. Yarbrough,
                              (CSR, RPR, FCRR, RMR)
18                            231 W. Lafayette Blvd.
                              Detroit, MI  48226
19

20

21

22

23

24

25