# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

USAMA JAMIL HAMAMA, et al.,

       Petitioners,

      v.

REBECCA ADDUCCI, Director, Detroit District
of Immigration and Customs Enforcement, et al.,

       Respondents.

_____

Civil No. 17-11910
Hon. Mark A. Goldsmith
Mag.Judge David R. Grand

## RESPONDENTS' RESPONSE IN OPPOSITION TO
## PETITIONERS' REQUEST FOR A PRELIMINARY INJUNCTION

Respondents, by and through their undersigned counsel, opposes Petitioners' Request for a Preliminary Injunction. The grounds for this motion are set forth more fully in the attached supporting brief.

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

AUGUST E. FLENTJE
Special Counsel to the Assistant
Attorney General

WILLIAM C. PEACHEY
Director

Dated: July 20, 2017

Respectfully submitted,

WILLIAM C. SILVIS
Assistant Director

VINITA B. ANDRAPALLIYAL
MICHAEL A. CELONE
JOSEPH A. DARROW
Trial Attorneys

*Counsel for Respondents*

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ...................................................... viii

MOST CONTROLLING AUTHORITY ...........................................................ix

I.  INTRODUCTION ................................................................................1

II.  BACKGROUND ................................................................................3

III.  LAW AND ANALYSIS.......................................................................4

    A. Petitioners Fail to Demonstrate a Likelihood of Success

    on the Merits.....................................................................................4

       1. This Court lacks jurisdiction over Petitioner's claims...............5

         a. The claim-channeling provisions of 8 U.S.C §1252 clearly

           preclude this Court's jurisdiction over Petitioner's attack

           on their final order of removal.........................................5

         b. The Administrative Motion to Reopen Process is

           Adequate .........................................................................6

         c. The Suspension Clause does not require overriding

           Congress's decision that there is no jurisdiction over this

           habeas action.................................................................14

            i. Petitioners' action is not cognizable in habeas

              because they do not seek release from custody....17

ii.     The Suspension Clause cannot override Congress's

chosen handling of claims that the location of

transfer is improper ..............................................19

2. Even if this Court had jurisdiction Petitioners' claims are

meritless .....................................................................................21

B.  Petitioners Have Not Established Irreparable Harm ..........................24

C.  The Balance of Harms and Public Interest Favor Respondents.........28

IV.    CONCLUSION ......................................................................................30

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITES

<u>CASES</u>

*Aamer v. Obama*, 742 F.3d ......................................................................21

*Abdallahi v. Holder*, 690 F.3d 467 (6th Cir. 2012) ..................................23

*Abney v. Amgen, Inc.*, 443 F.3d 540 (6th Cir. 2006) ......................... 26, 28

*Alexandre v. U.S. Atty. Gen.*, 452 F.3d 1204 (11th Cir. 2006) .................7

*Almuhtaseb v. Gonzales*, 453 F.3d 743 (6th Cir. 2006)............................ 22, 27, 28

*Aoraha v. Gonzales*, 209 F. App'x 473 (6th Cir. 2006) ................................... 26, 27

*Audi AG v. D'Amato*, 469 F.3d 534 (6th Cir. 2006)..................................26

*Bell v. Wolfish*, 441 U.S. 520 (1979) .......................................................15

*Boumediene v. Bush*, 553 U.S. 723 (2008) ..................................6, **passim**

*Dokic v. INS,* No. 92-3592, 1993 WL 265166 (6th Cir. July 15, 1993).................26

*Elgharib v. Napolitano*, 600 F.3d 597 (6th Cir. 2010) ........................6, 26

*Elias v. Gonzales*, 212 F. App'x 441 (6th Cir. 2007) ..............................26

*Graham v. Mukasey*, 519 F.3d 546 (6th Cir. 2008)..................................23

*Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615 (6th Cir. 2010)..........................6

*Hanna v. Holder*, 335 F. App'x 548 (6th Cir. 2009)...............................26

*Hanona v. Gonzales*, 243 F. App'x 158 (6th Cir. 2007) .........................26

*Harchenko v. I.N.S.,* 379 F.3d 405 (6th Cir. 2004)..................................26

*Harris v. Nelson*, 394 U.S. 286 (1969) ........................................... 14, 21

*Iasu v. Smith*, 511 F.3d 881 (9th Cir. 2007)................................................................7

*I.N.S v. Orlando-Ventura*, 537 U.S. 12 (2002) ........................................................25

*I.N.S. v. St. Cyr*, 533 U .S. 289................................................................ 11, 15, 30

*JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905 (W.D. Mich. 2009) ....................26

*Jones v. Caruso,* 569 F.3d 258 (6th Cir. 2009)..........................................................5

*Kayrouz v. Ashcroft*, 261 F. Supp. 2d 760 (E.D. Ky. 2003) ....................................30

*Khan v. Attorney General*, 691 F.3d 488 (3d Cir. 2012).........................................10

*Kiyemba v. Obama*, 561 F.3d 509 (D.C. Cir. 2009)................................... 17, 19, 21

*Luna v. Holder*, 637 F.3d 85 (2d Cir. 2011) .............................................................8

*Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) ...........................................................18

*Martin v. Overton*, 391 F.3d 710 (6th Cir. 2004) ....................................... 15, 16, 19

*Modarresi v. Gonzales*, 168 F. App'x 80 (6th Cir. 2006).......................................22

*Muka v. Baker*, 599 F.3d  (6th Cir. 2009)............................................... 7, 22, 23, 26

*Munaf v. Geren*, 553 U.S. 674 (2008) ........................................................4, **passim**

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977).....................28

*Nken v. Holder*, 556 U.S. ................................................................. 10, 29

*Preiser v. Rodriguez*, 411 U.S. 475 (1973)..................................................... 15, 19

*Qassim v. Bush*, 466 F.3d 1073 (D.C. Cir. 2006) ...................................................20

*Rasul v. Bush*, 542 U.S. 466 (2004).......................................................................17

*Schall v. Martin*, 467 U.S. 253 (1984)...................................................................14

*Shasha v. Gonzales*, 227 F. App'x 436 (6th Cir. 2007)...........................................26

*Shewchun v. Holder*, 658 F.3d 557 (6th Cir. 2011)..................................................23

*Sinistaj v. Ashcroft*, 376 F.3d 516 (6th Cir. 2004)....................................................9

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998) ...................................5

*William G. Wilcox, D.O., P.C. Emp.s' Defined Ben. Pension Trust v.*

*United States*, 888 F.2d 1111 (6th Cir. 1989)...........................................................5

*Winter v. NRDC*, 555 U.S. 7 (2008) ........................................................................4

*Yousif v. Lynch*, 796 F.3d 622 (6th Cir. 2015)........................................................27

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ................................................................18

## FEDERAL STATUES

8 U.S.C. § 1231(a) ..................................................................................................21

8 U.S.C. § 1231(b)(3)..............................................................................................21

8 U.S.C. § 1252 ................................................................................................ xi, 5

8 U.S.C. § 1252(a)(4)........................................................................................ 20, 22

8 U.S.C. § 1252(b)(9)...............................................................................................22

8 U.S.C. §1252(g) .......................................................................................... 6, 19, 21

8 U.S.C. § 1229a ......................................................................................................26

8 U.S.C. § 1252(a)(2)(D) ..........................................................................................6

8 U.S.C. § 1252(a)(5)...........................................................................................7, 23

8 U.S.C. § 1362........................................................................................................24

28 U.S.C. § 2241(b)(3)..................................................................................................19

28 U.S.C. § 2241.............................................................................................................13

28 U.S.C. § 2241(c)(3)....................................................................................................11

## FEDERAL REGULATIONS

8 C.F.R. § 208.16(b)(3)..................................................................................................28

8 C.F.R. § 208.16(d) .......................................................................................................21

8 CFR § 241.6(a)...............................................................................................................9

## FEDERAL RULES OF APPELLATE PROCEDURE

Fed. R. App. P. 23...........................................................................................................20

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 23 ...........................................................................................................13

Fed. R. Civ. P. 23(a)(2)...................................................................................................23

Fed. R. Civ. P. 65(a)........................................................................................................11

## I.    STATEMENT OF ISSUES PRESENTED

Whether Petitioners are entitled to a preliminary injunction from removal in federal district court despite the existence of final orders of removal against them and the availability of administrative remedies.

## II.    MOST CONTROLLING AUTHORITY

8 U.S.C. § 1252

*Munaf v. Geren*, 553 U.S. 674 (2008)

*Muka v. Baker*, 599 F.3d 480 (6th Cir. 2009)

## I.    INTRODUCTION

The relief Petitioners seek here – a stay of removal – is not available through habeas, but it is fully available through the process Congress designed for these purposes, a motion to reopen filed in the immigration courts, with review by the court of appeals. This process is open and available to each of the petitioners and can hear and decide requests for relief in exigent circumstances. Indeed, the immigration courts are better suited to handle emergency stay requests due to procedures put in place specifically to address such emergencies. They can also promptly assess the individual circumstances that must be considered in evaluating a stay, unlike this Court.

These procedures have been uniformly approved by the courts of appeals, including the Sixth Circuit, and plaintiffs have offered no viable reason to deviate or otherwise undermine these settled practices.  The barriers to review identified by petitioners are present with respect to any effort to obtain adjudication of a claim, whether in this Court or an immigration court, and they cannot form the basis for invalidating an act of Congress that channels review to the alternate forum. Moreover, contrary to what Petitioners have repeatedly argued before this Court, there is nothing extraordinary about the facts of this case. Recent efforts to return Iraqi nationals to Iraq do not reflect a change in policy and there have been numerous removals to Iraq in each of the past ten years.

The administrative and judicial procedures available to individuals, like Petitioners, who have been ordered removed also are not new. From the time Petitioners first received their removal orders, they have had an adequate and available process to raise any available basis—including protection under the Convention Against Torture ("CAT")—to challenge their removal order. A removal order may be executed at any time—in this case, a time that depended on diplomatic negotiations with Iraq beyond the control of any of the Petitioners. It is therefore incumbent on that individual to diligently move to reopen those proceedings—regardless of how remote actual removal may subjectively appear at the time—so they can obtain relief that may be available. This is particularly true here, given that Petitioners have admitted that the conditions they allege give rise to their claims arose three years ago, in 2014.

Petitioners' claims also fail on the merits. They are not seeking review of their removal orders, so their claims tied to their removal cannot justify injunctive relief. And their due process claim fails given the availability of an adequate forum to consider individual claims. Indeed, this is a highly unusual use of the habeas writ, given that they do not seek release from detention, and instead are seeking only to halt their removal. Such a novel use of the writ is not covered by the habeas statute, nor is it protected by the Suspension Clause. The proper

2

avenue for review here, which is fully available to consider individual claims, is to seek reopening and a stay from the immigration courts, as Congress provided.

## II.    BACKGROUND

It is undisputed that the putative class members in this case all have final orders of removal to Iraq, the validity of which they do not challenge in this action. Pet'rs.' Mot. for a TRO, ECF 11, at 15. While Petitioners allege that their detention locations preclude access to counsel and thus the ability to file motions to reopen, over the past few months—and, notably, while in detention locations across the country—all but one of the named Petitioners have availed themselves of the administrative processes Congress laid out and have filed a motion to reopen their removal proceedings as well as contemporaneous motions to stay removal. *See* Estrada Decl., Ex. H; *See also*, Manuel Decls., Ex. I-J; Liggins Decls., Ex. K-L; Sidhu Decls., Ex. M-N; Liggins Decls., Ex. O-P; ECF 17-6.

In fact, contrary to Petitioners' allegations, ICE's national detention standards ensure that detainees—regardless of their detention location—have the opportunity to maintain ties with their families, communities, legal representatives, and government agencies by providing them reasonable and equitable access to telephone services and in-person visitation rights. *See* McGregor Decl., Ex. F; *see also*, Carusso Decl., Ex. D.  Finally, ICE's process of repatriating individuals is complex, and, in nearly every instance, involves

3

transferring detainees between detention facilities. *See generally*, Lowe Decl., Ex. E; *see also*, Schultz Decl., Ex. C, ¶ 9.  However, such transfers are not for the purpose of frustrating an alien's administrative recourses, but are designed to effectuate the removal process while balancing ICE's finite resources with the safety and security of staff, detainees, and the American public. *See id.*

Further, while Petitioners argue it was unreasonable to have moved to reopen their final orders of removal on the basis of changed country conditions before Iraq changed its policy to accept Iraqis without travel documents, at least two Petitioners did just that, in 2011 and in 2012. ECF 17, at 2–3; ECF 17-4, 17-7.

## III.   LAW AND ANALYSIS

A preliminary injunction is "an extraordinary and drastic remedy[.]" *Munaf v. Geren*, 553 U.S. 674, 689 (2008). A party seeking such relief "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Because Petitioners do not establish entitlement to this extraordinary relief, their motion should be denied.

### A. Petitioners Fail to Demonstrate a Likelihood of Success on the Merits.

While all four factors set forth in *Winter* must be considered in assessing a motion for preliminary injunctive relief, the moving party's likelihood of success on the

4

merits is the most important. *Jones v. Caruso,* 569 F.3d 258, 277 (6th Cir. 2009).

Because it is a threshold inquiry, when a "plaintiff has failed to show the likelihood

of success on the merits, we 'need not consider the remaining three [*Winter*

elements].'" *Id.* Moreover, any inquiry into the merits must first consider threshold

issues such as jurisdiction, which if not satisfied by the movant, require finding in

the government's favor on this factor and requires dismissal. *See Munaf*, 553 U.S.

at 690; *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101–02 (1998).

    1.  <u>This Court lacks jurisdiction over Petitioners' claims.</u>

This court lacks jurisdiction because Congress's chosen method for considering

claims like Petitioners' is constitutionally valid under the Suspension Clause and

provides a fully adequate individual remedy.[1]

        ***a.***    **The claim-channeling provisions of 8 U.S.C. § 1252 clearly preclude this Court's jurisdiction over Petitioner's attack on their final orders of removal.**

As this Court has previously held, Congress made clear through multiple

provisions in 8 U.S.C. §1252 that any claims arising from the removal process,

including a claim seeking review of a final order of removal, are to be consolidated

---

[1] The Court's July 11, 2017 Order on jurisdiction appeared to only decide the issue for the purposes of a temporary restraining order, and any such conclusions of law do not bind the Court at later stages in the litigation. *Cf. William G. Wilcox, D.O., P.C. Emp.s' Defined Ben. Pension Trust v. United States*, 888 F.2d 1111, 1114 (6th Cir. 1989).

and "channeled" to the courts of appeals on a petition for review. *See* 8 U.S.C. §§ 1252(a)(2)(D), (a)(5), (b)(9); *Elgharib v. Napolitano*, 600 F.3d 597, 603 (6th Cir. 2010); *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 626 (6th Cir. 2010).

Congress also precluded habeas challenges to a "decision or action by the Attorney General to . . . execute removal orders against any alien." 8 U.S.C. §1252(g). As this Court concluded, Petitioners' claims here without question are subject to these provisions and, according to statute must be brought through the procedure that Congress established under § 1252. But contrary to this Court's conclusion, Congress's comprehensive review scheme is fully adequate and does not violate the Suspension Clause, even in emergent circumstances—and particularly where those circumstances are emergent due to Petitioners' failure to act.

> *b.* **The Administrative Motion to Reopen Process is Adequate**.

Petitioners' claims fail to confer jurisdiction on the federal district courts because the motion to reopen and petition for review processes created by Congress for this purpose are fully adequate substitutes for habeas relief, and are equally available to individual petitioners as a habeas claim filed in this Court. The Supreme Court has noted that in deciding whether a set of procedures confers an adequate substitute for habeas corpus, "[w]hat matters is the *sum total* of procedural protections afforded to the detainee *at all stages*, direct and collateral." *Boumediene v. Bush*, 553 U.S. 723, 783 (2008) (emphasis added). Further, to be adequate, "the court that conducts the

6

habeas [or substitute] proceeding must have the means to correct errors that occurred during the [underlying proceedings]." *Id.* at 786.

*First*, every court of appeals to address the issues raised here have concluded that the petition for review process provides an adequate substitute for habeas. The Sixth Circuit, in *Muka v. Baker*, held that "[b]ecause a petition for review provides an alien with the availability of the same scope of review as a writ of habeas corpus, . . . facially, the limitation on habeas corpus relief in the REAL ID Act [codified at 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g)] does not violate the Suspension Clause." 559 F.3d 480, 485 (6th Cir. 2009).

More specifically, the motion to reopen process has been upheld under the Suspension Clause by multiple courts of appeal. *Iasu v. Smith*, 511 F.3d 881, 893 (9th Cir. 2007) ("[A] potential motion to reopen at the administrative level and the possibility of judicial review thereafter provides the necessary process to alleviate Suspension Clause concerns."); *Alexandre v. U.S. Atty. Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006) ("Even though habeas corpus relief is precluded by the REAL ID Act, a deportable alien can still seek review . . . by moving the BIA to reopen or reconsider its previous ruling, and if unsuccessful, by filing a petition for review in the court of appeals. This procedure offers the same review as that formerly afforded in habeas corpus . . . . Since the substitute remedy of a petition for review offers the same scope of review as a habeas remedy, it is adequate and effective.") (internal

7

citations omitted). *Luna v. Holder*, 637 F.3d 85, 97 (2d Cir. 2011) (finding that the motion to reopen process "provides Petitioners with an adequate and effective substitute for habeas"). Importantly, in *every* reopening case, the court is faced with a situation where the alien must halt execution of the removal order using the administrative process like here. This case does not present a reason to depart from these well-established holdings.

*Second*, the administrative review procedures provided here are fully adequate, including in exigent circumstances.  Here, the "sum total of procedural protections afforded to the detainee" are fully adequate because the substitute procedure provides "the means to correct errors," including in exigent circumstances. *Boumediene*, 553 U.S. at 786.

After a removal order is final and enforceable, the alien may file a motion to reopen before the agency if circumstances have changed, and there is no time or number limits with respect to motions that raise concerns about treatment in the country to which the alien will be removed. 8 U.S.C. § 1229a(c)(7)(C)(ii). The requirements for the motion are not elaborate, and it need only "state the new facts that will be proven" and include evidence relating to those facts. *Id*. § 1229a(c)(7)(B); see 8 C.F.R. §. §§ 1003.2(c)(1), 1003.23; Board Practice Manual § 5.2(b) ("[t]here is no official form for filing a motion with the Board"); *see also Sinistaj v. Ashcroft*, 376 F.3d 516, 519 (6th Cir. 2004).  While a motion will not be

held pending the submission of evidence, the Board Practice Manual allows for the possibility of the submission "of supplemental evidence." Board Practice Manual § 5.2(f); *see* McNulty Decl., Ex. B, ¶ 20 (considering stay motions even if alien may still need time "to obtain . . . appropriate evidence").

Once a motion to reopen is filed, the alien may seek a stay of removal from the immigration court. *See* 8 CFR §§ 241.6(a)–(b), 1241.6(a)–(b); *See generally,* McNulty Decl.,., Ex. B. The immigration courts are fully capable of considering emergency stay requests on a highly expedited basis. The immigration courts, in turn, are "dedicated to issuing decisions in a timely manner so that no respondent with a pending motion . . . is removed prior to receiving an adjudication." Ex. B, ¶ 14. Additionally, the Board has created the Emergency Stay Unit (Unit) designed for exactly the type of circumstances presented here, "to achieve the timely adjudication of every [stay request] it receives." Ex. A., ¶ 17.

Just as in this Court, the traditional stay standards are relevant in immigration courts and apply in the federal appellate courts. *See Nken*, 556 U.S. at 433–34. And, like this Court, the federal appellate courts are fully capable of acting on a highly expedited basis in these circumstances. *See*, *e.g.*, *Khan v. Attorney General*, 691 F.3d 488, 491 (3d Cir. 2012) (panel "granted the petitioners a temporary stay of removal" in case where petitioner alleged that BIA had not "adjudicated their motion" that was filed "within hours of [the alien's] scheduled removal"). Indeed, to the extent a

9

federal court remedy may be needed in exigent circumstances, that remedy would be in the appellate courts Congress designated for review of final orders of removal, not a habeas corpus action that Congress specifically barred. *Id.*

Thus, the availability of the motion to reopen process as a substitute to habeas relief in federal district court does not raise Suspension Clause concerns as applied to Petitioners. Indeed, all seven of the initial Petitioners and many putative class members have availed themselves of this process. *See generally* Ex. I–P; *See also* Ex. B, ¶ 23 (Detroit immigration court has adjudicated 79 stay requests since June 13).

*Third,* Petitioners' adequacy arguments do not assert that their claim cannot be heard in the process Congress designed—indeed, they concede that they can. Instead, Petitioners rely on barriers that exist with respect to any form of judicial review, and cannot properly lead to the conclusion that the process and court that Congress selected is constitutionally inadequate. Petitioners make a variety of arguments that, at bottom, simply illustrate the reality that there is a burden in seeking relief from an adjudicatory forum. Those type of arguments were not identified by the Supreme Court as justifying a Suspension Clause holding, *see St. Cyr*, 533 U .S. 300–02 (identifying Suspension Clause concerns that may arise when there is *no* forum to address legal and constitutional questions), and Petitioners have

10

cited no case that relied on these type of factors to conclude that an open and available avenue of review for legal claims is somehow constitutionally inadequate.

Petitioners argue that a motion to reopen "must be supported by affidavits or other evidentiary materials." Pet'rs.' Mot. for a Prelim. Inj., ECF 77, at 8. But a request for preliminary relief also requires the support of evidentiary materials of at least a similar quality. *See* Fed. R. Civ. P. 65(a) (discussing "evidence that is received on the motion"). Habeas rules require a similar showing. *See* 28 U.S.C. § 2241(c)(3) (petitioner must show "custody in violation of the Constitution or laws or treats"); Habeas Rule 2 (habeas petition must "specify all the grounds for relief" and "state the facts supporting each ground").

Relatedly, Petitioners state that they must obtain the "comprehensive files kept by" DHS, ECF 77, at 8, and it takes time to prepare pleadings. *Id.* at 11. That is the case in any court. Moreover, the alien should be in possession of her immigration papers—and, more importantly in this context—should be uniquely aware of new facts not necessarily appearing in the record of proceedings ("ROP") relating to her potential treatment upon return to Iraq. Further, the immigration courts have the ROP available to them and are "not delay[ing] issuing a ruling on a stay request if removal is imminent" even if the ROP has not yet been obtained. Ex. B, ¶ 16. In any event, filing a motion to reopen in immigration court presents no greater challenge than filing a request for relief in this Court on essentially the same grounds. In these

circumstances, there is no reason to conclude that the process designed by Congress must be struck down as a suspension of the writ of habeas corpus.

Indeed, if anything, the processes available in the administrative forum are *better* suited than this Court to the emergent situation presented by individual claimants.

First, as explained, the BIA has developed a special Unit to handle stay of removal requests, specifically designed to ensure consideration of those request prior to the time when removal is executed. Importantly, the Board, as well as the immigration courts, have immediate access to deportation times, information that is not readily or immediately available to a federal habeas court.   Second, the immigration courts address these kinds of issues every day, and are familiar with the needs presented in individual cases, both with respect to the timing of a stay request as well the equities in individual cases. *See* Ex. B, ¶¶ 14–24. Third, the immigration courts are fully able to address the influx of cases, contrary to this Court's suggestion. *Id.*  Fourth, the immigration courts have access to the record in individual cases, *see* Ex. B, ¶¶ 15–16, which is simply not readily available in district court.

There is only one difference between the process this Court is providing and the process available to every petitioner in the immigration courts and the courts of appeals: this Court may have authority to certify a class and grant class-wide relief. *See* Fed. R. Civ. P. 23. But habeas is, at its core, an individual remedy to test the lawfulness of a person's individual detention. *See* 28 U.S.C. § 2241 (habeas writ

shall "not extend to *a* prisoner" unless "*he* is in custody in violation of the" law); Rule 1 of Rules Governing Habeas Corpus Cases under Section 2254 (providing no rule permitting class actions and specifying that a petition is filed by "a person in custody"). Class remedies are decidedly not a traditional element of habeas relief. As the Supreme Court explained, the "applicability to habeas corpus of the rules concerning . . . class actions has engendered considerable debate." *Harris v. Nelson*, 394 U.S. 286, 294 n.5 (1969); *Schall v. Martin*, 467 U.S. 253, 260 n.10 (1984) ("[w]e have never decided" whether Rule 23 "is applicable to petitions for habeas corpus relief"). Given that debate, Congress cannot be said to have suspended the traditional writ when it created an alternate process that is fully adequate to consider individual claims but does not include a mechanism for hearing class claims.

In sum, the administrative review procedure is no different in substance from the relief available in his Court. The forum that Congress created as the exclusive one possesses the authority to address exigent circumstances and provide complete relief with respect to Petitioners' individual claims. Moreover, the remedy provided by Congress would be rendered completely superfluous if a habeas remedy lies here. It is therefore fully adequate and Congress did not violate the Suspension Clause in directing claims to that forum. *Boumediene*, 553 U.S. at 783, 786.

> c. **The Suspension Clause does not require overriding Congress's decision that there is no jurisdiction over this habeas action.**

Respondent has explained how the alternate procedures here are fully adequate, but the more fundamental problem with this suit is that it asks for a novel exercise of habeas jurisdiction that does not square with the habeas statute or the traditional scope of the writ that is protected by the Suspension Clause. The Supreme Court has made clear that the traditional—and thus constitutionally protected—writ of habeas corpus is limited. The Supreme Court has never decided whether the meaning of the Suspension Clause was fixed in 1789, or whether the Clause might evolve consistent with the expansion of statutory habeas over the course of American history. *See INS v. St. Cyr*, 533 U.S. 289, 304–05 (2001). In either circumstance, the Suspension Clause does not require invalidation of Congress's chosen method for handling the types of claims brought here.

The common-law right was to seek release from the sovereign's custody. *See* 3 Blackstone, Commentaries on the Laws of England, 131 (1st ed. 1765). The Supreme Court has thus noted, "[h]abeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release." *Munaf*, 128 S. Ct. at 2211. *See, e.g., Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody.").

With this limitation in mind, the Supreme Court has refused to extend even *statutory* habeas corpus to encompass challenges to anything other than the fact or duration of detention, and the Sixth Circuit has rejected the use of statutory habeas

14

to make such collateral challenges. *See Bell v. Wolfish*, 441 U.S. 520, 526 n.6 (1979); *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). As the Sixth Circuit has explained, "no grounds for habeas relief were established" under Section 2241 when the petitioner "did not challenge the terms or validity of his . . . prison term" but challenged conditions and sought a transfer. *Id*.

The Supreme Court's unanimous decision in *Munaf* further supports this understanding of the writ's narrow scope. In *Munaf*, two American citizens held in Iraq by the United States military filed habeas petitions seeking to prevent the United States from transferring them to the custody of the Iraqi government. 553 U.S. at 683–84. The citizens claimed they would face mistreatment and torture if transferred to Iraqi custody. *Id*. at 700. The Supreme Court held that the type of relief sought—an injunction preventing petitioner's transfer from United States custody to the custody of another sovereign—was not available in habeas, even where such transfer would eliminate the district court's jurisdiction over the core habeas action challenging the petitioner's detention, and even where there were allegations that the transfer would lead to torture. *Id.* at 700–04.

*Munaf*, therefore, rejected the notion that there is a statutory, much less a constitutional, habeas right to challenge a transfer from custody.[2] The Court explained that the habeas right to "release" does not mean that the habeas petitioners can pick and choose the terms, timing, location, and conditions of their release. *Id.*at 2221, 2223. Indeed, the Court specifically rejected the suggestion that detainees could use habeas as a vehicle for seeking "release in a form that would avoid transfer" to another country's custody. *Id.* at 2223. *See also Kiyemba v. Obama*, 561 F.3d 509, 516 (D.C. Cir. 2009) (habeas relief is not available to bar transfer of detainees on grounds detainee might be subject to torture or prosecution).

Thus, because the Supreme Court has not interpreted *statutory* habeas jurisdiction to encompass ancillary claims, such as efforts to halt a detainee's release from custody or limit a transfer to another sovereign, or challenges to conditions of confinement, the Suspension Clause does not protect such claims. *See Rasul v. Bush*, 542 U.S. 466, 474 (2004) ("[H]abeas statute clearly has expanded habeas corpus 'beyond the limits that obtained during the 17th and 18th centuries.'").

---

[2] The Supreme Court's decision in *Boumediene*, decided the same day as *Munaf*, fully comports with this understanding. In *Boumediene*, at issue was ongoing detention. *Boumediene*'s holding is thus focused on this core aspect of the writ and refers only to a habeas right to challenge detention. *See, e.g.*, *Boumediene*, 553 U.S. at 783 ("The habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain.").

16

### i. Petitioners' action is not cognizable in habeas because they do not seek release from custody.

Petitioners' habeas action at its core does not challenge their detention, and therefore does not request a traditional exercise of this Court's habeas jurisdiction that is protected by the Suspension Clause. Nor would such a suit be cognizable in a statutory habeas action under these precedents.

The simple fact is, Petitioners do not challenge their detention in this case. Instead, they seek to "enjoin . . . remov[al] to Iraq" and "enjoin . . . transfer[] to detention centers." ECF 35 at 36–37. Petitioners do not propose challenging their removal orders on this motion; they concede that they "are all subject to final orders of removal." ECF 77, at 20. They do not seek a holding from this Court that those orders are invalid and that detention pursuant to them must end either due to CAT, the Due Process Clause, or any other provision of the INA. *See* ECF 35 at 36–37; ECF 77, at 18–23 (arguing that the INA, CAT, and Due Process Clause require that detention continue during period when administrative proceedings will be pursued); ECF 77, at 2 ("central claim" is "that ICE cannot lawfully remove them to Iraq until

17

an appropriate process has determined whether, in light of current conditions and circumstances, they are entitled to mandatory protection against removal"). [3]

Petitioners' claims based on CAT and the Due Process Clause lack merit because, explained below, the agency is fully capable of considering requests by each petitioner to stay their removal pending further administrative proceedings, that process is fair, and it is the process that is due. But more fundamentally here, Petitioners do not seek release or claim unlawful detention, but a *halt* to their upcoming transfer and release through removal. Such a novel use of habeas is not consistent with the statute, which confers jurisdiction to review a claim of "custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(b)(3). As the Supreme Court explained in *Munaf*, "the writ of habeas corpus could not be used to enjoin release." 553 U.S. at 682; *see Preiser*, 411 U.S. at 484 (1973); *Martin*, 391 F.3d at 714 (no habeas jurisdiction to over transfer claim). Because the claim does not seek to end unlawful detention, it is not a valid habeas claim and, *a fortiori*, cannot be considered by this Court under the Suspension

---

[3] The only reference to release in the Petition is a request for bond hearings before an IJ. *See* ECF 35 at 37 (paragraph J).  But such a request for relief is not valid or ripe. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (alien may be detained for execution of removal order for sixth months and thereafter if there is a reasonable chance of removal); *see also Ly v. Hansen*, 351 F.3d 263, 267 (6th Cir. 2003). This part of their Petition also has no relation to the claims brought in their preliminary injunction motion, and is in fact *inconsistent* with their other requests for relief that seek to *extend* their detention and prevent a release in Iraq.

Clause by invalidating Congress's path for review and clear direction that this Court lacks jurisdiction to halt the "execut[ion of] removal orders." 8 U.S.C. § 1252(g).

### ii. The Suspension Clause cannot override Congress's chosen handling of claims that the location of transfer is improper.

Even if the habeas petition were construed, contrary to its terms, to seek release, the Suspension Clause does not apply to override Congress's chosen framework for considering a claim that the manner of transfer out of custody is unlawful, as this is not the type of habeas claim cognizable under common law.

First, at its core, habeas concerns the release from custody, and habeas does not traditionally secure "release in a form that would avoid transfer" in the manner preferred by the petitioner. *Munaf*, 553 U.S. at 697. "To the extent the detainees seek to enjoin their transfer based upon the expectation that a recipient country will detain or prosecute them" or based on a "likelihood a detainee will be tortured," the D.C. Circuit has explained that "*Munaf* . . . bars relief." *Kiyemba*, 561 F.3d at 516. The same principle precludes relief here, especially given that Congress has expressly channeled review of such claims through a distinct, fully adequate process.[4]

---

[4] Nor do Petitioners allege that their transfer is to evade habeas jurisdiction, such that the common-law habeas right might apply. *See, e.g.,* Habeas Corpus Act of 1679, §XI (restricting king's practice of sending prisoners to places that he controlled but which were beyond the territorial jurisdiction of the common-law courts); *cf.* Fed. R. App. P. 23 (barring custodial respondent from transferring habeas

Second, as *Kiyemba* further explained, "Congress limited judicial review under the [CAT] to claims raised in a challenge to a final order of removal." *Id.* at 515–16 (citing 8 U.S.C. § 1252(a)(4)). That statute makes clear that the CAT—which is not self-executing—provides enforceable rights only in the administrative removal proceedings authorized by Congress, as set forth in implementing regulations. The CAT therefore cannot form the basis of a habeas claim under statute, much less allow one to invoke the Suspension Clause and invalidate the procedure Congress crafted.

Third, Petitioners invoke habeas jurisdiction to pursue an entirely different administrative remedy. ECF 77, at 20 ("each individual will need to file a motion to reopen before proceeding to the merits of her/his individual claims"). This is decidedly not a traditional protection provided by habeas corpus. Indeed, it is quite clear that "petitioners invoking habeas jurisdiction must assert claims that sound in habeas," *Aamer*, 742 F.3d at 1033, and habeas is not simply a place holder to exercise some different statutory or procedural right.

Fourth, even if Petitioners could raise a CAT claim or claim for withholding of removal claim under the Immigration and Nationality Act, and could prevail on such

---

petitioner, with an appeal pending, to another custodian within the same sovereign entity). Here, Petitioners' transfer to Iraq would release petitioners from United States custody, which is the full extent of the relief to which they would be entitled if there were traditional habeas jurisdiction. *Munaf*, 553 U.S. at 693–94; *cf. Qassim v. Bush*, 466 F.3d 1073 (D.C. Cir. 2006).

a claim in this Court, they would remain subject to detention under final orders of removal. 8 U.S.C. § 1231(b)(3), 8 C.F.R. §§ 208.16(d)–(f), 208.17(a)–(c) (CAT and withholding only preclude removal to specific identified country). Thus, their claims cannot properly result in a release from detention, further showing that this is not a traditional habeas case protected by the Suspension Clause. *See Munaf*, 553 U.S. at 697; *Kiyemba*, 561 F.3d at 514–15; 8 U.S.C. § 1231(a) (post-order detention).

Fifth, to the extent 8 U.S.C. § 1252(g) effectively eliminates the authority of this court to consider class-wide relief, that cannot be understood to violate the Suspension Clause. Whatever the precise contours of the "core" habeas rights protected by the Suspension Clause, they do not include this type of modern class action. *See Harris*, 394 U.S. at 294 n.5.

In sum, Petitioners' use of a habeas remedy to halt their transfer is highly unusual and without precedent. That unusual remedy is not encompassed by Section 2241, and is certainly not so inherent in traditional habeas so as to require invalidation of Congress's established and adequate method to review such claims.

   2.   Even if this Court had jurisdiction, Petitioners' claims are meritless.

**Count One**. In Count One, petitioners allege a violation of CAT. But petitioners do not seek CAT relief in this proceeding, and indeed acknowledge that such relief is unavailable. This claim therefore must fail. In any event, CAT is not a self-executing treaty, and the INA specifies that the only enforceable CAT rights are

available in a petition for review proceeding. *See* 8 U.S.C. § 1252(a)(4). Claims

seeking withholding or deferral of removal or asylum are also only cognizable in

removal proceedings. In sum, federal courts lack jurisdiction to review issues arising

from removal proceedings through this mechanism. 8 U.S.C. § 1252(b)(9); *Muka*,

559 F.3d at 483–84; *Almuhtaseb v. Gonzales*, 453 F.3d 743, 747 (6th Cir. 2006).

**Count Two.** Here, Petitioners allege that a Due Process Clause violation because

"they have not received their core procedural entitlement . . . [of] an opportunity to

have their claims heard at a meaningful time and in a meaningful manner . . . with

respect to current conditions, not the conditions that existed at the time their removal

order was first issued." ECF 35, at 21. This claim fails because, as explained *supra*,

the statutory procedures to hear Petitioners' motions are fully adequate.

A Due Process violation in the context of removal proceedings only occurs when

"the proceeding was so fundamentally unfair that the alien was *prevented from*

reasonably presenting his case." *Modarresi v. Gonzales*, 168 F. App'x 80, 85 (6th

Cir. 2006). Petitioners must also show "that the due process violations led to *a*

substantially different outcome from that which would have occurred in the absence

of those violations." *Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008).

As an initial matter, Petitioners cannot demonstrate that they were *prevented* from

reasonably presenting their case. They could have filed motions to reopen at any

time if they thought conditions in Iraq had sufficiently changed. 8 U.S.C. §

22

1252(a)(5), (b)(9), (g). Indeed, many Petitioners did just that, some as early as 2011 and 2012. *See generally* Ex. I-P; *see also* ECF 17-2–17-8.

Further, Petitioners do not establish that emergent circumstances prevent them from filing motions to reopen in the absence of a preliminary injunction, in light of the numerous procedural protections outlined *supra. See Abdallahi v. Holder*, 690 F.3d 467, 473 (6th Cir. 2012) (no procedural due process violation where the IJ "satisfied the procedure dictated in the applicable Federal Regulations"); *Shewchun v. Holder*, 658 F.3d 557, 569 (6th Cir. 2011).

Nor have they established prejudice that justifies class-wide relief; every petitioner presents different circumstances that can only be considered in Congress's designated forum. That each individual presents a unique set of facts and circumstances with regard to the ultimate viability of their claims, as Petitioners concede, *see* ECF 77, at 25, underscores it is inappropriate for this Court to step in to grant class-wide relief under the Due Process Clause. *See* Fed. R. Civ. P. 23(a)(2).

**Count Three.** In Count Three, Petitioners allege that "ICE's decision to transfer Plaintiffs/Petitioners who reside in one state to detention centers that are hundreds of miles away, and sometimes further, is interfering with their statutory right to counsel and their due process right to a fair hearing." ECF 35 at 34–35. Notwithstanding the Court's lack of jurisdiction, Petitioners fail to establish a likelihood of success on the merits of their claim.

23

Here, Petitioners allege that the transfer of putative class members to detention facilities across the country has "effectively disrupted detainees' ability to access pre-existing counsel" and "to access pro bono resources that have been mobilized by their local communities." ECF 35 at 26. But as explained in the attached declarations, petitioners have a robust ability to contact counsel by phone, and to access available pro bono providers. *See, e.g.*, Ex. F, ¶¶ 3-4; Ex. D, ¶¶ 3-9. In person visits are also available. *Id*. Importantly, ICE explained why aliens are occasionally moved between detention facilities, and it is clear that there has been no intention to restrict counsel access. *See generally* Ex. E; *see also*, Ex. C, ¶ 9. Petitioners have not explained how this access is insufficient in a constitutional sense or under the statute providing for the "privilege of being represented" in immigration proceedings.  8 U.S.C. § 1362.

### B. Petitioners Have Not Established Irreparable Harm.

Petitioners make severe allegations of danger in parts of Iraq, and this Court has relied on them in granting temporary nationwide relief. But the potential harm faced by each person is unique, and it is inappropriate for this Court to enjoin all removals based on Petitioners' general speculation of harm. Instead, any claims of harm are properly addressed by the immigration courts, which can fully consider stay requests and motions to reopen addressing the harm faced by individual requesters on an individualized basis.

24

Indeed, this Court's speculation shows it is ill-suited to evaluate the harm faced by Petitioners. This Court and Petitioners rely primarily on conditions in ISIS-controlled territory to establish harm. *See* Order at 6 (risk of "persecution at the hands of ISIS"); ECF 77, at 4–5 (discussing danger in ISIS controlled territory and areas "recaptured from ISIS"). But no alien would be removed to that part of Iraq. *See* Ex. C, ¶ 6; *see INS v. Orlando-Ventura*, 537 U.S. 12, 18 (2002) ("[A]n individual who can relocate safely within his home country ordinarily cannot qualify for asylum here.").

Further, as explained in the attached declarations, people have been removed to Iraq throughout this period, Ex. C, ¶ 6, and some class members are seeking to be released from this Court's order so their removal may move forward. There may be risks posed to some class members, but the balance of equities must take into account the remedy available, and the reality that this Court is not suited to consider the individual circumstances regarding potential harm. Ultimately, the class claim of harm is speculative, as the inquiry turns on individual circumstances that have not been presented to this Court.[5] *See Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir.

---

[5] Further, irreparable harm must be *legally cognizable* harm to satisfy this prong. *See JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 917 (W.D. Mich. 2009) (citing *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006)). However, as Petitioners concede, ECF 35 at 36–37, this Court cannot address the merits of Petitioners'

2006) ("To demonstrate irreparable harm, the plaintiffs must show that . . . they will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated."); *see also Harchenko v. I.N.S.,* 379 F.3d 405, 410 (6th Cir. 2004) (quoting *Dokic v. INS,* No. 92-3592, 1993 WL 265166, *5 (6th Cir. July 15, 1993)).

Even putting aside the need for individualized consideration, the Sixth Circuit "has repeatedly held that substantial evidence supports the conclusion that one's status as a Christian, without more, does not create a sufficiently particularized risk of persecution" or torture in Iraq. *Hanna v. Holder*, 335 F. App'x 548, 551 (6th Cir. 2009) (citing *Hanona v. Gonzales*, 243 F. App'x 158, 163 (6th Cir. 2007)); *Shasha v. Gonzales*, 227 F. App'x 436, 440 (6th Cir. 2007); *Elias v. Gonzales*, 212 F. App'x 441, 448 (6th Cir. 2007); *Aoraha v. Gonzales*, 209 F. App'x 473, 476 (6th Cir. 2006)). Petitioners in those cases cited State Department reports and newspaper articles showing that Christians and other religious minorities were at risk in Iraq, but the reports also indicated that not all Christians in all circumstances were at risk, and "[s]uch a generalized or random possibility of harm in the country of removal is

---

claims. *See* 8 U.S.C. §§ 1229a, 1252(a)(5), (g); *Elgharib*, 600 F.3d at 600–06; *Muka*, 559 F.3d at 483–86. The harm allegedly flowing from those claims is accordingly non-cognizable in this forum, and cannot be treated as cognizable for purposes of this motion. *See JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d at 917.

insufficient to establish a fear, or a pattern or practice, of persecution." *Id.* (citing *Almuhtaseb v. Gonzales*, 453 F.3d 743, 750 (6th Cir. 2006)).[6]

Similarly, while the most recent State Department report for Iraq notes that terrorists—ISIS in particular—committed atrocities against Christians and other religious and ethnic groups, the Secretary of State described ISIS's atrocities as occurring "in areas under its control," U.S. Dep't of State, Country Reports on Human Rights Practices for 2016: Iraq, at 2–3 (updated Mar. 29, 2017), *available at* http://www.state.gov/j/drl/rls/hrrpt/humanrightsreport/index.htm?year=2016&dlid=265498. Such areas in Iraq are limited and have been shrinking as of late. *See* Tim Arango & Michael R. Gordon, "Iraqi Prime Minister Arrives In Mosul to Declare Victory Over ISIS," N.Y. Times (July 9, 2017), https://www.nytimes.com/2017/07/09/world/middleeast/mosul-isis-liberated.html. This evidence is particularly significant given that ICE has recently conducted removals to Iraq and does not remove individuals to ISIS-controlled territory. Ex. C, ¶ 6; *see* 8 C.F.R. § 208.16(b)(3) (requiring reasonable internal relocation).

---

[6] Petitioners cite recent Sixth Circuit language suggesting that a Chaldean Christian qualified for withholding of removal on the basis of that status alone. *Yousif v. Lynch*, 796 F.3d 622, 628 (6th Cir. 2015). But in that case, ICE did not challenge that form of relief, which underscores the need for individual consideration before the immigration courts.

27

This is not to deny that there are risks to certain minority groups in Iraq. But the degree of risk turns on highly particularized circumstances unique to individual Iraqis, and the "generalized or random possibility" of Petitioners encountering harm, *see Almuhtaseb*, 453 F.3d at 750, which is all their evidence supports, would impermissibly require the Court to speculate on the likelihood of harm and thus cannot meet Petitioners' burden of showing a "clear and present" risk of such injury. *See Abney,* 443 F.3d at 552. Instead, it supports Respondents' position that the appropriate process is not this one, but the administrative process that will consider these individualized circumstances and is fully available to Petitioners.

### C. The Balance of Harms and Public Interest Favor Respondents.

This Court's intervention in the established motion to reopening process poses severe consequences. While Petitioners assert this case is unique, it is very easy to describe an impending removal as presenting significant dislocation, or as involving a previously unasserted claim relating to CAT or withholding of removal.  If class-wide relief is imposed in these circumstances with respect to an entire country rather than individual circumstances, the ability to effectuate removals, a significant congressional priority, will be halted. *See, e.g.*, *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977). Moreover, this Court's ruling will encourage aliens to sit on their rights of which they are aware, and seek exigent relief only when removal is imminent, burdening the government and the courts. *See* Ex. C, ¶ 8.

28

As the Supreme Court explained, "[t]here is always a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. That interest should only be outweighed based on an individual presenting circumstances that would justify a stay based on harm to that person. Basing an injunction not on those individual circumstances but on general country conditions contravenes the Supreme Court's direction that "a court asked to stay removal cannot simply assume that '[o]rdinarily, the balance of hardships will weigh heavily in the applicant's favor.'" *Id*. This Court should not walk further down that path, and instead allow the robust administrative process to operate as Congress intended.

An injunction will also cause severe problems for the courts, for aliens, and for the DHS. There were over 400,000 removals in 2016. An injunction here therefore has the potential to create duplicative review paths in thousands of cases. By endorsing two separate but nonexclusive review mechanisms, both paths will be utilized in the hope of evading removal or finding a favorable forum. An injunction is liable to cause conflict between the trial and appellate levels of the federal courts. As explained, the Sixth Circuit has very recently rejected claims like those brought here in multiple cases by aliens seeking to halt removals to Iraq. A prudent attorney would be compelled to utilize both review tracks simultaneously, and the resulting confusion will primarily benefit only aliens seeking to delay an inevitable removal. The Supreme Court in *St. Cyr* recognized concerns about "congruent means of

29

review" and explained "that Congress could, without raising any constitutional questions, provide an adequate substitute through the courts of appeals." 533 U.S. at 313 n. 38. That is precisely what Congress did in the REAL ID Act, and this Court should defer to the review scheme that Congress designed.

Petitioners' removals have been determined lawful and have merely been delayed up until now by circumstances outside of the United States' control. Further, many Petitioners were ordered removed on the basis of committing criminal offenses, *see* ECF 77-20 at 5—who have demonstrated their disregard for the country's laws and willingness to harm others. And Petitioners admit they have sat on their rights since 2014. It harms the governmental and public interest to further postpone their lawfully ordered removal based on speculative, not-yet-substantiated grounds for reopening their final orders. *See, e.g.*, *Kayrouz v. Ashcroft*, 261 F. Supp. 2d 760, 767 (E.D. Ky. 2003) ("prompt removal of aliens convicted of serious felonies is essential to the nation's ability to control its borders"), *aff'd*, 115 F. App'x 783 (6th Cir. 2004).

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny a preliminary injunction.

Dated:  July 20, 2017                        Respectfully submitted,

CHAD A. READLER                              */s/ William C. Silvis*
Acting Assistant Attorney General            WILLIAM C. SILVIS
                                             Assistant Director
AUGUST FLENTJE
Special Counsel                              VINITA B. ANDRAPALLIYAL
                                             MICHAEL A. CELONE
WILLIAM C. PEACHEY                           JOSEPH A. DARROW
Director                                     *Trial Attorneys*

                                             *Counsel for Respondents*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I caused a true and correct copy of the foregoing Defendants' Opposition to be served via CM/ECF upon all counsel of record.

Dated: July 20, 2017                    Respectfully submitted,

                                        */s/ William C. Silvis*
                                        WILLIAM C. SILVIS

                                        *Counsel for Defendants*