```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MICHIGAN
 2                   SOUTHERN DIVISION

 3

 4   USAMA J. HAMAMA, et al,

 5        Petitioners and Plaintiffs,

 6   -v-                              Case No. 17-cv-11910

 7   REBECCA ADDUCCI, et al,

 8        Respondents and Defendants.
     _____/
 9

10                   STATUS CONFERENCE

11        BEFORE THE HONORABLE MARK A. GOLDSMITH

12      Detroit, Michigan, Thursday, August 31st, 2017.

13

14
     APPEARANCES:
15
     FOR THE PETITIONERS:     MIRIAM J. AUKERMAN
16                            American Civil Liberties Union
                              1514 Wealth Street, SE
17                            Grand Rapids, MI  49506

18
     FOR THE PETITIONERS:     NADINE YOUSIF
19                            Code Legal Aid, Inc.
                              27321 Hampden Street
20                            Madison Heights, MI  48071

21
     FOR THE PETITIONERS:     MICHAEL J. STEINBERG
22                            ACLU FUND OF MICHIGAN
                              2966 Woodward Avenue
23                            Detroit, MI  48201

24

25
```

```
1    (Appearances, continued):

2    FOR THE PETITIONERS:        KIMBERLY L. SCOTT
                                 MILLER, CANFIELD
3                                101 North Main Street
                                 7th Floor
4                                Ann Arbor, MI   48104

5
     FOR THE PETITIONERS:        WENDOLYN W. RICHARDS
6                                MILLER, CANFIELD
                                 150 West Jefferson Avenue
7                                Suite 2500
                                 Detroit, MI   48226-4415
8

9    FOR THE RESPONDENTS:        WILLIAM C. SILVIS
                                 U.S. DEPARTMENT OF JUSTICE
10                               Civil Division
                                 P.O. Box 868
11                               Ben Franklin Station
                                 Washington, DC   20044
12

13

14

15   David B. Yarbrough, CSR, RMR, FCRR
     Official Court Reporter
16   (313) 234-2619

17

18

19

20

21

22

23

24

25
```

1                         TABLE OF CONTENTS

2                                                              PAGE

3     WITNESSES:

4

5

6

7

8

9

10

11

12

13

14

15                            EXHIBITS

16    NONE

17

18

19

20

21

22

23

24

25

```
1              Detroit, Michigan.

2              Thursday, August 31st, 2017.

3              At or about 2:08 p.m.

4                      --     ---     --

5         THE CLERK OF THE COURT:  Please rise.  The United

6    States District Court for the Eastern District of Michigan is

7    now in session, the Honorable Mark Goldsmith presiding.  You

8    may be seated.

9         The Court calls case number 17-11910, Hamama versus

10   Adducci.  Counsel, please state your appearances for the

11   record.

12        MS. AUCKERMAN:  Miriam Auckerman, ACLU of Michigan

13   for the petitioners.

14        MS. SCOTT:  Good afternoon, your Honor. Kimberly

15   Scott from Miller Canfield on behalf of the petitioners.

16        MR. STEINBERG:  Michael J. Steinberg, ACLU of

17   Michigan for the petitioners.

18        MS. YOUSIF:  Nadine Yousif, Code Legal Aid, on behalf

19   of the petitioners.

20        MS. RICHARDS:  Wendolyn Richards on behalf

21   petitioners.

22        MR. SILVIS:  William Sylvis, Department of Justice on

23   behalf of the petitioners.

24        THE COURT:  All right.  Good afternoon, everybody.

25   Have a seat.  We're having a status conference in the case now
```

1    that the preliminary injunction has been in effect since July

2    24 and the parties submitted last night status reports which

3    are quite lengthy, but the Court nonetheless has reviewed both

4    the petitioners' report and the respondent's report.

5           It appears that there are a number of issues that

6    need to be worked out either by the parties or by me if you

7    can't work them out.  It appears that at least for some of

8    these issues you seem to be continuing to talk and perhaps are

9    making some progress.  There's also a suggestion that perhaps

10   it would be helpful to meet with the magistrate judge who is

11   assigned to this case for some assistance in a resolution of

12   some of the issues or perhaps a global resolution if possible.

13          So my first question is an essay question really in

14   terms of what process would be most effective here.  I have a

15   few and I'm not advocating any one at this point.  I wanted to

16   raise it with you and see what your thinking might be as to

17   what would be a prudent way to proceed.

18          One way to proceed would be to have you continue to

19   talk and also have you meet with the magistrate judge to see

20   what issues could be worked out with his assistance and again

21   those could be discrete issues that you've identified here in

22   the status reports or they could be more of a global nature if

23   that's possible.  Whatever you were not able to resolve, you

24   could then bring back to me in a second round.  You'd give me

25   an updated report and then I would at that point address

1    resolution of those unresolved issues.

2         A second possibility is not to involve the magistrate

3    judge at all.  We could just proceed to have you folks continue

4    your discussions for a period of time and then I would sit down

5    with you and see what is left for me to resolve.  That sit-down

6    would be preceded by an updated status report to let me know

7    exactly what needs to be resolved and what the parties'

8    positions are and under that second scenario if the parties

9    thought it would be helpful to meet with the magistrate judge

10   to talk about a global resolution, if you'd prefer to do that

11   as opposed to having me be part of that discussion, we could

12   arrange for that to happen as well.  So those are at least two

13   ideas I had as ways that we could address at least what

14   currently separates the two sides.  I'm open to hearing other

15   suggestions.  As I say, I'm not advocating at this point for

16   any particular solution.  Let me hear from petitioners.

17        MS. AUCKERMAN:  Thank you, your Honor and I

18   appreciate that the Court looked at everything despite the late

19   hour that it was filed and I, umm, I just want to say that the

20   parties have actually been working very well together on a lot

21   of issues.  The fact that it wasn't a joint report was simply a

22   function of us not being able to get that in by 7:00 last

23   night, but the parties have actually been working very well

24   together and have reserved -- resolved a lot of, a lot of

25   issues.

1          As we indicated in our status report, we are more

2    than prepared to sit down with the government to try to resolve

3    this on a global basis and I think we've also had success

4    resolving a lot of data issues, a lot of smaller issues along

5    the way.  It's a complex case and as a result of that, there

6    are issues that are not resolved.

7          I think there are a number of issues here that we've

8    really reached an impasse at, in particular some of the issues

9    around coercion, some of the issues -- not some of the new

10   allegations around coercion, but the issues with respect to how

11   individuals would voluntarily remove themselves from the

12   protection of this Court's order.  We're very concerned about

13   that.  The parties have discussed that extensively and really

14   reached an impasse, so on that particular issue I'm not sure,

15   for example that further discussion would be particularly

16   helpful.  We also have reached an impasse on some of the

17   reporting issues despite a lot of discussion between the

18   parties.

19          There are sort of two big buckets here of issues; one

20   with respect to coercion and one with respect to reporting so

21   there are definitely issues where I feel I believe further

22   discussion either between the parties or facilitated discussion

23   would be useful, but I also think that it is extremely -- that

24   it would be very helpful to have the Court's guidance on a

25   number of the things that are before the Court today with

1    respect to the pressure that's being placed on individuals to

2    give up their rights and I don't know if the Court had an

3    opportunity to read the declarations that were submitted as

4    attachments.  They're extremely disturbing in terms of what's

5    happening to our clients and so we're very concerned about that

6    and we don't really want that put off, but at the same time

7    we're very -- we're quite prepared to sit down and work on some

8    of the issues where there hasn't been an impasse without --

9    either with the magistrates or without involving the Court so I

10   think there's kind of a combination of issues where we need the

11   Court's guidance and issues that are sort of issues that merit

12   further, further discussion and negotiation, facilitator or not

13   between the parties and we'd certainly welcome facilitation and

14   then on the global issues, we have been as you know from the

15   onset prepared to talk with the government about what that,

16   that might involve and, you know, one of our principal concerns

17   now is the fact that these individuals, you know, if you sort

18   of look at the big picture of this situation here, you know,

19   it's been almost three months since these individuals were

20   arrested and they've been in detention.  They've been

21   incarcerated.  Very few have been released, you know, almost

22   288 people are detained.  We've been working hard to get them

23   lawyers.  About 158 of them have attorneys, 61 don't, about 69

24   we simply don't know and it's very hard for individuals to move

25   forward with their immigration cases because of the delays in

1    the production of the A-files and the records of proceeding and

2    so, you know, that the result of that is that the detainees are

3    becoming increasingly despondent about the prospect of

4    prolonged detention.  You know, if you read these declarations,

5    they talk about how ICE officers have come up and said, you

6    know, you can either stand in line here to sign this form or,

7    you know, you can spend, you know, you're going to stay

8    detained for a year and-a-half, you're going to remain

9    incarcerated for a year and-a-half if you don't sign this form

10   and, you know, then we can get you out of detention and so, you

11   know, three months is a long time and for individuals who are

12   facing this prolonged detention, the fact, the sort of

13   combination of delays coupled with detention, it's not that

14   we're saying the government, you know, is stalling in terms of

15   producing this, it's just that they're also requiring people to

16   be separated from their families, from their jobs, to be

17   incarcerated while all of this is going on and so, you know,

18   it's a very coercive situation.

19          So anyway, to get back to your question, you know, we

20   would like to -- we'd certainly be happy to talk about a global

21   resolution and resolve some of the other, some of the smaller

22   issues that are, where further discussion would be productive,

23   but we do think there are some issues where we've really

24   reached an impasse despite quite a lot of discussion between

25   the parties.

1          THE COURT:  All right.  So do you have a preference

2     regarding how we move forward here or would you want to have

3     magistrate judge sit down with you to look at these discrete

4     issues that you've raised in the status reports?  Would you

5     rather not follow that route and just have me resolve them?

6     Give me your view of what you'd prefer to see happen here.

7          MS. AUCKERMAN:  I guess what we would prefer is to

8     move forward with, umm, and talk about some of the issues today

9     with your Honor, get some guidance from the Court on these

10    issues and then, you know, as we're going through them, we can

11    say that is issue that, you know, we think the parties can

12    simply resolve, this is an issue that might need 'cause there

13    are a lot of issues.  I mean, one of the things that might be

14    helpful given the case's complexity is instead of having

15    ongoing status conferences or something because we're aware

16    that a lot of things have accumulated and the Court is

17    presented now with the sort of long list of things that really

18    fall into these two buckets of coercion and reporting, but

19    there are a lot of issues to resolve and there's things, for

20    example, with respect to the protective order, cases are moving

21    in the immigration court system.  We need to have the Court's

22    assurance that we don't think there's even an issue with that,

23    but that needs to get addressed sooner rather than later so

24    that we can start filing amicus briefs in the immigration

25    system so there's a bunch of issues that are time sensitive so

1    I'm concerned about the sort of the ones that are time

2    sensitive and we'd like to get some, some guidance from the

3    Court on those issues.

4            THE COURT:  Okay.  All right, Mr. Sylvis?

5            MR. SILVIS:  Thank you , your Honor.  Just to answer

6    the specific question the Court asked just about the process, I

7    think it would make sense.  I think we have reached impasse on

8    several of these issues and it would be probably the best to

9    sit down with the Court today and talk through some of those

10   and some of them that may be meatier or takes more time, we

11   would of course not object to meeting with the magistrate judge

12   as well, but I think there are some issues that require more

13   immediate attention.

14           Just to answer your questions, I could go into detail

15   about the affidavits that were served on us basically

16   simultaneously with the Court and that we ask the Court not to

17   consider those, but we can get into that in more detail later

18   if you'd like, but particularly with those allegations in

19   coercion, I mean, we're learning about those at the same time.

20   We've asked for details; we didn't get them.  You can see from

21   many of these declarations that they're signed almost the same

22   day as the filing.  So we're looking into them, we've also

23   asked for this information and we take them very seriously, but

24   to the extent that you would consider any of those affidavits

25   with any decisions today, we ask that you hold off on doing

```
 1   that until we've really had an opportunity to review them.  I
 2   mean, for example, for one of the declarations, we had a chance
 3   it was served yesterday, we looked up, we believe we've located
 4   the individual they're discussing and we found that a lot of
 5   the facts are simply incorrect and we have our own affidavit
 6   that we could offer as well to sort of explain that, so the
 7   point being is there's two sides to these.  You know, we're
 8   kind of sandbagged with these declarations at the last minute
 9   so we'd like to at least have an opportunity to respond to
10   those to the extent that the Court was going to rely on them,
11   but that being said, I think the Court's question was a more
12   direct one as to the process and I think it would be very
13   helpful to sit down today and, you know, talk through some of
14   these issues.
15           THE COURT:  All right.  Do you want to sit down in
16   our jury room or you want do it here or do you not care?
17           MR. SILVIS:  It's your Honor's preference.
18           THE COURT:  Do the petitioners care where we do this?
19           MS. AUCKERMAN:  Whatever your Honor prefers.
20           THE COURT:  All right.  Well, let me do this then.
21   It sounds like both sides would like to at least identify what
22   are the issues are -- what the issues are that either are at an
23   impasse at this point or are going to require some further
24   investigation and study, so I'm just going to start with the
25   petitioners' status report.
```

1            Well, let me start with at least the following issue

2    which I think may be discussed in a few places in the report

3    and that has to do with efforts to obtain counsel for detainees

4    who are currently unrepresented.  Page seven and eight of the

5    report discuss that.  The report states that petitioners'

6    counsel's working with a national law firm to address that

7    issue.  What specifically would you want the Court to do in

8    regard to that?  I'm talking about the broad issue of getting

9    counsel to those who are currently unrepresented.  What if

10   anything do you want the Court to do about that?

11            MS. AUCKERMAN:  So, there are two -- this, you know,

12   this ties -- in terms of sort of the process of accessing

13   counsel, we are working with a lot of different national law

14   firms which this sort of national coordination going on around

15   that.  There are a number of different pieces there that are

16   relevant for this Court today.  There are issues related to our

17   request that ICE be prohibited from discussing the case with

18   detainees.  If you look at the declarations and I understand

19   that Mr. Sylvis is saying that these issues, he got the

20   declarations recently.  We've raised these issues with him,

21   some of these issues with him at the beginning of August on a

22   phone call including the location, but, you know, if you look

23   at these issues, if you look at the declarations --

24            THE COURT:  Let me -- I'm sorry to interrupt you, but

25   is this goes to be just a coercion kind of analysis?

1    MS. AUCKERMAN:  Right.  The detainees are saying that

2  they're being told if you get a lawyer, if you fight your

3  deportation, you're going to be, you know, if you fight your

4  deportation, you're going to be in detention for a year

5  and-a-half, you know, and so the detainees are saying we're not

6  getting lawyers, but they're afraid to get lawyers because they

7  are afraid of prolonging detention --

8    THE COURT:  No, I understand that.  I just want to

9  know is there something else in connection with getting lawyers

10  that you want the Court to address other than the coercion

11  issue?

12    MS. AUCKERMAN:  So there are two -- there are two

13  other issues.  One has to do with a protective order and there

14  are two pee -- or I should say there's one issue that sort of

15  has two parts to it.  A lot of these cases, umm, you know,

16  there's a very large volume of these cases now going before the

17  immigration courts.  That creates, you know, a logistical issue

18  for the immigration courts because they don't necessarily want

19  to hold, you know, 288 hearings on country conditions in Iraq.

20  The same time for class members, there are issues with respect

21  to getting, you know, access to experts and so forth because

22  there's a limited number of experts and so one of the issues is

23  sort of can we find a way to coordinate all of that.  That's

24  not your Honor's problem except to the extent that it

25  implicates the protective order.

1          It is our view that week share information -- we

2     should be able to share essentially what's the kind of

3     immigration court equivalent of docket information, right, so

4     the name, A number and the status of the preceding and the

5     attorney so we can identify how many cases, you know, who are

6     all the attorneys who have cases in the Detroit immigration,

7     you know, before the Detroit immigration judges and then try to

8     work with those individuals to coordinate some of these

9     logistical issues.  Our view is that that not confidential or

10    protected information and therefore we should be able to share

11    it.  The government disagrees on that and so that's an issue.

12    We want to be able to move forward with that because those

13    proceedings are moving quickly.

14          There's a similar issue with respect to the

15    Immigration, to the amicus effort before the Board of

16    Immigration Appeals.  There are a number cases that are at the

17    BIA level now.  In those cases, the Hamama counsel, the

18    organizations involved so it would be the ACLU of Michigan, the

19    National ACLU, Michigan Human Rights Center Iraq and Code are

20    planning to file amicus briefs to help educate the BIA.  A lot

21    of these motions were filed on an emergency basis very early

22    on, very bare bones without a lot of the, you know, without

23    having the A files, without having the RIPs, without having

24    countries experts, all of those sorts of things.  We think that

25    the BIA would appreciate and we would certainly want the

1    opportunity for the Hamama petitioners, the organizations

2    representing the Hamama class to be able to file amicus briefs.

3    That requires as a practical matter again the ability to share

4    what's docket information, right, so name, A number, counsel

5    and the status of the proceeding with a law firm that's offered

6    to coordinate that amicus filing effort, you know, which

7    requires filing a lot of the same amicus brief in lots of the

8    different filings, so mechanically for your Honor the question

9    is really can we share that information.  We don't think in

10   having looked at the protective order that it's covered by the

11   scope of that, but we certainly would not want do anything that

12   would violate this Court's order.

13        THE COURT:  Okay.  So in terms of the issue of

14   getting lawyers to the unrepresented detainees, there are two

15   major issues.  One is the coercion issue and one is this

16   sharing of information?

17        MS. AUCKERMAN:  Right.  That's actually more about

18   coordinating the representation of the ones who are represented

19   and whose cases are either before IJs or in the BIA.  The

20   unrepresented, it's really more a question of sort of coercion.

21   Also I should add issues around notice of transfer because

22   again the transfer has continued to be an issue.  If we, you

23   know, if we have a law firm that says hey we'll go out and

24   we'll interview these people, if we can't figure out where

25   people are and information that we got can be three weeks out

1    of date because we get it about a week old.  There's a two-week

2    gap in the amount of time, you know, two-week reporting cycle

3    so by the end of the reporting cycle, the information we have

4    is three weeks old.

5            There is an online detainee locator.  Some of the

6    issues with respect to Youngstown have been addressed.  We

7    checked that this morning and we appreciate the government

8    fixing that issue, but there are other issues with respect to

9    the online locator where we, you know, when the detainees were

10   moved from Florence.  It took days to figure out where they'd

11   ended up, you couldn't figure it out on the online locator and

12   so we can't get lawyers to people if we don't know where they

13   are and so that's an issue.  We had asked in the status report

14   for notice that and we would also be willing to accept simply

15   the government's assurance that if we call the field office,

16   they could tell us where these people are and let us actually

17   go see them.  We've had issues with trying to go visit clients,

18   being told no, you can't, you know, you can't go in for another

19   week, you don't have a D28 on file, you can't go for a week,

20   that kind of thing so we really, you know, it's hard for us if

21   people are being moved around, we don't know where they are,

22   those kinds of things so those are the issues that have impeded

23   representation.

24           THE COURT:  All right.  Now are any of these issues

25   impasse issues as you view them?

1        MS. AUCKERMAN:  Well, certainly the coercion issue is

2  an impasse issue.  The protective order issue is just recently

3  arisen.  I don't know, I'll let Mr. Sylvis tell you if that's

4  an impasse issue or not.

5        THE COURT:  Well, I heard Mr. Sylvis say they're

6  investigating these claims of coercion and that in some

7  instances, maybe all the instances they've just learned about

8  them so why would that be an impasse issue at this point if

9  they're still looking into it?

10        MS. AUCKERMAN:  The impasse issue has more to do I

11  guess with the voluntary departure piece which is separate and

12  then the --

13        THE COURT:  I'm sorry, the voluntary what?

14        MS. AUCKERMAN:  The issue of voluntary departures, so

15  individuals who, you know, being asked to sign forms.  There,

16  we are definitely at an impasse.  That issue is at an impasse.

17  With respect to the, our request that ICE officers not

18  communicate regarding the, this litigation, the parties

19  obviously disagree on that issue as well.  While I think

20  there's a desire by, you know, although -- they would like to

21  provide their counter-affidavits.  We have, you know, I'm not

22  sure that that's an issue that's going to be -- certainly the

23  Court may would not more evidence on that issue, but that's a

24  different issue about whether it's a resolvable issue because I

25  think our position is going to be that, you know, this coercion

```
 1    is happening and that we want to have that prohibition on

 2    communication regarding the litigation because that's what

 3    we're hearing from the detainees and I understand that

 4    Mr. Sylvis may be hearing different things from his clients.

 5    That's a, you know, that's an evidentiary issue rather, so and

 6    then the protective order issue, we do need to have, be able to

 7    move forward on that.

 8              THE COURT:  All right.  I understand you need to move

 9    forward with that, but do you think you've exhausted your

10    efforts at trying to work that out with the government?

11              MS. AUCKERMAN:  Umm, yeah, unfortunately I think that

12    may be one that we -- I mean, our view is that we need to be

13    able to share this information and unless the government is

14    willing to agree that we can or maybe it's a question of, I

15    mean, the government's concern here is Privacy Act issues.

16    Again, we don't think this information is even confidential to

17    begin with, but if there are Privacy Act issues, you know, the

18    provision of the Privacy Act specifically provide for

19    exceptions for court orders.  I can get you the cite on that if

20    you want, your Honor, and so we don't see that as a being

21    something that should stand in the way of what we think is a

22    very reasonable and important effort to try to make sure that

23    people, to make sure that the immigration courts have a

24    logistically feasible way to handle these hundreds of cases and

25    that the BIA has the information that it needs to make informed
```

1    decisions about the facts and the law in all of these cases.

2            THE COURT:  All right.  Well, you've talked in your

3    report about releases and custody reviews.  Is that an issue

4    you think you've reached an impasse over?

5            MS. AUCKERMAN:  That, I think we may -- I -- that may

6    be worth some more discussion, but I, unless again the

7    government has indicated that they're not willing to provide

8    that information and that information is absolutely critical

9    because, you know, our view is that these individuals should

10   have had individualized custody reviews long ago.  As a

11   practical matter, many of them are coming up for 90 day

12   reviews.  We need to know the outcome of those reviews in order

13   to determine how to proceed with respect to detention.  You

14   know, if those are real reviews and individuals are being

15   released and these individuals were living out in the

16   community, you know, reporting regularly under supervision.

17   It's not clear to me why they need to be in detention when they

18   were reporting regularly before under orders of supervision and

19   so, you know, these individuals are just sort of rubber stamped

20   continued detention, that is extremely concerning so we need to

21   have that information.  That's, that's really, umm, critical

22   for the future of these class members.

23           THE COURT:  Well, I understand everything you put in

24   your report is important.  That's not what I'm trying to

25   understand right now.  What I want to know right now is what

1    issues would benefit from some further discussion with the

2    government and what issues won't.  That's what I'm trying to

3    figure out right now.

4         MS. AUCKERMAN:  Right.  I don't think that issue is

5    an issue where we're likely to make a lot of, a lot of

6    progress.  I should say -- well, I'll take that back a little

7    bit.  I think that, you know, we are willing to, umm, in light

8    of some of the things that they've said, we're willing to sort

9    of moderate our request a bit so maybe there is some room for

10   discussion about exactly what information we would need and the

11   related, the related piece of that, I mean, the detention

12   issues are from our perspective very time sensitive which is

13   why we attached the discovery request.  We'd like those to be

14   responded to very quickly.

15        You know, there's also this issue with Iraq.  If

16   individuals are being detained whom Iraq will not take back,

17   right, we're under -- we have reports that not only that

18   individuals can't get travel documents, but they're being told

19   that Iraq will not take them back.  If that's the case, their

20   detention, every single day that they're detained is illegal

21   because they're no likely to be removed in the foreseeable

22   future so we need to have information about what's going on

23   with, you know, whom Iraq is willing to take back, who they're

24   not willing to take back, what's going on with that and the

25   government is saying that, you know, that they won't provide

```
 1    that information either.  So we would like to move forward on,

 2    on that piece of discovery.

 3           As we indicated, we don't think necessarily -- we

 4    think that sort of talking about global settlement is probably

 5    preferable to moving into full-scale discovery, but there is

 6    discovery with respect to detention issues that needs to move

 7    forward because there are almost 300 people sitting

 8    incarcerated, you know, right now.

 9           THE COURT:  All right and did the definition of the

10    class, an issue's been raised regarding that.  Is that

11    something you're at an impasse?

12           MS. AUCKERMAN:  I think actually that we, both of the

13    parties may have framed that a little bit incorrectly so I

14    think the answer is no.  To your question, I think that's an

15    issue -- so I think that there are two pieces to that.  One is

16    really kind of the class definition and the scope of the

17    relief.  Those are issues that are in the process of being

18    briefed for the class certification motion so I don't really

19    think that those need to be decided today.  Those, there's a

20    whole sort of separate briefing track around the class

21    definition, but I think the piece of it that is really before

22    the Court today and is about reporting and whether or not

23    individuals -- so the sort of the discovery side of it, right,

24    whether or not individuals who had their motion to reopen, you

25    know, who filed on June 15th, had a motion to reopen on June
```

1    23rd, whether those individuals are included in the reporting

2    requirements because what happened, what has happened is we

3    don't know -- the government takes a position that once

4    someone's motion to reopen is granted, that if they were

5    granted before, they don't have to report on those so we don't

6    know how many of those people there are, whether they were

7    released, what the status of their cases is so we don't have a

8    comprehensive sense of what's going on.  So it's that, that

9    piece of it I think we're at a bit of a loggerhead about, but

10   the larger sort of class definition issue I think can be set

11   aside for today.

12        THE COURT:  What about class notice?  Is that

13   something that you've reached an impasse over?

14        MS. AUCKERMAN:  So we were making very good progress

15   on this issue and I thought that we had it resolved or were

16   very close to resolved.  The, umm, what the government proposed

17   was that they -- we, you know, we prepared a notice, a sort of

18   KYR know-your-rights document that was distributed at

19   Youngstown as part of a know-your-rights presentation there.

20   We modified that.  We're going to send that out to class

21   members.

22        There's also this issue of sort of the designation of

23   the A-files and record of proceedings, who's going to get those

24   documents when they're transmitted and where we, we had sort of

25   an agreement on that, but I think we all agreed that it would

1   be simpler to do it that way rather than to have a

2   court-ordered notice which would be the alternative.

3           Where the piece that we really ran into problems with

4   where there really is just an impasse has to do with this issue

5   of how people can -- people who want, who want to return to

6   Iraq, what the process is for identifying those individuals and

7   determining that their decision is knowing and voluntary and

8   not coerced and our view is that, you know, we don't have a --

9   hey, we've stipulated to removal of one individual already

10  because that person had counsel, clearly made a knowing and

11  voluntary choice to and this Court signed that order.  This

12  Court said that we should be doing these by stipulation.  We

13  don't -- we don't believe that individuals can make those kinds

14  of -- that we're very concerned about coercion given what you

15  see in the affidavits about, you know, ICE telling people if

16  you fight your case, umm, you know, you're going to spend a

17  year and-a-half detention, telling people you've got to sign

18  this form or you're going to get prosecuted, those kinds of

19  things, right?  So we're very concerned about just, you know,

20  ethically honestly as a lawyer I don't feel comfortable

21  stipulating to the removal of someone who is potentially going

22  get killed if they, you know, just based on form that is

23  presented to me where I have no idea what information was told

24  to this person and, you know, whether that person made a

25  knowing and voluntary choice.  We want to make sure that -- we

1    think honestly from the Court's perspective, the Court is going

2    to want to have assurance that individuals are making, if they

3    make that choice, it's not done under coercion, but that it is

4    done knowing and voluntary and with a full information about

5    what their immigration options are and what their likelihood is

6    of being in prolonged detention because prolonged detention in

7    these conditions with this kind of abuse is very, very,

8    coercive and so, you know, not that people can't make those

9    choices, people certainly have the freedom to do that, but we

10   want to know that it's, that it's voluntary and so the process

11   that we proposed and you have the form as an exhibit was simply

12   that people would, umm, it's at the, I believe it's the very

13   last of the exhibits and it's or actually I'm sorry, I believe

14   it's B, Exhibit B, page ID 2445.  So if you look at that form,

15   you'll see what we're basically suggesting is that this form go

16   out, individuals say if an individual has an attorney and they

17   want to be removed, that attorney would contact that Hamama

18   counsel and the Department of Justice and then we'd enter a

19   stipulation.  Very simple, just is we did in the other case.

20         If an individual's unrepresented, this is where it

21   really comes up is with the unrepresented individuals.  The

22   individual would say I don't have a lawyer and I want to be

23   promptly removed and then we would work to identify a lawyer,

24   not one of the Hamama counsel because we don't want there to be

25   any conflicts, but an independent immigration attorney who

1    could go out.  If the detainee does not want to meet with that

2    person, there's no obligation to meet with that person, but the

3    detainee would have the opportunity to meet with an attorney,

4    find out what their options are, umm, and if -- and then, you

5    know, would either sign a form or the attorney could submit a

6    declaration, but there would be a process then based on that to

7    enter the stipulations for the removal.  That way we know that

8    people are making -- are not making -- are not being coerced

9    into removal, but are actually given an informed choice.

10          The government's alternative form which you also have

11   in their exhibits basically function as a waiver, you know,

12   essentially says I waive my rights, I don't want an attorney,

13   I'm going to be -- I accept deportation and we're just not

14   comfortable stipulating to removal under those circumstances

15   when individuals --

16          THE COURT:  Pardon mow.  Are you at an impasse on the

17   notice issue?

18          MS. AUCKERMAN:  We are at an impasse on that.

19          THE COURT:  Okay.  Now as far as the the transmittal

20   of A-files and requisite proceedings, the government says it's

21   working on it, it's not so simple, no central location for some

22   of these documents, have to be reviewed, scanned, so is that

23   something that you're at an impasse over?

24          MS. AUCKERMAN:  I would say that, umm, we are at an

25   impasse about, less about the timing of the production.  There,

1   we really just want to know.  We understand it's going to take

2   some time.  How long it takes affects the detention issues, but

3   we know it takes time.  That's why we asked for time to begin

4   with, but that's time with detention.  I think we are at an

5   impasse on the issue around to whom the class members' files

6   go.  Actually, you know what, I should take that back.  I

7   actually think that there may be some room for discussion

8   around those issues, would you say?  Yeah, I would say that

9   that's an issue that I think we can, certainly with

10  facilitation and maybe even without that, that we could work

11  out.

12          THE COURT:  All right.  Now what about the production

13  of detention information?  Is that something you still can talk

14  to the government about or are you at an impasse at that, over

15  that?

16          MS. AUCKERMAN:  I --

17          THE COURT:  These are the 90 day review issues?

18          MS. AUCKERMAN:  Yeah.  I think that would be worth a

19  conversation today.  If we can't resolve it today, it's time

20  sensitive and so I think we would need to move forward on, get

21  the Court's direction on it.

22          THE COURT:  All right.  The status of Iraq's

23  agreement to accept class members.  Is that something worthy of

24  some more conversation?

25          MS. AUCKERMAN:  I don't think we're going to reach

```
 1    agreement on that.  I guess what we'd like on that is to
 2    proceed with discovery on that issue.  The government has
 3    objections.  It can certainly raise those, but that the Court
 4    give a date for response to the discovery that we're serving,
 5    that we'd like to serve of September 15th and then if, you
 6    know, depending on what they produce, if there are issues there
 7    that we can't resolve, then when we come back to the Court
 8    about what is or isn't produced.  I think that's the cleanest
 9    way to handle that and I guess I should add there's actually
10    sort of two separate issues.  One is the documents regarding
11    the communications between Iraq, umm -- well, they're sort of
12    related.  One is getting information about whom Iraq is
13    actually going to accept and the second is identifying the
14    individuals whom Iraq is not going to accept so that those
15    individuals can get released 'cause they shouldn't be detained
16    and the one sort of follows from the other 'cause we don't know
17    who's been improperly detained until we know whom Iraq won't
18    take back.  You know, we just don't know.  We don't know what's
19    going on with that.
20         THE COURT:  Would that not be an issue that would be
21    raised in front of the immigration courts?
22         MS. AUCKERMAN:  That's a good question, your Honor.
23    Well, that's really actually a detention issue so it's really
24    a, it's a habeas.  That's a -- I mean, the piece of it that is
25    of concern to us is whether they're detained while this is
```

1    going on, right?  So you could have the immigration judge say

2    no, umm, you know, this person has no opportunity for relief,

3    final order or reaffirm that there's a final order.  The person

4    could be indefinitely detained basically -- well they, I mean,

5    they can't be indefinitely detained.  That's the point.  That's

6    the Constitutional point and it's been decided that they can't

7    be indefinitely detained, so it's really not the immigration

8    court that's making that decision, it's really a question of if

9    there's no foreseeable likelihood that the individual can be

10   removed, they cannot be incarcerated and for individuals whom

11   Iraq will not actually repatriate, those individuals can't be

12   detained because there's no foreseeable likelihood that they

13   could be returned and we just don't know, we don't know whom

14   they will or won't take and we don't because we don't have any

15   of those documents and so we can't identify, you know, say they

16   said, you know, we won't take people who are not in our

17   national citizenship database or something, right?  Then we

18   need to try to figure out who those people are and then those

19   individuals should be, you know, being released, but if, yeah,

20   so it's a difficult, it's a thorny problem, but it starts with

21   really figuring out what's going on in terms of these

22   repatriations.  The government is saying that they're, you

23   know, Iraq will take these people back, but we have instances

24   of individuals who were in detention, you know, after this

25   agreement, before this Court's order who were not removed.  We

1    have reports of individuals who are being told that they will

2    not be removed 'cause Iraq won't take them back.

3              THE COURT:  Okay, well, let me just interrupt for a

4    second here.  Our focus has been on issues other than the

5    detention issues.  You're now introducing this in the status

6    report and I've asked before where in our case are we going to

7    get to the detention issues that are set out in the complaint

8    and I was told that's something that will come later, stay

9    tuned, so I am not sure how I'm going to be equipped at this

10   point to start making decisions about detention issues when we

11   haven't really briefed any of that and I haven't really seen

12   what, what your claim is or what my authority is to monitor the

13   detention system.  Is this a little premature in the sense that

14   you haven't really laid the groundwork for it?

15             MS. AUCKERMAN:  I think, your Honor, to be clear

16   we're not asking you to decide on detention issues right now.

17   What we're essentially asking for is discovery that is related

18   to detention.  So, you know, there's discovery that could be

19   had related to the issues that have already been decided and as

20   we set out in our status report, we don't think that that's a

21   very productive use of anybody's time.  We have gotten to the

22   point now where detention issues are very ripe and so we don't

23   think that, umm -- we're not asking the Court to make decisions

24   on detention.  What we're asking for essentially is discovery

25   related to detention so that we can then depending on what

1   happens, depending on what we find out, come back to the Court,

2   depending on what we're not able to resolve, right?  If it

3   turns out that Iraq's not taking back X, Y and Z people, I

4   would hope that the government would agree that those people

5   need to be immediately released or if it turns out that, you

6   know, it may also turn out that the government is doing these

7   custody reviews that are due at 90 days.  If it turns out, the

8   government I would hope would say look, it's going to be a long

9   time until these individuals, you know, while these cases are

10  winding their way through the immigration system, these

11  individuals were living in the community, reporting, they're

12  not a flight risk, they're not a danger to the community,

13  they've been living there for a long time and if the government

14  decides hey, at these 90-day custody reviews we're going to

15  release almost everybody except for, you know, these three

16  people who, you know, we're concerned about, we wouldn't be

17  coming back.

18          (Pause)

19          MS. AUCKERMAN:  So essentially what we're trying to

20  do is actually develop the information so that we can lay the

21  groundwork for you so that if becomes necessary, we can come

22  back to the Court.  You know, again if most of these people get

23  released at 90 days, you know, we won't need to come back, but

24  if that doesn't happen and, you know, we're hearing all sorts

25  of different things.  This is why we need to have information

```
 1   about what's happening because we can't make informed
 2   decisions.  This Court can't make informed decisions unless we
 3   know whether or not people are getting released, what the basis
 4   is, if their continued detention, what the basis is.  There's a
 5   question, for example, about whether or not individuals are
 6   subject to mandatory detention.  There are all sorts of legal
 7   issues around that.  There are issues about when there's a, you
 8   know, as the government points out in the brief there's a sort
 9   of six-month period or there's a 90-day period actuality.  You
10   know, we read that statute to run from, you know, back when the
11   final order was issued; they read it at a different point.  All
12   of those legal issues we can't really brief those or bring
13   those to you until we actually have the factual background and
14   that's why we're asking for discovery on that.
15              THE COURT:  All right.  I'm not making a ruling now,
16   I'm just gathering information really on a threshold issue of
17   how should we set up a process, but I do want to alert you to
18   the fact that for me to make decisions at some future point
19   regarding discovery, I do need to understand better the nature
20   of the claim and what you're ultimately seeking because I have
21   to make some kind of an analysis about whether discovery is
22   relevant to an issue that I'm going to have to rule on and then
23   consider what the cost of that discovery is, how proportional
24   it is to whatever benefit so I can't in a vacuum make a
25   discovery dispute decision without knowing more about what the
```

1    claim looks like and how I might have to potentially fashion

2    relief, but we can talk more about that later.  At this point,

3    I'm just trying to find out what would benefit from further

4    discussion between you and the government and maybe this is one

5    of those issues, maybe it's not, I don't know, we'll see.  All

6    right.

7            MS. AUCKERMAN:  If I may, your Honor, just on that

8    point?

9            THE COURT:  Yes.

10           MS. AUCKERMAN:  I think one of the things that we've

11   been thinking about is sort of how does this, how does this

12   case progress and I know that's been on the Court's mind and

13   we're sort of trying to walk a middle path here.  Normally a

14   case after there's a preliminary injunction, then you move into

15   discovery, then you move toward summary judgment.  You know,

16   there's sort of a normal progression of how these cases get

17   handled.

18           What we're suggesting is really that instead of going

19   into full scale discovery, we try to settle some of these

20   issues, but that we move into discovery onto, you know,

21   essentially what we're asking I guess is for permission to move

22   into discovery on some of these other issues, but we

23   understand, I mean, that would be the normal course.  I don't

24   know if your Honor's saying that you would need to before

25   deciding whether we can move into discovery as would normally

1    be done, you would need further information.

2          THE COURT:  Well, I can tell you I'm going need to

3    understand better what role the detention issue plays in our

4    case because up to this point we've only talked about whether

5    or not the putative class members have some kind of habeas

6    right or due process right regarding access to the immigration

7    court system and the Court of Appeals for review purposes

8    regarding removal.  We haven't addressed at all what is the

9    legal significance of the fact that many of these putative

10   class members are detained and potentially being detained for

11   long periods of time and I'm still not sure what role this

12   Court is supposed to play in resolving whatever the dispute is

13   regarding that issue.

14         I don't know if you envision this Court entertaining

15   bond questions that might be raised by putative class members

16   or whether you expect the Court to be issuing some kind of

17   class-wide decision regarding detention issues.  I have no idea

18   because it hasn't been briefed so if you were to ask me now to

19   order certain information to be turned over in connection with

20   detention, I think we're going to have to see how we lay the

21   groundwork for that.

22         In any case, let me just ask regarding future

23   proceedings, you sort of began to touch on this. It's an

24   unusual kind of case in which much of what I think the

25   plaintiffs were seeking was some kind of immediate relief from

1    removal without having an opportunity to present their case in

2    court and that seems to have been accomplished, so I'm trying

3    to understand what further proceedings we may need to

4    anticipate and schedule for.  I know what we've already

5    scheduled is the motion for briefing on class certification.  I

6    don't know whether that's an important undertaking for us to

7    pursue right now or whether we should be pursuing these other

8    issues or whether we should be engaged in a multi-front kind of

9    exercise here, so let me throw that out as another essay

10   question for you.  How do you view the future of the

11   proceedings here?

12           MS. AUCKERMAN:  So it's, it's still -- you can ask

13   the government this.  To our knowledge they have not yet made a

14   final determination about an appeal of this Court's preliminary

15   injunction order so we're waiting to see what happens with

16   that.  There -- there are a couple different possibilities.

17   One of the things obviously would be to, for the parties to go

18   into discovery and then sort of broad-scale discovery and then

19   essentially seek summary judgment on the same issues that were

20   before you before with respect to, umm, that were decided in

21   the preliminary injunction that would essentially be kind of

22   the equivalent of like a consent order in an institutional

23   litigation case or something like that, right, with subsequent

24   monitoring to make sure that it's all sort of handled

25   appropriately, that kind of thing.  That would be one option.

```
 1    We think that's a lot resources just given the sort of unusual
 2    nature of this case and the fact that things are time
 3    sensitive.  I think that, you know, we could spend, you know we
 4    could all spend, you know, eight months, the Court could spend
 5    an enormous amount of time on that and, you know, by the time
 6    that the Court would make that decision, it would -- most of
 7    these cases might have been decided or be pretty far along so
 8    we don't think that's a particularly wise investment of
 9    anybody's time.
10          On the other hand, we are very, very concerned about
11    the detention issues and it's a little bit of a chicken and the
12    egg problem.  We certainly understand that the Court wants to
13    understand more.  We have not, you know -- our priority was to
14    make sure that people were not sent back to Iraq and tortured
15    or killed, but, you know, and we're obviously very pleased that
16    the Court has prevented that from happening while individuals
17    access the immigration system.  The problem that we're
18    confronting today is that these individuals are in detention
19    and for us to be able to provide the Court with -- to figure
20    out what this Court's role if any might be in that, we need to
21    understand what's going on because depending on what happens,
22    there may or may not -- there would be different roles for this
23    court or maybe no role for this Court.  We don't really know
24    because we don't know what's happening so again if everybody
25    gets released or if most people get released, there's a rubber
```

1    stamp process.  If there's other habeas actions that are filed

2    by individuals.  I mean, there's a whole series of things that

3    could happen with respect to detention and some of the legal

4    standards are also really important.  So to give you an

5    example, it is our view that individuals who have a motion to

6    reopen granted are not, would not fall within the mandatory

7    detention standard because of the lapse in time.  The

8    government's view is the opposite so there are sort of legal

9    issues that affect large numbers of people with respect to

10   detention, but we don't know which ones those are because we

11   don't know how many people are being detained who are, you

12   know, fall into these different categories, those kinds of

13   things and so what we're trying to do is get the information so

14   that we can educate ourselves and determine what an appropriate

15   role for this Court, if any, there might not be one, we

16   don't -- we think that there may be because we're concerned

17   that there, you know, that this detention is going on that

18   there is going to be a rubber stamp process, but we need to

19   know whether, what happens in order to be able to come back to

20   this Court and say this is what's going on, this is the relief

21   that we're requesting and we can't make an assessment of that

22   until we know what's actually going on on the ground and we

23   just don't have that information.

24           THE COURT:  Well, I assume you have some facts

25   regarding improper detention of somebody even if you don't know

1    how wide-spread the alleged, allegedly illegal process or

2    practice is.  In other words I assume you're not just saying

3    well the government may be doing something wrong so give us

4    discovery to see if they are.  Don't you have some facts, some

5    individuals who have suffered some kind of allegedly

6    unconstitutional or otherwise illegal process regarding their

7    detention?

8            MS. AUCKERMAN:  Right, so the question is is really,

9    so for example with respect to final orders of removal, the

10   statute provides that for a 90-day period of detention,

11   mandatory-90 day period of detention after the final order of

12   removal is issued.  The government takes a position that that

13   process applies when the people are re-detained.  Our view is

14   that that is not the case, that all of these individuals should

15   have had custody reviews basically right away to determine if

16   they're flight risk and they should have been released if they

17   weren't in danger of flight risk.

18           As a practical matter, we're close to the 90 days and

19   so our view is let's see what happens with those 90-day reviews

20   and then, you know, move forward after that.  Our view is that,

21   you know, a lot of this detention should -- there should have

22   been an individualized determination much, much earlier.

23           THE COURT:  Well, I guess what I'm saying is it

24   doesn't sound like it's discovery issue as much as it's simply

25   a legal issue.  There must be at least one person, you're

1    saying there are many, maybe all who are at this point where

2    the government is improperly applying the 90-day rule, right?

3    So does it make a difference for your purposes whether that's

4    happening to two people, 20 people, 200 people.  If you want me

5    to rule that that's illegal, why don't you file a motion and

6    have me rule on it?

7         MS. AUCKERMAN:  Because I -- our -- what the relief

8    we would be requesting may as a practical matter happen if the

9    government releases these individuals in the 90-day custody

10   reviews, so we thought as practical matter let's see what

11   happens --

12        THE COURT:  But after that -- I understand, so after

13   that period, would you be in a position then to file a motion

14   for a ruling?

15        MS. AUCKERMAN:  If we know what's happening with

16   these individuals which we don't unless we get discovery and

17   the same thing with respect to the individuals who get the

18   motions to reopen granted and then would be eligible for bond

19   hearings.  If the government takes the position which we don't

20   know whether they're going to take that position because they

21   haven't, they haven't told us.  If the government takes a

22   position that those individuals are subject to mandatory

23   detention and we think they're not and, you know, we're being

24   told that they're likely to be found that, but we don't know

25   because we haven't seen their custody reviews.  If they're

1    still detained without a bond hearing to determine whether they

2    can be released, you know, so that's why it is a bit of a

3    chicken and the egg problem, your Honor.  I don't mean to make

4    this difficult, but it is -- we really want to be able to

5    present you with --

6              THE COURT:  It's okay.  It's okay to make things

7    difficult.  I don't mind trying to solve difficult problems.

8    They're more challenging sometimes, but if you have any simple

9    problems, I'm happy to try to resolve those, too.

10             MS. AUCKERMAN:  We'll try to present both, your

11   Honor.

12             THE COURT:  All right.  So let me get back to the

13   issue of class certification.  Is there any pressing need to

14   resolve that?  As we look at all the things we need to cover in

15   case in the immediate future, we have all of these discovery

16   issues, adjustments potentially to the injunction order, I'm

17   just trying to prioritize.  In your view, how important is it

18   for us to take up the issue of class certification?

19             MS. AUCKERMAN:  Your Honor, we'd effectively been

20   proceeding as class counsel here and, you know, the Court has

21   already issued class-wide relief.  We don't see that as one of

22   the highest priority issues, certainly in terms of there are

23   other things that are much more important here I think in terms

24   of the Court's attention and the parties' attention.

25             THE COURT:  Okay.  All right.  Was there anything

1    else you wanted to mention then regarding what's at impasse,

2    what isn't at impasse?

3              MS. AUCKERMAN:  I think that -- thank covers it, your

4    Honor.

5              THE COURT:  Okay.  All right, let's do this.  Let's

6    take a short recess.  We'll come back at 3:30.  Thank you.

7              (Recess taken at 3:13 p.m.)

8              (Reconvened at 3:40 p.m.)

9              THE CLERK OF THE COURT:  Please rise.  Court is back

10   in session.  You may be seated.

11             THE COURT:  All right.  Mr. Silvis, do you want to

12   share your views on where you think there may be an impasse and

13   where you think there might be some basis for further

14   discussion?

15             MR. SILVIS:  Yes.  Thank you, your Honor.  I'd like

16   to start with I think what would be good news.  We've had an

17   opportunity to talk during the break about some of the issues

18   and I think that there's no -- we can either put off or further

19   discuss with both sides.  One of the first issues is that we'd

20   requested and respondent status report to move the reporting

21   dates by this Court's preliminary injunction order to

22   Wednesdays instead to allow for more complete reporting or more

23   timely reporting.  The petitioners' counsel indicated that they

24   didn't object to that so beginning with the report that would

25   be due this coming Wednesday, we would ask if the Court could

1    modify the order and allow it to be reported every other

2    Wednesday instead of Monday.

3              THE COURT:  Okay, that's fine.

4              MR. SILVIS:  In terms of, I think we discussed a

5    little bit about the A-files and ROPs and once those are ready

6    to be distributed, where those should go.  We had an

7    opportunity to talking about that a little bit and while

8    there's not entire agreement on that just yet, I don't -- I

9    think we agreed that we would talking about that issue a little

10   bit more and determine where it should go.  It's sort of a

11   logistics issue in addition to some privileges issue and who

12   can receive it and what kind of waivers and privacy waivers

13   would have to be executed before, so again I don't think that's

14   anything for the Court's consideration today that really needs

15   to be resolved and I think petitioners' counsel agrees on that.

16             Working I think a little bits backwards first where

17   we finished off, I understood the Court's questions and

18   statements about additional discovery that was being requested

19   by petitioners' counsel to be a little premature and if that's

20   the case and the Court isn't inclined to order additional

21   discovery on, it's essentially three categories of information

22   that was identified in petitioners' status report.  It's

23   information on POCR reviews which are post-order custody

24   reviews, information on bond hearings and then any information

25   related to Iraq's acceptance of nationals and like I said, I

```
 1    understood the Court's questioning of petitioners' counsel to

 2    indicate that it wasn't inclined to order that at this time and

 3    if that's the case, I'm happy to move on and discuss --

 4         THE COURT:  Well, I'm not making any rulings here.

 5    This is just a conference, the purpose of which is for me to

 6    gather more information about the issues that are separating

 7    the two sides.  I was expressing some concern that to the

 8    extent parties are asking for discovery regarding issues that

 9    haven't concerned us at all in the case.  I'm going to need

10    some more education about those issues.  I don't want to

11    suggest I wouldn't order it, but I would need to see where that

12    fits into the case and that's all I meant to say about that.

13         MR. SILVIS:  Okay, well then I'll just add just to

14    sort of put the government's position on that, I think that in

15    terms of any discovery that would be ordered to that, I mean,

16    that's extremely premature.  I mean, we're at the, there's

17    Supreme Court decision Zadvydas that is directly on point for

18    post-order detention which is what the majority I think of the

19    putative class here would fall under and, you know, that's

20    presumptively reasonable for six month and after that period of

21    time it would be a burden upon any individual petitioner to

22    demonstrate that the removal is not reasonably foreseeable in

23    the -- immediately plausible in the reasonably-foreseeable

24    future.  So I think that there's no allegation that anyone is

25    close to that six-month point and then even beyond that, it
```

1   would still be their burden so it sort of goes to the

2   difficulties of litigating this as a class action which we'll

3   address with our opposition on September 11th, but, you know,

4   it's just, in more detail, I mean, I think it's -- that really

5   the controlling law here and we don't really see how the POCR

6   reviews which the POCR reviews are also provided directly to

7   the detainee so it's not as if no one's getting that, but, I

8   mean, I guess class counsel wants them in this case, but it's

9   extremely premature I think to get into into given the

10  presumptively six-month period that we would have before a

11  claim would even be ripe and then the burden would shift.  So I

12  think it's premature there.

13          This terms of the discovery generally, too, we

14  haven't had a full Rule 26F.  If we were going to get into the

15  discovery phase of this case, I think it would have to be

16  discovery both ways and we may very well want to do discovery

17  on several of these affidavits that have been produced in this

18  case and the declarations and I don't know that the case needs

19  to go there at this point.  I think it's, there's still a

20  motion to dismiss that is, you know, coming up, that would be

21  coming at the end of this month or the end of September and the

22  class certification that needs to be worked out as well, so I

23  don't think we've moved into that discovery phase, but, you

24  know, if we do and if the Court's intention is that we move

25  there, that, you know, it would have to be full-fledged

1  discovery and I think we would have our 30 days to respond and

2  raise objections to anything that they had wanted to get in

3  that.  So I think that again that we really haven't flushed out

4  the post-order, the post -- the different discovery issues that

5  would be related to detention, so that's our position here that

6  it and really this status conference was sort of set up as in

7  the Court's order granting the preliminary injunction about

8  modifications to that order and this really, this detention

9  issue really wasn't part of it.  They specifically didn't move

10  on their preliminary injunction on the detention issue so I

11  think it's far afield from the purposes of this status

12  conference today, but in any event, our position is that it's

13  premature as Zadvydas controls and anyone who has a motion to

14  reopen granted, they no longer have a final order and then it's

15  just extremely fact intensive and specific to that individual.

16  You may have a mandatory detention.  You may have committed a

17  crime that makes you subject to mandatory detention and then

18  you'd fall into one group and some evidence might be relevant

19  there.  Other people, would they might be entitled to bond

20  hearings and so there's a lot of different permutations of

21  people that are in the current classes defined for the Court

22  for the PI, so there's and these are also issues that really

23  are just by immigration court's in habeas, I mean district

24  courts in habeas every day, but that's why you see that they're

25  usually individual cases, but all of these people are in

1    different circumstances and depending on if their motion to

2    reopen's granted, where there are in their immigration

3    proceedings, the detention authority and the arguments are

4    going to be entirely different, so but in any event we think

5    we're not their, but if we do move into discovery, it's got to

6    be discovery for both sides.

7         Let's move to I think the big issues that we've

8    touched on here -- oh, before I get, got to the big issues, I

9    also wanted to mention that I think we talked here a little bit

10   about whether there needed to be modification to protective

11   order.  That's another issue I think that there's temporary

12   agreement on that we'll get back to the Court on.  The issue

13   there is just whether certain information can be shared with

14   counsel that may enter as, and file amicus briefs on behalf and

15   really it's a legal issue that needs to be I think resolved to

16   determine whether that's information, but I think petitioners'

17   counsel agrees that we can talk more about that and the Court

18   doesn't need to make any determinations on that.

19        The big issues I think get to the class definition

20   and when I say class, we haven't gotten the to the class

21   certification phase yet.  The relieve that's been offered in

22   the reporting that's been ordered in this court has been sort

23   of on a class-wide basis, but under a PI, before a class

24   certification has taken place and there's been a bit of a

25   disagreement.  The petitioners asked when they filed the

1    lawsuit there was one class definition of a putative class and

2    then they requested that the Court sort of modify it to clean

3    it up so that it would be anyone who had a final order as of

4    June 24th, 2017 and that's the reporting that we've done to

5    this and the government's position is, you know, that is in

6    terms of the fact that there's a class, either for the

7    protection of the PI and for the reporting, that's who's

8    covered by the class and to the extent that the plaintiffs or

9    petitioners now want to modify that, I would urge the Court not

10   to do so because we've already started the reporting on this

11   way and to some extent it's also the definition that they've

12   asked for in their motion for class certification, so I don't

13   know how it would affect that motion, but if they now want to

14   modify their definition of who is a class member, I think, you

15   know, it creates problems there.

16        I think it also creates problems from a sense of what

17   the relief, the ultimate relief everyone's seeking in this case

18   because when we brought this case and we've made the, appeared

19   here several times making these arguments, the issue was

20   seeking, having time to seek access to the immigration

21   administrative proceedings and having time to file a motion to

22   reopen and having those opportunities, but for individuals who

23   have had that opportunity, have filed a motion to reopen and

24   actually had it granted, we don't think they belong in the case

25   at all.  I mean, they've gotten what they could possibly get

1    from this Court in terms of protection.  Now they're in the

2    immigration system.  They've filed their motion to reopen.

3    They have the ability to get the relief that they want.  To the

4    extent that they're entitled to it and can show to an

5    immigration judge or to the BIA or, you know, on a PFR to the

6    Court of Appeals, they're already into that system and they no

7    longer need the protection of this Court's order in terms of

8    the injunction and in terms of reporting, we should be -- the

9    government should be relieved of the obligation to continue to

10   report on people whose motions to reopen have been granted.

11          So I guess the class definition and again will be,

12   the class certification issue will become more ripe in a couple

13   weeks, but in terms of for right now when we're talking about

14   the reporting and the injunction -- and compliance with this

15   Court's preliminary injunction, we think that anyone granted a

16   motion to reopen should be excluded from that.

17          I think that leaves the biggest issue, point of

18   contention which is the issue for people who want to be

19   excluded that no longer want to be a part of this case and I

20   think the disagreement has been, it started in the sense that

21   individuals had approached ICE and detention officers and asked

22   that, you know, they didn't want to be part of the case and

23   they wanted to, to return and the Court's order provides that

24   people can, individuals in that situation can specifically

25   request that.  They can be excluded from the order either by

```
 1    stipulation or some sort of a motion to the Court whether the
 2    the Court would consider, so the parties have discussed how to
 3    go about doing that and I think everyone agrees that there
 4    needs to be some notice that would go out so that people could
 5    indicate their intent.  To date, what has happened is
 6    individuals have approached detention officers and expressed
 7    their, their desire to leave, but we think there may be other
 8    people and what we want to get and I think everyone agrees that
 9    there could be a notice that would go out so anyone who doesn't
10    want to be part of this, this case could inform the parties by
11    a notice another way and return that notice and we could start
12    the process for seeing if these people should be excluded or
13    not.
14              THE COURT:  This should be a notice that goes out to
15    the entire class of some 1,400 people?
16              MR. SILVIS:  Yeah, well, I think it only matters --
17              THE COURT:  Less people who are already represented
18    or filed their motions?
19              MR. SILVIS:  Well, it's not 1,400 to the extent that
20    there's, umm, it's the people that are -- theoretically could
21    be, but it's a bigger problem for the people who are detained
22    because once you're detained, then I guess people could exclude
23    before, but then it gets in a little part about the or may be
24    detained in the future, but most importantly I think for the
25    detained population now so I guess we didn't talk about it with
```

1    the greater class of the other 1,400, but --

2              THE COURT:  You were focused on the detainees?

3              MR. SILVIS:  Correct, correct and that's where I

4    think it started and the concerns that the petitioners have

5    about coercion and the concerns the government has about

6    keeping people, you know, detained longer than they want to be

7    who actually don't want any part of this and want to be

8    returned and are not expressing a fear or if they are, even if

9    they are, they're not, you know, they're not going to pursue it

10   in court so, umm, that's where the process I think, the

11   government would like to have a form and this is sort of a

12   question for the Court as well is what kind of process would

13   satisfy the Court that an individual and this really falls to

14   individuals who are unrepresented 'cause if a person has an

15   attorney like the individual who when at the start of this case

16   opted out and has an attorney, I don't think we have much of an

17   issue and the I think the petitioners' counsel would agree,

18   but --

19             THE COURT:  What's wrong with the proposal of the

20   petitioners that some pro bono lawyer would make himself,

21   herself available to a detainee to explain this litigation and

22   the options that the person has?  What's the government's

23   objection to that?

24             MR. SILVIS:  I don't think -- there isn't any problem

25   per se with anyone meeting with them if the individual wants to

1   meet with an attorney and if the petitioners' counsel is
2   willing to set that up.  What we want is a form, a notice form
3   that we've drafted and it's Exhibit A I believe to our filing
4   that once it's given to an individual, they can express, you
5   know, whether they want to be -- whether they're represented to
6   begin with because if they're represented, they shouldn't be
7   returning the form at all, but if they're unrepresented and
8   they want to go and be returned, we want some evidence of that
9   intent so that when we're later coming to court, either on a
10  stipulated basis or as a contested motion to say to the Court
11  look, these are the individuals that want to go, we want this
12  Court to have some assurance that they, that this really is
13  their intent.  It's not too different than forms you'd see in
14  immigration proceedings with people like voluntary departure or
15  other things where you have an individual who is unrepresented
16  and can express, you know, their own understanding of the form,
17  that it was read to them in a language that they understand and
18  are waiving any right or part of this case and that's the type
19  of form we want, some sort of evidence that we could bring to
20  the Court after the fact, but, you know, if -- and here is
21  where it seems like the process broke down unnecessarily, but
22  if that form were provided to everybody, we still don't -- the
23  government doesn't have any objection with if that form came
24  back both to the petitioners' counsel and to the government
25  counsel, we had that form, we shared the form, we said these

1    individuals want to go, look, they've expressed their desire,

2    they're not represented, then we'd still be open to a time

3    period where they could contact this individual and if the

4    person wanted to meet with counsel, they could meet with them

5    and see if, you know, that was a knowing and voluntary waiver

6    in their opinion and then maybe it would become a contested

7    motion at that point, but what we're concerned about is that we

8    would have some sort of blank form that just indicates

9    someone's desire and then their -- the timing is very much then

10   controlled about whether this meeting ever happens between, you

11   know, the attorney that doesn't actually represent them, this

12   is just an attorney who will go meet them to talk about the

13   rights in this case and then what would we do at that step?

14   How would we show that there was any intent to the Court so the

15   person we could either stipulate to it or, you know, that we

16   could just file with the court?

17          So in any event I guess the short of it is we want

18   some form that demonstrates the intent that the person actually

19   wants to go and we don't have any objection with them in some

20   reasonable time frame meeting what an attorney before if that

21   person wants to and if petitioners' counsel's going to

22   facilitate it, but we want some sort of evidentiary intent

23   expressed on it so that, you know, 'cause then the next step is

24   trying to convince this Court that this was some sort of waiver

25   and then we don't really have any way of doing that I don't

1    think unless we're going to do a separate stipulation for every

2    person and write out and where is the person going to sign,

3    they don't have a counsel.  I think it's just much easier to do

4    it the way that the government has done and it really

5    represents I think the petitioners' interests as well because

6    no one's saying they don't have the opportunity to meet with

7    someone before, with an attorney before, but we don't want that

8    process to hold up.  If we give them a reasonable period, a

9    week or, you know, we can agree on what a reasonable period

10   would be to facilitate those meetings, but once that's

11   happened, umm, you know, we want some kind of evidence at that

12   point if that person really wants to go, that they can go and

13   we're not just detaining them, you know, against their wishes.

14   So that's kind of where it's broken down.

15           I think the parties fundamentally see the process as

16   being different and I think part of it's a question for the

17   Court, just what would satisfy the Court after that, that

18   phase?  Would it, you know, I imagine the Court would want

19   everyone to come into court and sort of allocate or say that

20   they wanted to leave, but there has to be some sort of

21   indication of the person's intent in these cases where there's

22   no attorney involved.  So that's, that's sort of our position

23   on it and I just think that that may if the Court would like us

24   to meet with the magistrate and try to talk it out or if the

25   Court has any opinions that could be helpful in what would

1    satisfy the Court in terms of that group of unrepresented

2    people that no longer want to be part of the lawsuit.

3            Let me just check, if you will excuse me for a

4    moment.

5            (Pause)

6            MR. SILVIS:  I think this is covered in part about

7    when we were talking about the class definition in terms of the

8    relief and the reporting requirements, but for those

9    individuals who have already had a motion to reopen, we would

10   say, I think the Court should, the PI should be modified to the

11   extent that the reporting requirements actually providing the A

12   file and the ROP to those people and they've already had the

13   opportunity to file a motion to reopen, they have the ability,

14   they no longer have the final order, the removal is no longer

15   imminent, you know, they have an opportunity now to pursuit

16   relief that they have and they can supplement the A file.  I

17   mean, it's primarily for these cases that are claims in that

18   it's based on changed country conditions and the fact that

19   they're afraid to go now so any reporting that we would have

20   for those people whose motions to reopen have been granted, I

21   think they should be released from the class and also in terms

22   of the class, it's -- for individuals who are not detained, we

23   think that they should be excluded from the PI order both for

24   the reporting and also for providing of files and we'd ask for

25   a modification there because again the concern here was that

```
 1    the detained individuals would not have the ability to access
 2    counsel.  They wouldn't have enough time to file the motions to
 3    reopen and they wouldn't have any of the resources, you know,
 4    from being detained, the same resources aren't available to
 5    them, but at this point there's a group, the majority of the
 6    class hasn't been detained.  They've known about or presumably
 7    knew about the situation in Iraq and the fact that their
 8    removal could become, maybe they didn't think it was going to
 9    happen any time soon, but they should be aware at some point
10    that there's a lawsuit and that this is happening and they
11    don't have the same interests as the the detained people here
12    in the sense of not being able to access counsel, they don't
13    have the same interests, they can file a FOIA request and so
14    they have a different situation and the removal doesn't seem
15    imminent at all, so to the extent that the Court would
16    entertain modifying the PI for that group of people, the
17    reporting and the production of files, that the government
18    requests that we don't think that they really are, umm, the
19    interests that the suit was brought for really, umm, that they
20    can obtain that relief on their own at this point.
21             THE COURT:  All right.  When is your responsive
22    pleading due?
23             MR. SILVIS:  They -- I have it docketed, it's the end
24    of September.  I don't remember the exact date.  I have it
25    here, but I know --
```

```
1              THE COURT:  And you're contemplating a motion to

2    dismiss?

3              MR. SILVIS:  I believe so, your Honor.

4              THE COURT:  Do both sides think it would be helpful

5    to meet with the magistrate judge to try to resolve the case

6    globally sooner rather than later?

7              MS. AUCKERMAN:  We do, your Honor.

8              MR. SILVIS:  We'd be willing to talk.

9              THE COURT:  All right.  Well, I know he has

10   availability.  I did in advance of this conference try to find

11   out what he looked like in terms of trying to schedule a

12   session and he said although he is busy, he would certainly it

13   fit you in.  I do think that's something we should have you

14   explore.

15             My other conclusion is that it seems to me that there

16   are a number of issues here where both sides acknowledge you

17   might be able to close the gap and reach an agreement if you

18   talked some more.  There are some issues where you say you're

19   at an impasse, but it wouldn't shock me to discover that what

20   seems like an impasse today might blossom into some kind of

21   resolution so I do think the two sides should continue to talk

22   for some period of time to try to see how many of these issues

23   they can resolve.

24             What I'm envisioning is after you've had that

25   opportunity to try to work out these issues, that you would
```

1    then send me a fresh status report.  It would be a single

2    document, a joint report where you'd layout for me what the

3    issue is and each side's position about how the Court should

4    resolve it and I may decide that after receiving that I'd need

5    to sit down with you and talk with you some more about it or I

6    might be able to just issue an order that resolves the issues.

7         I'm also of the view that the highest priority would

8    probably be to see if you can globally resolve the case.  I

9    think the next priority then is if you can't, that we resolve

10   all of these outstanding issues to the extent you cannot

11   resolve them through your own devices and then a lower level of

12   priority it would seem to me is dealing with the class

13   certification issue and the motion to dismiss which will

14   envelope us in a significant round of briefing and occupy us

15   greatly.  I'm happy to have you March down all these paths at

16   the same time if you want to throw enough lawyers into it or

17   enough of your own time, I don't know how much sleep you folks

18   need.  Most people need about eight hours, but if you want to

19   cut it back, that's okay with me.

20        I suppose one way to try to rationalize this would be

21   to meet with the magistrate judge, see if he can work his

22   magic.  A global resolution obviously makes all this other

23   stuff irrelevant.  If that can't happen, then perhaps the

24   second phase would be to try to have you sit down, work out

25   these issues to the extent you can, these discrete issues that

1    we've been talking about all afternoon and then sending me a

2    joint status report on what remaining issues there are and I

3    could then meet with you and/or simply just resolve the issues

4    without a further meeting with you and then we can take up the

5    motion to dismiss I would think before the certification motion

6    because if the government's right about that, certification is

7    of course irrelevant, so I'm happy to try to schedule this in a

8    way that makes sense for the lawyers and their clients of

9    course, so do you have a view at this point how you'd like to

10   proceed?

11        MS. AUCKERMAN:  Could we just have a few minutes to

12   discuss that, your Honor?

13        THE COURT:  Sure.  I'll tell you what, let's do this.

14   It may be helpful for both sides to talk to each other.  If you

15   want to use my jury room, my clerk will escort you back there

16   if you'd like to talk together.  Maybe you want to talk within

17   your own groups first and meet there, but I'm going to be

18   around for a while so I'd like to give you that chance and then

19   by the close of the afternoon let's see if we can come up with

20   a way to proceed.  Does that work for you, Mr. Silvis?

21        MR. SILVIS:  Your Honor, I would ask that maybe we

22   would be able to -- I'm going to have to consult with people in

23   Washington about just sort of 'cause there are a lot of moving

24   parts in the case at this point as to what the preference would

25   be in terms of the class cert and motion to dismiss and that,

1    so I guess what I would ask is that if we adjourned today, that

2    we would provide either a joint statement or our positions just

3    on the scheduling issue.

4         THE COURT:  How much time do you need to consult with

5    other people?

6         MR. SILVIS:  The latest I think would be by Tuesday,

7    but I think --

8         THE COURT:  Okay.

9         MR. SILVIS:  -- it just defend on, it's a holiday

10   weekend, so I don't know it's the last one before spring starts

11   so I don't know that everyone's going to be in tomorrow, but I

12   just want to make sure everyone has a chance to weigh in.

13        THE COURT:  Sure.  Why don't we set up a telephone

14   conference for next week, how's that, and by that point you,

15   Mr. Silvis, can talk to whoever you wish to talk to and then I

16   think the two sides should be talking to each other and see if

17   there's a consensus about how to do this and then before the

18   phone conference, I just ask you to send my clerk an e-mail

19   that indicates what agreement if any you have on our procedure

20   here or what your different points of view are on that.  So I'm

21   looking at next week.  Gee, I have nothing scheduled on Monday.

22   Are your schedules pretty free?  How about on Wednesday, I

23   could do it late in the afternoon, 4:00.  Would that work,

24   Wednesday afternoon?

25        MS. AUCKERMAN:  That works for us, your Honor.

1          MR. SILVIS:  Yes, your Honor.

2          THE COURT:  Okay.  So let's have a telephone

3   conference at 4:00 p.m. on Wednesday, September 6th and please

4   send me your e-mail by noon that day that sets out what

5   agreement, if any, you've reached and what your separate

6   positions are on how we should proceed.  Okay, anything else?

7          MR. SILVIS:  Just a couple and I don't know if

8   there's just, there was a point we made in the joint status

9   report about -- if I may approach, about the reporting on the

10  PFR, the petition for review process and I was just notifying

11  the Court that that's not information -- it's part of the PI

12  reporting requirement at this point.  It's not information that

13  is in, within the control of the respondent, ICE in this case.

14  We are, like a lot of the other information in this case that

15  we've been providing that is provided by EO or DOJ.  We are

16  looking into whether we can provide that in a way to

17  petitioners' counsel, but in the event I guess I wanted to

18  notify the Court that that hasn't been provided to date because

19  it's not something that we have, but that we are looking into

20  doing it, but we would just ask that that be if there's no

21  practical way to do that without looking at each individual

22  things for PACER, we would just ask to be relieved of that, but

23  I just wanted to notify on that point.

24          THE COURT:  All right.  Well, let's take up these

25  issues then when we talk next time and again maybe that's

1   something the two sides can talk about before our next

2   conference and see if you can reach agreement about that.

3           MR. SILVIS:  And would also be the time when your

4   Honor would want to talk about scheduling the magistrate or did

5   you intend to --

6           THE COURT:  By that point I'll know what his schedule

7   is precisely and maybe I can get you dates that you'd be able

8   to sit down with him.

9           MR. SILVIS:  Okay.  I think that'll be something, but

10  I just ask maybe that we don't schedule that before we have an

11  opportunity to talk on Wednesday because I think the

12  government's preference would be that unless those dates change

13  this coming Wednesday, that we would prefer that the, sort of

14  the global settlement discussion be later if that was something

15  the Court wanted us to do because I think there's a lot of

16  moving parts that we need to discuss first and if we schedule

17  that some time in September, I don't know that we'd be ready to

18  go down that road.

19          THE COURT:  You mean you wouldn't be ready for a

20  sit-down with the magistrate judge in September?

21          MR. SILVIS:  I don't think so unless a lot of these

22  others dates changed.  I think there's still a lot of decisions

23  that need to be made about the case and we might have some

24  clarity after next Wednesday, but I just ask that the Court not

25  schedule it before --

1          THE COURT:  No, I'm not going to schedule anything

2    until we have our phone conference.  I'll find out what his

3    availability is.

4          MR. SILVIS:  All right, great.  Thank you.

5          THE COURT:  If you do want to talk to each other now

6    if you think there's anything useful you can accomplish by

7    talking, just let my clerk know and he'll make the jury room

8    available to you.  Is there anything else?

9          MS. AUCKERMAN:  No, your Honor.

10          THE COURT:  Mr. Silvis?

11          MR. SILVIS:  No, your Honor.

12          THE COURT:  Okay.  Then that concludes our session.

13    Thank you.

14          (Hearing concluded at 4:17 p.m.)

15                    --     ---     --

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4

5

6

7          I, David B. Yarbrough, Official Court

8   Reporter, do hereby certify that the foregoing pages

9   comprise a true and accurate transcript of the

10  proceedings taken by me in this matter on Thursday,

11  August 31st, 2017.

12

13

14

15

16  9/1/2017                    /s/ David B. Yarbrough

17  Date                        David B. Yarbrough,
                                (CSR, RPR, FCRR, RMR)
18                              231 W. Lafayette Blvd.
                                Detroit, MI  48226
19

20

21

22

23

24

25