# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

USAMA JAMIL HAMAMA, et al.,

   Petitioners,

  v.

REBECCA ADDUCCI, Director, Detroit
District of Immigration and Customs
Enforcement, et al.,

   Respondents.

_____/

Civil No. 17-11910
Hon. Mark A. Goldsmith
Mag. Judge David R. Grand

## MOTION TO DISMISS SECOND AMENDED CLASS PETITION

  Respondents, by and through their undersigned counsel, move to dismiss

Petitioners' Second Amended Class Habeas Corpus Petition, ECF No. 118, due to

lack of subject matter jurisdiction and failure to state a claim for which relief may

be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The

grounds for this motion are set forth more fully in the attached supporting brief.

Dated:  November 1, 2017   Respectfully submitted,

CHAD A. READLER    /s/ William C. Silvis
Acting Assistant Attorney General WILLIAM C. SILVIS
Civil Division     Assistant Director

WILLIAM C. PEACHEY   VINITA B. ANDRAPALLIYAL
Director       MICHAEL A. CELONE
         JOSEPH A. DARROW
*Counsel for Respondents*   Trial Attorneys

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED

MOST CONTROLLING AUTHORITY

I.  INTRODUCTION ........................................... 1

II.  BACKGROUND ........................................... 2

III.  STANDARD OF REVIEW ........................................ 3

IV.  ARGUMENT ............................................... 4

    A. The Court Lacks Jurisdiction Over This Case. ................................... 4

    B. Petitioners' Claims Are Otherwise Barred or Meritless .................... 13

        1. Claim One: Convention Against Torture and Section 1231(b)(3) ................................ 13

        2. Claim Two: Due Process Prior To Removal ........................... 14

        3. Count Three: Challenge to Detention Transfer........................ 17

        4. Count Four: Challenge to Post-Final-Order Detention............. 22

        5. Count Five: Claim for Individualized, Neutral Custody Review................................. 26

        6. Count Six: Challenge to Pre-Order Mandatory Detention ....... 30

        7. Count Seven: Access to Files.................................... 33

V.  CONCLUSION............................................. 35

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Abdallahi v. Holder*, 690 F.3d 467 (6th Cir. 2012) ...................................................16

*Alexandre v. U.S. Atty. Gen.*, 452 F.3d 1204 (11th Cir. 2006) ...............................10

*Almuhtaseb v. Gonzales*, 453 F.3d 743 (6th Cir. 2006) ..........................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................4

*Avramenkov v. INS*, 99 F. Supp. 2d 210 (D. Conn. 2000) .......................................19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................4

*Boumediene v. Bush*, 553 U.S. 723 (2008) ................................................................8

*Cartwright v. Garner*, 751 F.3d 752 (6th Cir. 2014) ................................................4

*Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434 .........................................20

*Dai v. Caplinger*, No. CIV. A. 94-2190, 1995 WL 241861
(E.D. La. Apr. 25, 1995) .........................................................................................20

*Demore v. Kim*, 538 U.S. 510 (2003) .......................................................................33

*Denko v. INS*, 351 F.3d 717 (6th Cir. 2003) ..................................................... 17, 18

*Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) ..............................................28

*Elgharib v. Napolitano*, 600 F.3d ..........................................................................35

*Filmon v. Hendricks*, No. CIV.A. 13-6739 DMC, 2013 WL 6154440
(D.N.J. Nov. 15, 2013) ...........................................................................................28

*Flaherty v. Pritzker*, 17 F. Supp. 3d 52 (D.D.C. 2014) ..........................................29

*Flores v. Holder*, 977 F. Supp. 2d 243 (W.D.N.Y. 2013) ........................................25

*Foster v. Townsley*, 243 F.3d 210 (5th Cir. 2001) ..................................................5, 6

*Gandarillas-Zambrana v. BIA*, 44 F.3d 1251 (4th Cir. 1995)......................... 19, 21

*Garrison v. Warren Corr. Inst.*, 187 F.3d 635 (6th Cir. 1999)................................12

*Graham v. Mukasey*, 519 F.3d 546 (6th Cir. 2008)................................... 15, 16, 22

*Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531 (6th Cir. 2012) ...................4

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009) ...................... 4, 5, 34

*Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012).........................................................32

*Hydara v. Gonzales*, No 07-cv-0941 PJS/JSM, 2007 WL 2409664
(D. Minn. Aug. 21, 2007) .........................................................................................24

*I.N.S. v. St. Cyr*, 533 U.S............................................................................................10

*Iasu v. Smith*, 511 F.3d 881 (9th Cir. 2007)..................................................... 10, 35

*In Re Rojas*, 23 I. & N. Dec. 117 (BIA 2001) ................................................. 30, 32

*Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221 (1986) ........................20

*Kalaj v. Gonzales*, 137 F. App'x 851 (6th Cir. 2005) .............................................18

*Kanu v. Sheriff Butler Cty.*, No. 1:16-CV-756, 2016 WL 6601565 ......................24

*Khan v. Attorney General*, 691 F.3d 488 (3d Cir. 2012) ...........................................9

*Kiyemba v. Obama*, 561 F.3d 509 (D.C. Cir. 2009) ..................................................6

*Kucana v. Holder*, 558 U.S. 233 (2010) .................................................................20

*Lema v. INS*, 341 F.3d 853 (9th Cir. 2003).............................................................24

*Louisiana Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Labor*, 745 F.3d 653
(3d Cir. 2014)..................................................................................................19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................... 13, 14

*Luna v. Holder*, 637 F.3d 85 (2d Cir. 2011) ............................................................10

*Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) ............................................... 27, 28, 33

*Marogi v. Jenifer*, 126 F. Supp. 2d 1056 (E.D. Mich. 2000)........................... 19, 20

*Modarresi v. Gonzales*, 168 F. App'x 80 (6th Cir. 2006) ............................... 14, 16

*Moncrieff v. Holder*, 133 S. Ct. 1678 (2013)..........................................................16

*Muka v. Baker*, 559 F.3d 480 (6th Cir. 2009)......................................................9, 14

*Munaf v. Geren*, 553 U.S. 674 (2008) ..................................................................... vi

*Nat'l Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997).......................13

*Nichols v. Muskingum College*, 318 F.3d 674 (6th Cir. 2003) ..................................3

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007)...........................................34

*Parsons v. U.S. Dep't of Justice*, 801 F.3d 701 (6th Cir. 2015)...............................13

*Phean v. Holder*, No. 11–CV–0535, 2011 WL 1257389
(M.D. Pa. Mar. 30, 2011)...............................................................................22

*Pineda-Hernandez v. U.S. Dep't of Immigration & Naturalization*, No. 86-7557,
1988 WL 126260 (9th Cir. 1988) ................................................................ 19, 21

*Preap v. Johnson*, 831 F.3d 1193 (9th Cir. 2016) ...................................................32

*Prieto–Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008).........................................25

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) .....................5

*Rios-Berrios v. INS*, 776 F.2d 859 (9th Cir. 1985) ...................................... 19, 20, 21

*Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003) ......................... 22, 23, 25

*Sasso v. Milhollan*, 735 F. Supp. 1045 (S.D. Fla. 1990) ..........................................21

*Saysana v. Gillen*, 590 F.3d 7 (1st Cir. 2009)................................................... 31, 32

*Shewchun v. Holder*, 658 F.3d 557 (6th Cir. 2011) ...................................................16

*Sissoko v. Rocha,* 509 F.3d 947 (9th Cir. 2007) ........................................................5

*Soberanes v. Comfort*, 388 F.3d 1305 (10th Cir. 2004) ...........................................25

*Sylvain v. Attorney Gen. of U.S.*, 714 F.3d 150 (3d Cir. 2013) ...............................32

*United States v. Edward Rose & Sons*, 384 F.3d 258 (6th Cir. 2004).......................3

*University of Texas v. Camenisch*, 451 U.S. 390 (1981)..........................................3

*Van Dinh v. Reno*, 197 F.3d 427 (10th Cir. 1999)...................................................19

*Yousif v. Lynch*, 796 F.3d 622 (6th Cir. 2015).................................................. 15, 16

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ...................................................... 2, ***passim***

## FEDERAL STATUES

6 U.S.C. § 202.............................................................................................................19

8 U.S.C. §§ 1151–1378................................................................................................20

8 U.S.C. § 1362 ..................................................................................................... 17, 18

8 U.S.C. 1231(b)(3)................................................................................................1, 13

8 U.S.C. 1252(g) ......................................................................................................1, 5

8 U.S.C. § 1226(c) ................................................................................... 27, 30, 31

8 U.S.C. § 1226(c)(1) ................................................................................30

8 U.S.C. § 1231 ................................................................................... 26, 27

8 U.S.C. § 1231(a) ....................................................................................31

8 U.S.C § 1231(a)(1)(A) ............................................................................22

8 U.S.C. § 1231(a)(1)(C) ...........................................................................24

8 U.S.C. § 1231(g)(1) ................................................................................19

8 U.S.C. § 1252 ...........................................................................................5

8 U.S.C. § 1252(a)(4) ................................................................................14

8 U.S.C. § 1252(a)(5) .............................................................................6, 15

8 U.S.C. § 1252(b)(9) ....................................................................... 7, 14, 35

8 U.S.C. § 1252(d)(1) .............................................................................6, 14

28 U.S.C. § 2241(c)(3) ..............................................................................11

## FEDERAL REGULATIONS

8 C.F.R. § 241.4 ........................................................................................23

8 C.F.R. § 241.4(e)(1) .......................................................................... 30, 33

8 C.F.R. § 241.4(k)(1)(I) ...........................................................................22

8 C.F.R. § 241.6(a) .....................................................................................8

8 C.F.R. § 1003.2(c)(1) ...............................................................................8

8 C.F.R. § 1003.23(b)(3) .............................................................................6

## **FEDERAL RULE OF CIVIL PROCEDURE**

Fed. R. Civ. P. 23(a)(2).............................................................................17

Fed. R. Civ. P. 37....................................................................................35

Fed. R. Civ. P. 65(a)...............................................................................11

## <u>STATEMENT OF ISSUES PRESENTED</u>

Whether Petitioners' Second Amended Class Habeas Petition should be dismissed for lack of jurisdiction and failure to state a claim upon which relief may be granted under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) when:

1. The Court lacks jurisdiction under 8 U.S.C. 1252(g), where the aliens' ability to challenge their removal orders in administrative motions to reopen and the petition-for-review process mean there is an adequate forum and thus no violation of the Suspension Clause; and

2. Petitioners' allegations do not state plausible, cognizable claims of any violation of substantive rights under the Immigration and Nationality Act, Convention Against Torture and implementing regulations, Due Process Clause, or this Court's preliminary injunction order, nor that they are being impermissibly detained.

## **MOST CONTROLLING AUTHORITY**

8 U.S.C. § 1231(a)

8 U.S.C. § 1252

*Demore v. Kim*, 538 U.S. 510 (2003)

*Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003)

*Munaf v. Geren*, 553 U.S. 674 (2008)

*Muka v. Baker*, 599 F.3d 480 (6th Cir. 2009)

*Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003)

*Zadvydas v. Davis*, 533 U.S. 678 (2001)

## I.    INTRODUCTION

The Court should dismiss Petitioners' Second Amended Class Petition. This Court lacks jurisdiction over Petitioners' claims. And even if this Court had jurisdiction, Petitioners have not stated any plausible claims entitling them to relief.

This Court lacks jurisdiction over Petitioners' claims. Federal law provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from *the decision or action* by the [Secretary of Homeland Security] to . . . *execute removal orders* against any alien." 8 U.S.C. § 1252(g) (emphasis added). This jurisdictional bar plainly applies here because this case arises out of DHS's "decision[s] or action[s]" to "execute removal orders" against Petitioners. That is consistent with the Constitution because Congress created a separate avenue of relief for Petitioners in the immigration courts and ultimately in the federal courts of appeals. The circumstances of this case—in which Petitioners had years to file motions to reopen their removal proceedings based on changed conditions in Iraq and months since Iraq agreed in March 2017 to accept removals, *see* ECF No. 118 at ¶ 79—do not change this.

Even if this Court could rule on Petitioners' claims, it would need to dismiss them because none states a plausible basis for relief. *First*, Petitioners lack standing to maintain their claim under the Convention Against Torture ("CAT"), 8 U.S.C. 1231(b)(3), and the Foreign Affairs Reform and Restructuring Act of 1998

("FARRA") (Count 1). The INA does not authorize federal district courts to redress any such injury. *Second*, Petitioners' due process claim (Count 2) fails because Petitioners fail to identify any legal inadequacy in the administrative process that stands ready to address their claims. *Third*, Petitioners have no basis for claiming a right to be transferred from their current detention locations (Count 3). The Department of Homeland Security ("DHS") has broad operational discretion to determine where an alien is detained. *Fourth*, Petitioners' claims of prolonged detention (Counts 4-6) are unripe and would fail on the merits. Detention following a final removal order is lawful unless and until there is no significant likelihood of removal in the reasonably foreseeable future ("SLRRFF"), which is not the case here. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Individualized assessments of danger or flight risk by neutral adjudicators or receipt of DHS post-order custody reviews ("POCRs") are legally irrelevant and not required to determine whether an alien obtains release under *Zadvydas*. Further, the time between Petitioners' criminal convictions and their recent immigration detention is irrelevant to this case. *Finally*, Petitioners err in claiming that they have been deprived of timely access to their A-files and ROPs (Count 7), because the deadline for production of these files has not arrived and Petitioners' allegations indicate that receiving them is unnecessary to obtain reopened proceedings or success therein. *See* ECF No. 118 ¶¶ 79, 80.

## II.   BACKGROUND

Respondents incorporate the background set forth in their prior briefing. ECF No. 17, 38, 81. Further, on October 13, 2017, Petitioners filed a Second Amended Class Habeas Petition, ECF No. 118. This petition adds additional claims based on some Petitioners' detention and their desire to obtain the Alien Files ("A-files") and Records of Proceedings ("ROPs") from their previous immigration proceedings prior to the Court's deadlines (Count 7). *See id.* ¶ 145. Regarding their detention, Petitioners generally allege that their detention is impermissible under the standards governing post-order detention (Count 4) and pre- order detention (Count 6), and claim a right to an individualized assessment by a neutral arbiter of whether Petitioners pose a flight risk or danger to justify their detention (Count 5).

### III.   STANDARD OF REVIEW[1]

The plaintiff bears the burden of proof to survive the motion to dismiss for lack of jurisdiction. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003). Such a motion can challenge the sufficiency of the pleading itself, a facial attack, which is held to the Rule 12(b)(6) pleading standard, or make a factual attack

---

[1] Although the Court addressed some of the arguments raised here when it issued preliminary injunctive relief, those determinations are not binding on this dispositive briefing. *See United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) ("[F]indings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits.") (citing *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

to jurisdiction, in which the Court may consider evidence outside of the pleadings. *See Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014).

A complaint will survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) "if the plaintiff alleges facts that 'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to "'raise a right to relief above the speculative level.'" *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Finally, a plaintiff may undermine the plausibility of his claim and plead himself out of court if he pleads facts that show his claim lacks merit. *See, e.g.*, *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009).

## IV.   ARGUMENT

The Second Amended Petition should be dismissed because the court lacks jurisdiction over the claims in their entirety (Section A) and because each individual claim has jurisdictional defects or fails to state a claim (Section B).

### A.   The Court Lacks Jurisdiction Over This Case.

Congress barred district courts from exercising jurisdiction over claims attacking the Government's decision to execute final removal orders. Such claims may be brought only through the administrative immigration process (with any

4

available judicial review in the federal courts of appeals). Petitioners' claims attack their final removal orders, and so must be dismissed.

In 8 U.S.C. § 1252, Congress made two relevant rules clear. *First*, courts lack jurisdiction over claims attacking the Government's decision to enforce a final removal order. Under section 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary of Homeland Security] to . . . execute removal orders against any alien." 8 U.S.C. § 1252(g). This jurisdictional bar applies "notwithstanding any other provision of law (statutory or nonstatutory)"—"[e]xcept as" otherwise "provided in" section 1252. *Id.* This unequivocal language protects the Government's discretionary authority over whether and when to execute a removal order. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999). Petitioners' claims here all challenge such a decision or action to execute a removal order, either directly—as violations of CAT or due process (Counts 1 and 2)—or indirectly, by challenging the preparatory actions taken by DHS to effect removal, such as arresting, transferring, and detaining Petitioners for removal (Counts 3–6), and now litigating their court challenges to execution of their removal (Count 7). *See, e.g.*, *Sissoko v. Rocha,* 509 F.3d 947, 948-49 (9th Cir. 2007) (section 1252(g) jurisdictional bar applied to decision to detain alien for purpose of expeditiously removing him); *Foster v. Townsley*, 243 F.3d 210, 213-14 (5th Cir. 2001) (section 1252(g) also precluded excessive force, equal

protection, due process, and retaliation claims connected to decision to execute alien's removal). Section 1252(g) thus bars this Court from exercising jurisdiction over Petitioners' claims.

*Second*, aliens can obtain review of, reopening of, or stays of removal orders—but only through the established regulatory administrative procedure, with judicial review in the federal courts of appeals. Immigration courts and the BIA are vested with authority to adjudicate motions to reopen removal proceedings on the basis of "new facts," 8 C.F.R. § 1003.23(b)(3), and to grant stays of the execution of removal, *id.* § 1003.23(b)(1)(iv). Section 1252 provides that claims arising from the removal process, including a claim seeking review of a final removal order, must first be exhausted administratively and then ultimately channeled to the federal courts of appeals through petitions for review. 8 U.S.C. § 1252(d)(1). That section specifies that a petition for review is the "sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5) (emphasis added). The section provides further that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment." *Id.* § 1252(a)(4). That holds true "[n]otwithstanding any other provision of law (statutory or nonstatutory)." *Id.*; *see also Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir.

6

2009). Section 1252(b)(9) adds that review of "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added). Petitioners must use the administrative review process to pursue their claims.

This Court previously recognized that Section 1252(g) would bar jurisdiction here unless the Constitution indicated otherwise. ECF No. 64 at 17. However, the Court held, "[t]o enforce § 1252(g) in these circumstances"—where Petitioners claimed timing and logistic difficulties in quickly filing motions to reopen and requests for administrative stays of removal and little incentive to do so before Iraq agreed to accept their removal in March 2017—would amount to a suspension of the right to habeas corpus." *Id.* at 23. The Suspension Clause states that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2.

Respectfully, this Court erred in so ruling. Congress's comprehensive administrative review scheme provides Petitioners here with a fully adequate procedure to reopen removal proceedings based on changed country conditions specifically. Because Congress provided a fully adequate alternative to habeas relief, enforcing section 1252's jurisdictional provisions is fully consistent with the Suspension Clause.

The administrative review procedures provided here are fully adequate. Here, the "sum total of procedural protections afforded to the detainee" are fully adequate because the substitute procedure provides "the means to correct errors," including in exigent circumstances. *Boumediene v. Bush*, 553 U.S. 723, 786 (2008).

The review procedures here are the ones that follow the entry of a final removal order. Those procedures are thorough. After a removal order is final and enforceable, the alien may file a motion to reopen before the agency if circumstances have changed, and there is no time or number limits with respect to motions that raises concerns about changes in conditions in the country to which the alien will be removed. 8 U.S.C. § 1229a(c)(7)(C)(ii). The requirements for the motion are not elaborate, and it need only "state the new facts that will be proven" and include evidence relating to those facts. *Id.* § 1229a(c)(7)(B); *see* 8 C.F.R. §§ 1003.2(c)(1), 1003.23; Board Practice Manual § 5.2(b) ("[t]here is no official form for filing a motion with the Board"). While a motion will not be held pending the submission of evidence, the Board Practice Manual allows for the possibility of the submission "of supplemental evidence." Board Practice Manual § 5.2(f); *see* ECF No. 81, Ex. B, ¶ 20 (considering stay motions even if alien may still need time "to obtain . . . appropriate evidence").

Along with filing a motion to reopen, the alien may seek a stay of removal from the immigration court or the BIA, as appropriate. *See* 8 C.F.R. §§ 241.6(a)–(b),

1241.6(a)–(b); *see generally,* ECF No. 81, Ex. B. The immigration courts are "dedicated to issuing decisions in a timely manner so that no respondent with a pending motion . . . is removed prior to receiving an adjudication." *Id.* ¶ 14. Additionally, the Board has created the Emergency Stay Unit (Unit) designed for exactly the type of circumstances presented here, "to achieve the timely adjudication of every [stay request] it receives." ECF No. 81, Ex. A, ¶ 17. Moreover, stays are also available on a highly expedited basis from federal appellate courts in connection with petitions for review of reopening motions. *See*, *e.g.*, *Khan v. Attorney General*, 691 F.3d 488, 491 (3d Cir. 2012).

These procedures establish that the motion-to-reopen process, with a petition for review in the courts of appeal therefrom, is a fully adequate substitute for habeas relief in federal district court. And that is just the conclusion reached by multiple courts of appeals—including the Sixth Circuit. *See Muka v. Baker*, 559 F.3d 480, 485 (6th Cir. 2009).[2] The motion-to-reopen process—which, by design, in *every*

---

[2] *Muka* held that limiting federal court jurisdiction to a petition for review from administrative proceedings "provides an alien with the availability of the same scope of review as a writ of habeas corpus" and thus "does not violate the Suspension Clause." 559 F.3d at 485. This Court previously rejected *Muka*'s applicability on the grounds that, unlike here, the aliens there knew of basis for their claim but failed to raise it in their original removal proceedings. ECF No. 64 at 19. But, as this Court noted, even if Petitioners did not know of their changed-conditions claims when some of them were in their initial proceedings, their new claims ripened "sometime in or after 2014," providing them ample time to avail themselves of the

instance, presents a situation where the alien must halt execution of a pending final removal order using the administrative process like here—has been upheld against Suspension Clause challenge by multiple courts of appeals. *See Iasu v. Smith*, 511 F.3d 881, 893 (9th Cir. 2007); *accord Alexandre v. U.S. Atty. Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006); *Luna v. Holder*, 637 F.3d 85, 97 (2d Cir. 2011).

Petitioners point to nothing that overcomes the adequacy of the motion-to-reopen process. Petitioners do not assert that their claims cannot be heard in the process Congress designed—indeed, they implicitly concede that they can. *See* ECF No. 118 ¶¶ 69-71. Petitioners' depiction of a barrier boils down to an argument that there is a burden in seeking relief from an adjudicatory forum. *See, e.g.*, ECF No. 77 at 7-12. But that is not enough. Suspension Clause concerns may arise when there is *no* forum to address legal and constitutional questions, *see St. Cyr*, 533 U.S. at 300–02, but it has not been said that such concerns arise merely when there are time, information-gathering, or transactional costs to using that forum. Such costs come with most or all judicial review. While Petitioners allege being "deprived" of access to records from her prior applications and proceedings, ECF No. 118 ¶¶ 143-44, an alien and her attorney should be in possession of her immigration papers and should

---

administrative reopening process prior to their arrest for removal in June 2017. This point should mitigate the Court's second concern regarding the consequences of insufficient time to file motions to reopen. *See id.* at 19-20.

be uniquely aware of new facts not necessarily appearing in the ROP relating to her potential treatment upon return to Iraq. Further, the immigration courts have the ROP available to them and are "not delay[ing] issuing a ruling on a stay request if removal is imminent" even if the ROP has not yet been obtained. ECF No. 81, Ex. B, ¶ 16.

Indeed, filing a motion to reopen in immigration court presents no greater challenge than filing a request for relief in this Court on essentially the same grounds. A request for preliminary relief also requires the support of evidentiary materials of at least a similar quality. *See* Fed. R. Civ. P. 65(a) (discussing "evidence that is received on the motion"). Habeas rules require a similar showing. *See* 28 U.S.C. § 2241(c)(3) (petitioner must show "custody in violation of the Constitution or laws or treats"); Habeas Rule 2 (habeas petition must "specify all the grounds for relief" and "state the facts supporting each ground").

If anything, the processes available in the administrative forum are *better* suited than this Court to the emergent situation presented here because: (1) the BIA has developed a special Unit to handle stay of removal requests; (2) the BIA, as well as the immigration courts, have access to information that is not readily or immediately available to a federal habeas court regarding the imminence of removal; (3) the immigration courts and BIA address these kinds of issues every day, and are familiar with the needs presented in individual cases, including with respect to the timing of a stay request, and unlike federal courts are empowered to provide relief

11

from removal, *see* ECF No. 81, Ex. B, ¶¶ 14–24, and (4) unlike district court, the immigration courts have access to the record in individual cases, *see id.* ¶¶ 15–16.

The Court's conclusions otherwise rest on its finding that even though the immigration courts were available to Petitioners when Iraq's country conditions were alleged to have begun changing back in 2014, the fact that Petitioners did not believe they were going to be imminently removed until earlier this year rendered moving to reopen earlier "an academic exercise." ECF No. 87 at 20. But the fact that an alien must go to the trouble of filing a motion to reopen in order to properly move to stay his or her removal—and should do so before or shortly after ICE begins effectuating his or her removal order in order to preserve their ability to receive their sought-after relief—does not foreclose judicial review of a removal order so as to rise to a Suspension Clause violation. Just as "[o]ne who fails to act diligently cannot invoke equitable principles to excuse the lack of diligence," *Garrison v. Warren Corr. Inst.*, 187 F.3d 635 (6th Cir. 1999), Petitioners should not have been able to invoke Suspension Clause principles to seek a stay of removal in this Court despite clear statutory language stripping this Court of the authority to grant such a stay, when they failed to exercise diligence by seeking their request in Congress's chosen forum, if not before then at least soon following Iraq's agreement to accept their removal in March 2017 or as soon as they were taken into custody.

The exclusive forum Congress created for this purpose possesses the authority to address exigent circumstances and provide Petitioners with complete relief. Petitioners' new petition should be dismissed for lack of jurisdiction.

### B. Petitioners' Claims Are Otherwise Barred or Meritless.

### 1. Claim One: Convention Against Torture and Section 1231(b)(3)

Plaintiffs lack Article III standing to bring their claim under the CAT and the INA's withholding of removal provision, 8 U.S.C. § 1231(b)(3), because this Court cannot redress any such injury. A party must have standing to invoke the jurisdiction of the federal courts. *Nat'l Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). To have standing, a "[p]laintiff must have suffered an injury in fact" which "has to be fairly traceable to the challenged action of the defendant, and . . . it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted). "An injury is redressable if a court order can provide substantial and meaningful relief." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 715 (6th Cir. 2015) (quotation omitted).

Even accepting as true Petitioners' well-pleaded allegations, they could not obtain relief from this Court for any violation of CAT, asylum or withholding of removal, and thus the redressability element is absent. *See id.* CAT is not a self-executing treaty, and the INA specifies that the only enforceable CAT or INA rights

13

are available in removal proceedings or in a petition for review from those proceedings. *See supra*; 8 U.S.C. § 1252(a)(4); *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 n.5 (6th Cir. 2006). District courts lack jurisdiction to review issues arising from removal proceedings through this mechanism. 8 U.S.C. § 1252(b)(9); *Muka*, 559 F.3d at 483–84; *Almuhtaseb v. Gonzales*, 453 F.3d 743, 747 (6th Cir. 2006). Moreover, even the court of appeals may review any otherwise cognizable case "only if [] the alien has exhausted all administrative remedies available as of right." 8 U.S.C. § 1252(d)(1). Most Petitioners admittedly failed to exhaust their asylum, withholding, and/or CAT claims through reopening motions filed with the immigrations courts prior to bringing this suit. Because the Court cannot provide Petitioners with relief under CAT, this claim fails for want of standing and must be dismissed. *See Lujan*, 504 U.S. at 561.

### 2. Claim Two: Due Process Prior To Removal

Petitioners allege that Respondents have violated Petitioners' "right to a fair proceeding before they are removed from the country" under the Due Process Clause. ECF No. 118 ¶ 121. This claim fails: the procedures available to Petitioners are fully adequate, and Petitioners have suffered no prejudice. A due process violation occurs only when "the proceeding was so fundamentally unfair that the alien was *prevented from* reasonably presenting his case." *Modarresi v. Gonzales*, 168 F. App'x 80, 85 (6th Cir. 2006). Petitioners must also show "that the due process

violations led to *a* substantially different outcome from that which would have occurred in the absence of those violations." *Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008). Petitioners make neither showing.

First, Petitioners' allegations do not support a plausible inference that they were *prevented* by emergent circumstances from reasonably presenting their case. They could have filed motions to reopen at any time if they thought conditions in Iraq had changed so as to warrant protection from removal. 8 U.S.C. § 1252(a)(5), (b)(9), (g). Indeed, many Petitioners did just that, some as early as 2011 and 2012. *See generally* ECF No. 81, Ex. I-P; *see also* ECF No. 17-2–17-8. Petitioners allege a fear of return because of "the government's destabilization and the rise of the so-called Islamic State," ECF No. 118 ¶ 69, but they do not, and could not plausibly, allege that such destabilization and ISIS rise occurred only following March of this year. Further, they allege there "came a period of time, in the past several years, in which [Iraqis' applications for relief from removal] were almost invariably granted," *id.* ¶ 70, indicating that the circumstances giving rise to such grants of protection from relief to Iraq arose in "the past several years" and not merely in the weeks before June 2017. *See, e.g.*, *id.* ¶ 67 (citing *Yousif v. Lynch*, 796 F.3d 622, 628 (6th Cir. 2015)). They also claim that some may qualify for reopening based on court "decisions which shift what crimes are considered disqualifying aggravated felonies." *Id.* ¶ 71. But the only concrete, non-conclusory example of such a decision

15

that they allege is a Supreme Court decision *from 2013*, which means that they had ample time to file for reopening long before they brought this case. *Id.* (citing *Moncrieff v. Holder*, 133 S. Ct. 1678 (2013)).

Nor did the Government's adherence to the removal and reopening procedures unlawfully prevent any Petitioners from filing reopening motions. *See Abdallahi v. Holder*, 690 F.3d 467, 473 (6th Cir. 2012); *Shewchun v. Holder*, 658 F.3d 557, 569 (6th Cir. 2011). Indeed, Petitioners allege that "over 80%" of 145 putative class members had filed and were in the process of adjudicating motions to reopen or reopened proceedings "prior to this Court's July 24, 2017 injunction that required production of files necessary to properly litigate relief in immigration court." 2d Am. Compl. ¶¶ 79, 80. They also allege that "[a]s of September 30, 2017, government disclosures do not reveal even one class member who has failed to obtain at least some success in his or her reopened case." *Id.* ¶ 82. They *do not* allege that any part of the administrative reopening process "prevented" any putative class member "from reasonably presenting his case," *Modarresi*, 168 F. App'x at 85, causing a "substantially different outcome," *Graham*, 519 F.3d at 549. They also do not allege that any Iraqi in this putative class was removed before having a motion to reopen adjudicated or entry of the Court's order. *See, e.g.*, ECF No. 118 ¶¶ 65, 66.

Nor have they established prejudice that justifies class-wide relief. Each Petitioner presents a unique set of facts and circumstances with regard to the ultimate

viability of their claims, as Petitioners concede, *see* ECF No. 77 at 25, which underscores that it is inappropriate for this Court to step in to grant class-wide relief under the Due Process Clause. *See* Fed. R. Civ. P. 23(a)(2). Count Two thus fails to state a plausible claim for relief.

### 3. Count Three: Challenge to Detention Transfer

Count Three alleges that Petitioners' detention transfer interferes with their statutory right to counsel and due process right to a fair hearing. ECF No. 118 ¶ 126. This count fails to state a cognizable claim because Petitioners have been afforded the full extent of the right to counsel that applies in immigration proceedings and because, in any event, the Executive Branch's decision on where to locate a detained alien cannot be second-guessed by the Judiciary.

To start, Petitioners have been afforded the right to counsel that applies in immigration proceedings—the opportunity to have an attorney present. The statute governing the right to counsel in immigration proceedings provides:

> In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

8 U.S.C. § 1362. Although ineffective counsel can deprive an alien of due process, such a violation occurs "only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Denko v. INS*, 351 F.3d

17

717, 723 (6th Cir. 2003). Petitioners do not allege that any putative class member has in fact been "prevented from reasonably presenting his case" due to issues with legal representation. *See id.*

Petitioners, however, demand affirmative Government action to *ensure* legal representation, such as the Sixth Amendment provides in criminal proceedings. *See Kalaj v. Gonzales*, 137 F. App'x 851, 855 (6th Cir. 2005). Such action extends well beyond what federal statute and the Fifth Amendment guarantee them. The right to counsel here is one that Congress has provided "at no expense to the Government." 8 U.S.C. § 1362. But Petitioners would force considerable expense on the Government, by requiring it to transport them to facilities more convenient for certain lawyers after Petitioners have been transferred based on operational necessity or for detention efficiency purposes. And the right to counsel in immigration proceedings is a right to have competent counsel, not a guarantee that the Government take affirmative action to ensure an alien is represented by a particular lawyer, no matter where that lawyer is located and no matter the public cost.

Petitioners' claim fails for the separate reason that it improperly challenges a discretionary decision entrusted to the Executive Branch, over which the Court lacks jurisdiction. "Congress has placed the responsibility for determining where aliens

are to be detained within the sound discretion of [DHS]."[3] *Marogi v. Jenifer*, 126 F. Supp. 2d 1056, 1066 (E.D. Mich. 2000). DHS is authorized to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). Thus, "'the transfer and detention of an alien at a particular facility is well within the province of [DHS] to decide.'" *Pineda-Hernandez v. U.S. Dep't of Immigration & Naturalization*, No. 86-7557, 1988 WL 126260, at *7 (9th Cir. 1988) (unpublished) (quoting *Rios-Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985)); *see also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999); *Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995).

Further, as a court in this district has explained, "[o]rdinary review of such decisions [determining where an alien should be detained] is plainly precluded by 8 U.S.C. § 1252(a)(2)(B)(ii)." *Marogi*, 126 F. Supp. 2d at 1066; *accord Avramenkov v. INS*, 99 F. Supp. 2d 210, 213 (D. Conn. 2000) (holding that section 1252(a)(2)(B)(ii) barred judicial review of a decision to transfer an alien's detention). Section 1252 provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the

---

[3] In 2002, Congress transferred jurisdiction to implement various INA provisions from the Justice Department's former Immigration and Naturalization Service to the Secretary of DHS. *See* 6 U.S.C. §§ 202, 291, 557; *Louisiana Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Labor*, 745 F.3d 653, 659 (3d Cir. 2014).

discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii). "This subchapter" is subchapter II of Chapter 12 of Title 8, which covers 8 U.S.C. §§ 1151–1378, *Kucana v. Holder*, 558 U.S. 233, 239 n.3 (2010), thus including section 1231. This makes sense because the decision of where to detain an alien—particularly one ordered removed—depends on policy, logistical, and practical considerations providing little basis for standards or benchmarks on which to hinge judicial review. *Cf. Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986) ("[C]ourts are fundamentally underequipped to formulate national policies or develop standards for matters not legal in nature." (internal quotation omitted)). The court thus lacks jurisdiction under section 1252 over any challenge to DHS's discretionary determination regarding the location of Petitioners' detention. *See Marogi*, 126 F. Supp. 2d at 1066.

Even if the court had jurisdiction, Plaintiffs fail to allege a plausibly meritorious claim. Cases finding a constitutional violation relating to transfer feature interference with an alien's ability to obtain counsel that prejudices their case. *See Rios-Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985). By comparison, courts reject such a claim where an alien fails to allege concrete interference with an actual attorney-client relationship, *see Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1439 (9th Cir.), *amended*, 807 F.2d 769 (9th Cir. 1986); *Dai v. Caplinger*, No.

20

CIV. A. 94-2190, 1995 WL 241861, at *3 (E.D. La. Apr. 25, 1995) (noting that "[a]s long as petitioners are given reasonable access to the telephones to communicate with their counsel, they have not been denied their right to access to counsel"), or where the alien cannot demonstrate an inability to obtain counsel in the transferee site. *See Pineda-Hernandez*, 1988 WL 126260, at *7 ("*Rios-Berrios* does not impose a heightened duty on the INS, but does require that in a certain set of circumstances that it is particularly important that an alien be given a reasonable time to obtain representation."); *Gandarillas-Zambrana v. Bd. of Immigration Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995) (noting alien failed to "present any support for his bald allegations that counsel was unavailable to him in Louisiana" following transfer); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1049 (S.D. Fla. 1990).

Petitioners only allege, in effect, that their transfer makes it more difficult for lawyers in their previous locations to assist them, or to obtain counsel in the communities where they resided. *See* ECF No. 118 ¶¶ 74-76. They do not allege that they have suffered any prejudice by losing motions on this basis or otherwise suffered any loss of a right due to this distance from counsel, *see Rios-Berrios v. INS*, 776 F.2d 859, 863, nor do they allege trying but being unable to obtain counsel in their transferee locations, *see Gandarillas-Zambrana*, 44 F.3d at 1256. A due process violation would also require that Petitioners allege a basis showing a likelihood that these transfers have a dispositive prejudicial effect on their individual

immigration proceedings, *see Graham*, 519 F.3d at 549, which they have failed to do. For these reasons, they fail to state a claim based on the detention transfers.

### 4. Count Four: Challenge to Post-Final-Order Detention

Petitioners claim that their detention is unlawful because they can "establish[] good reason to believe" that "their removal is not reasonably foreseeable." ECF No. 118 ¶ 129. This claim fails as a matter of law. Such detention is presumptively reasonable until at least six months, which none of Petitioners have reached.[4] *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *Rosales-Garcia v. Holland*, 322 F.3d 386, 415 (6th Cir. 2003).

Aliens with final orders of removal are detained for the purpose of effecting removal under section 1231. *See* 8 U.S.C § 1231(a)(1)(A); *Rosales-Garcia*, 322 F.3d at 403. Following the initial ninety-day removal period, during which detention is authorized, 8 U.S.C § 1231(a)(1)(A), regulations provide that ICE must conduct a custody review for an alien where the alien's removal cannot be accomplished during the prescribed period. 8 C.F.R. § 241.4(k)(1)(I). ICE may release the alien under conditions of supervision at this time if it finds, among other circumstances,

---

[4] Although many Petitioners may have been detained for removal and then released when Iraq refused to accept them prior to March of this year, the presumptively valid six-month period under *Zadvydas* does not date from the original removal period, but instead from Petitioners' recent re-detention. *See, e.g.*, *Phean v. Holder*, No. 11–CV–0535, 2011 WL 1257389, at *2 (M.D. Pa. Mar. 30, 2011).

that "[t]ravel documents for the alien are not available or, in the opinion of [DHS] immediate removal, while proper, is otherwise not practicable or not in the public interest." *Id.* § 241.4(e)(1); *see id.* § 241.13(g)(2) (providing that if ICE "determines . . . that there is a significant likelihood that the alien will be removed in the reasonably foreseeable future, [ICE headquarters] shall deny the alien's request" and continue to evaluate the propriety of detention or release under 8 C.F.R. § 241.4).

Thus, while law permits detention well past the 90-day removal period, as the Supreme Court and Sixth Circuit have explained, this detention is subject to a limitation to ensure it does not become indefinite:

> [W]e recognize six months as a presumptively reasonable period for the post-removal detention of excludable aliens. 'After this 6–month period, once the alien provides good reason to believe that there is no [SLRRFF], the Government must respond with evidence sufficient to rebut that showing.'

*Rosales-Garcia*, 322 F.3d at 415 (quoting *Zadvydas*, 533 U.S. at 701). As Petitioners acknowledge and this Court has already found, the aliens at issue here are either not yet detained, or have only been detained since June 11, 2017. ECF No. 87 at 2. Their detention has yet to reach the six-month mark, and therefore it is still presumptively reasonable. *See Rosales-Garcia*, 322 F.3d at 415.

Moreover, Petitioners' effort to delay their removal by filing this habeas litigation and securing a judicial stay should not be counted toward the lawful period the Government has, free of impediment, to remove the alien. An alien who acts to

23

impede governmental removal efforts tolls or otherwise extends the removal period. *See* 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien . . . acts to prevent the alien's removal subject to an order of removal.").

Courts have "reasoned that, when an alien obstructs his removal, he cannot meet his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future." *Hydara v. Gonzales*, No 07-cv-0941 PJS/JSM, 2007 WL 2409664, at *2 (D. Minn. Aug. 21, 2007), *aff'd sub nom. Hydara v. Doe*, 324 F. App'x. 534 (8th Cir. 2009) (citing *Lema v. INS*, 341 F.3d 853, 856 (9th Cir. 2003). "The reasoning is that, where the timing of removal is controlled by an uncooperative alien rather than immigration officials, there is no meaningful way to ascertain the likelihood of removal." *Kanu v. Sheriff Butler Cty.*, No. 1:16-CV-756, 2016 WL 6601565, at *6, *report and recommendation adopted*, 2017 WL 25537 (S.D. Ohio Jan. 3, 2017) (internal quotation omitted).

Even were their cognizable detention longer than six months, Petitioners do not allege a plausible basis for the court to find that there is no significant likelihood of their removal in the reasonably foreseeable future (SLRRFF). *See Zadvydas*, 533 U.S. at 701. They are in proceedings to reconsider protection from removal to a country willing to accept their removal, proceedings which have definitive endpoints. Thus, they are not in the limbo of detained aliens ordered removed and

who therefore "could be subjected to a life sentence in prison simply because their country of origin will not have them back," the problem *Zadvydas* and its progeny addressed.[5] *See Rosales-Garcia*, 322 F.3d at 413. Detention during judicial review is necessarily "not indefinite because the end of the litigation provides a definite end point." *Flores v. Holder*, 977 F. Supp. 2d 243, 249 (W.D.N.Y. 2013) (citing *Prieto–Romero v. Clark*, 534 F.3d 1053, 1065 (9th Cir. 2008); *Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004)).

Petitioners claim that there is no SLRRFF because they again seek protection from removal and it is uncertain how long the litigation of these claims may take. *See* ECF No. 118 ¶¶ 130-32. But such "detention is clearly neither indefinite nor potentially permanent like the detention held improper in *Zadvydas*; it is, rather, directly associated with a judicial review process that has a definite and evidently impending termination point"—the completion of their reopening proceedings. *See Soberanes*, 388 F.3d at 1311.

Petitioners also argue that they should prevail under *Zadvydas* because the Government previously released them when Iraq would not accept their removal and now it has "provided no particularized evidence that Iraq is prepared to issue travel

---

[5] In *Zadvydas*, the Supreme Court addressed the issue of whether the Government could continue to detain two aliens which it could not practically remove, as their home country refused to accept them back or did not currently have a repatriation agreement with the United States. *See* 533 U.S. at 684-86.

documents for, or otherwise accept the repatriation, of any particular class member." ECF No. 118 ¶ 129. But as the Court previously explained, a change in diplomatic relations with Iraq permits the United States to remove many more Iraqis whom Iraq previously would not accept without unexpired passport. *See* ECF No. 87 at 3. Petitioners' argument also erroneously inverts the *Zadvydas* burden structure: Petitioners would place the initial burden on the Government, when circumstances finally permit their removal, to show the ability to procure travel documents and thus establish SLRRFF. *Zadvydas* is clear, however, that the alien bears the initial burden of providing evidence sufficient to show no SLRRFF. *See* 533 U.S. at 701 (holding that the alien must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" before the Government is forced to "respond with evidence sufficient to rebut that showing"). In light of the circumstances already found by the Court and the case law, Petitioners fail to show "good reason to believe" there is no SLRRFF. For this reason, Petitioners fail to state a claim of prolonged section 1231 detention under *Zadvydas*.

### 5. Count Five: Claim for Individualized, Neutral Custody Review

In Count Five, Petitioners claim that they are being deprived of a right to receive an individualized, neutral determination of danger or flight risk justifying their continued post-order (8 U.S.C. § 1231) detention while seeking to reopen their

removal orders. ECF No. 118 ¶¶ 133-38. They further challenge their denial of release based on post-order custody review (POCR). *Id.*

However, these allegations do satisfy the governing legal standard justifying continued post-order detention—whether there is SLRRFF, not whether an alien has received a determination of danger or flight risk in custodial hearing. Petitioners' argument confuses the different purposes and standards governing pre-order mandatory custody (8 U.S.C. § 1226(c)) and post-order custody (8 U.S.C. § 1231). With pre-order detention under section 1226(c), the Sixth Circuit has held that individualized custodial determinations by an independent arbiter—*i.e.*, bond hearings—may be required during detention where "removal proceedings [are not] concluded within a reasonable time." *Ly v. Hansen*, 351 F.3d 263, 270 (6th Cir. 2003). In contrast, with post-order detention under section 1231, *Ly* explained that under *Zadvydas*, the length of such detention is problematic where it is indefinite, but where it is indefinite, even individualized custody hearings are insufficient given the permanent deprivation of liberty. In *Zadvydas*, *Ly* explained:

> [P]rocedural protections (rights to a hearing at which the alien could argue that he did not pose a danger to the community) were too limited to justify an indefinite detention. However, *Zadvydas* did not mandate extra procedural protection in order to constitutionalize the imposition of indefinite civil detention; rather, it held that indefinite deprivation of liberty would require extensive procedural protection and therefore construed the post-removal detention statute to avoid the specter of permanent detention.

*Ly*, 351 F.3d at 270. *Ly* thus forecloses Petitioners' claim in that it recognizes that the governing standard for post-order detention, *Zadvydas*, is concerned with indefinite detention; where such exists, even being judged a danger to the community at an individualized custody hearing would, in most cases, be insufficient to justify permanent loss of freedom. *See id.* Because there is no specter of indefinite detention here, *see supra*; *Zadvydas*, 533 U.S. at 697 ("detention pending a determination of removability . . . has [an] obvious termination point"), the due process concern on post-order detention is absent. Moreover, even if Petitioners were potentially subject to permanent detention, which they are not as Iraq is accepting their removal, the individualized hearings they request would also not satisfy their due process interest. *See Ly*, 351 F.3d at 270.[6] Regardless, because no likelihood of removal is the threshold requirement to limiting the Government's post-order detention authority, "*Zadvydas* does not require a hearing or release unless the non-citizen has been detained beyond the presumptively reasonable six month period *and* he provides good reason that there is no [SLRRFF]." *Filmon v.*

---

[6] One circuit provides certain section 1231 detainees with bond hearings, analogizing to those it provides to aliens in pre-order detention under section 1226. *See Diouf v. Napolitano*, 634 F.3d 1081, 1086 (9th Cir. 2011). *Diouf* is unpersuasive here because it is in direct tension with the Sixth Circuit's holding in *Ly* that post-removal-order custody is concerned with a different problem—not prolonged detention when removal proceedings are lengthy, but potentially permanent detention where an alien is unremovable—and administrative custody hearings are insufficient to safeguard against this different, permanent deprivation of liberty. *See Ly*, 351 F.3d at 270.

*Hendricks*, No. CIV.A. 13-6739 DMC, 2013 WL 6154440, at *4 (D.N.J. Nov. 15, 2013) (emphasis in original).

Further, their allegations that some Petitioners did not receive POCRs do not entitle them to release even if the Court found a procedural violation. Their due process claim to release from post-order custody is under *Zadvydas*—the Government may continue to detain aliens ordered removed until six months is reached and the alien cannot show no SLRRFF. If Petitioners are instead asserting an Administrative Procedure Act violation for unlawful adherence to a regulation, the best they can obtain is remand to DHS to conduct a POCR, not an independent determination by the Court about the appropriateness of release under the regulations. "[W]hen a district court reverses agency action and determines that the agency acted unlawfully, . . . the appropriate course is simply to identify a legal error and then remand to the agency, because the role of the district court in such situations is to act as an appellate tribunal." *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 57 (D.D.C. 2014) (quotation omitted). It is reversible error for a court to order the agency to take specific actions when such a procedural error occurs. *Id.*

Contrary to Petitioners' allegations, whether the POCR process is adequate is unrelated to their entitlement to release, which is based on the *Zadvydas* standard. Further, their claim that a POCR denial of release would be improper if the alien does not present a danger or flight risk is incorrect on its face. The applicable

regulations provide that DHS may, and must, consider whether there is SLRRFF before determining that an alien may be released. *See* 8 C.F.R. §§ 241.4(e)(1), 241.13. Petitioners fail to allege a cognizable entitlement to an individualized review of their section 1231 detention or any right to such an independent determination or release on the basis of any alleged irregularities in the POCR process.

### 6. Count Six: Challenge to Pre-Order Mandatory Detention

Petitioners allege that those with reopened removal proceedings, and presumably qualifying criminal convictions, are unlawfully subject to mandatory pre-order detention for criminal aliens under 8 U.S.C. § 1226(c), ECF No. 118 ¶¶ 139-149, because their qualifying criminal convictions preceded their recent re-arrests for removal and thus their current detention did not happen exactly "when" they were "released" from criminal incarceration. *See* 8 U.S.C. § 1226(c)(1).

This argument fails to state a claim because the meaning of "when . . . released" in section 1226(c)(1)—and cases examining this meaning for purposes of establishing detention authority—are irrelevant to Petitioners' circumstances. Their claim fails to recognize that Petitioners did *not* transition from criminal custody to immigration custody, which section 1226(c)(1)—which deals with aliens arrested and detained for the purpose of removal proceedings at the conclusion of a criminal sentence—contemplates. *See In Re Rojas*, 23 I. & N. Dec. 117, 119-22 (BIA 2001). These Petitioners' apprehension following release from criminal custody for

purposes of prosecuting removal proceedings happened some time ago, before they received their initial final orders of removal.

Rather, the arrest that precipitated this case was Petitioners' detention for purpose of removal under 8 U.S.C. 1231(a). After all, all petitioners in this case by definition "had final orders of removal on June 24, 2017, and . . . have been, or will be, *detained for removal by ICE*." (emphasis added). All Petitioners with now-reopened removal orders were necessarily initially detained for removal under 8 U.S.C. § 1231(a)—after having received final removal orders. When their motions to reopen were granted, they were no longer administratively final, *see* 8 U.S.C. § 1231(a)(1)(B)(I), and thus their detention authority reverted to their pertinent pre-order authority. This would be 8 U.S.C. § 1226(c) for those with a qualifying criminal history. Thus, there was no "gap" in custody between criminal incarceration and federal immigration custody, but a transfer from post-order detention under section 1231 to pre-order detention under section 1226(c).

For this reason, the statutory concern some courts have found with reading section 1226(c) to authorize mandatory detention when an alien is apprehended following criminal custody for a different reason than the crime underlying his eligibility for mandatory detention and removal is not implicated here. *See, e.g.*, *Saysana v. Gillen*, 590 F.3d 7, 18 (1st Cir. 2009) ("[T]he statute contemplates mandatory detention following release from non-DHS custody for an offense

specified in the statute, not merely any release from any non-DHS custody[.]"). Here, however there was no "release" causing the initiation of section 1226(c) detention, nor were Petitioners released from "non-DHS custody." *See id.* There is no concern that DHS is premising mandatory detention on a different intervening period of criminal custody that would not support section 1226(c) detention. *See id.* The passage of time from Petitioners' release from criminal detention until their current immigration detention does not pose this concern. *See In Re Rojas*, 23 I. & N. Dec. 117, 124 (BIA 2001) (noting "strong evidence that Congress was not attempting to restrict mandatory detention to criminal aliens taken immediately into Service custody at the time of their release from a state or federal correctional institution" in holding that apprehension of an alien immediately upon release from criminal custody was not a precondition for mandatory detention under section 1226(c)); *see also Hosh v. Lucero*, 680 F.3d 375, 384 (4th Cir. 2012) (holding "that the BIA's interpretation of § 1226(c) in *Rojas* was reasonable, and must be afforded deference"); *Sylvain v. Attorney Gen. of U.S.*, 714 F.3d 150, 157 (3d Cir. 2013).[7]

Finally, while Petitioners may argue their previous release from section 1231 custody following receiving final orders of removal during the period in which Iraq

---

[7] *But see Preap v. Johnson*, 831 F.3d 1193, 1203 (9th Cir. 2016), *cert. petition docketed*, No. 16-1363 (S. Ct.) (holding that the government must take the alien into custody "when ... released" in order to detain her under section 1226(c)).

refused to repatriate them undermines the Government's argument that mandatory detention is appropriate now that they are removable, as explained, such release from section 1231 was predicated on the lack of SLRRFF. *See* 8 C.F.R. §§ 241.4(e)(1), 241.13; *Ly*, 351 F.3d at 270; *Demore v. Kim*, 538 U.S. 510, 527 (2003).

Detaining them potentially indefinitely regardless of flight risk or danger posed due process concerns. *Ly*, 351 F.3d at 270. However, Petitioners are both now potentially removable, and not yet subject to a removal efforts because they no longer have final orders of removal. *See* 8 U.S.C. § 1231(a)(1)(B)(i). The determination to release them before due to the absence of no SLRRFF thus does not bear directly on the flight risk or danger to the community categorically underlying their section 1226(c) detention. *See Demore*, 538 U.S. at 528 (explaining that, based on the evidence, Congress could categorically determine that "permitting discretionary release of aliens pending their removal hearings would lead to large numbers of deportable criminal aliens skipping their hearings and remaining at large in the United States unlawfully").

### 7. Count Seven: Access to Files

In Count Seven, Petitioners claim they "have been deprived of timely access to the files needed to file their motions to reopen." ECF No. 118 ¶¶ 143-44. Not only have Defendants not violated the Court's production order, Petitioners plead themselves out of court by alleging facts showing that they do not need their

comprehensive files to file, or succeed on, motions to reopen. *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d at 613.

Respondents' deadlines to produce the A-files and ROPs has not yet come, as Petitioners themselves acknowledge, as the Court set deadlines of November 6 and November 27, 2017, for Respondents' production of these files. ECF No. 118 ¶ 145. Respondents have not breached any duty. Further, Plaintiffs' own allegations establish that possession of the A-files and ROPs is unnecessary to obtain reopening. *See Hensley Mfg.*, 579 F.3d at 613; *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007). Petitioners allege: "The stay is working: it has allowed many class members to pursue the relief to which they are entitled[.]" ECF No. 118 ¶ 79. They state that 145 putative class members filed reopening motions since March 2017 and of the 105 that have been decided, 62 have been granted. *Id.* Further, over 80% were filed prior to the injunction ordering production of the A-files and ROPs. *Id.* ¶ 80. Plaintiffs' allegations thus establish that possession of these files is unnecessary to both file a motion to reopen and to succeed on such a motion, as the alleged success rate has been 150% percent of the denial rate. *See id.* Their allegations do not plausibly support, but undermine, their unsupported assertion that these files are essential to adequately presenting their claims.

Even if Petitioners' allegations did not defeat their own claim, however, any agency delay in completing the extremely labor-intensive process of compiling and

preparing Petitioners' file does not state a claim for substantive relief. If Petitioners disagree with manner in which Respondents are complying with a court discovery order, their recourse is to file a motion to compel. *See* Fed. R. Civ. P. 37.

Finally, to the extent that Petitioners allege that they were prejudiced by not having their A-files or ROPs, their claims are not cognizable in this Court because they "arise from" removal proceedings. *See* 8 U.S.C. 1252(b)(9); *Elgharib*, 600 F.3d at 603-04. Petitioners may appeal any denial of a motion to reopen or removal order to the BIA and to the circuit court of appeals, and they can raise their claims, *see* ECF No. 118 at ¶ 146, through the process provided by Congress. *See Iasu*, 511 F.3d at 893. The administrative process and the federal circuit courts of appeal are capable of adjudicating any claim by Petitioners' that their motion to reopen should not have been denied nor should they have been required to proceed with their reopened cases without the benefit of their ROPs or A-files. Moreover, the Court's order dictates that Petitioners' stay of removal remains in place until dismissal of any such appeals. ECF No. 87 at 33. Accordingly, the Court should dismiss Count Seven.

## CONCLUSION

For the foregoing reasons, Respondent respectfully requests that the Court dismiss all claims in the Second Amended Class Petition, ECF No. 118.

Dated:  November 1, 2017                    Respectfully submitted.

CHAD A. READLER
Acting Assistant Attorney General           VINITA B. ANDRAPALLIYAL
                                            MICHAEL A. CELONE
WILLIAM C. PEACHEY                          JOSEPH A. DARROW
Director                                    *Trial Attorneys*

/s/ William C. Silvis                       *Counsel for Respondents*
WILLIAM C. SILVIS
Assistant Director

36

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I caused a true and correct copy of the foregoing Defendants' Motion to Dismiss the Second Amended Class Petition to be served via CM/ECF upon all counsel of record.

Dated:  November 1, 2017                    Respectfully submitted,

                                                          */s/ William C. Silvis*
                                                          William C. Silvis
                                                          Assistant Director

                                                          *Counsel for Defendants*