# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**USAMA JAMIL HAMAMA**, et al.,

    Petitioners/Plaintiffs,

*v.*

**REBECCA ADDUCCI**, et al.,

    Respondents/Defendants.

Case No. 2:17-cv-11910
Hon. Mark A. Goldsmith
Mag. David R. Grand

Class Action

## **DECLARATION OF MARGO SCHLANGER**

I, Margo Schlanger, hereby declare:

1. I make this declaration based upon my own personal knowledge and if called to testify, I could and would do so competently as follows.

2. I am counsel for all Petitioners/Plaintiffs and the putative class in the above captioned case.

3. I am the Wade H. and Dores M. McCree Collegiate Professor of Law at the University of Michigan Law School. I have longstanding professional expertise in quantitative empirical analysis. For example, I am the former Chair of the Association of American Law School's Section on Law and the Social Sciences. I have taught a law school class titled "Empirical Inquiries in Civil Litigation." I also have published quantitative empirical papers in both law reviews and peer-reviewed journals such as the Journal of Empirical Legal Studies.

4. Because of my expertise in quantitative data and methods, one of my roles in this litigation has been to supervise and direct the litigation team's maintenance, use, and analysis of the data disclosed by the Respondents/Defendants pursuant to the Court's Preliminary Injunction and other Orders. I also have had responsibility for directing the gathering of additional systematic information, described below.

*Available Data*

5. By Court order in this case, the Executive Office for Immigration Review (EOIR), a component of the Department of Justice, has provided information about Iraqi nationals with final orders of removal, including the following procedural history:

    - Date and immigration court of the most recent final order of removal (or, for recently reopened cases, date of reopening).

    - Date, immigration court, disposition, and disposition date of the most recent stay of removal application in immigration court.

    - Date, immigration court, disposition, and disposition date of the most recent motion to reopen in immigration court.

    - Date, disposition, and disposition date of the most recent motion to reopen in the Board of Immigration Appeals.

    - Date and disposition – but *not* disposition date – of the most recent appeal in the Board of Immigration Appeals. On October 4, 2017, on Petitioners' longstanding request, EOIR began to provide appeal disposition dates, but that new information covered only currently detained individuals.

6. The scope of EOIR's disclosures have varied over time. From July through the end of September 2017, disclosures covered all Iraqi nationals who had final orders of removal as of June 24, 2017. Beginning October 4, 2017, with the Court's permission, EOIR's disclosures were reduced to cover only currently detained individuals.

7. EOIR's court-ordered disclosures do not track merits adjudication after a Motion to Reopen is granted. For this, our source has been the Executive Office for Immigration Review (EOIR) 1-800 number (1-800-898-7180), which allows the public to find out limited information about ongoing proceedings in Immigration Court, if the user knows the A-number of the noncitizen of interest.

8. In addition, ICE has provided biweekly disclosures of current detention locations for Iraqi nationals who had final orders of removal on June 24, 2017. From July 21, 2017 through the end of September, these disclosures covered all such individuals. For every such individual in detention as of

2

July 28, 2017, ICE also disclosed detention locations from March 2017 through the July date of the disclosure.

9. Beginning October 4, 2017, with the Court's permission, ICE narrowed its detention location disclosures to cover only those individuals who had not yet succeeded in getting their immigration case reopened. That is, disclosures beginning October 4, 2017 have omitted the detention location for any class member who has succeeded in reopening his or her case.

10. To supplement ICE's disclosures, we have systematically used ICE's Online Detainee Locator System, a web-based system whose current address is https://locator.ice.gov/odls/#/index, which allows members of the public to look up the current detention location of particular ICE detainees, if the user knows the detainee's A-number and country of birth. We have been able to use the Online Detainee Locator System to get detention location for all but a small handful of omitted class members. The handful consists of a few class members whose information could not be obtained from the online locator because their country of birth is unknown to Petitioners' counsel.

11. We have systematically tracked Iraqi nationals' cases in the federal court system, as well, looking for Court of Appeals Petitions for Review. These can be located online using the individuals' A-numbers, because the A-number is included in the Court of Appeals docket.

12. A final source of systemic data is the "Integrated Database" of the Federal Judicial Center, available at https://www.fjc.gov/research/idb. This database includes information on every case filed and terminated in the federal court system. For each case, the database includes identifying information, the nature of suit, the filing and termination dates, and other information.

*Class Members' Procedural Progress*

13. Using the EOIR data, we are able to determine how many detained class members have so far filed Motions to Reopen (MTRs), and the progress and outcomes of those motions. The most recent data was received November 2, 2017; it includes information about individuals detained on October 28, 2017. Note that the following data also include as "class members" four individuals known to us whose MTRs were granted immediately prior to June 24, 2017. ICE and EOIR have not made any

disclosures about these individuals, but we have been able to find out the equivalent information from their lawyers.

14. There have been 305 class members who are or have been detained since July, when respondents first disclosed detention information. 164 have filed motions to reopen: 117 in Immigration Court, and 47 in the Board of Immigration Appeals.[1] Of these motions, 75% were filed on or prior to July 24, 2017, the date the Court entered the Stay of Removal/Preliminary Injunction in this litigation, including the records-disclosure order.

15. Members of the litigation team have tried to ascertain whether the lawyers in these cases had the benefit of their clients' A-Files and Records of Proceedings, and have been told by those immigration attorneys we contacted that in nearly all cases those attorney did not have the A-Files and Records of Proceedings. In many, it seems that the motions, at least initially, did not present well-developed evidence about changed country conditions in Iraq. The MTRs were filed without ordinary preparation because of the threat of immediate deportation to Iraq.

16. Of the MTRs filed by class members with the Immigration Court, Immigration Judges (IJs) have granted 64 and denied 43. Ten are pending. ICE has filed interlocutory appeals for some of the reopened cases. Respondents have so far been unwilling to provide information on the numbers or outcomes of those interlocutory appeals, but today, November 6, 2017, we received a copy of one denial, written in broad terms that suggest they may all be denied.

17. Most of the MTR cases filed with the Immigration Court—79 out of 117—are from the Detroit Immigration Court. That court had a sharp change of views beginning July 24, 2017, the date the stay of removal was granted in this case. The immigration judges only granted 12% of the 26 MTRs decided before the stay was issued. Of the 47 MTRs decided in the weeks since, 91% have been granted. In granting the MTRs at the end of July and subsequently, the court has cited evidence of changed country conditions generated in this litigation which was also introduced in the administrative

---

[1] A couple of class members have filed MTRs in both the immigration court and the BIA, apparently unsure about which forum has jurisdiction. I have counted those in whichever was the forum of the second filing, because that seems more likely to be procedurally correct.

4

proceedings.

18. Of the 43 MTRs denied in Immigration Court, at least 32 have already been appealed to the BIA: 2 MTRs denied by IJs have been granted on appeal; and 30 are pending. Additionally, 5 individuals whose MTRs were denied still have time to appeal, and 6 others appear to not have filed an appeal.

19. Of the 47 MTRs filed directly in the BIA, the BIA has decided very few: it has granted 8 and denied 5, with 34 pending.

20. Table 1 summarizes most of the quantitative information in ¶¶14-19, above:

**Table 1: MTR Filings by *Hamama* Class Members**

|  | Total | Forum of Initial Filing | |
|---|---|---|---|
|  |  | IJ | BIA |
| a. All Class Members | **305** |  |  |
| b. Filed MTRs | **164** | **117** | **47** |
| c. Outcome in Initial Forum: |  |  |  |
|     Grant |  | 64 | 8 |
|     Deny |  | 43 | 5 |
|     Pending |  | 10 | 34 |
| d. Outcome on Appeal to BIA: |  |  |  |
|     Grant |  | 2 |  |
|     Deny |  | 0 |  |
|     Pending |  | 30 |  |
|     Still time for appeal |  | 5 |  |

21. All told, 164 of the class members (53%) have filed MTRs in one or the other forum: 74 have been granted (72 in the initial forum and 2 on appeal); 11 have been finally denied within the immigration court system (that is, denied by the BIA, or denied by an IJ with no remaining time for appeal); and 79 are pending. Thus the current administrative grant rate in decided cases is 87% (74/74+11).

22. As just tallied, 74 cases have been reopened on the merits. Information on subsequent developments are not included in the Respondents' biweekly disclosures. But the EOIR 1-800 number has information on all but three of them. Using this source, we have confirmed that at least 61 of the 71 about which information is available are pending in immigration court.

5

Using both the 1-800 information and information obtained from immigration counsel, it appears that class members have obtained relief in all 10 that have concluded.

23. Of the reopened cases that class members have won, we are aware of several different types of relief, including withholding and deferral under the Convention Against Torture; cancellation of removal; and termination of removal proceedings on grounds that the individual was not actually deportable.

24. There are 131 current detainees who have not so far filed MTRs. These are split among many immigration courts—though the plurality (30) are from the Detroit Immigration Court.

*Processing Times for MTRs*

25. There is no way to assess overall processing time for the MTRs filed by class members since March 2017, because so many of them are pending, and because most were filed in June, and therefore logically cannot yet have a duration of longer than 4 months. (In statistical terms, the sample of completed MTRs is "right-truncated"—duration data exists only for the portion of the sample with duration values less than 4 months because the longer-lived ones have not yet resolved.)

26. That said, of the class members' recent MTRs so far adjudicated, Table 2 reports the available data on processing times:

**Table 2: Recent MTRs by Class Members**

|  | Total | Resolved | | | | Pending | | |
|---|---|---|---|---|---|---|---|---|
|  |  | # | Median Days | Min Days | Max Days | # | Median days since filing | Max days since filing |
| a. IJ MTR | 117 | 107 | 32 | 0 | 84 | 10 | 10.5 | 120 |
| b. BIA MTR | 47 | 13 | 57 | 34 | 147 | 34 | 127.5 | 204 |
| c. BIA MTR Appeal | 32 | 2 | 60 | 57 | 63 | 30 | 90.5 | 135 |
| d. IJ MTR & Appeal, (start to finish) | 32 | 2 | 97 | 90 | 104 | 30 | 129 | 150 |
| e. PFRs (All pending) | 4 | 0 |  |  |  | 4 | 71 | 89 |

Pending calculations are as of 10/28/2017, the latest disclosure date.

27. In addition, I analyzed data from the Federal Judicial Center's Integrated

6

Database for all appellate cases that were resolved in Fiscal Year 2016. This database includes information on 6079 immigration PFRs. The FY 2016 statistics are:

- Average resolution time for a PFR was 16.67 months.
- Median resolution time was 11 months.
- 75% took more than 6 months to resolve.
- Over 20% took 2 years or more to resolve.
- The longest-lived case took over 10 years to resolve.

*Detention and Release Statistics*

28. Between the government's first national disclosure on July 10 and the most recent on November 2 (data as of October 28, 2017), the number of detained individuals has increased from 232 to 279. Thus it is apparent that ICE did not detain all the class members in June; arrests and detentions have continued over time, along with a handful of releases.

29. As of the most recent disclosure, class members were detained in 47 different detention facilities. The facilities with over 3 detainees in the class are set out in Table 3:

**Table 3: Detention Locations**

| Facility | Number |
| --- | --- |
| Northeast Oh Corr. Ctr. (Youngstown, OH) | 80 |
| Calhoun County Correctional Center (Battle Creek, MI) | 33 |
| Denver Contract Det. Fac. (Aurora, CO) | 19 |
| Etowah County Jail (Gadsden, AL) | 17 |
| Chippewa Co. Correctional Facility (Sault Ste. Marie, MI) | 16 |
| Otay Mesa Detention Center (San Diego, CA) | 8 |
| Irwin County Detention Center (Ocilla, GA) | 7 |
| Pine Prairie Correctional Center (Pine Prairie, LA) | 7 |
| St. Clair County Jail (Port Huron, MI) | 7 |
| York County Jail (York, PA) | 7 |
| Buffalo Federal Detention Facility (Batavia, NY) | 6 |
| Lasalle Detention Facility (Jena, LA) | 6 |
| Florence Correctional Center (Florence, AZ) | 5 |
| El Paso Service Processing Center (El Paso, TX) | 4 |
| Farmville Detention Center (Farmville, VA) | 4 |

An additional 32 facilities all over the country each house one to three class members. The 47 facilities are, altogether, in 26 states.

30. The Government's disclosures include 26 individuals who were previously detained but seem now to have been released. We have attempted to find out the reasons for release but have managed to obtain that information for only a few. Some were released for medical reasons; some made bond after winning their motions to reopen; others were released on winning their cases altogether. We have not confirmed any releases on the basis of the "Post-Order Custody Review" process described in 8 C.F.R. § 241.4.

31. Of the currently detained 279 class members, 220 still have final orders of removal (and are therefore members of the proposed "Detained Final Order Subclass"). Fifty-nine (59) were granted reopening; while we do not have information on the basis for their continued detention, it appears that the vast majority are being detained without bond under 8 U.S.C. § 1226(c) (and are therefore members of the Mandatory Detention Subclass).

32. Of those currently detained, 65 or 20% have been detained for 5 months or more; 227 or 80% have been detained for four months or more, and 253 or over 90% have been detained for three months or more. (We do not have data on 4 individuals' detention start dates, and for 20 individuals, our data is an estimate based on the date of the Respondent's disclosure.)

33. We have precise information for the beginning detention date for each of the detained named Petitioners in this case:

| Name | Date |
|---|---|
| Qassim Al-Saedy | 6/6/2017 |
| Ali Al-Dilaimi | 6/11/2017 |
| Usama Hamama | 6/12/2017 |
| Adel Shaba | 6/12/2017 |
| Moayad Barash | 6/12/2017 |
| Atheer Ali | 6/12/2017 |
| Kamiran Taymour | 6/12/2017 |
| Habil Nissan | 6/12/2017 |
| Anwar Hamad | 6/12/2017 |
| Abbas Al-Sokaini | 6/20/2017 |
| Jony Jarjiss | 7/13/2017 |
| Jami Derywosh | 7/20/2017 |
| Mukhlis Murad | 7/27/2017 |

8

34. Detainees are currently housed in facilities in 26 different states. Individuals with final orders of removal are detained in each of those different states; individuals whose MTRs have been granted are currently detained in 8 different states.

Pursuant to 28 U.S.C. § 1746, I state under penalty of perjury under the laws of the United States that the above statements are true and correct to the best of my knowledge, information, and belief.

Date: <u>November 6, 2017</u>　　　　　　　　*Margo Schlanger*
　　　　　　　　　　　　　　　　　　　Margo Schlanger