### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **USAMA JAMIL HAMAMA,** et al., | Case No. 2:17-cv-11910 |
| Petitioners and Plaintiffs, | Hon. Mark A. Goldsmith |
| v. | Mag. David R. Grand |
| **REBECCA ADDUCCI**, et al., | Class Action |
| Respondents and Defendants. | |

### PETITIONERS/PLAINTIFFS' AMENDED MOTION
### FOR CLASS CERTIFICATION

### ORAL ARGUMENT REQUESTED

Local Rule 7.1(a)(1) requires Petitioners/Plaintiffs (hereinafter Petitioners) to ascertain whether this motion is opposed. Petitioners' counsel Margo Schlanger communicated personally on November 6, 2017, via email, with William Silvis, counsel for Respondents/Defendants (hereinafter Respondents), explaining the nature of the relief sought and seeking concurrence. Mr. Silvis declined concurrence by email that same day.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.      Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) Petitioners seek to certify a class and subclasses defined as follows:

    A. All Iraqi nationals in the United States who had final orders of removal on March 1, 2017, and who have been, or will be,

detained for removal by U.S. Immigration and Customs Enforcement (ICE), hereafter "Class Members." This shall be called the "Primary Class." [1]

B. All Class Members with final orders of removal, who are currently or will be detained in ICE custody. This shall be called the "Detained Final Order Subclass."

C. All Class Members whose motions to reopen have been or will be granted, and who are currently or will be detained in ICE custody under the purported authority of the mandatory detention statute, 8 U.S.C. § 1226(c). This shall be the "Mandatory Detention Subclass."

2. The Primary Class and two Subclasses seek habeas, declaratory, injunctive, and mandamus relief as set out in the Second Am. Habeas Corpus Class Action and Compl. for Declaratory, Injunctive and Mandamus Relief ("Petition"), ECF 118, Pg.ID# 2956 *et seq*.

3. The definition of the Primary Class is slightly amended from the definition previously adopted by this Court in its Opinion and Order granting Petitioners' earlier Motion for Preliminary Injunction. *See* Op. & Order Granting Petrs' Mot. for Prelim. Inj. ("Injunction Order"), ECF 87, Pg.ID# 2335. It now covers persons with final orders on March 1, 2017, rather than June 24, 2017. It thus includes persons who had motions to reopen granted after March 1, 2017, but who were nevertheless recently detained in advance of removal to Iraq.

---

[1] In the event this Court or the Court of Appeals deems it necessary for jurisdiction, the petitioners propose in the alternative more limited class and subclasses of Detroit Area of Responsibility detainees.

4.     The Primary Class seeks relief on Count One, Two, Three, Four, and Seven of the Petition. *See* Petition ¶¶ 115–132, 144–47, ECF 118, Pg.ID# 3020–27. This Court has already granted preliminary class-wide relief with respect to Counts One and Two, staying removal until Class Members have a meaningful opportunity for the immigration courts to hear their claims that removing them to Iraq is unlawful given current country conditions there. *See* Injunction Order, ECF 87, Pg.ID# 2355–56. The Primary Class seeks to make that preliminary injunction permanent, as well as to clarify the existing injunction to ensure that the relief ordered by the Court reaches those who have been deprived of timely access to the files needed to file their Motions to Reopen. Petition ¶¶ 144–47, ECF 118, Pg.ID# 3026–27.

5.     As set forth in the simultaneously filed Pet'rs/Pls.' Mot. for Prelim. Inj. on Detention Issues ("Motion on Detention"), ECF 138, Pg.ID# 3338 *et seq.*, the Primary Class is now seeking preliminary class-wide relief on Count Four of the Petition, which asserts that immigration detention is unlawful where removal is not significantly likely in the reasonably foreseeable future (*Zavydas* Claim). Specifically, Petitioners seek habeas, declaratory, injunctive, and mandamus relief leading to the release of detained Class Members to the community under orders of supervision unless the government can provide individualized evidence that they can be repatriated to Iraq *and* that it is significantly likely that their immigration

proceedings will conclude within nine months of the date when they were first taken into ICE custody. See Motion on Detention ¶ 13, ECF 138, Pg.ID# 3342; *see also* Petition ¶¶ 127–132, ECF 118, Pg.ID# 3022–24.

6.     The two subclasses, the Detained Final Order Subclass and the Mandatory Detention Subclass, bring additional claims against continued detention, as set out in Counts Five and Six. *See* Petition ¶¶ 133–143, ECF 118, Pg.ID# 3024–26. The subclasses correspond to the statutory provisions under which the Respondents purport to justify the continuing incarceration of these class members. The Detained Final Order Subclass consists of class members who are detained under the post-final-order statute, 8 U.S.C. § 1231. The Mandatory Detention Subclass consists of class members whose motions to reopen have been granted, but who nevertheless remain incarcerated under the purported authority of the "mandatory detention" statute, 8 U.S.C. §1226(c).

7.     Both subclasses assert that they cannot be subjected to prolonged detention without an individualized hearing on danger or flight risk before an independent adjudicator ("Prolonged Detention Claim"). *See* Motion on Detention ¶¶ 16–23, ECF 138, Pg.ID# 3343–46. Specifically, the Detained Final Order Subclass asserts that the post-order custody reviews that supposedly support the continuing detention of members of this subclass are shams and certainly insufficient to render their prolonged detention reasonable and therefore lawful.

4

*See* Motion on Detention ¶¶ 18–20, ECF 138, Pg.ID# 3344–45; Petition ¶¶ 51–57, 90–91, ECF 118, Pg.ID# 2933–97, 3010–11. The Mandatory Detention Subclass, whose members are being held without the opportunity for a bond hearing, likewise asserts that its members cannot be subject to prolonged detention without an individualized determination of flight or dangerousness. *See* Motion on Detention ¶¶ 21–23, ECF 138, Pg.ID# 3345–46; Petition ¶¶ 58–62, 102–04, ECF 118, Pg.ID# 3010–11, 3013–14.

8.    The Mandatory Detention Subclass additionally challenges Respondents' right to hold subclass members under 8 U.S.C. § 1226(c) because that statute (1) does not cover removal proceedings where subclass members have brought successful motions to reopen and (2) only governs immigration confinement of individuals "when . . . released" from criminal incarceration, an event that for Mandatory Detention Subclass members happened in the distant past. ("The Section 1226 Claim"). *See* Motion on Detention ¶¶ 24–25, ECF 138, Pg.ID# 3346–47; Petition ¶¶ 139–143, ECF 118, Pg.ID# 3025–26.

9.    Because both subclasses are unlawfully being subjected to prolonged detention without an individualized determination of danger or flight risk, they seek to be released to the community under orders of supervision, unless Respondents (a) conduct individualized bond determinations in the administrative immigration court system, or (b) provide evidence to the Court that subclass

members pose a danger or flight risk that cannot be mitigated by alternative conditions of release and/or supervision, whereupon the Court shall set forth a process for individualized hearings for persons for whom such evidence is produced.

10.     The putative class and subclasses satisfy Rule 23(a) because each is so numerous that joinder is impracticable, the class and subclass members share common questions of law and fact, the named representatives' claims are typical of the class and subclasses, and the class and subclasses' representatives and counsel will fairly and adequately represent the interests of the class and subclasses.

11.     The putative class and subclasses satisfy Rule 23(b)(2) because the Respondents have acted on grounds applicable generally to the class and subclasses and because the relief Petitioners seek can be accomplished through orders benefiting the class and subclasses as a whole.

12.     The named Petitioners, Usama Jamil Hamama, Ali Al-Dilaimi, Sami Ismael Al-Issawi, Qassim Hashem Al-Saedy, Abbas Oda Manshad Al-Sokaini, Atheer Fawozi Ali, Jihan Asker, Moayad Jalal Barash, Jami Derywosh, Anwar Hamad, Jony Jarjiss, Mukhlis Murad, Habil Nissan, Adel Shaba, and Kamiran Taymour request that this Court name them as class representatives of the Primary Class. The named Petitioners Hamama, Al-Dilaimi, Al-Saedy, Al-Sokaini, Barash, Derywosh, Jarjiss, Murad, and Shaba request that this Court name them as class

6

representatives of the Detained Final Order Subclass. The named Petitioners Ali, Hamad and Taymour request that this Court name them as class representatives of the Mandatory Detention Subclass.

13.   Petitioners further request that the Court appoint Petitioners' counsel as class counsel for the Primary Class and the subclasses pursuant to Rule 23(g).[2]

14.   Upon a grant of relief on Petitioners' contemporaneously filed Motion on Detention, ECF 138, Pg.ID# 3338 *et seq.*, Petitioners request that the Court also order appropriate class notice under Rule 23(d)(1)(B).

15.   Petitioners believe the existing record clearly demonstrates that the requirements of Rule 23 are met, and the Court can proceed to certify the class. However, should the Court prefer to decide this motion on a fuller record, the Court can—as it has already—enter preliminary class-wide relief and hold this motion in abeyance until the parties have completed additional discovery relevant to class certification. *See* William B. Rubenstein, *Newberg on Class Actions* § 4:30 & fn. 8.50 (5th ed.); *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994); *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 433 (6th Cir. 2012). Such a course might be appropriate if, for example, Respondents raise factual issues regarding the nature or composition of the class or subclasses to which Petitioners cannot respond absent discovery. Petitioners may also seek leave to

---

[2]   Attorneys William Swor and María Martínez Sánchez are not seeking appointment as class counsel.

supplement this filing if Respondents' production of information responsive to Petitioners' discovery requests contains further information relevant to class certification. See, e.g. Joint Status Report, ECF 111, Pg.ID# 2821–52.

WHEREFORE, for the reasons set forth in the accompanying brief, Petitioners respectfully request this Court to certify the Primary Class and subclasses identified above pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), name the specified Petitioners as representatives of the Primary Class and subclasses, appoint Petitioners' counsel as counsel for all certified classes, and order appropriate class notice.

Date: November 7, 2017

Respectfully submitted,

Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
Bonsitu A. Kitaba (P78822)
Miriam J. Aukerman (P63165)
AMERICAN CIVIL LIBERTIES
 UNION FUND OF MICHIGAN
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6814
msteinberg@aclumich.org
Kimberly L. Scott (P69706)
Wendolyn Wrosch Richards (P67776)
Cooperating Attorneys, ACLU Fund
 of Michigan
MILLER, CANFIELD, PADDOCK
 & STONE, PLC
101 N. Main St., 7th Floor
Ann Arbor, MI 48104
(734) 668-7696
scott@millercanfield.com
Nora Youkhana (P80067)
Nadine Yousif (P80421)
Cooperating Attorneys, ACLU Fund
 of Michigan
CODE LEGAL AID INC.
 27321 Hampden St.
Madison Heights, MI 48071
(248) 894-6197
norayoukhana@gmail.com

María Martínez Sánchez (NM Bar
126375)
AMERICAN CIVIL LIBERTIES
 UNION OF NEW MEXICO
1410 Coal Ave. SW
Albuquerque, NM 87102
msanchez@aclu-nm.org

Judy Rabinovitz (NY Bar JR-1214)
Lee Gelernt (NY Bar NY-8511)
ACLU FOUNDATION
 IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2618
jrabinovitz@aclu.org
Margo Schlanger (N.Y. Bar #2704443)
Samuel R. Bagenstos (P73971)
Cooperating Attorneys, ACLU Fund
 of Michigan
625 South State Street
Ann Arbor, Michigan 48109
734-615-2618
margo.schlanger@gmail.com
Susan E. Reed (P66950)
MICHIGAN IMMIGRANT RIGHTS
 CENTER
3030 S. 9th St. Suite 1B
Kalamazoo, MI 49009
 (269) 492-7196, ext. 535
susanree@michiganimmigrant.org
Lara Finkbeiner (NY Bar 5197165)
Mark Doss (NY Bar 5277462)
Mark Wasef (NY Bar 4813887)
INTERNATIONAL REFUGEE
 ASSISTANCE PROJECT
Urban Justice Center
40 Rector St., 9th Floor
New York, NY 10006
(646) 602-5600
lfinkbeiner@refugeerights.org

*Attorneys for All Petitioners and Plaintiffs*

William W. Swor (P21215)
WILLIAM W. SWOR
 & ASSOCIATES
1120 Ford Building
615 Griswold Street
Detroit, MI 48226
wwswor@sworlaw.com

*Attorney for Petitioner/Plaintiff*
*Usama Hamama*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**USAMA JAMIL HAMAMA,** et al.,

      Petitioners and Plaintiffs,

v.

**REBECCA ADDUCCI**, et al.,

      Respondents and Defendants.

Case No. 2:17-cv-11910

Hon. Mark A. Goldsmith
Mag. David R. Grand

Class Action

## PETITIONERS/PLAINTIFFS' MEMORANDUM OF BRIEF
## IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF ISSUES PRESENTED ............................................. vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ........................... viii

INTRODUCTION ............................................................................1

THE PROPOSED CLASS DEFINITIONS ............................................5

    A. The Primary Class................................................................5

    B. The Detention Subclasses ...................................................6

    C. The Class and Sub-Class Definitions Anticipate the Inclusion of
       Future Class Members..........................................................7

FACTS AND BACKGROUND .............................................................9

    A. Detention Claim of the Primary Class...................................11

    B. Claims of the Detained Final Order Subclass.........................12

    C. Claims of the Mandatory Detention Subclass ........................13

ARGUMENT ................................................................................15

    A. Standard for Class Certification ...........................................15

    B. The Proposed Class and Subclasses Meet the Rule 23(A)
       Requirements.......................................................................17

       1. The Class and Subclasses Are So Numerous that Joinder is
          Impracticable..................................................................17

       2. Class and Subclass Member Share Common Questions of
          Law and Fact..................................................................19

          a. The Primary Class ...................................................23

          b. The Detention Subclasses ........................................25

       3. The Named Representatives' Claims Are Typical of the
          Class and Subclasses......................................................26

i

**TABLE OF CONTENTS**
(continued)

**Page**

4. The Class Representatives Will Fairly and Adequately
Represent The Interests of the Class and Subclass. .................28

C. Respondents' Uniform Conduct Justifies Class-Wide Relief.................31

D. The Court Should Appoint Class Counsel Pursuant to Rule 23(G). .......34

E. The Court Should Direct That Appropriate Notice Be Provided............34

CONCLUSION .......................................................................................35

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Ali v. Ashcroft*,
　346 F.3d 873 (9th Cir. 2003) ..................................................................15

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds,*
　568 U.S. 4556 (2013).............................................................................16

*Augustin v. City of Philadelphia*,
　318 F.R.D. 292 (E.D. Pa. 2016).............................................................22

*Barry v. Lyon*,
　834 F.3d 706 (6th Cir. 2016) ...........................................................8, 21

*Beattie v. CenturyTel Inc.,*
　511 F.3d 5549 (6th Cir.2007) ...............................................................17

*Bijeol v. Benson*,
　513 F.2d 965 (7th Cir. 1975) ................................................................16

*Comcast Corp. v. Behrend*,
　133 S. Ct. 1426 (2013)...........................................................................16

*Davidson v. Henkel Corp.*,
　302 F.R.D. 427 (E.D. Mich. 2014) ................................................. 17, 18

*Dozier v. Haveman*,
　No. 2:14-cv-12455, 2014 WL 5483008 (E.D. Mich. Oct. 29, 2014) .......... 22, 33

*Gen. Tel. Co. of Sw. v. Falcon*,
　457 U.S. 147 (1982)...............................................................................16

*Gilkey v. Cent. Clearing Co.,*
　202 F.R.D. 5151 (E.D. Mich. 2001................................................20

*Gooch v. Life Investors Ins. Co. of America*,
　672 F.3d 402 (6th Cir. 2012) ................................................................33

iii

*Harris v. Nelson,*
  394 U.S. 286 (1969)..........................................................................................15

*In re Am. Med. Sys.,*
  75 F.3d 1069 (6th Cir. 1996) ................................................................ 17, 18

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
  722 F.3d 838 (6th Cir. 2013) ..................................................... 16, 19, 26

*Lauber v. Belford High Sch.,*
  No. 09-cv-14345, 2012 WL 5822243 (E.D. Mich. Jan. 23, 2012).....................20

*Napier v. Gertrude,*
  542 F.2d 825 (10th Cir. 1976) ...........................................................................16

*Nguyen Da Yen v. Kissinger,*
  528 F.2d 1194 (9th Cir. 1975) ...........................................................................16

*NILI 2011, LLC v. City of Warren,*
  No. 15-cv-13392, 2017 WL 2242360 (E.D. Mich. May 23, 2017).............. 22, 33

*Rodriguez v. Hayes,*
  591 F.3d 1105 (9th Cir. 2010) .................................................................. 16, 26

*Sprague v. Gen. Motors Corp.,*
  133 F.3d 388 (6th Cir. 1998) ...........................................................................26

*Stewart v. Abraham,*
  275 F.3d 220 (3d Cir. 2001)................................................................................8

*Turnage v. Norfolk S. Corp.,*
  307 F. App'x 918 (6th Cir. 2009) ....................................................................17

*United States ex rel. Morgan v. Sielaff,*
  546 F.2d 218 (7th Cir. 1976) ...........................................................................16

*United States ex rel. Sero v. Preiser,*
  506 F.2d 1115 (2nd Cir. 1974) ........................................................................16

iv

*Vassalle v. Midland Funding LLC*,
   708 F.3d 747 (6th Cir. 2013) ................................................................29

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................ 19, 27, 32

*Wilson v. Gordon*,
   822 F.3d 934 (6th Cir. 2016) ...............................................................8

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) .............................................................22

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) ..........................................................................11

**Statutes**

8 U.S.C. § 1226(a) ...............................................................................10

8 U.S.C. § 1226(c) .................................................................. 10, 14, 19

8 U.S.C. § 1231(a) ...............................................................................10

8 U.S.C. § 1231(c) ...............................................................................12

**Rules**

Fed. R. Civ. P. 23 ........................................................................ passim

Fed. R. Civ. P. 23(a)......................................................... 16, 17, 19, 16, 27

Fed. R. Civ. P. 23(b) ........................................................ 16, 26, 31, 32, 33

Fed. R. Civ. P. 23(d) .................................................................... 34, 35

Fed. R. Civ. P. 23(g) ..........................................................................34

**Other Authorities**

Wright, Miller & Kane, *Federal Prac. and Proc.* §§ 1764, 1775, 1776 .... 27, 31, 32

*Class Certification in the Age of Aggregate Proof*,
    84 N.Y.U. L. Rev. 97 (2009) ..............................................................................19

*Newberg on Class Actions* §§ 3:12, 4:30, 4:40, 25:28................................. 8, 15, 17

vi

## STATEMENT OF ISSUES PRESENTED

1.      Do Petitioners satisfy the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) supporting certification of the proposed class and subclasses?

**Petitioners' Answer: Yes.**


2.      Should the Court appoint Petitioners' counsel as counsel for the class and subclasses under Federal Rule of Civil Procedure 23(g)?

**Petitioners' Answer: Yes.**

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Federal Rule Civil Procedure 23

William B. Rubenstein, *Newberg on Class Actions* §§ 3:12, 4:30, 4:40, 25:28

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)

*Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016)

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)

## INTRODUCTION

About 1,400 Iraqi nationals with final orders of removal have been living for years and sometimes decades in communities throughout this country, unable to be repatriated to Iraq. In mid-June, however, U.S. Immigration and Customs Enforcement (ICE) suddenly rounded up scores of Iraqi nationals who had been released years earlier on orders of supervision, threatening immediate removal of each arrestee. This Court understood that not only the named Petitioners but also the class members they seek to represent faced the very real probability of persecution, torture, or death if deported to Iraq. Accordingly the Court granted two class-wide temporary restraining orders, and then entered class-wide preliminary relief staying the Petitioners' and putative class members' removal until they have a meaningful opportunity for the immigration courts to hear their claims that removing them to Iraq is unlawful given current country conditions there.

As the Court recognized in granting preliminary class-wide relief, the named Petitioners are similarly situated to other Iraqi nationals who have final orders of removal and who have been, or will be, detained for removal by ICE. All face deportation to Iraq—a place that is, today, a very different, and more dangerous, place when they were originally ordered removed. Therefore, both the named Petitioners and other Iraqi nationals with final orders are entitled to the opportunity

to make their case before the immigration courts that their removal is unlawful.

The progress of this litigation has validated this Court's decision to grant such class-wide relief. By answering the central common question in Petitioners' first preliminary injunction motion—whether Respondents can remove class members without providing them a reasonable opportunity and sufficient time to demonstrate their eligibility for relief from persecution or torture based on changed country conditions in Iraq—the Court is enabling hundreds of Iraqis with final removal orders to access the immigration courts. In the interim the Court has addressed countless common subsidiary questions, while allowing the administrative immigration system to determine each individual class member's entitlement to relief or protection from removal.

Simultaneously with this motion, Petitioners are filing a Motion for a Preliminary Injunction on Detention Issues, which asks the Court to rule on another set of core common questions. Petitioners are therefore amending their previously-filed Motion for Class Certification, ECF 83, Pg.ID # 2061, to add two sub-classes with specific detention-related claims. This Court has not yet had occasion to address the detention issues. In terms of the appropriateness of class certification, however, these claims present issues very similar to those already addressed by this Court in deciding the stay of removal claims. Specifically, Petitioners ask this Court to adjudicate certain threshold issues common to all class

and subclass members regarding the circumstances under which ICE can detain a person who is not imminently removable. As with the class-wide relief already granted, the new class-wide relief sought now is essentially procedural. And in order for the Court to determine if class and subclass members are entitled to the procedural protections they seek, the Court must decide common questions of law and fact.

Accordingly, Petitioners now request certification of a class and two subclasses. The main class or "Primary Class," which encompasses all members of both subclasses, is virtually identical to the class identified in this Court's preliminary injunction order. *See* Injunction Order, ECF 87, Pg.ID# 2335. Once certified this class seeks to make final the injunctive relief approved preliminarily, and thereby ensure that class members have a meaningful opportunity to assert that country conditions in Iraq have changed since entry of their final orders of removal and to establish that they now are entitled to protection from removal. The Primary Class also seeks relief from detention on the grounds that removal is not significantly likely in the reasonably foreseeable future; class members must therefore be released absent evidence that they can be repatriated to Iraq *and* that it is significantly likely that their immigration proceedings will conclude within nine months of the date when they were first taken into ICE custody. *See* Pet'rs/Pls' Motion for Prelim. Inj. on Detention Issues ("Motion on Detention") ¶ 13, ECF

3

138, Pg.ID# 3342.

The two subclasses Petitioners seek to certify each have specific detention-related claims corresponding to the statutory provisions under which the Respondents purport to justify their continued incarceration. The Detained Final Order Subclass consists of class members who are detained under the post-final-order statute, 8 U.S.C. § 1231. The Mandatory Detention Subclass consists of class members whose motions to reopen have been granted, but who nevertheless remain incarcerated under the purported authority of 8 U.S.C. §1226(c). Both detention subclasses assert that their prolonged detention violates their due process and statutory rights and seek immediate release unless Respondents have established before an impartial adjudicator that subclass members pose a danger to the community or flight risk sufficient to support their continued detention.

Because of the emergency nature of these proceedings, this Court has already wrestled with many of the issues raised by Petitioners' motion for class certification and granted preliminary relief to the overarching class—the "Primary Class"—that Petitioners now seek to certify. In doing so, this Court recognized both the commonality of the interests of the putative class members and the Court's ability to redress the members' claims in a single proceeding. *See* Injunction Order, ECF 87, Pg.ID# 2355–56.

The claims set out in the Second Amended Petition present a paradigm case

for application of Rule 23, as well as for a habeas class. Respondents have created the commonality of interests by treating the putative class members as part of an undifferentiated mass for whom no individual considerations matter. Certification will establish a single forum where vindication of the common statutory and due process rights of the putative class and subclasses can be addressed.

## THE PROPOSED CLASS DEFINITIONS

### A.  The Primary Class

The main class that Petitioners seek to certify is defined as:

**All Iraqi nationals in the United States who had final orders of removal on March 1, 2017, and who have been, or will be, detained for removal by U.S. Immigration and Customs Enforcement.**

This is referred to as the "Primary Class" and its members are the "Class Members." It encompasses all of the people covered by this Court's preliminary injunction, *see* Injunction Order, ECF 87, Pg.ID# 2355–56, plus a few more. The only change is to cover those individuals whose final orders predated June 24, 2017, but who managed to get those final orders revisited by having their motion to reopen granted between March 1 and June 24, 2017. Petitioners have identified only four such individuals; there may be others disclosed by Respondents on or before November 10. *See* Resp. to Pet'rs' Status Report, ECF 136, Pg.ID# 3321–22. The start date for this class definition is intended to encompass all individuals affected by ICE's changed approach to removal of Iraqi nationals with final orders

5

of removal, which Respondents have explained began prior to April 2017. *See* Schultz Decl., ECF 81-4, Pg.ID# 2007.

The Class Members seek to prosecute the claims regarding their rights to challenge removal to Iraq because of changed circumstances in that nation. In addition, they contest the continued detention of Class Members without a showing that removal is significantly likely in the reasonably foreseeable future.[1]

### B. The Detention Subclasses

Petitioners propose two subclasses to deal with additional issues relating to the continuing and unlawful incarceration of Class Members. The first is for Class Members who still have final orders of removal and are detained under 8 U.S.C. § 1231; either they have not yet filed motions to reopen in the appropriate fora (either Immigration Court or Board of Immigration Appeals), or their motions to reopen are pending or have been denied. This subclass is defined as:

---

[1] The relief requested by the Primary Class additionally seeks to protect persons who, in the chaotic aftermath to ICE's sudden and unanticipated enforcement actions, filed motions to reopen their immigration proceedings without the benefit of their immigration files. Respondents have been ordered by this Court to provide the records—a problem this Court flagged in earlier proceedings. *See* Injunction Order, ECF 87, Pg.ID# 2340. Petitioners seek relief permitting these individuals time to amend their motions to reopen or, if the original was denied, to file a renewed motion. *See* Petition ¶¶ 144–147 and Prayer for Relief ¶ J, ECF 118, Pg.ID# 3026–27, 3029–30. The Petition also seeks relief from repeated transfers among detention facilities, although Petitioners have not sought preliminary injunctive relief on that claim. *Id*. ¶¶ 124–126 and Prayer for Relief ¶ H, Pg.ID# 3022, 3029.

6

**All Class Members with final orders of removal, who are currently or will be detained in ICE custody**.

This is the "Detained Final Order Subclass."

The second subclass consists of Class Members whose motions to reopen have been granted, but who remain in custody. It is defined as:

**All Class Members whose motions to reopen have been or will be granted, and who are currently or will be detained in ICE custody under the purported authority of the mandatory detention statute, 8 U.S.C. § 1226(c).**

This is the "Mandatory Detention Subclass."

### C. The Class and Sub-Class Definitions Anticipate the Inclusion of Future Class Members.

The Primary Class includes Iraqi nationals who had final orders of removal on March 1, 2017 "who have been, or will be, detained for removal by ICE," and the subclasses include those who "will be detained." The "will be detained" language reflects that additional individuals may become members of the class. ICE has continued to arrest and detain Iraqi nationals with final orders of removal after the initial wave of arrests. *See* Derywosh Decl. ¶ 9, ECF 138-12, Pg.ID# 3487; Jarjiss Decl. ¶¶ 12–13, ECF 138-14, Pg.ID# 3501; Murad Decl. ¶ 12, ECF 138-15, Pg.ID# 3508; Hanna Decl. ¶ 7, ECF 84-4, Pg.ID# 2236; Schlanger Decl. ¶ 14, ECF 138-2, Pg.ID# 3405. When ICE detains such Iraqis for the purpose of removal, they will become Class Members.

Similarly, the Mandatory Detention subclass includes those whose motions

7

to reopen "will be granted." While all Primary Class Members, by definition, initially had final orders of removal, Class Members are having success getting motions to reopen granted, and yet remain detained under the purported authority of the mandatory detention statute, 8 U.S.C. § 1226(c). As Class Members succeed on their motions to reopen, if Respondents deem them covered by § 1226(c), they will move from the Detained Final Order subclass to the Mandatory Detention subclass.

Class definitions that anticipate inclusion of additional class members are common in civil rights litigation.[2] For example, in jail-condition or school-reform litigation, class members will be added as individuals are incarcerated in the jail or matriculate in the school. *See*, *e.g.*, *Barry v. Lyon*, 834 F.3d 706, 721 n.7 (6th Cir. 2016) (approving definition of class as "all past, present, and future applicants for, or recipients of, benefits . . . who have suffered or will suffer" denial of public assistance based on challenged policies); *Wilson v. Gordon*, 822 F.3d 934, 941 (6th Cir. 2016) (defining as a class those individuals who applied for Medicaid "on or after October 1, 2013" who had not received certain procedural protections); *Stewart v. Abraham*, 275 F.3d 220, 224 (3d Cir. 2001) (defining as a class "[a]ll persons who have been or will in the future be subjected to the [challenged]

---

[2] Petitioners crafted the proposed preliminary relief to be workable as new class members are added. Class Members are given three months to file their motions to reopen, triggered by when the government provides them with their A-File and Record of Proceedings. For Class Members that are added, the trigger date for their stay from removal period begins after they have both received those files and been notified that ICE intends to deport them.

practice and policy"). A class definition that encompasses the addition of new class members is appropriate here.

The "have been [] detained" language in the Primary Class definition means that an individual who was detained, but is then released from detention, remains a Primary Class member. Some detained individuals have been released due, for example, to medical problems or because they have won their motions to reopen and gotten bond. They are still included in Petition Counts One and Two; they still need the protection of this Court's Stay of Removal; and they could be redetained.

## FACTS AND BACKGROUND

This Court is familiar with the facts relevant to certification of the Primary Class relating to the need for time to adjudicate changed country conditions, having exhaustively addressed the filings connected to the motions for temporary restraining order and preliminary injunction. Petitioners will not repeat those facts, which are fully set out in prior briefing. *See* ECF 11, 14, 30, 36, 77, 84. This Court has yet to tackle the detention claims. The relevant facts and law necessary for analysis of the habeas and Rule 23 class issues regarding those claims are more fully addressed in Pet'rs' Mem. of Law in Supp. of Mot. for Class Cert., ECF 83, Pg.ID# 2067 *et seq.* and Pet'rs' Brief in Supp. of Mot. for Prelim. Inj. on Detention Issues, ECF 138, Pg. ID# 3352 *et seq.*, and will only be summarized briefly here.

The Class Members are detained.[3] They have a claim for release (the *Zadvydas* Claim) because their removal is not significantly likely in the reasonably foreseeable future. In addition, all Class Members are protected by the Constitution and the Immigration and Nationality Act (INA) against prolonged detention without an individualized determination by an impartial decisionmaker that they pose a flight risk or danger (the Prolonged Detention Claim). Some of the applicable statutory analysis, however, depends upon which of two statutes—8 U.S.C. § 1231(a) or 8 U.S.C. § 1226(c)—they fall under, requiring the creation of subclasses. (All subclass members are part of the Primary Class but a few Primary Class Members are not in either subclass because they are detained under a third statutory provision, 8 U.S.C. § 1226(a), and have been afforded an opportunity for the appropriate individualized determination already; they are, however, covered by the Primary Class's *Zadvydas* claim.)

Detention before a final order of removal is governed by 8 U.S.C. § 1226, while detention after a final order issues is controlled by 8 U.S.C. § 1231(a). Originally, all or virtually all Class Members were detained under Section 1231(a), but some have since migrated to the other statutory regime by virtue of the success

---

[3] A small number—under 30—have been released because, for example, they won their motions to reopen and were granted bond. Schlanger Decl. ¶ 30, ECF 138-2, Pg.ID# 3409. For them, the already-granted stay of removal applies, but no additional relief is currently needed on the detention claims. If they are redetained—for example if the orders of supervision they were given at a bond hearing are again revoked—they would need the relief requested here.

10

of their motions to reopen. Continued detention of Class Members under either statutory provision is wrongful, for different but related reasons.

At bottom, all the claims against detention rest on basic due process concerns. Stated simply, civil detention to effectuate removal is appropriate only where removal is imminent and only where such detention is necessary to assure a person's appearance at the time of removal or to protect the community from a dangerous individual. Respondents' wholesale and indefinite warehousing of the Class Members is unconstitutional, as well as unlawful under statutes that must be read in light of due process concerns to authorize only reasonable detention.

### A. Detention Claim of the Primary Class

The purpose of detention is to effect removal. As such, detention is permissible only for "a period reasonably necessary to secure removal" and insofar as removal is "reasonably foreseeable." *Zadvydas v. Davis,* 533 U.S. 678, 699 (2001). "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized." *Id*.[4]

All detained Class Members assert that their detention violates both their rights under the Due Process Clause and the relevant statutes read in light of due

---

[4] The *Zadvydas* Court addressed the statutory regime governing persons with final orders of removal. *See* 533 U.S. at 688. The same due process concerns apply to Class Members who do not have final orders of removal because their motions to reopen have been granted. Indeed, it would be a bizarre result if persons subject to final orders of removal had greater due process rights than persons not subject to finality.

11

process concerns. (*Zadvydas* Claim.) This is so because 1) the government has made no showing that Iraq is prepared to issue Class Members travel documents or otherwise accept them for repatriation, and 2) even if Iraq would accept them back, the time it will take to process their individual claims through the Immigration Courts, Board of Immigration Appeals, and Courts of Appeals—which has been lengthened by the government's conduct—means that by the time they can be removed, they will have been subject to detention far exceeding the presumptively reasonable time for effecting removal. *See* Petition ¶¶ 128–132, ECF 118, Pg.ID# 3023–24; Motion on Detention, ECF 138, Pg.ID# 3372–75, 3379–84.

## B. Claims of the Detained Final Order Subclass

Upon issuance of a final order of removal, ICE is empowered to detain an alien for 90 days to effectuate that order. 8 U.S.C. § 1231(a)(2). If removal cannot be effected within 90 days, supervised release is the norm. *Id.* § 1231(a)(3); Petition ¶ 52, ECF 118, Pg.ID# 2994–95. However, individuals ordered removed on criminal grounds, as well as individuals determined to pose a danger or flight risk, may be further detained. *See id.*; 8 U.S.C. § 1231(a)(6).

The post-final-order statute, Section 1231, was intended to effectuate the prompt removal of individuals ordered removed. Nothing in its text or legislative history indicates that Congress intended to authorize the prolonged detention—for months, even years—of individuals who were ordered removed years or decades

12

ago, who pose no danger or flight risk, and whose removal orders are stayed while they pursue bona fide motions to reopen. Thus, both the Due Process Clause and the immigration statute construed in light of due process concerns require that Petitioners be afforded individualized determinations by an impartial adjudicator that their continued detention is justified based on danger or flight risk.

Petitioners allege that the prolonged detention of the Detained Final Order Subclass is unlawful. Petition ¶¶ 133–138, ECF 118, Pg.ID# 3024–25. The post-order custody review process mandated by the relevant regulations is entirely inadequate to render prolonged detention reasonable and therefore lawful. Petition, ¶¶ 133–138, ECF 118, Pg.ID# 3024–25; Motion on Detention, ECF 138, Pg.ID# 3384–88. Moreover that process has been a sham as to even those Class Members for whom a review has been performed. *See* Petition ¶ 91, Pg.ID# 3010–11. The sole output from the process has almost always been a form letter that does not even mention danger or flight risk, saying only "You have a final order of removal from the United States and ICE is actively pursuing your removal." *See id.* at ¶¶ 22, 23, 25, 27, 29, 32, 35, Pg.ID# 2964–75, 2978–80, 2982–84; Andrade Decl. ¶¶ 6–7, ECF 138-22, Pg.ID# 3563. The Detained Final Order subclass seeks immediate release or, alternatively, adjudication before an impartial adjudicator on the issue of each detained individuals' flight risk or danger to the community.

**C.    Claims of the Mandatory Detention Subclass**

13

Class members whose motions to reopen have been granted are detained under the pre-final-order detention statue, 8 U.S.C. § 1226. Most of these Class Members are in the Mandatory Detention Subclass because they are being improperly subjected to mandatory detention under the purported authority of 8 U.S.C. § 1226(c). While individuals in pre-final-order detention are generally entitled to release, either on bond or conditional parole, Section 1226(c) mandates the detention of individuals who are "deportable" or "inadmissible" based on designated criminal or national security grounds. Such individuals are to be taken into custody for immigration detention "when the alien is released" from criminal custody, and thereafter shall not be released except in very limited circumstances. *See* 8 U.S.C. § 1226(c).

The Mandatory Detention subclass asserts the same due-process-based challenge to prolonged detention that the Detained Final Order Subclass advances. The purpose of Section 1226(c) was to prevent release after criminal incarceration of potentially deportable non-citizens who might flee or harm the public if released. Again, nothing in the statute or its legislative history indicates that Congress intended to authorize prolonged detention.

Moreover, guided by these constitutional concerns, the statute is best read not to apply, in general or at least in the circumstances presented here, to removal proceedings where the alien has successfully presented a motion to reopen. Finally,

14

the statute's plain language refers to detention "when [an individual is] released" from criminal custody. This cannot support imposition of mandatory detention long after a non-citizen's release from criminal custody, once the immigrant has reestablished him/herself in the community. *See* Petition ¶¶ 139–143, ECF 118, Pg.ID# 3025–26. The Mandatory Detention subclass seeks immediate release or, alternatively, adjudication before an impartial adjudicator on the issue of individuals' flight risk or danger to the community.

## ARGUMENT

### A.   STANDARD FOR CLASS CERTIFICATION

This case presents both a petition for writ of habeas corpus and civil claims for declaratory, injunctive, and mandamus relief. Rule 23 of the Federal Rules of Civil Procedure governs class actions for the civil claims, and is relied upon by analogy for the habeas claims. As the Supreme Court explained in *Harris v. Nelson*, 394 U.S. 286, 299 (1969), "appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage," apply in the habeas context. Thus courts have allowed habeas class actions when the requirements of Rule 23 are satisfied. *See Ali v. Ashcroft*, 346 F.3d 873, 890 (9th Cir. 2003), *vacated on other grounds by Ali v. Gonzalez*, 421 F.3d 758 (9th Cir. 2003) (courts look to the requirements of Rule 23 when considering class certification of habeas actions); William B. Rubenstein, *Newberg on Class Actions* § 25:28 (4th ed.

15

{YEAR?}) ("Rule 23 prerequisites have been found to be instructive [in habeas class actions], and reasons cited for fashioning habeas corpus remedies have included judicial economy and fundamental fairness.").[5]

Under Rule 23(a), parties seeking class action status must show that (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)–(4); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Once those elements are established, Petitioners must also show that the proposed class falls within one of the class types identified in Rule 23(b). Fed. R. Civ. P. 23(b); *Comcast*, 569 U.S. at 33.

A district court should conduct a rigorous analysis of the evidence showing that a class action is maintainable to satisfy itself that the Rule 23 requirements are met. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013). Although the court may need "to probe behind the pleadings," *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982), it has "no li-

---

[5] For examples, *see Rodriguez v. Hayes*, 591 F.3d 1105, 1121–26 (9th Cir. 2010); *Napier v. Gertrude*, 542 F.2d 825, 827 n.2 (10th Cir. 1976); *United States ex rel. Morgan v. Sielaff*, 546 F.2d 218, 221 (7th Cir. 1976); *Nguyen Da Yen v. Kissinger*, 528 F.2d 1194, 1202–04 (9th Cir. 1975); *Bijeol v. Benson*, 513 F.2d 965, 968 (7th Cir. 1975); *United States ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125–26 (2nd Cir. 1974).

cense to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013). The ultimate decision to certify is committed to the court's "substantial discretion." *Beattie v. CenturyTel Inc.*, 511 F.3d 554, 559 (6th Cir. 2007).

## B.   THE PROPOSED CLASS AND SUBCLASSES MEET THE RULE 23(A) REQUIREMENTS.

### 1.   The Class and Subclasses Are So Numerous that Joinder is Impracticable

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." The rule does not impose a "strict numerical test." *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Rather, impracticability of joinder turns on the circumstances of each case. *Id.* But "[w]hen class size reaches substantial proportions, . . . the impracticability requirement is usually satisfied by numbers alone." *Id.*; *see also* William B. Rubenstein, *Newberg on Class Actions* § 3:12 (5th ed.) (observing that numerosity is "easily met" in classes numbering in the hundreds or thousands). Courts in this district have found that "it generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement." *See*, *e.g.*, *Davidson v. Henkel Corp.*, 302 F.R.D. 427, 436 (E.D. Mich. 2014). In evaluating impracticability of joinder, the court may consider the geographical distribution of the class members. *See Turnage v. Norfolk S. Corp.*, 307 F. App'x 918, 921 (6th Cir. 2009) (Ex. 1).

17

Joinder is surely impracticable here for the Primary Class or either of the subclasses. As of November 2, 2017, ICE was detaining about 279 Iraqis. Schlanger Decl. ¶ 28, ECF 138-2, Pg.ID# 3408. Over 1,400 Iraqis had final orders of removal, *see* Petition ¶ 4, Pg.ID# 2958, and now, as a result of ICE's change in policy towards Iraqis, they could at any time be detained under threat of removal. *See* June 26, 2017 Hr'g Tr., ECF 44, Pg.ID# 693. On their own, these figures demonstrate impracticability of joinder of the Primary Class. *See Am. Med. Sys.*, 75 F.3d at 1079; *Davidson*, 302 F.R.D. at 436.

The geographic distribution—both that resulting from the varied states of residence of Primary Class members and from the frequent transfers of those members after being taken into custody—further establishes the impracticability of joinder. The Government has taken people already dispersed across the country and, once in custody, transferred many of them to distant states, often transferring the same detainee multiple times. *See*, *e.g.*, Free Decl. ¶ 8, ECF 77-15, Pg.ID# 1830–31; Sánchez Decl. ¶¶ 5–6, ECF 77-16, Pg.ID# 1839. As of October 28, 2017, the detainees were incarcerated in at least 47 different immigration detention facilities in 26 different states. *See* Schlanger Decl. ¶ 34 and Table 3, ECF 138-2, Pg.ID# 3408–10. The dispersion of class members across multiple detention facilities in multiple jurisdictions, as well as their repeated transfer from facility to facility and from jurisdiction to jurisdiction, renders individual joinder virtually

18

impossible. Given the class size and shifting geographic dispersion, Rule 23(a)(1) is satisfied for the Primary Class.

The subclasses, while by definition smaller than the Primary Class, likewise satisfy joinder, because of both sheer number and geographic dispersion. There are now about 220 members of the proposed Detained Final Order Subclass and 59 members of the Mandatory Detention Subclass. Schlanger Decl. ¶ 31, ECF 138-2, Pg.ID# 3409. The Mandatory Detention Subclass will likely grow over time as more Class Members win motions to reopen and become subject to ICE's interpretation of Section 1226(c). *See* Petition ¶ 112, ECF 118, Pg.ID# 3017. Individuals with final orders are currently detained in 26 different states, while individuals whose motions to reopen have been granted are detained in 8 different states.  Schlanger Decl. ¶ 31, ECF 138-2, Pg.ID# 3409. Joinder is impracticable for either subclass.

### 2. Class and Subclass Member Share Common Questions of Law and Fact.

Rule 23(a)(2) requires "questions of law or fact common to the class." The requirement is not onerous, as "there need only be one common question to certify a class." *Whirlpool*, 722 F.3d at 853. The common question must, however, have the capacity "to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84

19

N.Y.U. L. Rev. 97, 132 (2009)) (emphasis in original). "When the legality of the defendant's standardized conduct is at issue, the commonality factor is normally met." *Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515, 521 (E.D. Mich. 2001).

The classes here have been created by Respondents' uniform conduct. The due process and statutory violations are class-wide. Respondents have treated hundreds of individuals as fungible and indistinguishable removable Iraqis. Even if Class Members may differ from each other in their ultimate entitlement to relief in immigration proceedings, all are being removed in haste and (without this Court's stay) under procedures that impede their ability to present their claims in those proceedings.[6] In addition, ICE is detaining Class Members where their removal is not significantly likely in the reasonably foreseeable future. Similarly, members of both subclasses are being subjected to prolonged detention without meaningful individual determinations of a need for that detention. And members of the Mandatory Detention subclass are all being denied the opportunity for a bond hearing because of the government has unlawfully applied the mandatory detention statute to them. The government's conduct is thus "materially uniform among the purported victims." *Lauber v. Belford High Sch.*, No. 09-CV-14345, 2012 WL

---

[6] As the Court stated in its order granting a preliminary injunction, "this Court does not evaluate whether any class member will likely succeed on the substance of INA and CAT/FARRA arguments before the immigration courts and the courts of appeals. Rather, the Court's role now is to evaluate whether the sources of law put forward by Petitioners support their claim of a right to adjudication of their motions to reopen prior to removal." Injunction Order, ECF 87, Pg.ID# 2343–44.

5822243, at *2 (E.D. Mich. Jan. 23, 2012) (Ex. 3). It is this uniform conduct that generates the common questions of law and fact described below.

Respondents have, in prior pleadings and hearings, endeavored to derail this inquiry, ignoring the common due process claims driving this action and pointing to the individual issues that may arise once Class Members' claims are presented to the immigration courts.[7] But courts have specifically recognized that class members may differ in the ultimate strength of their underlying claims, so long as they share a common interest in ensuring that the government provides adequate process.

In *Barry*, for example, the Sixth Circuit upheld this Court's certification of a subclass consisting of all recipients of certain public assistance programs whom the state disqualified as "fleeing felons." *See* 834 F.3d. at 721–22, n.8. The plaintiffs argued that the state provided unlawfully insufficient notice, leading to systemic erroneous disqualification. *Id.* at 713. On appeal, the state argued that *some* of the individuals whom it disqualified were in fact fleeing felons, and that those individuals did not have sufficient commonality with individuals whom it

---

[7] For example, at the hearing on Petitioners' request to extend the temporary stay to cover a nationwide class, Respondents argued that such relief was improper because of individual factual issues relevant to motions to reopen. June 26, 2017 Hr'g. Tr., ECF 44, Pg.ID# 697. This Court asked why relief limited to "an opportunity for the detainees to present their arguments to the immigration courts" would not "present a common question that's appropriate for class treatment". *Id.* at Pg.ID# 698. Respondents' counsel fell back upon a challenge to the Court's jurisdiction. *Id.*

erroneously disqualified. *Id.* at 722. This did not defeat certification:

> To the extent that the subclass includes persons who are actually
> felons who are intentionally fleeing and are actively being sought for
> prosecution, they might now lack substantive claims but could still
> advance a due process argument. That possibility does nothing to
> undermine the district court's class certification.

*Id.*[8]

The central question for commonality here is whether the proposed Class
Members' claims arise from a common course of conduct by the government. As
this Court noted at argument on the motion for expedited briefing schedule, "all
you need to show is that the government's generally acting in a uniform way
against class members." July 5, 2017 Hr'g Tr., ECF 59, Pg.ID# 897. This Court's
analysis was correct. In *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir.
2012), the Sixth Circuit upheld class certification in a case in which policyholders
alleged that their insurance companies incorrectly determined the locations in
which their insured risks were located and thus erroneously collected insurance
premium taxes from them. The court recognized that not all members of the class

---

[8] *See also NILI 2011, LLC v. City of Warren*, No. 15-cv-13392, 2017 WL 2242360,
at \*6–7 (E.D. Mich. May 23, 2017) (class of building owners presented common
question whether city's building code enforcement procedures satisfied due
process, even if different class members suffered different degrees of harm) (Ex.
2); *Dozier v. Haveman*, No. 2:14-cv-12455, 2014 WL 5483008, at \*22 (E.D. Mich.
Oct. 29, 2014) (due process challenge to sufficiency of benefit denial notice
presented a common question even if different class members had different degrees
of entitlement to underlying benefit) (Ex. 4); *Augustin v. City of Philadelphia*, 318
F.R.D. 292, 298–99 (E.D. Pa. 2016).

22

would have equally strong claims, as "Defendants will have some individualized defenses against certain policyholders." *See id.* at 543. Yet it concluded that "the existence of these defenses does not defeat the commonality requirement," since the plaintiffs alleged "a single practice or course of conduct on the part of each Defendant—the failure to implement a geocoding verification system—that gives rise to the claims of each class member." *See id.* The same analysis applies here.

### a. The Primary Class

The Primary Class's claims raise numerous common questions of law and fact that are capable of producing answers going to the central validity of the claims for a stay of removal and release from detention because their removal is not imminent. Common questions of law include, but are not limited to:

i.   Whether Class Members can be removed without providing them a meaningful opportunity to seek relief or protection from persecution or torture based on changed country conditions in Iraq.

ii.  Whether, but for the existing stay of removal, Respondents' process for removal would violate Class Members' constitutional, statutory, and regulatory rights because it provides them with insufficient time and opportunity to demonstrate their qualifications for relief or protection from persecution or torture based on changed country conditions in Iraq.

iii. Whether 8 U.S.C. § 1158, 8 U.S.C. § 1231(b)(3), and the Convention Against Torture impose on Respondents a mandatory obligation to consider Class Members' individualized requests for relief and protection from persecution or torture.

iv.  Whether, in determining foreseeability of removal under *Zadvydas v. Davis,* 533 U.S. 678, 699 (2001), a habeas court must consider the length of time it

23

will likely take for immigration proceedings to conclude and for a removal order to be enforceable.

v. Whether, if Petitioners' removal is not significantly likely in the reasonably foreseeable future, their detention is unlawful and they must be released.

vi. Whether Respondents are violating Class Members' constitutional, statutory, and regulatory right to counsel of their own choosing by transferring them far from their existing counsel and the immigration court in which their removal case was heard, sometimes multiple times in a short period of time, which impedes their counsel's effective representation and, for those without counsel, prevents them from securing counsel.

vii. Whether Class Members who filed motions to reopen before receipt of their A-Files and Records of Proceedings should receive protection from removal until such time as they are able to submit motions to supplement or reconsider their previously filed motions, and for the time it takes for these motions to be adjudicated.

Answers to these questions will drive the resolution of this case.

The claims of each Class Member of the Primary Class likewise involve

common questions of fact, including but not limited to:

i. Whether country conditions have changed in Iraq to the extent that Class Members should have a reasonable opportunity and sufficient time to demonstrate that, based on their religion, ethnic affiliation, or other characteristics (such as Americanization), they would face persecution, torture, or death if removed to Iraq.

ii. What procedural mechanisms are available in immigration court to Class Members to challenge their removal, and whether Class Members had an adequate opportunity to access those procedures when they were suddenly taken into custody by ICE for immediate removal.

iii. Whether Class Members have provided good reason to believe that their removal is not significantly likely in the reasonably foreseeable future in light of Iraq's prior refusal to allow repatriation, this Court's injunctive order and the time inevitably required to process Class Members' claims to

24

relief/protection from removal through the immigration court system.

iv.  Whether transfers, including repeated transfers, far from Petitioners' homes interferes with Petitioners' access to counsel and their ability to obtain documents and take other steps necessary to raise claims in immigration court.

These common factual questions bear directly on the danger that entitles Class Members to protection against removal as well as the illegality of their continued detention, and on the nature of the relief that is required to ensure their statutory and constitutional rights are protected.

### b. The Detention Subclasses

Common questions are likewise present for the claims of the detention subclasses. The common questions of law include:

i.  Whether due process and the Immigration and Nationality Act require that individuals subject to prolonged post-final-order detention under 8 U.S.C. §§ 1231(a)(6) and 1226(c) be afforded a hearing before an impartial adjudicator on the issues of danger and flight risk (both subclasses).

ii.  Whether the mandatory detention statute, 8 U.S.C. § 1226(c), applies to individuals in reopened removal proceedings, or to individuals taken into immigration custody months or years after they were released from criminal custody for an offense that could trigger their mandatory detention (Mandatory Detention Subclass).

Common questions of fact for the detention subclasses include:

i.  Whether Class Members have received determinations from an impartial adjudicator that they are a danger to the community or a flight risk.

ii.  Whether the reasonably expected period of confinement for Class Members is sufficiently prolonged to require individual determinations of danger and flight risk by an impartial adjudicator.

25

This case is very similar to *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010), in which the Ninth Circuit held that a 23(b)(2) class was appropriate. The Petitioner in *Rodriguez* sought certification of a class of non-citizens who had been or would be subject to immigration detention for more than six months without an individualized bail hearing. *Id.* at 1112. The government contended that Rule 23(b)(2) did not apply because the members of the proposed class had been detained under a variety of different statutes, some of which mandated detention without bail hearings. *Id.* at 1125. That argument, the court concluded, "miss[ed] the point of Rule 23(b)(2)." *Id.* Because "[t]he proposed members of the class each challenge[d] Respondents' practice of prolonged detention of detainees without providing a bond hearing" and sought "the exact same relief," a 23(b)(2) class was appropriate even if "[t]he particular statutes controlling class members' detention may impact the viability of their individual claims for relief." *Id.* at 1126. So too here, Petitioners' request for class-wide relief fits Rule 23(b)(2).

### 3. The Named Representatives' Claims Are Typical of the Class and Subclasses.

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims or defenses of the class." "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (*en banc*)). The purpose of the typicality requirement is to ensure "that the

26

representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Whirlpool*, 722 F.3d at 852–53. "[T]ypical claims need not be identical to one another; something less restrictive is appropriate to satisfy Rule 23(a)(3)." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1764 (3d ed. 2005).

"Commonality and typicality 'tend to merge' because both of them 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Young*, 693 F.3d at 542 (quoting *Wal-Mart*, 564 U.S. at 349 n.5). In *Young*, the court held that the plaintiffs' challenge to "a single course of conduct" by the defendants that "[gave] rise to the claims of each class member and a single theory of liability" necessarily satisfied both the commonality and the typicality requirements. *See* 693 F.3d at 543. *See also* 7A Wright, Miller & Kane § 1764 ("[M]any courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory.").

This case, like *Young*, presents a challenge to a course of conduct by the

27

government affecting all Class Members—its removal of Class Members under procedures that deny them a sufficient opportunity to assert their grounds for relief from that action, and its detention of those Class Members when their removal is not substantially likely in the reasonably foreseeable future. The subclasses challenge Respondents' conduct in detaining Class Members without individualized determinations of danger or flight risk. The subclasses also present claims arising under the underlying statutes supposedly justifying the continued detention of Class Members. The named Petitioners have ripe claims that are typical of— indeed, identical to—the claims of the Primary Class and subclasses. Each was upon recent detention subject to a final order of removal to Iraq. Each seeks a stay of removal in order to present claims for relief before the immigration courts. Primary Class members in detention remain there notwithstanding a failure by ICE to establish that they are subject to repatriation in the reasonably foreseeable future. The subclass representatives are held in detention either under the provisions governing final orders or by virtue of the Respondents' claims that they are subject to the mandatory detention statute. Their challenges to their continued detention under either statutory regime are based upon statutory/due process rights possessed by all members of the subclasses. Each is typical because the Respondents have treated them in the same manner as all subclass members.

### 4. The Class Representatives Will Fairly and Adequately Represent The Interests of the Class and Subclass.

28

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The Sixth Circuit applies

> a two-prong test to determine whether the class representatives will "fairly and adequately protect the interests of the class" under Rule 23(a)(4): 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.

*Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (internal quotation marks and brackets omitted). The qualifications, experience, and abilities of counsel to conduct the litigation are taken into account. *See id*. The proposed class representatives and class counsel here easily satisfy these standards.

The first prong of this test is met for reasons already highlighted above. The named Petitioners have common interests with the unnamed class members. Indeed, the relief they obtained through this Court's preliminary injunction order has already benefitted the putative class: unnamed Class Members have used the time secured by that injunction to successfully pursue relief from removal. Schlanger Decl. ¶ 16–20, ECF 138-2, Pg.ID# 3405–06. The representatives share the interest of all Class Members in minimizing detention. Petition ¶¶ 127–143, ECF 118, Pg.ID# 3022–26. They do not have interests that are antagonistic to the class or subclass they would represent. The relief they seek is uniform and would give all members of the proposed class a meaningful opportunity to present any

29

claims for relief from removal before being rushed to Iraq. Relief on the transfer and detention claims would likewise be uniform. There are no conflicts of interest between the named Petitioners and other class members.

Further, counsel is well qualified, bring broad and deep expertise, and will zealously prosecute this case. The ACLU's Immigrant Rights Project ("IRP") is the nation's leading litigation group addressing immigrants' rights, and its lawyers are frequently designated class counsel in federal court.[9] The ACLU of Michigan is a leading civil rights litigator in the state, and its lawyers are frequently designated class counsel in federal court.[10] Miller Canfield is one of Michigan's leading law firms, with over 275 lawyers and paralegals, a national reputation for excellence, and frequent experience with federal class actions.[11] The Michigan Immigrant Rights Center ("MIRC") is Michigan's leading legal resource center for Michigan's immigrant communities, and provides both direct immigration legal services and coordination of pro-bono representation.[12] CODE Legal Aid is a legal services non-profit dedicated refugee rights and resettlement, with a particular focus on the metro-Detroit-area Chaldean and immigrant community. The International Refugee Assistance Project ("IRAP") provides and facilitates free legal services for vulnerable populations around the world who seek to escape

---

[9] *See generally* https://www.aclu.org/issues/immigrants-rights.
[10] *See generally* http://www.aclumich.org/.
[11] *See generally* https://www.millercanfield.com/firm.html.
[12] *See generally* http://michiganimmigrant.org/.

persecution; IRAP represented over 700 Iraqis in 2016 alone, and has extensive expertise on country conditions in Iraq.[13] The individual attorneys affiliated with these organizations bring decades of experience handling immigration, habeas, civil rights, and class action cases, and this Court has already observed their zealous representation.[14]

## C.  RESPONDENTS' UNIFORM CONDUCT JUSTIFIES CLASS-WIDE RELIEF.

Petitioners seek certification under Rule 23(b)(2), which authorizes class actions if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "Rule 23(b)(2) class actions are particularly effective in civil rights cases because these cases often involve classes which are difficult to enumerate but which involve allegations that a defendant's conduct affected all class members in the same way." William B. Rubenstein, *Newberg on Class Actions* § 4:40 (5th ed.). Indeed, subdivision (b)(2) was added to Rule 23 "to make it clear that civil-rights suits for

---

[13] *See generally* https://refugeerights.org/.
[14] *See* Resumés of Lee Gelernt, https://www.aclu.org/bio/lee-gelernt; Judy Rabinovitz, https://www.aclu.org/bio/judy-rabinovitz; Michael Steinberg, http://www.aclumich.org/michael-j-steinberg; Miriam Aukerman, http://www.aclumich.org/miriam-aukerman; Margo Schlanger, http://www.law.umich.edu/FacultyBio/Pages/FacultyBio.aspx?FacID=mschlan; Kimberly Scott, https://www.millercanfield.com/KimScott; Wendolyn Richards, https://www.millercanfield.com/WendyRichards.

injunctive or declaratory relief can be brought as class actions." 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1776 (3d ed. 2005).

The same factors that supported commonality are present here. Respondents are acting on grounds generally applicable to the class: 1) attempting to deport Iraqi nationals without affording them sufficient time or opportunity to present their claims for changed country conditions, and 2) detaining them without regard to the foreseeability of their removal or the danger or flight risk they present, and refusing to afford them a meaningful opportunity to challenge that detention. Whatever the legality of the initial detention of Class Members, their continued detention by Respondents ignores current circumstances that are common to all: specifically this Court's stay of the initial rush to deport and the procedures whereby removal is now being contested and the inevitable delays attendant thereto. Respondents are refusing to acknowledge the legal consequences of these changes, and that refusal is common across the class and subclasses.

This Court's preliminary injunction provides plain evidence of the Court's ability to fashion relief that benefits the class as a whole, the key consideration under Rule 23(b)(2). *See Wal-Mart*, 564 U.S. at 365. This Court's injunction has opened the doors to the immigration courts, allowing 164 class members to file motions to reopen as of November 2. Schlanger Decl. ¶ 14, ECF 138-2, Pg.ID#

32

3405. The dispositions in immigration court have varied—individuals have obtained cancellation of removal, termination of removal proceedings, and withholding and deferral of removal; others are awaiting decisions on the merits; and some have had motions to reopen denied (and, for nearly all, have pending appeals of those denials). The common benefit they have received is the chance for the immigration court to hear their claims. *See id*. ¶¶ 16–23. That there may be differences among class members in terms of their ultimate entitlement to immigration relief does not render Rule 23(b)(2) any less applicable. *See Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012) ("All of the class members need not be aggrieved by . . . [the] defendants' conduct in order for some of them to seek relief under 23(b)(2). What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class.") (quoting 7AA Wright, Miller & Kane, *Federal Practice and Procedure* § 1775 (2d ed. 1996)). Rule 23(b)(2) certification is appropriate to ensure that Class Members receive the process to which they are entitled, even though some may not ultimately prevail in administrative proceedings.[15]

---

[15] For additional cases from the Eastern District of Michigan, *see*, *e.g., NILI 2011, LLC v. City of Warren*, No. 15-CV-13392, 2017 WL 2242360, at *6–7 (E.D. Mich. May 23, 2017) (plaintiff class of building owners presented common question whether city's building-code enforcement procedures satisfied due process, even if various class members suffered different degrees of harm) (Ex. 2); *Dozier v. Haveman*, No. 2:14-CV-12455, 2014 WL 5483008, at *22 (E.D. Mich. Oct. 29, 2014) (due process challenge to sufficiency of notice of denial of Healthy

33

### D.    THE COURT SHOULD APPOINT CLASS COUNSEL PURSUANT TO RULE 23(G).

As described above in Part C, counsel is qualified to handle class-action litigation and will zealously prosecute this case for the class. The Court is by now quite familiar with counsel's work. The litigation team includes attorneys with extensive experience in class actions, experience in immigration and habeas class actions, and expertise in immigration law, habeas law, and other relevant legal issues. The litigation team has already devoted substantial resources to representing the putative class. Accordingly, the Court should appoint Petitioners' counsel as class counsel for the putative class and subclasses.[16]

### E.    THE COURT SHOULD DIRECT THAT APPROPRIATE NOTICE BE PROVIDED.

Rule 23(d)(1)(B) provides that "[i]n conducting an action under this rule, the court may issue orders that . . . require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of: (i) any step in this action . . ." This Court has already ordered notice to class members related to the existing stay of removal and their right to obtain their immigration records to allow them access to the record needed for fair adjudication in immigration court. *See* Order Regarding Further Proceedings, ECF 110, Pg.ID#

---

Michigan benefits presented a common question even if different class members had different degrees of entitlement to the underlying benefit) (Ex. 4).

[16] Attorneys William Swor and María Martínez Sánchez are not seeking appointment as class counsel.

2818. If the Court grants further relief, Petitioners believe that further notice to class members will be essential to protect class members and to fairly conduct the action. Because the timing and contents of the notice will depend on future decisions by this Court, Petitioners ask that the Court, if it grants relief on Petitioners' November 7 Motion for Preliminary Injunction, order the Parties to submit to the Court a proposed plan for additional notice from Petitioners. Under Rule 23(d)(1)(B), class notice is appropriate for any relief that is time-sensitive (including the relief Petitioners have requested), regardless of whether the Court has yet ruled on class certification.

## CONCLUSION

Petitioners respectfully request this Court to certify the above-captioned case as a class action pursuant to Federal Rules Civil Procedure 23(a) and 23(b)(2), name the Petitioners as class and subclass representatives as specified in the motion, appoint Petitioners' counsel as class counsel, and order the parties to submit a proposed plan for class notice pursuant to Federal Rule of Civil Procedure 23(d)(1)(B).


Date: November 7, 2017

35

Respectfully submitted,

Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
Bonsitu A. Kitaba (P78822)
Miriam J. Aukerman (P63165)
AMERICAN CIVIL LIBERTIES
 UNION FUND OF MICHIGAN
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6814
msteinberg@aclumich.org

Kimberly L. Scott (P69706)
Wendolyn Wrosch Richards (P67776)
Cooperating Attorneys, ACLU Fund
 of Michigan
MILLER, CANFIELD, PADDOCK
 & STONE, PLC
101 N. Main St., 7th Floor
Ann Arbor, MI 48104
(734) 668-7696
scott@millercanfield.com

Nora Youkhana (P80067)
Nadine Yousif (P80421)
Cooperating Attorneys, ACLU Fund
 of Michigan
CODE LEGAL AID INC.
 27321 Hampden St.
Madison Heights, MI 48071
(248) 894-6197
norayoukhana@gmail.com

María Martínez Sánchez (NM Bar
126375)
AMERICAN CIVIL LIBERTIES
 UNION OF NEW MEXICO

Judy Rabinovitz (NY Bar JR-1214)
Lee Gelernt (NY Bar NY-8511)
ACLU FOUNDATION
 IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2618
jrabinovitz@aclu.org

Margo Schlanger (N.Y. Bar #2704443)
Samuel R. Bagenstos (P73971)
Cooperating Attorneys, ACLU Fund
 of Michigan
625 South State Street
Ann Arbor, Michigan 48109
734-615-2618
margo.schlanger@gmail.com
Susan E. Reed (P66950)

MICHIGAN IMMIGRANT RIGHTS
 CENTER
3030 S. 9th St. Suite 1B
Kalamazoo, MI 49009
 (269) 492-7196, ext. 535
susanree@michiganimmigrant.org

Lara Finkbeiner (NY Bar 5197165)
Mark Doss (NY Bar 5277462)
Mark Wasef (NY Bar 4813887)
INTERNATIONAL REFUGEE
 ASSISTANCE PROJECT
Urban Justice Center
40 Rector St., 9th Floor
New York, NY 10006
(646) 602-5600
lfinkbeiner@refugeerights.org

36

1410 Coal Ave. SW
Albuquerque, NM 87102
msanchez@aclu-nm.org

*Attorneys for All Petitioners and Plaintiffs*

William W. Swor (P21215)
WILLIAM W. SWOR
 & ASSOCIATES
1120 Ford Building
615 Griswold Street
Detroit, MI 48226
wwswor@sworlaw.com

*Attorney for Petitioner/Plaintiff*
*Usama Hamama*

37

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2017, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF filers of record.

By:   /s/Kimberly L. Scott
Kimberly L. Scott (P69706)
Cooperating Attorneys, ACLU Fund
 of Michigan
MILLER, CANFIELD, PADDOCK
 & STONE, PLC
101 N. Main St., 7th Floor
Ann Arbor, MI 48104
(734) 668-7696
scott@millercanfield.com