IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| USAMA JAMIL HAMAMA, et al., | |
| Petitioners and Plaintiffs, | Case No. 2:17-cv-11910-MAG-DRG |
| | Hon. Mark A. Goldsmith |
| v. | Mag. David R. Grand |
| REBECCA ADDUCCI, et al., | Class Action |
| Respondents and Defendants. | |

**PETITIONERS/PLAINTIFFS' RESPONSE IN OPPOSITION TO
RESPONDENTS/DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED CLASS PETITION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. iii

STATEMENT OF ISSUES PRESENTED............................................ viii

CONTROLLING OR MOST APPROPRIATE AUTHORITY .............................x

INTRODUCTION ................................................................................1

STANDARD OF REVIEW ...................................................................3

LAW AND ARGUMENT .....................................................................4

I.    The Court Has Subject Matter Jurisdiction. .................................................4

    A.    The Court's Prior Factual Findings Related to Jurisdiction................4

    B.    The Court's Prior Legal Decisions on Jurisdiction ............................6

    C.    The Court Has Jurisdiction Over Petitioners' Claims Related to
        Detention and Transfer........................................................................8

II.   Petitioners Have Stated Plausible Claims for Relief ...................................11

    A.    Petitioners Have Stated Plausible Claims Challenging Removal ......11

        1.    Petitioners State a Plausible Claim That Their Removal
            Without an Opportunity to Access the Immigration
            Courts Violates Due Process (Count II) ...................................12

        2.    Petitioners State a Plausible Claim That Their Removal
            Without an Opportunity to Access the Immigration
            Courts Is Barred by Statute (Count I) ......................................14

        3.    Petitioners State a Plausible Claim With Respect To
            Their Immigration Records (Count VII)...................................15

    B.    Petitioners State Plausible Claims Challenging Detention ...............16

        1.    Petitioners State a Plausible Claim That Their Detention
            is Unlawful Because Their Removal to Iraq is Not
            Reasonably Foreseeable (Count IV) ........................................18

        2.    Petitioners State a Plausible Claim That Prolonged
            Detention Without an Individualized Determination of
            Hearing Is Unlawful (Count V) ...............................................24

## TABLE OF CONTENTS
### (continued)

**Page**

      3.     Petitioners State a Plausible Claim That Section 1226(c) Does Not Authorize Their Mandatory Detention (Count VI) ...................................................................................31

  C.    Petitioners State Plausible Claims Challenging Transfer (Count III)............................................................................................34

CONCLUSION .......................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. McNary*,
  29 F.3d 630 (9th Cir. July 11, 1994)....................................................................11

*Armstrong v. Manzo*,
  380 U.S. 545 (1965)........................................................................................12

*Avramenkov v. INS*,
  99 F. Supp. 2d 210 (D. Conn. 2000).....................................................................11

*Casas-Castrillon v. Dep't of Homeland Sec.*,
  535 F.3d 942 (9th Cir. 2008) ........................................................................32, 34

*Castañeda v. Souza*,
  810 F.3d 15 (1st Cir. 2015)..............................................................................33

*Cesar v. Achim*,
  542 F. Supp. 2d 897 (E.D. Wis. 2008) .................................................................19

*Chavez-Alvarez v. Warden York Cty. Prison*,
  783 F.3d 469 (3d Cir. 2015) .............................................................................31

*Comm. of Cent. American Refugees v. INS*,
  795 F.2d 1434 (9th Cir. 1986) ..........................................................................10

*Demore v. Kim*,
  538 U.S. 510 (2003).........................................................................9, 18, 27, 32

*Diaz-Bernal v. Myers*,
  758 F.Supp.2d 106 (D. Conn. 2010)....................................................................10

*Diouf v. Mukasey*,
  542 F.3d 1222 (9th Cir. 2008) ...................................................................23, 25, 30

*Foster v. Townsley*,
  243 F.3d 210 (5th Cir. 2001) .............................................................................9

*Foucha v. Louisiana*,
  504 U.S. 71 (1992)...........................................................................................17

*Gillig v. Advanced Cardiovascular Sys., Inc.*,
   67 F.3d 586 (6th Cir. 1995) ...................................................................7

*Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*,
   807 F.3d 806 (6th Cir. 2015) .................................................................3

*Graham v. Mukasey*,
   519 F.3d 546 (6th Cir. 2008) ...............................................................13

*Hassan v. Gonzales*,
   403 F.3d 429 (6th Cir. 2005) ...............................................................12

*Head v. Crutchfield*,
   No. 2:06-cv-12231, 2006 WL 1851268 (E.D. Mich. June 30, 2006)................10

*Hosh v. Lucero*,
   680 F.3d 375 (4th Cir. 2012) ...............................................................33

*Hydara v. Gonzales*,
   2007 WL 2409664 (D. Minn. 2007)....................................................23

*Kansas v. Hendricks*,
   521 U.S. 346 (1997)............................................................................18

*Kanu v. Sheriff Butler Cty.*,
   No. 1:16-CV-756, 2016 WL 6601565 ............................................23

*Kellici v. Gonzales*,
   472 F.3d 416 (6th Cir. 2006) ...............................................................10

*Leary v. Daeschner*,
   228 F.3d 729 (6th Cir. 2000) ...............................................................12

*Lema v. I.N.S.*,
   341 F.3d 853 (9th Cir. 2003) ...............................................................24

*Lora v. Shanahan*,
   804 F.3d 601 (2d Cir. 2015) ...........................................................31, 33

*Ly v. Hansen*,
   351 F.3d 263 (6th Cir. 2003) ......................................................*passim*

*Marogi v. Jenifer*,
    126 F. Supp. 2d 1056 (E.D. Mich. 2000) ............................................................35

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)...............................................................................................24

*Mudhallaa v. Bureau of Immigration & Customs Enf't*,
    No. 15-10972, 2015 WL 1954436 (E.D. Mich. Apr. 29, 2015) ........................33

*Mustata v. U.S. Dep't of Justice*,
    179 F.3d 1017 (6th Cir. 1999) ..............................................................................9

*Ngo v. INS*,
    192 F.3d 390 (3d Cir. 1999) ...............................................................................28

*Olmos v. Holder*,
    780 F.3d 1313 (10th Cir. 2015) ..........................................................................33

*Orantes-Hernandez v. Thornburgh*,
    919 F.2d 549 (9th Cir. 1990) ..............................................................................11

*Preap v. Johnson*,
    831 F.3d 1193 (9th Cir. 2016) ............................................................................33

*Prieto-Romero v. Clark*,
    534 F.3d 1053 (9th Cir. 2008) .....................................................................22, 24

*Reid v. Donelan*,
    819 F.3d 486 (1st Cir. 2016).................................................................................31

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)................................................................................................9

*Reno v. Flores*,
    507 U.S. 292 (1993)..............................................................................................12

*Rodriguez v. Robbins*,
    804 F.3d 1060 (9th Cir. 2015) .................................................................18, 24, 31

*Rosales-Garcia v. Holland*,
    322 F.3d 386 (6th Cir. 2003) ..............................................................................21

*Rosciszewski v. Adducci*,
    983 F. Supp. 2d 910 (E.D. Mich. 2013) .............................................................33

*Saysana v. Gillen*,
    590 F.3d 7 (1st Cir. 2009).................................................................................33

*Sissoko v. Rocha*,
    509 F.3d 947 (9th Cir. 2007) .................................................................................9

*Soberanes v. Comfort*,
    388 F.3d 1305 (10th Cir. 2004) .........................................................................22

*Solo v. United Parcel Serv.*,
    819 F.3d 788 (6th Cir. 2016) ............................................................................3, 4

*Sopo v. Attorney General*,
    825 F.3d 1199 (11th Cir. 2016) .........................................................................31

*Sylvain v. Attorney Gen. of U.S.*,
    714 F.3d 150 (3d Cir. 2013) ...............................................................................33

*United States v. Salerno*,
    481 U.S. 739 (1987).............................................................................................18

*Zadvydas v. Davis*,
    533 U.S. 678 (2001)....................................................................................*passim*

*Zundal v. Gonzales*,
    230 Fed. App'x 468 (6th Cir. 2007) ....................................................................9

**Statutes**

8 U.S.C. § 1226(c) ...........................................................................*passim*

8 U.S.C. § 1231 ..........................................................................................25

8 U.S.C. § 1231(a)(1)(C) ...................................................................22, 23

8 U.S.C. § 1231(b)(3)....................................................................................15

8 U.S.C. § 1252(a)(2)(B)(ii) ......................................................................10

**Court Rules**

Fed. R. Civ. P. 62.1 ...................................................................................7, 8

Fed. R. Civ. P. 12(b) ...............................................................................2, 3, 13

**Other Authorities**

8 C.F.R. § 241.1(i) .........................................................................................21

8 C.F.R. § 241.4 .............................................................................................29

8 C.F.R. § 241.13 .....................................................................................28, 29

8 C.F.R. § 241.13(b)(1) ...........................................................................19, 29

8 C.F.R. § 1241.1(a) .....................................................................................23

## STATEMENT OF ISSUES PRESENTED

1. Whether the Court has jurisdiction over Petitioners' removal claims?

   **Petitioners' Answer: Yes**

2. Whether the Court has jurisdiction over Petitioners' detention and transfer claims?

   **Petitioners' Answer: Yes**

3. Whether Petitioners have stated a claim upon which relief may be granted as to the following issues:

   a. Whether, given that Petitioners face grave danger of persecution, torture, or death if removed to Iraq, the Court should stay their removal until they have had a reasonable opportunity to obtain counsel, file motions to reopen, and have those motions adjudicated through the administrative immigration court system?

   **Petitioners' Answer: Yes**

   b. Whether Petitioners who filed motions to reopen before receipt of their A-Files and Records of Proceedings should receive protection from removal for a reasonable time until they are able to submit motions to supplement or reconsider their previously filed motions, and for the time it takes for these motions to be adjudicated?

   **Petitioners' Answer: Yes**

c.  Whether Petitioners have demonstrated that their removal is not significantly likely in the reasonably foreseeable future such that release on an order of supervision is required unless the government individually rebuts that showing?

**Petitioners' Answer: Yes**

d.  Whether the Due Process Clause and the Immigration and Nationality Act require that individuals subject to prolonged immigration detention be released unless afforded a hearing before an impartial adjudicator on the issues of danger and flight risk?

**Petitioners' Answer: Yes**

e.  Whether the mandatory detention statute, 8 U.S.C. § 1226(c), does not apply to individuals in reopened removal proceedings, or to individuals taken into immigration custody months or years after they were released from criminal custody for an offense that could trigger mandatory detention?

**Petitioners' Answer: Yes**

f.  Whether Petitioners have stated plausible claims challenging transfer?

**Petitioners' Answer: Yes**

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

**Standard for a Motion to Dismiss:**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806 (6th Cir. 2015)

**Jurisdiction:**

*Hamama v. Adducci*, 258 F. Supp. 3d 828 (E.D. Mich. 2017)

**Constitutional Limits on Civil Immigration Detention Authority:**

*Zadvydas v. Davis,* 533 U.S. 678 (2001)

*Demore* v. *Kim*, 538 U.S. 510 (2003)

*Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003)

*Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003)

*Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015)

*Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011)

*Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008)

**Statutory Limits on Detention Pursuant to 8 U.S.C. § 1226(c):**

*Preap v. Johnson*, 831 F.3d 1193 (9th Cir. 2016)

*Castañeda v. Souza*, 810 F.3d 15 (1st Cir. 2015)

**Constitutional Limits on Transfer:**

*Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990)

## **INTRODUCTION**

The Second Amended Petition presents two sets of claims. The removal claims challenge Petitioners' removal without an opportunity to raise current defenses in immigration court. The detention claims challenge Petitioners' prolonged detention while those removal defenses are asserted. This Court has already addressed both jurisdiction and, preliminarily, the merits of the removal claims, but has not yet ruled on the detention claims. As to both, Respondents' motion to dismiss should be denied.

Regarding jurisdiction over the removal claims, the Court has already ruled:

> In these singular circumstances, a federal district court is armed with jurisdiction to act as a first responder to protect the writ of habeas corpus and the allied right to due process, by allowing an orderly filing for relief with the immigration courts before deportation, thereby assuring that those who might be subjected to grave harm and possible death are not cast out of this country before having their day in court.

Prelim. Inj. Op., ECF #87, Pg.ID #2324. Neither the facts nor the law have changed. Respondents disagree with that ruling—an argument better directed at the Court of Appeals, where the matter is pending. On the merits, the Court has already likewise found, correctly, that "[g]iven the compelling evidence that Petitioners have presented regarding the probable deprivation of a meaningful opportunity to present their INA and CAT/FARRA claims to the immigration courts and courts of appeals, they have shown a likelihood of success on their due

process claim." *Id.* at 2351-52. And recent developments, particularly Petitioners'
success in their immigration proceedings, have only made clearer that this Court
was correct when it afforded Petitioners the opportunity to pursue immigration
relief or protection in immigration court. Accordingly, the Court should deny the
motion to dismiss with respect to Petitioners' removal-related claims.

There are some new issues in the case, however. Petitioners have amended
the Petition and sought preliminary relief from their ongoing detention, challenging
Respondents' insistence on keeping Petitioners locked up without consideration of
whether Petitioners—who have lived in the community and reported regularly to
ICE for years—present a danger or flight risk. Moreover, final decisions in
Petitioners' immigration cases could take months or years, and it is unclear if
Petitioners can even be repatriated to Iraq. This Court has clear jurisdiction over
these detention issues, notwithstanding Respondents' effort to conflate jurisdiction
over detention issues with the more complex jurisdictional issues related to remov-
al. And on the merits, for the reasons set out in Petitioners' pending preliminary
injunction motion on detention, ECF #138, and in light of the evidence that
Petitioners have compiled even without discovery, Petitioners not only plausibly
state claims that their detention is illegal; they have shown that they are likely to
prevail.

## STANDARD OF REVIEW

Respondents seek dismissal on jurisdictional grounds under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They seek dismissal of Petitioners' substantive claims under Rule 12(b)(6).

As the Sixth Circuit explained in *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (internal quotation marks and citations omitted),

> [a] motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) involves either a facial attack or a factual attack. When reviewing a facial attack, a district court takes the allegations in the complaint as true. This approach is identical to the approach used by the district court when reviewing a motion invoking Federal Rule of Civil Procedure 12(b)(6).

On the other hand,

> [w]hen examining a factual attack under Rule 12(b)(1), the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction.

*Id.* (internal quotation marks and citations omitted).

Under Rule 12(b)(6), the Court must construe a complaint in the light most favorable to the Petitioners, accept all factual allegations as true, and determine whether the complaint contains sufficient factual matter to state a claim to relief that is plausible on its face. *Solo v. United Parcel Serv.*, 819 F.3d 788, 793 (6th Cir. 2016) (citation omitted). Under this standard, a complaint must contain "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citation omitted).

## LAW AND ARGUMENT

## I.    THE COURT HAS SUBJECT MATTER JURISDICTION.

### A.    The Court's Prior Factual Findings Related to Jurisdiction

The Court has already made extensive factual findings that relate directly to jurisdiction. Those findings need only be briefly summarized here. *First*, the Court found that Petitioners face grave danger if removed to Iraq:

- "Petitioners have presented significant evidence—not contested by the Government—that many will face death" if deported to Iraq. Order on Juris., ECF #64, Pg.ID #1244. "Religious minorities in Iraq face significant perse-cution," have been forced to "pay a protection tax, convert to Islam, or be killed," and are subject to abduction, sexual slavery, rape, extrajudicial killings, and other atrocities. Prelim. Inj. Op., ECF #87, Pg.ID #2329–30; Order on Juris., ECF #64, Pg.ID #1229-30, 1244. Petitioners' perceived association with U.S. interests will also subject them to targeting by ISIS and interrogation by Iraqi security forces with techniques that qualify as torture. Prelim. Inj. Op., ECF #87, Pg.ID #2330; Order on Juris., ECF #64, Pg.ID #1231.

*Second*, this Court found that because Petitioners had no notice prior to their recent detention that they faced imminent removal, and because country conditions had worsened, Petitioners had good reason not to file motions to reopen earlier:

- "Over eighty-three percent of [Petitioners] have been subject to final orders of removal for at least five years, with more than fifty percent being subject to the orders for a decade or more." Prelim. Inj. Op., ECF #87, Pg.ID #2325. Iraq's longtime refusal to accommodate removal led Petitioners to "reasonably conclude that filing a motion to reopen was a purely academic exercise," especially given the high cost of filing such motions. *Id*., Pg.ID #2342.

- "The Government's attempt to characterize the Petitioners as having slept on their rights prior to detainment is unpersuasive. The earliest Iraq's changed country conditions became apparent to Petitioners was 2014, with conditions threatening to some Petitioners not arising until much later." *Id.*

*Third*, this Court has found that, absent a stay of removal, Petitioners would face enormous obstacles to accessing the immigration courts:

- Given the pace of immigration court proceedings, "many Petitioners will not have their arguments heard before they are repatriated. This, in turn, means many may face the grave consequences of deportation—death, torture, or other persecution—before their legal rights can be properly adjudicated." Order on Juris., ECF #64, Pg.ID #1246. "Obviously, deportees who are murdered will never have the opportunity to present their arguments that their removal orders are prohibited by the CAT or the INA." *Id.*, Pg.ID #1244. Deportees in Iraq "who must take evasive action" to avoid persecution, torture or death, "will be deprived of the stability that is often necessary to properly pursue legal challenges. Maintenance of legal paperwork and communication with lawyers and potential witnesses would likely become extraordinarily problematic, if not impossible." *Id.*

- "In an unanticipated decision to enforce removal orders, the Government has, without notice, put some 1,444 persons at risk for deportation. This abrupt action taxes the immigration bar's ability to promptly service all in need of legal protection . . . [and] also taxes the resources of the immigration courts to provide prompt and appropriate decisions to all affected." *Id.* at Pg.ID #1245.

- "Petitioners' efforts to prepare and file motions have been stymied by their successive transfers to out-of-state facilities, as well as by the reduced access to counsel those facilities afford Petitioners." Prelim. Inj. Op., ECF #87, Pg.ID #2348.

*Finally*, this Court has found that Petitioners' immigration records in the possession of the government—their A-files and Records of Proceedings—are critical to fair adjudication of motions to reopen and the underlying claims for immigration relief. Therefore, the Court ordered those records' prompt production.

5

*See* Prelim. Inj. Op., ECF #87, Pg.ID #2331, 2356.

None of these facts have changed. *See* ECF ##11, 14, 30, 36, 77, 84, 118. The only new fact is that the stay's effectiveness is now clear: of the motions to reopen that have been fully adjudicated, close to 90% have been granted, and of the cases so far decided on the merits, every one resulted in relief or protection. Schlanger Decl., ECF #138-2, Pg.ID #3406-07. The Petitioners have meritorious claims; they simply need time to access the immigration court system.

### B.    The Court's Prior Legal Decisions on Jurisdiction

This Court has already found that it has jurisdiction. Specifically, the Court in two thorough opinions concluded that, even though under non-exigent circumstances the REAL ID Act, 8 U.S.C. § 1252(g), would divest the Court of jurisdiction to hear claims related to the execution of removal orders, § 1252(g) violates the Suspension Clause as applied here because "casting the Petitioners out of this court without a stay—in the extraordinary context of this case—would ignore the reality that the process for judicial review provided for in the REAL ID Act would not be adequate or effective in protecting their habeas rights." Order on Juris., ECF #64, Pg.ID #1247; Prelim. Inj. Op., ECF #87, Pg.ID #2352.[1]

The law has not changed since the Court reached these conclusions in July.

---

[1] For purposes of issue preservation, Petitioners incorporate by reference their jurisdictional arguments from prior briefing, while acknowledging that this Court has rejected some of those arguments. *See* ECF ##11, 25, 30, 36, 66, 69, 77, 84.

This Court has already rejected Respondents' arguments, and Respondents have failed to explain why it should not do so again. As the Sixth Circuit has explained:

> While the doctrine of the law of the case does not preclude the reconsideration of prejudgment orders, it does cast an air of caution on such an exercise by a judicial officer: "It would be utterly destructive ... if each successive decision resulted in the reconsideration of every previous one, and a sequence of decisions in the same case based on different views of overlapping issues of law would likely result in an internally inconsistent judgment. To avoid the horns of this dilemma, it is the practice to treat each successive decision as establishing the law of the case and depart from it only for convincing reasons."

*Gillig v. Advanced Cardiovascular Sys., Inc.,* 67 F.3d 586, 589 (6th Cir. 1995), citing James W. Moore et al., *Moore's Federal Practice* ¶ 0.404 (2d ed. 1994). Respondents have not offered "convincing reasons" for the Court to reverse itself; they have merely restated the same arguments that the Court already thoroughly considered and correctly rejected.

Not only has this Court already decided the jurisdictional question, but because Respondents have appealed that decision, the Sixth Circuit will soon decide precisely the same issue. This counsel in favor of denying the Motion to Dismiss. The Court of Appeals' decision will be dispositive. *Cf.* Fed. R. Civ. P. 62.1 (allowing district courts to deny or defer consideration of a motion where the court lacks authority to grant the motion because of a pending appeal).

This Court's decision on jurisdiction is based on the unique facts in this case. With only the barest assertions, Respondents question those facts, claim that

the Motion to Reopen process is sufficient, and assert that the Court erred in twice previously finding jurisdiction here. *See* Mot. to Dismiss, ECF #135, Pg.ID #3287, 3292. Respondents rely upon the same law that the Court already considered and found distinguishable or otherwise unpersuasive.[2]

Simply put, as the Court has already found, Petitioners have alleged and established sufficient facts that demonstrate that the REAL ID Act is unconstitutional as applied.[3] Accordingly, the Act does not divest this Court of jurisdiction. To the contrary, the Court has jurisdiction to ensure that "the Writ of Habeas Corpus…not be suspended." U.S. Const. art. I, § 9, cl. 2. It should continue to exercise that jurisdiction. If the Court of Appeals disagrees, it can say so when it decides the appeal.

## C.    The Court Has Jurisdiction Over Petitioners' Claims Related to Detention and Transfer

This Court's jurisdiction over the detention claims (Counts IV, V, and VI) is

---

[2] While Respondents suggest that Petitioners could have filed their motions to reopen earlier, this Court has found that filing motions to reopen sooner "would have been a purely academic exercise." Order on Juris., ECF #64, Pg.ID #1246. *See also* Prelim. Inj. Op., ECF #87, Pg.ID #2342. Moreover, while Respondents suggest that country conditions changed in 2014, this Court has found that while 2014 was the earliest that changed country conditions became apparent, some changes occurred only "much later." *Id.* This Court has appropriately left it for the immigration courts to resolve whether country conditions changed for each individual since the time his/her removal order was entered.

[3] To the extent Respondents' motion is based on Rule 12(b)(1), they have not alleged sufficient facts to undercut jurisdiction. Respondents rely on unsupported generalities about the workings of immigration courts under normal circumstances. Mot. to Dismiss, ECF #135, Pg.ID #3289, 3291. These are contradicted by the specific facts Petitioners have established here.

simple. Federal district courts handle habeas petitions alleging unlawful immigration detention all the time. Indeed, Respondents themselves previously argued that "'[h]abeas is at its core a remedy for unlawful executive detention,' and '[t]he typical remedy for such detention is, of course, release.'" Opp'n to Prelim. Inj., ECF #81, Pg.ID #1973 (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)).

> As the Supreme Court has explained,
>
> the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear [detention] cases. See § 2241(c)(3) (authorizing any person to claim in federal court that he or she is being held "in custody in violation of the Constitution or laws. . . of the United States").

*Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). *See also Demore v. Kim*, 538 U.S. 510, 516-17 (2003) (finding habeas jurisdiction to hear immigrant's challenge to detention under 8 U.S.C. § 1226(c)); *Ly v. Hansen*, 351 F.3d 263, 266 (6th Cir. 2003) (finding jurisdiction over immigration detention habeas claims). Respondents try to manufacture a jurisdictional bar to Petitioners' detention and transfer claims by recasting them as "indirectly" challenging removal and thus subject to the same statutory bar they assert applies to the removal claims.[4] Mot. to

---

[4] The two cases Respondents cite are entirely inapposite, addressing the availability of money damages, which Petitioners do not seek. *See Sissoko v. Rocha*, 509 F.3d 947 (9th Cir. 2007); *Foster v. Townsley*, 243 F.3d 210, 213-14 (5th Cir. 2001). More generally, the Supreme Court and the Sixth Circuit have cautioned that § 1252(g) should be applied narrowly. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 478, 482 (1999); *Mustata v. U.S. Dep't of Justice,* 179 F.3d 1017, 1020-21 (6th Cir. 1999); *Zundal v. Gonzales*, 230 Fed. App'x 468, 473-74

Dismiss, ECF #135, Pg.ID #3285. By that logic, no immigrant could ever challenge detention, since immigration detention is *always* related to the government's efforts to remove the noncitizen. Unsurprisingly, courts routinely hold that federal district courts have jurisdiction over detention claims, regardless of whether they are coupled with removal claims.[5]

Respondents also contend that this Court is without jurisdiction to address or consider transfer decisions. *See* Mot. to Dismiss, ECF #135, Pg.ID #3298-3300. However, federal courts across the country have repeatedly recognized district court authority to review transfer decisions alleged to infringe the constitutional rights of immigrant detainees, jurisdiction that 8 U.S.C. § 1252(a)(2)(B)(ii)'s bar on review of simple discretionary actions does not remove. In *Comm. of Cent. American Refugees v. INS*, 795 F.2d 1434 (9th Cir. 1986), *amended by* 807 F.2d 769, 770 (9th Cir. 1986), for example, the Ninth Circuit exercised subject matter jurisdiction in a case challenging the transfers of immigrant detainees (though

---

(6th Cir. 2007). *See also Diaz-Bernal v. Myers*, 758 F.Supp.2d 106, 124-25 (D. Conn. 2010) (individually analyzing whether to allow various claims to proceed).

[5] *See, e.g., Kellici v. Gonzales*, 472 F.3d 416, 419-20 (6th Cir. 2006) (district court had jurisdiction over habeas petition challenging immigrant's arrest and detention); *Head v. Crutchfield*, No. 2:06-cv-12231, 2006 WL 1851268, at *1 (E.D. Mich. June 30, 2006) (finding jurisdiction "to entertain a challenge by petitioner to his detention pending removal," although then dismissing the petition as moot) (Ex. A)

ruling against the detainees on the merits).[6] In fact, even *Avramenkov v. INS*, 99 F. Supp. 2d 210 (D. Conn. 2000), on which Respondents rely, acknowledges that numerous cases have recognized federal courts' power to review transfer decisions where detainees demonstrate "actual interference with an existing attorney-client relationship or [make] a showing that an alien's constitutional rights have been interfered with." *See id.* at 214.

Here, the government's transfers have interfered with existing attorney-client relationships and the access to and retention of counsel. *See, e.g.*, 2d Am. Pet., ¶¶ 72-77, 114(d), 124-126, ECF #118, Pg.ID ##3004-06, 3017-18, 3022; Prelim. Inj. Op., ECF #87, Pg.ID ##2324, 2331-34, 2340. Transfers have hindered the filing of motions to reopen, limited access to the administrative process that is necessary for due process, and substantially interfered with the right to habeas corpus. *See* 2d Am. Pet., ¶¶ 75-77, 124-126, ECF #118, Pg.ID ##3005-06, 3022; Prelim. Inj. Op., ECF #87, Pg.ID #2324, 2331-34, 2340. Each of these effects independently establishes a basis for jurisdiction over the transfer claim.

## II.  PETITIONERS HAVE STATED PLAUSIBLE CLAIMS FOR RELIEF

### A.  Petitioners Have Stated Plausible Claims Challenging Removal

This Court has already preliminarily assessed the merits of Petitioners'

---

[6] *See also, e.g.*, *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990) (holding that the district court did not abuse its discretion in limiting INS's ability to transfer detainees away from their attorneys); *Alvarez v. McNary,* 29 F.3d 630, *1 (9th Cir. July 11, 1994) (Table Op.) (finding jurisdiction over transfer case).

removal claims. Respondents' current challenge again essentially seeks reconsid-eration of the July 24 findings, without justification. (Moreover, in the course of deciding the pending appeal, the Sixth Circuit may shed light on the merits.)

> **1.    Petitioners State a Plausible Claim That Their Removal Without an Opportunity to Access the Immigration Courts Violates Due Process (Count II)**

This Court has already found the due process removal claim not merely plausible but likely to succeed on the merits because Petitioners have presented "compelling evidence . . . regarding the probable deprivation of a meaningful opp-ortunity to present their INA and CAT/FARRA claims to the immigration courts and courts of appeals." Prelim. Inj. Op., ECF #87, Pg.ID #2351-52. *See Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (preliminary injunction showing is "much more stringent" than that needed to survive a motion for summary judgment).

This decision was entirely correct. "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citation omitted). Due process, of course, requires an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). And "[a] violation of due process occurs when [a removal] proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th

Cir. 2005) (internal quotation marks and citation omitted). That would be the outcome here if the government can deny Petitioners the opportunity to be heard at a meaningful time—now—about current country conditions.

Respondents in part rely on materials outside of the pleadings. They point to various declarations to urge that Petitioners "could have filed motions to reopen at any time" concerning changed conditions and that "many . . . did just that, some as early as 2011 and 2012." Mot. to Dismiss, ECF #135, Pg.ID #3295, citing ECF #81-10–81-17, ECF #17-2–17-8. But these declarations have no bearing on Rule 12(b)(6) motion, and should be excluded under Rule 12(d). Besides, as the Court has already held, these "exceptions prove the rule: hundreds of others reasonably assumed that such an undertaking was not required until they were informed of Iraq's change in policy." Prelim. Inj. Op., ECF #87, Pg.ID #2350. "Now that Petitioners are on notice that filing motions is necessary, due process concerns would require that they be given a fair opportunity to present their cases." *Id.*

Respondents also miss the mark when they claim that Petitioners have failed to allege prejudice from the due process violation at issue, *see* Mot. to Dismiss, ECF #135, Pg.ID #3296. This is not a case where prejudice requires proof that the alleged due process violation caused a "substantially different outcome," *see Graham v. Mukasey*, 519 F.3d 546, 550 (6th Cir. 2008). As the Court has already recognized, the prejudice here "is the denial or impeded access itself, rather than

the loss of a particular outcome." Prelim. Inj. Op., ECF #87, Pg.ID #2351.

More important, even if Petitioners were required to show a more specified loss of a particular outcome, the very facts on which Respondents rely make that showing. As Respondents point out, many Petitioners who have moved to reopen their cases have been successful, and no putative class member has been removed while they pursue adjudication of those motions.[7] Mot. to Dismiss, ECF #135, Pg.ID #3296. But Petitioners achieved these results only because of this Court's stays of removal. *See generally* ECF ##32, 43, 61, 87. Absent those remedies, the prejudice would have been severe: many Petitioners would have been removed to a place where they would face risk of persecution, torture, death, and a likely total inability to litigate their claims. *See, e.g.*, 2d Am. Pet. ¶ 1, ECF #118, Pg.ID #2957.

In sum, as the Court has already recognized, Petitioners have more-than-plausibly stated a due process claim.

### 2. Petitioners State a Plausible Claim That Their Removal Without an Opportunity to Access the Immigration Courts Is Barred by Statute (Count I)

The Sixth Circuit, in reviewing the removal issues, can consider Petitioners' statutory argument that the INA and CAT/FARRA forbid their removal without an opportunity to seek reopening of their immigration cases; Petitioners believe it is

---

[7] ICE removed eight individuals to Iraq in April, and has so far resisted disclosing information about them. Resp's Obj. to Pets' 1st Interrogs., ECF #129, Pg.ID #3112. It is possible they were removed notwithstanding pending motions to reopen.

more appropriate to litigate the issue there. But to state the issue briefly for preservation purposes: Respondents have conceded that the INA and CAT/FARRA forbid removal leading to persecution or torture. *See* 8 U.S.C. § 1231(b)(3); FARRA, Pub. L. No. 105-277, 112 Stat. 2681, 2681-82 (1998), codified at 8 U.S.C. § 1231 note; July 13, 2017 Hr'g Tr. at 24, Ex. B. This statutory bar implies that the government has a mandatory duty to implement a reasonable process to ensure that such removals do not take place.[8]

### 3.   Petitioners State a Plausible Claim With Respect To Their Immigration Records (Count VII)

Finally, the Court should also reject Respondents' attack on Petitioners' claim related to immigration records, which asks the Court to clarify its July 24 Order so that Petitioners who filed their motions to reopen before receipt of their A-files and Records of Proceedings ("ROPs") have time to submit and receive rulings on motions to supplement or reconsider their previously filed motions. Respondents contend the Court lacks authority to grant such relief. Mot. to Dismiss, ECF #135, Pg.ID #3315 (citing 8 U.S.C. § 1252(b)(9)). However, the Court has already addressed these issues in granting Petitioners' timely access to

---

[8] Respondents also assert that Petitioners lack standing because the Court cannot redress Petitioners' grievances. Mot. to Dismiss, ECF #135, Pg.ID #3293. But Petitioners do not seek substantive CAT relief from this Court. Rather, they seek a realistic opportunity to pursue relief in the immigration courts before being removed to Iraq. 2d Am. Pet., ¶¶ 117-19, ECF #118, Pg.ID ##3020-21. Respondents' redressability argument fails because—as is entirely evident from the existing stay of removal—this Court can grant the relief Petitioners actually seek.

their records. Again, the issues are on appeal. And again, Respondents offer no reason for the Court to reconsider its approach.

Respondents' only other argument is to dispute the facts; they claim that because some individuals have successfully brought motions to reopen, Petitioners do not need access to their files. *See* Mot. to Dismiss, ECF #135, Pg.ID #3314. But this argument simply ignores the well-pleaded allegations of the Petition, which expressly asserts that these files contain "information for effective presentation of [Petitioners'] cases and [they] could end up removed to a country where they face persecution, torture and death if their motions to reopen or the underlying requested substantive relief are denied before they receive their A-Files and Records of Proceedings." 2d Am. Pet. ECF 118, ¶ 85, ECF #118, Pg.ID #3009. The success of some motions to reopen brought without those files does not establish that the files are unnecessary. In addition, Petitioners need these records to receive fair process in their reopened cases on the merits. *See id.*, ¶ 146, Pg.ID #3027. At the pleading stage, Petitioners' allegations are more than sufficient.

### B.    Petitioners State Plausible Claims Challenging Detention

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The government may punish people for criminal offenses by taking away their liberty, but only pursuant to ex-

tensive and well-established procedural protections. The government's ability to detain for civil purposes is even more constrained, because, while the government may have valid non-punitive goals, the Supreme Court has "always been careful not to minimize the importance and fundamental nature of the individual's right to liberty." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (quotation and citation omitted). Accordingly, civil detention is permissible only "in certain special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraints." *Zadvydas*, 533 U.S. at 690 (citations and quotation marks omitted).

The detention claims all allege that the government does not have a "sufficiently strong special justification" to outweigh Petitioners' fundamental liberty interest in not being incarcerated. *Id*. For civil immigration detention to meet that demanding standard two basic criteria must be met. First, because the purpose of immigration detention is to effect removal, detention *is not permitted at all* unless removal is reasonably foreseeable. *Id.* at 699-700. If the individual is not likely to be removed, there is insufficient justification to justify depriving the individual of his/her liberty. Second, even if removal *is* foreseeable, immigration detention can be used only if it necessary to achieve one of two civil, regulatory goals: 1) ensuring the immigrant's appearance at future immigration proceedings, and 2) preventing danger to the community. *Id.* at 690.

Due process also requires adequate procedures to ensure that the purposes of detention are actually being served. *See United States v. Salerno*, 481 U.S. 739, 751 (1987) (pretrial detention permissible because government must prove arrestee's dangerousness by clear and convincing evidence); *Kansas v. Hendricks*, 521 U.S. 346, 368-69 (1997) (strict procedural safeguards made civil commitment permissible); *Rodriguez v. Robbins*, 804 F.3d 1060, 1074–79 (9th Cir. 2015) (surveying case law), *cert. granted sub. nom., Jennings v. Rodriguez*, 136 S. Ct. 2489 (2016). In the immigration context, detention without individualized consideration of flight risk or dangerousness has been found justified, but only for a brief period of time and for individuals who Congress justifiably sees as posing a particular danger or flight risk. *Demore*, 538 U.S. at 513. Prolonged/indefinite detention has not. *Zadvydas*, 533 U.S. at 701; *Ly*, 351 F.3d at 267.

1. **Petitioners State a Plausible Claim That Their Detention is Unlawful Because Their Removal to Iraq is Not Reasonably Foreseeable (Count IV)**

Immigration detention is authorized only where there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Petitioners' detention fails under this standard for two reasons. First, it remains unclear whether Iraq will actually allow any particular individual's repatriation—whether by issuing travel documents or making other arrangements to accept removal—and if so, how long that process will take. Second, for most

18

Petitioners it will take additional months or even years, for their immigration cases to be finally adjudicated, during which time the government may not remove them.

As an initial matter, Respondents are wrong to suggest that Petitioners' *Zadvydas* claim is premature. Mot. to Dismiss, ECF #135, Pg.ID #3303. *Zadvydas* set its six-month mark merely as a "*presumptively* reasonable period of detention"—a prudential "guide [for] lower court determinations." *Zadvydas*, 533 U.S. at 701 (emphasis added). Its core holding is that detention is authorized only when removal is reasonably foreseeable. Thus, if—as here—it is clear even before six months that removal is not reasonably foreseeable, detention is not authorized. *See*, *e.g.*, *Cesar v. Achim*, 542 F. Supp. 2d 897, 904–05 (E.D. Wis. 2008) (detainee can rebut six-month reasonableness presumption of *Zadvydas*). *See also* 8 C.F.R. § 241.13(b)(1) (authorizing release after only 90 days where removal not reasonably foreseeable).

Moreover, unlike in *Zadvydas*, where individuals were transferred directly from pre-order to post-final-order detention, Petitioners were released on orders of supervision because they could not be removed, and have now been redetained. This situation rebuts the presumption of reasonableness. To allow the government to detain people for a "presumptively valid" six-month period after previously releasing them would allow for indefinite detention on an installment plan, where individuals are detained for six months, released, and then re-detained for another

19

six-month period. Nothing in *Zadvydas* permits, much less requires, that result.

Indeed, ICE itself recognizes that a higher standard of justification is necessary when detention succeeds a prior release; ICE's internal guidance requires *imminent* removal in these circumstances:

> Revocation of Release Due to Changed Circumstances. Upon the determination that a released alien can be removed, the alien's release may be revoked and the alien may be returned to custody. . . . If the circumstances under which an alien was taken back into custody no longer exist and his/her removal is no longer *imminent*, the alien is to be released.

ICE Field Office Manual, U.S. Dep't of Homeland Sec'y 104 (Rev. March 27, 2006) (emphasis added).[9]

Petitioners have plausibly alleged "good reason to believe" their removal is not reasonably foreseeable, meeting their burden under *Zadvydas*. *See* 2d Am. Pet., ¶¶ 51-62; 86-104, ECF #118, Pg.ID ##2993-3000; 3009-14; *Zadvydas*, 533 U.S. at 701. In the past, ICE itself determined that repatriation was not foreseeable, when it decided to release Petitioners under orders of supervision. Even though ICE's regulations governing revocation of release require individualized determinations that removal has become foreseeable—thereby recognizing that the *Zadvydas* burden shifts to the government where past non-repatriability is clear—

---

[9] *See* www.ice.gov/doclib/foia/dro_policy_memos/09684drofieldpolicymanual.pdf.

Respondents have failed to demonstrate repatriatability for any individual.[10] 8 C.F.R. § 241.1(i). Even if the burden were still with Petitioners, they have plausibly alleged that it is uncertain for any given class member whether Iraq has reversed its prior refusal to take them, and if so by when removal could be accomplished given the logistical hurdles to repatriation. Moreover, Petitioners' have plausibly alleged that their immigration proceedings will take months or years.

To the extent Respondents dispute these facts, that dispute is not properly before the Court on this motion to dismiss. Moreover, Respondents' general representations that Iraq may be willing to accept Petitioners' repatriation does not meet the government's burden under *Zadvydas*. Mot. to Dismiss, ECF #135, Pg.ID ##3305-06. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 415 (6th Cir. 2003) (finding "no significant likelihood of removal in the reasonably foreseeable future" where "government presented evidence of our continuing negotiations with Cuba over the return of Cuban nationals excluded from the United States [but petitioners were not] currently on a list of persons to be returned").

Respondents contend that even though Petitioners' immigration proceedings will take months or even years, that is irrelevant to their due process rights, be-

---

[10] The regulations also permit revocation of release based on a violation of release conditions—but it would render *Zadvydas* a dead letter if ICE could revoke release on the basis that a noncitizen failed to obtain unobtainable travel documents, as it has done for so many Petitioners. 2d Am. Pet., ¶¶ 92-94, ECF #118, Pg.ID ##3011-12.

cause that time is attributable to Petitioners' litigation choices. Mot. to Dismiss, ECF #135, Pg.ID ##3303-04. But as the Sixth Circuit held in *Ly*, absent dilatory conduct, individuals fighting removal should not be subjected detention without a definite end date "merely because [they] seek[] to explore avenues of relief that the law makes available to [them]." 351 F.3d at 272. They are "not responsible for the amount of time that such determinations may take." *Id.* Moreover, government delay—particularly the failure to promptly provide the necessary files—has contributed directly to extending detention for many Petitioners. *See id.* ("The mere fact that an alien has sought relief from deportation does not authorize the INS to drag its heels indefinitely in making a decision.").[11]

With respect to the Final Order Subclass, Respondents make the same argument but with a purported (though inapposite) statutory rationale. They assert Petitioners may be detained without limit under 8 U.S.C. § 1231(a)(1)(C) because in seeking a stay from this Court, they have "conspire[d] or act[ed] to prevent the[ir] removal" and therefore the 90-day removal period can "be extended beyond a period of 90 days." 8 U.S.C. § 1231(a)(1)(C). Mot. to Dismiss, ECF #135, Pg.ID

---

[11] Two circuits have held that the pendency of challenges to removal orders does not mean that removal is not reasonable foreseeable under *Zadvydas*. *See Prieto-Romero*, 534 F.3d 1053, 1062 (9th Cir. 2008); *Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004) (noting, however, that if there are delays in judicial review of a final order, that may be grounds for reconsideration). This Court is not bound by those decisions, especially to the extent that they are contrary to the Sixth Circuit's decision in *Ly*.

##3303-04. The government essentially seeks to punish Petitioners' for having the temerity to seek this Court's assistance.[12] But the removal period is not tolled when individuals seek to protect their rights through lawful measures.[13] The § 1231(a)(1)(C) exception applies only where the individual employs "intentionally obstructionist, bad faith tactics that are designed to frustrate the government's attempts to effectuate a removal order, not to an alien's good faith attempt to make use of legally available judicial review and remedies." *Diouf v. Mukasey*, 542 F.3d 1222, 1232 (9th Cir. 2008).[14] *See also Prieto-Romero v. Clark*, 534 F.3d

---

[12] This argument is especially inequitable here: the government asserts that it has no affirmative duty to apply the protections of CAT/FARRA and that the non-citizen must raise the prospect of torture or death, but then argues that an individual who does so is conspiring to prevent removal.

[13] In any event, this Court's stay was issued after Petitioners' 90-day removal period ended. The text of § 1231(a)(1) establishes that the 90-day removal period begins when an order of removal becomes final—not on redetention. Section 1231(a)(1)(B) defines the 90-day "removal period" as beginning on the "date the order of removal becomes administratively final" (or in certain circumstances as beginning after judicial review of that order or after release from criminal confinement). An order of removal becomes "administratively final" upon "dismissal of an appeal by the Board of Immigration Appeals" or failure to file an appeal of ruling by the Immigration Judge. 8 C.F.R. § 1241.1(a). Therefore, even if Respondents were correct that good faith attempts to access relief from the courts tolls the removal period, their argument still fails. Petitioners' orders of removal became final more than 90 days before this Court issued relief.

[14] The cases Respondents cite stand for the same principle. *See Hydara v. Gonzales*, 2007 WL 2409664 (D. Minn. 2007), *aff'd*, 324 F. App'x 534 (8th Cir. 2009) (engaging in "manipulative and dishonest behavior" including failure to turn over fingerprints and identity documents) (Ex. C); *Kanu v. Sheriff Butler Cty.*, No. 1:16-CV-756, 2016 WL 6601565, at *6, *report and recommendation adopted*, 2017 WL 25537 (S.D. Ohio Jan. 3, 2017) (repeatedly refusing to sign requests for

1053, 1060 n.6, 1060-61 (9th Cir. 2008).

> **2. Petitioners State a Plausible Claim That Prolonged Detention Without an Individualized Determination of Hearing Is Unlawful (Count V)**

Immigration detention implicates a fundamental liberty interest—the right to be free from physical confinement. *Zadvydas*, 533 U.S. at 690. Due process requires that the deprivation of liberty be both reasonably related to its purpose and accompanied by adequate procedures to ensure that these purposes are actually being served. *Id.* at 690-91. Moreover, where detention is prolonged, the deprivation of liberty is more substantial, and accordingly greater procedural safeguards are required. *Id.* at 701 (explaining that the due process analysis changes "as the period of . . . confinement grows"). Given the significant deprivation of liberty, the risk of erroneous deprivation if the process is non-individuated or less-than-impartial, and the lack of significant burden or cost to the government in providing a meaningful hearing, due process requires that prolonged immigration detention be justified by a hearing before an impartial adjudicator. *See Mathews v. Eldridge,* 424 U.S. 319 (1976); *Ly*, 351 F.3d at 268 (holding reasonableness of prolonged detention to be subject to review by habeas court); *Rodriguezs*, 804 F.3d 1060, 1090 (9th Cir.

---

travel documents) (Ex. D); *Lema v. I.N.S.,* 341 F.3d 853, 856 (9th Cir. 2003) (where non-citizen "refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future").

2015) (requiring bond hearings for pre-final-order detainees "to ensure that after a lengthy period of detention, the government continues to have a legitimate interest in the further deprivation of an individual's liberty"); *Diouf*, 634 F.3d at 1084-86 (requiring bond hearings for post-final-order detainees). Because the purposes of immigration detention are to protect against danger and flight risk, *Zadvydas*, 533 U.S. at 683, prolonged detention is unlawful without a hearing on these factors.

Moreover, considering the statutes under which Petitioners' detention is purportedly authorized, nothing in either the post-final-order statute or the pre-final-order statute or their legislative history indicates that Congress intended to authorize the prolonged detention—for months, even years—of individuals who were ordered removed years or decades ago, who pose no danger or flight risk, and whose removal orders are stayed while they pursue bona fide motions to reopen.[15] Rather, the post-final-order statute, 8 U.S.C. § 1231, was intended to effectuate the prompt removal of individuals ordered removed. And the mandatory detention provisions of the pre-final-order statute, § 1226(c), were intended to prevent release after criminal incarceration of deportable non-citizens who might flee or harm the public if released during a brief period of pre-order detention.

---

[15] *See, e.g., Diouf*, 634 F.3d at 1091-92 (stating that "prolonged detention under § 1231(a)(6), without adequate procedural protections, would raise 'serious constitutional concerns'" and construing statute to require bond hearings whenever detention exceeds or will inevitably exceed six months).

In short both the Due Process Clause and the immigration statutes construed in light of due process concerns require that Petitioners receive individualized determinations by an impartial adjudicator that their continued detention is justified by danger or flight risk. The Second Amended Petition names two subclasses—the Detained Final Order Subclass and the Mandatory Detention Subclass. Respondents are currently subjecting named Petitioners and class members in both subclasses to prolonged detention without *any* individualized determination of danger or flight risk, and certainly without a hearing before an impartial adjudicator. 2d Am. Pet., ¶¶ 22-36, 99, 134-38, ECF #118, Pg.ID ##2964-85, 3013, 3024-25; Am. Mot. for Class Cert., ¶¶ 6-7, ECF #139, Pg.ID ##3737-38. (Respondents discuss this Prolonged Detention claim only with respect to the Final Order subclass.)

For named Petitioners in both situations, and for both subclasses, the Second Amended Petition states a valid claim. The claim is quite separate from Petitioners' *Zadvydas* claim, addressed in Part II.B.1, above. Petitioners and Respondents agree that under *Zadvydas*, Petitioners must be released if their removal is unlikely in the reasonably foreseeable future (although they disagree on how that timeframe should be measured). But while both *Zadvydas* and the key Sixth Circuit case, *Ly v. Hansen,* addressed the due process concerns posed by indefinite detention of individuals who could not be removed, neither case held nor even hinted that this is

the *only* detention issue that raises due process concerns. In fact, as explained

below, their analysis requires the opposite conclusion: even if future removal *is*

foreseeable, that is not the end of the constitutional inquiry. In the absence of an

individualized hearing on danger and flight risk, prolonged detention is—

independently—unlawful.[16]

Respondents' argument—that they may detain Petitioners for many more

months or years without any individualized determination of flight risk or danger

so long as their detention will end someday—rests on a misreading of the case law

as concerned only with permanent detention.[17] Neither *Zadvydas* nor *Ly* can

reasonably be understood in this way. For example, in *Ly*, the Sixth Circuit used

the language "indefinite detention" to describe not just permanent but also pro-

longed detention. *Ly* referred to detention during removal proceedings—which has

---

[16] As is more fully briefed in Petitioners' Motion for Preliminary Injunction in Detention Issues, ECF #138, Pg.ID ##3385-86, *Demore v. Kim*, 538 U.S. 510 (2003) is not to the contrary. There, the Supreme Court carved out a limited exception to the requirement of an individualized hearing, upholding only a "brief" period of mandatory detention under 8 U.S.C. § 1226(c)—between 45 days and 5 months.

[17] The government seeks to evade the constitutional bar on prolonged detention without an individualized determination of flight risk and danger through a two-step argument: 1) Petitioners' detention is not unconstitutionally indefinite because their removal is reasonably foreseeable, since it could occur someday, and 2) because individualized determinations could not cure the constitutional problem with indefinite detention, they are never required. Taken together, these arguments would authorize prolonged detention that is unmoored from the justifications for detention, because it is based on neither danger nor flight risk.

an end point (the entry of a removal order)—as nonetheless "indefinite" if it exceeds a reasonable period. 351 F.3d at 270. For both pre- and post-final order Petitioners here, their current detention is indefinite in just this way.

*Post-Final-Order Detention.* To start with post-final order detainees (the Detained Final Order subclass), *Zadvydas* itself expressly stated that even where removal *is* reasonably foreseeable, habeas courts should ensure that the legitimate purposes of detention are otherwise being met: "if removal is reasonably fore-seeable, the habeas court should consider the risk of the alien's committing further crimes as a factor *potentially* justifying confinement within that reasonable removal period." 533 U.S. at 699 (emphasis added).[18]

DHS's regulations correspondingly provide for release from post-order detention in two analytically distinct circumstances: if removal is not reasonably foreseeable *or* if an individual poses neither a danger or flight risk. 8 C.F.R. § 241.13, the regulation implementing *Zadvydas,* provides a procedure by which a

_____

[18] Dissenting in *Zadvydas,* Justice Kennedy likewise recognized that post-final-order detention must be justified by a meaningful determination of danger of flight risk, since detention unnecessary for those purposes would be "arbitrary and capricious." 533 U.S. at 721. Justice Kennedy's view was that the existing POCR regulations facially satisfied the requirement for "adequate procedures . . . allowing persons once subject to detention to show that . . . they no longer present special risks or danger if put at large," and thus that their adequacy "could be adjudicated in a later case." *Id. See also Ngo v. INS,* 192 F.3d 390, 399 (3d Cir. 1999) (warning of due process problems if parole "reviews [were] comprehensive in theory but perfunctory in fact"). Petitioners' challenge here is as-applied, not facial.

detainee can request release on supervision based on a determination that their removal is not reasonably foreseeable. At the same time, 8 C.F.R. § 241.4, the regulation pre-dating *Zadvydas,* provides for automatic custody reviews and release based on a showing of lack of danger or flight risk. Notably, the *Zadvydas* regulation, 8 C.F.R. § 241.13, did not displace § 241.4, as would be required by Respondents' argument that the only limit on detention is the foreseeability of removal. Rather, the regulations read together mean that the detainee must be released under § 241.13 if removal is not reasonably foreseeable, *and* that even if removal is foreseeable, the government must consider the detainee for release under the custody review procedures provided at 8 C.F.R. § 241.4. Release of individuals who pose no danger or flight risk is appropriate "without regard" to whether removal is "reasonably foreseeable." 8 C.F.R. § 241.13 (b)(1).

Yet the only process the government has provided to implement the due process/statutory requirement that is reflected in these regulations—and not all Detained Final Order subclass members have received even this—is purely administrative 90-day POCRs, which would be woefully inadequate to satisfy due process even if the government had complied with the minimal regulatory require-ments, which it has not. These custody reviews do not provide for an impartial adjudicator; they place the burden on the detainee to establish lack of danger and flight risk; and they do not even require that individuals who meet this burden be

released, merely authorizing their release in the discretion of the agency. *See* 8

C.F.R. § 241.4; *Zadvydas*, 533 U.S. at 692 (citing inadequacies of administrative

review process as one factor warranting Court's limiting construction of the

statute). Respondents charge Petitioners with attempting to bootstrap a claim for

release out of a challenge to the agency's failure to follow its regulations. Mot. to

Dismiss, ECF #135, Pg.ID #3309. But Petitioners' actual claim is that the POCR

process, as pled in the Petition's discussion of boilerplate denial letters that reflect

no individualized consideration at all, fails to satisfy the statutory/due process

requirement of individualized consideration of danger and flight risk.[19] 2d Am.

Pet., ¶¶ 16, 22-36, 87-91, ECF #118, Pg.ID ##2962, 2964-85, 3009-11.

What is required by the statute and the Due Process Clause is not rote

recitals but actual individualized consideration of flight risk and danger by an

impartial decisionmaker. It is for that reason that the Ninth Circuit has explicitly

held that prolonged post-final-order detention pending conclusion of removal

proceedings requires a hearing on danger and flight risk before an impartial

adjudicator. *Diouf*, 634 F.3d at 1086 (construing § 1231(a)(6) "as requiring an

individualized bond hearing, before an immigration judge, for aliens facing

_____

[19] Indeed, the allegations of wholesale denial of release stand in stark contrast to
the statistics Justice Kennedy cited to support his view that the POCR regulations
were facially adequate to satisfy due process. *Zadvydas*, 533 U.S. at 723 (Kennedy
J. dissenting) (citing statistics over 50% POCR release rate, and concluding "the
procedural protection here is real, not illusory").

prolonged detention under that provision").

*Pre-order Detention.* With respect to pre-order detainees, the analysis reaches the same place, although the statutory basis of detention is different. The Sixth Circuit held in *Ly* that 8 U.S.C. § 1226(c) does not authorize indefinite detention—and for this reason held, for detainees whose confinement is under that statute, that there must be a "reasonable time limitation for pre-removal detention," that "an unreasonable delay in concluding removal proceedings" will warrant release, and that "federal courts [must] undertake to supervise the reasonability of detention." *Id.* at 271-72.[20]

Under *Ly*, pre-final-order Petitioners held indefinitely without any individualized assessment—the Mandatory Detention subclass, held under the purported authority of § 1226(c)—have plausibly alleged a violation of the Due Process Clause, or of the statute read to conform with the Due Process Clause.

### 3.    Petitioners State a Plausible Claim That Section 1226(c) Does Not Authorize Their Mandatory Detention (Count VI)

For two reasons 8 U.S.C. § 1226(c) does not authorize detention of the Mandatory Detention Subclass, who have won their motions to reopen and are now

---

[20] *Ly* accords with every Court of Appeals to consider the question; each similarly construed § 1226(c) to authorize mandatory detention without individualized hearings only for a reasonable period. *See Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016); *Sopo v. Attorney General*, 825 F.3d 1199, 1212-13 (11th Cir. 2016); *Lora v. Shanahan*, 804 F.3d 601, 613-16 (2d Cir. 2015); *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 472-78 (3d Cir. 2015); *Rodriguez*, 804 F.3d at 1074-79 (9th Cir. 2015).

not being afforded an opportunity for a bond hearing. First, § 1226(c) authorizes mandatory detention of individuals who are detained for removal proceedings "when . . . released" from criminal custody. Petitioners' current detention under § 1226(c) comes long after their release from criminal custody. Second, the statute authorizes detention only for "the brief period necessary for their removal proceedings." *Demore*, 538 U.S. at 513. Because they are being detained during a second round of removal proceedings, after litigating and winning a motion to reopen, Petitioners' detention exceeds the "reasonable period required to conclude removability proceedings," *Ly,* 351 F.3d at 273, and their detention is outside the scope of § 1226(c) (properly construed) and instead is governed by § 1226(a). *Cf. Casas-Castrillon v. Dep't of Homeland Sec.,* 535 F.3d 942, 948 (9th Cir. 2008) (holding detention during remanded proceedings is governed by § 1226(a), not § 1226(c)).

Respondents address only the first reason; they attempt to distinguish the numerous federal court cases interpreting § 1226(c) to apply only when mandatory detention begins "when the alien is released" from criminal custody by arguing that the Court should ignore the gap in custody because Petitioners were redetained and then successfully litigated motions to reopen. *See* Mot. to Dismiss, ECF 135, PgID.# 3310-13. But this distinction makes no difference under the plain text of § 1226(c), which authorizes mandatory detention only "when the alien is released" from criminal custody. Courts have looked to this same text to conclude that the

statute "unambiguously imposes mandatory detention without bond only on those aliens taken by the [Secretary] into immigration custody 'when they are released' from criminal custody." *Preap v. Johnson*, 831 F.3d 1193, 1197 (9th Cir. 2016), *petition for cert. filed*, *Duke v. Preap*, No. 16-1363, May 11, 2017.[21] The reasoning of these cases applies with equal force to Petitioners' circumstances.

Indeed, if anything, Petitioners' particular argument that § 1226(c) cannot justify their detention without bond hearing is stronger than the arguments credited in the cases Respondents seek to distinguish. "The mandatory detention provision does not reflect a general policy in favor of detention; instead, it outlines specific, serious circumstances under which the ordinary procedures for release on bond at the discretion of the immigration judge should not apply." *Saysana v. Gillen*, 590 F.3d 7, 17 (1st Cir. 2009). Petitioners' detention is at least twice removed from the statute's core purpose, as it follows their release to the community and, then, the successful litigation of a motion to reopen. There are no "specific, serious circumstances" of concern here.

Respondents do not specifically address Petitioners' argument that § 1226(c)

---

[21] *Accord Castañeda v. Souza*, 810 F.3d 15 (1st Cir. 2015) (affirming the judgments below by an evenly divided *en banc* court); *Mudhallaa v. Bureau of Immigration & Customs Enf't*, No. 15-10972, 2015 WL 1954436 (E.D. Mich. Apr. 29, 2015) (Ex. E); *Rosciszewski v. Adducci*, 983 F. Supp. 2d 910 (E.D. Mich. 2013). *But see Olmos v. Holder*, 780 F.3d 1313 (10th Cir. 2015); *Lora*, 804 F.3d 601; *Sylvain v. Attorney Gen. of U.S.*, 714 F.3d 150 (3d Cir. 2013); *Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012).

does not apply to individuals who are placed in removal proceedings a second time after winning a motion to reopen. *See* 2d Am. Pet., ¶¶ 140-42, ECF #118, Pg.ID ##3025-26; Prelim. Inj. Mot., ECF #138, Pg.ID ##3389-90. The Ninth Circuit held that the mandatory detention statute does not apply at all to individuals whose cases are "being adjudicated before the agency for a second time"—in that case on remand from the grant of a petition for review—because they have not "received expeditious process." *Casas-Castrillon,* 535 F.3d at 948. Because they are not properly subject to § 1226(c), their detention is instead governed by § 1226(a), which provides for bond hearings before an immigration judge. *Id.* at 950. The same reasoning applies here.[22]

## C.   Petitioners State Plausible Claims Challenging Transfer (Count III)

As this litigation was starting, Petitioners' difficulties in securing represent-ation and filing motions to reopen were compounded by repeated transfers from one detention facility to another, one jurisdiction to another. *See* Prelim. Inj. Op., ECF #87, Pg.ID ##2331-32. The rate of transfers slowed after this Court granted its stay of removal, and the necessary pace of litigation in immigration court

---

[22] Although the Sixth Circuit has had no occasion to address this issue, its reasoning in *Ly* would support a similar reading of the mandatory detention statute as inapplicable to detainees whose remanded proceedings follow the grant of a motion to reopen. *See Ly,* 351 F. 3d at 269-70 ("imposing a reasonable time limitation" on detention under § 1226(c) "saves the statute from constitutional challenge, and is consistent with Congress's directions" that removal proceedings for individuals subject to the statute "were to proceed quickly").

slowed as well. Therefore, Petitioners have not sought preliminary injunctive relief on this claim. Nonetheless, the Petition certainly states a claim—supported by plausible and legally sufficient allegations—that the government cannot lawfully utilize its transfer process to a) substantially interfere with existing attorney-client relationships or with the access to and retention of counsel, b) substantially interfere with attorney-client communications, c) greatly hinder Petitioners' ability to file Motions to Reopen and utilize the administrative process, and d) make it impossible or all but impossible to file habeas petitions. *See*, *e.g.,* 2d Am. Pet., ¶¶ 72-77, 124-26, Prayer for Relief H, ECF #118, Pg.ID ##3004-06, 3022, 3029. As the Court has already found, transfers in this case "significantly impeded" the Petitioners' rights to legal assistance and "greatly hindered their ability to file motions to reopen." *See*, *e.g.*, Prelim. Inj. Op., ECF #87, Pg.ID ##2324, 2331-40.[23] *See also* supra Part I.C.

## CONCLUSION

The Court should deny Defendants/Respondent's Motion to Dismiss Second Amended Class Petition for the reasons stated above.

---

[23] Respondents lean heavily on *Marogi v. Jenifer,* 126 F. Supp. 2d 1056 (E.D. Mich. 2000), but that case is inapposite. In *Marogi*, the petitioner did not explain how a transfer would violate petitioners' rights; indeed, the government told the court it did not intend to transfer the petitioner at all.

Respectfully submitted,

Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
Bonsitu A. Kitaba (P78822)
Miriam J. Aukerman (P63165)
American Civil Liberties
 Union Fund of Michigan
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6814
msteinberg@aclumich.org

Kimberly L. Scott (P69706)
Wendolyn Wrosch Richards (P67776)
Cooperating Attorneys, ACLU Fund
 of Michigan
MILLER, CANFIELD, PADDOCK
 & STONE, PLC
101 N. Main St., 7th Floor
Ann Arbor, MI 48104
(734) 668-7696
scott@millercanfield.com

Nora Youkhana (P80067)
Nadine Yousif (P80421)
Cooperating Attorneys, ACLU Fund
 of Michigan
CODE LEGAL AID INC.
 27321 Hampden St.
Madison Heights, MI 48071
(248) 894-6197
norayoukhana@gmail.com

María Martínez Sánchez (NM Bar 126375)
AMERICAN CIVIL LIBERTIES
 UNION OF NEW MEXICO
1410 Coal Ave. SW
Albuquerque, NM 87102
msanchez@aclu-nm.org

Judy Rabinovitz (NY Bar JR-1214)
Lee Gelernt (NY Bar NY-8511)
Anand Balakrishnan* (Conn. Bar 430329)
ACLU FOUNDATION
 IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2618
jrabinovitz@aclu.org

Margo Schlanger (N.Y. Bar #2704443)
Samuel R. Bagenstos (P73971)
Cooperating Attorneys, ACLU Fund
 of Michigan
625 South State Street
Ann Arbor, Michigan 48109
734-615-2618
margo.schlanger@gmail.com

Susan E. Reed (P66950)
Michigan Immigrant Rights
 Center
3030 S. 9th St. Suite 1B
Kalamazoo, MI 49009
 (269) 492-7196, ext. 535
susanree@michiganimmigrant.org

Lara Finkbeiner (NY Bar 5197165)
Mark Doss (NY Bar 5277462)
Mark Wasef (NY Bar 4813887)
INTERNATIONAL REFUGEE
 ASSISTANCE PROJECT
Urban Justice Center
40 Rector St., 9th Floor
New York, NY 10006
(646) 602-5600
lfinkbeiner@refugeerights.org

Attorneys for All Petitioners and Plaintiffs

William W. Swor (P21215)
WILLIAM W. SWOR
 & ASSOCIATES
1120 Ford Building
615 Griswold Street
Detroit, MI 48226
wwswor@sworlaw.com

Attorney   for   Petitioner/Plaintiff
Usama Hamama

Dated: November 22, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2017, I electronically filed the attached Brief in Support of Petitioners and Plaintiffs' Response to Respondents and Defendants' Motion to Dismiss with the Clerk of the Court using ECF system which will send notification of such filing to all counsel of record.

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

/s/ Wendolyn Wrosch Richards
Attorney for Petitioners and Plaintiffs

30269221.2\066667-00598

38