# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**USAMA JAMIL HAMAMA**, et al.,

    Petitioners and Plaintiffs,

v.

**REBECCA ADDUCCI**, et al.,

    Respondents and Defendants.

Case No. 2:17-cv-11910
Hon. Mark A. Goldsmith
Mag. David R. Grand
Class Action

**PROPONENT'S REPLY BRIEF TO RESPONDENT'S RESPONSE TO PROPONENT'S MOTION PROPOSING A FRAMEWORK FOR A COMPETENCY EXAM FOR WISAM IBRAHIM**

Proponent submits this Supplemental Reply Brief in response to Respondent's Response to Proponent's Motion Proposing A Framework For A Competency Exam For Wisam Ibrahim (ECF 222).

## FACTUAL BACKGROUND

On January 23, 2018, Proponent submitted his Urgent Motion To Vacate Stipulated Order Lifting The Preliminary Injunction For Wisam Ibrahim, ("Proponent's Motion to Vacate"), ECF 207. On that same date, this Court entered an Order Temporarily Staying Enforcement of Stipulated Order Lifting the Preliminary Injunction for Wisam Ibrahim, ECF 210. On January 26, 2018, Proponent submitted his Motion and Brief Proposing a Framework for a Competency Exam for Class Member Wisam Ibrahim, ("Proponent's Brief"), ECF 214. On February 5, 2018, Respondent submitted their response, ("Respondent's Reply"), ECF 222.

Since Proponent's opening brief was submitted, Proponent has learned that Mr. Ibrahim expressed that he no longer wishes to be removed to Iraq and has in fact retained counsel to represent him.  Mr. Ibrahim has yet to receive his A-file and has not yet filed a Motion to Reopen his prior removal proceedings. Proponent has also learned that a mental evaluation by a forensic psychiatrist is being arranged for Mr. Ibrahim.

# ARGUMENT

## I.    PROPONENT HAS STANDING AS A 'NEXT FRIEND.'

The concept of "next friend" standing in federal actions, and in habeas actions specifically, as enumerated by the US Supreme Court in *Whitmore v. Arkansas* has two requirements: "First, a 'next friend' must provide an adequate explanation – such as inaccessibility, mental incompetence, or other disability– why the real party in interest cannot appear on his own behalf to prosecute the action." *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990). And "[s]econd, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate." (*Id.*) The *Whitmore* Court went on to say that 'it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest." (*Id.* at 163-64, citation omitted.) In *Rees v. Peyton*, the Supreme Court addressed 'next friend' in the context of a potentially incompetent defendant who gave his counsel conflicting demands regarding whether or not he wanted to file a petition for certiorari and the Court specifically instructed a District Court:

> "to determine Rees' mental competence in the present posture of things, that is, whether he has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises. To that end, it will be appropriate for the District Court to subject Rees to psychiatric

2

and other appropriate medical examinations and, so far as
necessary, to temporary federal hospitalization for this purpose."

*Rees v. Peyton*, 384 U.S. 312, 314 (1966).

Here, "the action" being prosecuted is not a habeas claim – but rather an assertion that the real party in interest lacked competence to have signed, while in detention and unrepresented by counsel, a waiver of a stay of removal. Certainly, we cannot expect Mr. Ibrahim himself to prosecute "the action" of requesting a mental health assessment to determine whether he is competent.  Moreover, given Mr. Ibrahim's recent change of heart, it appears that, as in *Rees*, in this case Mr. Ibrahim has been giving conflicting demands as to whether or not he wishes to have the stay of removal lifted in his case.

Proponent Saeeb Mansy clearly satisfies the second requirement of *Whitmore* – that he is truly dedicated to the best interests of and has a significant relationship with his son, Wisam Ibrahim.  Mr. Mansy had been living with and caring for Mr. Ibrahim prior to Mr. Ibrahim's arrest and detention in June of 2017, providing him with housing, food, and the general care that is given by a parent to their child.

As to the first requirement of *Whitmore* – adequate explanation 'such as inaccessibility, mental incompetence, or other disability' – Proponent is presenting to this Court the best evidence he has available. And we find ourselves

now, in the case at bar, in a very similar posture to counsel in *Rees* – namely, taking action on behalf of a potentially incompetent individual who has given conflicting indications of his intentions. An individual who, without order of the Court in which we make our claim, will be denied full and fair participation in his detention and removal proceedings in violation of 8 U.S.C. § 1229a(b)(4)(B), the INA, and 29 U.S.C. § 794(a), The Rehabilitation Act of 1973. See Proponent's Brief, ECF 214, at 12.

In Proponent's Motion to Vacate, Mr. Mansy submitted to this Court a declaration stating in pertinent part that he attempted to hire counsel but Wisam refused to meet with him; that Wisam had never previously mentioned that he wished to be removed to Iraq; that Wisam stated that 'he was told that if he doesn't go back to Iraq he would spend the rest of his life in detention;" that Wisam was previously diagnosed with paranoid schizophrenia and anxiety disorder and prescribed medications for both; that Wisam behaves irrationally due to his mental condition and believes 'that people are conspiring against him, especially his close relatives." *Declaration of Saeeb Ibrahim Mansy*, Proponent's Motion to Vacate, ECF 207, at 3-4. In the absence of an actual mental health assessment – the very remedy Proponent is seeking from this Court – the forgoing facts certainly constitute "an adequate explanation" why Mr. Ibrahim cannot appear on his own.

## II.    PROPONENT'S PROPOSED COMPETENCY FRAMEWORK IS APPROPRIATE FOR ANY DETAINEE IN DHS CUSTODY.

### A. Determination of whether Ibrahim is in removal or habeas proceedings is irrelevant to Proponent's request for a competency evaluation. He is being held by DHS pursuant to removal.

Although the discussion regarding 'next friend' standing is most clearly born out in habeas cases – the reasoning should clearly apply here where in the words of the *Whitmore* Court, "the real party in interest cannot appear on his own behalf to prosecute the action," (*Whitmore* at 163.) The action here is Proponent's Motion to Vacate, filed as an interested party or 'next friend' on behalf of a potentially incompetent adult child. Proponent filed his Motion to Vacate in order to assert Mr. Ibrahim's right to full and fair participation in his detention and removal proceedings, as guaranteed by the INA and the Rehabilitation Act of 1973. See 8 U.S.C. § 1229a(b)(4)(B), and 29 U.S.C. § 794(a).

### B. The Franco-Gonzalez framework is designed to address exactly Mr. Ibrahim's situation – in DHS detention, potentially incompetent, and unrepresented.

Respondent acknowledges that the Franco-Gonzalez framework is designed to serve a specific purpose, but mistakenly limits that purpose to proceedings before an immigration judge. (Respondent's Reply, ECF 222, at 4). The Franco-Gonzalez framework specifically addresses screening and mental health assessments *in detention*. (*Franco-Gonzalez Further Order*, Dkt #786 at 2 and 5.)

Although the Franco-Gonzalez framework also deals with competency determinations by an immigration judge, the more pertinent aspect is the requirement of initial screenings and mental health assessments for *all* detainees in ICE custody. (*Id.*) Proponent argues that it is these initial required screening and assessment steps that are lacking in ICE detention outside the *Franco-Gonzalez* jurisdiction, and precisely why Mr. Ibrahim is being denied full and fair participation in his proceedings.

## III.   WHETHER OR NOT IBRAHIM WAS COMPETENT TO WAIVE HIS RIGHTS IS THE ULTIMATE QUESTION. THERE WAS NO DETERMINATION.

### A. FRANCO WOULD PRESUME INCOMPETENCE UNLESS OR UNTIL DEEMED COMPETENT BY AN IJ, and PROVIDE SCREENING FOLLOWED BY MENTAL HEALTH ASSESSMENT.

One of the most critical aspects of the Franco-Gonzalez framework, is that "unless and until such time as the individual is determined mentally competent by an Immigration Judge, individuals identified as class members pursuant to the procedures set forth herein shall not be removed from the United States unless first afforded a Qualified Representative under the procedures set forth in the Court Permanent Injunction." (*Franco-Gonzalez Further Order*, Dkt #786, at 2-3, citations omitted.) That is to say, once the required initial screening and/or mental

health assessment by qualified medical professionals indicate that the detainee "has a mental disorder" or "a severe medical condition" or is exhibiting "active psychiatric symptoms," – the detainee is *presumed incompetent*. (*Id.* at 7).

## B. HERE, THE PARTIES HAVE ADOPTED AND THIS COURT HAS APPROVED, A PROCESS FOR OPTING OUT OF THE STAY, BUT WITHOUT ANY PROTECTIONS FOR OR MECHANISMS OF DETERMINING COMPETENCE TO FULLY AND FAIRLY PARTICIPATE IN THAT SAME PROCESS.

Proponent acknowledges that the parties proposed, and this Court adopted, a "Procedure for Determining Whether a Putative Class Member's Desire to Return to Iraq is Knowing and Voluntary." (*Order Regarding Further Proceedings*, September 25, 2017, ECF 110, at 1-2). But Proponent respectfully submits that this agreement is insufficient to protect Mr. Ibrahim's right to full and fair participation. To wit, the procedure fails to afford or require a mental health screening or assessment conducted by a mental health professional, and instead vests this responsibility in an attorney. (*Id.* at 3). This just perpetuates the denial of the right of detainees with mental disorders to full and fair participation in their proceedings. This, unfortunately, is the status quo under *Matter of M-A-M* and its BIA progeny, as well as under existing Executive Branch policies as enforced outside the Middle District of California.

Mr. Mansy asserts that the procedure as contained in the Order of September 25, 2017, (ECF 110) falls short of the protections required under the Rehabilitation Act of 1973 and the INA that his son, Mr. Ibrahim, has been denied his right to full participation in his detention and removal proceedings. Moreover, Mr. Mansy further argues that the mere fact that Mr. Ibrahim has now retained counsel does not negate the necessity of a mental competency evaluation and the establishment of safeguards to ensure that, even if represented by counsel, Mr. Ibrahim's rights are fully protected.

## CONCLUSION

Proponent asserts that the real party in interest, his son Wisam Ibrahim, is in DHS detention, heretofore unrepresented, pursuant to removal under a final order. Proponent further asserts that he meets the requirements for standing as set forth in *Whitmore v. Arkansas* and that this Court may properly adjudicate his *Urgent Motion to Vacate,* and consider the relief sought therein.

The proposed framework as outlined in *Franco-Gonzalez* would absolutely not be misplaced if applied by the Court here. The safeguards are intended to ensure the right to full and fair participation for a detainee precisely like Mr. Ibrahim. Those safeguards would also apply to each and every DHS detainee, no matter an individual's exact procedural posture. The framework would presume

incompetence unless or until a competency determination by an immigration judge. And the framework would require an intake screening of all detainees by a mental health professional, and a subsequent mental health assessment of any detainee found to have a mental disorder or condition during that initial screening.

Of course proponent has not yet definitively shown that Mr. Ibrahim lacks capacity – there has been no screening or assessment to determine Mr. Ibrahim's capacity. Such an evaluation is precisely what proponent is asking for. The *Franco-Gonzalez* framework provides one way to achieve this.

The Respondent, on the other hand, is asking the court to ignore the evidence that Mr. Ibrahim suffers from paranoid schizophrenia, and also ignore a perfectly appropriate existing framework of safeguards to address this exact situation. Respondent would instead ask this Court to allow Mr. Ibrahim, who is potentially not competent to represent himself, to be deported based on a waiver he may not have been competent to sign.

Proponent believes that the result of such a mental health assessment will be a determination that Mr. Ibrahim was not competent to waive his Stay of Removal, and is asking this Honorable Court to protect Mr. Ibrahim's right to full and fair participation in his detention and removal proceedings by requiring a mental health examination to determine competency.

Dated: February 8, 2018

RESPECTFULLY SUBMITTED,

/s/  Glenn Eric Sproull            /s/  Nour G. Chammas

Glenn Eric Sproull                  Nour G. Chammas*
(IL Bar 6276310)                   (CA Bar 244214)
Attorney At Law                    Attorney At Law
6650 Joy Road                       6 Parklane Blvd., Suite 104
Dexter, MI 48130                    Dearborn, MI 48126
(312) 919-9335                      (313) 752-1064
esproull@gmail.com                 nour@chammasjurado.com

                                   *Application for Admission
                                   forthcoming.

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2018, I electronically filed the foregoing papers

with the Clerk of the Court using the ECF system which will send notification of

such filing to all ECF filers of record.


/s/  Glenn Eric Sproull
Glenn Eric Sproull
(IL Bar 6276310)
Attorney At Law
6650 Joy Road
Dexter, MI 48130
(312) 919-9335
esproull@gmail.com