**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**USAMA JAMIL HAMAMA**, et al.,

Petitioners and Plaintiffs,

v.

**REBECCA ADDUCCI**, et al.,

Respondents and Defendants.

Case No. 2:17-cv-11910
Hon. Mark A. Goldsmith
Mag. David R. Grand
Class Action

**PETITIONERS' MOTION FOR RELIEF ON ISSUES RELATED TO IMPLEMENTATION OF DETENTION ORDERS**

Local Rule 7.1(a)(1) requires Petitioners/Plaintiffs (hereinafter Petitioners) to ascertain whether this motion is opposed. Petitioners' counsel Margo Schlanger communicated with William Silvis, counsel for Respondents/Defendants (hereinafter Respondents), via email on February 8, 2018, explaining the nature of the relief sought and seeking concurrence. Mr. Silvis stated that Respondents did not concur, in so far as they understood the relief requested; he did not respond to the further email clarifying that relief.

**********************

As explained in more detail in the attached brief, Petitioners seek relief from this Court on four issues related to implementation of this Court's orders granting and clarifying its preliminary injunction with respect to detention issues, *see* Opinion and Order, ECF 191, Pg.ID# 5318–63; Order Regarding Further Proceedings, ECF 203, Pg.ID# 5456–64. Those issues are:

*First*, ICE is objecting to bond hearings for certain class members who have been detained more than six months without an impartial individualized assessment of flight risk or dangerousness. There are two groups:

1. ICE is objecting to bond hearings for some individuals whose motions to reopen have been granted, even though they have been detained more than six months without an impartial individualized assessment of flight risk or dangerousness, because the detention authority under which they are held is 8 U.S.C. § 1225, which is not referenced in the Mandatory Detention Subclass definition.

2. ICE is objecting to bond hearings for some individuals whose immigration cases have not yet been reopened, even though they have been detained more than six months without an impartial individualized assessment of flight risk or dangerousness, because, it seems, ICE asserts they are not members of the Detained Final Order Subclass.

This Court's January 2 Order (ECF 191) found that prolonged detention without an impartial individualized assessment of flight risk or dangerousness violates due process. Petitioners ask that the Court clarify its prior orders to ensure that class members held under 8 U.S.C. § 1225 are not subjected to prolonged detention without such an impartial individualized assessment. Petitioners further ask the Court to ensure that Respondents disclose information about **all** Iraqi detainees who had final immigration orders during the relevant time period (March 1, 2017 to June 24, 2017) but who are being denied bond hearings by clarifying the obligations in ECF 203, ¶ 9.d, Pg.ID# 5460-61, which requires such disclosures by February 21, 2018.

*Second*, Petitioners seek relief for class members who have been granted bond by an immigration judge (i.e. have been found to present neither a danger nor a flight risk that cannot be mitigated by bond), but who have nonetheless either not been released or have been taken back into custody after being released on bond. These class members are being held in custody as a result of either "automatic" stays that ICE can trigger simply by filing a form, or "discretionary" stays issued by the Board of Immigration Appeals (BIA) pending adjudication of ICE's underlying appeal of the immigration judge (IJ)'s bond decision. Automatic stays effectively allow ICE to override the IJ's decision that release is appropriate and allow detention to be prolonged for an additional 90 days without any review by an independent adjudicator. "Discretionary" stays do involve a decision by the BIA, but are extremely problematic because (a) the BIA frequently decides them without notice—much less briefing—from the detainee's counsel, (b) there is no standard for deciding whether a stay should be granted; and (c) there is no time limit for such stays, which remain in effect until the underlying bond appeal is adjudicated, a process that can take several months or longer. In addition, discretionary stays can be sought by Respondents at any time, which has led to the situation where individuals who have been released to their families after months in detention are suddenly rearrested and redetained because of Respondents' post-release decision to request a stay. Petitioners accordingly request this Court to order that where

immigration courts have granted release, the procedures by which Respondents can seek a stay of those orders comport with basic due process requirements.

*Third*, ICE is objecting to bond hearings for individuals who have been briefly held in criminal custody during their period of immigration detention. This occurs because ICE "resets" the six-month clock to start anew when the individual returns to ICE custody. Petitioners accordingly request clarification that time spent in immigration custody or while under an immigration hold counts towards the six-month clock, which is not reset simply because an individual is briefly transferred out of ICE detention and then back.

*Fourth*, in at least one instance, Respondents have denied a bond hearing to an individual whom ICE seeks to remove to Iraq, but who was born in another country. This Court should clarify that if an individual is sufficiently Iraqi that ICE is seeking removal to Iraq, the individual is also sufficiently Iraqi for class membership.

To address those issues, for reasons more fully explained in the accompanying brief, Petitioners respectfully request that the Court enter the following relief:

1.      Amend the Mandatory Detention Subclass definition set out in this Court's Opinion and Order, ECF 191, ¶ 1.c., Pg.ID# 5360, to read: "All Primary Class Members whose motions to reopen have been or will be granted, who are

currently or will be detained in ICE custody under the authority of a mandatory detention statute, and who do not have an open individual habeas petition seeking release from detention."

2.      Amend the Order Regarding Further Proceedings, ECF 203, ¶ 8, Pg.ID# 5459 to read: "Those Mandatory Detention Subclass members held under 8 U.S.C. § 1226 who have not yet been detained for six months are entitled to a bond hearing under ordinary scheduling practices, if they request one, under 8 U.S.C. § 1226(a)."

3.      Clarify that the Respondents, in meeting their February 21 obligation to "identify each detainee whose time in detention has reached 180 days or more but whom the government does not consider eligible for a bond hearing, and the reason asserted for non-eligibility," ECF 203, ¶ 9.d, Pg.ID# 5460-61, shall include:

   a.   Information on individuals whom ICE does not consider eligible for a bond hearing, whether or not the bond hearing was scheduled and/or held.

   b.   For individuals whom Respondents argued before the immigration court were not eligible for a bond hearing, the decision of the immigration court on the individual's eligibility.

    c. Information on individuals for whom ICE does not consider the "time in detention" to have reached six months, even though the individual has been in immigration or criminal custody for six months.

4. Clarify that Respondents, in meeting their biweekly obligation to disclose "if any appeal or stay has been filed and (if available) the outcome," ECF 203, ¶ 9.c, Pg.ID# 5460, should specify which type of stay they have sought and the outcomes for both.

5. Limit the duration of any automatic stays sought by Respondents under 8 C.F.R. § 1003.19(i)(2) to 10 business days—the time reasonably necessary to protect the government's ability to maintain detention of a *Hamama* class member while seeking/obtaining a discretionary stay under 8 C.F.R. § 1003.19(i)(1).

6. Order that if ICE seeks a discretionary stay of an immigration judge's decision granting bond to a *Hamama* class member:

a. Absent changed circumstances arising after the IJ's bond determination, ICE shall seek any discretionary stay of the bond decision within five days of the decision.

b. Respondents shall provide notice and a reasonable opportunity to respond to the class member, or if represented, the class member's counsel, when ICE has filed for a discretionary stay. ICE shall have two business days

to refile motions for any discretionary stay previously entered without notice and opportunity to respond; if ICE does not refile, the stay shall expire.

c. Discretionary stays under 8 C.F.R. § 1003.19(i)(1) shall be available from the BIA only if the BIA finds that ICE has demonstrated a "strong likelihood of success on the merits" of its bond appeal. *Ne. Ohio Coal. for Homeless and Serv. Emp. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

d. If the BIA does not grant the stay within five days of its filing, the class member shall be entitled to release under whatever terms and conditions were set by the immigration judge in the bond decision that is being appealed while bond adjudication continues. The five-day deadline can be extended if the detainee seeks an extension in order to allow additional time for responsive briefing, and any automatic stay shall be extended during that period as well.

e. If the BIA grants the stay, the stay will expire if the BIA does not adjudicate the underlying bond appeal within 30 days of the original bond determination, and the class member shall be entitled to release under whatever terms and conditions were set by the immigration judge.

7. Order that for purposes of calculating the six months of detention that trigger a bond hearing under this Court's orders, ECF 191 and 203, the entire period of detention while in immigration custody or under an immigration hold shall be counted towards the six months that are a prerequisite to a bond hearing or release under this Court's order.

8. Order that detained individuals who had final orders of removal at any point between March 1, 2017 and June 24, 2017 and whom ICE is seeking to remove to Iraq shall not be excluded from this Court's orders regarding detention (including ECF 191, 203, and any further orders regarding detention) because they were not born in Iraq.

Respectfully submitted,

Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
Bonsitu A. Kitaba (P78822)
Miriam J. Aukerman (P63165)
American Civil Liberties
Union Fund of Michigan
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6814
msteinberg@aclumich.org

*/s/Kimberly L. Scott*
Kimberly L. Scott (P69706)
Wendolyn Wrosch Richards (P67776)
Cooperating Attorneys, ACLU Fund
of Michigan
MILLER, CANFIELD, PADDOCK
& STONE, PLC

Judy Rabinovitz (NY Bar JR-1214)
Lee Gelernt (NY Bar NY-8511)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2618
jrabinovitz@aclu.org

Margo Schlanger (N.Y. Bar #2704443)
Samuel R. Bagenstos (P73971)
Cooperating Attorneys, ACLU Fund
of Michigan
625 South State Street
Ann Arbor, Michigan 48109
734-615-2618
margo.schlanger@gmail.com

101 N. Main St., 7th Floor
Ann Arbor, MI 48104
(734) 668-7696
scott@millercanfield.com

Nora Youkhana (P80067)
Nadine Yousif (P80421)
Cooperating Attorneys, ACLU Fund
of MichiganCODE LEGAL AID INC.
27321 Hampden St.
Madison Heights, MI 48071
(248) 894-6197
norayoukhana@gmail.com

María Martínez Sánchez (NM Bar126375)
AMERICAN CIVIL LIBERTIES
UNION OF NEW MEXICO
1410 Coal Ave. SW
Albuquerque, NM 87102
msanchez@aclu-nm.org

Susan E. Reed (P66950)
MICHIGAN IMMIGRANT RIGHTS CENTER
3030 S. 9th St. Suite 1B
Kalamazoo, MI 49009
(269) 492-7196, Ext. 535
Susanree@michiganimmigrant.org

Lara Finkbeiner (NY Bar 5197165)
Mark Doss (NY Bar 5277462)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
Urban Justice Center
40 Rector St., 9th Floor
New York, NY 10006
(646) 602-5600
lfinkbeiner@refugeerights.org

*Attorneys for All Petitioners and Plaintiffs*

William W. Swor (P21215)
WILLIAM W. SWOR
& ASSOCIATES
1120 Ford Building
615 Griswold Street
Detroit, MI 48226
wwswor@sworlaw.com
*Attorney for Petitioner/Plaintiff Usama Hamama*

Dated: February 8, 2018

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**USAMA JAMIL HAMAMA**, et al.,

Petitioners and Plaintiffs,

v.

**REBECCA ADDUCCI**, et al.,

Respondents and Defendants.

Case No. 2:17-cv-11910
Hon. Mark A. Goldsmith
Mag. David R. Grand
Class Action

**PETITIONERS/PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR RELIEF ON ISSUES RELATED TO IMPLEMENTATION OF DETENTION ORDERS**

## A. Introduction

This Court's January 2 Order requires Respondents by February 2 (or February 16, for some class members in Michigan and Ohio) to either (a) release detained class members held over six months, (b) provide bond hearings, or (c) object to bond hearings for specific detainees. Opinion and Order, ECF 191, Pg.ID# 5360-61. Respondents have chosen the second option. They have not returned any detainees to their pre-arrest status by releasing them under orders of supervision. And they have not filed any objections to bond hearings for specific detainees. Instead, they have been proceeding with bond hearings, while at the same time ICE has: 1) raised objections to bond hearings for specific detainees

before immigration judges (IJs), and 2) sought automatic and discretionary stays of IJ bond decisions.

Petitioners do not yet have full information on the bond hearings scheduled and their results. Respondents' first set of bi-weekly data disclosures was received at 9 p.m. yesterday, February 7, 2018, and Petitioners' counsel are only beginning to analyze it. Respondents have until February 21, 2018, to identify each detainee who has been in detention for six months but whom the government does not consider eligible for a bond hearing and the reasons asserted for non-eligibility. Order Regarding Further Proceedings, R. 203, ¶ 9.d, Pg.ID# 5460-61.

Class counsel anticipate that, after further information and analysis, counsel will be able to present the court with a more detailed picture of how the Court's order is being implemented. If it is then necessary for the Court to address additional issues, Petitioners will file an appropriate motion. However, several issues have already emerged, and this motion seeks the Court's assistance in resolving them. They are:

- The government has taken the position that certain class members who have won their motions to reopen and have been detained longer than six months are not eligible for bond hearings because they are detained under 8 U.S.C. § 1225 rather than § 1226(c). *See* Section B.1.

- The government also appears to be objecting to bond hearings for some detainees with final orders, although the basis for the government's arguments against such bond hearings is unclear. *See* Section B.2.

- In some cases where immigration judges have granted release, finding that the class member does not present a danger or flight risk that cannot be mitigated by bond, ICE has continued to detain the class member by obtaining either an "automatic" or "discretionary" stay of the IJ's bond decision pending appeal of the bond decision to the Board of Immigration Appeals (BIA). An "automatic stay" involves no independent review of ICE's stay request and can result in months of additional incarceration before the BIA ever considers the case. "Discretionary stays" are issued by the BIA without any standard for granting such stays, without any time limit for their duration, and often without notice to the detainee or counsel (much less briefing). Neither type of stay is consistent with this Court's order, which, in light of the due process concerns implicated by class members' prolonged detention, requires that they receive prompt individualized bond hearings. *See* Section C.

- ICE appears to be taking the position that if a class member is "writted out" to spend time in criminal custody while under an immigration hold, that resets the six-month clock, which then starts from zero when the class member is returned to immigration custody. *See* Section D.

- ICE has, in at least one instance, objected to bond hearings for individuals whom they are seeking to remove to Iraq on the basis that the individuals were not born in Iraq. *See* Section E.

**B.    Class Members Detained More Than Six Months Who Are Denied Bond Hearings**

The "prolonged detention claim" at issue here—i.e. the argument that lengthy detention without an individualized assessment of flight risk or dangerousness violates due process—was brought by members of both the Detained Final Order Subclass and the Mandatory Detention Subclass. *See* Count V, 2d Am. Petition, ECF 118, ¶¶ 133-138, Pg.ID# 3024-25. The Court granted relief on that claim, ordering speedy bond hearings for members of both the

Detained Final Order Subclass and of the Mandatory Detention Subclass, if detention exceeds six months.[1] Opinion and Order, ECF 191, ¶ 2.a-b, Pg.ID# 5360-61. The Court explained: "Our legal tradition rejects warehousing human beings while their legal rights are being determined, without an opportunity to persuade a judge that the norm of monitored freedom should be allowed." *Id.* at Pg.ID# 5319.

Respondents, however, now take the position that certain class members are not covered by the January 2nd Order and can be subjected to prolonged detention in excess of six months without a bond hearing. In some cases, this approach has meant that bond hearings are not scheduled; in others, ICE has made the argument during the hearings. Because their arguments are different for members of the Mandatory Detention and Prolonged Final Order subclasses, these are separated below.

**1. Mandatory Detention Subclass**

Respondents' argument against bond for certain class members whose motions to reopen have been granted hinges on the fact that, because of the particular posture of their immigration proceedings, the detention of these class

[1] The Court also held that members of the Mandatory Detention Subclass who have not yet been detained for six months are entitled to a bond hearing on their statutory claim that 8 U.S.C. § 1226(c) does not apply in these circumstances. *See* Count VI, 2d Am. Petition, ¶¶ 139-143, ECF 118, Pg.ID# 3025-26; Opinion and Order, ECF 191, Pg.ID# 5337-41; Order Regarding Further Proceedings, ¶ 8, ECF 203, Pg.ID# 5459.

members is governed by 8 U.S.C. § 1225, rather than § 1226(c). *See* Randy Samona Declaration, Ex. 1; Kevin Piecuch Declaration, Ex. 2. But this is a distinction that has no bearing on the due process concerns which led this Court to conclude that prolonged detention must be justified by an individualized bond hearing. This Court recognized that the Constitution commands that "no person should be restrained in his or her liberty beyond what is reasonably necessary to achieve a legitimate governmental objective." Opinion and Order, ECF 191, Pg.ID# 5319. That principle does not turn on the exact statutory regime governing the person's detention. While individuals detained under 8 U.S.C. § 1225 are sometimes labeled "applicants for admission," such individuals (who in years past were referred to as "excludable aliens") are equally entitled to due process with respect to their detention. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 409 (6th Cir. 2003) (en banc), *cert. denied sub nom. Snyder v. Rosales-Garcia*, 539 U.S. 941 (2003) ("We could not more vehemently disagree [with the government's assertion that 'excludable aliens' are not protected by the Constitution]. Excludable aliens—like all aliens—are clearly protected by the Due Process Clauses of the Fifth and Fourteenth Amendments.").

To understand the objections that ICE is asserting before the immigration courts about why bond hearings should not proceed in these cases, it is worth briefly recapping the statutory framework. All class members, when they were first

arrested, had been ordered deported, and were therefore subject to post-final-order detention under 8 U.S.C. § 1231. Once class members succeed on their motions to reopen, however, the authority for their detention shifts back to the detention regime that governs their removal proceedings. For most class members, detention after proceedings have been reopened is governed by 8 U.S.C. § 1226, which authorizes detention pending completion of removal proceedings.  8 U.S.C. § 1226(a) authorizes discretionary detention, whereas § 1226(c) authorizes mandatory detention—that is, without any opportunity for IJ adjudication of danger or flight risk—in certain circumstances.

However, there are a small number of class members who, because of the posture of their underlying removal cases, are deemed to be "seeking admission" to the United States once their removal proceedings are reopened, notwithstanding that they have in fact been living in the United States for years.  For these individuals, Respondents take the position that their detention is governed by 8 U.S.C. § 1225, the statute authorizing detention of "applicants for admission,"[2]

---

[2] It is not entirely clear under what statutory authority Respondents are justifying these class members' detention without the opportunity for IJ bond hearings. Petitioners' best guess is that Respondents are relying on 8 U.S.C. § 1225(b)(2)(A), which provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a

and further take the position that the Court's January 2 Order does not require that they get bond hearings.

Respondents' argument that this Court's January 2 Order does not prevent class members detained under § 1225 from being held in prolonged detention without an individualized hearing appears to be the following: because the § 1225 detainees do not have a final order (as they have succeeded in reopening their cases) they are not members of the Final Order Subclass, and because they are not detained under § 1226(c), they are not members of the Mandatory Detention Subclass. Since they are not members of either subclass, they are not protected by this Court's January 2 Order and can be detained indefinitely without an individualized hearing.

In fact, the statutory label attached to detention without bond is substantively immaterial to this Court's prolonged detention ruling. Class members detained under § 1225 are, for all material purposes, identical to other class members. They entered the United States long ago. They were ordered to leave the country but could not be repatriated due to Iraq's unwillingness to accept them. They lived in the community for years until they were suddenly arrested. Protected by this

---

> doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Respondents may rely on other provisions as well. This will hopefully become clear once Respondents report on February 21 on what basis they are denying bond hearings to class members held more than six months.

Court's stay of removal, they have reopened their immigration cases and now await adjudication of those cases.[3] Their repatriation to face persecution, torture or death would violate the Immigration and Nationality Act (INA), *see* 8 U.S.C. § 1231(b)(3), or the U.N. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, codified by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, §2242, 112 Stat. 2681, 2681-82 (1998), codified at 8 U.S.C. §1231 note. They are now being held in detention, apart from their families and communities in this country, without an opportunity for impartial evaluation of the danger or flight risk justifying that detention; they have been incarcerated for six months or more. The only difference is that, due the complexities of immigration law and the specifics of their individual immigration histories, the detention regime that applies to them appears in a different section of the U.S. Code.

This Court's January 2 Order entitles detainees to bond hearings or release if their detention has become prolonged. Class members who are being detained under § 1225 are virtually identical to those mandatorily detained under § 1226 (and § 1231). The principles underlying this Court's decision apply with equal force regardless of the statutory basis for prolonged detention without an

[3] Three of the affected class members are profiled in the declarations of their lawyers. *See* Randy Samona Declaration, Ex. 1; Kevin Piecuch Declaration, Ex. 2; Albert Valk Declaration, Ex. 3.

opportunity to seek bond. Immigration law is complex: there are many different legal statuses upon entry and many different ways in which those statuses can be lost. But none of those complexities matter here because this Court has already answered the common question: can noncitizens be held in prolonged detention without the opportunity for an individualized, impartial determination of flight risk or dangerousness. The Court has said they cannot.

At the time class counsel drafted the subclass definition, class counsel was unaware that some class members whose motions to reopen are granted would be subject to detention under § 1225 rather than § 1226.[4] Now that this information has come to light during the bond proceedings, Petitioners respectfully request this Court to enter a non-substantive change to the Mandatory Detention subclass definition, to align it with the Court's reasoning and encompass all those class members similarly situated, namely all those who have succeeded in filing motions to reopen but nonetheless are being held in prolonged detention without an individualized review of flight risk or dangerousness.

The Mandatory Detention Subclass is currently defined as:

> "All Primary Class Members whose motions to reopen have been or will be granted, who are currently or will be detained in ICE custody under the authority of the mandatory detention statute, 8 U.S.C.

[4] Respondents did mention 8 U.S.C. § 1225(b) in their opposition to class certification (ECF 159). But there the reference was to an individual whose case had *not* been reopened.

> § 1226(c), and who do not have an open individual habeas petition seeking release from detention."

Just two sentences of this Court's prior orders need to be changed in light of this new information.

First, the Mandatory Detention Subclass definition should read:

> "All Primary Class Members whose motions to reopen have been or will be granted, who are currently or will be detained in ICE custody under the authority of **the** **a** mandatory detention statute, 8 U.S.C. § 1226(c), and who do not have an open individual habeas petition seeking release from detention."

Second, the order that implements the Court's statutory ruling (ECF 203, ¶ 8) that 8 U.S.C. § 1226(c) has no application to reopened cases, needs an equally minor technical revision, adding the emphasized text:

> Those Mandatory Detention Subclass members **held under 8 U.S.C. § 1226** who have not yet been detained for six months are entitled to a bond hearing under ordinary scheduling practices, if they request one, under 8 U.S.C. § 1226(a).

This change reflects that fact that this Court's ruling on the statutory § 1226 claim (Count VI) applies only to those held under that provision, while the prolonged detention claim (Count V) applies to all types of prolonged detention without the opportunity for bond hearings.

**2. Detained Final Order Subclass**

ICE has also objected to the immigration court's jurisdiction in bond hearings where individuals *still had* final orders and are therefore part of the Final

Order subclass. For example, ICE argued in one case that the immigration court did not have jurisdiction to grant bond because a "determination to deport" is not a "removal order,"[5] and therefore the detainee was not a member of the Detained Final Order Subclass. This seems to be sophistry, but without a fuller explanation of the government's reasoning, it is not possible for Petitioners' Counsel to respond to their arguments here. The Court should require Respondents to provide complete information as part of their disclosure, due February 21, about individuals whom the government believes are not entitled to bond hearings. Petitioners will respond to arguments about why those individuals should not receive a bond hearing after the government presents those arguments.

**C. Stays Pending Appeal**

With respect to release and/or a bond hearing, the Court was clear in its January 2 Order:

---

[5] Exhibit 6 is ICE's position statement opposing a bond hearing for one detainee. It states:

> The Department previously submitted a position on bond indicating it did not believe the respondent qualified for a *Hamama* bond hearing because the respondent was admitted to the United States under the Visa Waiver Program. The Department continues to believe that the respondent is not eligible for a *Hamama* bond hearing, but clarifies it is because as a prior S Visa holder he is not subject to a removal order, rather a determination to deport has been made in accord with 8 C.F.R. § 242.26 [now defunct, but attached to the position statement].

> The Government shall be required to release, no later than February 2, 2018 [later amended to February 16 for Michigan and Ohio detainees], any detained member of the detained final order subclass and any member of the mandatory detention subclass who has been detained, as of January 2, 2018, for six months or more, unless a bond hearing for any such detainee is conducted on or before February 2, 2018 before an immigration judge; provided that neither release of a particular detainee nor a bond hearing for that detainee shall be required if the Government files with this Court a memorandum, by February 2, 2018, objecting to a bond hearing for any specific detainee and supplies evidence supporting the objection.
>
> At the bond hearing, the immigration judge shall release the detainee under conditions of release unless the immigration judge finds, by clear and convincing evidence, that the detainee is either a flight risk or a public safety risk.

Opinion and Order, ECF 191, Pg. ID# 5360-61 (as modified by ECF 203).

As this Order is being implemented, there are at least several cases in which an immigration judge has found the class member appropriate for release, but Respondents are continuing to detain him, pursuant to a stay of the immigration judge's custody decision. This is occurring under two different procedures: automatic stays and discretionary stays. *See* 8 C.F.R. § 1003.19(i)(1) (discretionary stays); § 1003.19(i)(2) and § 1003.6(c) (automatic stays); BIA Practice Manual, § 7.3 (describing procedures for appealing bond decisions).

An automatic stay is available, by regulation, in cases in which ICE had previously decided against release (or set a bond of $10,000 or higher). 8 C.F.R. § 1003.19(i)(2) Automatic stays remain in effect for up to 90 days, 8 C.F.R. § 1003.6(c)(4), meaning that they can greatly extend the already prolonged

detention of class members, even though the immigration judge has found that those class members are not a flight risk or danger and can safely be released on bond.

The process for obtaining an automatic stay does not require that an impartial adjudicator review ICE's request that the noncitizen remain incarcerated while ICE appeals the immigration judge's bond. Rather, the process is that if ICE files an "automatic stay" application—a form EOIR-43 (also called an E-43)—within one business day of bond being granted, the individual remains in custody. ICE then has 10 business days to file a notice of appeal with the BIA. Neither an immigration judge nor the BIA conducts any substantive review of the bond issue before the stay goes into effect. *See Matter of Joseph*, 22 I. & N. Dec. 660, 666 (BIA 1999) ("The filing of a Form EOIR-43 is a ministerial act."); BIA Practice Manual, § 7.3(a)(iv)(B) (describing "automatic stays," or "stays by regulation," which prevent release for 90 days, or until the BIA decides the underlying bond appeal, whenever the government files an E-43). The practical effect is that ICE can—simply by filing a form—keep a person in custody for three more months if ICE disagrees with the immigration judge's decision that the detainee is neither a flight risk or nor danger and can be released on bond.

Petitioners are aware of several cases where immigration judges have granted bond to *Hamama* class members, but those individuals were not released

because Respondents obtained automatic stays. The Court ordered Respondents to disclose their use of stays, *see* ECF 203, ¶ 9.c, Pg.ID# 5460 ("In the bi-weekly disclosures beginning February 7, 2018, the Government shall supply the following data to Petitioners: . . . If any appeal or stay has been filed and (if available) the outcome."). Respondents' February 7 disclosure did not, however, include the ordered information; it identified appeals but not stays. Automatic stays are inconsistent with both this Court's order and its reasoning which requires release unless an immigration judge finds that the detainee is a flight risk or danger.[6] Opinion and Order, ECF 191, Pg.ID# 5361. Here, at ICE's unilateral

---

[6] Because automatic stays clearly contravene this Court's order requiring release absent an individualized finding that detainee poses a flight risk or danger, the Court need not reach the question of whether such automatic stays are constitutional. Numerous courts, however, have struck down automatic stays of immigration bonds because they allow ICE to unilaterally subject noncitizens to prolonged detention without a finding of flight risk or danger, and indeed in contravention of a finding by the immigration judge that they are *not* a flight risk or danger. *See, e.g.*, *Bezmen v. Ashcroft*, 245 F.Supp.2d 446 (D. Conn. 2003); *Zavala v. Ridge*, 310 F.Supp.2d 1071 (N.D. Cal. 2004); *Zabadi v. Chertoff*, 2005 WL 1514122 (N.D. Cal. June 17, 2005); *Ashley v. Ridge*, 288 F. Supp. 2d 662 (D.N.J. 2003). *See also Uritsky v. Ridge*, 286 F.Supp.2d 842, 847 (E.D. Mich. 2003) (ordering the release of an immigrant detainee whose bond determination was automatically stayed: "under the Fifth Amendment, Petitioner is entitled to an individualized determination that his detention is necessary to further a sufficiently compelling governmental need. Because the Immigration Court, in fact, already has found that Petitioner's continued detention is not justified by such a need, the individualized determination requirement has been met."). Although these decisions predate a regulatory amendment that limited the duration of such stays to 90 days, 71 Fed. Reg. 57873-01 (Oct. 2, 2006), their reasoning continues to apply to the bond hearings this Court ordered, which affect only individuals who have

behest, automatic stays further prolong the detention of individuals who have been specifically found by an impartial decisionmaker *not* to pose a flight risk or danger.

The second type of stay is a "discretionary stay" of bond/release, which ICE has sought and obtained for several class members. *See*, *e.g.*, Bradley Maze Declaration, Exhibit 7. The regulations authorize ICE to seek this type of stay from the BIA either during the automatic stay period or at any other time while a bond appeal is pending. 8 C.F.R. § 1003.19(i)(1); § 1003.6(c)(5).

While discretionary stays do not suffer the same flaw as automatic stays of being available based on ICE's unilateral decision, they are deeply problematic for other reasons. Already, with only incomplete information available, three major defects are evident. First, after an immigration judge grants bond, the government can seek and obtain a decision from the BIA to stay release without ever providing notice to the detainee/detainee's counsel, much less an opportunity to respond. Detainees and their counsel may learn that the government has filed for and obtained a discretionary stay only after the BIA grants the government's stay request. *See* Bradley Maze Declaration, Ex. 7. Detainees who have *won* at their

---

already been subjected to more than six months of detention without a bond hearing. Likewise, although some of these decisions predate the Supreme Court's decision in *Demore v. Kim*, 538 U.S. 510 (2003), which upheld the constitutionality of a *brief* period of mandatory detention, their due process analysis continues to apply here where class members have already been subjected to prolonged detention in excess of six months.

bond hearings are thus being subjected to additional incarceration without the basic due process requirements that they be given notice and an opportunity to respond.

Second, as far as Petitioners can discern, there is no announced standard for granting a discretionary stay. Normally, of course, a lower tribunal's decision is not stayed unless the party seeking the stay can demonstrate "strong likelihood of success on the merits." *Ne. Ohio Coal. for Homeless and Serv. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). Here, a standardless stay of release on bond for potentially an extended period of time is inconsistent with this Court's appropriate insistence that prolonged detention requires individuated justification.

Finally, once stays are granted, they can result in many additional months of incarceration.  A discretionary stay has no regulatory time limit; it lasts as long as the bond appeal takes, which can be many months. *See* Maze Declaration, Ex. 7.

Petitioners do not dispute that the government, like detainees, has the right to appeal bond decisions, *see* Order Regarding Further Proceedings, ECF 203, ¶ 5, Pg.ID# 5459. Petitioners even concede that there can be a process for staying releases pending appeal. But given the fundamental liberty interests at stake, that process must comport with basic notions of procedural fairness: detainees must get notice and have an opportunity to be heard; the stay decision should be guided by an appropriate standard; and given the summary nature of the process, it should not

last more than the reasonable period of time needed to promptly adjudicate the underlying bond appeal.

Petitioners therefore respectfully request that the Court clarify its order allowing appeal of bond determinations in several ways:

- Automatic stays under 8 C.F.R. § 1003.19(i)(2) should be allowed only for the duration necessary to protect the government's ability to maintain detention while seeking/obtaining a discretionary stay under 8 C.F.R. § 1003.19(i)(1)—say, 10 business days after the immigration judge renders the contested bond decision.

- Discretionary stays under 8 C.F.R. § 1003.19(i)(1) should be available from the BIA only if:

   a. Absent changed circumstances arising after the immigration judge's bond determination, ICE seeks such a stay within a short time (Petitioners propose five days) of the bond decision it contests. This will ensure sufficient time for the class member to respond and for the BIA to adjudicate the stay request while the automatic stay is in effect, and will prevent class members from living in fear that their bond could be revoked at any time after they have been reunited with their families.

   b. Respondents provide notice and a reasonable opportunity to respond to the class member and his or her counsel that ICE is seeking a discretionary stay.

   c. The BIA finds that ICE has demonstrated a "strong likelihood of success on the merits" of its bond appeal. *Ne. Ohio Coal. for Homeless*, 467 F.3d at 1009.

- If the BIA does not grant the stay within five days of its filing, the class member should be entitled to release under whatever terms and conditions were set by the immigration judge in the bond decision under appeal, while the bond adjudication continues. The five-day deadline can be extended if the detainee seeks an extension in order to allow additional

time for responsive briefing, and any automatic stay should be extended during that period as well.

- If the BIA grants the stay, the stay will expire if the BIA does not adjudicate the underlying bond appeal within 30 days of the original bond determination, and the class member shall be entitled to release under whatever terms and conditions were set by the immigration judge.

- Any discretionary stay already granted should be readjudicated; Respondents should have two business days to refile the relevant motions.

### D. Stints in Non-ICE Custody

The line between immigration detention and criminal custody is sometimes less than entirely clear. Obviously Respondents have authority only over immigration detention. Sometimes, however, an individual is detained by ICE for a period of weeks or months, then moved into criminal custody (e.g., to allow him/her to appear in a criminal proceeding), and then moved back into immigration detention. In those circumstances, the individual's criminal incarceration is subsidiary to his/her immigration detention: ICE maintains a "hold" on the individual to prevent release into the community by the criminal custodian, as such individuals might, for example, otherwise be released on bail. Sometimes the period in criminal custody is only a day or two; at other times, it can be a period of weeks or months.

To avoid the possibility of prolonged immigration detention in shifts, and of calendar "resets," when a class member has entered ICE detention, been shifted to

criminal detention for a brief period, and then shifted back, the entire period during which an individual is in immigration custody or under an immigration hold should be counted towards the six months that is a prerequisite to a bond hearing or release under this Court's order. The declaration of Eman Jajonie-Daman, Exhibit 4, describes just such a situation, and just such a resolution by the immigration court. As it demonstrates, ICE is taking the position that bond hearings need not even be scheduled in these circumstances. To avoid omission of required hearings in the future, the Court should clarify its order to cover this issue.

**E. Class members born outside Iraq**

The declaration of Dalia Kejbou, Exhibit 5, explains that for at least one class member, ICE is simultaneously seeking to deport him to Iraq but reading him out of class membership. This individual was born in Lebanon, in transit to the United States, to Iraqi parents. ICE has taken the position that Iraq would be an appropriate nation of removal. (Lebanon declines to recognize him as a Lebanese national.) Yet Respondents also have declined to schedule him for a bond hearing.

Petitioners respectfully ask that this court clarify: if an individual is sufficiently Iraqi that ICE is seeking removal to Iraq, he is sufficiently Iraqi for class membership. (Petitioners express no view on the actual Iraqi nationality of any individual born elsewhere; the issue is a complex one and well beyond the scope of this case.)

Respectfully submitted,

Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
Bonsitu A. Kitaba (P78822)
Miriam J. Aukerman (P63165)
American Civil Liberties
Union Fund of Michigan
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6814
msteinberg@aclumich.org

*/s/Kimberly L. Scott*
Kimberly L. Scott (P69706)
Wendolyn Wrosch Richards (P67776)
Cooperating Attorneys, ACLU Fund
of Michigan
MILLER, CANFIELD, PADDOCK
& STONE, PLC
101 N. Main St., 7th Floor
Ann Arbor, MI 48104
(734) 668-7696
scott@millercanfield.com |

Nora Youkhana (P80067)
Nadine Yousif (P80421)
Cooperating Attorneys, ACLU Fund
of Michigan CODE LEGAL AID INC.
27321 Hampden St.
Madison Heights, MI 48071
(248) 894-6197
norayoukhana@gmail.com

Judy Rabinovitz (NY Bar JR-1214)
Lee Gelernt (NY Bar NY-8511)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2618
jrabinovitz@aclu.org

Margo Schlanger (N.Y. Bar #2704443)
Samuel R. Bagenstos (P73971)
Cooperating Attorneys, ACLU Fund
of Michigan
625 South State Street
Ann Arbor, Michigan 48109
734-615-2618
margo.schlanger@gmail.com

Susan E. Reed (P66950)
MICHIGAN IMMIGRANT RIGHTS
CENTER
3030 S. 9th St. Suite 1B
Kalamazoo, MI 49009
(269) 492-7196, Ext. 535
Susanree@michiganimmigrant.org

Lara Finkbeiner (NY Bar 5197165)
Mark Doss (NY Bar 5277462)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
Urban Justice Center
40 Rector St., 9th Floor
New York, NY 10006
(646) 602-5600
lfinkbeiner@refugeerights.org

María Martínez Sánchez (NM
Bar126375)
AMERICAN CIVIL LIBERTIES
 UNION OF NEW MEXICO
1410 Coal Ave. SW
Albuquerque, NM 87102
msanchez@aclu-nm.org
*Attorneys for All Petitioners and Plaintiffs*

William W. Swor (P21215)
WILLIAM W. SWOR
 & ASSOCIATES
1120 Ford Building
615 Griswold Street
Detroit, MI 48226
wwswor@sworlaw.com
*Attorney for Petitioner/Plaintiff Usama Hamama*

Dated: February 8, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2018, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF filers of record.

By: */s/Kimberly L. Scott*
Kimberly L. Scott (P69706)
Cooperating Attorneys, ACLU Fund of Michigan
MILLER, CANFIELD, PADDOCK
& STONE, PLC
101 N. Main St., 7th Floor
Ann Arbor, MI 48104
(734) 668-7696
scott@millercanfield.com