UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA J. HAMAMA, et al.,

        Petitioners,                              Case No. 17-cv-11910

vs.                                               HON. MARK A. GOLDSMITH

REBECCA ADDUCCI, et al.,

        Respondents.
_____/

## ORDER REGARDING STAYS PENDING BOND DECISIONS

In the Court's Order Regarding Further Proceedings, the Court ordered the parties to submit supplemental briefs regarding implementation of the Court's January 2, 2018 preliminary injunction, as it relates to stays of bond decisions. See 3/13/2018 Order at 5 (Dkt. 254). The parties have since submitted their supplemental briefs (Dkts. 258, 263). Petitioners argue that the process through which bond decisions are stayed in the immigration courts violates their due process rights — as well as the Court's preliminary injunction — and request that the Court modify this process. For the reasons stated below, the Court modifies the procedure relating to stays of bond decisions.

### I. ANALYSIS

In their motion for relief on issues related to implementation of detention orders (Dkt. 227), Petitioners set forth several issues that have arisen since the Court held that certain class members were entitled to bond hearings. All but one of these issues have been resolved. See 3/13/2018 Order; Pet. Supp. Br. (Dkt. 265). The remaining issue involves the Government's decision to seek stays of certain orders of the immigration court granting bond to detainees.

There are two different stays at issue: (i) automatic stays pursuant to 8 C.F.R. § 1003.6(c); and (ii) discretionary stays pursuant to 8 C.F.R. § 1003.19(i)(1). The Government may unilaterally implement an automatic stay where Immigration and Customs Enforcement ("ICE") has previously decided against release or set a bond of $10,000 or higher. An automatic stay lasts ninety days, requires that ICE file an EOIR-43 (indicating a notice of intent to appeal the bond determination) within one business day of bond being granted, and requires the filing of an appeal to the Board of Immigration Appeals ("BIA") within ten business days. Petitioners propose that the automatic stays be limited to the ten-day period necessary to allow the Government to appeal to the BIA for a discretionary stay.

Discretionary stays are issued by the BIA upon request by the Government. However, the stays are indefinite and, according to Petitioners, the alien is not given notice or an opportunity to respond to the Government's request for a stay. They also contend that there is no defined standard for granting a stay. Petitioners concede that the Government should have a process to appeal and seek a stay of release pending appeal, but argue that that the process must comport with basic notions of procedural fairness.

Petitioners propose that discretionary stays should only be available (i) if ICE seeks a stay within five days of the immigration judge's ("IJ") decision; (ii) ICE provides notice and a reasonable opportunity to respond; and (iii) the BIA finds that ICE has demonstrated a "strong likelihood of success on the merits." Petitioners also propose that, if the BIA does not grant the stay within five days of its filing, the detainee should be entitled to release under the conditions set by the IJ. In the event the stay is granted, Petitioners argue that the detainee should be released within thirty days if the underlying bond appeal has not been adjudicated. Finally, Petitioners argue that any discretionary stay that has already been granted should be re-adjudicated.

In response, the Government notes that, with regard to discretionary stays, there often is no notice to the detainee because the BIA must act quickly to prevent possible flight by the soon-to-be-released detainee. It also notes that, in situations where notice is not given prior to a stay being granted, detainees are entitled to file motions for reconsideration. Regarding the lack of a standard on a motion to stay, the Government states that the Attorney General has broad discretion when deciding whether release is permissible, and that imposing a standard in line with the one proposed by Petitioners would interfere with that discretion. Finally, the Government notes that the availability of motions for reconsideration cures any due process concerns regarding the lack of pre-deprivation process.

With regard to the automatic stays, the Court concludes that the ninety-day period set forth in 8 C.F.R. § 1003.6(c)(4) presents the same due process concerns that the Court addressed in its ruling granting bond hearings. The Court held that, absent special circumstances, those who have been held for six months or longer have been subject to an unreasonably prolonged detention, and are thus entitled to bond hearings. The automatic stay regulation exacerbates this due process concern by extending detention for at least three additional months — half of the presumptively reasonable period of detention — for those who have been found, by an impartial adjudicator, not to present a public safety or flight risk, or whose risk has been found manageable through reasonable bond conditions. The significant enhancement of detention time by way of the automatic stay is triggered unilaterally by the Government, without any oversight by a neutral third-party, raising precisely the same due process concerns of prolonged detention on the sole say-so of the Government's enforcement arm.

Limiting the duration of the automatic stay, however, to ten days, as Petitioners request, does not pay sufficient heed to the needs of an orderly stay process — which process should allow

the Government sufficient time to file a motion for discretionary stay, the detainee sufficient time to respond, and the BIA sufficient time to reach a decision. To strike the appropriate balance, the Court holds that any automatic stay invoked by the Government shall lapse thirty calendar days after the IJ's ruling granting bond.

The discretionary stay process also raises due process concerns, but of a different nature. Here, the problem is lack of notice and opportunity to be heard, as well as lack of clear decisional standards. Due process has long condemned these types of unfairness. "Procedural due process at its core requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Garcia v. Fed. Nat. Mortg. Ass'n, 782 F.3d 736, 741 (6th Cir. 2015) (internal citation and quotations); see also Giaccio v. State of Pa., 382 U.S. 399, 403 (1966) ("Implicit in this constitutional safeguard is the premise that the law must be one that carries an understandable meaning with legal standards that courts must enforce.").

The Government argues that any due process concerns regarding notice and the opportunity to be heard are cured by the ability of detainees to file motions for reconsideration after a stay as been granted. However, allowing a detainee to be heard after the deprivation has already occurred does not satisfy due process in this circumstance. "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." Daily Servs., LLC v. Valentino, 756 F.3d 893, 904 (6th Cir. 2014) (internal citation and quotations omitted). While a post-deprivation remedy will satisfy due process where the deprivation was "unpredictable or random" or "predeprivation process was impossible or impracticable," that is not the case here. Id. at 907. Petitioners have been deprived of a liberty interest in being freed on bond — and this deprivation is perpetrated "pursuant to an 'established state procedure,'" and thus "postdeprivation remedies alone will not satisfy due

4

process." Id. (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-436 (1982)). Further, the motion for reconsideration process fails to address the other due process concern, i.e., the lack of standard by which stays are granted. See Giaccio v. State of Pa., 382 U.S. at 403.

To address the due process concerns raised by the discretionary stay process, the Court modifies the procedure through which the Government may seek a stay before the BIA. Any request for a discretionary stay shall be filed within seven calendar days of the IJ's decision granting bond. The detainee shall receive notice and an opportunity to respond to the request. Thereafter, the BIA may grant a stay if the Government "has made a strong showing that [it] is likely to succeed on the merits" — which is the same standard historically used for stays on appeals, see Nken v. Holder, 556 U.S. 418, 434 (2009) (internal citation and quotations omitted).

Because some bond decisions are already the subject of automatic and discretionary stays previously entered, it is unfair to deprive the detainees in such cases of the rights now being recognized. Thus some retroactive adjustments must be made. If an automatic stay has been granted, it shall expire by the earlier of ninety days from its issuance or May 7, 2018. If a discretionary stay has been granted by the BIA, the stay shall expire on May 7, 2018, unless by that date the Government files a renewed request for a discretionary stay and notice of that request is given to the detainee; in such event, the discretionary stay previously granted will expire on May 21, 2018, unless the BIA extends the stay by that date, based on the "strong showing that [the Government] is likely to succeed" standard set forth here.[1]

## II. CONCLUSION

---

[1] Petitioners also argue that a stay issued by the BIA should lapse if the board does not make a ruling on the merits of the bond appeal within thirty days of the stay being granted. The Court concludes that such a requirement would be unduly restrictive of the BIA, and there has been no showing that the BIA has, as a general matter, unreasonably delayed in ruling on the underlying bond appeals.

5

For the reasons stated above, the Court holds that any automatic stay invoked by the Government shall lapse thirty calendar days after the IJ's ruling granting bond. If an automatic stay has already been granted, it shall expire by the earlier of ninety days from its issuance or May 7, 2018.

Any request for a discretionary stay shall be filed within seven calendar days of the IJ's decision granting bond. The detainee shall receive notice and an opportunity to respond to the request, and the BIA may grant a stay if the Government has made a strong showing that it is likely to succeed on the merits. If a discretionary stay has already been granted by the BIA, the stay shall expire on May 7, 2018, unless by that date the Government files a renewed request for a discretionary stay and notice of that request is given to the detainee; in such event, the discretionary stay previously granted will expire on May 21, 2018, unless the BIA extends the stay by that date, based on a finding that the Government has made a strong showing that it is likely to succeed on the merits.

SO ORDERED.

Dated: April 23, 2018　　　　　　　　　　　　s/Mark A. Goldsmith
　Detroit, Michigan　　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 23, 2018.

　　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　　Case Manager