UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA J. HAMAMA, et al.,

    Petitioners,        Case No. 17-cv-11910
vs.               HON. MARK A. GOLDSMITH

REBECCA ADDUCCI, et al.,

    Respondents.
_____/

### ORDER REGARDING RESPONDENTS' PRIVILEGE MEMORANDUM (Dkt. 264)

In the Court's March 13, 2018 Order, the Court ordered the Government to file a memorandum supporting its privilege assertions and other grounds for withholding information responsive to Petitioners' interrogatories. See 3/13/2018 Order at 9 (Dkt. 254). The Government has filed its privilege memorandum (Dkt. 264); Petitioners filed their response to the memorandum (Dkt. 269), to which the Government filed a reply (Dkt. 277). Petitioners have since filed a supplemental memorandum (Dkt. 293). For the reasons stated below, the Court overrules the Government's assertion of the law enforcement privilege in response to Petitioners' Interrogatory 12.

### I. ANALYSIS

In its privilege memorandum, the Government states that the Department of Homeland Security ("DHS"), and its Immigration and Customs Enforcement division ("ICE"), assert the law enforcement privilege with respect to a portion of their responses to Interrogatory 12. The pertinent portion of this interrogatory asks to identify "the name, title, and department of the government (for both Iraq and the United States) of each individual negotiating the Iraqi Agreement, including the 'ongoing diplomatic negotiations' referenced in the declaration of

1

Michael V. Bernacke . . . identification of the individuals authorized to enter into any agreement reached by the governments regarding the repatriation of Iraqi Nationals, and the date each individual engaged in the 'ongoing diplomatic negotiations.'"

The Government provides the declaration of an ICE officer and a DHS undersecretary in support of the privilege assertion. They assert that disclosure of these negotiators would chill future negotiations and expose the negotiators to possible harassment or coercive questioning. In response, Petitioners argue that the requested information does not fall within the scope of the law enforcement privilege, and that even if it does, a balancing of the relevant factors tips in favor of disclosure.

"The federal law enforcement privilege is 'a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement.'" In re Packaged Ice Antitrust Litig., No. 08-01952, 2011 WL 1790189, at *6 (E.D. Mich. May 10, 2011) (quoting In re Micron Tech., Inc. Sec. Litig., 264 F.R.D. 7, 10 (D.D.C. 2010)). "The purpose of the law enforcement privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." MacNamara v. City of New York, 249 F.R.D. 70, 78 (S.D.N.Y. 2008) (internal citations and quotations omitted).

Three requirements must be met by the Government to prevail on its claim of privilege: "(1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be

specified, with an explanation why it properly falls within the scope of the privilege." In re Sealed Case, 856 F.2d 268, 271 (D.C. Cir. 1988).

There is no dispute that the heads of ICE and DHS have invoked the privilege after personal consideration of the issue. Thus, the Government's claim turns on the third requirement: whether the information sought — the identities of certain undisclosed individuals involved in the negotiation of the Iraqi agreement — falls within the scope of the privilege.

The Government contends that "the disclosure of the withheld information could cause risk to national security and impact Defendants' ability to carry out the agency missions or operations for several reasons." Gov. Mem. at 7-8. These reasons include the safety of the negotiating officers, ICE's ability to engage with foreign governments to repatriate aliens, and the potential chilling effect on future negotiations. Petitioners argue that the privilege is inapplicable, because the Government has not demonstrated that any harm will befall the ICE or DHS agents if their identities are revealed; they note that the Government has already disclosed others involved in the negotiations with Iraq. They also argue that the type of information sought, the names of those involved in a diplomatic negotiation, is not the type of information envisioned by the privilege, and that disclosure of the information will not harm future collaborative relationships.

The Court agrees with Petitioners. As noted above, the law enforcement privilege is meant to protect law enforcement techniques; confidentiality of sources, witnesses and law enforcement personnel; the privacy of individuals; and otherwise prevent interference with an investigation. MacNamara, 249 F.R.D. at 78. Petitioners are not asking for techniques or procedures, the names of confidential sources, or seeking to interfere in an investigation. Nor would answering Interrogatory 12 touch on any of that.

While the Government argues that ICE agents involved in the negotiations could be subject to harassment if their identities are revealed, this is belied by the disclosure of other ICE and DHS officials who have participated in the crafting of the purported Iraqi agreement, and the disclosure of similar officials in other recent litigation. In this case alone, the Government has identified, among others, Michael Bernacke, John Schultz, Jr., and Elizabeth Estrada, three senior ICE officials whose responsibilities include obtaining travel documents from foreign countries and coordinating repatriation with those countries. See Table of ICE Officials, Ex. 9 to Pet. Resp. (Dkt. 269-10). In another recent case, the Government has identified Julius Clinton, an ICE official who coordinates with foreign governments to obtain travel documents. Id. No claims of harassment of any of those individuals have been reported.

The Government also claims that disclosure would impede ICE's repatriation efforts, and chill future negotiations. It contends that "[i]n general, courts have been deferential to the need for protection of sensitive information, including with foreign governments." Gov. Reply at 7. However, it cites no authority where the identity of those involved in diplomatic negotiations was held to be protected by law enforcement privilege; indeed, it does not cite any cases involving the law enforcement privilege and foreign policy. It instead relies on conclusory assertions that "the disclosure of the withheld information could cause risk to national security and impact Defendants' ability to carry out the agency missions." The Government's burden "must be discharged by presenting those facts that are the essential elements of the privileged relationship and not by mere conclusory or ipse dixit assertions." MacNamara, 249 F.R.D. at 85 (internal citation and quotations omitted). As a result, the identity of those involved in the negotiation of the Iraqi agreement does not fall within the scope of the law enforcement privilege.

Even if this information was covered by the law enforcement privilege, the privilege is qualified. See In re Sealed Case, 856 F.2d at 272. "The public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." Id. In order to balance the needs of the Government against a particular litigant, courts in this Circuit have applied the factors set forth in Tuite v. Henry, 181 F.R.D. 175, 177 (D.D.C. 1998). See In re Packaged Ice Antitrust Litig., 2011 WL 1790189 at *6.[1] The factors are a non-exhaustive list of issues for courts to consider when determining whether to order disclosure after the law enforcement privilege has been properly asserted:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is nonfrivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

The applicable Tuite factors weigh in favor of disclosure.[2] In its memorandum, the only Tuite factor addressed by the Government is the second factor — the impact upon those who have

---

[1] Other courts use the identical test set forth in Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973), superseded on other grounds by rule change as recognized by Crawford v. Dominic, 469 F. Supp. 260 (E.D. Pa. 1979).

[2] Some courts weigh the Tuite factors as part of the third requirement set forth in In re Sealed Case, i.e., whether the information for which privilege is claimed falls within the scope of the privilege, as opposed to applying the Tuite factors after it has been determined that all three requirements

given information of having their identities disclosed. As discussed above, the impact of disclosing the names of the ICE and Iraqi officials in question will be minimal, certainly not enough to chill future negotiations. That ICE officials engage with foreign governments, and vice versa, in order to repatriate aliens is well-known, and has been acknowledged by the Government in this case and others. The Government's argument is further undermined by the revelation that, in response to a Freedom of Information Act request by amici Chaldean Community Foundation, the Government disclosed the names of two Iraqi government officials involved in the repatriation negotiations at issue. See 3/12/2017 memo, Ex. 3 to Pet. Supp. Mem. (Dkt. 293-4).

In its reply, the Government argues that the third factor – the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure – is also applicable and weighs in its favor. The Government argues that if other foreign contacts learned that the names of negotiating partners were disclosed, it would have the potential to chill future negotiations and inhibit ICE's immigration and law enforcement missions. It is unclear whether this factor, meant to protect an agency's internal communications regarding shortcomings and ways to improve, applies to an assertion that disclosure will chill future diplomatic negotiations.

Even if this factor is applicable, the remaining relevant factors weigh in favor of Petitioners. It is clear that this suit merely seeks factual data, as opposed to an evaluative summary, and is brought in good faith. It is also clear that this crucial discovery information is not available anywhere else.

---

have been met. See, e.g., Singh v. S. Asian Soc'y of George Washington Univ., No. 06-574, 2007 WL 1556669, at *3 (D.D.C. May 24, 2007). Because the court in In re Sealed Case addressed the Tuite factors after it determined the three requirements had been met, this Court chooses to follow that approach.

The final factor — the importance of the information sought to Petitioners' case — weighs heavily in favor of Petitioners. In its order granting in part Petitioners' motion for preliminary injunction, the Court specifically ordered discovery to determine the viability of Petitioners' <u>Zadvydas</u> claim. It held that the lack of a repatriation agreement with Iraq would entitle the detainees to release, because there would be no likelihood of removal in the reasonably foreseeable future. To determine whether such an agreement exists, Petitioners need to speak with those involved in the repatriation negotiations with Iraq. Disclosing the identity of individuals involved in the negotiations will allow Petitioners to determine who to depose, and the significance of certain documents disclosed by the Government. With regard to the identity of the Iraqi officials involved in the negotiations, this information will help Petitioners determine whether the agreement is binding on the Iraqi government. If the discussions were held with lower-level officials without the ability to authorize large-scale or involuntary repatriation, this information would be pertinent to Petitioners' <u>Zadvydas</u> claim. This information will also assist Petitioners as they sort through the voluminous documents that the Government is in the process of disclosing. For all of these reasons, the Court holds that Petitioners' need for the names of those involved in negotiations between the American and Iraqi Governments regarding repatriation outweighs any interest the Government has in nondisclosure.[3]

## II. CONCLUSION

---

[3] The Court briefly addresses the remaining factors that the parties deemed inapplicable. The first factor does not apply because this case does not involve citizens outside the government divulging information. The fifth factor, whether the party seeking the discovery is a defendant in a criminal case, does not apply here. The sixth factor, whether the investigation has been completed, also does not apply. Even if characterized as an investigation, the Government has not indicated that the negotiations with Iraq are ongoing. Finally, the seventh factor, whether any disciplinary proceedings may arise, is not at issue here.

For the reasons stated above, the Court orders that the Government shall respond to Petitioners' Interrogatory 12 within seven days.

SO ORDERED.


Dated:  May 31, 2018                                    s/Mark A. Goldsmith
          Detroit, Michigan                            MARK A. GOLDSMITH
                                                       United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 31, 2018.

                                                       s/Karri Sandusky
                                                       Case Manager