# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA JAMIL HAMAMA, et al.,

    Petitioners and Plaintiffs,

v.

REBECCA ADDUCCI, et al.,

    Respondents and Defendants.

Case No. 2:17-cv-11910
Hon. Mark A. Goldsmith
Mag. David R. Grand
Class Action

### DECLARATION OF SCOTT A. WHITTED

I, Scott A. Whitted, do hereby declare:

1. I am a Deputy Chief of the District Court Litigation Division (DCLD) of the Office of the Principal Legal Advisor (OPLA), U.S. Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security. I have been employed by ICE and the former Immigration and Naturalization Service since May 2002, and have held my current position since August 4, 2011. I make this declaration based upon my personal knowledge and upon information furnished to me in the course of my official duties.

2. As a Deputy Chief of DCLD, I have overseen the work of ICE's agency counsel on this litigation as well as other litigation matters in which ICE is a party or otherwise has an interest. I also am familiar with OPLA's organizational structure and staffing.

3. In addition to its Headquarters (HQ) in Washington, D.C., OPLA has 26 field offices in more than 60 locations throughout the United States. OPLA presently employs a total of approximately 1,100 attorneys, approximately 150 of whom are assigned to OPLA HQ and approximately 950 of whom are assigned to OPLA field offices. By statute, OPLA is responsible for providing specialized legal advice to the ICE Director and serves as the exclusive

1

representative of the Department of Homeland Security (DHS) in exclusion, deportation, and removal proceedings before the immigration courts and Board of Immigration Appeals (BIA). 6 U.S.C. § 252(c). OPLA attorneys are currently responsible for handling approximately 678,000 such cases. Through the Special Assistant United States Attorney program, OPLA attorneys prosecute criminal cases in federal district courts. OPLA also provides a full range of legal services to all ICE programs and offices. These services include providing legal advice, training, and prudential counsel to ICE personnel on their law enforcement authorities, legal liability under the Federal Tort Claims Act and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the Freedom of Information Act and Privacy Act, ethics, and a range of administrative law issues, such as contract, fiscal, and employment law. OPLA represents the agency before the Merit Systems Protection Board, the Equal Employment Opportunity Commission, and the Contract Board of Appeals. OPLA attorneys support the Department of Justice (DOJ) in the prosecution of ICE cases, in the defense of civil cases against ICE, and in third-party cases where federal interests may warrant DOJ involvement.

4. Within OPLA HQ, Enforcement and Litigation, composed of approximately 70 non-supervisory attorneys, is responsible for the Agency's response to federal court litigation challenging its law enforcement authorities, guides overall litigation strategy in class-action litigation against the Agency, and advises ICE senior leadership in specialized subject matter areas. Enforcement and Litigation comprises four divisions: DCLD, the Enforcement and Removal Operations Law Division, the Homeland Security Investigations Law Division, and the Immigration Law and Practice Division.

5. A total of 17 attorneys, including supervisory attorneys, are assigned to DCLD. DCLD attorneys handle matters relating to litigation in the federal courts, including claims under

the Federal Tort Claims Act, *Bivens* suits, and constitutional challenges seeking declaratory and injunctive relief. DCLD also assists ICE employees with requests for DOJ representation when they are sued in their individual capacities for actions performed within the scope of employment. DCLD attorneys are presently working on approximately 300 lawsuits, over 50 of which are class action lawsuits. OPLA is currently handling document review and other discovery responses for a number of these cases, all with competing deadlines.

6. In response to Petitioners' Amended First Set of Requests for Production of Documents and Things to Respondents, ICE collected electronically stored information (ESI) from six potential custodians. The declaration of John Schultz, dated March 30, 2018, describes how custodians were identified and how the potentially relevant documents were collected.

7. As of this date, the ESI for the six custodians has been uploaded into OPLA's e-discovery platform, Relativity. After de-duplication, the total number of potentially relevant documents collected is more than 28,000. After threading emails (a threaded e-mail is one that includes the original e-mail, plus all replies and forwards: the last e-mail in a chain, essentially), the total number of potentially relevant documents collected is more than 19,000. Because not all documents have been imaged in Relativity, at this time OPLA is unable to provide an estimate as to the total number of pages that will need to be reviewed, only an estimate of the number of documents that need to be reviewed. OPLA has completed first-line review of over 3,000 of the documents which yielded approximately 580 potentially responsive documents. OPLA completed second-line review of approximately 110 of the potentially responsive documents and determined that only 49 documents were responsive. Due to technical issues, OPLA was able to produce approximately 25 of the responsive documents by Tuesday, June 19, 2018 which totaled 150 pages.

8. In conducting the review, ICE reviewers will need to make a determination as to whether each document is responsive to Petitioners' requests for production (RFPs). In addition to assessing responsiveness for each document, ICE reviewers will also need to make a determination as to whether any document, or portion of a document, should be redacted based on a privilege — such as, law enforcement, attorney-client communication, attorney work product — or a statutory or regulatory prohibition on disclosure. Notably, reviewers must ensure that no part of a document that is released contains information that relates to an alien who is the beneficiary of an application for relief under the Violence Against Women Act, a human trafficking victim (T visa beneficiary), or victims of serious crimes (U visa beneficiary), in violation of 8 U.S.C. § 1367. This is to minimize the risk that information about domestic violence victims, trafficking victims, and victims of serious crimes, is disclosed, which could place such individuals in danger. To minimize the number of times documents were reviewed, first-line review did not begin until after the Second Amended Protective Order was issued on June 4, 2018 [see ECF No. 299]. The protective order dictated how documents needed to be marked and what information may need to be redacted. It was important for the Second Amended Protective Order to be in place first to avoid the potential issue of having to review documents until disputes on the amended protective order was in place. Until the Second Amended Protective Order were resolved, reviewers could not be given guidance for how to mark documents during review.

9. In light of the volume of discovery at issue in this case, OPLA has assigned a number of attorneys from DCLD, other divisions, and field offices nationwide to work on the discovery. OPLA has approximately 12 individuals from OPLA HQ and its field offices who have been working on the review and redaction of the documents. This number varies during

4

the discovery process depending on OPLA's workload, including additional litigation demands and immigration court appearances, and attorney leave. Because these reviewers have other workload demands, such as appearances in immigration court and meeting deadlines on other cases, they are available only part-time, an estimated ten hours per week, to perform document review. The DCLD attorneys responsible for *Hamama*, in addition to managing discovery productions – including obtaining, reviewing, and serving A-files, are also responsible for addressing plaintiff's allegations; discussing options with the client; being available to address DOJ's questions during hearings; working with DOJ on drafting language for the court orders; working through the JSI - including dealing with last-minute additions from opposing counsel; and compiling the biweekly report. Additionally, these attorneys are also managing other cases with competing demands.

10. Based on the review completed thus far, completing review of 1,000 documents will not equal 1,000 responsive documents or 1,000 pages to be produced. As not every document is responsive, there is no way to determine, until review is conducted, what will be responsive and how many pages those responsive documents will amount to. Furthermore, the number of pages produced can only be determined once the documents are ready for production. Thus, OPLA cannot estimate ahead of time the number of pages that can be produced in any given week. Based on the number of responsive documents produced thus far, and the number of pages in each document, it appears that ICE may not have 1,000 pages of documents to produce. However, ICE will work to review documents on a regular schedule and produce any responsive material each week.

11. Barring any technical issues, we anticipate completing review and production of responsive documents by August 3, 2018. Because ICE cannot estimate the number of pages it

5

can produce or how much responsive material ICE may have in any given week, ICE has based its estimates on the number of documents that can be reviewed each week. ICE completed first-line review of 3,000 documents in one week, which would require approximately 6.5 weeks to complete all first-line review. ICE is willing to work to increase first-line review completion goals to 3800 pages per week, which would result in completion of first-line review 4.5 weeks. ICE will second-line review throughout the process and produce responsive documents each week. Once first-line review is fully complete, ICE would then need an additional two weeks from completion of first-line review to complete second-line review and production of any remaining responsive documents.

Pursuant to the authority of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 19th day of June, 2018, at Williston, Vermont.

*/s/ Scott A. Whitted*
Scott A. Whitted
District Court Litigation Division
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
Department of Homeland Security