# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **USAMA J. HAMAMA**, et al.,<br>Petitioners and Plaintiffs,<br><br>v.<br><br>**REBECCA ADDUCCI**, et al.,<br>Respondents and Defendants. | Case No. 17-cv-11910<br><br>Hon. Mark A. Goldsmith<br>Mag. David R. Grand<br><br>Class Action |

## PETITIONERS/PLAINTIFFS' BRIEF IN OPPOSITION TO RESPONDENT ICE'S MOTION FOR MODIFICATION OF DISCOVERY ORDER (ECF 304)

## QUESTION PRESENTED

1. Have Respondents established by clear and convincing evidence that there is exceptional good cause for not meeting the court-ordered production schedule to respond to document requests that were served on January 14, 2018?

**Petitioners' Answer: No**


2. Should the Court order Respondents to assign sufficient staff to conduct document review to meet the Court's production schedule?

**Petitioners' Answer: Yes**

## I.  Introduction

During the first half year that Petitioners' document requests were pending, ICE produced exactly two documents, totaling three pages. Respondents' counsel admitted these documents had been specially created for this litigation, complete with self-serving statements in support of Respondents' defenses.[1] In response to the glacial pace of Respondent's productions, this Court, on June 12, 2018, ordered:

> Respondents shall produce documents weekly on the following rolling basis: 1,000 pages of documents on each of the following dates: (i) June 19, 2018; (ii) June 26, 2018; (iii) July 3, 2018; and (iv) July 10, 2018. The balance of documents shall be produced July 17, 2018. . . . **Failure to produce documents on this schedule will be construed, presumptively, as bad faith, unless Respondents can establish by clear and convincing evidence that there is exceptional good cause for not meeting the schedule**.

Order re Further Proceedings ("Production Order"), ECF 304, Pg.ID# 7239-40 (emphasis added).

ICE has not supplied clear and convincing evidence to establish good cause, much less exceptional good cause, justifying failure to comply with this Court's Production Order. To the contrary, ICE admits that it did not even **begin** reviewing documents until June 4, 2018, nearly six months after the discovery requests were

---

[1] On April 10, 2018, Respondents' counsel also promised to produce a copy of the original flight manifests, but, to date, the records have not been produced.

issued. And ICE further admits that it has not assigned a single person to work full time on the document review, which is significantly understaffed.

Petitioners therefore respectfully request that the Court order that:

1. ICE appropriately staff the document review by assigning a sufficient number of staff to work a sufficient number of hours so that Respondents can meet their obligations under the Production Order[2];

2. ICE produce a total of 2,000 pages of documents by June 26, 2018, which shall include the following specific records (which should present minimal burden as Respondents' custodians have already identified records they believe are responsive to the requests, *see* ECF 269-8, Palmer Decl. at ¶¶ 8-9; ECF 269-7, Decl. Schultz at ¶¶ 4-11):

    a. the Iraqi Agreement, to the extent any purported agreement is memorialized in a document, and its terms (Request No. 1);
    b. requests from Respondents or other departments of the U.S. government for travel documents and repatriation for class members, and the responses from the Iraqi government (Request Nos. 2 and 3);
    c. charter flight manifests and the responses from the Iraqi government (Request No. 4);
    d. documents relied on or cited by Respondents in answering the interrogatories, including the sample records used to answer Interrogatory No. 11 (Request No. 5);

---

[2] It appears that simply doubling the number of hours of the staff currently assigned to the review – from 10 hours per week to 20 hours per week – would allow ICE to meet the court-ordered deadlines.

2

    e. documents relied on by Messrs. Schultz and Bernacke in drafting or confirming the accuracy of the statements made in their declarations (Request Nos. 6 and 7); and

    f. documents memorializing agreements relating to the repatriation of Iraqi nationals that have arisen from the "ongoing diplomatic negotiations" referenced in Mr. Bernacke's declaration, including those "discussions" listed in in response to Interrogatory No. 12 (Request No. 8).

If there are more than 2,000 pages of documents responsive to subparagraphs (a)-(f), the Court should order ICE to prioritize those documents in subsequent productions.

3. If ICE does not possess the records described in paragraph 2, file a declaration by June 26, 2018, stating the efforts undertaken to locate the records and that no records exist.

4. Comply with the remainder of the Production Order and produce 1,000 pages of documents on July 3, 2018, and July 10, 2018, and the balance of the documents by July 17, 2018.

5. Bar Respondents from introducing into evidence, or attaching to any pleading, any document that is not produced in accordance with this production schedule.

## II.   ICE Has Failed to Respond to Discovery Requests Within a Reasonable Time Frame.

Petitioners' document requests were served on January 14, 2018, more than six months ago.[3] Respondents' written responses and objections, as well as the production of responsive documents, were due on February 13, 2018 (thirty days after service of the requests). Respondents failed to produce either responsive documents or written objections by the deadline, but took the position that the "meet and confer" process altered the normal discovery timelines. Respondents did not produce documents that were not in dispute.

After the parties discussed Respondents' failure to produce documents at a status conference on March 7, 2018, the Court ordered Respondents to begin production of documents no later than March 30, 2018. ECF 254, Pg.ID# 6230 at ¶ 22. On March 30, 2018, Respondents informed the Court that Respondent DHS had identified 50 potentially responsive documents, that DHS intended to start production on March 30, and that DHS anticipated completing production on April 27. ECF 266-1, Pg.ID# 6456. On the same day, ICE submitted a status report to the Court claiming it could not produce records due to technology issues with its Relativity database. ECF 266-2.

---

[3] Respondents had notice of those requests much earlier. Petitioners first sought discovery in October of 2017, ECF 130, which the Court did not allow to proceed at that time. The document requests served in January were more narrowly tailored versions of those promulgated in October.

4

On the same day, Respondents produced three documents totaling four pages—DHS produced a heavily redacted[4] one-page document from DHS and ICE produced two documents (consisting of three pages) purporting to represent the April and June 2017 flight manifests of Iraqi nationals. Two of the three documents are not copies of original documents that existed in Respondents' files but, rather, are records created by Respondents' counsel for this litigation that contain self-serving statements in support of Respondents' defenses.

On April 6, 2018, ICE again reported that it "began its production on March 30" (even though it had only produced two documents), that it had identified 20,000 potentially responsive records, and that it anticipated it would take four months (until July 2018) to complete its production. ECF 267, Pg.ID# 6464.

On April 13, Respondents promised another status report, but missed that deadline without any explanation, and ignored inquiries from Petitioners' counsel as to when a report would be forthcoming. *See* ECF 266, Pg.ID# 6452; ECF 286, Pg.ID# 6785-89.

On April 16, DHS produced 46 pages of non-responsive documents as a single PDF: letters sent in June 2017 from members of Congress, Michigan's House of Representatives, the United States Conference of Catholic Bishops, and

---

[4] Respondents redacted the one page document on the basis that the redacted text is "[b]eyond the scope of discovery (not relevant to claims and defenses)." *See* ECF 286, Pg.ID# 6786. Such redactions are improper. *See* Section III.D below.

5

the Evangelical Immigration Table to President Trump, DHS and John Kelly questioning DHS's detention and anticipated repatriation of Iraqi nationals; and copies of the exact same response sent by Acting ICE Director Homan on August 16, 2017, to each signatory of the letters explaining in general terms ICE's enforcement policies, immigration processes, and the arrests of class members. This PDF contains no information responsive to the Petitioners' document requests, which were limited to very specific documents.

On April 20, 2018, ICE's declarant Scott Whitted stated that the agency's problems with its discovery platform, Relativity, had been largely resolved as of April 19, 2018. He estimated that from that point forward it would take 11 weeks to complete the production. *See* ECF 272-1, Pg.ID #6603, ¶ 12 ("I estimate it will take a total of eleven weeks to complete the document production—one week for training reviewers, eight weeks to complete the initial, first-level review, and two weeks to complete the final, second-level review.").

During the May 25, 2018 status conference, the government represented to this Court that Respondents would start producing a substantial number of records as soon the Second Amended Protective Order was entered. In fact, what ICE has produced so far—on June 19—is just an additional 25 records amounting to approximately 150 pages, Whitted Decl. ¶ 7, ECF 315-1, Pg.ID #7570 ¶ 7, consisting almost entirely of requests for travel documents.

### III. ICE Has Not Shown "Exceptional Good Cause" for Failing to Comply with This Court's Production Deadlines.

There are three reasons for Respondents' failure to comply with this Court's production deadlines. First, ICE delayed the start of document review. Second, ICE has significantly understaffed the process. Third, ICE is conducting document selection and review inefficiently. None of these reasons constitute good cause, much less exceptional good cause.

### A. ICE inappropriately delayed the start of document review.

On April 20, Scott Whitted declared under penalty of perjury that ICE "has assigned attorneys from DCLD, other divisions, and field offices nationwide to work on the discovery" in this case, stating that ICE "presently has approximately ten individuals . . . who are available to assist" with the review. ECF 272-1, Pg.ID# 6602, ¶ 10. The language used—in particular "has assigned" and "presently"—implied that these individuals had already started reviewing. Mr. Whitted estimated that it would take 11 weeks to complete the production. *See* ECF 272-1, Pg.ID #6603, ¶ 12 ("I estimate it will take a total of eleven weeks to complete the document production—one week for training reviewers, eight weeks to complete the initial, first-level review, and two weeks to complete the final, second-level review.") **In other words, if the review had, as implied, been started at that time, the first-level review would have been completed by this coming Friday, June 22 and the second-level review by July 5.**

7

Notwithstanding that prior language, ICE now admits that "first-line review did not begin until after the Second Amended Protective Order was issued on June 4, 2018" and that it has reviewed only 3,000 out of the 28,000 potentially responsive records. ECF 315-1, Pg.ID #7570-71, Whitted Decl. ¶¶ 7-8. In purported justification for this previously undisclosed delay, Mr. Whitted states: "Until the Second Amended Protective Order were resolved [sic], reviewers could not be given guidance for how to mark documents during review." *Id.* ¶ 8. But Respondents knew the contours of the (limited) disputes about the Second Amended Protective Order and could easily have started reviewing documents that were not affected—for example, documents that are not "confidential" or "highly confidential" as those terms are defined in the protective order; or documents that are confidential but not highly confidential, and whose treatment therefore was not part of the negotiations. Moreover, the benefit of an e-discovery system like Relativity is that it allows easy tagging, redactions, and designations, and easy global changes to the tagging and designations of records. So Respondents could have specially tagged anything still under negotiation and then dealt with those tags globally after entry of the Second Amended Protective Order.

Had Respondents disclosed that they were stalling discovery during the protective order negotiation, Petitioners could have sought a remedy for that unjustified delay. Instead, Respondents used language that suggested that docu-

ment review had begun in April—and affirmatively told the Court in late May that a substantial number of documents would be produced immediately following entry of the Second Amended Protective Order[5]—assurances inconsistent with the government's newest filing.

### B. ICE has understaffed document review.

ICE proposes to staff its document review with twelve individuals, ten hours per week; this, it says, will allow it to complete the process in a bit over six weeks (by August 3). *See* ECF 315, Pg.ID #7564-65; ECF 315-1, Pg.ID #7571-73. In other words, ICE estimates that what is required is about 744 person hours. (12 people, 10 hours/week, 6.2 weeks = 744 hours.) This is the equivalent of just three full-time reviewers, over that period. The moderate step of doubling the number of hours per week per already-assigned-and-trained person, to 20 hours, would more than suffice to get the work done on time, by July 17. (12 people, 20 hours/week, 3.1 weeks = 744 hours.)

### C. ICE's document selection and review are inefficient.

Respondents have made a number of choices in conducting the document review that reduce their own efficiency. They have:

- chosen to redact non-responsive materials from otherwise responsive documents;

---

[5] Respondents' counsel gave this assurance during the May 25, 2018 status conference.

9

- chosen initially to redact law enforcement sensitive materials and only belatedly (nearly 4½ months after the discovery requests were issued) raising with Petitioners the option of amending the Protective Order so that it now addresses most (if not all) of their concerns about law-enforcement-sensitive documents; and
- used overbroad search terms (like "Iraqi" and "Baghdad", *see* ECF 269-7, Schlutz Decl. at ¶¶ 5, 6, 8, 10).[6]

All of these decisions are delaying what should be a fairly straightforward production of specific records:

- the Iraqi Agreement and its terms;
- the flight manifests and Iraq's responses to the flight manifests;
- Respondents' requests for travel documents and repatriation, and Iraq's responses;
- records relied on by Messrs. Schultz and Bernacke in their declarations stating an Iraqi agreement exists (although, as Respondents belatedly disclosed, it is an oral agreement and is purportedly part of ongoing discussions); and
- the records relied on by Respondents in answering the interrogatories.

Far from demonstrating exceptional good cause, what is going on here is that the government has, over and over again, made choices that slow discovery. Getting back on track would take only a small increase of personnel resources over the next month. The Court should retain its prior schedule.

## IV. Respondents' Unjustified Delays Are Prejudicing Petitioners.

Approximately 130 class members remain behind bars. As recent events in

---

[6] At the May 25 status conference, the Court asked Respondents' counsel why ICE's review set was so large, given the limited number of custodians and the limited relevant time period. Respondents' counsel was going to report back on what efforts had been made to cull the review set prior to review—such as date limitations—but to date has not provided any information.

10

Stewart have shown, there is good reason to believe that Iraq will not accept their repatriation, and that their continued detention is unlawful under *Zadvydas v. Davis,* 533 U.S. 678 (2001)**.** Every three days that claim remains unresolved sums to over a year of human life behind bars.

Not only do Respondents' delays perpetuate suffering, but they also severely handicap Class Counsel in their efforts to alleviate that suffering. Almost all of the evidence relevant to the *Zadvydas* claim is in the government's hands. Respondents have had no difficulty presenting evidence to the Court when it suits their purposes—whether that involves standing up in the middle of a hearing with previously undisclosed documents, as occurred on Monday; or submitting carefully worded declarations that present an ever-evolving and inconsistent picture of Iraq's position. The point of discovery is to level the playing field. The government should not be allowed to pick and choose what evidence the Petitioners—and this Court—get to see.

The government's slow-walking of discovery also jeopardizes Class Counsel's ability to conduct effective depositions. Without access to the relevant documents, counsel are going into the upcoming depositions half-blind, with a limited ability to spot evasive or incorrect answers by the deponents. For example, Respondents have yet to produce the documents relied on by Messrs. Schultz and Bernacke in drafting or confirming the accuracy of the statements made in their

11

declarations (Request Nos. 6 and 7), or the documents memorializing agreements relating to the repatriation of Iraqi nationals that have arisen from the "ongoing diplomatic negotiations" referenced in Mr. Bernacke's declaration (Request No. 8). Producing those documents should present no burden to the government, since Messrs. Schultz and Bernacke relied on them in writing their declarations, and will presumably be reviewing them once more in preparation for their depositions, which are to be completed by July 13. ECF 316, Pg.ID# 7578. For that reason, Petitioners ask that Respondents be required to prioritize those documents, and others that are most important, as outlined above.

## V. Conclusion

Respondents' motion should be denied, and the Court should order the relief Petitioners have requested in Section I above.

Respectfully submitted,

| | |
|---|---|
| Michael J. Steinberg (P43085) | Judy Rabinovitz (NY Bar JR-1214) |
| Kary L. Moss (P49759) | Lee Gelernt (NY Bar LG-8511) |
| Bonsitu A. Kitaba (P78822) | ACLU FOUNDATION |
| Miriam J. Aukerman (P63165) |   IMMIGRANTS' RIGHTS PROJECT |
| ACLU FUND OF MICHIGAN | 125 Broad Street, 18th Floor |
| 2966 Woodward Avenue | New York, NY 10004 |
| Detroit, Michigan 48201 | (212) 549-2618 |
| (313) 578-6814 | jrabinovitz@aclu.org |
| msteinberg@aclumich.org | |

*/s/Kimberly L. Scott*
Kimberly L. Scott (P69706)
Wendolyn W. Richards (P67776)
Cooperating Attorneys, ACLU Fund
 of Michigan
MILLER, CANFIELD, PADDOCK
 & STONE, PLC
101 N. Main St., 7th Floor
Ann Arbor, MI 48104
(734) 668-7696
scott@millercanfield.com

Nora Youkhana (P80067)
Nadine Yousif (P80421)
Cooperating Attorneys, ACLU Fund
 of Michigan
CODE LEGAL AID INC.
 27321 Hampden St.
Madison Heights, MI 48071
(248) 894-6197
norayoukhana@gmail.com

María Martínez Sánchez (NM Bar126375)
ACLU OF NEW MEXICO
1410 Coal Ave. SW
Albuquerque, NM 87102
msanchez@aclu-nm.org

Margo Schlanger (P82345)
Cooperating Attorney, ACLU Fund
 of Michigan
625 South State Street
Ann Arbor, Michigan 48109
734-615-2618
margo.schlanger@gmail.com

Susan E. Reed (P66950)
MICHIGAN IMMIGRANT RIGHTS
 CENTER
3030 S. 9th St. Suite 1B
Kalamazoo, MI 49009
(269) 492-7196, Ext. 535
Susanree@michiganimmigrant.org

Lara Finkbeiner (NY Bar 5197165)
Mark Doss (NY Bar 5277462)
INTERNATIONAL REFUGEE
 ASSISTANCE PROJECT
Urban Justice Center
40 Rector St., 9th Floor
New York, NY 10006
(646) 602-5600
lfinkbeiner@refugeerights.org

*Attorneys for All Petitioners and Plaintiffs*

William W. Swor (P21215)
WILLIAM W. SWOR
 & ASSOCIATES
1120 Ford Building
615 Griswold Street
Detroit, MI 48226
wwswor@sworlaw.com

*Attorney for Petitioner/Plaintiff Usama Hamama*

Dated: June 21, 2018

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2018, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF filers of record.

By: */s/Kimberly L. Scott*
Kimberly L. Scott (P69706)
Cooperating Attorneys, ACLU Fund of Michigan
MILLER, CANFIELD, PADDOCK
  & STONE, PLC
101 N. Main St., 7th Floor
Ann Arbor, MI 48104
(734) 668-7696
scott@millercanfield.com