UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA J. HAMAMA, et al.,

        Petitioners,                        Case No. 17-cv-11910

vs.                                                     HON. MARK A. GOLDSMITH

REBECCA ADDUCCI, et al.,

        Respondents.
_____/

## SECOND OPINION & ORDER
## DENYING RESPONDENTS' MOTION TO DISMISS (Dkt. 135), AND GRANTING PETITIONERS' AMENDED MOTION TO CERTIFY CLASS (Dkt. 139)

On January 2, 2018, the Court entered an opinion and order denying in part Respondents' (the "Government's") motion to dismiss, and granting in part Petitioners' amended motion to certify class (Dkt. 191). The Court deferred ruling on certain counts in the Second Amended Petition (Dkt. 118) and deferred ruling on certification of the primary class. The Second Amended Petition sets forth claims pertaining to detention (Counts IV-VI), as well as those based on removal (Counts I-II), transfer and right to counsel (Count III), and an access-to-files claim (Count VII). The Court denied the Government's motion to dismiss with respect to Counts IV-VI, but deferred ruling on the other counts. See 1/2/2018 Op. at 45, PageID.5362. In a July 9, 2018 Joint Statement of Issues, Petitioners agreed to voluntarily dismiss Counts III and VII.[1] Therefore, the only outstanding claims are a statutory claim alleging a right to access the immigration courts prior to removal (Count I), and a due process claim alleging the same (Count II). For the reasons set forth

---

[1] Because of the critical importance of Petitioners' files, the Court will continue to enforce its existing orders regarding file production, and enter further orders on file production as necessary.

1

below, the Court denies the Government's motion to dismiss and grants Petitioners' motion to certify the primary class.

## I.  BACKGROUND

As recited in the Court's prior opinions, this case arises out of the arrest and detention of Iraqi nationals who are or were subject to long-standing final orders of removal.  See, e.g., Hamama v. Adducci, 261 F. Supp. 3d 820 (E.D. Mich. 2017).  In June 2017, agents from U.S. Immigration and Customs Enforcement ("ICE"), a division of the U.S. Department of Homeland Security ("DHS"), began arresting hundreds of these Iraqi nationals, the majority of whom are Chaldean Christians who would face persecution, torture, and possibly death if returned to Iraq. The initial round-up took place in Michigan, snaring approximately 114 individuals.  Am. Hab. Pet. ¶ 5 (Dkt. 118).  The number has since swelled to over 300, many of whom are still in Michigan detention facilities, with others scattered to various detention facilities throughout the country.  Id. ¶¶ 5, 7, 12.

The vast majority of these individuals were ordered removed to Iraq years ago (some decades ago), because of criminal offenses they committed while in the United States.  Id. ¶ 2.  All of the detainees served their sentences and were released long ago, under orders of supervision because Iraq refused to accept repatriation.  Id.  According to Petitioners, they lived peaceably in their respective communities under the orders of supervision — a point the Government does not contest.  Id.

While the detainees were scheduled for imminent removal following their arrests, this Court enjoined their removal in a July 24, 2017 ruling.  See Hamama, 261 F. Supp. 3d at 841-842. In its ruling, the Court held that while the REAL ID Act, 8 U.S.C. § 1252, prohibits habeas actions that arise out of the Attorney General's decision to execute orders of removal, the act was

unconstitutional, as applied, because it suspended Petitioners' habeas rights. While the REAL ID Act provides an alternative to habeas actions (an administrative challenge in immigration courts, followed by a petition for review in the courts of appeals), the Court held that the circumstances of this case effectively foreclosed access to this alternative prior to removal.

Having concluded that the Court had jurisdiction to rule on Petitioners' habeas claims, the Court determined that Petitioners were entitled to a preliminary injunction enjoining their removal until they had a meaningful opportunity to challenge the continued validity of their orders of removal — under the Convention Against Torture ("CAT"), Dec. 10, 1984, 23 I.L.M. 1027, 1465 U.N.T.S. 85, as implemented by 8 C.F.R. § 208.18 and other authorities — in immigration courts and, if necessary, the courts of appeals.

## II. STANDARDS OF DECISION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

With regard to class certification, "Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule . . . [S]ometimes it may

3

be necessary for the court to probe behind the pleadings before coming to rest on the certification question." Id. (quotation marks omitted).

### III. ANALYSIS

#### A. Motion to Dismiss

The Government seeks dismissal of Petitioners' claims as pled in the amended petition on the grounds that they are either jurisdictionally barred or fail as a matter of law. See generally Gov't Mot. to Dismiss (Dkt. 135). The Court will resolve the jurisdictional question before turning to the merits of the individual claims.

##### 1. Jurisdiction

The Court has addressed the Government's jurisdictional argument in two prior opinions. See 7/11/2017 Op. at 9-17, PageID.1233-1241 (Dkt. 64); 7/24/2018 Op. at 12-21, PageID.2334-2343 (Dkt. 87). Briefly, the Government characterizes Petitioners' claims as either directly or indirectly challenging the execution of their final orders of removal, and therefore argues that this Court lacks jurisdiction to consider Petitioners' claims under 8 U.S.C. § 1252(g). Gov't Mot. to Dismiss at 5, PageID.3285. What the Court said in its earlier opinions on jurisdiction remains true and bears repeating. The REAL ID Act, among other things, amended 8 U.S.C. § 1252 by adding language that expressly stated that habeas jurisdiction was withdrawn for any claims excluded by § 1252(g). Under ordinary circumstances, the REAL ID Act would apply to divest this Court of jurisdiction. The act states that, other than a petition for review in the courts of appeals following administrative adjudication, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

But this Court found that to enforce the REAL ID Act in the present circumstances violates the Constitution's Suspension Clause. The Suspension Clause states that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. "[T]he Supreme Court has noted that this Clause requires 'some judicial intervention in deportation cases.'" Muka v. Baker, 559 F.3d 480, 483 (6th Cir. 2009) (quoting I.N.S. v. St. Cyr, 533 U.S. 289, 300 (2001)). "However, the writ of habeas corpus is not suspended in violation of this Clause if, when the right to habeas is eliminated, there is 'the substitution of a new collateral remedy which is both adequate and effective' in allowing an individual to challenge the legality of his or her detention." Id. (quoting Swain v. Pressley, 430 U.S. 372, 381 (1977)).

The court in Muka directly addressed this issue in the context of the REAL ID Act, holding that, "[b]ecause there is a remedy available, a petition for review filed with the court of appeals, the REAL ID Act does not violate the Suspension Clause so long as a petition for review provides an 'adequate and effective' mechanism for relief." Id. at 484. The court further noted that "every circuit to confront this issue has agreed that, facially, the petition for review filed in the court of appeals provides an adequate and effective process to review final orders of removal, and thus the elimination of habeas relief does not violate the Suspension Clause." Id. at 484-485.

After ruling that the REAL ID Act was not subject to a facial challenge, the court in Muka addressed whether the petitioner had made out an as-applied challenge. The petitioners argued that a holding that the district court was without subject-matter jurisdiction would leave them without a judicial forum in which to seek a status adjustment under 8 U.S.C. § 1255(i). In rejecting this claim, the court noted that the petitioners "did have an avenue to argue their § 1255(i) claim — their original removal proceedings and their petition for review." Id. at 485. The court held that

"[s]imply because the [petitioners] failed to make a known argument during their prior proceedings does not mean that we must grant them a second bite at the apple to satisfy the Suspension Clause's requirements." Id. at 486. Regarding future as-applied challenges, the court stated, "[w]e do not say that there will never be an alien claiming protection under § 1255(i) who could make a successful as-applied challenge to the REAL ID Act. However, we leave this inquiry to future panels presented with different cases and <u>do not foreclose other distinct as-applied challenges</u>." Id. (emphasis added). Here, Petitioners are raising an as-applied challenge.

The crux of the Government's Suspension Clause argument is that there is a fully adequate procedure to reopen removal proceedings based on changed country conditions. However, Petitioners allege, among other things, that their status as religious minorities places them at grave risk of death, torture, and other forms of persecution if returned to Iraq. Am. Hab. Pet. ¶¶ 1, 8-9. This Court found that once removed, Petitioners would obviously lose any legal avenue for return if they were killed; if they were persecuted short of death, their efforts to stay alive through changing residences and jobs would impede their ability to maintain legal paperwork and communicate with lawyers and potential witnesses. 7/11/2017 Op. at 20, PageID.1244. Compounding the problem was the great number of potential arrestees – some 1,400 persons were at risk for deportation – which taxed the immigration bar and the immigration courts and impeded them from responding promptly before removal. Id. at 21, PageID.1245. The Government's transfer of arrestees to different locations within the country further frustrated efforts at communication with attorneys and preparation of court papers. Id. All of this led this Court to conclude that, "in the extraordinary context of this case," the procedures to reopen removal proceedings were neither adequate nor effective in light of the grave consequences facing Petitioners if removed to Iraq. 7/11/2017 Op. at 23, PageID.1247. Therefore, to enforce section

1252(g) under these circumstances would amount to a suspension of the right to habeas corpus. The Constitution prohibits that outcome.

Accordingly, the Court finds, as before, that because section 1252(g) may not be enforced, the Court is not stripped of jurisdictional grants found in other sources of the law, including 28 U.S.C. § 2241 (habeas); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1361 (mandamus).

### 2. Count I – INA and CAT/FARRA

By its terms, Count I contains broad pronouncements of legal principles, but no explicit statement regarding how those principles lead to any specific request for relief from the Court. Petitioners allege that the Government may not, consistent with the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 et seq., the Foreign Affairs Reform and Restructuring Act ("FARRA"), Pub.L. No. 105–277, Div. G, Title XXII, § 2242, 112 Stat. 2681–822 (1998) (codified as a note to 8 U.S.C. § 1231 (1999), and the CAT, remove noncitizens to countries where they will face death, persecution or torture, and that it has a duty to determine whether Petitioners and class members will face such possibilities if removed to Iraq. Am. Hab. Pet. ¶¶ 116-119. In its motion to dismiss, the Government argues that Count I should be dismissed, because Petitioners lack standing – premised on the theory that there is no relief that the Court can grant under the INA, FARRA and CAT. Gov't Mot. at 1-2, PageID.3281-3282. In response, Petitioners disclaim any intention of seeking substantive relief from this Court under these authorities; instead they seek only a "realistic opportunity to pursue relief in the immigration courts before being removed to Iraq." Resp. at 15, n.8, PageID.3963 (Dkt. 153). In reply, the Government notes that in the opinion granting the stay of removal, 7/24/2017 Op. at 12, PageID.2334 (Dkt. 87), the Court has already rejected Petitioners' position that they have a statutory right to litigate a motion to reopen before removal.

7

Because of a number of factors, the Court concludes that it would be prudent not to address this issue presently. This matter is currently before the Sixth Circuit in the appeals in this case; the appellate decision will be dispositive. Further, the legal viability of Count I is not presently of any consequence to the proceedings; at the district court level, the current injunction on removal does not depend on affirming or rejecting either party's view on Count I. As discussed below, the preliminary injunction is supported by Petitioners' due process claim, which may ultimately mean that the statutory claims have become or will become unnecessary or possibly moot. By contrast, the due process claim does support the injunction, and the remaining class motion issue may be of significance as the case proceeds. For these reasons, the Court denies without prejudice the Government's motion as to Count I.

**3. Count II – Procedural Due Process**

Petitioners also contend that they have a constitutional right not to be removed prior to adjudication of their motions to reopen. Specifically, Petitioners argue that the Fifth Amendment's Due Process Clause prohibits their removal prior to adjudication under the circumstances present here. Resp. at 12, PageID.3960. The Court found that Petitioners were likely to succeed on this claim in its opinion granting Petitioners' motion for a preliminary injunction. See 7/24/2018 Op. at 25-30 (Dkt. 87), PageID.2347-2352. It would be a perverse outcome to decide that Petitioners fail to state a claim upon which this Court already found they were likely to succeed on the merits. Indeed, the burden of proof "required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion," Leary v. Daeschner, 228 F.3d 729, 739 (6th Cir. 2000), which, of course, is more stringent than meeting the pleading standard set forth in Federal Rule of Civil Procedure 8. Therefore, based on the

Court's previous analysis, the Government's motion must be denied as to Count II for the reasons stated below.

The Government argues that this claim must fail because the procedures available to Petitioners are adequate and Petitioners have suffered no prejudice. Gov't Mot. to Dismiss at 14, PageID.3294. Petitioners disagree. They argue that due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. Resp. at 12, PageID.3960. Petitioners argue that the Government's current removal efforts will deny them the opportunity to be heard about the current country conditions in Iraq. Id. at 12-13, PageID.3960-3961. Additionally, they argue that they have suffered prejudice in the denial or impeded access to the immigration courts. Id. at 13, PageID.3961.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Id. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

"Fifth Amendment guarantees of due process extend to aliens in [removal] proceedings." Vasha v. Gonzales, 410 F.3d 863, 872 (6th Cir. 2005) (quoting Huicochea-Gomez v. INS, 237 F.3d 696, 699 (6th Cir. 2001)). "A violation of due process occurs when 'the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" Hassan v. Gonzales, 403 F.3d 429, 436 (6th Cir. 2005) (quoting Ladha v. INS, 215 F.3d 889, 904 (9th Cir. 2000)).

The Court agrees with the Government that the administrative process is equipped to adjudicate the substance of Petitioners' motions to reopen. But the process Congress erected can

9

only adjudicate claims that are actually before them. Petitioners allege that their efforts to prepare and file motions have been stymied by their successive transfers to out-of-state facilities, as well as by the reduced access to counsel those facilities afford Petitioners. Am. Hab. Pet. ¶¶ 72-77. These difficulties have prevented Petitioners from availing themselves of the administrative system's procedural protections. For those who have been able to file motions, their ability to further litigate these motions will almost assuredly be extinguished upon their removal to Iraq. Those who are tortured or killed will obviously not be able to argue their motions; even those who are able to evade this treatment will likely be focused on their safety, rather than devoting the requisite attention to their legal proceeding.

To the extent the Government argues that Petitioners should have filed motions to reopen prior to their detainment, the Court has already noted that such a filing would have been academic. See Hamama v. Adducci, 258 F. Supp. 3d 828, 841 (E.D. Mich. 2017). It was not until 2014 that the changed conditions in Iraq started to become apparent. And even when the threat was realized, Iraq's continued resistance to repatriation, combined with the prohibitive cost of preparing motions to reopen, made filing motions impractical. Therefore, the Government's motion must be denied as to Count II.

**B. Motion to Certify Class**

Petitioners filed a motion to certify class on November 7, 2017 seeking to certify a primary class as well as three subclasses (Dkt. 139). The Court certified the subclasses in its January 2, 2018 opinion (Dkt. 191), but deferred ruling on the primary class, in part, because the Court did not address the Government's motion to dismiss the removal counts at that time. Having now resolved the Government's motion to dismiss on the removal counts, it is appropriate to turn to Petitioners' motion to certify class with respect to the primary class.

Petitioners seek to certify their putative "Primary Class," which they originally defined in their motion to certify class as "All Iraqi nationals in the United States who had final orders of removal on March 1, 2017, and who have been, or will be, detained for removal by U.S. Immigration and Customs Enforcement (ICE)." Petitioners have since filed a supplemental brief (Dkt. 176) in which they seek to amend the primary class definition to "All Iraqi nationals in the United States who had final orders of removal at any point between March 1, 2017 and June 24, 2017 and who have been, or will be, detained for removal by U.S. Immigration and Customs Enforcement." This was done so that those who did not have final orders of removal as of March 1, 2017 are protected by the stay of removal.

To obtain class certification, Petitioners must first show the following four requirements:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig., 722 F.3d 838, 850 (6th Cir. 2013) (quoting Fed. R. Civ. P. 23(a)). The Court determines that certification is appropriate for the Primary Class.

1. **Numerosity**

The Government does not contest that Petitioners have met the numerosity requirement for the Primary Class. Federal Rule of Civil Procedure 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." There is no "strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." Daffin v. Ford Motor Co., 458 F.3d 549, 552 (6th Cir. 2006); see also Turnage v. Norfolk S. Corp., 307 F. App'x 918, 921 (6th Cir. 2009) (broad geographic proximity weighs in favor of numerosity); Davidson v. Henkel Corp.,

302 F.R.D. 427, 436 (E.D. Mich. 2014) ("[I]t generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement."). There is no dispute that over 1,400 Iraqis had final orders of removal during the relevant time period. Such a large number clearly demonstrates the impracticability of joinder of the Primary Class. Accordingly, the Court finds that the numerosity requirement is easily met in this case.

### 2. Commonality

The Court must next consider whether there are questions of law or fact common to the Primary Class. "To demonstrate commonality, plaintiffs must show that class members have suffered the same injury." In re Whirlpool Corp., 722 F.3d at 852. The plaintiffs' claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." Id. Commonality depends on "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Wal-Mart, 564 U.S. at 350. "Commonality under Rule 23(a)(2) is met where, notwithstanding some factual differences, the class action claims are based on a common course of conduct of misrepresentations, omissions, or other wrongdoing affecting all class members in the same manner." Yadlosky v. Grant Thorton, L.L.P., 197 F.R.D. 292, 298 (E.D. Mich. 2000) (quotation marks omitted).

The Primary Class has multiple common questions of law and fact. Petitioners are all individuals who are subject to final orders of removal to Iraq, which the Government recently decided to enforce. Petitioners assert that due process entitles them to a stay of removal pending consideration of their motions to reopen based on changed country conditions in Iraq. The

Government argues, however, that entitlement to relief on the removal claim turns on an individualized and fact-intensive analysis, which precludes a finding of commonality. Resp. at 8, PageID.4148. The Government advances three arguments related to commonality: (i) the individual proposed class members are situated differently; for example, those detained after June 2017 have not been "blindsided" by their sudden detention, (ii) those with final orders of removal after 2014 will have a difficult time establishing changed country conditions in Iraq, and (iii) the Primary Class members have varying administrative interests and may not all be entitled to the same relief. Resp. at 9-11, PageID.4149-4151. The Government's arguments miss the mark.

With respect to the Government's first argument, whether the enforcement effort was launched suddenly as to all, or after some delay for some Primary Class members, does not change the nature of the injury. That some Petitioners were blindsided by their arrests while others knew that their arrests were coming does not change the common injury that they have all been uprooted from their lives in preparation for repatriation to Iraq. As to the second and third arguments, the Government is looking too far down the road. Petitioners are not asking this Court to grant them the relief obtainable in the immigration courts. Instead, they are merely asking to be able to have meaningful access to the immigration courts before they are removed to Iraq and potentially subjected to persecution, torture, or worse because of their religious beliefs. The types of relief Petitioners can obtain and whether Petitioners will ultimately prevail in the immigration courts does not speak to commonality in this case. Petitioners have all suffered same injury – denial of meaningful access to the immigration courts prior to their removal – and access to the immigration courts, not the results, will drive the resolution of this litigation. There are also common legal issues, such as whether due process requires a stay of the execution of Petitioners' final order of removal in light of the changed country conditions in Iraq.

Accordingly, the Court finds that Rule 23(b)(2)'s commonality requirement is met.

**3. Typicality**

To demonstrate typicality, Petitioners must demonstrate that "the class members' claims are fairly encompassed by the named plaintiffs' claims." In re Whirlpool, 722 F.3d at 852 (quotation marks omitted). The typicality requirement ensures that "the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." Id. at 852-853. "[C]ommonality and typicality tend to merge in practice because both of them serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Id. at 853 (quotation marks omitted).

The named Petitioners claims are typical of the claims of members of the Primary Class. Each named Petitioner was detained subject to a final order of removal to Iraq. Each named Petitioner seeks a stay of removal in order to present claims for relief before the immigration courts. The Primary Class members are all subject to final orders of removal and seek stays of removal in order to pursue their claims of relief before the immigration courts. The named Petitioners are typical of the Primary Class.

**4. Adequacy**

The Court must next consider whether the named Petitioners' representation will fairly and adequately protect the interests of the class. The Sixth Circuit employs the following two-prong test to determine adequacy: (i) the class representatives must have common interests with the putative class members; and (ii) the representatives must "vigorously prosecute the interests of the

class through qualified counsel." Vassalle v. Midland Funding LLC, 708 F.3d 747, 757 (6th Cir. 2013).

As discussed above, the concerns of the named representatives are common to the Primary Class. See In re Whirlpool, 722 F.3d at 853 ("[C]ommonality and typicality tend to merge with the requirement of adequate representation, although the latter factor also brings into play any concerns about the competency of class counsel and any conflicts of interest that may exist."). Further, class counsel have established throughout the course of this case that they are more than willing to zealously prosecute this case on behalf of all putative class members. The named Petitioners, through class counsel, are adequate representatives.

5. **Rule 23(b)(2)**

Finally, the Court must determine whether certification pursuant to Rule 23(b)(2) is proper. The rule states that a class may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Wal-Mart, 564 U.S. at 360 (quotation marks omitted).

The Government argues that a Rule 23(b)(2) class is inappropriate in light of the class members' "highly fact-intensive claims." Gov't Resp. at vi, PageID.4138. This objection was addressed and rejected in Rodriguez v. Hayes, 591 F.3d 1105 (9th Cir. 2010).[2] The court held that

---

[2] The Government argues that Hayes is not good law because it was decided prior to Wal-Mart, which held that courts may consider the merits when deciding whether certification is appropriate. As Petitioners note, the Government has not explained how consideration of the merits would have altered the court's decision on certification.

"[t]he rule does not require us to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." Hayes, 591 F.3d at 1125; see also Parsons v. Ryan, 754 F.3d 657, 688 (9th Cir. 2014) ("While each of the certified [Arizona Department of Corrections'] policies and practices may not affect every member of the proposed class and subclass in exactly the same way, they constitute shared grounds for all inmates in the proposed class and subclass.").

Petitioners are seeking uniform relief from the Government's practice of attempting to deport Iraqi nationals without affording them sufficient time or opportunity to present their claims for changed country conditions. The preliminary relief is also of a class-wide nature because all affected detainees are being given the same habeas relief: a stay of removal to afford Petitioners an opportunity to meaningful access to the immigration courts. As the Hayes court noted, "[t]he fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." Id.

Petitioners have met the requirements for certification under Rule 23(b)(2).

### 6. Appointment of Class Counsel

Rule 23(g)(1) states that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." Courts must consider the counsel's identification or investigation of potential claims, counsel's relevant experience, knowledge of relevant law, and the resources counsel will commit to representation. Fed. R. Civ. P. 23(g)(1)(A). The Court designated Margo Schlanger and Kimberly Scott of Miller Canfield as class counsel in its previous opinion. See 1/2/2018 Op. at 40-41, PageID.5357-5358 (Dkt. 191). Nothing during the pendency of this case has made the Court doubt its previous appointment decision. For the reasons stated in the Court's January 2, 2018 opinion, id., the Court's previous appointments stand.

16

**7. Nationwide Class**

Finally, the Government argues that if the Court grants class certification, it should limit certification to those within the Eastern District of Michigan. Id. at 28. The Government contends that certifying a nationwide class would violate principles of inter-circuit comity and strip other courts of jurisdiction over claims pending before them. It argues that the Court should allow the other courts of appeals to decide the difficult questions posed by this case. The Court has already rejected those arguments when it previously certified three nationwide subclasses. See 1/2/2018 Op. at 41-42, PageID.5358-5359.

However, in the Court's previous opinion, the Court declined to address the Government's argument that limiting the class to those in this District is appropriate because they share a common religion, and thus have more similar removal claims than a nationwide group of "all Iraqis." The Government notes that the individuals arrested in June 2017 "mostly" share a common religious affiliation and therefore have more similar protection claims than "all Iraqis" detained nationwide. Resp. at 30, PageID.4171. It argues that the existence of other groups that could qualify for relief means that Petitioners' due process claims are not necessarily uniform or capable of simultaneous resolution. Id. The Government's focus is too narrow. As already noted by the Government, even within this District, not all Petitioners share a common religious affiliation. The Petitioners' religious affiliation, while central to many of Petitioners' claims before the immigration court, is not crucial to whether a nationwide class should be certified. This Primary Class is concerned with access to the immigration courts in order to file motions to reopen based on the changed conditions in Iraq. The changed conditions in Iraq is the salient component of the Primary Class. Whether the Primary Class members potentially face persecution if returned to Iraq due to their religious affiliation, or some other status, is what drives the class.

Accordingly, nationwide certification of the Primary Class is appropriate.

## IV. CONCLUSION

For the above-stated reasons, the Court awards the following relief:

1. The Government's motion to dismiss (Dkt. 135) is denied. The denial is with prejudice as to Count II and without prejudice as to Counts I, III and VII.

2. Petitioners' motion for class certification (Dkt. 139) is granted as to the Primary Class.

    a. The Court certifies the Primary Class consisting of "All Iraqi nationals in the United States who had final orders of removal at any point between March 1, 2017 and June 24, 2017 and who have been, or will be, detained for removal by U.S. Immigration and Customs Enforcement."

    b. Attorneys Margo Schlanger and Kimberly Scott of Miller Canfield shall continue as class counsel, for the subclasses and the Primary Class.

3. The Government must file an Answer to the Second Amended Petition (Dkt. 118) **on or before October 8, 2018**.

    SO ORDERED.

Dated: September 24, 2018       s/Mark A. Goldsmith
   Detroit, Michigan      MARK A. GOLDSMITH
                                                        United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 24, 2018.

                                                        s/Karri Sandusky
                                                        Case Manager