UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA J. HAMAMA, et al.,

        Petitioners,                                    Case No. 17-cv-11910

vs.                                                               HON. MARK A. GOLDSMITH

REBECCA ADDUCCI, et al.,

        Respondents.
_____/

## OPINION & ORDER
## VACATING STIPULATION AND ORDER (DKT. 151)

The matter before the Court is whether it should vacate the stipulation and order lifting the preliminary injunction as to Wisam Ibrahim filed on January 23, 2018 (Dkt. 151). Saeeb Ibrahem Mansy – Wisam Ibrahim's father and a purported interested party – filed two motions to vacate the stipulated order (Dkts. 207, 324) and a motion for a competency hearing (Dkt. 214). Petitioners also filed motions to vacate the stipulated order (Dkts. 246, 285), and Respondents filed a motion in limine to exclude Petitioners' expert witness report in support of their motion (Dkt. 353). For the reasons that follow, the Court grants the motions to vacate the stipulated order; denies Respondents' motion in limine as moot; and denies the motion for a competency hearing as moot.

### I. BACKGROUND[1]

---

[1] The Court's opinion relies on a number of documents that have been filed under seal due to privacy concerns related to Ibrahim's mental health. The records already publically available on the Court's docket reveal a good deal of the information, but not to the degree present in the sealed records. The Court's opinion reveals no more information than is necessary to resolve this matter. "The public has an interest in ascertaining what evidence and records the District Court . . . relied upon in reaching [its] decisions." Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan, 825 F.3d 299, 305 (6th Cir. 2016). In light of the important liberty interests at stake, and the great public interest in the issues presented in this case, the Court does not find it appropriate to seal its decision. "[T]he public is entitled to assess for itself the merits of judicial decisions." Id.

Subsequent to the preliminary injunction issued on July 24, 2017 (Dkt. 87), an issue arose with respect to determining whether a class member's decision to return to Iraq was knowing and voluntary. On September 25, 2017, the Court adopted Petitioners' proposed forms regarding procedures to determine whether a putative class member's decision to return to Iraq was knowing and voluntary, which protocol included speaking with an attorney. 9/25/2017 Order at 1-2 (Dkt. 110); (Dkt. 107-2). Under the process, if the attorney is satisfied that the detainee is making a knowing and voluntary decision to be repatriated to Iraq, the attorney must submit a completed declaration form. Ex. 1.C to Joint Status Report at 2, PageID.2766 (Dkt. 107-2). In paragraph nine of the declaration template, the attorney must declare that he or she "did not observe any indicia of incompetency, as described in Matter of M-A-M, 25 I&N Dec. 474 (BIA 2011)." Id. In Matter of M-A-M-, the Board of Immigration Appeals ("BIA") stated the following test:

> (2) The test for determining whether an alien is competent to participate in immigration proceedings is whether he or she has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses.

25 I. & N. Dec. 474, 474 (BIA 2011). There is no provision in the Court's order or the Court-approved documents regarding the next step if a detainee shows indicia of incompetency, or what process should be followed if the stay of removal is lifted but the lifting of the stay is later challenged.

On November 20, 2017, the Court entered a stipulated order lifting the preliminary injunction as to Ibrahim after receiving a signed waiver from Ibrahim stating that he wished to be promptly removed to Iraq. See 11/20/2017 Order (Dkt. 151); see also Waiver, Ex. B. to 11/20/2017 Order (Dkt. 151-2). The Court also received a declaration from a pro bono attorney,

who met with Ibrahim, stating her belief that the waiver was made knowingly and voluntarily. See Goldberg Decl., Ex. A to 11/20/2017 Order (Dkt. 151-1).

On January 23, 2018, Mansy filed a motion to vacate the stipulated order lifting the preliminary injunction for Ibrahim (Dkt. 207). Mansy asserts that Ibrahim's waiver could not have been made knowingly and voluntarily in light of Ibrahim's history of mental illness. See Mansy Mot. ¶¶ 7-8. Although Ibrahim had indicated his desire to return to Iraq in October 2017, he did not inform his family of his imminent removal until January 15, 2018. Id. ¶ 5. The Court conducted a hearing on Mansy's motion on the day it was filed, during which time Respondents indicated that Ibrahim was in transit in preparation for removal. Given the emergent nature of the situation, and the lack of full information available to the Court at that time, the Court temporarily stayed execution of the stipulated order of removal (Dkt. 210).

Subsequently, Mansy filed a motion for a mental competency examination (Dkt. 214) and Petitioners and Mansy filed motions to withdraw the stipulated order lifting the preliminary injunction (Dkts. 246 and 285). Petitioners arranged to have Dr. Debra Pinals proceed with a mental health evaluation, which was conducted on February 14, 2018. Pet'rs Mot. to Withdraw Stip. Order ¶ 3 (Dkt. 246).

While waiting for Respondents to conduct their own competency examination, Mansy filed a petition in the Macomb County Probate Court for a limited guardianship of Ibrahim. Pet'rs Br. in Supp. of Second Mot. to Withdraw Stip. Order at 3, PageID.6741 (Dkt. 285). The Probate Court granted the petition on May 9, 2018 and appointed Mansy as Ibrahim's guardian for "immigration proceedings & legal matter only." Ltr. Of Ltd. Guardianship, Ex. A to Pet'rs Second Mot., PageID.6751. The Probate Court made this determination "[u]pon the presentation of clear and convincing evidence" that "by reason of mental illness," Ibrahim "is impaired to the extent of

lacking sufficient understanding or capacity to make or communicate informed decisions and is an incapacitated individual." Id. Mansy, shortly thereafter, filed an additional motion to vacate the stipulated order to lift the preliminary injunction as Ibrahim's guardian. Mansy Mot. to Withdraw Stip. Order (Dkt. 324).

Respondents employed the services of Dr. William Cardasis to conduct another mental health examination of Ibrahim, which occurred several months after Dr. Pinals' examination. The Court conducted an evidentiary hearing on July 19, 2018. The Court heard testimony by Dr. Pinals, Dr. Cardasis, and Ibrahim. The parties stipulated to the qualifications of Dr. Pinals and Dr. Cardasis, but differed on whether their expert reports should be entered into evidence. Respondents filed a motion in limine shortly after the evidentiary hearing to exclude Dr. Pinals' report from being entered into evidence. Resp't Mot. in Lim. (Dkt. 353). The Court now has a full record before it and can resolve the pending motions.

## II. ANALYSIS

### A. Standing

As an initial matter, Respondents argue that Mansy lacks standing to intervene in this case because he has not shown that Ibrahim is unable to litigate this case due to mental incapacity. Resp't Resp. to Mansy Mot. for Comp. Exam. at 3, PageID.5753 (Dkt. 222). Typically, courts resolve standing before reaching the merits of a pending matter. However, in this instance, the standing matter and the motions before the Court turn on the same issue – Ibrahim's competency.

Standing is "the threshold question in every federal case." Warth v. Seldin, 422 U.S. 490, 498 (1975). Article III of the Constitution requires an "actual controversy" to be pending before the court. The standing doctrine is "one of several principles used to ensure compliance with the case or controversy requirement," Poe v. Snyder, 834 F. Supp. 2d 721, 728 (E.D. Mich. 2011)

(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)), and "requires that a litigant have suffered an injury-in-fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief," Peoples Rights Organization, Inc. v. City of Columbus, 152 F.3d 522, 527 (6th Cir. 1998).

"In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing restrictions." Coyne v. Am. Tobacco Co., 183 F.3d 488, 494 (6th Cir. 1999). First, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties." Warth, 422 U.S. at 499 (citations omitted). "Second, a plaintiff's claim must be more than a 'generalized grievance' that is pervasively shared by a large class of citizens." Coyne, 183 F.3d at 494 (citing Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 473 (1982)). "Third, in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question. Id. "These additional restrictions enforce the principle that, 'as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted.'" Id. (quoting Pestrak v. Ohio Elections Comm'n, 926 F.2d 573, 576 (6th Cir. 1991)).

Respondents focus on the prudential standing restriction against third-party actions. However, the rule is not absolute, and the Supreme Court has authorized third-party or "next-friend" standing when "the party asserting the right has a 'close' relationship with the person who possesses the right" and "there is a 'hindrance' to the possessor's ability to protect his own interests." Kowalski v. Tesmer, 543 U.S. 125, 129 (2004). Respondents note that they have no reason to doubt the close relationship between Mansy and his son. See Resp't Resp. to Mansy Mot. for Comp. Exam. at 3, PageID.5752 (Dkt. 222). Instead, Respondents focus on the hindrance showing. Id. (citing Whitmore v. Arkansas, 495 U.S. 149, 165 (1990)).

5

In <u>Demosthenes v. Baal</u>, 495 U.S. 731, 734–735 (1990), the Supreme Court explained the following with respect to next-friend standing:

> In <u>Whitmore v. Arkansas</u>, 495 U.S., at 165, 110 S. Ct., at 1728, [the Supreme Court] held that 'one necessary condition for "next friend" standing in federal court is a showing by the proposed "next friend" that the real party in interest is unable to litigate his own cause due to mental incapacity.' <u>See also</u> <u>Rosenberg v. United States</u>, 346 U.S. 273, 291, 73 S. Ct. 1152, 1161, 97 L.Ed. 1607 (1953). This prerequisite is not satisfied 'where an evidentiary hearing shows that the defendant has given a knowing, intelligent, and voluntary waiver of his right to proceed.' <u>Whitmore</u>, 495 U.S., at 165, 110 S. Ct., at 1728. In <u>Whitmore</u>, we relied on the competency findings made by the Arkansas Supreme Court and concluded that Whitmore lacked next-friend standing in federal court. <u>Id.</u>, at 165-166, 110 S. Ct., at 1728-1729.

Respondents have raised an interesting legal puzzle. They argue that Mansy lacks next-friend standing because Ibrahim is competent. Therefore, in order to reach the threshold issue of standing, the Court must resolve whether Ibrahim is competent. In other words, with respect to Mansy, in order to determine standing, the Court must determine whether Ibrahim is competent before turning to the issue of his competency.

To complicate matters further, Mansy's appointment by the Macomb County Probate Court raises issues of judicial comity.[2] Respondents argue that this Court is not bound by the Macomb County Probate Court's limited guardianship order. Resp't Obj. to Pet'rs Second Mot. to Withdraw Stip. Order at 6, PageID.7114 (Dkt. 292). They assert that judicial comity is not a matter of obligation. <u>Id.</u> at 7, PageID.7115. They maintain that judicial comity is typically applied where a legal matter is already before another state court. <u>Id.</u> (citing <u>Rose v. Lundy</u>, 455 U.S. 509, 518 (1982) ("Because it would be unseemly in our dual system of government for a federal district

---

[2] Judicial comity is "[t]he principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and judicial decision of another, not as a matter of obligation, but out of deference and respect." <u>Judicial Comity</u>, BLACK'S LAW DICTIONARY (6th ed. 1990).

court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."). Respondents argue that this Court was already considering Ibrahim's competency when Mansy filed his motion in Probate Court. Id. at 7-8, PageID.7115-7116. They argue that because this Court had jurisdiction over Ibrahim's competency first, it should determine the question. Id. at 8, PageID.7117 (citing Smith v. McIver, 22 U.S. 532 (1824), and Jackson v. Parkersburg & O. V. Electric Ry. Co., 233 F. 784 (N.D.W. Va. 1916)).

Petitioners argue that Mansy's standing matter is beside the point, because Petitioners have standing and have filed parallel motions to Mansy's motions. Pet'rs Resp. to Mansy Mot. for Comp. Exam. at 3, PageID.5766 (Dkt. 224). Petitioners' argument is sound. Because Ibrahim's competency must be resolved in order to address the motions of Petitioners – who have standing because Ibrahim is a member of the class action – the Court can resolve Mansy's standing at the same time it resolves the matter of Ibrahim's competency.

### B. Competency

As the parties recognize, there is no clear standard to determine whether Ibrahim made a knowing and voluntary waiver of his rights under the Court's July 24, 2017 preliminary injunction (Dkt. 87). "[T]he law generally places restrictions on the ability of incompetent individuals to accomplish voluntary and legally binding acts." United States v. Mandycz, 447 F.3d 951, 964 (6th Cir. 2006) (citing McGrath v. Tadayasu Abo, 186 F.2d 766, 772 (9th Cir. 1951), and Spytma v. Howes, 313 F.3d 363, 370 (6th Cir. 2002)). "[D]ue process . . . protects incompetent civil parties by requiring the court to appoint guardians to protect their interests and by judicially ensuring that

7

the guardians protect those interests. Id. at 962 (citing Fed. R. Civ. P. 17(c) ("The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.")).

Respondents take the position that the Court has already set forth a process to ensure that Ibrahim's waiver was knowing and voluntary. Resp't Resp. to Mansy's Mot. for Comp. Exam. at 1, PageID.5750 (Dkt. 222). They argue that that the following procedure, proposed by Petitioners, is sufficient:

> Upon receipt of a detainee's form indicating a possible interest in removal, Petitioners' counsel identifies a pro bono lawyer to visit the detainee to "(a) advise the detainee about available options, (b) confirm that no pressure is being exerted, and (c) ensure that any decision to forego the protections of this Court's stay [of removal] is knowing and voluntary." Joint Status Report, ECF No. 107 at 6. Petitioners explicitly noted that "[t]he pro bono lawyer can also be alert to the possibility of <u>any indicia of incompetency</u>."

Id. at 1-2, PageID.5750-5751 (emphasis added by Respondents). The declaration template prepared by Petitioners largely takes these considerations into account. See Ex. 1.C to Joint Status Report at 1-2, PageID.2765-2766.

However, as noted above, the pro bono attorney need only state whether he or she observed "any indicia of incompetency." Id. at 2, PageID.2766. The pro bono attorneys do not necessarily have any expertise in detecting mental health issues. The requirement to state that the pro bono attorney did not observe any indicia of incompetency is simply one way in which mental health issues may be detected. Here, it is not in dispute that Ibrahim has been diagnosed with a number of mental illnesses, including schizophrenia. Nonetheless, it is not surprising that the pro bono attorney did not detect Ibrahim's conditions. Even Respondents' expert said that "if Mr. Ibrahim was someone I was coming across in a public setting or some other kind of capacity, if I didn't

8

know he had schizophrenia and was on medication, I may not even detect that that was the case . . . ." 7/19/2018 Hr'g Tr. at 66:20-23, PageID.7983 (Dkt. 351). The Court has not established any procedures to determine competency once a detainee's competency has been called into question. Therefore, Respondents' position misses the mark on this point.

The parties and Mansy explore a number of possible standards to apply in resolving Ibrahim's competency. Ultimately, however, the parties and Mansy agree that the most applicable standard is set forth in Rees v. Peyton, 384 U.S. 312, 314 (1966). Resp't Resp. to Mansy Mot. for Comp. Exam. at 7, PageID.5756; Pet'rs Resp. to Mansy Mot. for Comp. Exam. at 2-3, PageID.5765-5766; Hr'g Tr. 10:15-11:2 ("Your Honor, [Mansy] would believe that the Rees standard would be an appropriate standard to use.").

In Rees, the petitioner had been sentenced to death based on state court convictions. Rees, 384 U.S. at 312. After his habeas corpus petition was denied by the district court and the Fourth Circuit, the petitioner filed a petition for certiorari with the Supreme Court. Id. at 313. However, nearly a month after filing his petition with the Supreme Court, the petitioner directed his counsel to withdraw the petition. Id. The petitioner's counsel could not in good conscience withdraw the petition because he had concerns about his client's competency. Id. The petitioner's counsel had him examined by a mental health professional, who concluded that he was mentally incompetent. Id. The respondent sought to examine the petitioner, but was unable to obtain his cooperation. Id. Nonetheless, the respondent's psychiatrists expressed doubts that the petitioner was mentally incompetent. Id. The Supreme Court sent the matter to the district court to determine "whether [the petitioner] has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a

mental disease, disorder, or defect which may substantially affect his capacity in the premises." Id. at 314.

Rees, although factually similar, differs procedurally from this case. Rees was concerned with whether an individual, who was sentenced to death, knowingly and voluntarily waived his habeas appeal. Here, however, the issue is whether the Court should allow a class member to be covered once again under an order that the Court itself fashioned. While the standard for waiver of habeas rights must necessarily have a national standard ultimately sanctioned by the Supreme Court, the district court authoring a custom order can define the degree of flexibility it will allow in allowing the rescission of a waiver of rights under that order. "In selecting an appropriate equitable remedy, the trial court has 'broad discretionary power.'" Liberty Nat. Bank & Tr. Co. v. Life Ins. Co. of Cincinnati, 901 F.2d 539, 547 (6th Cir. 1990) (quoting Lemon v. Kurtzman, 411 U.S. 192, 200 (1973)). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon, 411 U.S. at 200. Nonetheless, for the purposes of resolving Ibrahim's competency, the Rees standard is a fair and workable standard.

**C. July 19, 2018 Evidentiary Hearing**

The Court conducted an evidentiary hearing on July 19, 2018. Subsequently, Petitioners and Respondents filed briefs under seal setting forth their respective positions.

Petitioners argue that Ibrahim lacked the capacity to knowingly and voluntarily waive the protections of the stay of removal in this case. Pet'rs Supp. Br. at 2, PageID.8341 (Dkt. 368). They note that it is undisputed that Ibrahim has schizophrenia and a generalized anxiety disorder. Petitioners' expert, Dr. Pinals, concluded that Ibrahim exhibited paranoia, irritability, grandiose thinking, and cognitive inflexibility, which are all characteristic features of schizophrenia. Id. at

3, PageID.8342 (citing 7/19/ 2018 Hr'g Tr. 18:8-17, 23:21-25, 24:8-10).  The latter two are of particular concern to Petitioners.

Respondents argue that the Court should not withdraw the stipulated order as to Ibrahim because he has always had the capacity to make a knowing and voluntary waiver of his rights under the preliminary injunction.  Resp't Supp. Br. at 2, PageID.8326 (Dkt. 367).  Additionally, Respondents argue that because Ibrahim has always had the capacity to waive his rights under the injunction, his subsequent change of mind should not outweigh the resources that Respondents have expended.  Id.  They further argue that Ibrahim has had ample time to file a motion to reopen, but has failed to do so, which is another reason the Court should not vacate the stipulated order lifting the injunction as to Ibrahim.  Id.[3]

Although Dr. Pinals and Dr. Cardasis disagree on whether Ibrahim was competent when he signed the waiver, they made similar observations.  Respondents believe that the experts came to different results, in part, because Dr. Pinals examined Ibrahim when he had been off his medication for a number of weeks, while Dr. Cardasis examined Ibrahim after he had been taking his medication for months.  Resp't Supp. Br. at 9, PageID.8333.  However, based on that reasoning, it would seem more likely that the experts would have made <u>differing</u> observations, which in turn would lead them to conflicting opinions.  Nonetheless, the Court will take into consideration the observations as much as the ultimate opinions of the experts.

With respect to grandiosity, Dr. Pinals testified to the following:

> So some of the examples and again this was subtle, but some of the examples that he gave were examples that he had earned a great deal of money in his businesses, that he owned many businesses. Also that he had a sense of his capabilities that exceeded what the reality of his situation appeared to be. He, you know, described

---

[3] This last point does not properly belong in the present analysis concerning mental capacity; it is more properly raised in connection with the parties' dispute regarding the failure of certain class members to file motions to reopen within the deadlines set out in the preliminary injunction order.

11

> his life of living mostly with his parents except for when he was away for one year and other times when he was incarcerated, but although he had been living on Social Security and sort of a non-independent life, he described himself as perfectly capable of finding a job, finding his own way, even in Iraq he'd be able to manage his own affairs and had no sense of any difficulties. I saw that as somewhat grandiose views of his capabilities given the, the -- his prior existence prior to being incarcerated.

Hr'g Tr. 19:17-20:5. In partial agreement, Dr. Cardasis, observed that Ibrahim "downplayed" the challenges that would be posed by deportation. Hr'g. Tr. 71:15-20, PageID.7988.

Petitioners further argue that Ibrahim's cognitive inflexibility is problematic. Pet'rs Supp. Br. at 4, PageID.8343. Dr. Cardasis explained that simplistic decision-making is often associated with schizophrenia. Hr'g Tr. 74:6-9, PageID.7991. Dr. Cardasis opined that Ibrahim was "stable psychiatrically" when he signed the waiver, id. at 57:2, PageID.7974, and that at the time Ibrahim signed the waiver, he was not having "prominent symptoms of psychosis or of his schizophrenia based on his history, his statements, and the information [he] reviewed," id. at 56:23-57:4, PageID.7973-7974. However, Dr. Cardasis also noted that Ibrahim's thought process was "relatively unsophisticated" and "simplistic," and that Ibrahim's reasoning was based on his desire to be free from detention. Id. at 84:3-14, PageID.8001. Respondents argue that "as an individual who has been in jail multiple times throughout his life, and has been in detention throughout this case, this desire to be free stems from an appreciation of his current position." Resp't Supp. Br. at 7, PageID.8331 (citing Hr'g Tr. 38-9: 22-9; 67:17-9). On the other hand, his current position may have been so intolerable that Ibrahim was willing to make a rash decision, even a poor decision, to alleviate his suffering.

Dr. Pinals observed that when Ibrahim was asked why he wanted to waive his rights, he "became very fixated" on getting out of jail, and was unable to "fully grasp the long-term consequence." Hr'g Tr. at 22:1-6, PageID.7939. Dr. Pinals noted that individuals with Ibrahim's

mental illnesses are capable of making important decisions; however, Ibrahim lacked such capacity. Id. at 26:18-27, PageID.7943. Dr. Pinals said that Ibrahim understood "that if he were deported, he would end up in Iraq, however, . . . in terms of his ability to fully grasp what that meant, the permanency and the[] challenges that[] may [be] involve[d] for him downstream was limited again by his concrete or literal-minded thinking." Id. at 26:19-24, PageID.7943. Dr. Pinals observed that Ibrahim had difficulty abstracting towards the potential "perils, challenges, or obstacles" to his life if returned to Iraq. Id. at 22:15-17, PageID.7939. For example, she noted that Ibrahim believed he would have no problem obtaining mental health services in Iraq despite not being able to articulate the steps to do so. Id. at 22:11-17, PageID.7939.

Dr. Pinals testified that "part of his literal-minded thinking was to take extreme views of . . . whether something would be relatively easy or not easy. . . . [I]t was more of a black and white way of thinking." Id. at 44:9-13, PageID.7961. Dr. Pinals explained, for example, that Ibrahim believed that if he ended up in Iraq, he would face no challenges whatsoever, including failing to appreciate the potential danger of being a target of extremism from being a Christian. Id. at 27:5-8, PageID.7944. Petitioners argue that Ibrahim's simplistic and inflexible decision-making are caused by his mental illness. Pet'rs Supp. Br. at 5, PageID.8344. They note that when Dr. Cardasis was posed with the question of whether he attributed Ibrahim's simplistic thinking and unsophisticated approach to decision-making to personality traits rather than mental illness, he declined to take a position. Id. at 6, PageID.8345 (citing Hr'g Tr. 84:6-14).

Based on the foregoing, the Court agrees with Petitioners that Ibrahim did not have the capacity to appreciate his position and make a rational choice with respect to waiving his rights under the preliminary injunction. Ibrahim, facing an indefinite period of incarceration, signed the waiver without any consideration of the long-term consequences of his decision. In Dr. Pinals'

13

words, Ibrahim "overvalued the benefits of making his decision," but "undervalued the risks" associated with it. Hr'g Tr. 27:13-15, PageID.7944. Ibrahim's impaired ability to "rationally manipulate the information" led him to make a decision to be repatriated to Iraq where he is almost certainly incapable of tending to his own needs, let alone surviving the persecution he would likely face. The Court finds that Ibrahim is suffering from a mental illness, which substantially affected his capacity to understand his position and make a rational choice with respect to waiving his rights under the preliminary injunction, especially in light of the dire consequences of such action.[4]

Accordingly, the Court vacates its November 20, 2017 order lifting the preliminary injunction for Wisam Ibrahim (Dkt. 151). Additionally, the Court finds that Mansy has next-friend standing with respect to Ibrahim, because of his close relationship with Ibrahim, and because Ibrahim's mental incompetency hinders his ability to protect his own interests in this matter. See Kowalski, 543 U.S. at 129.

Because the Court finds that Ibrahim lacked the capacity to waive his rights under the preliminary injunction, it need not address the legal significance of Ibrahim's and Mansy's withdrawal of the waiver. Nor does the Court need to decide how much deference to give the Macomb County Probate Court's competency finding because the Court agrees with its determination. Additionally, because the Court did not rely on the expert reports submitted by Dr. Pinals and Dr. Cardasis, the expert reports are not received into evidence at this time. Respondents' motion in limine is denied as moot.

---

[4] Petitioners also argue that the Court can lift the injunction as to Ibrahim without any showing of mental illness, based on a change of heart, citing the Court's order relative to Hani Al Bazoni (Dkt. 157). See Pet'rs Supp. Br. at 10, PageID.8349. However, the order on which Petitioners rely was a stipulated order. The Court did not rule on a "change-of-heart" theory in that circumstance and does not here, given that Ibrahim's mental illness establishes the basis for the Court's instant ruling.

## III. CONCLUSION

For the above stated reasons, Mansy's motion to vacate the stipulated order lifting the preliminary injunction for Wisam Ibrahim (Dkts. 207) is **GRANTED**. Mansy's motion for a competency examination (Dkt. 214) is **DENIED as moot**. Petitioners' motion to withdraw stipulated order (Dkt. 246) is **GRANTED IN PART** as to vacating the stipulated order and **DENIED as moot** in all other respects. Petitioners' second motion to withdraw the stipulated order (Dkt. 285) is **GRANTED IN PART** as to vacating the stipulated order and **DENIED WITHOUT PREJUDICE** in all other respects. Mansy's motion to withdraw stipulated order (Dkt. 324) is **GRANTED IN PART** as to vacating the stipulated order and **DENIED WITHOUT PREJUDICE** in all other respects. Respondents' motion in limine to exclude Dr. Debra Pinals' expert report (Dkt. 353) is **DENIED as moot**. The Court's November 20, 2017 order lifting the preliminary injunction for Wisam Ibrahim (Dkt. 151) is **VACATED**. The parties are ordered to file a joint status report **on or before October 12, 2018** addressing whether Wisam Ibrahim has received a bond hearing under the Court's January 2, 2018 order and any other outstanding matters with respect to Wisam Ibrahim.

SO ORDERED.

Dated: September 27, 2018  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 27, 2018.

s/Karri Sandusky
Case Manager