# EXHIBIT 1-24

LAW ENFORCEMENT SENSITIVE

**Removal Efforts and Challenges: Iraq**
July 19, 2017

**Overview**

Although most countries adhere to their international obligation to accept the timely return of their nationals that have been ordered removed from the United States, U.S. Immigration and Customs Enforcement (ICE) considers Iraq to be among the most recalcitrant countries. Despite expending significant resources and exhausting other available means to obtain cooperation, ICE has been unsuccessful in securing cooperation from the Government of Iraq in the acceptance of its nationals subject to final orders of removal and has determined that implementing visa sanctions pursuant to section 243(d) of the Immigration and Nationality Act (INA) is the only remaining avenue available to secure cooperation.

Uncooperative or recalcitrant countries are identified by the Removal Cooperation Initiative tool, a deliberative mechanism that aligns ICE's efforts in improving operations with international partners and other U.S. Government stakeholders to maximize ICE's impact on public safety through rapid, prioritized removal of final-order foreign nationals. Countries are assessed on a series of systematic factors to determine the level of cooperation received in the removal process, and ranked on a scale ranging from uncooperative to cooperative based on statistical data and expert analytical feedback on the totality of factors affecting the country. Aggravating factors include refusal to accept charter removal missions and perform identity verification interviews, percentage of releases when compared to removals, and average length of time between issuance of an executable final order and removal. Mitigating factors regarding recent country conditions are also taken into account in assessing if a country is intentionally uncooperative or incapable of cooperation due to exigent circumstances, such as natural or man-made disasters or the lack of a functioning government.

**Background**

ICE and the U.S. Department of State (State) have collaborated to engage Iraq and have pursued graduated measures outlined in the April 2011 Memorandum of Understanding between ICE and State Bureau of Consular Affairs concerning repatriation. These and other diplomatic efforts, as described below, have failed to yield substantive progress regarding the removal of Iraqi nationals.

Due to the lack of cooperation from the Iraq Embassy, Washington, D.C. on this issue, ERO and the Department of State developed a strategy to request approval for final order cases directly from Baghdad. In February 2017, ERO received confirmation from the U.S. Embassy in Baghdad that Iraqi officials have approved the acceptance of a Special High Risk Charter flight containing eight Iraqi detainees. These cases were approved and were removed. On April 19, 2017, ICE successfully completed the charter flight to Iraq since 2010.

On March 12, 2017, the Department of State issued a cable which summarized the outcomes of a meeting between the U.S. Embassy, Baghdad and the Iraq Ministry of Foreign Affairs (MFA). MFA informed the embassy representatives that an Iraq Inter-ministerial Committee of

LAW ENFORCEMENT SENSITIVE

LAW ENFORCEMENT SENSITIVE

Deportation was formed and is comprised of representatives from the Prime Minister's Office, the Ministry of Foreign Affairs (MFA), the Ministry of Justice (MoJ), and the Ministry of the Interior (MoI). The Committee had identified four necessary steps for Iraq to facilitate deportation:

•     Consular access - MFA indicated that they would like to meet with those being removed at the point of embarkation from the U.S.

•     Citizenship verification- MFA indicated that the MOI would review and verify the evidence of citizenship provided by the U.S. ICE could use evidence of citizenship obtained from U.S. information systems in lieu of passports or national identity cards

•     Deportation order review- MFA indicated that the MOJ would review each deportation order in tandem with the citizenship verification process.

•     Travel document issuance- the Committee is prepared to inform the Iraqi Embassy and Consulates to provide travel documents for the 1,400 non-detained Iraqi nationals. On May 25, 2017, in preparation for a removal flight, ICE transmitted 280 travel document requests to the U.S. Embassy in Baghdad for submission to the inter-ministerial committee of deportation. The removal flight was scheduled to arrive in Bagdad on June 29, 2017 with no more than 75 Iraqi nationals with final orders of removal on board. This flight was postponed due to ongoing litigation and will take place at a future date.

•     Since May 15, 2017, 213 Iraqi nationals subject to a final order of removal have entered ICE custody all but four have criminal convictions.

**Current Status of Efforts**

A list of 280 travel document requests were submitted by ICE to the U.S. Embassy in Baghdad during a period covering May 17, 2017 through June 6, 2017. After a DOS review and follow up questions regarding several cases, DOS submitted all 280 cases with a Dip note to the Iraqi MFA on June 6, 2017.

ERO was notified on, June 21, 2017, that Iraq would not accept the charter scheduled to arrive on June 29, 2017.

**Statistics**

| | FY 2015 | FY 2016 | FY 2017 | Total |
|---|---|---|---|---|
| **Removals** | 36 | 48 | 12 | 96 |

| | FY 2017 | | Total |
|---|---|---|---|
| | Detained | Non-Detained | |
| **Final Orders of Removal** | 262 | X | X |

Fiscal Year (FY) 2017 data are updated through [July 10, 2017]. FY 2015 and FY 2016 data are historical and remains static.

**Conclusion**

LAW ENFORCEMENT SENSITIVE

LAW ENFORCEMENT SENSITIVE

ICE believes that it has exhausted all means at its disposal to secure cooperation from the Government of Iraq, consistent with its international obligation to promptly facilitate the return of its nationals.  A tool unavailable to ICE, but vested in the Secretary of Homeland Security, is visa sanctions under section 243(d) of the Immigration and Nationality Act, which provides that:

> On being notified by the Secretary of Homeland Security John F. Kelly that the government of a foreign country denies or unreasonably delays accepting an alien who is a citizen, subject, national, or resident of that country after Secretary Kelly asks whether the government will accept the alien under this section, the Secretary of State shall order consular officers in that foreign country to discontinue granting immigrant visas or nonimmigrant visas, or both, to citizens, subjects, nationals, and residents of that country until Secretary Kelly notifies the Secretary of State that the country has accepted the alien.

In conclusion it is recommended to keep the U.S. Embassy in Iraq engaged. The Embassy should continue to engage and address issues as they arise. Iraq has also mentioned not taking back non-criminals. The fact that all Iraqis in the United States with a final order of removal are subject to being removed should be reinforced.

LAW ENFORCEMENT SENSITIVE

| ERO Citizenship Country | Currently Detained with Final Order | | | | | Currently Non-Detained with Final Order | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | ICE Threat Level 1 | ICE Threat Level 2 | ICE Threat Level 3 | Non-Criminal Immigration Violator | *Total* | ICE Threat Level 1 | ICE Threat Level 2 | ICE Threat Level 3 | Non-Criminal Immigration Violator | *Total* |
| IRAQ | 12 | 1 | 1 | 6 | 20 | 735 | 72 | 65 | 505 | 1,377 |

| ERO Citizenship Country | Currently Detained with Final Order | | | | | Currently Non-Detained with Final Order | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | ICE Threat Level 1 | ICE Threat Level 2 | ICE Threat Level 3 | Non-Criminal Immigration Violator | Total | ICE Threat Level 1 | ICE Threat Level 2 | ICE Threat Level 3 | Non-Criminal Immigration Violator | Total |
| IRAQ | 12 | 1 | 1 | 6 | 20 | 735 | 72 | 65 | 505 | 1,377 |