# EXHIBIT 1-31

Message

| | |
|---|---|
| **From:** | Riedmann, Scott R (Baghdad) [RiedmannSR@state.gov] |
| **Sent:** | 7/18/2017 12:05:46 PM |
| **To:** | Schultz, John A [/O=IRMMAIL/OU=Mbx servers - nyc/cn=recipients/cn=jaschult] |
| **Subject:** | RE: Ordered Removal Proceedings |

Your call.  Just be warned: the NS cases might cause the Iraqis to balk and cancel last minute.  I'd hate to see you lose another charter.

SBU
This email is UNCLASSIFIED.

---

**From:** Schultz, John A [mailto:John.A.Schultz@ice.dhs.gov]
**Sent:** Tuesday, July 18, 2017 2:42 PM
**To:** Riedmann, Scott R (Baghdad)
**Subject:** RE: Ordered Removal Proceedings

Will be hard pressed to swap out the NS cases and other than those and the guy that wants to go back al rest are crim

Sent with BlackBerry Work
(www.blackberry.com)

---

**From:** Riedmann, Scott R (Baghdad) <RiedmannSR@state.gov>
**Date:** Tuesday, Jul 18, 2017, 7:40 AM
**To:** Schultz, John A <John.A.Schultz@ice.dhs.gov>
**Subject:** RE: Ordered Removal Proceedings

That does help, actually.  If he wants to go back and this is just the easiest, cheapest option for him, we can sell that.

But the other non-crims may raise an issue as well.  I think if you can swap them for alternates, especially on this first flight, it makes subsequent flights so much easier.  Once we start to institutionalize this program, we will have more latitude.  Right now,  the goal for us is to regularize these flights.  Sending crims will do that.

SBU
This email is UNCLASSIFIED.

---

**From:** Schultz, John A [mailto:John.A.Schultz@ice.dhs.gov]
**Sent:** Tuesday, July 18, 2017 1:57 PM
**To:** Riedmann, Scott R (Baghdad)
**Subject:** RE: Ordered Removal Proceedings

The non-crim guy has a passport and from what I recall wants to go back. I believe his family is already there waiting for him. Once the TRO is lifted the quickest way for his return would be via the charter.

I think the commercial itinerary that we had for him routed him through Turkey which necessitates two officers to escort him that far and due to Turkeys country notification process adds 30 days to the removal.

Does that effect the situation at all?

His case sort of floated to the surface because he had wanted to go and was on a commercial flight rather than the first planned charter so it will take some effort on my part to back him off the charter.

Sent with BlackBerry Work
([www.blackberry.com](www.blackberry.com))

---

**From:** Riedmann, Scott R (Baghdad) <RiedmannSR@state.gov>
**Date:** Tuesday, Jul 18, 2017, 6:47 AM
**To:** Schultz, John A <John.A.Schultz@ice.dhs.gov>
**Subject:** RE: Ordered Removal Proceedings

Have you given thought to the compromise? I think we should really accommodate the Iraqis on this. This is a great way to get this program started and moving forward.

SBU
This email is UNCLASSIFIED.

---

**From:** Schultz, John A [mailto:John.A.Schultz@ice.dhs.gov]
**Sent:** Tuesday, July 18, 2017 1:36 PM
**To:** Riedmann, Scott R (Baghdad)
**Subject:** RE: Ordered Removal Proceedings

Sure let me see what I can run down- most likely won't need to go via class system but I can send that way if you think I should.

Let me know

Sent with BlackBerry Work
([www.blackberry.com](www.blackberry.com))

---

**From:** Riedmann, Scott R (Baghdad) <RiedmannSR@state.gov>
**Date:** Tuesday, Jul 18, 2017, 5:35 AM
**To:** Schultz, John A <John.A.Schultz@ice.dhs.gov>
**Cc:** Shea, Peter T <SheaPT@state.gov>, Koontz, Bryan K <KoontzBK@state.gov>, Pennington, Joseph S <PenningtonJS@state.gov>
**Subject:** RE: Ordered Removal Proceedings

John,

The Front Office here would like some clarity on the national security cases. I assumed they are individuals of concern who have other convictions/violations. Could you please confirm.

Thx,

Scott

-----Original Message-----
From: Schultz, John A [mailto:John.A.Schultz@ice.dhs.gov]
Sent: Tuesday, July 18, 2017 12:44 AM
To: Riedmann, Scott R (Baghdad)
Cc: Shea, Peter T; Koontz, Bryan K; Pennington, Joseph S
Subject: RE: Ordered Removal Proceedings

Scott-

The Ambo has advised me that two individuals will be going to AZ tomorrow to conduct "preliminary interviews". I don't expect any TDs to be issued at this time but he indicated this will cut down the time to issue once we are prepared to go wheels up.

Regarding the 5 non-crims - 4 are national security cases that we have prioritized and only 1 is a run of the mill case.

John A Schultz Jr.
Deputy Assistant Director
Removal Management Division- East
Enforcement and Removal Operations
Immigration and Customs Enforcement
500 12th Street SW
Washington, DC 20536
(202) 732-5893 (office)
(202) 497-1344 (mobile)
John.a.schultz@ice.dhs.gov

-----Original Message-----
From: Riedmann, Scott R (Baghdad) [mailto:RiedmannSR@state.gov]
Sent: Monday, July 17, 2017 12:46 PM
To: Schultz, John A
Cc: Shea, Peter T; Koontz, Bryan K; Pennington, Joseph S
Subject: Re: Ordered Removal Proceedings

Any way to swap out the five?

Sent from my BlackBerry 10 smartphone.
From: Schultz, John A
Sent: Monday, July 17, 2017 19:38
To: Riedmann, Scott R (Baghdad)
Cc: Shea, Peter T; Koontz, Bryan K; Pennington, Joseph S
Subject: RE: Ordered Removal Proceedings

Scott-

we are certainly looking to move criminals first but there are some other "non-crims" who will also be on the first flight. I expect the first flight to be approx. 55 crims and 5 non-crims.

John A Schultz Jr.
Deputy Assistant Director
Removal Management Division- East
Enforcement and Removal Operations
Immigration and Customs Enforcement
500 12th Street SW
Washington, DC 20536
(202) 732-5893 (office)
(202) 497-1344 (mobile)
John.a.schultz@ice.dhs.gov<mailto:John.a.schultz@ice.dhs.gov>

From: Riedmann, Scott R (Baghdad) [mailto:RiedmannSR@state.gov]
Sent: Monday, July 17, 2017 5:53 AM

To: Schultz, John A
Cc: Shea, Peter T; Koontz, Bryan K; Pennington, Joseph S
Subject: RE: Ordered Removal Proceedings

Hi John,

Stephanie and I had a good meeting with the Dep Foreign Minister today. He agreed again to instruct the Embassy to start issuing travel docs and to resume flights with 60 deportees.

He explained that he is under pressure from Parliament about some deportees returning who claimed asylum and have other immigration violations. We explained there is not difference and he agreed that legal system is fair and that all have had multiple chances to make their case. It's all about optics.

We told him that roughly 800 of the 1444 have criminal convictions and this is the reason for their ordered departure. For him politically, it would be very helpful if the initial flights contained only deportees with criminal convictions. Since there is no dispute about those with criminal convictions, this would allow the flight process to become routine and then, hopefully, the political issue surrounding the flights simply dies because the process is now normalized.

Is that something you all could accommodate? It would give the GOI necessary political cover and give us what we want with respect to implementing a regular return schedule. It seems win-win and a good way to get this moving forward.

Let me know your thoughts.

Best,

Scott


SBU
This email is UNCLASSIFIED.


From: Schultz, John A [mailto:John.A.Schultz@ice.dhs.gov]
Sent: Sunday, July 16, 2017 6:12 PM
To: Riedmann, Scott R (Baghdad)
Cc: Shea, Peter T; Koontz, Bryan K; Pennington, Joseph S
Subject: RE: Ordered Removal Proceedings


About 800 had criminal convictions

Sent with BlackBerry Work
(www.blackberry.com<http://www.blackberry.com>)
From: Riedmann, Scott R (Baghdad) <RiedmannSR@state.gov<mailto:RiedmannSR@state.gov>>
Date: Sunday, Jul 16, 2017, 11:06 AM
To: Schultz, John A <John.A.Schultz@ice.dhs.gov<mailto:John.A.Schultz@ice.dhs.gov>>
Cc: Shea, Peter T <SheaPT@state.gov<mailto:SheaPT@state.gov>>, Koontz, Bryan K
<KoontzBK@state.gov<mailto:KoontzBK@state.gov>>, Pennington, Joseph S
<PenningtonJS@state.gov<mailto:PenningtonJS@state.gov>>
Subject: RE: Ordered Removal Proceedings

Good to know. That is a bit of a sticking point with the GOI. They believe someone ordered removed solely based on an failed asylum claim is somehow different. We are explaining that legally, judicially an ordered removal is an ordered removal - the reason for said removal is irrelevant.

Is it fair to say that most of the 1444 also have other criminal convictions?


SBU
This email is UNCLASSIFIED.

From: Schultz, John A [mailto:John.A.Schultz@ice.dhs.gov]
Sent: Sunday, July 16, 2017 5:59 PM
To: Riedmann, Scott R (Baghdad)
Cc: Shea, Peter T; Koontz, Bryan K; Pennington, Joseph S
Subject: RE: Ordered Removal Proceedings

Scott

Technology is blocking my ability to open the extract of the 1400 cases and give you a number of how many ==but I can assure you that there are failed asylum seekers within the group of final orders==.

John A Schultz Jr.
Deputy Assistant Director
Removal Management Division- East
Enforcement and Removal Operations
Immigration and Customs Enforcement
500 12th Street SW
Washington, DC 20536
(202) 732-5893 (office)
(202) 497-1344 (mobile)
John.a.schultz@ice.dhs.gov<mailto:John.a.schultz@ice.dhs.gov>

From: Riedmann, Scott R (Baghdad) [mailto:RiedmannSR@state.gov]
Sent: Sunday, July 16, 2017 10:54 AM
To: Schultz, John A
Cc: Shea, Peter T; Koontz, Bryan K; Pennington, Joseph S
Subject: RE: Ordered Removal Proceedings

Hi John,

This is very helpful. ==Do we know how many, if any, of the 1444 deportees had asylum claims==?  This would be very useful in our discussions.

Thx,

Scott


SBU
This email is UNCLASSIFIED.


From: Schultz, John A [mailto:John.A.Schultz@ice.dhs.gov]
Sent: Sunday, July 16, 2017 5:49 PM
To: Riedmann, Scott R (Baghdad)
Cc: Shea, Peter T; Koontz, Bryan K; Pennington, Joseph S
Subject: RE: Ordered Removal Proceedings

HI Scott

What constitutes and Immigration violation?
        Any violation of the Immigration and Nationality Act (INA) and United States Code (USC) Title 8.  There are too many violations to list them all but most common are- overstay, illegal entry, conviction of crime which violates status, fraud.

How are Immigration violations adjudicated, is this different than an order of removal based on criminal convictions?  Both criminal and non-criminal aliens are essentially processed for removal in the same manner.  Either can be ordered removed by an Immigration Judge, the Board of Immigration Appeals, or in certain cases an immigration officer.

An individual can be order removed for whatever reason-Immigration, criminal, whatever.  Can you please confirm this?  Yes as long as they have violated the immigration law they can be ordered removed.

Per below, there is a separate hearing process for asylum-only cases.  What happens during these hearings if asylum is denied?  Then

the removal order take effect. Is there a removal order issued as well? Yes Do the subjects have the opportunity to appeal, or self-deport? Yes they can appeal, once they are ordered removed even if they self deport their file will be closed as a removal not a voluntary removal thus barring them from re-entering for most likely 10 years. Any specific info on this would be useful.

The information on EOIR is correct and for the Iraqis probably the most likely avenue to have received a final order.

Let me know if you think it would be helpful for someone from my office to fly to Baghdad and meet with the Iraqi officials as well.

We haven't been contacted by the Embassy regarding the interviews and will follow up with them on Monday.

john

John A Schultz Jr.
Deputy Assistant Director
Removal Management Division- East
Enforcement and Removal Operations
Immigration and Customs Enforcement
500 12th Street SW
Washington, DC 20536
(202) 732-5893 (office)
(202) 497-1344 (mobile)
John.a.schultz@ice.dhs.gov<mailto:John.a.schultz@ice.dhs.gov>

From: Riedmann, Scott R (Baghdad) [mailto:RiedmannSR@state.gov]
Sent: Thursday, July 13, 2017 9:10 AM
To: Schultz, John A
Cc: Shea, Peter T; Koontz, Bryan K; Pennington, Joseph S
Subject: Ordered Removal Proceedings

Hi John,

Our Charge met with the MFA today to talk deportations. The issue of deportations based on criminal convictions as opposed to immigration violations arose. We clearly see no difference between the two; but the Iraqis do. Questions arose in the meeting about what constitutes an immigration violation, as well as how immigration violations are adjudicated and if this is different than an ordered removal based on a criminal conviction. We are under the impression there is no difference. An individual can be ordered removed for whatever reason - immigration, criminal, whatever. Can you please confirm this? As well, any information on what constitutes and immigration violation would be useful.

As well, we would like to lay out the removal process for the GOI, so that they see it is a completely legal and transparent process from start to finish, with sufficient due process. I pulled the following about the EOIR from the DOJ website. Please let me know if this is accurate and up-to-date and usable for this purpose. If not, please provide us with something to use.

The issue of asylees also came up. The GOI is very concerned that individuals who sought asylum are among the deportees and that they are at risk if returned to the Iraq. We believe that there may be some among the deportees who fall into this category; however, they too received a full hearing and had ample opportunity to present their case. Any information you have on this (including how many among the deportees fall into this category) would be very useful. Per below, there is a separate hearing process for asylum-only cases. What happens during these hearings if asylum is denied? Is there a removal order issued as well? Do the subjects have the opportunity to appeal, or self-deport? Any specific info on this would be useful.

In the meeting, the MFA agreed to instruct the Iraqi Embassy to dispatch a consular officer to Mesa to begin documenting the deportees. However, they balked again at the number of deportees, even though previously they suggested 60 as an acceptable number. This is clearly a political issue for them vis-à-vis the optics of so many coming off the plane. Our Charge reinforced our high lever interest and PM's pledge to POTUS.

Best,

Scott


Department of Justice
Executive Office for Immigration Review

Thursday, September 9, 2010
EOIR at a Glance
This fact sheet provides an agency overview for general informational purposes only and is not a substitute for legal advice; nor does it constitute any legal opinion by the Department of Justice, or create any rights or benefits. This fact sheet is not fully inclusive, does not address all applicable laws or case interpretation, and may be subject to change as new laws and regulations are enacted.

The Department of Justice's Executive Office for Immigration Review (EOIR) administers the nation's immigration court system. EOIR primarily decides whether foreign-born individuals, who are charged by the Department of Homeland Security (DHS) with violating immigration law, should be ordered removed from the United States or should be granted relief or protection from removal and be permitted to remain in this country. To make these critical determinations, EOIR's Office of the Chief Immigration Judge (OCIJ) has more than 235 immigration judges who conduct administrative court proceedings, called removal proceedings, in 57 immigration courts nationwide.

EOIR's appellate component, the Board of Immigration Appeals (BIA), primarily decides appeals of immigration judge decisions. Certain BIA decisions that the BIA designates as precedent decisions apply to immigration cases nationwide. The BIA is the highest administrative tribunal for interpreting and applying U.S. immigration law.

EOIR's third component, the Office of the Chief Administrative Hearing Officer (OCAHO), hears cases that do not relate to removal proceedings; they relate to employer sanctions for illegal hiring of unauthorized workers, document fraud, and unfair immigration-related employment practices (fact sheet at http://www.justice.gov/eoir/press/2012/OCAHOFactSheet05292012.pdf<https://www.justice.gov/eoir/press/2012/OCAHOFactSheet05292012.pdf>).

Removal Proceedings
DHS initiates removal proceedings when it serves the individual with a charging document, called a Notice to Appear, and files that Notice to Appear with one of EOIR's immigration courts. The Notice to Appear orders the individual to appear before an immigration judge and provides notice of the removal proceedings, the alleged immigration law violations, the ability to seek legal representation at no expense to the government, and the consequences of failing to appear at scheduled hearings.
When the immigration court receives the Notice to Appear from DHS, the court schedules a removal hearing before an immigration judge. There may be one or multiple hearings, depending on what happens in the case. The two parties in the hearing are the individual named in the Notice to Appear and DHS.

The DHS attorney represents the government and seeks to prove that the individual should be removed from the United States. The individual in removal proceedings may, at his/her own expense, seek an attorney or other authorized legal representative (fact sheet at http://www.justice.gov/eoir/press/09/WhoCanRepresentAliensFactSheet10022009.pdf<https://www.justice.gov/eoir/press/09/WhoCanRepresentAliensFactSheet10022009.pdf>).

Removal proceedings begin with a "master calendar" hearing, where the immigration judge ensures the individual understands the alleged immigration law violations. The judge also provides information on available free legal representation resources in the area. Then, generally, the immigration judge will schedule an "individual" hearing, where both parties present the merits of the case to the immigration judge.

The outcome of many removal proceedings depends on whether the individual is eligible for relief from removal. Immigration law provides relief from removal to individuals who meet specific criteria. In most removal proceedings, individuals admit that they are removable, but then apply for one or more forms of relief. In such cases, individuals must prove that they are eligible for relief, such as cancellation of removal, adjustment of status, asylum, or other remedies provided by immigration law (fact sheet at http://www.justice.gov/eoir/press/04/ReliefFromRemoval.pdf<https://www.justice.gov/eoir/press/04/ReliefFromRemoval.pdf>).

Other Hearings and Reviews
While immigration judges usually conduct removal proceedings, they may also conduct the following hearings and reviews:

   *   Bond Redetermination Hearings -- to determine whether to lower or eliminate the amount of a bond set by DHS for an individual detained by DHS. The detained individual makes a request for a bond redetermination hearing to the immigration judge. These hearings are generally informal and are not part of the removal proceedings.
   *   Rescission Hearing -- to determine whether a lawful permanent resident should have his/her residency status rescinded because he/she was not entitled to it when it was granted.
   *   Withholding-Only Hearing -- to determine whether an individual who has been ordered removed is eligible for withholding of removal under Section 241(b)(3) of the Immigration and Nationality Act or under the Convention Against Torture.
   *   Asylum-Only Hearing -- to determine whether certain individuals who are not entitled to a removal hearing (crewmen, stowaways, Visa Waiver Pilot Program beneficiaries, and those ordered removed from the United States on security grounds) but claim a well-founded fear of persecution in their home country are eligible for asylum. (See above Caveat Regarding Asylum Claims

in the CNMI.)

   *   Credible Fear Review -- to determine whether an individual in expedited removal has a credible fear of persecution or torture (fact sheet at
http://www.justice.gov/eoir/press/09/AsylumWithholdingCATProtections.pdf<https://www.justice.gov/eoir/press/09/AsylumWithholdingCATProtections.pdf>). Expedited removal allows DHS to remove certain individuals from the United States without placing them in removal proceedings.

   *   Reasonable Fear Review -- to determine whether an individual in expedited removal, who has been previously removed from the United States, has a reasonable fear of persecution or torture (fact sheet at
http://www.justice.gov/eoir/press/09/AsylumWithholdingCATProtections.pdf<https://www.justice.gov/eoir/press/09/AsylumWithholdingCATProtections.pdf>).

   *   Claimed Status Review -- to determine whether an individual in expedited removal has a valid claim to U.S. citizenship, lawful permanent residency, refugee or asylum status, when the individual claims under oath to have such status.

   *   In Absentia Hearing -- to determine whether an individual who does not appear for a scheduled hearing may be ordered removed in his/her absence, which is called in absentia. The immigration judge will order an individual removed in absentia if DHS establishes by clear, unequivocal and convincing evidence that the individual is removable, and that DHS served the individual with a written notice to appear for the hearing that included information on the consequences of being absent for a hearing.

Immigration Judge Decisions
At the conclusion of the case, the immigration judge usually issues an oral decision, but on occasion will issue a written decision sometime after the hearing. Immigration judge decisions are made on a case-by-case basis according to U.S. immigration law, regulations and precedent decisions.

When the immigration judge grants the individual relief from removal, the individual may remain in the United States, sometimes temporarily and sometimes permanently. When the immigration judge orders the individual removed, DHS may remove the individual from the United States. However, an immigration judge's decision may not be the final decision in the case because both parties have the opportunity to appeal an immigration judge's decision in removal proceedings and in the other hearings and reviews specified above.

Appeals of Immigration Judge Decisions -- BIA Review Within 30 days of the immigration judge's decision, either party or both parties may appeal the immigration judge's decision to the BIA. The BIA decides the appeal by conducting a "paper" or record review; the BIA, generally, does not conduct courtroom hearings, though it may hold oral argument in selected cases.

Appeals of BIA Decisions -- Federal Court Review If the individual in proceedings disagrees with the BIA's ruling, he/she may file an appeal ("petition for review") with the appropriate federal circuit court of appeals. DHS, however, may not do so.

- EOIR -
The Executive Office for Immigration Review (EOIR) is an agency within the Department of Justice. Under delegated authority from the Attorney General, immigration judges and the Board of Immigration Appeals interpret and adjudicate immigration cases according to United States immigration laws. EOIR's immigration judges conduct administrative court proceedings in immigration courts located throughout the nation. They determine whether foreign-born individuals-whom the Department of Homeland Security charges with violating immigration law-should be ordered removed from the United States or should be granted relief from removal and be permitted to remain in this country. The Board of Immigration Appeals primarily reviews appeals of decisions by immigration judges. EOIR's Office of the Chief Administrative Hearing Officer adjudicates immigration-related employment cases. EOIR is committed to ensuring fairness in all of the cases it adjudicates.

_____
Executive Office for Immigration Review
Updated January 8, 2016


Scott Riedmann
Consul General
U.S. Embassy, Baghdad
+1-301-985-8841 x2924
RiedmannSR@state.gov<mailto:RiedmannSR@state.gov>



SBU
This email is UNCLASSIFIED.



SBU

This email is UNCLASSIFIED.