# EXHIBIT 1-55

Highly Confidential – Subject to Protective Order

## ICE SUPPLEMENTAL INTERROGATORY RESPONSES

**Interrogatory 1: Describe each term of the Iraqi Agreement pertaining to the repatriation of and process for repatriating Iraqi Nationals under the Iraqi Agreement.**

## Petitioners' Position

1. The interrogatory seeks a description of "each term of the Iraqi Agreement pertaining to the repatriation." Respondents ignored this portion of the interrogatory. The terms of the Iraqi Agreement – whether it is formal agreement or simply an "understanding" – are at the heart of this case. As this Court has noted, Respondents have produced nothing in the record to support their argument that Iraq will accept Iraqi nationals for repatriation:

> Based on this record, the Court cannot make a determination regarding whether Iraq will accept repatriation of the class. Schultz's declaration does not contain information regarding the framework of the Government's diplomatic agreement with Iraq. When presented at the hearing by the Court regarding details of the agreement, counsel for the Government was unsure whether there was any formal agreement that had been memorialized in writing. Although the post-hearing Bernacke declaration fills in some of the blanks – it acknowledges that there is no written agreement – **there is still not enough information regarding the scope of the agreement with Iraq**. While a handful of Iraqi nationals have been removed to Iraq since April, **it is unclear whether Iraq has agreed to repatriate all 1,400 putative class members at issue here, and if so, what conditions may have been attached that could impact on whether removal is likely**. Until the Court has a more complete picture from the Government regarding its communications with the Iraqi government, it cannot make a ruling on Iraq's willingness to accept repatriation of the class. ECF 191, Pg.ID # 533 (emphasis added).

Highly Confidential – Subject to Protective Order

Respondents' answer—silence on the terms of the agreement—lead to the conclusion that no agreement (unwritten or otherwise) exists. If that is the case, Respondents should be required to say so, since that would be responsive to this interrogatory.

Petitioners ask the Court to order Respondents to respond to this portion of the interrogatory within 1 week. Respondents should confirm in a declaration that they have "give[n] the information available to [them], if any, through [their] attorney, investigators employed by [them] or on [their] behalf, or other agents or representatives, whether personally known to the answering party or not; if the answering party lacks necessary information to make a full, fair, and specific answer to the interrogatory, it should so state under oath and should set forth in detail efforts made to obtain the information." *Noble v. Gonzalez*, 2011 WL 2118746, at *6 (E.D. Cal. May 27, 2011) (Exhibit 27).

Petitioners also respectfully ask the Court to instruct Respondents that a failure to conduct a reasonable inquiry, to respond with information within their control or otherwise obtainable by them, and to fully and completely respond to the interrogatory may result in sanctions, including the exclusion of that information in motions, in hearings, and at trial. Fed. R. Civ. P. 37(d); *Woods*, 692 F.3d at 1279.

2. ICE asserts that "through discussions during this time, the governments of Iraq and the United States have reached an understanding of the process for

Highly Confidential – Subject to Protective Order

repatriating Iraqi nationals." ICE does not identify the nature of those discussions, the individuals involved with the discussions, or the substance of those discussions, which makes its answer less than full and complete. The Court should order supplementation of the response with this information.

3.    In describing the repatriation process, ICE answered that the Iraqi government "accept[s] a wide range of photocopied evidence from U.S. government information systems, including various documentation or secondary information (including relatives' identification documents) confirming citizenship located in Alien files." Respondents' answer is not full or complete—it lacks specificity as to the document types and the information systems referenced in the answer. Petitioners ask the Court to order Respondents to supplement their response.

4. When explaining the repatriation process, Respondents answered that the Iraqi government conducts interviews "either in person (including at designated points of embarkation) or via video." Petitioners seek a full and complete response regarding the process—what happens if, after an interview at a point of embarkation or at any point in the process, the Iraqi government determines the individual is not an Iraqi national, or will not be accepted for repatriation

5. When explaining the repatriation process, Respondents answered with "after an alien's identify has been verified," without explaining how an alien's

Highly Confidential – Subject to Protective Order

identity has been verified, by whom, or based upon what criteria. Petitioners ask that the Court order Respondents to provide this information.

**ICE's Response:**

Please refer back to Respondent ICE's initial Interrogatory response.

**ICE's Supplemental Response:**

1. As previously stated in Respondent ICE's initial response to Interrogatory 1, there is no international agreement or written arrangement between the government of Iraq and the United States regarding the repatriation of Iraqi nationals. There is, however, an understanding of how to implement the process of repatriation of Iraqi nationals with administratively final order of removal. Respondent ICE learned about the agreed-upon process through a transmitted cable which is attached to Petitioners' ECF 293 filing as Exhibit 3. This process, described in Respondent ICE's initial response to Interrogatory 10, represents a change from Iraq's previous practice of accepting only original Iraqi passports and identification cards.  As explained in Respondent ICE's initial response to Interrogatory 5, Iraq also did not accept photocopies of identity documents. The government of Iraq also was not cooperating with the government of the United States in expeditiously repatriating Iraqi nationals. The government of Iraq's current cooperation represents a significant change in posture in this regard.

Highly Confidential – Subject to Protective Order

2. Respondent ICE did disclose the names of individuals involved in discussing regarding repatriation in Respondent ICE's initial response to Interrogatory 12. Furthermore, Respondent ICE objects to Petitioners' request to supplement this response because the "nature of the discussions" is not part of what was asked in Interrogatory 1. Seeking information on the nature of the discussions is not a request to supplement but rather a request for new information based on Respondent ICE's initial response.

3. Respondent ICE provided a non-exhaustive list of examples of accepted evidence by the Government of Iraq to establish Iraqi citizenship in its initial response to Interrogatory 2, and provides that non-exhaustive list again here. There are no specific documents that can be used to establish Iraqi citizenship. Based on Respondent ICE's experience with the government of Iraq, they may consider a variety of evidence, including but not limited to: passports, national identification cards, documents from the Alien file, and family documents. Photocopies of these documents are also accepted. Because available documents may vary from case to case, it is impossible to provide a fully exhaustive list of what the government of Iraq may accept.

4. As noted in Respondent ICE's initial response to Interrogatory 10, the government of Iraq schedules an interview with an Iraqi national after it has made a determination regarding whether the information provided by

Highly Confidential – Subject to Protective Order

Respondent ICE is sufficient to establish that the individual is Iraqi. The governments of the United States and Iraq work together to achieve removal of Iraqi nationals with administratively final orders of removal.  If, after a consular interview, the government of Iraq requires additional information, Respondent ICE will endeavor to provide such information. The government of Iraq can then either issue or refuse to issue a travel document.

5. The government of Iraq verifies an individual's identity. Respondent ICE presents available indicia of citizenship to the government of Iraq, and Iraq verifies an individual's identity using a process and criteria unknown to Respondent ICE.

**Interrogatory 2: Describe each criterion an Iraqi National must meet before Iraq will accept an Iraqi National for repatriation, under the Iraqi Agreement or otherwise.**

<u>**Petitioners' Position**</u>

1. ICE's response included the following statements: (1) "through discussions in 2017, with the GOI [Government of Iraq], ICE's current understanding is that three criteria must be present before the GOI agrees to repatriate an Iraqi national"; and (2) "[i]t is Defendant's understanding that based on the relevance before it, the GOI assesses whether the individual is an Iraqi national." Petitioners seek a supplementation of the interrogatory with the substance of ICE's "discussions" and the bases of its "understanding."

Highly Confidential – Subject to Protective Order

2. Petitioners seek supplementation of Respondents' knowledge of the criterion used during the consular interview to determine if repatriation will occur.

3. Respondents' answer regarding the type of records that show an indicia of citizenship is prefaced with "including but not limited to." *Jones-McNamara v. Holzer Health Sys.*, 2014 WL 3563406, at *1 (S.D. Ohio July 18, 2014) (Exhibit 28) ("[I]interrogatory answers must be responsive, full, complete and unevasive . . . . [and] when an interrogatory asks for 'all' of anything, the responding party may not respond with examples. The responding party must object to the interrogatory as overly burdensome or answer it in full."); *Boldstar Tech., LLC v. Home Depot USA, Inc.*, 2008 WL 11320011, at *2 (S.D. Fla. Mar. 10, 2008) (Exhibit 29). Respondents' answer suggests there are other documents which were not identified in their answer. Petitioners seek supplementation of the interrogatory with all records that have been or would be accepted by Iraq as showing an indicia of citizenship, including specificity as to the types of "documents from the Alien file" and "family documents."

4. Petitioners seek supplementation of the type of "statements made during the consular interview" that would show indicia of citizenship.

**ICE's Response:**

Please refer back to Respondent ICE's initial Interrogatory response.

Highly Confidential – Subject to Protective Order

### ICE's Supplemental Response:

1. Respondent ICE objects to Petitioners' request to supplement this response because the "substance of the discussions" is not part of what was asked in Interrogatory 2. Seeking information on the substance of the discussions is not a request to supplement but rather a request for new information based on Respondent ICE's initial response.

2. Respondent ICE's understanding of the criterion is based on the government of Iraq's representations that the previously identified criteria are what Iraq requires to consider repatriation. Specifically, as discussed in Respondent ICE's initial response to Interrogatory 1, the Iraq Inter-Ministerial Committee on Deportations identified the following requirements for repatriation of Iraqi nationals: consular access, Iraqi citizenship verification, deportation court order review, and travel document issuance. Respondent ICE does not possess additional knowledge of what criteria the government of Iraq uses in its consular interview.

3. Respondent ICE provided a non-exhaustive list of examples of accepted evidence by the Government of Iraq to establish Iraqi citizenship in its initial response to Interrogatory 2, and provides that non-exhaustive list again here. There are no specific documents that can be used to establish Iraqi citizenship. Each Alien file is unique and each may present different documents that may

Highly Confidential – Subject to Protective Order

be accepted by the Government of Iraq. Based on Respondent ICE's experience with the government of Iraq, they may consider a variety of evidence, including but not limited to: passports, national identification cards, documents from the Alien file, and family documents. Photocopies of these documents are also accepted. This list is not exhaustive, but these are examples of documents that Respondent ICE knows the government of Iraq will accept.

4. Respondent ICE has however, been made aware by the government of Iraq that statements made during the consular interview can be considered in determining Iraqi citizenship.

**Interrogatory 3: Describe each criterion for denying repatriation to an Iraqi National under the Iraqi Agreement, or otherwise.**

<u>**Petitioners' Position**</u>

ICE responded with the following: "Defendant ICE is aware that direct requests sent by an individual to Iraqi Embassies have been denied if an individual does not provide, as part of the request, a representation that the individual wants to return to Iraq." Petitioners seek a statement from Respondents if the same will occur or has occurred in situations other than when an individual has made a direct request to the Iraqi Embassies (for instance, if a class member represents during a consular interview that he or she does not want to return to Iraq).

Highly Confidential – Subject to Protective Order

**ICE's Response:**

Please refer back to Respondent ICE's initial Interrogatory response.

**ICE's Supplemental Response:**

During the May 23, 2018 consular interviews, ICE is aware that there were 5 current or former class members who indicated that they did not want to return to Iraq. The GOI has represented to ICE that additional approval from Baghdad will be needed for the issuance of travel documents for individuals who do not sign the GOI form stating that he or she wants to return to Iraq. ICE has made a request to the GOI to have those travel documents issued without requiring that form and that request is pending.

**Interrogatory 4: Identify any travel documents that Iraq requires or will accept before accepting an Iraqi National for repatriation under the Iraqi Agreement or otherwise, and the procedures for obtaining the travel documents.**

<u>Petitioners' Position</u>

ICE responded with: "it is Defendant ICE's understanding that the [Iraqi government] issues" certain documents. Petitioners sroeek a full and complete response with specificity about to how ICE came to its "understanding" (who obtained this understanding, when, what information from Iraq led to the understanding, what other information lead to the understanding, and so forth).

**ICE's Response:**

Please refer back to Respondent ICE's initial Interrogatory response.

Highly Confidential – Subject to Protective Order

**ICE's Supplemental Response:**

Respondent ICE's understanding of which documents the government of Iraq issues is based on Respondent ICE's interactions with the government of Iraq and which documents it has seen the government of Iraq issue.

**Interrogatory 5: For the time period since March 1, 2017, identify the documentation or evidence other than travel documents that Iraq requires or will accept before approving an Iraqi National for repatriation under the Iraqi Agreement or otherwise.**

**Petitioners' Position**

1. Like Interrogatory No. 4, ICE should supplement with specificity as to its "understanding that there are no specific documents" that the Iraqi government "requires to issue a travel document."

2. ICE answered that the GOI considers "available indicia of citizenship, which varies from case to case and may include originals or photocopies of various identity documents, such as those noted in Interrogatory No. 2." The answer suggests there are additional documents, beyond those identified in Interrogatory No. 2. If so, Respondents should identify the documents.

**ICE's Response:**

Please refer back to Respondent ICE's initial Interrogatory response.

Highly Confidential – Subject to Protective Order

**ICE's Supplemental Response:**

1. The government of Iraq has intimated that it will accept evidence of Iraqi citizenship derived from U.S. information systems, but has not provided Respondent ICE with a list of documents that it will accept or not accept to verify an individual's Iraqi citizenship. There is no minimum requirement of documents required by the government of Iraq to demonstrate Iraqi citizenship. For example, A 209-151-821 George Arthur had no evidence of Iraqi identification or citizenship, yet the government of Iraq still agreed to conduct a consular interview with this individual.

2. Respondent ICE is not aware of additional documents beyond those identified in Interrogatory 2.

**Interrogatory 6: For each Class Member (identified by name and A-number) for whom ICE or another relevant department of the U.S. government has since March 1, 2017 requested travel documents from the Iraqi Ministry of Foreign Affairs (or another relevant department of the Iraqi government) for repatriation to Iraq, provide the following:**

    **a.** **The date the request for the travel documents was made to the Iraqi government**

    **b.** **The type of travel documents obtained, the department of the Iraqi government issuing the travel documents, and the date the documents were issued;**

    **c.** **If the request for the travel documents was denied, the department of the Iraqi government issuing the denial, the date of the denial and the reason given for the denial; and**

    **d.** **Whether Iraq denied or approved repatriation of the Class Member, and, if denied, the basis for such denial.**

Highly Confidential – Subject to Protective Order

### e.   If repatriation occurred, when, by what travel method (commercial air, charter air, etc.), and to what location.

**<u>Petitioners' Position</u>**

ICE's response shows it has requested travel documents and repatriation of class members on March 20, 2018, but that the Iraqi government has not issued the travel documents or approved or denied repatriation.   *See* Exhibit 30, p. 15. Petitioners ask the Court to order bi-weekly supplementation of this information. *See* Fed. R. Civ. P. 26(e) (requiring supplementation of interrogatory responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect" or as otherwise ordered by the court.)

**ICE's Response:**

Please refer back to Respondent ICE's initial Interrogatory response.

**ICE's Supplemental Response:**

Respondent ICE objects to bi-weekly supplementation of this information. This Court has already ordered Respondents to respond to the Requests for Production, of which travel documents are a part. Furthermore, Respondent ICE has already been ordered to identify individuals removed to Iraq on the bi-weekly reporting. Respondent ICE will, however, identify the 32 current or former class members for whom it has recently secured travel documents from the government of Iraq:

Highly Confidential – Subject to Protective Order



**Interrogatory 7:** For each Class Member (identified by name and A-number) for whom ICE or another relevant department of the U.S. government has since March 1, 2017 requested from the Iraqi Ministry of Foreign Affairs (or another relevant department of the Iraqi government) to be repatriated to Iraq, provide the following:

a.    The date of the request;

b.    The response from the Iraqi government, the date of the response, the

Highly Confidential – Subject to Protective Order

department of the Iraqi government issuing the response, and, if repatriation was denied, the basis for the denial; and

c.     If the request for repatriation was granted, any conditions placed on the repatriation of the Class Member.

d.     If repatriation occurred, when, by what travel method (commercial air, charter air, etc.), and to what location.

-

## Petitioners' Position

1. ICE produced a chart purporting to respond to this interrogatory, but it is incomplete. *See* Exhibit 30. Instead, ICE's chart intermingles travel documents (the topic of interrogatory No. 6) with repatriation (the topic of this interrogatory), making it unclear which interrogatory is being answered. As an example, the fourth column header is "TD [for travel documents] Request Date 6a, 7a." This purports to be the date travel documents were requested, yet "7a" is a reference to an interrogatory about the date repatriation was requested. The same issue exists for column called, "If TD Denied, Department, Date, and Reason 6c, 6d, 7b." This consolidation of answers makes it impossible to extract requests for travel documents (and the denial or approval for the same) from the request for repatriation (and the denial or approval). Petitioners ask that Respondent ICE be required to separate its answers for Interrogatory No. 6 from its answers for Interrogatory No. 7.

2. The interrogatory seeks the response of the Iraqi government to requests for repatriation (No. 7b). ICE's response to the majority of the entries appears to be a

Highly Confidential – Subject to Protective Order

self-serving statement to support its defenses in this case, rather than the actual response from GOI: "Processing not completed due to court injunction." Petitioners ask the Court to order Respondents to provide the actual response from the Iraqi government. For example, the chart shows that ICE requested approval on May 25, 2017, from the Iraqi government for a large number of Iraqi nationals, a significant number of whom also appear on the June flight manifest. Exhibits 7 and 30. Exhibit 8 shows that Iraq refused to accept the June flight, yet ICE's chart for those individuals simply states "Processing not completed due to court injunction".

3. Petitioners ask the Court to order bi-weekly supplementation of this interrogatory as it appears that Respondents are engaged in continuing communication with the Iraqi government to obtain travel documents and seek repatriation for class members.

**ICE's Response:**

Please refer back to Respondent ICE's initial Interrogatory response.

**ICE's Supplemental Response:**

1. A request for a travel document is the same as a request for repatriation. They are not two different requests, but rather two ways of describing one singular process. The date the request for the travel documents was made to the Iraqi government and the date of request of repatriation are equivalent. The government of Iraq's response to a request for repatriation (Interrogatory 7.b)

Highly Confidential – Subject to Protective Order

will include approval or denial and the travel document, which is why they are all in the same column. Petitioners note that "it impossible to extract requests for travel documents (and the denial or approval for the same) from the request for repatriation (and the denial or approval)." And that is true, it is impossible to extract these requests because they are one and the same.

**Interrogatory 8: For each Class Member (identified by name and A-number), state whether Iraq has agreed to the repatriation of that individual as of the following time:**

> **a.      On the date of the Class Member's arrest by ICE; and**
> **b.      On the date you answer this Interrogatory.**

## Petitioners' Response

1. The interrogatory seeks confirmation that Iraq has agreed (or not) to repatriation as to *each individual class member*. ICE did not respond on an individual basis, but made a blanket statement that the "GOI had committed to accept Iraqi nationals for repatriation." ICE did not respond to the interrogatory as written, and Petitioners ask the Court to (again) order them to do so.

2. Petitioners also seek more specificity about the answer that the "GOI had committed to accept Iraqi nationals for repatriation," such as the substance of the "commitment," how and when the commitment was communicated, and who communicated about the commitment. This information is also responsive to Interrogatory No. 1's request for the terms of the Iraqi Agreement.

Highly Confidential – Subject to Protective Order

**ICE's Response:**

Please refer back to Respondent ICE's initial Interrogatory response.

**ICE's Supplemental Response:**

1. The government of Iraq had not specifically agreed to repatriate any class member on the date of his or her arrest. This is because the government of Iraq requires an interview as part of the travel document and repatriation process, and so Respondent ICE does not initiate the travel document process or request an interview on behalf of an individual until that individual is in custody, i.e., after arrest.

2. In using the phrase "the GOI had committed to accept Iraqi nationals for repatriation," Respondent ICE means that

3. On the date that a supplemental response to Interrogatory 8 is provided, the government of Iraq has agreed to repatriation of and provided travel documents for 33 class members.

**Interrogatory 9: The declaration of John Schultz, ECF 81-4, Pg.ID# 2007, states that Iraq previously would accept only its nationals with unexpired passports, but that Iraq will now "authorize repatriation with other indicia of nationality." State what "other indicia of nationality" Iraq will accept for repatriation; the basis for the U.S. government's belief that the other indicia of nationality will be accepted, including the identification of the specific agreement(s) or document(s) stating this policy; and the criteria an individual must or can meet before Iraq will accept an Iraqi National for repatriation.**

**<u>Petitioners' Position</u>**

Highly Confidential – Subject to Protective Order

The interrogatory seeks "the basis for the U.S. government's belief that the other indicia of nationality will be accepted, including the identification of the specific agreement(s) or document(s) stating this policy; and the criteria an individual must or can meet before Iraq will accept an Iraqi National for repatriation." *See* ECF 81-4, Pg.ID# 2007. ICE answered that the "basis for [its] belief is the ongoing discussions with the GOI and the GOI's issuance of travel documents . . . in response to requests submitted using other indicia of nationality, such as photocopies of identity documents."

1. The Court should order Respondents to provide the substance of those discussions, understandings, GOI's indications, and GOI's commitments (including the date of the discussions, the participants, and specific statements made by the participants) referenced in Interrogatory Nos. 1, 2, 3, 4, 5, 8 and 12. The response should also include the substance of the request for and the Iraqi government's purported "tacit approval" for the June 2017 flight that is referenced in Exhibit 8, DHSHAMAMA000001.

2. Respondents should also identify the specific types of documents used to show an "indicia of nationality," which Respondents have only identified in this response as "photocopies of identity documents."

**ICE's Response:**

Please refer back to Respondent ICE's initial Interrogatory response.

Highly Confidential – Subject to Protective Order

**ICE Supplemental Response:**

1. Respondent ICE objects to Petitioners' request to supplement this response because the "substance of the discussions" is not part of what was asked in Interrogatory 9. Seeking information on the substance of the discussions is not a request to supplement but rather a request for new information based on Respondent ICE's initial response.

2. The charter flight scheduled for June 2017 was rescheduled to the end of July 2017 as a result of the court order. Despite the order issued by this court, representatives from the government of Iraq still traveled to Arizona to interview the individuals on the flight manifest so that the flight could proceed in the end of July 2017. This shows the government of Iraq's commitment to continue the repatriation process.

3. As mentioned in Respondent ICE's initial response to Interrogatory 2, there are no specific documents that can be used to establish Iraqi citizenship. Based on Respondent ICE's experience with the government of Iraq, they may consider a variety of evidence, including but not limited to: passports, national identification cards, documents from the Alien file, and family documents.

**Interrogatory 11: For each Class Member (identified by name and A-number) who, prior to March 1, 2017, was living in the community, state whether ICE released that individual to the community because ICE determined that Iraq would not accept that individual for repatriation the reason ICE determined that Iraq would not accept the individual for repatriation, and whether the individual was subject to an order of supervision or other release conditions.**

Highly Confidential – Subject to Protective Order

## Petitioners' Position

To address Respondents' objections to this Interrogatory, Petitioners revised it as follows:

> **Interrogatory 11: For each Class Member (identified by name and A-number) who, prior to March 1, 2017, was living in the community, state whether ICE released that individual to the community because ICE determined that Iraq would not accept that individual for repatriation and the reason ICE determined that Iraq would not accept the individual for repatriation.**

1. ICE responded that its "review is ongoing." Petitioners seek supplementation of the interrogatory with information obtained from ICE's ongoing review.

2. By this Court's order, ECF 254, Pg.ID #6238, this interrogatory was narrowed to cover a random sample of 30 detainees, a list of which was provided by Petitioners to Respondents. Respondents responded to the narrowed Interrogatory, but their responses are impossible to understand (Exhibit 31).

The response is in a tabular format. One column is titled "State whether ICE released because ICE determined Iraq would not repatriate." There are two "Yes" responses. But for 28 one of the 30 listed individuals, the response is "No or Unknown." Yet the next column's responses are inconsistent with that. For example:

- "All efforts to achieve repatriation had failed."
- "Released on OSUP following the inability of the Consulate of Iraq to issue a travel document, reason unknown."

Highly Confidential – Subject to Protective Order

- "Government of Iraq notified ICE that a travel document would not be issued for failure to submit original Iraqi identification cards with the travel document request."

- "Government of Iraq notified ICE that a travel document would not be issued for the reason that the subject did not have the required official documents to support the request and confirm his Iraqi nationality."

Then for each of the 28 individuals, a boilerplate phrase is repeated, "Available records do not indicate Iraq rejected this individual for repatriation."

Petitioners simply cannot make heads or tails of this. How are Respondents differentiating between Iraq's decision to "reject this individual for repatriation" (which purportedly did not happen) and Iraq's express and individuated declination to issue travel documents? It is a mystery.

Petitioners request that Respondents re-answer Interrogatory 11, but in plain English that explains how they are using the terms they choose.

3. Request for Production No. 5 seeks production of all records cited or relied on in responding to the interrogatories. Because Respondents have not provided a written response to the Requests for Production, Petitioners do not know if Respondents are objecting to producing the records reviewed to respond to this interrogatory. Petitioners seek confirmation that the records will be produced.

**ICE's Response:**

Please refer back to Respondent ICE's initial Interrogatory response.

**ICE Supplemental Response:**

Highly Confidential – Subject to Protective Order

1. Respondent ICE initial responded that its review was ongoing because the answer to Interrogatory 11 was due after the answers to the other Interrogatories. Respondent ICE has already provided a full and complete response.

2. Records related to travel document issuance or lack thereof are not generally kept by ICE in the format requested, or even at all.  ICE documents in its records that a travel document was not issued during the detention time frame. As previously noted, the GOI was not cooperating in issuing travel documents and in many cases, the GOI simply did not reply to ICE's request for a travel document in a timely fashion, or even to provide a response at all.

   ICE is not required to keep the records that have been requested as to of why the GOI may have denied a travel documents. In many cases, ICE was simply required to release individuals if travel documents were not timely acquired.

3. Respondent ICE clarifies here that a refusal to issue a travel document at a specific time is not equivalent to a determination that an individual will never be repatriated to Iraq. The government of Iraq may refuse to issue a travel document on the grounds that that individual has provided insufficient documentation evidencing Iraqi citizenship. However, if that individual is able to supplement the request for a travel document with additional indicia

Highly Confidential – Subject to Protective Order

of Iraqi citizenship, the government of Iraq may issue a travel document at that time.

4. Respondents will produce records relied on or cited in responding to the Interrogatories, but reserve the right to claim any and all applicable privileges.

**Interrogatory 12: The name, title and department of the government (for both Iraq and the United States) of each individual negotiating the Iraqi Agreement, including the "ongoing diplomatic negotiations" referenced in the declaration of Michael V. Bernacke at paragraph 4 (ECF 184-2, Pg.ID# 5070-71), identification of the individuals authorized to enter into any agreement reached by the governments regarding the repatriation of Iraqi Nationals, and the date each individual engaged in the "ongoing diplomatic negotiations."**

<u>**Petitioners' Position**</u>

1. The interrogatory seeks the basis for a statement in Mr. Bernacke's declaration: "Iraq agreed to the timely return of its nationals subject to a final order of removal. The agreement between the United States and the Iraqi Ministry of Foreign Affairs (MFA) is not memorialized in any written document or treaty. It is a product of ongoing diplomatic negotiations." *See* ECF 184-2, Pg.ID # 5070, Decl. Bernacke at ¶ 4. ICE unilaterally narrowed the interrogatory to "diplomatic negotiations identifying a new process for the GOI to process removal cases." Exhibit 3, emphasis added. Negotiations about "a new process" are only one part of what this interrogatory seeks. It also seeks negotiations about the "agreement" (the term used by Mr. Bernacke) for the return of Iraqi nationals. Petitioners ask this Court to order Respondents to supplement this response within 1 week, and, like

Highly Confidential – Subject to Protective Order

Interrogatory No. 1, warn Respondents that a failure to provide a full and complete response may result in Respondents being prohibited from defending this case by pointing to any agreement, understanding, discussions, Iraq's indications, Iraq's commitments, or other communication from Iraq as evidence that Iraq will accept repatriation of Iraqi nationals.

2. ICE's response acknowledges that the U.S. Department of State (DOS) led the discussions with ICE in attendance. ICE did not identify the DOS individuals who were part of the discussions. ICE also did not identify any DHS attendees. Similarly, DHS's response indicates that individuals from outside DHS and the Iraqi government participated in discussions, but DHS did not identify those individuals. Petitioners ask that the Court order ICE and DHS to disclose all individuals who attended the meetings. ICE and DHS should also be ordered to identify any discussions or meetings that they may not have participated in or attended, but are nonetheless aware took place.

**ICE Response:**

Please refer back to Respondent ICE's initial Interrogatory response.

**ICE Supplemental Response:**

Respondent ICE has already provided a supplemental response to Interrogatory 12.