# EXHIBIT 1-56

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**USAMA JAMIL HAMAMA,** et al.,

    Petitioners and Plaintiffs,

v.

**REBECCA ADDUCCI,** et al.,

    Respondents and Respondents.

Case No. 2:17-cv-11910
Hon. Mark A. Goldsmith
Mag. David R. Grand
Class Action

## RESPONDENT/DEFENDANT U.S. DEPARTMENT OF HOMELAND SECURITY'S RESPONSES TO PETITIONER/PLAINTIFF USAMA JAMIL HAMAMA'S FIRST SET OF INTERROGATORIES

### I. PRELIMINARY STATEMENT

Respondent U.S. Department of Homeland Security ("DHS") has not, at this time, fully completed its discovery and investigation in this action. All information contained herein is based solely upon such information and evidence as is available and known to Respondent DHS upon information and belief at this time. Further discovery, investigation, research and analysis may supply additional facts, and meaning to currently known information. Consistent with Fed. R. Civ. P. 26(e), Respondent DHS will amend any and all responses herein as additional facts are ascertained, legal research is completed, and analysis is undertaken. The responses herein are made in a good faith effort to supply as much information as is known to Respondent DHS at this time, consistent with the positions set forth in the Joint Statement of Issues, ECF No. 235.

### II. GENERAL OBJECTIONS

1. DHS objects to the requests that impose or seek to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Local Rules and Orders of the Court.

1

2. DHS objects to the requests to the extent they seek disclosure of information protected under the attorney-client privilege, deliberative process privilege, law enforcement privilege, attorney work-product doctrine, or any other applicable privilege or immunity. Should any such disclosure by DHS occur, it is inadvertent and shall not constitute a waiver of any privilege or immunity.

3. DHS reserves all objections as to the competence, relevance, materiality, admissibility, or privileged status of any information provided in response to these requests, unless DHS specifically states otherwise.

Subject to and without waiving the foregoing objections and consistent with the Joint Statement of Issues, ECF No. 235, DHS provides the following responses:

1. Describe each term of the Iraqi Agreement pertaining to the repatriation of and process for repatriating Iraqi Nationals under the Iraqi Agreement.

**RESPONSE:**

DHS is unaware of any written agreement or arrangement between the governments of Iraq and the United States regarding repatriation of Iraqi Nationals. DHS lacks information sufficient to respond to the details of the repatriation process for Iraqi Nationals and defers to ICE regarding such details. Upon information and belief, DHS understands that Iraq has agreed in principle to repatriate Class Members and that requests for repatriation of Class Members could be coordinated by ICE Enforcement and Removal Operations ("ERO") through Government of Iraq.

2. Describe each criterion an Iraqi National must meet before Iraq will accept an Iraqi National for repatriation, under the Iraqi Agreement or otherwise.

**RESPONSE:**

DHS is unaware of any written agreement or arrangement between the governments of Iraq and the United States regarding repatriation of Class Members. DHS lacks information sufficient to respond regarding "each criterion an Iraqi National must meet" prior to being accepted by the Government of Iraq for repatriation. ICE is the component agency of DHS with responsibility for repatriation of Iraqi Nationals. Therefore, DHS refers Petitioners to the ICE response to Interrogatory No. 2 regarding the details of the repatriation process for Iraqi Nationals.

2

3. Describe each criterion for denying repatriation to an Iraqi National under the Iraqi Agreement, or otherwise.

**RESPONSE:**

DHS is not aware of any written agreement or arrangement between the governments of Iraq and the United States regarding repatriation of Class Members. DHS lacks information sufficient to respond regarding "each criterion an Iraqi National must meet" prior to being accepted by the Government of Iraq for repatriation. ICE is the component agency of DHS with responsibility for repatriation of Iraqi Nationals. Therefore, DHS refers Petitioners to the ICE response to Interrogatory No. 3 regarding the details of the repatriation process for Iraqi Nationals.

4. Identify any travel documents that Iraq requires or will accept before accepting an Iraqi National for repatriation under the Iraqi Agreement or otherwise, and the procedures for obtaining the travel documents.

**RESPONSE:**

DHS is not aware of any written agreement or arrangement between the governments of Iraq and the United States regarding repatriation of Class Members. DHS lacks information sufficient to respond regarding "each criterion an Iraqi National must meet" prior to being accepted by the Government of Iraq for repatriation. ICE is the component agency of DHS with responsibility for repatriation of Iraqi Nationals. Therefore, DHS refers Petitioners to the ICE response to Interrogatory No. 4 regarding the details of the repatriation process for Iraqi Nationals.

5. For the time period since March 1, 2017, identify the documentation or evidence other than travel documents that Iraq requires or will accept before approving an Iraqi National for repatriation under the Iraqi Agreement or otherwise.

**RESPONSE:**

DHS is not aware of any written agreement or arrangement between the governments of Iraq and the United States regarding repatriation of Class Members. DHS lacks information sufficient to respond regarding "each criterion an Iraqi National must meet" prior to being accepted by the Government of Iraq for repatriation. ICE is the component agency of DHS with responsibility for repatriation of Iraqi Nationals. Therefore, DHS refers Petitioners to the ICE response to Interrogatory No. 5 regarding the details of the repatriation process for Iraqi Nationals.

6.  For each Class Member (identified by name and A-number) for whom ICE or another relevant department of the U.S. government has since March 1, 2017 requested travel documents from the Iraqi Ministry of Foreign Affairs (or another relevant department of the Iraqi government) for repatriation to Iraq, provide the following:
    a. The date the request for the travel documents was made to the Iraqi government;
    b. The type of travel documents obtained, the department of the Iraqi government issuing the travel documents, and the date the documents were issued;
    c. If the request for the travel documents was denied, the department of the Iraqi government issuing the denial, the date of the denial and the reason given for the denial; and
    d. Whether Iraq denied or approved repatriation of the Class Member, and, if denied, the basis for such denial.
    e. If repatriation occurred, when, by what travel method (commercial air, charter air, etc.), and to what location.

**RESPONSE:**

Petitioners clarified that this interrogatory should be construed as directed only to U.S. Immigration and Customs Enforcement ("ICE"). Therefore, DHS defers to ICE for response and does not provide a separate response or objections; however, upon information and belief, DHS has not made a travel document request for an individual Class Member.

7.  For each Class Member (identified by name and A-number) for whom ICE or another relevant department of the U.S. government has since March 1, 2017 requested from the Iraqi Ministry of Foreign Affairs (or another relevant department of the Iraqi government) to be repatriated to Iraq, provide the following:
    a. The date of the request;
    b. The response from the Iraqi government, the date of the response, the department of the Iraqi government issuing the response, and, if repatriation was denied, the basis for the denial; and
    c. If the request for repatriation was granted, any conditions placed on the repatriation of the Class Member.
    d. If repatriation occurred, when, by what travel method (commercial air, charter air, etc.), and to what location.

**RESPONSE:**

Petitioners clarified that this interrogatory should be construed as directed only to U.S. Immigration and Customs Enforcement ("ICE"). Therefore, DHS defers to ICE for response and does not provide a separate response or objections; however, DHS, upon information and belief, has not made a repatriation request for an individual Class Member.

8. For each Class Member (identified by name and A-number), state whether Iraq has agreed to the repatriation of that individual as of the following time:

   a. On the date of the Class Member's arrest by ICE; and
   b. On the date you answer this Interrogatory.

**RESPONSE:**

Petitioners clarified that this interrogatory should be construed as directed only to U.S. Immigration and Customs Enforcement ("ICE"). Therefore, DHS defers to ICE for response and does not provide a separate response or objections; however, DHS, upon information and belief, has no responsive information.

9. The declaration of John Schultz, ECF 81-4, Pg.ID# 2007, states that Iraq previously would accept only its nationals with unexpired passports, but that Iraq will now "authorize repatriation with other indicia of nationality." State what "other indicia of nationality" Iraq will accept for repatriation; the basis for the U.S. government's belief that the other indicia of nationality will be accepted, including the identification of the specific agreement(s) or document(s) stating this policy; and the criteria an individual must or can meet before Iraq will accept an Iraqi National for repatriation.

**RESPONSE:**

Respondent DHS objects to this interrogatory to the extent it calls for information relied upon by John Schultz in his declaration, ECF 81-4, because DHS did not participate in the drafting or review of that declaration. DHS lacks knowledge or information sufficient to form a belief as to what "other indicia of nationality" the Government of Iraq will accept for purposes of accepting an Iraqi National for repatriation. ICE is the component agency of DHS with responsibility for repatriation of Iraqi Nationals. Therefore, DHS refers Petitioners to the ICE response to Interrogatory No. 9.

10. Explain each step (in sequence) that has since March 1, 2017 or will be taken by you or the government of Iraq to process an Iraqi National for removal if that Iraqi National does not have travel documents.

**RESPONSE:**

DHS objects to this interrogatory to the extent it seeks information regarding repatriation of Iraqi Nationals who are not members of the class or subclasses certified in this action. DHS lacks knowledge or information sufficient to form a belief as to what steps are taken by ICE or the government of Iraq to process an Iraqi National without travel documents for removal. ICE is the component agency of DHS with responsibility for repatriation of Iraqi Nationals. Therefore, DHS refers Petitioners to the ICE response to Interrogatory No. 10.

11. For each Class Member (identified by name and A-number) who, prior to March 1, 2017, was living in the community, state whether ICE released that individual to the community because ICE determined that Iraq would not accept that individual for repatriation and the reason ICE determined that Iraq would not accept the individual for repatriation.

**RESPONSE:**

Petitioners clarified that this interrogatory should be construed as directed only to U.S. Immigration and Customs Enforcement ("ICE"). Therefore, DHS defers to ICE for response and does not provide a separate response or objections; however, DHS, upon information and belief, has no responsive information.

12. The name, title and department of the government (for both Iraq and the United States) of each individual negotiating the Iraqi Agreement, including the "ongoing diplomatic negotiations" referenced in the declaration of Michael V. Bernacke at paragraph 4 (ECF 184-2, Pg.ID# 5070-71), identification of the individuals authorized to enter into any agreement reached by the governments regarding the repatriation of Iraqi Nationals, and the date each individual engaged in the "ongoing diplomatic negotiations."

**RESPONSE:**

Respondent DHS objects to this interrogatory to the extent it calls for information relied upon by Michael Bernacke in his declaration, ECF 184-2, because DHS did not participate in the drafting or review of that declaration. DHS objects to this interrogatory, as the "name, title and department of the government (for both Iraq and the United States) of each individual negotiating the Iraqi Agreement" do not affect the terms of any agreement, to the extent one exists. DHS objects to this interrogatory

to the extent it requires identification of foreign government representatives, which is protected by the law enforcement privilege, the disclosure of which would impede law enforcement operations, namely the removal of foreign nationals with final orders of removal from the United States. DHS further objects to this interrogatory as not likely to lead to the discovery of admissible evidence and irrelevant to the permissible scope of discovery ordered by the Court. Subject to the foregoing privileges, Respondent DHS did not participate in "negotiations" but did participate in discussions with participants from the Government of the United States and Iraq on June 23, 2017, December 5, 2017 and January 9, 2018.

On June 23, 2017, Deputy Assistant Secretary for International Engagement Matthew King and Acting Assistant Director of ICE Thomas Homan spoke by telephone with a representative of the Government of Iraq.

On December 5, 2017, the U.S. Government primarily was represented by Ambassador James Nealon, Assistant Secretary for International Affairs, at a meeting in which a variety of issues, including the repatriation of Iraqi Nationals, was discussed. Ambassador Nealon was accompanied by additional DHS personnel. Representatives from the U.S. Department of State, Office of Iraq Affairs also were present for the meeting.

On January 9, 2018, the U.S. Government primarily was represented by John Schultz, Deputy Assistant Director, Enforcement and Removal Operations and Michael Bernacke, Unit Chief, Enforcement and Removal Operations, for Respondent ICE. Representatives from Respondent DHS's Office of Policy attended. Representatives from the U.S. Department of State, Office of Iraq Affairs also were present for the meeting.

## VERIFICATION

I, Matthew H. King declare under penalty of perjury:

I am employed by the U.S. Department of Homeland Security, Office of International Affairs, as the Deputy Assistant Secretary, Office of International Engagement.

I have read and know the contents of these responses. These responses were prepared after obtaining information available to DHS through its officers and employees and through its documents and records. These responses, subject to inadvertent and undiscovered errors, are based upon, and necessarily limited by, the records and information still in existence, able to be located, presently recollected, an thus far discovered in the course of preparing these responses. The responses regarding DHS are true and correct to the best of my knowledge, information, and belief.

Executed on __27 MAR 18__

_____
Matthew H. King
Deputy Assistant Secretary
Office of International Engagement
U.S. Department of Homeland Security