# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **USAMA JAMIL HAMAMA**, et al., *Plaintiffs/Petitioners*, v. **REBECCA ADDUCCI**, et al., *Defendants/Respondents*. | Case No. 2:17-cv-11910 Hon. Mark A. Goldsmith Mag. David R. Grand Class Action |

## FOURTH DECLARATION OF RUSSELL ABRUTYN

I, RUSSELL ABRUTYN, hereby declare:

1. I have been licensed to practice law in Michigan since 2002 and in Washington State since 1999. I am also licensed to practice before the Second, Sixth, and Ninth Circuit Courts of Appeals, the Eastern and Western Districts of Michigan, and the Eastern and Western Districts of Washington. I graduated from the University of Michigan Law School in 1999.

2. My practice is focused exclusively on immigration law. I am a member of the American Immigration Lawyers Association (AILA) and the Secretary of AILA's Michigan chapter. I have received several awards from AILA: two President's Commendations, the Sam Williamson Mentor of the Year, and the Jack Wasserman Excellence in Litigation awards.

3. I represent 16 members of the *Hamama* class. I currently also represent several other Iraqi nationals in removal proceedings or with other immigration matters.

4. During my years of practice, I have represented hundreds of respondents who were released from ICE custody on Orders of Supervision.

5. Typically, one of the conditions placed on these individuals is that they must make a good faith effort to obtain a passport or travel document.

6. In some situations, often because ICE is better able to get these documents from the individual's home country than the noncitizen, ICE obtains the passport or travel document for the individual who was released on an Order of Supervision.

7. In my experience, ICE can and does continue to seek travel documents for individuals who are under Orders of Supervision. In some cases travel documents never issue; I have had clients, including many of my Iraqi clients, who were on orders of supervision for years or decades because ICE could not obtain travel documents. In other cases, depending on the country, ICE has been able to obtain travel documents more quickly.

8. At whatever point ICE obtains travel documents, and after it makes the determination that removal is appropriate as a matter of discretion, it then either takes the individual back into custody and removes them, or it

2

schedules a departure date and requires the person to appear at the airport for their flight.

9. ICE's ability to obtain a passport or travel document is not affected by the release of the individual from custody. This has been true for noncitizens from many different countries.

10. If ICE requires participation from the noncitizen, such as a signature on a form, ICE simply requires the person to appear and take the necessary action. ICE does not need the noncitizen to be in custody in order for ICE to continue its efforts to obtain travel documents. For those who might express reluctance at obtaining travel documents, the threat of detention, redetention, or prosecution is used to ensure compliance. *See* 8 U.S.C. § 1253(a)(1)(B) (requiring non-citizens to cooperate in "mak[ing] timely application in good faith for travel or other documents necessary to the alien's departure").

11. In some cases, ICE must release an individual because ICE cannot obtain travel documents, but ICE is concerned that the individual is a flight risk. In those cases, ICE has a wide variety of options that can be used, including electronic monitoring and more frequent check-ins, to monitor the individual.

I declare under penalty of perjury of the laws of the United States the foregoing is true and correct.

Executed: August 17, 2018, in Berkley, Michigan.

_____
RUSSELL ABRUTYN