# EXHIBIT 13

*Redacted per Court's Order ECF 338*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| USAMA JAMIL HAMAMA, et al., <br><br> *Petitioners/Plaintiffs,* <br> v. <br><br> REBECCA ADDUCCI, et al., <br><br> *Respondents/Defendants.* | Case No. 2:17-cv-11910 <br> Hon. Mark A. Goldsmith <br> Mag. David R. Grand <br><br> Class Action |

### DECLARATION OF CHRISTIE A. MOORE

I, Christie A. Moore, hereby declare, and make this declaration based upon my own personal knowledge and if called to testify, I could and would do so competently as follows:

1. I am an attorney licensed to practice in the Commonwealth of Kentucky and the State of Ohio. I am a Partner in the firm of Bingham Greenebaum Doll LLP.

2. I have worked with Maytham O. Al Bidairi and his family since early 2015. I was appointed by Judge McKinley, in the Western District of Kentucky, to represent FY, Maytham's wife, in the same matter in which Maytham entered a guilty plea. I have remained in contact with the family since that time.[1] I am personally familiar with the facts regarding Maytham's case through discussions

---

[1] The charges against FY were dismissed on January 23, 2017, after she successfully complied with a one-year Diversion Agreement.

and interactions with Maytham and FY, as well as family members and friends, and through analysis of the documents contained in Maytham's A-file and Record of Proceedings.

3. As Maytham's attorney, I filed an Emergency Motion to Reopen Based on Changed County Conditions and To Stay Removal. I then represented him at the hearing on the merits of his claim. I also represented him in a bond hearing which he was afforded pursuant to this Court's order.

4. In 2009, Maytham, an Iraqi national, along with FY, his wife, a Lebanese national, arrived in this country as refugees, along with their three small children. His daughters, ZA, NA and AA were ▉▉▉▉ years old, respectively, when they arrived in the U.S. They ultimately settled in Louisville, where FY and the girls still live. Maytham held several jobs in those early years, including working for Enterprise Car Rental, operating a small restaurant and later, when the restaurant failed, he did odd jobs and bought and sold cars as a source of income.

5. In January, 2015, Maytham was charged with making false statements in order to qualify for certain federal benefits, including SNAP benefits.[2] The federal

---

[2] *U.S. v. Al Bidairi, et. al.,* Case No. 3:15-DR-13-M

2

public defender was appointed to represent him, and Maytham was released on his own recognizance pending a trial on the charges.

6. Ultimately, Maytham pleaded guilty to the charges and on February 4, 2016, the Court entered Judgment. Judge McKinley did not believe incarceration was an appropriate sanction for Maytham's offense, but instead placed Maytham on probation for four (4) years, to be followed by a term of supervised release. He was also ordered to pay the special assessment and make restitution. He immediately began making restitution payments. Maytham made the decision to plead guilty, in part, because of his understanding that it was the policy of the U.S. that Iraqi nationals would not be deported under these circumstances.

7. A short three months later, in May, 2016, Maytham was taken into ICE custody and has been in the custody of the Department of Homeland Security ("DHS") for well over two (2) years now. During this time, he has been moved to nine (9) different detention centers in six (6) states. He is currently housed in Jena, Louisiana, 750 miles from Louisville.

8. I was retained as counsel for Maytham in the immigration matters in late 2017. In early February, 2018, based on this Court's Order, I filed a motion seeking Maytham's release on bond. A bond hearing was held on February 14,

2018. Bond was denied for the stated reason that by virtue of his conviction, Maytham was danger to the community and a flight risk.

9. The decision to deny bond is at odds with the fact that the federal judge in Kentucky had *not* deemed him a flight risk or a danger and therefore had released him pre-trial and then sentenced him to probation. Maytham had appeared in court and with the probation office as required, both pre-trial and after he was sentenced. The U.S. Probation Officer offered a letter stating that if released on bond, he would continue to be supervised by the U.S. Probation Office in Kentucky.

10. On February 23, 2018, on behalf of Maytham, I filed an Emergency Motion to Reopen Based on Changed County Conditions and To Stay Removal. That Motion was granted, and on June 6, 2018, a hearing was held on the merits of Maytham's claims. In the Immigration Judge's ("IJ") written Opinion, several noteworthy findings were highlighted. First, the IJ found that Maytham's crimes, as a matter of law, were aggravated felonies, but did *not* qualify as particularly serious crimes, meaning Maytham is eligible for relief under the INA and the Convention Against Torture. Maytham's testimony was also found to be "internally consistent and provided a plausible account of events", "was generally consistent with other evidence of record" and "generally credible". Maytham's expert, Daniel Smith, was not allowed to testify via phone, but his submitted

4

written opinions were admitted. Mr. Smith, an individual residing in Iraq, provided credible evidence, based on his own discussions with individuals living in Iraq familiar with Maytham and the current Iraqi policies and regime, about the dangers Maytham will face if removed to Iraq. Mr. Smith's opinions were not challenged in any way and therefore stood unrebutted. DHS offered no expert opinions on the subject. Notwithstanding these findings, the Immigration Judge denied relief on July 11, 2018. Notice of Appeal was timely filed and is pending.

11. Maytham's detention has caused a significant hardship on both Maytham and his family. Maytham's daughters are now ████████. They live in the same neighborhood in Louisville where they first settled. Several months after Maytham was picked up by ICE, the family was notified that they would be evicted from their apartment due to failure to pay the rent. The landlord allowed the family to stay an additional month, only after the undersigned became involved and persuaded the landlord to delay eviction proceedings. FY, along with friends and the undersigned, worked diligently to find subsidized, affordable housing, with no luck.

12. FY and the girls ultimately moved into the local mosque and lived there nearly a year before suitable housing could be found. The congregants were certainly generous, but a concrete block building with few windows and no

amenities is not a good place for children. They shared a single room with their mother and had no television or internet access. Through this time, application was made for Section 8 housing. The family received SNAP benefits and had health coverage under Medicaid. They survived on the generosity of friends in the local Iraqi and Lebanese communities.

13. In the summer of 2017, through the generosity of a family friend, FY and the girls were able to move into a small apartment. They stayed there, rent paid by the family friend, until a spot opened in the Section 8 program in Louisville. They are now living in subsidized housing, receive financial assistance, SNAP and health coverage through Medicaid.

14. ZA has just started ▆▆▆▆▆▆▆▆▆ All three girls speak Arabic and English, fluently. FY speaks very little English, but has been working to learn. She is frail in health and has been deemed unable to work by her physician in Louisville, though she was denied social security disability benefits. The girls have not seen their father in more than two years. FY has not seen her husband in more than two years, as there are simply no resources to allow such travel.

15. Detention has also taken a significant toll on my client. Previously a very involved parent, he last saw his family when he was first detained, when he was held in Boone County, Kentucky. He speaks to them regularly on the phone; his

only contact with them. Sadly, I have seen him more in the last two years than his family, as the IJ has required counsel to appear in person for hearings.

16.     Maytham now takes medication for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮ He has frequently experienced such ▮▮▮▮ that he has been prescribed medication. Always a very healthy man, he has been hospitalized several times since being detained.

17.     I represent Maytham, *pro bono* and my firm has covered the cost of filing fees, copies and service of pleadings. My husband and I have borne the cost of travel associated with Maytham's case. Maytham is grateful and makes clear he wants to continue fighting his case. He has authorized appeal to the Court of Appeals, should he receive an adverse decision from the Board of Immigration Appeals.

18.     Maytham's continued detention in Louisiana makes it logistically difficult, to say the least, to continue to fully represent him. For example, because of the language barrier, an interpreter is required if any substantive discussions are to take place. We have an available interpreter here in Louisville, but the cost at times can be significant. The interpreters relied upon by the IJ for hearings are unfamiliar with Maytham and therefore, during hearings, there have been many times when the IJ's interpreter mis-translates, drastically changing the import of the testimony.

7

Moreover, these interpreters are either in Miami with the IJ or at some third location. Thus, many times it is difficult for Maytham (and counsel) to know when the translator has stopped and when it is proper to speak. This creates frustration for both the IJ and the participants. When I want to speak to Maytham outside the context of a hearing, I must rely on FY to relay a message to Maytham asking him to call me to discuss important issues. Of course, I must then arrange to have the interpreter available. Finally, in discussions with FY, I must rely on ZA to translate. It is not good for a young woman of her age to have to bear the burden of such adult issues.

19. It is also very difficult to timely get documents and information to Maytham. I am told requests to move him to a center closer to Louisville have been denied, so we must rely on mail to allow him to review and sign necessary documents.

20. Maytham's notice of appeal to the Board of Immigration Appeals has been filed, but no briefing schedule has been set. It will likely be another 6-9 months to litigate the appeal. I anticipate that if he is not released, he could remain in detention for at least another year, until his immigration case is fully resolved. Of course, if the matter must be appealed beyond the Board of Immigration Appeals, Maytham will be facing at another year or more before that appellate decision is rendered.

21. Maytham has no access to travel documents from Iraq. Moreover, he currently has no identity documents which prove that he is a citizen of Iraq, aside from those issued to him by the United States.

Pursuant to 28 U.S.C. § 1746, I state under penalty of perjury under the laws of the United States that the above statements are true and correct to the best of my knowledge, information, and belief.

Date: <u>August 20, 2018</u>  _____
Christie A. Moore

19560703