# EXHIBIT 17

*Redacted per Court's Order ECF 338*

FILED
2018 Jan-18 PM 04:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
BIRMINGHAM DIVISION

| | |
|---|---|
| Hussain Jiyad Al-Jabari ) <br> Peitioner ) <br> ) <br> v. ) <br> ) <br> Jefferson B. Sessions, III ) <br> Respondents ) <br> ) | Case No. 4:17-cv-01972-KOB-TMP |

## **DECLARATION**

I, Tonita Dupard North, declare under penalty of perjury the following:

1. I am employed as a Supervisory Detention and Deportation Officer (SDDO) with the United States Department of Homeland Security (DHS), United States Immigration and Customs Enforcement (ICE) in the New Orleans Field Office. I am currently assigned to the Etowah County Detention Center (ECDC), in Gadsden, Alabama.

2. In my capacity as a SDDO, I supervise the deportation officer having docket control over Hussain Al-Jabari's case. Hussain Al-Jabari, identified as "Petitioner," has been assigned alien registration number A███████.

3. I have reviewed the file for the Petitioner; this declaration is based on that review, information obtained from other individuals employed by ICE, and information obtained from DHS records.

4. Petitioner is a native and citizen of Iraq, he was born in Basrah, Iraq.

5. Petitioner entered the United States on June 20, 1995, at Detroit Michigan as a Refugee (RE-6).

6. On October 28, 1997, Petitioner adjusted status to Lawful Permanent Resident retroactive back to June 20, 1995.

7. On August 23, 2003, Petitioner was arrested by the Taylor Police Department in Taylor, Michigan, for second degree larceny and retail fraud.

8. On August 25, 2003, Petitioner was convicted in the 23rd District Court Taylor, Michigan, for retail fraud, and sentenced to five days confinement, fined $400, and six month probation.

9. On March 11, 2005, Petitioner was arrested by Detroit Police Department in Detroit, Michigan for dangerous drugs and for controlled substance.

10. On April 28, 2005, Petitioner was convicted in The State of Michigan 36th District Court 3rd Judicial Circuit Court, Detroit, Michigan for controlled substance and for maintaining a drug house, and he was sentenced to 62 days confinement time served; and one year probation.

11. On June 27, 2005, Petitioner was referred to ICE officers by the Michigan Department of Corrections and processed for a Notice to Appear (I-862), charging him as removable under § 237(a)(2)(A)(iii) and § 237(a)(2)(B)(i) of the Immigration and Nationality Act.

12. On November 21, 2005, Petitioner was convicted in State of Michigan 36th Judicial District 3rd Judicial Circuit for probation violation and sentenced to 6 months confinement.

13. On June 9, 2008, Petitioner was arrested by Allen Park Police, Allen Park, Michigan for larceny.

14. On June 10, 2008, the Wayne County Prosecuting Attorney charged Petitioner with retail fraud.

15. On June 23, 2008, Petitioner was convicted in the 24th District Court Allen Park, Michigan for retail fraud.

16. On January 5, 2011, Petitioner was arrested by Albuquerque Police Department in Albuquerque, New Mexico for shoplifting.

17. On January 9, 2012, Petitioner self-surrendered to the ERO Phoenix Field Office claiming to be homeless and wanting to go back to Iraq. A review of the Petitioner's criminal background revealed a removable drug offense and he was taken into ICE custody.

18. On January 10, 2012, Petitioner was transferred to Florence Service Processing Center in Florence, Arizona.

19. On January 12, 2012, Petitioner was transferred to Eloy Federal Contract Facility in Eloy, Arizona.

20. On January 13, 2012, Petitioner was served a Notice to Appear (I-862), charging him as removable under § 237(a)(2)(B)(i) of the Immigration and Nationality Act.

21. On January 31, 2012, Petitioner was ordered removed to Iraq by an Immigration Judge in Eloy, Arizona and waived appeal.

22. On February 2, 2012, Petitioner was served an I-229a and Notice of Custody Review and travel document request was made to the Consulate of Iraq.

23. On April 12, 2012, Iraq Consulate requested another travel document request be sent.

24. On April 19, 2012, Petitioner's Post Order Custody Review (POCR) was forwarded to the Supervisor for review and decision.

25. On April 23, 2012, Consulate Official requested that Petitioner be flown to Los Angeles, California for an interview.

26. On April 30, 2012, Petitioner was transferred to Florence Staging Facility in Florence, Arizona awaiting transfer to his Consulate interview.

27. On May 2, 2012, Petitioner was taken to the Iraq Consulate for interview in Los Angeles, California.

28. On May 3, 2012, Petitioner was transferred to Eloy Federal Contract Facility, Eloy, Arizona.

29. On May 17, 2012, Petitioner was served with a POCR decision letter to Continue Detention.

30. On August 3, 2012, A Headquarters Removal and International Operations (HQRIO) POCR was submitted on the Petitioner's behalf.

31. On August 17, 2012, HQRIO sent a decision to continue detention for Petitioner.

32. On November 1, 2012, Petitioner's identity documents were forwarded to the Ministry of Foreign Affairs by the Petitioner's family members in Iraq.

33. On November 9, 2012, A HQRIO POCR was submitted on behalf of the Petitioner.

34. On November 13, 2012, Consulate stated they received the documents to be presented would have a response soon.

35. On December 20, 2012, a HQRIO POCR was submitted on behalf of the Petitioner. A decision to release on an order of supervision was received from HQRIO on December 28, 2012 and Petitioner was released. HQRIO indicated that obtaining a travel document for Petitioner was unlikely and would continue to engage the embassy concerning the travel document issuance.

36. On January 4, 2013, the Embassy of Iraq officially stated in writing that they will not be issuing a travel document for Petitioner at this time.

37. On April 14, 2014, the Iraq Embassy agreed to review the Petitioner's travel document request once again.
38. On January 30, 2016, Petitioner was arrested by Albuquerque Police Department in Albuquerque, New Mexico for fraud, forgery and identity theft.

39. On May 2, 2016, Petitioner was arrested by Albuquerque Police Department in Albuquerque, New Mexico for battery.

40. On August 2, 2016, Petitioner was convicted for Forgery and sentenced to 18 months. On same date, ICE ERO Albuquerque was contacted by the State of New Mexico probation office as to Petitioner's immigration status.

41. On September 7, 2016, Petitioner reported in to ICE ERO Albuquerque and was placed on Alternative to Detention (ATD) voice monitoring.

42. On June 20, 2017, Petitioner was encountered by ICE ERO agents at his residence and taken into custody. Petitioner was deactivated from ATD, his OSUP was revoked, he was served an I-229a Warning for Failure to Depart, and transported to Albuquerque, New Mexico hold room pending imminent removal, and transferred to El Paso Service Processing Center, El Paso, Texas.

43. On June 27, 2017, the District Court in Detroit, Michigan issued a temporary restraining order barring ICE/ERO from removing Iraqi nationals to Iraq and that order was expanded to prohibit such removals nationwide. The case is *Hamama, et al. v. Adducci*, No. 17-11910 (E.D. Mich. filed June 15, 2017). But for this case, Petitioner would have been removed to Iraq.

44. On June 27, 2017, Headquarters Removal and International Operations (HQRIO) began working with the Embassy of the Republic of Iraq to obtain Petitioner's travel document for scheduled charter flight scheduled for July 25, 2017.

45. On August 17, 2017, Petitioner was transferred to Etowah County Detention Center in Gadsden, Alabama where he is currently detained.

46. On September 8, 2017, Petitioner was served Notice of File Custody Review, I-229a and instruction sheet.
47. On September 14, 2017, a POCR was forwarded to Supervisor for review and decision.

48. On October 5, 2017, Petitioner was served a decision to continue detention.

49. On October 12, 2017, Petitioner was served a notice of class membership, which included a Know Your Rights informational sheet and a voluntary removal packet that contained procedures to opt out of the putative class from *Hamama, et al. v. Adducci*, No. 17-11910 (E.D. Mich. filed June 15, 2017).

50. *Hamama et al. v. Adducci*, No. 17-11910 (E.D. Mich. filed June 15, 2017) sets forth requirements for the Government to serve putative class members their alien file (A-file) and record of proceedings (ROP). Once the putative class member has been served, he or she has 90 days to file a Motion to Reopen with the Executive Office for Immigration Review (EOIR). If a Motion to Reopen is not filed with EOIR within 90 days after the A-file and ROP have been served, the Iraqi national will no longer be considered a putative class member of *Hamama, et al. v. Adducci*, No. 17-11910 (E.D. Mich. filed June 15, 2017) and the Stay of Removal for the Iraqi national will be lifted.

51. On November 22, 2017, Petitioner was served with a copy of his alien file and a privacy notice in the Arabic language. Petitioner will be served a copy of his ROP in the near future, which will start the 90-day clock pursuant to *Hamama et al. v. Adducci*, No. 17-11910 (E.D. Mich. filed June 15, 2017).

52. On December 13, 2017, Petitioner declined to sign the stipulate that the Preliminary Injunction in Hamama v. Adducci No. 17-11910 (E.D. Mich. filed June 15, 2017) be removed.

53. Based upon this officer's experience and expertise, I believe that ICE will remove Petitioner to Iraq in the reasonably foreseeable future once the Stay of Removal for Iraqi nationals is dismissed or the Plaintiff is removed from the class.

54. The Government of Iraq has already demonstrated its willingness to accept back Iraqi nationals with final orders of removal from the United States.

I hereby declare under penalty of perjury that the above statements are true and correct to the best of my knowledge and belief.

JAN 1 8 2018
Date

Tonita Dupard North
SDDO
DHS/ICE/ERO
Gadsden, Alabama