# EXHIBIT 19

# Expert Report of Dr. Kiminori Nakamura

**June 5, 2018**

**Department of Criminology and Criminal Justice**
**University of Maryland**
**2220 LeFrak Hall**
**College Park, MD 20742**
**301-405-5477**

## EXECUTIVE SUMMARY

Based on my experience as a criminologist researching and working on issues related to redemption and recidivism risk, as well as my review of the documents presented to me in this case, it is my expert opinion that:

- Redemption research (i.e. research focused on the point at which a prior criminal record is no longer predictive of future criminal offending) shows that the more time that passes since last contact with the criminal justice system—i.e., arrest or conviction—is consistently associated with a lower risk of future offending behavior.

- There is no empirical support for the wide-spread but scientifically unfounded perception that those who committed certain types of crimes in the past continue indefinitely (or at least for very long periods of time) to have a heightened risk of reoffending.

- Redemption research shows that the recidivism risk of those with a prior conviction record falls below the risk of arrest for the general population after approximately: (i) four to seven years for "violent offenders," (ii) four years for "drug offenders," and (iii) three to four years for "property offenders."

- The recidivism risk of those with a prior conviction record approximates the risk of those who have never been arrested after roughly (i) 11 to 15 years for violent offenders, (ii) 10 to 14 years for drug offenders, and (iii) 8 to 11 years for property offenders.

- There is a robust relationship between age and the prevalence of criminal behavior. Criminal behavior peeks in the late teens and young-adult period, and steadily declines in later years.

- Employment and job stability are closely related to a lower risk of criminal behavior.

- Most of the individuals who are part of the *Hamama v. Adducci* class action litigation are Iraqi nationals who committed criminal offenses years or decades ago. Empirical findings from redemption research show that their risk of reoffending and engaging in criminal activity is extremely low. Depending on the number of years crime-free, a *Hamama* class member's risk may be lower than that of the general population. The risk of reoffending is reduced even further for individuals who are older, or who have employment. There is no empirical data or research to support an assumption that these individuals' past criminal offenses automatically make them a danger to the community at the present time.

## I. INTRODUCTION

### A.      Qualifications

I am an Assistant Professor of Criminology and Criminal Justice at the University of Maryland. My research spans issues related to corrections, prisoner reentry, collateral consequences of criminal-history records, research on criminal careers, and quantitative methodology. Much of my research focuses on the issue of "redemption" for individuals with criminal-history records. Redemption refers to the process through which the risk of recidivism declines to a level of appropriate benchmarks so that old criminal records are no longer very predictive of future recidivism.

My work on redemption has been published in *Criminology*, the flagship journal of the American Society of Criminology (ASC) and the National Institute of Justice Journal. I have also presented my research findings at various conferences and meetings, including ASC's annual meeting, as well as conferences organized by the American Bar Association's Commission on Effective Criminal Sanctions, the New York Division of Criminal Justice Services, and the Ohio

Ex-Offender Reentry Coalition. Additionally, my research on redemption has been cited in the Equal Employment Opportunity Commission's (EEOC) recent revised enforcement guidance on the use of criminal-history records in employment.  I have been retained as an expert in *Houser et al. v. Blank*, No. 10-3105 (S.D.N.Y.), a class action lawsuit challenging the United States' Census Bureau's use of criminal-history information when hiring temporary workers. My curriculum vitae is attached as Appendix A.

### B.    Information Reviewed for this Report

A list of documents I reviewed, including relevant scientific and professional articles and research, to form my opinion in this litigation is attached as Appendix B.

### C.    Compensation

My work is not being compensated in this matter.

### D.    Summary of Issues Addressed

I have been asked by class counsel for petitioners in *Hamama, et. al. v. Adducci*, No. 17-cv-11910 (E.D. Michigan) to prepare this report, with the understanding that it may be used in that litigation as well as in individual immigration cases for *Hamama* class members. This report analyzes future crime risk for individuals with past criminal history in light of the well substantiated empirical findings from recidivism and redemption research in the last decade.

Specifically, I present how redemption research has established that, over time, the recidivism risk of those with criminal records declines, and that at a certain point, a criminal record largely loses its value in predicting whether that individual is likely to commit another criminal offense. Additionally, this report will review and discuss criminological research focusing on the relationships between crime risk (i.e., the likelihood that an individual will commit a criminal offense) and age, and other correlates of recidivism risk, such as employment

status—which are relevant to determining whether a person with a past criminal record presents

a current risk to public safety. I reserve the right to supplement this report with additional

specific information based on subsequent developments or depositions taken.

## II.     OPINION

### A.     Context for Redemption Research

The number of individuals in the U.S. who have had contact with the criminal justice

system—and thus possess a criminal record—has increased significantly in recent decades. Over

40 years ago, it was estimated that 22 percent of the U.S. population would be arrested for a non-

traffic offense by age 23 (Christensen, 1967).  More recent data show an even higher estimate of

life-time arrest prevalence (30 percent of the U.S. population by age 23); the increase is

reflective of the fact that the criminal justice system has become more aggressive in dealing with

crimes like drug offenses and domestic violence (Brame et al., 2012). According to the statistics

published in 2009, over 7.3 million people—one in every 31 adults—are on some sort of

correctional supervision, either in prison, jail or on probation or parole (Pew Center on the

States, 2009). At the end of 2010, there were approximately 19.8 million Americans with a

felony conviction, representing approximately 8 percent of the adult population (Shannon et al.,

2017).

### B.  Redemption Research Shows that the Recidivism Risk of Former Offenders Decreases Over Time to a Point Below that of the General Population.

One of the most robust findings in criminology is the strong positive relationship between

past and future criminal offending (Blumstein, Farrington, and Moitra 1985; Piquero et al. 2003),

which in part explains employers' reluctance to hire people with criminal records.[1] However, an

---

[1] With the technological ease in acquiring criminal records and conducting background checks, there has been an increase in the use of background checks, especially in employment settings, and increasing attention to its consequences (Lageson et al., 2015; Raphael, 2011). According to various employer surveys, at least more than half of large companies conduct

equally robust finding in criminology research is that any recidivism occurs relatively quickly, and that recidivism risk declines with time since the last contact with the criminal justice system (Beck and Shipley, 1997; Gottfredson, 1999; Langan and Levin, 2002; Maltz, 1984; Schmidt and Witte, 1988). As such, "time clean"— i.e., the time that elapses before a person recidivates—is critically important in understanding the relationship between past and future offending behavior.

The findings of my "redemption" research, which is based on an empirical analysis of criminal-history records and also consistent with more general criminology research on recidivism, show that recidivism risk declines steadily with time free of recidivism, and in relation to appropriate benchmarks. The research in this field has found, based on empirical evidence, that the risk becomes "sufficiently low" at some time point such that a criminal record no longer predicts the risk of future criminal offending (i.e., "redemption" time). The redemption time depends on the nature of the underlying offense, and is also affected by factors like age and employment history.

A series of studies by the U.S. Department of Justice's Bureau of Justice Statistics that tracked released prisoners show that of all those who were re-arrested in the first three years, approximately two-thirds, were arrested within the first year from their release. This research strongly indicates that those people with criminal records who recidivate are likely to do so shortly after their release; those with a longer period of recidivism-free time have a lower recidivism risk (Beck and Shipley, 1997; Durose et al., 2014; Langan and Levin, 2002).

An important question, given that general findings from recidivism studies show that the risk of reoffending declines with time, is how long it takes for the risk to become sufficiently

criminal background checks (Holzer et al., 2003, 2004; Society for Human Resource Management, 2004, 2010, 2012; Vuolo et al., 2017). Correspondingly, a recent survey on U.S. residents who apply for a job show that a majority are asked about their criminal record at some point in the application process (Denver et al., 2017).

low, such that the presence of prior criminal record no longer predicts the risk of future criminal offending. This phenomenon—"redemption" (Blumstein and Nakamura, 2009)—has motivated recent research tracking the recidivism of those with a criminal record (arrest, conviction, incarceration) over a long follow-up time (10 years, 20 years, or longer). Redemption research shows that recidivism risk indeed declines over time, so that after a period of time it falls below the risk of the general population and converges with the risk of non-offenders (Blumstein and Nakamura, 2009; Bushway et al., 2011; Kurlychek et al., 2006, 2007; Soothill and Francis, 2009).

For example, Blumstein and Nakamura (2009, 2012) analyzed the New York State criminal history records of those who were arrested and convicted for the first time as an adult in 1980. The dataset contains nearly 90,000 individuals and tracks their criminal history for a time period that spans over 25 years. This research finds that the probability of recidivism (which is defined as having a new arrest, regardless of whether it results in conviction) declines as "time clean" increases. The probability of recidivism eventually falls below the risk of arrest for the general population (which includes individuals who both do and do not have criminal histories), and over time, comes very close to approximating the risk of arrest posed by individuals with no criminal histories. Blumstein and Nakamura (2012) replicated the findings from New York with the data from other states and concluded that redemption times are relatively similar across states.

It is thus reasonable to conclude based on Blumstein and Nakamura (2009, 2012) as well as other similar studies (Bushway et al., 2011; Kurlychek et al., 2006, 2007; Soothill and Francis, 2009), that the more time that passes since last contact with the criminal justice system—i.e., arrest or conviction—is consistently associated with a lower risk of future offending behavior.

As an illustrative example, Figure 1 presents the relationship between the recidivism risk (rearrest or reincarceration) and the time since release from incarceration among state prisoners in New York.

**Figure 1. Recidivism risk of New York prisoners**



More specifically, it is my expert belief and opinion, based on the redemption research, that the recidivism risk of those with a prior conviction record falls below the risk of arrest for the general population after approximately: (i) four to seven years for "violent offenders," (ii) four years for "drug offenders," and (iii) three to four years for "property offenders."2

Depending on the use of criminal records and risk sensitivity associated with background checks, more or less stringent benchmarks can be used to establish redemption times. Blumstein and Nakamura (2012) further estimate redemption times using a more conservative benchmark of arrest risk of those with no prior arrest ("the never-arrested"). Using this benchmark, the recidivism risk of those with a prior conviction record approximates the never-arrested risk

---

2 Violent offenses include robbery, aggravated assault, forcible rape, and simple assault. Property offenses include burglary, larceny, motor vehicle theft, stolen property, forgery, fraud, and embezzlement. Drug offenses include both possession and sale/manufacturing of any controlled substance.

roughly after (i) 11 to 15 years for violent offenders, (ii) 10 to 14 years for drug offenders, and (iii) 8 to 11 years for property offenders.3

Redemption research thus makes clear that the likelihood an individual with a criminal record will recidivate does not remain constant over time. Rather, as the amount of "time clean" increases, the less likely it is that the person will re-offend. The risk a person poses at the time of conviction is very different than the risk a person poses years or decades later. A past conviction cannot and should not be equated with present dangerousness. Rather, the risk an individual presents will depend on the length of time since the prior conviction, as well as the presence or absence of other protective factors, as discussed below. This is true even for individuals convicted of serious offenses. Redemption research has examined a range of individuals who have been either arrested or convicted for committing criminal activity—ranging from violent crimes to drug offenses—and have consistently found that the recidivism risk decreases for all category of offenses. The notion then that there are serious offenses that are inherently and permanently dangerous is inconsistent with redemption research. While the time it takes to reach the point of redemption may be longer for some crimes, redemption research shows that recidivism risk declines for all offenses over time.

### C.   Other Criminology Research

In addition to redemption research, there is other criminology research that relevant to determining whether individuals are likely to reoffend and pose danger to the community -- specifically, criminology research regarding the link between crime risk and age, and the link between crime risk and employment status.

---

3 Consistent with the idea of redemption, the Equal Employment Opportunity Commission's recently released an undated guideline encouraging employers to consider the amount of time that has passed since the offense when using criminal records in employment decisions (EEOC, 2012). Recent studies also report that employers often consider time since offense in hiring decisions (Lageson et al., 2015; Uggen et al., 2014).

### *Crime Risk and Age*

There is broad consensus among criminologists that most individuals who commit crime will desist or stop committing crime over time (Laub and Sampson, 2001). Criminologists offer many explanations for desistance. Sampson and Laub (2003) argue that certain life events such as employment and marriage ("turning points") which occur in adulthood can facilitate desistance, even for serious juvenile offenders; other researchers emphasize that individual transformation or identity change is critical in initiating the process of desistance (Giordano, Cernkovich, and Rudolph, 2002; Maruna, 2001; Paternoster and Bushway, 2009).  Regardless of the catalyst for desistance, it is well established that aging is one of the most powerful predictors of desistance (Farrington, 1986; Hirschi and Gottfredson, 1983; Sampson and Laub, 1993; Sampson and Laub, 2003).

Criminologists have long recognized a robust relationship between the prevalence of criminal behavior (i.e., the measure of how many individuals participate in crime) and age, and the visual representation of the relationship between crime prevalence and age is called the "age-crime curve." Based on the Arrest Data Analysis Tool provided the Bureau of Justice Statistics, Figure 2 shows the relationship between age and arrest rates in 2014. That curve demonstrates that while there is a peek in criminal activity during the late teens and young-adult period, there is a steady decline in the subsequent years. This general shape of the age-crime curve is similar regardless of gender, types of offenses, or time points (e.g., 2018 vs. 1980).

**Figure 2. Age-crime curve**



*Crime Risk and Employment Status*

The "age-graded theory of informal social control," which was developed by criminologists Robert Sampson and John Laub, reasons that a person with stable employment is associated with a low likelihood of offending because employment, like other social institutions such as family and good marriage, represents the person's bond to society and conventional values and attitudes. Based on one of the longest longitudinal datasets in criminology that tracked 1,000 boys who grew up in Boston during the 1930s and 1940s, Laub and Sampson (2003) found that despite differences in early childhood experiences, employment status in adulthood was associated with less offending and that job stability predicted a significant reduction in criminal offending. Uggen (1999) also concluded that job quality (measured by type of occupation, skill level and industry) bears a correlation to the future risk of offending, finding

that those who hold a higher quality job (e.g., professional work in education, clerical work) are less likely to offend than those who hold a lower quality job (e.g., manual labor, service).

Similarly, the concept of "signaling" in labor economics provides another perspective on the relationship between employment and crime that also predicts that those with criminal records who can maintain employment have a lower chance of committing further crime. Those with stable employment after contact with the criminal justice system (arrest, conviction, release from prison) signal or identify themselves as low risk by making a considerable effort to find a job and holding down a job (Bushway and Apel, 2012). A large-scale prisoner reentry study that was conducted by the Urban Institute (Visher, Debus, and Yahner, 2008) provides some empirical evidence that is consistent with the signaling concept.  This study tracked state prisoners who were released in three states (Illinois, Ohio, and Texas) and collected measures of their reintegration, including post-prison employment, and recidivism (measured as re-incarceration). The study found that within the first year out of prison, those who were employed had lower recidivism rates than those who were unemployed. In addition, the study found that the more the wages earned in the first two months after release, the lower the probability of recidivism: recidivism rate was eight percent for those earning more than $10 per hour, while the recidivism rate was twice as high (16 percent) for those earning less than $7 per hour. Given that finding and maintaining employment is difficult and hard to achieve for most individuals during their reentry process (Petersilia, 2003; Travis, 2005), the value of stable employment status as a signal of low crime risk is enhanced (Bushway and Apel, 2012).

**D.    Application of Redemption and Recidivism Research to the *Hamama* Class Members.**

Based on my review of materials related to the *Hamama v. Adducci* case and my conversations with class counsel, it is my understanding that this case concerns the removal of

Iraqi nationals, that there are roughly 300 Iraqi nationals who have been arrested by Immigration and Customs Enforcement (ICE) since June 2017, and that there are approximately 1,100 additional Iraqis with final orders of removal. It is further my understanding that many but not all of these individuals have criminal records, and that those criminal records are often years or decades old.

I have reviewed a chart, reproduced below, from a declaration by Margo Schlanger (Doc. 174-3), showing the years when *Hamama* class members were ordered removed. It is my understanding that class-wide data about conviction history is unavailable. Where a person is ordered removed based on a criminal conviction, the removal order is necessarily entered after the conviction, which means that the underlying convictions are older than the removal orders. Because this analysis is based on the date of removal rather than the date of conviction, it underestimates the age of the convictions.4

The chart suggests that approximately 50% of the class members have convictions that are a decade or more old, and that an additional 36% percent have convictions that are four to ten years old.  While these numbers likely understate the age of the offenses, the available data suggests that many class members have criminal records that are quite old.

---

4 It is my understanding that some class members do not have criminal records at all. It is also possible that some class members have criminal convictions that post-date the year when they were ordered removed.

**Current Class Members' Removal Order Year**

| Removal Order Year | # | % |
|---|---|---|
| < 2008 | 151 | 49.5% |
| 2008 – 2014 | 109 | 35.7% |
| 2015 | 12 | 3.9% |
| 2016 | 13 | 4.3% |
| 2017 | 10 | 3.3% |
| Unknown | 10 | 3.3% |
| TOTAL | 305 | 100% |

It is my understanding that the class members in the *Hamama* case were convicted of crimes of various levels of seriousness. As noted above, the time elapsed since those crimes were committed varies. Accordingly, any given class member's "redemption time", i.e. when their likelihood of reoffending approximates that of the general population, will vary. However, it is also clear that many of the class members are well past the point of redemption. Redemption research provides convincing evidence that *Hamama* class members with old convictions and subsequent clean records have no substantial risk of offending, and that the risk they pose is no greater than the risk posed by a member of the general public.

The other two factors discussed above – a person's age and employment history – are also relevant to the likelihood that *Hamama* class members will reoffend. I have reviewed data showing the years of birth for Iraqi nationals with final orders of removal. Among the individuals who have been detained at any point since June 2017, 94% were born in 1988 or earlier, and are thus 30 or older. 71% were born in 1978 or earlier, and are thus 40 or older. 33% were born in 1968 or earlier, and are thus 50 or older.

According to the age-crime curve in Figure 2, the rate of arrests in 2014 for individuals ages 50-54 is less than a third of the arrest rate for those crimes among individuals aged 18, which is near the peak of the age-crime curve, and for individuals aged 40-44 the rate is less than

half of that for 18-year-olds, and for individuals aged 30-34 the rate is approximately 25 percent less than that for 18-year-olds. Thus, given that over 90% of the individuals who have been detained are older than 30 and at least a third of them are older than 50, not only is the likelihood that *Hamama* class members will reoffend low in absolute terms, but for older class members it is also very low in relative terms.

Although I did not receive any class-wide data on the employment of class members, several of the named Plaintiffs have had a long period of stable employment and some have had a history of running successful businesses. As such, according to both the age-graded theory of informal social control and signaling research, these Plaintiffs possess very low risk of future offending and pose little danger to society.

To understand how redemption and recidivism research applies here, I will provide brief biographic profiles, with information that is relevant to this report, for two example cases: Usama Jamil Hamama and Jami Derywosh. These profiles are based on those Plaintiffs' declarations.

Mr. Hamama is an Iraqi national who entered the United States in 1974 at the age of 11; he is currently 55 years old.  He is married and has four children.  He has held steady employment in the U.S. since he was 17 years old. Mr. Hamama was convicted of felony assault and possession of firearm and misdemeanor related to the possession of a firearm in a vehicle in 1988. He was sentenced to two years of imprisonment, about half of which he served in prison and the other half in the community. This conviction, which is now over 20 years old, is his only conviction. As a result of this conviction, Mr. Hamama has been subject to an order of removal to Iraq since 1994 and has been under an order of supervision only since 2011. He has been required to check in with ICE only once a year. The empirical research shows that Mr. Hamama

– who has one conviction from two decades ago, is in his 50s, and has steady employment – presents very little risk of reoffending.

Mr. Derywosh is an Iraqi national who entered the United States in 1983 at the age of six; he is currently 41 years old. He has been a successful businessman in the Chicago area who owns three businesses employing between twenty and thirty people. He supports his elderly father and his fiancée is pregnant with the couple's first child. Mr. Derywosh was arrested for arson in 1994 and subsequently convicted of the crime. He was sentenced to seven years of imprisonment, roughly half of which he served in prison. Apart from a 2009 municipal code violation, this over 20-year old conviction is his only offense. As a result of the conviction, Mr. Derywosh has been subject to an order of removal since 1997 and has been under an order of supervision since 1999. He has been required to check in with ICE only once a year. The empirical research shows that Mr. Derywosh – who has one conviction from more than two decades ago, is in his 40s, and has steady employment – presents very little risk of reoffending.

In sum, the research on redemption indicates that most *Hamama* class members pose a very low risk of recidivism, most certainly lower than the general population risk benchmark used in redemption research. Furthermore, based on criminological research, the relatively old age and employment history of many of the class members are also indicative of a low risk of offending.

## IV.    CONCLUSION

In sum, based on recidivism and redemption research, as well as criminological research on employment and age, I conclude that many of the *Hamama* class members' risk of reoffending is very low; in fact it is lower than the benchmark of the general population's risk of arrest that is used in redemption research. The class members' criminal records, which are in

many cases decades old, are not a reliable indicator of risk of future re-offending or danger to the community. There is no empirical data or research to support an assumption that these individuals' past criminal offenses make them a danger to the community at the present time.

This report is signed on this 5th day of June, 2018 in College Park, Maryland.

_____
Kiminori Nakamura

# APPENDIX A

# CURRICULUM VITAE

## Kiminori Nakamura

### 1. Personal Information

Kiminori Nakamura
University of Maryland
Department of Criminology and Criminal Justice
2220 LeFrak Hall
College Park, MD 20742
Phone: (301)405-5477
Email: knakamur@umd.edu

Academic Appointment
Assistant Professor, Department of Criminology and Criminal Justice, University of Maryland 2010-
Faculty Associate, Population Research Center, University of Maryland, 2010-

Education
Carnegie Mellon University, Pittsburgh, Pennsylvania
Ph.D. Public Policy and Management, 2010
H. John Heinz III College
Dissertation: "Redemption in the Face of Stale Criminal Records Used in Background Checks"
Committee: Alfred Blumstein, Daniel Nagin, Melvin Stephens
William W. Cooper Doctoral Dissertation Award, 2011

University of California, Irvine
M.A. Demographic and Social Analysis, 2005
B.A. Criminology, Law and Society, 2004
*Magna cum Laude*

### 2. Research and Scholarship

a. Articles published/R&R in Refereed Journals

Harris, Heather, Kiminori Nakamura, and Kristofer Bucklen. 2018. "Do Cellmates Matter? A Causal Test of the Schools of Crime Hypothesis with Implications for Differential Association and Deterrence Theories." Criminology 56:1 87-122.

Nakamura, Kiminori. 2017. "Careful What you Wish for: Redemption or Risk-Based Employment Screening." (Policy Essay) Criminology & Public Policy 16:3 1009-1016.

Testa, Alexander, Lauren Porter, and Kiminori Nakamura. 2017. "Examining All-cause and Cause-specific Mortality among Former Prisoners in Pennsylvania." Justice Quarterly.

Nakamura, Kiminori and Kristofer Bucklen. 2014. "Recidivism, Redemption, and Desistance: Understanding Continuity and Change in Criminal Offending and Implications for Interventions." Sociology Compass 8:4 384-397.

Blumstein, Alfred, and Kiminori Nakamura. 2009. "Redemption in the Presence of Widespread Criminal Background Checks." Criminology 47:2 327-359.

Nakamura, Kiminori, Nicolette Bell, Kristofer Bucklen. "Effects of Prison Visitation on Recidivism" (R&R)

Glazener, Emily and Kiminori Nakamura, "Exploring the Link between Prison Crowding and Inmate Misconduct: Evidence from Prison-Level Panel Data" (R&R)

<u>b. Book Chapters</u>

Nakamura, Kiminori, and Alfred Blumstein. "Redemption for Sex Offenders." In press. In Sex Offenders: A Criminal Career Approach, eds. Arjan Blockland, Brijder Verslavingszorg, and Patrick Lussier. Wiley Publishing.

<u>c. Manuscripts under review and in preparation</u>

Nakamura, Kiminori, George Tita, and David Krackhardt. "Violence in the 'Balance': A Structural Analysis of How Rivalries, Allies, and Third-Parties Shape Inter-Gang Violence"

Nakamura, Kiminori. "Estimating the Timing of Parole Discharge Based on the Concept of 'Redemption'"

Nakamura, Kiminori, Kathleen Frey and Kristofer Bucklen, "Short- and Long-Term Effects of Halfway Houses on Recidivism"

<u>d.  Other Publications</u>

"Crime Risk Analysis of the Anacostia Trail System" (with Emily Walter) 2018

"A Review of the Literature on Collateral Consequences and the Information Value of Prior Criminal History, and Recommendations for the Consideration of the Workgroup" A Report to the Workgroup on Collateral Consequences of Convictions, Governor's Office on Crime Control & Prevention (With Emily Glazener and Jinney Smith) 2016

Recidivism Report 2013. Pennsylvania Department of Corrections.

Nakamura, Kiminori and Douglas Weiss. February 20, 2012. "Measuring Recidivism in the District of Columbia" (technical Final report submitted to the Criminal Justice Coordinating Council of the Government of District of Columbia.

Blumstein, Alfred, and Kiminori Nakamura. 2010. "Process of Redemption Should be Built into the Use of Criminal-History Records for Background Checking." In Contemporary Issues in Criminal Justice Policy: Policy Proposals from the American Society of Criminology Pp. 37-52. eds. Natasha Frost, Joshua D. Freilich, and Todd R. Clear. Belmont, CA: Wadsworth.

3

Blumstein, Alfred, and Kiminori Nakamura. 2010. "'Redemption' from stale criminal records in the face of widespread background checking." The Correctional Psychologist 42:11-14.

<u>e. Invited Talks and Professional Presentations</u>

Invited Talks

"Redemption: Applications and Methods" Executives of Probation & Parole Network organized by the the National Institute of Corrections, Washington DC, October, 2012.

"Redemption: Applications and Methods" Urban Chiefs Network organized by the National Institute of Corrections, Washington DC, September, 2012.

"Desistance, Redemption and the Use of Criminal History Record Information" (with Alfred Blumstein) SEARCH 2012 Annual Membership Meeting, Cincinnati, OH, July, 2012.

"The Concept of Redemption and its Impact on Reinvestment Strategies" Evidence-based Sentencing and Navigating the Risk and Needs Principle organized by the International Community Corrections Association (ICCA), Reno, NV, May, 2012.

"Redemption in an Era of Widespread Use of Criminal Background Checks" (testimony with Alfred Blumstein) National Association of Criminal Defense Lawyers Task Force on Restoration of Rights and Status After Conviction, Cleveland, OH, April, 2012.

"Criminal Background Checks and Setting Public Policy: What Does the Latest Empirical Data Show Us: Due Diligence, Background Checks and Employment" organized by the US Chamber of Commerce, Washington, DC, March, 2012.

"Redemption: Applications and Methods" Pennsylvania Department of Corrections, Camp Hill, PA, March, 2012.

"Redemption in the Face of Stale Criminal Records Used for Background Checks"
The Netter Symposium organized by Cornell University School of Industrial and Labor Relations, New York, December, 2011.

"Redemption in the Face of Stale Criminal Records Used for Background Checks"
NIJ Community Corrections Research Topical Working Group, Washington DC, November, 2011.

"Redemption in the Face of Stale Criminal Records Used for Background Checks" (Plenary presentation with Alfred Blumstein) The 19th Annual International Community Corrections Association (ICCA) Research Conference. Cincinnati, OH, September 2011.

"Redemption in the Face of Stale Criminal Records Used for Background Checks"
(with Alfred Blumstein)

"Taking on the Challenges Facing Workers with Criminal Records" organized by the National Employment Law Project and the Community Legal Services. Washington DC, April 2011.

"Business Intelligence and Predictive Analytics in Criminal Justice" (invited panelist)

4

Optimal Solutions Group, LLC's Real-Time Seminar, College Park, MD, February 2011.

"Redemption in the Face of Stale Criminal Records Used for Background Checks" Symposium: Undoing the Effects of Mass Incarceration, George Mason University, Fairfax, VA, January 2011.

"Are Criminal Background Checks Misleading Employers?" Forum by The Job Opportunities Task Force and ReEntry of Ex-Offenders Clinic at the University of Maryland School of Law, Baltimore, MD, November 2010.

"Redemption in the Face of Stale Criminal Records Used for Background Checks" (with Alfred Blumstein) Ohio Ex-Offender Reentry Coalition meeting, Ohio Department of Rehabilitation and Correction, Columbus, OH, September 2010.

"Redemption in the Face of Stale Criminal Records Used for Background Checks" (with Alfred Blumstein) New York Division of Criminal Justice Services, Albany, NY, July 2010.

"Redemption in an Era of Widespread Background Checking" (with Alfred Blumstein) Occasional Series on Reentry Research, John Jay College of Criminal Justice, New York, March 2009.
"Redemption in the Presence of Background Checking - Some Preliminary Results" (with Alfred Blumstein) "Fair Use of Criminal Records in Employment" conference, organized by the American Bar Association's Commission on Effective Criminal Sanctions, Washington, D.C., January 2008.

Presentations

"Exploring The Role Of Concentrated Reentry In The Relationship Between Halfway Houses And Recidivism" (with Rochisha Shukla) American Society of Criminology, November 2017.

 "Exploring the Relationship Between Crime Free Time and Recidivism: Estimating Redemption Points for Parolees" (with Nicole Frisch and Bret Bucklen) American Society of Criminology, November 2016.

"Evaluating the Impact of Ban the Box on Recidivism and Employment Outcomes: A Case in Pennsylvania" American Society of Criminology, November 2015.

"Exploring the Effects of Residential Relocation Through Community Corrections Centers on Recidivism: An Experiment" American Society of Criminology, November 2014.

"Effects of Prison Visitation on Recidivism" American Society of Criminology, November 2013.

"Exploring the Timing of Early Parole Discharge" American Society of Criminology, Chicago, IL, November 2012.

"Redemption for Reintegrating Prisoners: Preliminary Results" American Society of Criminology, Chicago, IL, November 2012.

"Estimating Redemption Times for Ex-Offenders with Stale Criminal Records" Association for Public Policy Analysis & Management Fall Research Conference, Baltimore, MD, November 2012.

"Determining the Timing of Parole Discharge Based on the Concept of Redemption: Preliminary Results" (with Kristofer Bret Bucklen) American Society of Criminology, Washington DC, November 2011.

"Triadic Analysis of Peer Infuence on Delinquency: Application of Simmelain Tie Theory" (with Douglas Weiss) American Society of Criminology, Washington DC, November 2011.

"Examining the Redemption Process in the Context of Employer Concern about Particular Types of Crime" American Society of Criminology, Washington DC, November 2011.

"Redemption in an Era of Increasing Use of Criminal Background Checks" The 16th Congress of the International Society of Criminology, Kobe, Japan. August 2011.

"Redemption: The Effect of Prior Criminal History and Racial Differences in Risk Profiles" American Society of Criminology, San Francisco, November 2010.

"Redemption for Sex Offenders" American Society of Criminology, San Francisco, November 2010.

"Is Redemption Possible with Widespread Use of Criminal Background Checks?" Middle Atlantic States Correctional Association, Atlantic City, June 2010.

"Is Redemption Possible with Widespread Use of Criminal Background Checks?" Defendant Offender Workforce Development Conference, Dallas, April 2010.

"Process of Redemption Should be Built into the Use of Criminal-History Records for Background Checking" American Society of Criminology, Philadelphia, November 2009.

"Robustness Testing of Redemption Estimates" American Society of Criminology, Philadelphia, November 2009.

The National Consortium for Justice Information and Statistics (SEARCH) Membership Group Meeting, Washington, D.C., November 2009.

The Herbert M. Singer and Richard Netter Conference "Race, Criminal Records and Employment: Legal Practice and Social Science Research", New York, October 2009.

"Redemption in an Era of Widespread Background Checking" American Correctional Association 2009 Congress of Correction, Nashville, August 2009.

"Criminal Background Checks and Hiring Ex-Offenders" National Institute of Justice Annual Conference, Washington, D.C., June 2009.

"Developments in Redemption" American Society of Criminology, St. Louis, November 2008.

"Redemption in the Presence of Widespread Criminal Background Checks" American Society of Criminology, Atlanta, November 2007.

"Gang Territory and Community Social Networks" American Society of Criminology, Toronto, Canada, November 2006.
"Street Gangs: Structure and Violence" Sunbelt Conference, Vancouver, Canada, April 2006.

h. Grants and Contracts

"Exploring the Effects of Residential Relocation Through Community Corrections Centers on Recidivism: An Experiment" (PI). Pennsylvania Commission on Crime and Delinquency, July 2013-. $130,000.

 "Determining the Timing of Parole Discharge Based on the Concept of 'Redemption'" (PI). National Institute of Justice, August 2011-. $200,000.

"Assessment of the Criminal Justice Information System" (PI) For the Maryland Department of Public Safety and Correctional Services. 2011-2012. $70,000.

"Measuring Recidivism in the District of Columbia" (PI) For the Government of the District of Columbia (Criminal Justice Coordinating Council) 2011. $43,000.

"The Immigration-Crime Nexus in the Context of Prisoner Reentry and Parolee Recidivism" (PI) The 2011 College of Behavioral and Social Sciences Dean's Research Initiative.

"Extension of Current Estimates of Redemption Times: Robustness Testing, Out-of-State Arrests, and Racial Differences" (Co-PI with Alfred Blumstein). National Institute of Justice, October 2009-June2011. $250,000.

"Potential for Redemption in Criminal Background Checks" (Co-PI with Alfred Blumstein). National Institute of Justice, June 2007-June 2010. $60,000.


3. **Teaching, Mentoring and Advising**.

a. Courses Taught
Seminar in Corrections (13), Introduction to Criminology (100-200), Treatment of Offenders and Delinquents (30-50), Crime and Delinquency Prevention (30-50)

b. Advising

Ph.D. Dissertation Committee Co-Chair
Kathleen Frey (2018)
Mariel Alper (2014)

Ph.D. Dissertation Committee Member:
Kristofer Bucklen (2014)
Heather Harris (2014)
Katie Zafft (2014)
David Mazieka (2014)
Dawn Daggett (2014)
Patricia Breen (2014)
Mauri Matsuda (2014)
Stephen Mcguinn (2013)

c. Teaching Innovations

7

"Introduction to Social Network Analysis" Presentations University of Maryland, Department of Criminology and Criminal Justice, Lecture Series in Statistical Applications in Criminology and Criminal Justice. April 2011.

"Social Network Analysis for Criminologists" American Society of Criminology, San Francisco, November 2010.

## 4. Service and Outreach

a. <u>Grant and Journal Refereeing</u>

National Institute of Justice
Criminology
Journal of Quantitative Criminology
Criminology & Public Policy
Journal of Criminal Justice
Journal of Research in Crime and Delinquency
American Sociological Review
Social Forces
Social Problems
Journal of Empirical Legal Studies

<u>b. Campus Service</u>

Summer Research Initiative Mentor, College of Behavioral and Social Sciences, 2015
Advising: "Risk Assessment Tool Literature Review" by Megan E. Collins 2014
Statistics and Admissions Committees, Department of Criminology and Criminal Justice, 2010, 2011, 2012, 2013, 2014, 2016

<u>c. Community Engagement</u>

Workgroup on the Public Safety of the Anacostia Trail System, 2017-2018

<u>d. Consulting</u>

Expert retained by Outten & Golden LLP in the case Evelyn Houser, et al., v. Penny Pritzker, Secretary, U.S. Department of Commerce
Expert retained by NAACP LDF in the case Waldon, et al. v. Cincinnati Public Schools
Expert retained by Morrison & Foerster LLP in the case Hardie v. NCAA
Expert report provided for Community Legal Services, Inc in the case Peake v. the Commonwealth of Pennsylvania

<u>e. Media Activities</u>

"To Curb repeat offenders, the Bay State takes inmates back to school" The Christian Science Monitor, March 8, 2018.

"The Inmate Economy: Sheriffs Shuffle Prisoners to Battle Overcrowding" WFYI, March 5, 2018.

"Paying a Price, Long After the Crime." The New York Times Op-Ed, January 9, 2012

"Criminal History and Employment" by Len Sipes. DC Public Safety Radio, June 13, 2012.

"Internet Lets a Criminal Past Catch Up Quicker" by Erica Goode. New York Times, April 28, 2011.

"Shedding the Stigma of Prison: Cultural, Personal Changes Will Help Ex-Inmates Find Redemptive Place in Society, Advocates Say" by Martin Ricard. The Washington Post, September 05, 2009.

5. **Awards and Honors**

The Pioneer Institute Better Government Competition 2015 Runner Up: Paying for Success in Community Corrections (with Bret Bucklen)
Carnegie Mellon University Fellowships William W. Cooper Doctoral Dissertation Award, 2011
Elected to Sigma Xi, 2010
H. John Heinz III College Doctoral Fellowship, 2006-2010

**APPENDIX B**

<u>**Information Considered in Forming Opinions**</u>

<u>**Case-Related Documents**</u>
*Hamama v. Adducci* Litigation Documents
- Second Amended Petition, Doc. 118
- Usama Hamama Redacted Declaration, Doc. 138-6
- Adel Shaba Redacted Declaration, Doc. 138-5
- Jami Derywosh Redacted Declaration, Doc. 138-12
- Habil Nissan Redacted Declaration, Doc. 138-16
- Margo Schlanger Declaration, Doc. 174-3
- Data on age of *Hamama* class members

*In re N.A.M.*, 24 I&N (BIA 2017)

Immigration and Nationality Act: Section 241 (Detention and Removal of Aliens Ordered Removed)

Chart of Years of Birth of Iraqis with Final Order of Removal

<u>**Academic References**</u>
Beck, Allen J. and Bernard E. Shipley. 1997. *Recidivism of Prisoners Released in 1983*. Washington, DC: U.S. Department of Justice, Bureau of Justice Statistics.

Blumstein, Alfred, David P. Farrington, and Soumyo Moitra 1985. 'Delinquency Careers: Innocents, Desisters, and Persisters.' *Crime and Justice* 6:187–219.

Blumstein, Alfred, and Kiminori Nakamura. 2009. Redemption in the Presence of Widespread Criminal Background Checks. *Criminology* 47:2 327-359.

Blumstein, Alfred, and Kiminori Nakamura. 2012. *Extension of Current Estimates of Redemption Times: Robustness Testing, Out-of-State Arrests, and Racial Differences. Final report for the National Institute of Justice Grant #2009-IJ-CX–0008*. Washington, DC: U.S. Department of Justice.

Brame, Robert, Michael G. Turner, Raymond Paternoster, and Shawn D. Bushway. 2012. Cumulative prevalence of arrest from age 8 to 23 in a national sample. *Pediatrics* 129:21-27.

Bushway, Shawn D. and Robert Apel. 2012. A signaling perspective on employment-based reentry programming: Training completion as a desistance signal. *Criminology & Public Policy* 11:21-50.

Bushway, Shawn D., Paul Nieuwbeerta, and Arjan Blokland. 2011. The predictive value of criminal background checks: Do age and criminal history affect time to redemption? *Criminology* 49:27-60.

Christensen, Ronald. 1967. Projected percentage of U.S. population with criminal arrest and conviction records. In *The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Science and Technology,* Appendix J. Washington, DC: U.S. Government Printing Office.

Denver, Megan, Justin T. Pickett, and Shawn D. Bushway. 2017. Criminal records and employment: A survey of experiences and attitudes in the United States. *Justice Quarterly*. https://doi.org/10.1080/07418825.2017.1340502

Desmarais, Sarah L. and Jay P. Singh, 2013. *Risk assessment instruments validated and implemented in correctional settings in the United States*. New York: Council of State Governments Justice Center.

Durose, Matthew R., Alexia D. Cooper, and Howard N. Snyder. 2014. *Recidivism of prisoners released in 30 states in 2005: Patterns from 2005 to 2010*. Washington, DC: Bureau of Justice Statistics, U.S. Department of Justice.

Farrington, David. P. 1986. Age and crime. In *Crime and Justice: An Annual Review of Research, vol. 7,* eds. Michael Tonry and Norval Morris. Chicago, IL: University of Chicago Press.

Federal Bureau of Investigation. 2003. *Age-specific arrest rates and race-specific arrest rates for selected offenses, 1993-2001*. Washington, DC: U.S. Department of Justice.

Giordano, Peggy C., Stephen A. Cernkovich, and Jennifer L. Rudolph. 2002. Gender, crime, and desistance: Toward a theory of cognitive transformation. *American Journal of Sociology, 107* , 990–164.

Hirschi, Travis and Michael Gottfredson. 1983. Age and the explanation of crime. *American Journal of Sociology* 89:552-584.

Holzer, Harry J., Steven Raphael, and Michael A. Stoll. 2003, March. *Employer demand for ex-offenders: Recent evidence from Los Angeles*. Paper presented at the Urban Institute Roundtable on Offender Re-Entry, New York.

Holzer, Harry J., Steven Raphael, and Michael A. Stoll. 2004. Will Employers Hire Ex-Offenders? Employer Preferences, Background Checks, and Their Determinants. In *Imprisoning America: The Social Effects of Mass Incarceration,* eds. Mary Patillo, David F. Weiman, and Bruce Western. New York: Russell Sage Foundation.

Kurlychek Megan C., Robert Brame, and Shawn D. Bushway. 2006. Scarlet letters and recidivism: Does an old criminal record predict future offending? *Criminology & Public Policy* 5:483-504.

Kurlychek Megan C., Robert Brame, and Shawn D. Bushway. 2007. Enduring risk? Old criminal records and predictions of future criminal involvement. *Crime & Delinquency* 53:64-83.

Lageson, Sarah E., Mike Vuolo, and Christopher Uggen. 2015. Legal ambiguity in managerial assessments of criminal records. *Law & Social Inquiry* 40:175-204.

Langan, Patrck A. and David J. Levin. 2002. *Recidivism of Prisoners Released in 1994.* Washington, DC: U.S. Department of Justice, Bureau of Justice Statistics.

Laub, John H. and Robert J. Sampson. 2003. *Shared beginnings, divergent lives: Delinquent boys to age 70*. Cambridge, MA: Harvard University Press.

Maltz, Michael D. 1984. *Recidivism*. Orlando, FL: Academic Press.

Maruna, Shadd. 2001. *Making good: How ex-convicts reform and build their lives*. Washington, DC: American Psychological Association Books.

Pager, Devah. 2003. The mark of a criminal record. *American Journal of Sociology* 108:937-975.

Paternoster, Raymond and Shawn D. Bushway 2009. Desistance and the "feared self": Toward an identity theory of criminal desistance. *The Journal of Criminal Law and Criminology*, 99:1103–1155.

Petersilia, Joan 2003. *When Prisoners Come Home*. New York: Oxford University Press.

Pew Center on the States. 2009. *One in 31: The Long Reach of American Corrections.* Washington, DC: The Pew Charitable Trusts.

Piquero, Alex R., David P. Farrington, and Alfred Blumstein 2003. 'The Criminal Career Paradigm. In *Crime and Justice: A review of research, vol. 30,* edited by Michael Tonry. Chicago, IL: University of Chicago Press.

Sampson, Robert J. and John H. Laub 1993. *Crime in the Making: Pathways and Turning Points Through Life*. Cambridge, MA: Harvard University Press.

Schmidt, Peter, and Ann D. Witte. 1988. *Predicting Recidivism Using Survival Models.* New York: Springer-Verlag.

Shannon, Sarah K.S., Christopher Uggen, Jason Schnittker, Melissa Thompson, Sara Wakefield, and Michael Massoglia. 2017. The growth, scope, and spatial distribution of people with felony records in the United States, 1948-2010. *Demography* 54:1795-1818.

Society for Human Resource Management. 2005. *2004 Reference and Background Checking –* Survey Report. Alexandria, VA: Society for Human Resource Management.

Society for Human Resource Management. 2010. *Background Checking: Conducting Criminal Background Checks*.

Society for Human Resource Management. 2012. *Background Checking: The Use of Criminal Background Checks in Hiring Decisions*.

Soothill, Keith, and Brian Francis. 2009. When do ex-offenders become like non-offenders? *Howard Journal of Criminal Justice* 48:373-387.

Travis, Jeremy 2005. *But They All Come Back: Facing the Challenges of Prisoner Reentry*. Washington, DC: The Urban Institute Press.

Uggen, Christopher. 1999. Ex-offenders and the conformist alternative: A job quality model of work and crime. *Social Problems* 46:127-151.

Vuolo, Mike, Sarah Lageson, and Christopher Uggen. 2017. Criminal record questions in the era of "ban the box". *Criminology & Public Policy* 16:139-165.

Visher, Christy A., Sara A. Debus, and Jennifer Yahner. 2008. *Employment After Prison: A Longitudinal Study of Releasees in Three States*. Justice Policy Center Research Brief. Washington, DC: Urban Institute.

Visher, Christy A., Pamela K. Lattimore, and Richard L. Linster. 1991. Predicting the recidivism of serious youthful offenders using survival models. *Criminology* 29:329-366.