# EXHIBIT 20

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **USAMA JAMIL HAMAMA**, et al.,<br><br>Petitioners and Plaintiffs,<br><br>v.<br><br>**REBECCA ADDUCCI**, et al.,<br><br>Respondents and Respondents. | Case No. 2:17-cv-11910<br>Hon. Mark A. Goldsmith<br>Mag. David R. Grand<br>Class Action |

### RESPONDENT/DEFENDANT U.S. DEPARTMENT OF HOMELAND SECURITY'S RESPONSES TO PETITIONER/PLAINTIFF ANWAR HAMAD'S INTERROGATORIES TO RESPONDENT KIRSTJEN NIELSEN

### I.   PRELIMINARY STATEMENT

Respondent U.S. Department of Homeland Security ("DHS") has not, at this time, fully completed its discovery and investigation in this action. All information contained herein is based solely upon such information and evidence as is available and known to Respondent DHS upon information and belief at this time. Further discovery, investigation, research and analysis may supply additional facts, and meaning to currently known information. Consistent with Fed. R. Civ. P. 26(e), Respondent DHS will amend any and all responses herein as additional facts are ascertained, legal research is completed, and analysis is undertaken.

### II.   GENERAL OBJECTIONS

1.   DHS objects to the requests that impose or seek to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Local Rules and Orders of the Court.

2.   DHS objects to the requests to the extent they seek disclosure of information protected under the attorney-client privilege, deliberative process privilege,

1

law enforcement privilege, attorney work-product doctrine, or any other applicable privilege or immunity. Should any such disclosure by DHS occur, it is inadvertent and shall not constitute a waiver of any privilege or immunity.

3. DHS reserves all objections as to the competence, relevance, materiality, admissibility, or privileged status of any information provided in response to these requests, unless DHS specifically states otherwise.

Subject to and without waiving the foregoing objections and consistent with the Joint Statement of Issues, ECF No. 235, DHS provides the following responses:

1. Explain your understanding of the process by which Respondents seek and the GOI determines whether to allow the repatriation of an Iraqi National, including:
   a. Describing each step of the process of obtaining travel documents or authorization for repatriation, from start to finish, both by Respondents and, to Respondents' knowledge, by the GOI;
   b. Identifying each document used as part of the process of obtaining travel documents or authorization for repatriation, either by the Respondents or by the GOI;
   c. Describing how the process of obtaining travel documents or authorization for repatriation, including but not limited to the outcomes of that process, is affected by an Iraqi National's expressed desire (written or verbal) to return or expressed desire (written or verbal) not to return to Iraq;
   d. Describing your understanding of the process and criteria the GOI employs to determine whether or not an Iraqi National qualifies as a "voluntary removal," as the term is used in Interrogatory–First Set No. 1, DHS's Second Supplemental Responses ("the Embassy can issue travel documents for voluntary removals, but Baghdad will approve travel documents required for other Iraqi Nationals"), for whom the Embassy can issue travel documents;
   e. Describing each and every step taken by Respondents and by "Baghdad," as that term is used in Interrogatory-First Set No. 1, DHS's Second Supplemental Responses, to process travel document requests for Iraqi Nationals who do not qualify as "voluntary removals," including the names and job titles of all persons involved both from the U.S. government and the GOI;
   f. Describing the potential outcomes for the process of obtaining travel documents (e.g., issuance of a passport, laissez passer, or other document, or denial on what bases);

2

  g. Describing the potential outcomes for the process of obtaining authorization for repatriation;
  h. Describing the remaining steps in the removal process after the travel document or repatriation processes have reached an outcome, both if the document/authorization is granted and if denied.

**RESPONSE:**

  Respondent DHS refers Petitioners/Plaintiffs to the DHS responses and objections to Plaintiff/Petitioner Usama Jamil Hamama's First Set of Interrogatories. Respondent DHS has no additional responsive information.

  2. Describe all criteria known to you to be used by the GOI to determine what kind of travel document to issue for an Iraqi National: laissez passer (one-way travel document), Iraqi passport, or other specified document.

**RESPONSE:**

  Respondent DHS objects to this interrogatory on the grounds that it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of interrogatories. Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than twenty-five (25) written interrogatories, including all discrete subparts. Fed. R. Civ. P. 33(a)(1). Taking into account the first set of interrogatories served on DHS, by Interrogatory No. 1(h) in Petitioners' second set of interrogatories, Petitioners' have exceeded the 25 interrogatory limit.

  Respondents have adopted and applied the related question test to determine whether the subparts of Petitioners' interrogatories are in fact "discrete." *State Farm Mut., Auto. Ins. Co. v. Pain & Injury Rehab. Clinic, Inc.*, 2008 U.S. Dist. LEXIS 50507, 2008 WL 2605206 at *2 (E. D. Mich., June 30, 2008) (quoting *Trevino v. ABC Am., Inc..*, 232 F.R.D. 612, 614 (N.D. Cal. 2006)); *see also Oates v. Target Corp.*, 2012 U.S. Dist. LEXIS 177966, at *5 (E.D. Mich. Dec. 17, 2012); *Wilkinson v. Greater Dayton Reg'l Transit Auth.*, No. 3:11-cv-00247, 2012 U.S. Dist. LEXIS 114025, at *7-9 (S. D. Ohio Aug. 14, 2012) (quoting *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997) (finding that "[o]nce a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated").

  Petitioners' first set of interrogatories nos. 4; 6(a); 6(b); 6(c); 6(d); 6(e); 7(a);

3

7(b); 7(c); and 7(d)   introduce lines of inquiries that are separate, distinct, and not discrete. *Id.*   Therefore, Petitioners' first set of interrogatories were in fact 19 interrogatories rather than 12 as designated.

Petitioners' second set of interrogatories nos. 1(e); 1(f); 1(g); and 1(h) introduce separate lines of inquiry that are separate, distinct, and not discrete.   This means the 25 interrogatory limit under Federal Rule of Civil Procedure 33(a)(1) was met in Petitioners' second set of interrogatories by Interrogatory No. 2.   All subsequent interrogatories, including this interrogatory, exceed the 25 interrogatory limit.

3. DHSHAMAMA000089 (in the version with redactions modified by the Court) states: "Note: DHS is working with Iraq and STATE to finalize a draft MOU on repatriations and the return of Iraqi nationals under final orders of removal."
   a. Provide the date of the document provided as DHSHAMAMA000089;
   b. Identify each draft of the MOU;
   c. Identify the finalized MOU; and
   d. If the MOU was never finalized, describe the reasons why and the current status, if any, of discussions regarding the MOU.

**RESPONSE:**

Respondent DHS objects to this interrogatory because it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of interrogatories. Respondent incorporates by reference its response to Interrogatory No. 2 above.

4. Michael Bernacke, in his December 22, 2017 declaration, ECF 184-3, ¶¶ 6, 9, stated that the GOI had agreed to allow repatriations of Iraqi Nationals without travel documents, on the basis of an approved flight manifest for a charter flight, and John Schultz, in his declaration of July 20, 2017, ECF 81-4, ¶ 7, stated that 8 Iraqi Nationals were repatriated on such a charter flight in April 2017:
   a. Describe your understanding of the current status of the GOI willingness to allow the repatriation of Iraqi Nationals without travel documents;
   b. Identify the basis of that understanding;
   c. If there was a change from April 2017 to the present in the GOI willingness to allow repatriations of Iraqi Nationals without travel documents, describe the change and your understanding of its cause.

4

RESPONSE:

Respondent DHS objects to this interrogatory because it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of interrogatories. Respondent incorporates by reference its response to Interrogatory No. 2 above.

5.  In several responses to prior discovery requests, Respondents have referred to GOI "form[s]" related to travel documents.
    a.  Are the forms referred to in the three statements cited in the footnote to this Interrogatory the same?
    b.  Are the referenced forms the document attached as Exhibit B?
    c.  If the referenced forms are not the document attached as Exhibit B, identify each referenced form.
    d.  Identify each other GOI form you are aware is sometimes or always used in the travel document or repatriation process.

**RESPONSE:**

Respondent DHS objects to this interrogatory because it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of interrogatories. Respondent incorporates by reference its response to Interrogatory No. 2 above.

6.  Not applicable to DHS.
7.  Not applicable to DHS.
8.  Not applicable to DHS.
9.  Not applicable to DHS.
10. In several documents, Respondents have stated that GOI travel document decisions for Iraqi Nationals who declined to sign a GOI form stating that they were willing to return to Iraq are "pending." Describe the following:
    a.  Your understanding of the steps in "different internal GOI process," including the roles of each office, department, organization, committee, etc., involved.
    b.  For each Iraqi National who declined to sign a GOI form stating that they were willing to return to Iraq, state:
        i.  each step that Respondents have taken in furtherance of their request for travel documents or repatriation;
        ii. any updates or responses the GOI has provided to that request, including who provided those responses, in what form, to whom, and when; and

5

    iii. the outcome (with date) or current status of the process.

**RESPONSE:**

  Respondent DHS objects to this interrogatory because it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of interrogatories. Respondent incorporates by reference its response to Interrogatory No. 2 above.

  11. Not applicable to DHS.

  12. Identify each document and witness Respondents will use at an evidentiary hearing, filing, or otherwise in this action to prove that, for Iraqi Nationals, there is a significant likelihood of removal in the reasonably foreseeable future.

**RESPONSE:**

  Respondent DHS objects to this interrogatory because it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of interrogatories. Respondent incorporates by reference its response to Interrogatory No. 2 above.

## **VERIFICATION**

I, Matthew H. King declare under penalty of perjury:

I am employed by the U.S. Department of Homeland Security, Office of International Affairs, as the Deputy Assistant Secretary, Office of International Engagement.

I have read and know the contents of these responses. These responses were prepared after obtaining information available to DHS through its officers and employees and through its documents and records. These responses, subject to inadvertent and undiscovered errors, are based upon, and necessarily limited by, the records and information still in existence, able to be located, presently recollected, an thus far discovered in the course of preparing these responses. The responses regarding DHS are true and correct to the best of my knowledge, information, and belief.

Executed on ___20 August 2018___

_____
Matthew H. King
Deputy Assistant Secretary
Office of International Engagement
U.S. Department of Homeland Security

7