# EXHIBIT 22

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**USAMA JAMIL HAMAMA,** et al.,

    Petitioners and Plaintiffs,

v.

**REBECCA ADDUCCI**, et al.,

    Respondents and Defendants.

Case No. 2:17-cv-11910 Hon. Mark A. Goldsmith Mag. David R. Grand

Class Action

**RESPONDENT/DEFENDANT U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT'S RESPONSES TO PETITIONER/PLAINTIFF ANWAR HAMAD'S FIRST SET OF INTERROGATORIES TO RESPONDENT RONALD VITIELLO**

    Pursuant to Federal Rule of Civil Procedure 33, Respondent Immigration and Customs Enforcement ("ICE"), hereby objects and responds to Petitioner/Plaintiff Anwar Hamad's First Set of Interrogatories to Respondent Ronald Vitiello as follows:

## I.    INTERROGATORIES

1. Explain your understanding of the process by which Respondents seek and the GOI[1] determines whether to allow the repatriation of an Iraqi National, including:
   - a. Describing each step of the process of obtaining travel documents or authorization for repatriation, from start to finish, both by Respondents and, to Respondents' knowledge, by the GOI;
   - b. Identifying each document used as part of the process of obtaining travel documents or authorization for repatriation, either by the Respondents or by the GOI;

---

[1] The term "GOI" is defined in the Definitions, ¶E. As set out in Instructions, ¶F, in answering interrogatories about the Government of Iraq or GOI, identify the specific office(s), agency (agencies), department(s), entity (entities) or individual(s) referred to in your answer.

1

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

    c.    Describing how the process of obtaining travel documents or authorization for repatriation, including but not limited to the outcomes of that process, is affected by an Iraqi National's[2] expressed desire (written or verbal) to return or expressed desire (written or verbal) not to return to Iraq;

    d.    Describing your understanding of the process and criteria the GOI employs to determine whether or not an Iraqi National qualifies as a "voluntary removal," as the term is used in Interrogatory–First Set No. 1, DHS's Second Supplemental Responses ("the Embassy can issue travel documents for voluntary removals, but Baghdad will approve travel documents required for other Iraqi Nationals"), for whom the Embassy can issue travel documents;

    e.    Describing each and every step taken by Respondents and by "Baghdad," as that term is used in Interrogatory-First Set No. 1, DHS's Second Supplemental Responses, to process travel document requests for Iraqi Nationals who do not qualify as "voluntary removals," including the names and job titles of all persons involved both from the U.S. government and the GOI;

    f.    Describing the potential outcomes for the process of obtaining travel documents (e.g., issuance of a passport, laissez passer, or other document, or denial on what bases);

    g.    Describing the potential outcomes for the process of obtaining authorization for repatriation;

    h.    Describing the remaining steps in the removal process after the travel document or repatriation processes have reached an outcome, both if the document/authorization is granted and if denied.

**RESPONSE:**

a. At present the process of obtaining travel documents or authorization for repatriation from the GOI is as follows:
   1. ICE sends the GOI a request for a travel document to the Iraqi Embassy and a U.S. Department of State employee based in Iraq. The Department of State employee interfaces with GOI representatives in Iraq, presumably with the Ministry of Foreign Affairs. This includes providing a letter containing: limited biographical information associated with the alien(s), such as alien registration number, date of birth, criminal history in the United States; confirmation of the issuance of a final order of removal; and a statement that the final order is

---

[2] The term "Iraqi National" is defined in the Definitions, ¶C, and is used throughout these interrogatories to include both Class Members and non-Class Members.

2

      administratively final. ICE also provides a copy of any documents showing indicia of Iraqi nationality, and the final order of removal.
2. If additional information is needed, the GOI will make a request for additional information to ICE and ICE will respond.
3. The GOI schedules an interview with the Iraqi National.
4. The GOI makes a determination regarding whether the information is sufficient to establish that the individual is Iraqi. If the GOI has requested additional information, no final decision is made until the GOI receives a response to that request.
5. The GOI will either issue a travel document or refuse to issue a travel document.

a. Documents used as part of the process of obtaining travel documents or authorization for repatriation include: a letter sent from ICE to the GOI containing the limited biographical information and statements as described in the response to 1a above, a Form I-217 Information for Travel Document or Passport, copies of documents showing indicia of Iraqi nationality, and a copy of the final order of removal. Although the GOI previously requested Iraqi Nationals to sign a form stating that they wished to return voluntarily to Iraq, it is Respondent ICE's understanding that the GOI no longer requests Iraqi Nationals to sign this form.

b. At present, it is Respondent ICE's understanding that the process of obtaining travel documents or authorization for repatriation from the GOI is not affected by an Iraqi National's expressed desire (written or verbal) to return or expressed desire (written or verbal) not to return to Iraq. It is ICE's understanding that the GOI is issuing travel documents for Iraqi nationals based on the process described in the responses to 1a and 1b regardless of voluntariness.

c. The GOI previously used a form to determine whether Iraqi Nationals wished to return voluntarily to Iraq, but it is Respondent ICE's understanding that the GOI no longer requests Iraqi Nationals to sign this form. At present, it is Respondent ICE's understanding that the process as outlined in the response to 1a and 1b of obtaining travel documents or authorization for repatriation from the GOI is the same for all Iraqi nationals, regardless of whether they wish to voluntarily return to Iraq.

d. At present, it is Respondent ICE's understanding that the process as outlined in the response to 1a and 1b of obtaining travel documents or authorization for repatriation from the GOI is the same for all Iraqi nationals. Prior to June 2018, it is ICE's understanding that the GOI may have distinguished between who signed and who did not sign the GOI form stating that an individual wished to voluntarily

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

return to Iraq. In June 2018, ICE began sending providing additional information biographical information to the GOI as described in 1a to obviate the need for the GOI form. It is ICE's understanding that the current process is what is described in 1a and 1b. The names and job titles of persons involved in the process of obtaining travel documents or authorization for repatriation from the GOI include: John Schultz, Deputy Assistant Director, Removal and International Operations (RIO), Enforcement and Removal Operations (ERO); Michael Bernacke, Unit Chief, RIO ERO; James Maddox, Detention and Deportation Officer, RIO ERO; and Yarub Al-Anpaqi, First Secretary, Iraqi Embassy.

e. At present, it is Respondent ICE's understanding that the potential outcomes for the process of obtaining travel documents are approval of the travel document (which include laissez-passers), denial of the travel document because the individual is not an Iraqi National, issuance of a renewed passport, or a request for more information from ICE.

f. At present, it is Respondent ICE's understanding that the process and potential outcomes for obtaining authorization for repatriation to Iraq is the same as obtaining travel documents from the GOI as described in the response to Interrogatories 1a, 1b, and 1f.

g. If a travel document is approved, ERO coordinates with ICE-Air to make arrangements to return the individual to Iraq. ICE objects to the interrogatory to the extent is call for describing the minutia of scheduling flights as it has no relevance on Petitioners' *Zadvydas* claim. If the travel document is denied, ERO's next steps would depend on the reason for denial. For example, if a travel document is denied because the GOI asserts that the individual is not an Iraqi national, ERO will attempt to obtain a travel document from a third country or the country of alleged citizenship. If there is no significant likelihood of removal in the reasonably foreseeable future, a custody decision will be made to release the individual, as appropriate.

2. Describe all criteria known to you to be used by the GOI to determine what kind of travel document to issue for an Iraqi National: laissez passer (one- way travel document), Iraqi passport, or other specified document.

**RESPONSE:**

Respondent ICE objects to this interrogatory on the ground that it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of

interrogatories. Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than twenty-five (25) written interrogatories, including all discrete subparts. Fed. R. Civ. P. 33(a)(1). Taking into account the fact that this is the second set of interrogatories that Petitioners have served on Respondent ICE, by Interrogatory No. 1(h), in Petitioners' second set of interrogatories, Petitioners' have exceeded the 25 interrogatory limit.

Respondents have adopted and applied the related question test to determine whether the subparts of Petitioners' interrogatories are in fact "discrete." *State Farm Mut., Auto. Ins. Co. v. Pain & Injury Rehab. Clinic, Inc.,* 2008 U.S. Dist. LEXIS 50507, 2008 WL 2605206 at *2 (E. D. Mich., June 30, 2008) (quoting *Trevino v. ABC Am., Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006)); *see also Oates v. Target Corp.*, 2012 U.S. Dist. LEXIS 177966, at *5 (E.D. Mich. Dec. 17, 2012); *Wilkinson v. Greater Dayton Reg'l Transit Auth.*, No. 3:11-cv-00247, 2012 U.S. Dist. LEXIS 114025, at *7-9 (S. D. Ohio Aug. 14, 2012) (quoting *Kendall v. GES Exposition Services, Inc*., 174 F.R.D. 684, 685-86 (D. Nev. 1997) (finding that "[o]nce a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated").

Petitioners' first set of interrogatories nos. 4; 6(a); 6(b); 6(c); 6(d); 6(e); 7(a); 7(b); 7(c); and 7(d) introduce lines of inquiries that are separate, distinct and not discrete. *Id.* Therefore, Petitioners' first set of interrogatories were in fact 19 interrogatories rather than 12 as designated.

Petitioners' second set of interrogatories nos. 1(e); 1(f); 1(g); and 1(h) introduce separate lines of inquiries that are separate, distinct, and not discrete. This means the 25 interrogatory limit on Petitioners' as imposed by Federal Rule of Civil Procedure 33(a)(1) was met in Petitioners' second set of interrogatories by Interrogatory No. 2. All subsequent interrogatories, including this interrogatory, exceed the 25 interrogatory limit.

3. DHSHAMAMA000089 (in the version with redactions modified by the Court) states: "Note: DHS is working with Iraq and STATE to finalize a draft MOU on repatriations and the return of Iraqi nationals under final orders of removal."
    a. Provide the date of the document provided as DHSHAMAMA000089;
    b. Identify each draft of the MOU;
    c. Identify the finalized MOU; and
    d. If the MOU was never finalized, describe the reasons why and the

5

current status, if any, of discussions regarding the MOU.

**RESPONSE:**

Respondent ICE objects to this interrogatory on the ground that it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of 25 interrogatories. Respondents incorporate by reference the response to Interrogatory No. 2 above.

4. Michael Bernacke, in his December 22, 2017 declaration, ECF 184-3, ¶¶ 6, 9, stated that the GOI had agreed to allow repatriations of Iraqi Nationals without travel documents, on the basis of an approved flight manifest for a charter flight, and John Schultz, in his declaration of July 20, 2017, ECF 81-4, ¶ 7, stated that 8 Iraqi Nationals were repatriated on such a charter flight in April 2017[3]:
    a. Describe your understanding of the current status of the GOI willingness to allow the repatriation of Iraqi Nationals without travel documents;
    b. Identify the basis of that understanding;
    c. If there was a change from April 2017 to the present in the GOI willingness to allow repatriations of Iraqi Nationals without travel documents, describe the change and your understanding of its cause.

**RESPONSE:**

Respondent ICE objects to this interrogatory on the ground that it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of 25 interrogatories. Respondents incorporate by reference the response to Interrogatory No. 2 above.

5. In several responses to prior discovery requests, Respondents have referred to GOI "form[s]" related to travel documents.[4]

---

[3] *See also* ICE-0271113 ("With regard to travel documents, the Goi agreed to have previously-reviewed plane manifests replace the need for travel documents for Iraqis for whom the USG can provide some evidence of Iraqi citizenship, i.e., valid or expired passports or national identification cards, or other Iraqi citizenship documentation. This was the 'Haiti model' we previously discussed with DHS."); ICE-0271842 ("Removal and International Operations (RIO) is currently managing eight (8) cases involving Iraqi nationals who do not have travel documents (TD). RIO in conjunction with DOS in Baghdad has acquired permission to send these 8 subjects on a charter flight. Iraq will accept the cases with an approved manifest instead of TDs.").

[4] In response to Interrogatory–First Set No. 1, DHS's Second Supplemental Responses stated: "As of January 9, 2018, DHS understood that the Government of Iraq . . . (4) would not require Iraqi Nationals to sign a form." In response to Interrogatory–First Set No. 3, ICE's Supplemental Responses stated: "The GOI has represented to ICE that additional approval from

6

    a.    Are the forms referred to in the three statements cited in the footnote to this Interrogatory the same?
    b.    Are the referenced forms the document attached as Exhibit B?
    c.    If the referenced forms are not the document attached as Exhibit B, identify each referenced form.
    d.    Identify each other GOI form you are aware is sometimes or always used in the travel document or repatriation process.

**RESPONSE:**

Respondent ICE objects to this interrogatory on the ground that it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of 25 interrogatories. Respondents incorporate by reference the response to Interrogatory No. 2 above.

    Instructions specific to Interrogatory 6: This interrogatory applies to all Iraqi Nationals, whether or not Class Members. It seeks some of the same information as was previously sought in ICE Interrogatory–First Set No. 6-7, and some additional information. To the extent any information sought was previously provided, that information shall be updated. With respect to subparts relating to GOI response, Respondents shall not respond with statements that "processing not completed due to court injunction" (or similar statements) unless Respondents have received specific communications from the GOI that the court injunction is the **only** reason why travel documents are not being issued. With respect to these same subparts, if Respondents' response is that a "request will be processed," specify all additional information or steps the GOI requires for processing and the date on which processing is likely to be completed.

6.    For each Iraqi National for whom Respondents have sought travel documents from the GOI since March 1, 2017, provide the following:
    a.    the name and A-number of the Iraqi National;
    b.    the name of the attorney representing the Iraqi National, if any;
    c.    the date the removal order became final;
    d.    the dates the individual has been detained by ICE since January 1, 2016;
    e.    the type of travel and identity documents the Iraqi National possessed when he or she entered ICE custody, and whether those

---

Baghdad will be needed for the issuance of travel documents for individuals who do not sign the GOI form stating that he or she wants to return to Iraq." The declaration of James Maddox, ECF 311-3, states: "Six (6) individuals refused to sign the GOI travel document form."

7

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

      documents have expired;

f. the date(s) the request for travel documents was made to the GOI;

g. whether the GOI has conducted a consular interview(s) and if so the date(s) of any such consular interview(s) and the name, title, and office of each person from the Government of Iraq that conducted each interview;

h. whether, how, and when the Iraqi National has expressed his or her willingness or unwillingness to return to Iraq;

i. whether the Iraqi National's repatriation was considered "voluntary" or "involuntary" by the GOI, and how you know;

j. the response of the GOI embassy or consulate to the request, and the date(s) of that response;

k. if the travel document request was not approved under the initial process for requesting travel documents, whether ICE has requested further consideration from "Baghdad" through the "different internal GOI" process, as those terms are used in the Declaration of James Maddox, ¶ 11.b, ECF 311-3, and if so when that request was made, the response of the GOI to the request, and the date(s) of that response(s);

l. whether the GOI has agreed to issue travel documents, and if so, any conditions placed on their use;

m. whether the GOI has agreed to accept the Iraqi National for repatriation without travel documents, and if so, which part of the GOI so agreed, how, and any conditions placed on repatriation;

n. if the request for travel documents or for repatriation was approved, the type of travel documents or permission obtained, including the office of the Iraqi government approving the travel documents or repatriation, and the issue and expiration date for the documents or permission;

o. if the request for travel documents or for repatriation was denied, the GOI office issuing the denial, the date of the denial, the reason(s) given for the denial, and any steps Respondents have taken or plan to take after the denial;

p. whether the Iraqi National has been repatriated, and if so, the date of repatriation, travel method (commercial air, charter air, etc.), and location to which repatriated;

q. with respect to the existence of a significant likelihood of removal in the reasonably foreseeable future (SLRRFF) for the Iraqi National:

    i. when Respondents most recently evaluated SLRRFF;

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

      ii.    the outcome of that evaluation;
     iii.    who conducted that SLRRFF evaluation;
     iv.    whether a federal judge has evaluated the existence of SLRRFF, the outcome of that evaluation, and the relevant court and docket number;
      v.    if either Respondents or a federal judge has determined that removal to Iraq is not significantly likely in the reasonably foreseeable future, the basis of that decision;

r.    whether Respondents are seeking to remove the individual to another country, and if so what country/countries; and

s.    whether the individual has been released from detention and the date of release.

**RESPONSE:**

Respondent ICE objects to this interrogatory on the ground that it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of 25 interrogatories. Respondents incorporate by reference the response to Interrogatory No. 2 above.

7.    If not already covered in Interrogatory 6, the same information requested in Interrogatory 6 for every Iraqi National released from detention because there was no significant likelihood of removal in the reasonably foreseeable future.

**RESPONSE:**

Respondent ICE objects to this interrogatory on the ground that it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of 25 interrogatories. Respondents incorporate by reference the response to Interrogatory No. 2 above.

8.    For each Iraqi National who Respondents have successfully repatriated to Iraq, provide the name, A-number, location in Iraq to which repatriated, and the last known contact information for the Iraqi National or family members.

**RESPONSE:**

9

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Respondent ICE objects to this interrogatory on the ground that it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of 25 interrogatories. Respondents incorporate by reference the response to Interrogatory No. 2 above.

9. Identify each document, communication, statement, and instance in which the GOI has declined since January 1, 2017—either permanently or provisionally—to issue travel documents or otherwise allow repatriation of an Iraqi National.

**RESPONSE:**

Respondent ICE objects to this interrogatory on the ground that it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of 25 interrogatories. Respondents incorporate by reference the response to Interrogatory No. 2 above.

10. In several documents, Respondents have stated that GOI travel document decisions for Iraqi Nationals who declined to sign a GOI form stating that they were willing to return to Iraq are "pending."[5] Describe the following:
    a. Your understanding of the steps in "different internal GOI process," including the roles of each office, department, organization, committee, etc., involved.
    b. For each Iraqi National who declined to sign a GOI form stating that they were willing to return to Iraq, state:
        i. each step that Respondents have taken in furtherance of their request for travel documents or repatriation;
        ii. any updates or responses the GOI has provided to that request, including who provided those responses, in what form, to whom, and when; and
        iii. the outcome (with date) or current status of the process.

---

[5] See Interrogatory–First Set No. 3, ICE's Supplemental Responses ("The GOI has represented to ICE that additional approval from Baghdad will be needed for the issuance of travel documents for individuals who do not sign the GOI form stating that he or she wants to return to Iraq. ICE has made a request to the GOI to have those travel documents issued without requiring that form and that request is pending."); Declaration of James Maddox, ECF 311-3 ("Six (6) individuals refused to sign the GOI travel document form and the GOI indicated that further approval from Baghdad was required to issue those travel documents. The GOI has not denied these requests. Rather, the GOI must facilitate a different internal GOI process to complete the issuance of a travel document.").

10

**RESPONSE:**

Respondent ICE objects to this interrogatory on the ground that it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of 25 interrogatories. Respondents incorporate by reference the response to Interrogatory No. 2 above.

11. Describe each and every step in Respondents' process for determining whether an Iraqi National has a significant likelihood of removal in the reasonably foreseeable future (the "SLRRFF process"), including when each step occurs; the office and titles of the individuals who conduct each step; and the documents used and generated during the SLRRFF process.

**RESPONSE:**

Respondent ICE objects to this interrogatory on the ground that it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of 25 interrogatories. Respondents incorporate by reference the response to Interrogatory No. 2 above.

12. Identify each document and witness Respondents will use at an evidentiary hearing, filing, or otherwise in this action to prove that, for Iraqi Nationals, there is a significant likelihood of removal in the reasonably foreseeable future.

**RESPONSE:**

Respondent ICE objects to this interrogatory on the ground that it fails to comply with Fed. R. Civ. P. 33(a)(1) as the propounding party has exceeded the limit of 25 interrogatories. Respondents incorporate by reference the response to Interrogatory No. 2 above.

## VERIFICATION

I, John A. Schultz, Jr. declare under penalty of perjury:

I am employed by U.S. Immigration and Customs Enforcement as the Deputy Assistant Director for the Removal Management Division (East).

I have read and know the contents of this response. This response was prepared after obtaining information available to ICE through its officers and employees and through its documents and records. This response, subject to inadvertent and undiscovered errors, is based upon, and necessarily limited by, the records and information still in existence, able to be located, presently recollected, and thus far discovered in the course of preparing this response. The response regarding ICE are true and correct to the best of my knowledge, information, and belief.

Executed on August 20th, 2018

John A. Schultz, Jr.
Deputy Assistant Director
Removal Management Division- East
Enforcement and Removal Operations
Immigration and Customs Enforcement
U.S. Department of Homeland Security