# EXHIBIT 23

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**USAMA JAMIL HAMAMA,** et al.,

    Petitioners and Plaintiffs,

v.

**REBECCA ADDUCCI**, et al.,

    Respondents and Defendants.

Case No. 2:17-cv-11910
Hon. Mark A. Goldsmith
Mag. David R. Grand
Class Action

**RESPONDENT U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT'S RESPONSES AND OBJECTIONS TO PETITIONERS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO RESPONDENTS**

    Pursuant to Federal Rule of Civil Procedure 26 and 34, Respondent Immigration and Customs Enforcement ("ICE"), by and through undersigned counsel, hereby respond and object to Petitioners' Second Set of Requests for Production and Things.

1

## DOCUMENT REQUESTS

1. Documents relied on, identified, or cited by Respondents in answering any interrogatory.

**RESPONSE:**

a. Respondent ICE objects to this request as it is duplicative of Request for Production No. 5 in Petitioners' Amended First Set of Requests for Production of Documents and Things.

2. All versions of the GOI "voluntary removal declaration" that Respondents have received, in Arabic and English. In particular, please provide the version referred to in ICE-0270696 ("They provided us an untranslated copy of the voluntary removal declaration to serve on the aliens as part of the updated application packet. We had it translated and verified the document was the declaration that we will not be serving to the detainees. Julius advised the embassy accordingly."); the version this document was intended to replace; and any subsequent versions.

**RESPONSE:**

a. Pursuant to the Amended Protective Order agreed to by the Parties, Respondent ICE anticipates producing the requested documents when it completes a search of its records, should it locate any responsive material in accordance with the terms of the Amended Protective Order.

3. Documents referencing or otherwise relating to requests for "approval from Baghdad," as that term is used in Interrogatory–First Set No. 3, ICE's Supplemental Responses, or the "different internal GOI process" referred to in James Maddox's declaration, ECF 311-3, ¶ 11.b, and discussions and communications with the GOI about such "approvals from Baghdad" or the "different internal GOI process."

**RESPONSE:**

a. Respondent ICE objects to this request on the grounds that it is duplicative of Request for Production Nos. 2 and 3 in Petitioners' Amended First Set of Requests for Production of Documents and Things. Respondent ICE anticipates producing the requested documents as part of its obligation to supplement Petitioners' first set of discovery requests in accordance with the

terms of the Amended Protective Order.

4. Documents referencing or otherwise relating to the GOI's denial of repatriation or decision not to issue travel documents—either permanently or provisionally—to any Iraqi National.

**RESPONSE:**

a. Respondent ICE objects to this request on the grounds that it is duplicative of Request for Production Nos. 2 and 3 in Petitioners' Amended First Set of Requests for Production of Documents and Things. Respondent ICE does not anticipate producing additional documents responsive to this request beyond what has already been produced. However, if Respondent ICE does identify additional responsive documents, it will produce the requested documents as part of its obligation to supplement Petitioners' first set of discovery requests in accordance with the terms of the Amended Protective Order.

5. All drafts and any final version of the MOU referenced in DHSHAMAMA000089.

**RESPONSE:**

a. Respondent ICE does not anticipate producing documents responsive to this request as it is ICE's understanding that no MOU exists or has ever existed as referenced in DHSHAMAMA000089.

6. Any demarches issued to the GOI relating to repatriation of Iraqi Nationals, since 2015. *See* ICE-0271074.

**RESPONSE:**

a. Respondent ICE objects to Document Request No. 6 on the basis that any demarches in the possession, custody, or control of Respondent ICE would be owned by the Department of State and issued to the GOI by the Department of State. All applicable privileges claimed over such documents would have to be reviewed by the Department of State for privilege.
b. Respondent ICE objects to Document Request No. 6 as unduly burdensome to the extent it requests documents existing before ICE started storing demarches in a central system. Demarches were not stored centrally at ICE until recently approximately 1-2 years ago. Custodians would be required to perform a manual search of records to identify potentially responsive material

   for any demarches before they began being centrally stored. As not all demarches are uniformly marked with an identifiable keyword, custodians would be required to search through myriad documents, rather than performing a simple keyword search, to identify potentially responsive material. Additionally, demarches sent to ICE before they were centrally stored could have been sent to an unidentifiable number of individuals who may or may not still be employed by ICE.
c. Respondent ICE objects to Document Request No. 6 as vague, as "demarche" can be defined as a political course of action and could refer to a much broader set of documents, or verbal actions that may be responsive to this request.
d. Respondent ICE objects to Document Request No. 6 as irrelevant, because political initiatives issued by the Department of State dating back three years do not bear on Respondent ICE's determination in the present day that there is a significant likelihood of removal in the reasonably foreseeable future as to a particular class member.
e. Pursuant to the Amended Protective Order agreed to by the Parties, Respondent ICE anticipates producing the requested documents when it completes a search of its records and after an assessment of privilege by the Department of State, should it locate any responsive material in accordance with the terms of the Amended Protective Order. Respondent ICE estimates that it will take a minimum of 3 weeks to collect the documents in a manner that does not preserve all metadata and identify all of those documents on a privilege log.

7. Documents referencing or otherwise relating to the GOI's position regarding involuntary repatriation of Iraqi Nationals, including GOI documents in the possession of Respondents that relate to the GOI's position on the voluntary or involuntary repatriation of Iraqi Nationals.

**RESPONSE:**

a. Respondent ICE objects to this request on the grounds that it is duplicative of Request for Production Nos. 2, 3, and 8 in Petitioners' Amended First Set of Requests for Production of Documents and Things. Pursuant to the Amended Protective Order agreed to by the Parties, Respondent ICE anticipates producing the requested documents as part of its obligation to supplement Petitioners' first set of discovery requests and producing any additional responsive documents after a search of its records in accordance with the terms of the Amended Protective Order.

8. All ICE custody reviews of Iraqi Nationals since February 2018.

**RESPONSE:**

a. Respondent ICE objects to Document Request No. 8 as vague and unduly burdensome and further notes that any responses would be privileged. Respondent ICE also objects on the grounds of proportionality, since producing all custody reviews will be time-consuming and will not answer the pertinent legal question of whether removal is significantly likely in the reasonably foreseeable future. *See Zadvydas v. Davis,* 533 U.S. 678 (2001). Respondent ICE also objects to Document Request No. 8 as vague as Petitioners have not indicated whether they are only seeking 180-day custody reviews that are referred from the field to ICE headquarters for review. To the extent that Petitioners are seeking 90-day custody reviews or custody reviews that are completed by local field offices and are not referred to ICE headquarters, Respondent ICE objects to Document Request No. 8 as unduly burdensome because any such custody reviews are not stored in a central repository. In order to obtain these documents, ICE headquarters or every field office would first be required to determine which offices have held Iraqi Nationals since February 2018. Then, they would be required to do a manual records search of each A-number, and then search each detainee's file to determine whether a custody review was performed for every Iraqi National who may be detained or released at any point since February 2018. Petitioners have not demonstrated the need for 90-day custody reviews that outweighs the burden on Responded ICE to produce them.
b. Additionally, Document Request No. 8 calls for documentation that is protected from disclosure by the Law Enforcement and Deliberative Process Privileges. Custody reviews involve an ERO officer's assessment of the case and recommendation whether to continue custody. Any documentation created during a custody review is created in the course of a step-by-step review of relevant factors. It is important to protect the privileged nature of these documents so that officers continue to make complete recommendations. Document Request No. 8 also calls for law enforcement privileged information because custody reviews rely on the law enforcement processes to determine whether ICE should continue to detain an individual. Custody reviews contain information which includes an internal discussion of information known to officers through various law enforcement investigative methods and law enforcement databases that are not accessible by the public. Given that any responsive documents to Request No. 8 are both protected by the deliberative process privilege and the law enforcement privilege, the

burden on Respondent ICE to produce them is not outweighed by Petitioner's need for them, as any documents produced would likely be redacted in full.

9. For any Iraqi National for whom ICE or a federal judge has found no significant likelihood of removal in the reasonably foreseeable future, since July 24, 2018, all documents referring or relating to that determination.

**RESPONSE:**

a. To the extent the request seeks documentation relating to any Iraqi National for whom a federal judge has found no significant likelihood of removal in the reasonably foreseeable future, since July 24, 2018, Respondent ICE objects to Document Request No. 9 as unduly burdensome because documentation related to Iraqi Nationals for whom a federal judge has found no significant likelihood of removal in the reasonably foreseeable future is not tracked or stored in a central repository. Individual habeas cases are handled by ERO and OPLA offices in the field. The results of those cases are not tracked in a statistically reportable manner, and there is no way to identify which habeas cases relate to Iraqi Nationals, whether those individuals were granted relief in the form of release from detention, and the judge's reasoning for release. Accordingly, the only way to identify these cases is via PACER, which Petitioners can access.
b. To the extent the request seeks documentation relating to any Iraqi National for whom ICE has found no significant likelihood of removal in the reasonably foreseeable future, since July 24, 2018, Respondent ICE does have documents responsive to this request.

10. Any cables issued by the Department of State relating to repatriation, including the cable issued during or about March 2017 summarizing the outcomes of a meeting between the U.S. Embassy, Baghdad, and the Iraq Ministry of Foreign Affairs (MFA). *See* ICE-0270599.

**RESPONSE:**

a. Respondent ICE objects to this request on the grounds that it is duplicative of Request for Production Nos. 1 and 8 in Petitioners' Amended First Set of Requests for Production of Documents and Things. Pursuant to the Amended Protective Order agreed to by the Parties, Respondent ICE anticipates producing the requested documents as part of its obligation to supplement Petitioners' first set of discovery requests and after an assessment of privilege

      by the Department of State in accordance with the terms of the Amended Protective Order.

b. Respondent ICE objects to Document Request No. 10 on the basis that any cables in the possession, custody, or control of Respondent ICE would be owned by the Department of State and issued to the GOI by the Department of State. All applicable privileges claimed over such documents would have to be reviewed by the Department of State for privilege.

c. Respondent ICE objects to Document Request No. 10 as overly broad because the request seeks cables relating to repatriation and does not appropriately cabin the request to repatriation of Class Members or to claims related to the substance of this litigation.

d. Respondent ICE objects to Document Request No. 10 as unduly burdensome because not all cables are uniformly marked with an identifiable keyword, custodians would be required to search through myriad documents, rather than performing a simple keyword search, to identify potentially responsive material.

e. Respondent ICE objects to Document Request No. 10 as vague, as "cables" is not defined.

f. Respondent ICE estimates that it will take a minimum of 3 weeks to collect the documents in a manner that does not preserve all metadata and identify all of those documents on a privilege log.

Dated: August 20, 2018 Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation

NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation

*/s/Cara E. Alsterberg*
CARA E. ALSTERBERG
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4667
Fax: (202) 305-7000
Email: Cara.E.Alsterberg@usdoj.gov

Attorneys for Defendants-Respondents

## **CERTIFICATE OF SERVICE**

Case No. 2:17-cv-11910

I hereby certify that on August 20, 2018, I served the foregoing on Petitioners' lead counsel of record via electronic mail:

Kimberly L. Scott (P69706)
Cooperating Attorneys,
ACLU Fund of Michigan
MILLER, CANFIELD, PADDOCK
& STONE, PLC
101 N. Main St., 7th Floor
Ann Arbor, MI 48104
(734) 668-7696
scott@millercanfield.com

Margo Schlanger (P82345)
Cooperating Attorney,
ACLU Fund of Michigan
625 South State Street
Ann Arbor, Michigan 48109
(734) 615-2618
margo.schlanger@gmail.com

*/s/ Cara E. Alsterberg*
Cara E. Alsterberg

U.S. Department of Justice