UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA J. HAMAMA, et al.,

        Petitioners,                      Case No. 17-cv-11910

vs.                                           HON. MARK A. GOLDSMITH

REBECCA ADDUCCI, et al.,

        Respondents.
_____/

## ORDER STAYING CASE AND ADDRESSING OUTSTANDING ISSUES

These matters are before the Court on the parties' joint statement of issues ("JSI") filed on February 14, 2019 (Dkt. 529) and other issues related to the Court's November 20, 2018 Opinion & Order granting Petitioners' motion for renewed preliminary injunction (Dkts 527 & 530 (re-detention) and Dkts. 492-494 (bond issues)). The Court will address the issues in turn.

**A. General Stay of Proceedings**

The Court issued three preliminary injunctions in this case: one halting Petitioners' removal (Dkt. 87), one ordering bond hearings for incarcerated Petitioners (Dkt. 191), and one ordering the release of Petitioners who have been incarcerated for more than six months (Dkt. 490) ("Zadvydas Order"). On December 20, 2018, the Sixth Circuit issued an Opinion vacating this Court's first two preliminary injunctions (Dkt. 496); however, the mandate has yet to issue, as a petition for en banc review is pending. Additionally, the Government has filed an interlocutory appeal as to the Zadvydas Order (Dkt. 517), which may well be impacted by the Supreme Court's forthcoming decision in Nielsen v. Preap, --- U.S. ---, 138 S. Ct. 1279 (2018) (argued Oct. 10, 2018).

Because an operative appellate ruling – not yet in place – would likely impact future

1

proceedings in this case, the parties agree that a general stay of proceedings is warranted. They disagree in the particulars. Petitioners propose that the stay order should maintain previous reporting requirements, but allow time-sensitive matters to be raised. The Government argues that reporting requirements be relaxed. The Court agrees that staying this case in terms of further substantive proceedings pending resolution of the appellate matters is the best course. However, because all three injunctions are currently operative, the Court will continue to supervise and maintain the status quo of its injunctions.

"[A]n injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief." Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright, 364 U.S. 642, 647 (1961). Although an appeal ordinarily divests the district court of jurisdiction over the matters on appeal, Federal Rule of Civil Procedure 62(d) creates an exception to that rule: "While an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). The Sixth Circuit has recognized that Rule 62(d) allows a district court to modify a preliminary injunction during an interlocutory appeal to preserve the status quo. See Basicomputer Corp. v. Scott, 973 F.2d 507, 513 (6th Cir. 1992) (considering former Federal Rule of Civil Procedure 62(c)). However, the Sixth Circuit has declined to consider to what extent a district court may modify a preliminary injunction to alter the status quo. Id.

Petitioners propose that the requirements under the first two preliminary injunctions remain in place until the Sixth Circuit opinion vacating the injunctions becomes operative. They further seek an order directing the Government to become current on their delinquent reporting requirements. Additionally, Petitioners are asking the Court to essentially modify the third

2

injunction to include some of the reporting requirements applicable to the first two injunctions; the modification, they argue, is needed to ensure compliance with the Zadvydas Order. The Government proposes that it should no longer be required to comply with the first two injunctions, even though the mandate has not issued.

The Court finds that because all three of its injunctions are operative, compliance with each injunction must be continued. Therefore, the Government must become current with all of its obligations under the Court's injunctions by March 18, 2019 and continue to meet its obligations until an operative Sixth Circuit opinion says otherwise. The Court will also modify its Zadvydas Order to include reporting requirements that will allow Petitioners to monitor the Government's compliance. The reporting requirements will be set forth in a separate order.

Additionally, because the Sixth Circuit will likely address issues related to sanctions against the Government, the Court will dismiss without prejudice Petitioners' motion for sanctions (Dkts. 381, 421 & 476).[1] Although the Court is staying this case, the Court will continue to address time-sensitive matters as they arise. The parties are directed to contact the Court within three days after the Sixth Circuit's ruling on the Zadvydas Order to schedule a status conference to discuss how this case should proceed in light of that decision.

The Court will also stay the resolution of any matters under the procedures set forth in the Court's June 12, 2018 and September 14, 2018 orders regarding ongoing removal (Dkts. 304 & 394) and the Government's request to terminate the stay of removal for certain class members (Dkts. 305, 322, & 327), pending a decision on the petition for en banc review in the Sixth Circuit. Under the Court's orders, the Government sought termination of the Court's stay of removal as to

---

[1] The Court also denies the Government's motion to strike (Dkt. 451) its notice of non-compliance, because the notice bears on the Government's failure to meet its discovery obligations and the resulting sanctions in the Zadvydas Order.

a number of class members who did not file timely motions to reopen or timely appeal denials of motions to reopen. With respect to the June 12, 2018 and September 14, 2018 orders, Petitioners' had until January 4, 2019 to submit filings regarding any good cause for missing the relevant deadlines. Petitioners did not submit their filings due to the stay caused by the recent government shutdown. These issues will become moot if the petition for en banc review is denied and the Sixth Circuit mandate issues. However, if the petition is granted, the Court will address with counsel how best to proceed as to this issue.

### B. Petitioners on Bond and Orders of Supervision

In the Court's Zadvydas Order, the Court held that the injunction would not apply to class members who are on bond, subject to later briefing through which Petitioners could seek extension of the injunction to such individuals. Petitioners filed a memorandum on the matter (Dkt. 492), asking that the injunction be extended to those released after bond hearings, whether released under bonds or orders of supervision. The Government responded (Dkt. 493), and Petitioners filed a reply brief (Dkt. 494). For the reasons that follow, the Court will not extend the Zadvydas Order at this time to Petitioners who have been released on bond or orders of supervision.

The Primary Hamama class is defined as follows:

> All Iraqi nationals in the United States who had final orders of removal at any point between March 1, 2017 and June 24, 2017 and who have been, or will be, detained for removal by U.S. Immigration and Customs Enforcement.

9/26/2018 Order (Dkt. 404). The Zadvydas Subclass is defined as:

> All Primary Class members, who are currently or will be detained in ICE custody, and who do not have an open individual habeas petition seeking release from detention.

1/2/018 Order (Dkt. 191). As Petitioners note, the Primary Class and Zadvydas Subclass definitions create somewhat fluid classes. For example, when a Primary Class member is released

4

from custody on bond or under an order of supervision, he is no longer a member of the Zadvydas Subclass. If he is re-detained, however, he potentially becomes a Zadvydas Subclass member again. Regardless of the dynamic interplay of the two class definitions, the issue before the Court is simply whether Zadvydas provides a basis for relief for Petitioners who have been released on bond or orders of supervision.

Petitioners, citing Rosales-Garcia v. Holland, 322 F.3d 386 (6th Cir. 2003), argue that they can continue to seek Zadvydas relief even though they are not currently detained, and should therefore be covered by the Zadvydas Order. Rosales-Garcia was an application of the central Zadvydas ruling prohibiting indefinite civil detention that might violate Fifth Amendment liberty protections. Zadvydas v. Davis, 533 U.S. 678, 699 (2001). In Rosales-Garcia, petitioner Rosales was released from detention by way of a parole. Id. at 394. The Government argued, as it does here, that because Rosales had been paroled, his habeas petition seeking relief under Zadvydas was moot. Id. The Sixth Circuit recognized that although Rosales was still "in custody" for the purposes of habeas relief, there was a question of whether he was "detained" within the meaning of Zadvydas. Id. at 394-395. The Sixth Circuit found that Rosales' parole was essentially revocable at will because the INS could revoke Rosales' parole at any time if it found that it was in the public interest to do so. Id. at 395. Therefore, the court found that Rosales was still detained for the purposes of Zadvydas relief. Id. at 395.

Here, unlike in Rosales-Garcia, the relevant Petitioners were released under bonds or orders of supervision, not under a parole system. The Court has not been provided with any information about the immigration bonds or the orders of supervision. Without a more complete record, the Court cannot determine whether the conditions of Petitioners' bonds or orders of supervision allow the Government to re-detain Petitioners at any time and for reasons as

5

amorphous as the public interest. Typically, a person under a bond maintains his or her freedom so long as a condition of bond has not been violated or no material change in circumstance has transpired; orders of supervision are similarly structured. This would suggest Rosales-Garcia – premised on a parole system utilized for a program addressing Cuban nationals – is not persuasive support for Petitioners' position. But the absence of a record detailing how current bonds or orders of supervision compare to the Rosales-Garcia parole system makes it impossible to evaluate fully Petitioners' position.

The record is also barren with respect to how the liberty interest protected under Zadvydas is implicated relative to individuals who are not physically restrained within the confines of government facilities. Petitioners' Zadvydas motion addressed irreparable harm exclusively in terms of the hardship individuals faced languishing in local jails or detention facilities. Pet'rs. Mot. at 42 (Dkt. 473) ("Petitioners are being held in penal conditions; over half are held in jails, alongside pretrial and sentenced prisoners."). All that Petitioners sought was release from such facilities. Id. at 43 ("Monitored freedom is reasonable here, and that is all Petitioners seek."). The hardship Petitioners now raise appears to be purely economic, based on bond premiums they must pay or property that must be encumbered as collateral. See Pet'rs Mem. at 5 n.2. Without more of a record, it is unclear how such a hardship for those on bond or under orders of supervision raises the Zadvydas concern with the liberty interest protected under the Due Process Clause.

Because the record is not sufficiently developed, the Court will not, at this time, extend its Zadvydas Order to Petitioners who were released on bond or orders of supervision.

### C. Re-detention

The parties seek to clarify under what circumstance the Government can re-detain Petitioners who are currently on supervised release or bond. The Government seeks authority to

6

re-detain Petitioners under three circumstances: (1) if, on account of changed circumstances, there is a significant likelihood of removal for the individual subclass member; (2) if the subclass member violates a condition or conditions of his order of supervision, order of release on recognizance, or a condition of bond; and (3) if, after release the subclass member is returned to ICE custody after committing a new criminal offense. The Government proposes that it be allowed to re-detain class members for a minimum of six weeks in order to schedule the departure and complete all administrative processes for removal. Gov't Re-Detention Br. at 7 (Dkt. 527). Petitioners propose that upon obtaining both travel documents and a travel itinerary, the Government should direct class members to report to the airport for deportation, unless the Government can show that detention rather than reporting is reasonable.

The parties are asking the Court to rule on matters that may never occur and implement procedures that may not suit the needs of a particular situation. The Court finds that the prudent course for dealing with re-detention issues is to decide the matters on a case-by-case basis, as they arise. Absent a stipulated order, if the Government desires to re-detain a class member, it must file a motion seeking leave from the Court to re-detain the class member and a brief supporting the reasons for re-detention. Petitioners will have two days to file any objections to re-detention and the Court will rule on the matter on an expedited basis. All such filings shall be under seal.

### D. Thair Hannosh

The parties dispute whether Thair Hannosh is a Hamama class member. According to Petitioners, Hannosh received a removal order on June 21, 2017, however, on that same day, he also won withholding of removal. According to the Government, Hannosh received an order of removal, but was also granted relief under the Convention Against Torture ("CAT"). Hannosh waived any appeal, but the Government appealed the CAT ruling. To qualify as a Hamama class

7

member, Hannosh must qualify under the following definition:

> All Iraqi nationals in the United States who had final orders of removal at any point between March 1, 2017 and June 24, 2017 and who have been, or will be, detained for removal by U.S. Immigration and Customs Enforcement.

9/26/2018 Order (Dkt. 404).

The Government argues that Hannosh's order of removal is not final because the Government appealed the immigration court's ruling on CAT. JSI at 27-28 (citing Foti v. INS, 375 U.S. 217, 232 (1963)). However, Foti simply addressed whether the Attorney General's refusal to suspend deportation was a final order of removal subject to judicial review by the Court of Appeals. Foti, 375 U.S. at 232. Foti does not stand for the proposition that any pending administrative proceeding renders an order of removal not final. The federal regulations, on the other hand, are clear as to when an order of removal becomes final. An order of removal by an immigration judge becomes final, among other things, "[u]pon waiver of appeal by the respondent." 8 C.F.R. § 1241.1(b).[2]

The issue is simply whether Hannosh falls within the Primary Class definition. Hannosh was ordered removed on June 21, 2017, which places him within the Primary Class definition, so long as the order of removal was final. The parties' JSI says that Hannosh waived his appeal of the order of removal, but not when he waived his appeal. Therefore, the parties are directed to inquire into the matter and determine the date upon which Hannosh waived his appeal of his order of removal. If it was on or before June 24, 2017, he is subject to the Court's Zadvydas Order. If it was later, Hannosh is not a Hamama class member.

---

[2] The Government also argues that Zadvydas relief is not called for where Hannosh has prevailed on his CAT claim. Whether Hannosh received relief under CAT is of no importance if he has been incarcerated for more than six months and there is no significant likelihood of his removal in the reasonably foreseeable future.

### E. George Arthur

George Arthur is a former petitioner in this matter. The Court lifted the stay of removal as to Arthur on September 5, 2018 (Dkt. 384). Additionally, Arthur has an individual habeas case pending in the Middle District of Georgia, which disqualifies him as a class member in this case. Although there is a procedure in place to allow Arthur to dismiss his individual habeas case and rejoin the class, he has not had the opportunity to dismiss his individual action due to procedural complications. However, Petitioners represent that the Government is now taking the position that Arthur is not an Iraqi citizen and that it is no longer seeking to remove him to Iraq, which Petitioners say is inconsistent with the position taken by the Government in the Georgia case. For the Government's part, it states unequivocally in the JSI that it is not seeking to remove Arthur to Iraq and intends to make that clear in the Georgia case. Nonetheless, Petitioners ask the Court to order the Government to file notice in this case and the Georgia case explaining their current intentions with respect to Arthur's deportation to Iraq.

There is no need for the Court to intrude upon another court's case. The Government stated its intentions with respect to Arthur in the JSI and that it would clear up any uncertainty in the Georgia case. If the Government does not follow through on its promise to clarify matters in the Georgia case, Petitioners can cite the Government's statement in this matter. Therefore, Petitioners' relief as to George Arthur is denied.

### F. Unsealing Documents

Petitioners have directed the Court's attention to a number of potentially outstanding issues related to provisionally sealed documents. The Government is still reviewing the matter and did not state its position in the JSI. Therefore, the Court ordered the Government to file a supplemental brief stating its position on outstanding provisionally sealed documents **on or before March 15,**

**2019**.  After review of that filing, the Court will address the sealing issue by separate order.

    SO ORDERED.

Dated: March 12, 2019                                s/Mark A. Goldsmith  
      Detroit, Michigan                           MARK A. GOLDSMITH  
                                                       United States District Judge