IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA JAMIL HAMAMA, et al.,

    Petitioners and Plaintiffs,

v.

REBECCA ADDUCCI, et al.,

    Respondents and Defendants.

Case No. 2:17-cv-11910
Hon. Mark A. Goldsmith
Mag. David R. Grand

Class Action

**PETITIONERS' RESPONSE TO RESPONDENTS' MOTION TO RE-DETAIN MOUAYED KAS YONAN, ECF 535**

## I. Introduction

Respondents seek to exempt class member Mouayed Kas Yonan from this Court's November 20 Order requiring release under *Zadvydas v. Davis*, 533 U.S. 678 (2001), ECF 490, arguing that because he was convicted of a new offense after being released on bond, he can be redetained. Respondents do not address *Zadvydas* or the November 20 Order at all, much less show that Mr. Yonan's removal is significantly likely in the reasonably foreseeable future. In fact, if this Court countenances Mr. Yonan's redetention he is likely to spend years incarcerated without any other judicial review, either by an immigration court or federal court.

Because the government has not met its burden of establishing that Mr. Yonan's removal is significantly likely to occur in the reasonably foreseeable future, this Court should order his immediate release.

**II.    Factual Background**

Mouayed Kas Yonan, a Chaldean Catholic, came to the United States in 1973 at age five. Exh. 1, Bajoka Decl, ¶ 12. He speaks no Arabic whatsoever and knows no one in Iraq, as his entire family is in the United States. *Id.* He was originally ordered removed in August 2005, but lived in the community under an order of supervision. *Id.*, ¶ 3. He would be in grave danger in Iraq because of his religion and the fact that he is clearly American, *id.*, ¶ 12, and because he is a member of the *Hamama* class, which has been described in Iraqi media as consisting of serious criminals. See ECF 87 PgID 2353 (June 24, 2017 preliminary injunction).

Mr. Yonan voluntarily surrendered himself to ICE on September 20, 2017, knowing full well that he would be detained. *Id.*, ¶ 4. Following this Court's January 2018 Order requiring release of individuals unless a bond hearing found individualized cause for detention, ECF 191, Mr. Yonan was released on April 5, 2018, on a $20,000 bond (later rescinded on appeal to the Board of Immigration Appeals). *Id.*, ¶ 5. He had spent six and a half months incarcerated.

2

Mr. Yonan struggles with opioid addiction issues. *Id.*, ¶ 10. If Mr. Yonan is released, both he and his family are committed to getting him drug treatment to address his addiction issues, and such treatment is immediately available to him. *Id.*, ¶ 11, 13. In August 2018, he was arrested for stealing a wallet that had been left on the counter of a store, and of using the wallet owner's credit card . *Id.*, ¶ 7. He took responsibility for his offense and pled guilty. *Id.*, ¶ 8. The criminal justice system meted out punishment for that offense—a sentence of 220 days. *Id.*, ¶ 9.

On January 20, 2019, after Mr. Yonan had served his time, ICE took him into custody. *Id.*, ¶ 9. Mr. Yonan has now spent about eight and half months in ICE custody.

After Mr. Yonan turned himself in and was detained by ICE in September of 2017, he moved to reopen his immigration case based on changed country conditions. *Id.*, ¶ 14. That motion was granted on December 20, 2017, and he now has a master calendar hearing scheduled for March 26, 2019, with a merits hearing likely to be scheduled some 60 to 90 days after that. *Id.*, ¶ 14.

Mr. Yonan's immigration attorney predicts that it will take several years before his immigration case concludes, regardless of the outcome of the pending immigration hearing. *Id.*, ¶ 14. If Mr. Yonan obtains relief and the government appeals, as it has done in many of the *Hamama* case, ICE will—absent an order from this Court—continue to detain him under the purported authority of 8 U.S.C.

§ 1226(c). *Id.*, ¶ 14. Given the dangers he faces in Iraq and his strong tries in the U.S., if Mr. Yonan loses, he intends to appeal, first to the Board of Immigration Appeals, and then, if necessary, to the Sixth Circuit. *Id.*, ¶ 14. Mr. Yonan's immigration attorney, who has extensive experience in immigration law generally and with *Hamama* cases in particular, estimates that if Mr. Yonan is not released by this Court, he will remain in prolonged detention for what will likely be two years or more with no chance at obtaining a bond. *Id.*, ¶ 15.

Not only will it likely be years before Mr. Yonan's immigration case concludes, but the government has not put forth any evidence showing that, in the event Mr. Yonan ultimately loses, Iraq will even be willing to accept him. Pursuant to ECF 533 PageID 14649 (and its predecessor order), Petitioners are to be notified when Iraq issues travel documents. Petitioners have received no such notice regarding Mr. Yonan.

ICE did not seek this Court's permission before redetaining Mr. Yonan in January, even though this Court's *Zadvydas* Order had issued two months earlier, ECF 490. Instead, ICE arrogated to itself the unilateral right to rearrest a class member based on ICE's own view that the *Zadvydas* Order should not apply.

### III. Law and Argument

Mr. Yonan, as a detained class member who does not have an individual habeas case, is a member of the *Zadvydas* subclass. In this Court's November 20,

4

2018 Opinion granting *Zadvydas* relief, ECF 490, this Court set out the relevant standards for the detention of *Zadvydas* subclass members:

> The *Zadvydas* subclass has been detained well beyond the presumptively reasonable period of six months. Therefore, to be considered for *Zadvydas* relief, Petitioners must show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," which the Government must then rebut. *Zadvydas*, 533 U.S. at 701. The Government can rebut the showing with evidence that removal is significantly likely, otherwise detention justified by preventing flight "is weak or nonexistent where removal seems a remote possibility at best," *id*. at 691, and that removal will occur in the "reasonably foreseeable future," a time period that shrinks the longer detention persists, *id*. at 701.

ECF 490, PgID 14182-83. The Court went on to find, based on "ample evidence," that "Petitioners have more than met their burden of showing good reason to believe that their removal is unlikely in the reasonably foreseeable future." *Id.* at PgID 14183. The Court further found that "[t]he Government has not met its burden of rebutting that Petitioners' removal is not significantly likely in the foreseeable future..." *Id.* at PgID 14187. The Court therefore ordered release of *Zadvydas* subclass members who have been detained more than six months, absent some strong special justification for detention. *Id.* at PgID 14200.

Under *Zadvydas*, a change in the likelihood of removal is the only permissible basis for redetention. The core teaching of *Zadvydas* is that civil immigration detention must be in service of its purpose: removal. If removal is not significantly likely in the reasonably foreseeable future, such detention is

5

impermissible. A new criminal conviction cannot be the basis for further civil immigration detention, because such further detention would not serve its constitutionally permissible purpose: "assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 690. *See also Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2003) ("The goal of pre-removal incarceration must be to ensure the ability of the government to make a final deportation.").

Respondents do not even attempt to show that Mr. Yonan's removal is significantly likely in the reasonably foreseeable future. Instead they argue, without citation to a single case, that they can continue to incarcerate him for however many years it takes for his immigration case to conclude and, if he loses, for however many months or years it takes for Iraq to decide whether to agree to his removal. The only basis they give for such indefinite detention is 8 U.S.C. § 1226(c), the pre-order mandatory detention statute. But this Court has already held that *Zadvydas* applies to pre-order detainees like Mr. Yonan who are held under 8 U.S.C. § 1226(c). And under *Zadvydas*, Mr. Yonan cannot be detained unless his removal is significantly likely in the reasonably foreseeable future.

Respondents' suggestion that Mr. Yonan deserves incarceration because he committed a new offense misses the point. Mr. Yonan could be and was punished. That happened in the criminal justice system. He was sentenced to 220 days in jail as a sanction for his misconduct. But the purpose of *immigration* detention, versus

*criminal* detention, is removal. And absent a significant likelihood of removal in the reasonably foreseeable future, Mr. Yonan cannot simply be locked up by ICE indefinitely because he stole a wallet.

Only exceptional situations—such as concerns about "terrorism or other special circumstances," *Zadvydas*, 533 U.S. at 696—justify immigration detention that is not tied the purpose of effectuating removal. These limitations are also reflected in the regulations, which delineate the narrow circumstances and procedural protections that apply to detention in "special circumstances even though there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.14. Those regulations allow for detention of "especially dangerous" individuals or national security/terrorism threats, subject to procedural protections. There are no allegations that are strong special justifications for Mr. Yonan's detention, or that he is danger to national security.

While criminal conduct can result in *criminal* detention as a penalty for such misconduct, *civil* detention cannot properly be unmoored from its ostensible civil purpose of effectuating removal. In sum, Mr. Yonan could be and was incarcerated as punishment for the offense. But all of that occurred in the context of his criminal case. It in no way affects whether his removal is significantly likely in the reasonably foreseeable future.

## IV. Relief Requested

Because the government has not met its burden under *Zadvydas*, this Court shoulder order Mr. Yonan's immediate release under an order of supervision.

Respectfully submitted,

Miriam J. Aukerman (P63165)
Bonsitu A. Kitaba (P78822)
ACLU FUND OF MICHIGAN
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6814
msteinberg@aclumich.org

/s/Kimberly L. Scott
Kimberly L. Scott (P69706)
Wendolyn W. Richards (P67776)
Cooperating Attorneys, ACLU Fund
  of Michigan
MILLER, CANFIELD, PADDOCK
 & STONE, PLC
101 N. Main St., 7th Floor
Ann Arbor, MI 48104
(734) 668-7696
scott@millercanfield.com

Nora Youkhana (P80067)
Nadine Yousif (P80421)
Cooperating Attorneys, ACLU Fund
  of Michigan
CODE LEGAL AID INC.
 27321 Hampden St.
Madison Heights, MI 48071
(248) 894-6197
norayoukhana@gmail.com

Judy Rabinovitz (NY Bar JR-1214)
Lee Gelernt (NY Bar LG-8511)
ACLU FOUNDATION
  IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2618
jrabinovitz@aclu.org

Margo Schlanger (P82345)
Cooperating Attorney, ACLU Fund
  of Michigan
625 South State Street
Ann Arbor, Michigan 48109
734-615-2618
margo.schlanger@gmail.com

Susan E. Reed (P66950)
MICHIGAN IMMIGRANT RIGHTS
  CENTER
3030 S. 9th St. Suite 1B
Kalamazoo, MI 49009
(269) 492-7196, Ext. 535
Susanree@michiganimmigrant.org

| | |
|---|---|
| María Martínez Sánchez (NMBar126375)<br>ACLU OF NEW MEXICO<br>1410 Coal Ave. SW<br>Albuquerque, NM 87102<br>msanchez@aclu-nm.org<br><br>David B. Johnson (Ill. 6186478)<br>Cooperating Attorney, ACLU Fund<br>  of Michigan<br>573 Hawksnest Drive<br>South Haven, MI 49090<br>(616) 302-5226<br>Notworking2012@gmail.com | Lara Finkbeiner (NY Bar 5197165)<br>Mark Doss (NY Bar 5277462)<br>INTERNATIONAL REFUGEE<br>  ASSISTANCE PROJECT<br>One Battery Park Plaza, 4th floor<br>New York, NY 10004<br>(516) 838-1869<br>lfinkbeiner@refugeerights.org |

*Attorneys for All Petitioners and Plaintiffs*


William W. Swor (P21215)
WILLIAM W. SWOR
 & ASSOCIATES
1120 Ford Building
615 Griswold Street
Detroit, MI 48226
wwswor@sworlaw.com

*Attorney for Petitioner/Plaintiff Usama Hamama*

Dated: March 20, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2019, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF filers of record.

> By: */s/Kimberly L. Scott*
> Kimberly L. Scott (P69706)
> Cooperating Attorneys, ACLU Fund of Michigan
> MILLER, CANFIELD, PADDOCK
>   & STONE, PLC
> 101 N. Main St., 7th Floor
> Ann Arbor, MI 48104
> (734) 668-7696
> scott@millercanfield.com