UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA J. HAMAMA, et al.,

       Petitioners,                      Case No. 17-cv-11910

vs.                                           HON. MARK A. GOLDSMITH

REBECCA ADDUCCI, et al.,

       Respondents.
_____/

## OPINION & ORDER
## GRANTING IN PART PETITIONERS' MOTION FOR RELEASE
## PURSUANT TO ZADVYDAS ORDER, ECF 490 (Dkt. 548)

This matter is before the Court on Petitioners' motion to release Raid Dawad and Johnny Younan (Dkt. 548). In its response brief, the Government informed the Court that Raid Dawad has been released on an order of supervision because neither Iraq nor Jordan will accept his repatriation. Gov't Resp. at 3 (Dkt. 550). Therefore, the matter is moot as to Dawad.[1] As to Younan, for the reasons discussed below, the Court finds that he must be released.

Younan's removal history is not entirely clear from the parties' briefing. According to Petitioners, Younan pleaded guilty to conspiracy to commit health care fraud in 2015. Pet'rs Reply at 3 (Dkt. 554). Whether this conviction formed the basis for Younan's order of removal is not addressed in the briefing. On June 12, 2017, Younan was taken into custody by ICE in anticipation of removal. Pet'rs Mot. at 4. The Government relies on 8 U.S.C. § 1231 in its response brief,

---

[1] The Government also seeks to clarify Dawad's status as a petitioner in this lawsuit and whether further relief from this Court will be necessary to effectuate his removal in the future. Gov't Resp. at 3. However, such affirmative relief is not properly before this Court. See E.D. Mich. Electronic Filing Pol. and Proc., Rule 5(f) ("[A] response or reply to a motion must not be combined with a counter-motion."). In the event the Government is in the position to remove Dawad in the future, it can file a motion to clarify Dawad's status at that time.

1

Gov't Resp. at 4, so presumably ICE detained Younan because he was subject to a final order of removal. He remained in ICE custody for 143 days, until he was released to the United States Marshal Service on November 1, 2017 to begin serving his criminal sentence resulting from his 2015 guilty plea. Pet'rs Mot. at 4-5.[2] Younan served his sentence and was returned to ICE custody on March 8, 2019. Id. at 5. As of April 15, 2019, he has been detained by ICE for 180 days inclusive of his detention before and after his criminal incarceration.

Petitioners argue that Younan should be released on or before May 15, 2019 under the Court's Zadvydas Order because he has been in ICE custody for more than 180 days. The Government argues that the period of detention before Younan was remanded to serve his criminal sentence should be excluded from the calculation. In other words, the Government is arguing that the removal period was effectively reset when Younan was released from his custodial sentence. The Government has not justified such an exclusion.

It is the Government's position that Younan is being held under 8 U.S.C. § 1231, which establishes that where an alien has been ordered removed, the Attorney General shall remove the alien within ninety days (known as the "removal period"). 8 U.S.C. § 1231(a)(1)(A). The ninety-day removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B)(i-iii). If removal is not effectuated within the removal period, the Government may continue to detain certain aliens, including criminal aliens such as Younan, under 8 U.S.C. § 1231(a)(6). Continued detention under § 1231(a)(6), however, may not extend the

---

[2] There is no explanation why Younan's custodial sentence was delayed for two years.

detention beyond a presumptively reasonable period of six months, absent strong special justifications. Zadvydas v. Davis, 533 U.S. 678, 689, 701 (2001).

The Government's argument that the statutory removal period reset on March 8, 2019 is not supported by the record before the Court. Section 1231(a)(1)(A) is clear that "the Attorney General shall remove the alien from the United States within a period of 90 days." The Government does not establish when this period began. If, like many Zadvydas subclass members, Younan was ordered removed years ago, the removal period has likely come and gone based on the date his order of removal became administratively final. See Bailey v. Lynch, No. CV 16-2600, 2016 WL 5791407, at *2 (D.N.J. Oct. 3, 2016) ("Petitioner's removal period had concluded long before he was taken back into custody by immigration officials, and his detention is therefore not presumptively reasonable and is thus subject to challenge under Zadvydas."). The Government has provided no authority that the removal period can be reset after it has expired.

Petitioners argue that the Court should aggregate the time spent in ICE custody. Pet'rs Mot. at 5.[3] The Government disagrees and argues that Younan was in criminal custody for nearly a year and a half and, therefore, it would have been unreasonable for ICE to work on Younan's removal when it was uncertain when Younan would be released. Gov't Resp. at 6. It argues that it should be allowed to keep Younan in custody for a full six months to effectuate his removal. Id. However, the Government does not explain, and it is not clear to the Court, why asking the Bureau of Prisons to estimate Younan's release date would have been such an onerous endeavor. Younan was in ICE custody for 143 days before he was turned over to the Bureau of Prisons. ICE took

---

[3] Petitioners argue that the Court's 3/7/2018 Order (Dkt. 254) addressing, in part, the calculation of the 180-day detention clock for the purposes of bond hearings supports their position. However, the Court's order is not instructive because it did not provide any analysis from which meaningful analogies can be drawn.

3

steps to effectuate Younan's removal during that period, including arranging a consular interview, which should have made removal easier once Younan returned to ICE custody. Even if the precise day of Younan's release could not be readily determined, ICE should have been able to obtain a general timeframe for Younan's release such that travel documents (which are good for six months) and travel arrangements could have been secured. The Government's argument that Younan's release date was uncertain and therefore it could not work on his removal is not persuasive.

Additionally, the Government cites no cases that have adopted the view that the Zadvydas six-month period should be restarted each time an individual enters and leaves ICE custody. Petitioners, on the other hand, cite several cases that have found that the removal period is cumulative for the purposes of Zadvydas. See Sied v. Nielsen, No. 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (approving the approach, taken by "several courts" that "the six-month period does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again"); see also Nhean v. Brott, No. 17-28 (PAM/FLN), 2017 WL 2437268, at *2 (D. Minn. May 2, 2017) (report and recommendation) (holding that when the government detains an alien for ninety days, releases him, and then re-detains him, the second detention "was presumptively reasonable for an additional ninety days (six months in total)," not an additional six months), adopted, 2017 WL 2437246 (D. Minn. June 5, 2017); Bailey, 2016 WL 5791407, at *2 (holding that the six-month Zadvydas period "does not restart simply because an alien who has previously been released is taken back into custody"); Farah v. INS, No. Civ. 02-4725(DSD/RLE), 2003 WL 221809, at *5 (D. Minn. Jan. 29, 2013) (holding that when the government releases an alien and then revokes the release based on changed circumstances, "the revocation would merely restart the 90-day removal period, not

4

necessarily the presumptively reasonable six-month detention period under Zadvydas"). Although the above cases do not bear directly on Younan's situation, they are instructive. The Court is not persuaded that Younan's detention should be allowed to continue beyond six months where the Government has not explained why it could not work on Younan's removal in advance of his release from federal custody and courts in similar contexts have found that the six-month Zadvydas period is cumulative.

The Government has detained Younan beyond the six-month period set forth in Zadvydas. The Court has found that there is not a significant likelihood of removal to Iraq in the reasonably foreseeable future. Hamama v. Adducci, 349 F. Supp. 3d 665, 692 (E.D. Mich. 2018). The Government has not obtained travel documents and itinerary for Younan, which would indicate removal is not imminent. Nor has it asserted a strong special justification, within the meaning of Zadvydas, to continue Younan's detention. Accordingly, because the Government has failed to substantiate any sound reason for Younan's continued detention, Petitioners' motion for release (Dkt. 548) is **GRANTED IN PART**. The Government must release Younan under an order of supervision pursuant to the Court's November 20, 2018 Zadvydas Opinion (Dkt. 490) forthwith. The motion is denied in all other respects.

SO ORDERED.

Dated: May 15, 2019　　　　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge