UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA J. HAMAMA, et al.,

        Petitioners,                      Case No. 17-cv-11910

vs.                                                  HON. MARK A. GOLDSMITH

REBECCA ADDUCCI, et al.,

        Respondents.
_____/

**OPINION & ORDER
DENYING RESPONDENTS' MOTION TO RE-DETAIN FAREJ MOHAMMED AL
HAYADIR, HUSSIN HABASH AL KINANI, AND MADHI AL MOSAWI (Dkt. 551)**

This matter is before the Court on the Government's motion to re-detain Petitioners Farej Mohammed Al Hayadir, Hussin Habash Al Kinani, and Madhi Al Mosawi (Dkt. 551). Petitioners filed a response brief (Dkt. 553) and the Government filed a reply brief in support of its motion (Dkt. 556). Al Hayadir, Al Kinani, and Al Mosawi have final orders of removal. Gov't Mot. at 3. The Government has secured travel documents for them and scheduled flights for their return to Iraq for the end of May and early June 2019. Id. at 4. There is no dispute that their departure is imminent. The dispute centers on whether these three petitioners should be re-detained in advance their removal. For the reasons discussed below, the Court finds re-detention is not warranted at this time.

**I.      BACKGROUND**

The Government contacted class counsel the first week in May seeking their position on the re-detention of Al Hayadir, Al Kinani, and Al Mosawi. Aukerman/Silvas Correspondence, Ex. 3 to Pet'rs Resp., at PageID.14992. The Government confirmed that these individuals have complied with their respective orders of supervision since being released under this Court's

1

Zadvydas Order. Id. at PageID.14991. The Government agreed to allow class counsel to contact these three individuals to better understand their positions regarding re-detention. Id.

Al Hayadir has been in the United States for more than twenty years. Boukadoum Decl., Ex. 6 to Pet'rs Resp., ¶ 2 (Dkt. 553-7). He was in ICE custody for eight months before being released on an order of supervision. Id. ¶ 3. He has taken affirmative steps to return to Iraq, but has thus far been unsuccessful. Id. ¶ 4. Al Hayadir has been putting his and his mother's affairs in order, including selling his home, id. ¶¶ 8-9, and has been working with a lawyer in Iraq to assist him with obtaining Iraqi identity documents for use when he returns to Iraq, id. ¶ 9. Because his mother is intending to return to Iraq with Al Hayadir, and he has family waiting for him in Iraq, he would like to know his exact departure date so that he and his family can coordinate their efforts. Id. ¶ 15. Al Hayadir says that he is willing to report to the airport when directed to do so by ICE to effectuate his removal. Id. ¶ 13.

Al Kinani has lived in the United States for more than twenty years and is also ready to return to Iraq. Id. at 7-8. He previously spent more than two years in ICE custody from November 2016 to December 19, 2018. Al Kinani Decl., Ex. 4 to Pet'rs Resp., ¶ 4 (Dkt. 553-5). During his incarceration his health deteriorated, and he was separated from his four children. Id. ¶ 5. He would like to avoid re-detention if possible, and is even willing to purchase his own ticket to return to Iraq in advance of ICE's departure date. Id. ¶ 7. Al Kinani contacted the Detroit Field Office and was told that he may be able to receive travel documents as soon as May 13, 2019. If he is unable to depart on his own, he affirms he will report to the airport on the date provided by ICE. Id. ¶ 10. He is aware that if he does not report, he will be arrested and detained pending removal, an outcome he is eager to avoid. Id. ¶ 11.

Al Mosawi has also resided in the United States for more than twenty years and is willing

to report to the airport when directed to do so for removal to Iraq. Mosawi Decl., Ex. 5 to Pet'rs Resp., ¶ 2 (Dkt. 553-6). He was previously in ICE custody for eighteen months from July 2017 to December 2018. Id. ¶ 3. During his incarceration, he says that he did not receive proper medical care for his Lupus disorder and went through periods of extreme pain. Id. ¶ 4. In an attempt to free himself from detention, he agreed to removal on August 27, 2018 (Dkt. 372), but ICE was still unable to remove him despite no barriers to his removal. He was scheduled for a flight in November 2018, but the flight was cancelled for reasons unrelated to any action taken by Al Mosawi. Id. ¶ 11. He is currently wearing a tether and has been driving three hours each way to Cincinnati, Ohio to report under his order of supervision. Id. ¶ 7. Al Mosawi would like to avoid re-detention and says that he will continue to comply with ICE's instructions. Id. ¶ 8.

## II.     ANALYSIS

The Government argues that re-detention is warranted because it is ICE's standard practice to detain individuals before removal and significant resources will be lost if any of these Petitioners is not removed on their scheduled dates. Gov't Mot. at 6-8. Petitioners argue that their liberty interests outweigh administrative inconvenience and cost of rescheduling flights should someone not appear. Pet'rs Resp. at 10. Petitioners note that there is no evidence that any of these individuals pose a flight risk and, therefore, re-detention is not warranted. Id. The Court finds Petitioners' argument persuasive.

ICE's standard practice of detaining individuals prior to removal carries little weight when Al Hayadir, Al Kinani, and Al Mosawi have already been subject to months and years of detention without removal. Under normal circumstances, individuals subject to removal would be removed in the ninety-day removal period. 8 U.S.C. § 1231(a)(1)(A). However, ICE has not been able to remove Petitioners to Iraq under normal circumstances, even when there are no barriers to removal.

3

Arrangements do not always go as planned, even when ICE has travel documents and itineraries in hand. Al Mosawi was scheduled for a flight in November 2018, but, as has often been the case, the flight was cancelled for reasons unrelated to any action taken by Al Mosawi. ICE's standard practice could very well lead to additional months or even years of detention due to no fault of Petitioners. ICE's standard practice has not been followed in securing travel documents and itineraries and the Government offers no reasons, other than economic considerations, why standard practice should be followed now.

As for ICE's economic considerations, they do not weigh in its favor. The Government represents that "due to a variety of factors including staffing resources, funding, and Department of State requirements," it can only transport and remove a limited number of people per week. Gov't Mot. at 8. This appears to be at odds with ICE's previous position that it can readily remove Petitioners to Iraq. It is, however, consistent with the low number of re-detention motions filed by the Government and the Petitioners' longstanding position that ICE cannot remove significant numbers of Petitioners. Nonetheless, if resources are constrained, avoiding the cost of arresting and taking Petitioners into custody weeks in advance of removal will certainly help lessen ICE's economic burden. And it would be even more cost effective to allow Petitioners who are willing to bear their own cost of removal to do so.

ICE fears that Al Hayadir, Al Kinani, and Al Mosawi will not present themselves to be removed, which will squander ICE's limited resources. Such concerns are mere speculation at this point. Al Hayadir, Al Kinani, and Al Mosawi have all stated unequivocally that they will appear at the time and place that ICE directs to assist in their removal to Iraq and the Government has not offered anything to doubt their assertions. In this instance, whatever potential economic loss ICE may suffer is outweighed by the guaranteed loss of liberty Al Hayadir, Al Kinani, and Al Mosawi

4

would suffer should they be re-detained. The Government's justifications do not support re-detention of Al Hayadir, Al Kinani, and Al Mosawi at this time.

### III. CONCLUSION

For the reasons stated above, the Government's motion to re-detain Farej Mohammed Al Hayadir, Hussin Habash Al Kinani, and Madhi Al Mosawi (Dkt. 551) is **DENIED**. The Court orders the following:

A. ICE shall inform Al Hayadir, Al Kinani, and Al Mosawi of their scheduled departure dates and respective points of departure.

B. Al Hayadir, Al Kinani, and Al Mosawi may attempt to depart from the United States prior to their scheduled departure dates if they so choose. ICE shall take reasonable steps to facilitate such departures, including providing any Iraqi travel documents it has obtained. ICE may limit the location and time at which it provides travel documents in order to ensure that the travel documents are still available to ICE in the event that the Petitioners' efforts at self-deportation are unsuccessful.

C. If Al Hayadir, Al Kinani, and Al Mosawi do not depart on their own from the United States prior to their scheduled departure dates, ICE shall direct them to appear at the airport for departure. In the event that Al Hayadir, Al Kinani, and Al Mosawi do not appear as directed and have not already departed from the United States, ICE may re-detain them while it reschedules their removal, pending any further order of this Court.

D. ICE may impose reasonable supervision conditions on Al Hayadir, Al Kinani, and Al Mosawi pending departure or removal, including electronic monitoring, as ICE deems appropriate.

E. Nothing in this order shall prevent Al Hayadir, Al Kinani, and Al Mosawi from seeking a

stay of removal or other relief in immigration court, should they choose to do so.

SO ORDERED.

Dated: May 20, 2019　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　United States District Judge