UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA J. HAMAMA, et al.,

        Petitioners,                                    Case No. 17-cv-11910
vs.                                                   HON. MARK A. GOLDSMITH

REBECCA ADDUCCI, et al.,

        Respondents.
_____/

## OPINION & ORDER
## RE OUTSTANDING SEALING MATTERS

      This matter is before the Court on the parties' February 14, 2019 joint statement of issues (Dkt. 529). The Court addressed all of the issues raised in the joint statement in its March 12, 2019 Order (Dkt. 532), with the exception of issues related to provisionally sealed items. Because the Government was still reviewing the provisionally sealed documents, the Court ordered a supplemental Government brief. The Government filed its supplemental brief on March 15, 2019 (Dkt. 534). The Court recently ordered the Government to support its position further on sealing (Dkt. 580), which it did on August 1, 2019 (Dkt. 582).

      In the joint statement, Petitioners identified a number of provisionally sealed items that they believe should be unsealed. They identified Petitioners' memorandum regarding sanctions for discovery violations (Dkt. 454), Petitioners' opposition to the Government's motion for an extension of the discovery deadline and request for expedited reply briefing (Dkt. 363), and Petitioners' statement regarding consolidation of preliminary injunction hearing with a trial on the merits (Dkt. 439). With respect to the Petitioners' statement regarding consolidation of preliminary injunction hearing (Dkt. 439), the Government does not object to the matter being

1

made public.  The Court will address the other two items in turn.

## I. DISCUSSION

### A. Petitioners' memorandum regarding sanctions (Dkt. 454)

Petitioners' memorandum regarding sanctions includes two exhibits that have been provisionally sealed.  See Exs. 3 & 4 to memorandum regarding sanctions (Dkt. 454-4, 454-5). The Government argues that because the Court dismissed Petitioners' motion without prejudice (Dkt. 532), this matter is no longer ripe for consideration.  Gov't Supp. Br. at 1-2.  This argument is a nonstarter.  The exhibits are part of a court record.  The only question is whether there is a basis to keep these documents from the public domain.

Alternatively, however, the Government argues that the exhibits should remain sealed for the reasons set for in its opposition to the motion to file the documents publicly (Dkt. 488).  The Court will address each document in turn.

Exhibit 3 (Dkt. 454-4) is comprised of email correspondence among State Department and ICE officials regarding the status of obtaining travel documents from Iraq.  The Government argues that these communications should remain sealed for three reasons.  First, it argues that the emails are protected by the deliberative process privilege.  Gov't Opp'n at 7-8.  Second, the Government argues that disclosure of these emails could put Iraqi officials in danger and jeopardize diplomatic relations with Iraq.  Gov't Opp'n at 8-9.  Finally, the Government argues, without any explanation, that the law enforcement privilege applies.  Id. at 10.

In support of its argument that the deliberative process privilege applies to Exhibit 3, the Government filed the declaration of Robert Waller, Director of Iraq Affairs in the Near Eastern Affairs Bureau.  According to Waller, the deliberative process privilege applies because these communications contain "opinions, impressions, and proposals [that] represent part of an ongoing

policy-making process, and do not reflect a final decision that would be made by a senior State Department official." Waller Decl., Ex A to Gov't Opp'n, ¶ 9 (Dkt. 488-1). The Court disagrees with Waller's characterization of the email thread and that the deliberative process privilege applies.

"The deliberative process privilege protects from discovery 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" E.E.O.C. v. Burlington N. & Santa Fe Ry. Co., 621 F. Supp. 2d 603, 606 (W.D. Tenn. 2009) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975)). "The primary purpose served by the deliberative process privilege is to encourage candid communications between subordinates and superiors." Schell v. U.S. Dep't of Health & Human Servs., 843 F.2d 933, 939 (6th Cir. 1988). To fall within the privilege, the information must be both (i) pre-decisional and (ii) deliberative. Id. at 940.

"A document is predecisional when it is 'received by the decisionmaker on the subject of the decision prior to the time the decision is made.'" Id. (quoting Sears, 421 U.S. at 151). However, the privilege does not turn "on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions." Sears, 421 U.S. at 153 n.18.

A document is deliberative when it "reflects the give-and-take of the consultative process," meaning it "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Id. (internal citation and quotations omitted). It is well-settled that the deliberative process privilege "protects internal communications of a governmental agency when they are

3

deliberative in nature, but not when they are purely factual." Burlington, 621 F. Supp. 2d at 606 (citing Sears, 421 U.S. at 149). "Factual materials are generally not privileged unless they are inextricably intertwined with policy-making processes." Id. (quoting Trentadue v. Integrity Comm., 501 F.3d 1215, 1227 (10th Cir. 2007)). "[P]urely factual, investigative matters that are severable without compromising the private remainder of the documents do not enjoy the protection of the exemption." Norwood v. F.A.A., 993 F.2d 570, 577 (6th Cir. 1993) (citations and quotations omitted).

Courts are to apply a "flexible, commonsense approach to factual/deliberative classifications" and "must be careful not to become victims of their own semantics." Trentadue v. Integrity Comm., 501 F.3d 1215, 1227 (10th Cir. 2007). "In some circumstances . . . the disclosure of even purely factual material may so expose the deliberative process within an agency that it must be deemed exempted." Id. "[T]he Ninth Circuit has adopted a 'process-oriented' or 'functional' test that exempts '[f]actual materials . . . to the extent that they reveal the mental processes of decisionmakers.'" Id. (quoting Nat'l Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1119 (9th Cir. 1988)). By contrast, the Eleventh Circuit has explicitly rejected that approach, holding instead that "[t]he fact/opinion distinction continues to be an efficient and workable standard for separating out what is, and what is not, deliberative." Id. at 1228 (quoting Fla. House of Representatives v. U.S. Dep't of Commerce, 961 F.2d 941, 949 (11th Cir. 1992)).

Applying the above principles, the Court finds that the information contained in Exhibit 3 does not fall within the deliberative process privilege. The email communications in Exhibit 3 do not stray into the realm of "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Sears, 421 U.S. at 149. The emails simply update the State Department and ICE

officials on the current state of affairs with respect to obtaining travel documents from Iraq. These are not internal emails deliberating on how best to obtain travel documents from Iraq. If anything, the communications reflect that it is out of the email recipients' hands for the time being. Indeed, at the end of the email thread, after being apprised of the current situation, John Schultz says that he hopes that the Ambassador can achieve some positive results with respect to travel documents. Hoping that someone else can turn things around is a far cry from a deliberative process. The emails are, therefore, neither pre-decisional nor deliberative.

The Government's second argument is that the public release of Exhibit 3 would jeopardize foreign relations and pose a danger to Iraqi officials due to the sensitive nature of the information. Waller Decl. ¶ 10. To support this claim, Waller explains that Iraq issued a demarche to his office because of previous documents made public in this case. Id.[1] The demarche was delivered verbally at a meeting on November 2, 2018. Id.; Gov't Status Report at 1 (Dkt. 582). Because the demarche was delivered verbally, the Court cannot review the contents of the demarche. Waller further notes that several Iraqi officials are referred to by name in the email thread and discussions with these officials are described candidly. Waller Decl. ¶ 11. Waller's conclusory statements, however, do not persuade this Court that this email thread should remain sealed.

First, the Government does not explain why the Iraqi demarche addressing previously unsealed documents in this case has any bearing on whether Exhibit 3 should be made public, and it is not clear to the Court. Second, the Court cannot reconcile Waller's bold assertions about the release of sensitive information putting Iraqi officials in danger with the content of the emails. The email thread identifies two Iraqi officials by name. One is mentioned as simply having been

---

[1] According to Waller, "[a] demarche is a formal diplomatic presentation of a Government's official views." Waller Decl. ¶ 10.

5

contacted by a U.S. Ambassador; the other is mentioned as having been contacted by the State Department, and that the official said that he was waiting for clarification from the Iraqi Embassy on a demarche issued by the United States. The Government raises the specter of danger to Iraqi officials, and by extension danger to U.S. personal serving in Iraq, but upon closer examination, the specter fades away.

As to the assertion of the law enforcement privilege, Waller does not assert, much less substantiate, the privilege. It appears to be nothing more than a scrivener's error in the Government's brief. Therefore, the Court does not need to address the law enforcement privilege with respect to Exhibit 3.

With respect to Exhibit 4, however, the Government argues that the law enforcement privilege applies. It attached the declaration of Nathalie R. Asher, the Deputy Executive Associate Director for Enforcement and Removal Operations at Ice. See Asher Decl., Ex. B to Gov't Opp'n (Dkt. 488-2). Asher asserts the privilege and explains that Exhibit 4 contains internal ICE removal procedures for transport through various countries. Id. ¶ 5.

"The federal law enforcement privilege is 'a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement.'" In re Packaged Ice Antitrust Litig., No. 08-01952, 2011 WL 1790189, at *6 (E.D. Mich. May 10, 2011) (quoting In re Micron Tech., Inc. Sec. Litig., 264 F.R.D. 7, 10 (D.D.C. 2010)). "The purpose of the law enforcement privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." MacNamara v. City of New York, 249 F.R.D. 70, 78 (S.D.N.Y. 2008) (internal citations and quotations omitted).

Three requirements must be met by the Government to prevail on its claim of privilege: "(1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." In re Sealed Case, 856 F.2d 268, 271 (D.C. Cir. 1988).

There is no dispute that Deputy Executive Associate Director Nathalie R. Asher has asserted the privilege after personal consideration of the issue. Thus, the Government's claim turns on the third requirement: whether the information sought falls within the scope of the privilege.

The Government argues that Exhibit 4 falls within the scope of the privilege because, among other things, it contains information such as when an alien will be escorted or unescorted through a given country and the procedures that apply. Gov't Opp' at 11. Exhibit 4 contains information related to the timing of moving through a given country and restrictions that apply not only to aliens, but also procedures related to the escorting officials. Based on the Court's review of Exhibit 4, it finds that the law enforcement privilege is appropriate.

Accordingly, the Court overrules the assertion of the deliberative process privilege as to Exhibit 3, but sustains the Government's assertion of the law enforcement privilege as to Exhibit 4.

**B. Petitioners' opposition to the Government's motion for an extension (Dkt. 363)**

Petitioners filed a response to the Government's motion for an extension of discovery (Dkt. 363), which contained redactions and included three exhibits filed under seal: Exhibits D, E, and F. The Government does not object to the brief being filed without redactions nor does it object

to Exhibit E being made public with the redactions contained in Dkt. 473-3. Gov't Supp. Br. at 3. With respect to Exhibits D and F, however, it argues there is no basis for the exhibits to be made public. Id. The Court disagrees.

Exhibit D contains excerpts from John Schultz's deposition transcript. The Government notes that the Court has already held, over its objections, that pages 46-49, 66, 190-192, and 237-239 of the transcript are not entitled to any privilege and should be filed publicly. However, the Court has never addressed pages 134-138 and 204-207. The Government argues that these pages contain confidential or highly confidential information that are not cited in Petitioners' brief. Gov't Opp'n at 4. Therefore, the Government asserts that the pages should be stricken because they were unnecessary to the resolution the Government's motion to extend the discovery deadline (Dkt. 358). The Court finds otherwise.

The Government says that the deposition transcript contains confidential or highly confidential information, but it offers no explanation on that point. The Court has reviewed the pages and is unable to discern what the Government may find problematic with the deposition transcript pages. Additionally, that the pages were not cited in Petitioners' brief is not significant. Exhibits often contain more information than is necessary to the resolution a particular motion, but the information nonetheless provides useful context. Here, although the pages were not cited directly by Petitioners, the information is in line with the other pages that were cited by Petitioners. This is not an instance where the pages are wholly unrelated to the matter at hand. Without any explanation as to what information in pages 134-138 and 204-207 is problematic or an argument more persuasive than the fact that the pages were not directly cited by Petitioners, the Court must find the material should be filed publicly.

Exhibit F is a letter from the Consul of Iraq in Washington D.C., which includes a list of

class member names and their associated A-numbers. The Government's argument is that this letter should not be made public because it designated Exhibit F confidential and because it was not cited directly by Petitioners in their brief. Gov't Opp'n at 4. Other than redacting the A-numbers, the Court cannot glean the Government's concern with this document. After reviewing the document and the briefing, it is clear that Exhibit F supports Petitioners' position in its brief that Iraq was requiring class members to state both orally and in writing their willingness to return to Iraq. See Pet. Br. at 10. It seems like an oversight that Exhibit F was not cited in Petitioners' brief. Therefore, the Court finds the document should be made public with the exception that the A-numbers should be redacted consistent with the operative protective order.

## II. CONCLUSION

For the reasons stated above, the Court overrules the assertion of the deliberative process privilege as to Exhibit 3 (Dkt. 454-4), sustains the Government's assertion of the law enforcement privilege as to Exhibit 4 (Dkt. 454-5), overrules the Government's objections to the disclosure of Exhibits D and F (Dkts. 363-5, 363-7 respectively), except that Exhibit F must be filed with redacted A-numbers, and finds that all provisionally sealed documents to which the Government does not oppose unsealing should be filed publicly. Accordingly, Petitioners are directed to file the appropriate documents on the docket forthwith.

SO ORDERED.

Dated: August 9, 2019                      s/Mark A. Goldsmith
       Detroit, Michigan            MARK A. GOLDSMITH
                                            United States District Judge