# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: January 03, 2020

Ms. Miriam J. Aukerman
American Civil Liberties Union Fund of Michigan
West Regional Office
1514 Wealthy Street, S.E.
Suite 242
Grand Rapids, MI 49506

Anand Balakrishnan
Mr. Lee P. Gelernt
Ms. Judy Rabinovitz
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004

Mr. Michael Anthony Celone
U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 868
Washington, DC 20044

Mr. Daniel S. Korobkin
American Civil Liberties Union Of Michigan
2966 Woodward Avenue
Detroit, MI 48201

Ms. Wendolyn Wrosch Richards
Miller Canfield
150 W. Jefferson Avenue
Suite 2500
Detroit, MI 48226

Ms. Margo Schlanger
625 S. State Street
Suite LR 910
Ann Arbor, MI 48109

Ms. Kimberly L. Scott
Miller, Canfield, Paddock & Stone
101 N. Main Street
Seventh Floor
Ann Arbor, MI 48104

Mr. William Charles Silvis
U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 868
Washington, DC 20044

Mr. William W. Swor
William W. Swor
615 Griswold Street
Suite 1120
Detroit, MI 48226

Ms. Nadine Yousif
CODE Legal Aid
27321 Hampden Street
Madison Heights, MI 48322

        Re: Case No. 19-1080, *Usama Hamama, et al v. Rebecca Adducci, et al*
           Originating Case No. : 2:17-cv-11910

Dear Counsel,

 The court today announced its decision in the above-styled case.

 Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                Yours very truly,

                Deborah S. Hunt, Clerk

                Cathryn Lovely
                Deputy Clerk

cc: Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0003p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

USAMA JAMIL HAMAMA, et al.,

    *Petitioners-Appellees*,

*v.*

REBECCA ADDUCCI, Director of the Detroit District of United States Immigration and Customs Enforcement, et al.,

    *Respondents-Appellants*.

No. 19-1080

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cv-11910—Mark A. Goldsmith, District Judge.

Decided and Filed: January 3, 2020

Before: BATCHELDER, SUTTON, and WHITE, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Michael A. Celone, William C. Silvis, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. Miriam J. Aukerman, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Grand Rapids, Judy Rabinovitz, Lee Gelernt, Anand Balakrishnan, AMERICAN CIVIL LIBERTIES UNION, New York, New York, Margo Schlanger, Ann Arbor, Michigan, Nadine Yousif, CODE LEGAL AID INC., Madison Heights, Michigan, Kimberly L. Scott, Wendolyn Wrosch Richards, MILLER, CANFIELD, PADDOCK & STONE, PLC, Ann Arbor, Michigan, William W. Swor, WILLIAM W. SWOR & ASSOCIATES, Detroit, Michigan, for Appellees.

    SUTTON, J., delivered the opinion of the court in which BATCHELDER, J., joined. WHITE, J. (pp. 9–13), delivered a separate opinion concurring only in the judgment.

---

# OPINION

---

SUTTON, Circuit Judge.  Last time around, we held that Congress removed jurisdiction from the district courts to enter class-wide injunctions restraining the enforcement of the following immigration statutes: 8 U.S.C. §§ 1221–1232.  *See generally* 8 U.S.C. § 1252(f)(1), (g).  Just before we decided that appeal, the district court issued another class-wide injunction. We vacate that injunction, too, and remand again for further proceedings.

I.

Usama Hamama is the named plaintiff in a class of over one thousand Iraqi nationals. The federal government entered final removal orders against Hamama and the class members between March 1 and June 24, 2017, and the government has detained them or will do so in the future.  So far, most of them remain in the United States due to diplomatic difficulties preventing their return to Iraq.

The district court certified three subclasses: (1) all primary class members without individual habeas petitions who are or will be detained by Immigration and Customs Enforcement, (2) those in the first subclass who are also subject to final removal orders, and (3) those in the first subclass whose motions to reopen their removal proceedings have been granted and who are being held under a statute mandating their detention.  Today's appeal concerns the first subclass.

The district court now has entered a trio of preliminary injunctions.  We vacated two of them the last time we encountered this case.  *Hamama v. Adducci*, 912 F.3d 869, 871–72 (6th Cir. 2018).  The first injunction prevented removal of certain Iraqi nationals located throughout the country.  The district court, we explained, lacked jurisdiction to grant this relief under 8 U.S.C. § 1252(g).  *Id.* at 875–76.  The second injunction required bond hearings for each class member who had been detained for at least six months.  The district court, we explained, lacked jurisdiction to grant that injunction on a class-wide basis under 8 U.S.C. § 1252(f)(1).  *Id.* at 877–79.

In today's appeal, the government challenges the third injunction, issued shortly before we decided the last appeal. The third injunction presumptively requires the government to release all primary subclass members, those in the first subclass, once the government has detained them for six months, no matter the statutory authority under which they were held.

In issuing this injunction, the district court offered three explanations. First, it relied on *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), which required release of certain immigration detainees after six months if the detainees could show that there was no "significant likelihood" that they would be removed in the "reasonably foreseeable future." The government held the detainees in *Zadvydas* under 8 U.S.C. § 1231(a)(6), which applies to aliens with final removal orders. *Id.* at 682. Section 1231 requires their detention for up to 90 days, then grants discretionary authority to continue detaining certain criminal aliens after that period. The district court extended *Zadvydas* to impose the same six-month time limit on other immigration statutes that require or permit detention in other contexts: §§ 1225(b) and 1226(a), (c).

Second, the district court concluded that the class members showed that the government was unlikely to repatriate them to Iraq in the reasonably foreseeable future. Even though the government has sent some of the affected individuals back to Iraq since 2017, the evidence showed that diplomatic discussions had stalled and repatriation attempts had failed. The court concluded that this trouble likely would persist.

Third, the district court reasoned that the government "acted ignobly" throughout the litigation process and found no substantial likelihood of removal as a sanction for its conduct. R. 490 at 1, 53.

For the reasons offered in our last opinion and others elaborated below, the district court lacked jurisdiction to enter its class-wide preliminary injunction and at any rate had no license to extend *Zadvydas* to this setting.

II.

The district court had no jurisdiction to do what it did. Congress stripped all courts, save for the Supreme Court, of jurisdiction to enjoin or restrain the operation of 8 U.S.C. §§ 1221–

No. 19-1080   *Hamama, et al. v. Adducci, et al.*   Page 4

1232 on a class-wide basis. 8 U.S.C. § 1252(f)(1). Thus, for many of the same reasons we reversed the district court before, we must do so again. *See Hamama*, 912 F.3d at 877.

In each case, the government detained the aliens under §§ 1225, 1226, or 1231. Yet those are the statutes covered by the jurisdictional bar, and the court's injunction prevented those statutes from operating, whether with respect to mandatory or permissive detentions. What was true the first time around remains true today.

Hamama defends the district court's most recent injunction on four grounds, each unavailing.

He starts by insisting that the district court in truth did not enjoin the statutes. It merely granted habeas corpus relief instead. As proof, he points out that the order required the release of detainees from confinement, a form of relief that resembles a grant of the writ of habeas corpus and that is consistent with the styling of the lawsuit as a habeas petition.

That is a hard sell. As a matter of form, the district court entered a "preliminary injunction." R. 490 at 1. That's just what Hamama asked for in his motion, and that's presumably why the court called it one. As a matter of substance, the district court considered the four-factor test for a preliminary injunction, never mentioning 28 U.S.C. § 2241, any other habeas statute, or any test for habeas relief. As a matter of process, the district court granted release from detention on a preliminary basis. Section 2241 does not permit preliminary grants of habeas. It prohibits the writ from issuing unless the prisoner "is" being held "in custody in violation of the Constitution or laws or treaties of the United States," not merely because he likely could make that showing in the future. *Id.* § 2241(c)(3). Whether as a matter of form, substance, or procedure, this was a preliminary injunction, not a grant of the writ of habeas corpus.

Hamama could not succeed, moreover, even if this were a grant of habeas relief. One problem is that not all members of this subclass currently are in custody. The subclass includes individuals who will be detained in the future. Eligibility for habeas relief, as noted, covers only those individuals currently in custody, *id.* § 2241(c), while this order applies to the entire subclass. Another problem is that the order applies prospectively. It requires the release of

No. 19-1080     *Hamama, et al. v. Adducci, et al.*     Page 5

detainees once they reach six months in detention. But § 2241(c) offers the writ only to prisoners whose confinement currently is unlawful, not to those whose confinement might become unlawful in the future.

No matter, Hamama responds: The court had authority to order the class members' release as a sanction for the government's misconduct during the litigation, either under its inherent powers or under Rule 37. Three problems there. One: A federal court does not have authority to ignore a directive of the legislature as punishment for conduct of the executive branch, least of all a directive that the court has no power to issue that kind of class-wide relief. Two: The plaintiffs' description of what the court did is not exactly right. In truth, it never ordered the class members' release as a sanction. It instead adopted a finding of fact—that there is no substantial likelihood of class members' repatriation in the reasonably foreseeable future—as an adverse inference against the government. R. 490 at 53. Three: What the court did still exceeds its authority. It used the sanction as part of its explanation for granting a class-wide preliminary injunction. But nesting a sanction within an order the district court lacked authority to issue does not solve the problem: that 8 U.S.C. § 1252(f)(1) prohibits class-wide preliminary injunctions. *Hamama*, 912 F.3d at 877 (holding that § 1252(f)(1) "unambiguously strips federal courts of jurisdiction to enter class-wide injunctive relief" on these very claims).

Hamama's third attempt to rehabilitate the district court's injunction echoes an argument from the last appeal. He claims that the district court did not enjoin or restrain the immigration statutes; it just implemented them. But as we pointed out last time in responding to a similar argument, the district court ordered detainees released, created new time limits on detention, and adopted new standards that the government had to meet to continue detention. *Hamama*, 912 F.3d at 879–80. "If these limitations on what the government can and cannot do under the . . . detention provisions are not 'restraints,' it is not at all clear what would qualify as a restraint." *Id.* at 880.

Last of all, Hamama asks us to uphold the preliminary injunction on the ground that the court could have entered it as a declaratory judgment. Maybe; maybe not. Whatever we think about that issue in the abstract, however, the district court did not enter its preliminary order as a declaratory judgment. And Hamama at any rate did not seek that relief in the motion, making it

forfeited anyway. Nor should anyone assume Hamama could have obtained preliminary declaratory relief. The Supreme Court has suggested preliminary declaratory judgment does not exist. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975).

The broader point, through all of Hamama's attempts to reconceptualize this unlawful district court order, is that one does not lightly cleanse a prohibited action by identifying after the fact some other form of relief that might work sometimes in some circumstances. That is no way to run a railroad.

### III.

The district court separately read too much into *Zadvydas*, 533 U.S. at 678, and overlooked the teachings of *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), in granting relief.

In *Zadvydas*, aliens detained under 8 U.S.C. § 1231(a)(6) sought release. On its face, § 1231(a)(6) authorizes indefinite detention of certain aliens with final removal orders—those who have committed certain sets of crimes enumerated elsewhere in the statute, who are likely to flee, or who will endanger the community. Concerned about the constitutional implications of indefinite detention susceptible to challenge only through administrative review, the Supreme Court construed the statute to avoid these problems. *Zadvydas*, 533 U.S. at 699. It concluded that, after six months of confinement under § 1231(a)(6), a detainee could try to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. The government could then offer evidence to rebut that showing. *Id.* If the government failed to rebut the showing, it would have to release the detainee. *Id.*

Today's case differs in material ways. The government has detained class members under four provisions: § 1231(a)(6), the statute the *Zadvydas* court considered; § 1225(b), which mandates detention of aliens during asylum proceedings; § 1226(c), which mandates detention of certain criminal aliens until entry of a final removal order; and § 1226(a), which permits detention of all other aliens until entry of a final removal order. Despite the differences between these provisions, the court grafted the *Zadvydas* standard onto the last three provisions.

None of those three provisions implicates *Zadvydas*'s concern about indefinite detention. *Zadvydas* sprang from the observation that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. But, as *Jennings* noted, all three of these provisions, unlike the *Zadvydas* provision, have endpoints: conclusion of asylum proceedings or entry of a removal order. 138 S. Ct. at 844, 846. The Supreme Court, moreover, has separately upheld detention during deportation proceedings against constitutional challenge, allaying any constitutional concerns on that front. *Demore v. Kim*, 538 U.S. 510 (2003).

More, Congress wrote two of the statutes—§§ 1225(b) and 1226(c)—too clearly to permit a constitutional-avoidance reading. Both statutes mandate detention, which forecloses an interpretation premised on the permissive nature of the detention authority in § 1231(a)(6). *Zadvydas*, 533 U.S. at 697 ("[W]hile 'may' suggests discretion, it does not necessarily suggest unlimited discretion. In that respect the word 'may' is ambiguous.").

*Jennings* indeed forbade this precise form of interpretation in construing § 1225(b). "Here, by contrast," it reasoned, § 1225(b) "do[es] not use the word 'may.' Instead, [it] unequivocally mandate[s] that aliens falling within [its] scope 'shall' be detained." 138 S. Ct. at 843–44. And it said the same thing about § 1226(c), another mandatory detention statute, for the same reason. *Id.* at 846.

*Ly v. Hansen* does not require a different result. 351 F.3d 263 (6th Cir. 2003). Yes, it extended *Zadvydas* and its reasoning to other detention statutes. But *Ly* did not survive *Jennings*.

*Jennings* restored the constitutional distinction between pre- and post-removal order detention that *Ly* collapsed. *Ly* held that pre-removal order detention for those who could not be deported at the close of removal proceedings implicated the same constitutional concerns as indefinite detention after entry of a final removal order. *Id.* at 268–69. But that difference is precisely where *Jennings* began its analysis. In the Supreme Court's own words, "the Court of Appeals in this case . . . failed to address whether *Zadvydas*'s reasoning may fairly be applied in this case despite the many ways in which the provision in question in *Zadvydas* . . . differs

No. 19-1080     *Hamama, et al. v. Adducci, et al.*     Page 8

materially from those at issue here. . . . To start, [§ 1225(b)], unlike § 1231(a)(6), provide[s] for detention for a specified period of time." *Jennings*, 138 S. Ct. at 843–44.

*Ly* also turned on a constitutional avoidance reading of § 1226(c), one that *Jennings* expressly foreclosed. Read *Ly*: "Since permanent detention . . . under [§ 1226(c)] would be unconstitutional, we construe the statute to avoid that result, as did the Court in *Zadvydas*." 351 F.3d at 267. Now read *Jennings*: Constitutional avoidance "permits a court to choose between competing plausible interpretations of a statutory text," one of which implicates constitutional problems the other would avoid. 138 S. Ct. at 843 (quotation and emphasis omitted). But these texts are "quite clear"—so clear that application of that canon "falls far short of a plausible statutory construction." *Id.* at 845–48 (quotation omitted). As between the approaches in *Jennings* and *Ly*, only one can survive. It is not *Ly*.

We vacate the district court's injunction and remand for further proceedings.

---

## CONCURRING IN THE JUDGMENT

---

HELENE N. WHITE, Circuit Judge, concurring in the judgment only. I recognize that the majority's opinion in *Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018) (*Hamama I*) requires us to vacate the class-wide preliminary injunction. I therefore concur in the judgment. However, I adhere to my dissent in *Hamama I* and disagree with the conclusions the majority draws from Supreme Court and Sixth Circuit precedent.

### I.

The majority asserts that Hamama could not succeed even if the district court's order is characterized as habeas relief because it "applies prospectively . . . to those whose confinement might become unlawful in the future." Maj. Op. at 4–5. Under a *Zadvydas* analysis, however, it is necessary to examine the possibility of *future* indefinite and unconstitutional detention. *Zadvydas* did not neatly establish that detention shorter than six months is lawful while detention longer than six months is unlawful. Instead, in balancing the liberty interests of detainees with the executive branch's need for leeway in accomplishing removals, *Zadvydas* established a *presumption* that six months of detention is reasonable. 533 U.S. 678, 700–01 (2001). After six months, *Zadvydas* provides process to detainees whose confinement *might* be unlawful—a review of the likelihood of removal in the reasonably foreseeable future. *Id.* Here, the district court conducted this review and found that "the record unquestionably demonstrates that there is no significant likelihood of repatriation in the reasonably foreseeable future." R. 490, PID 14171. This is not a case in which "confinement might become unlawful in the future," but a case in which confinement *will* be unlawful once class members reach six months of detention.

This court has acknowledged that the Supreme Court "has construed the 'in custody' requirement in a reasonably liberal fashion and held that the writ may be appropriate in situations beyond the traditional one in which petitioner's claim would, if upheld, result in an immediate release from present custody." *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984). In *Peyton v. Rowe*, 391 U.S. 54 (1968), the Supreme Court "reexamined the so-called 'prematurity

doctrine' in the context of section 2241(c)(3) habeas corpus actions and rejected it as 'an indefensible barrier to prompt adjudication of constitutional claims in the federal courts.'" *Ward*, 738 F.2d at 139 (quoting *Peyton*, 391 U.S. at 55). The *Peyton* prisoners sought to challenge the constitutionality of consecutive sentences they had not yet begun to serve. *Peyton*, 391 U.S. at 55–57. The district courts dismissed their habeas petitions as premature but the Supreme Court held that the prisoners were "'in custody in violation of the Constitution' if any consecutive sentence they [were] scheduled to serve was imposed as the result of a deprivation of constitutional rights." *Id.* at 64–65. The Court reasoned that this approach is "consistent with the canon of construction that remedial statutes should be liberally construed." *Id.* at 65. And in *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973), the Supreme Court observed "that habeas corpus relief is not limited to immediate release from illegal custody" but is also available "to attack future confinement and obtain future releases." Of course, these cases are not on all fours with the instant case, but they demonstrate that the habeas remedy is not to be rejected simply because the confinement will become illegal in the near future.

Here, the *Zadvydas* subclass members whose periods of detention will reach six months have already established that there is no reasonably foreseeable likelihood of repatriation. Therefore, upon the expiration of the six-month presumption "each day they are incarcerated . . . while their cases are in the courts will be time that they might properly have enjoyed as free men." *Peyton*, 391 U.S. at 64. The district court's order releasing any subclass member whose detention reaches six months, allowing the government to show special justification for continued detention of specific individuals, and allowing the government to remove individuals prior to the time required for release, would constitute permissible habeas relief under § 2241.

Even if we assume the district court could not grant habeas relief prospectively, Part 1 of the order, applying to subclass members who have been detained for more than six months, would remain a valid form of habeas relief. Part 2 of the order, applying to any subclass member whose detention reaches six months, could be reissued upon the actual expiration of six months of detention.

No. 19-1080          *Hamama, et al. v. Adducci, et al.*          Page 11

The majority also casts doubt on the possibility of declaratory relief. As I observed in *Hamama I*, "the request for such relief is part of the case and should be entertained by the district court on remand without prejudgment by this court." 912 F.3d at 887 (White, J., dissenting).

## II.

I disagree with the majority's conclusion that *Demore v. Kim*, 538 U.S. 510 (2003) and *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) foreclose all relief and that *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) does not survive *Jennings*.

Although the Court in *Jennings* observed that "§§ 1225(b)(1) and (b)(2), unlike § 1231(a)(6), provide for detention for a specified period of time," the Court was nevertheless concerned about the possibility of prolonged or permanent detention without judicial review. 138 S. Ct. at 844. Before "reaching the merits of the lower court's interpretation," the Court considered whether § 1252(b)(9) deprived the Court of jurisdiction. 138 S. Ct. at 839. The Court concluded that it retained jurisdiction, in part because an interpretation of the statute that would deprive the Court of jurisdiction would bar review of the very type of detention at issue here. Such an interpretation would

> make claims of prolonged detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.

*Id.* at 840.

The Supreme Court has not allayed all constitutional concerns regarding detention during deportation proceedings. Although *Demore* considered detention under § 1226(c), one of the provisions at issue in the present case, and concluded that detention was constitutionally permissible, the Court also noted that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal," and that the respondent himself "was detained for somewhat longer than the average—spending six months in INS custody." *Demore*, 538 U.S. at 530–31. The detention here lasted three times as long—some class members were

detained for a year and a half before the district court issued its injunction. *See* R. 490 (explaining that DHS began arresting Iraqi nationals in June 2017, and the district court issued the preliminary injunction on November 20, 2018). The Court in *Demore* held that Congress "may require that persons such as respondent be detained for the *brief period* necessary for their removal proceedings," 538 U.S. at 513 (emphasis added), and noted its "longstanding view that the Government may constitutionally detain deportable aliens during the *limited period* necessary for their removal proceedings," *id.* at 526 (emphasis added). The Court did not have the opportunity to consider the degree of prolonged detention at issue in the present case. The Court distinguished *Zadvydas* on that ground, explaining that "the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,'" *id.* at 528 (quoting *Zadvydas*, 533 U.S. at 690–91), while the detention considered in *Demore* was "of a much shorter duration," *id.* The court also distinguished *Zadvydas* on the basis that in *Zadvydas* "the aliens challenging their detention following final orders of deportation were ones for whom removal was 'no longer practically attainable.'" *Id.* at 527 (quoting *Zadvydas*, 533 U.S. at 690).

Thus, on the very grounds the Supreme Court distinguished *Demore* from *Zadvydas*, the situation here is closer to *Zadvydas*. The class members here were detained for a year and a half, not a "brief" or "limited period" by any measure, and the district court found that removal is not significantly likely in the reasonably foreseeable future. It therefore remains possible, under the majority's approach, that removal is never completed "in a particular case, depriving that detainee of any meaningful chance for judicial review." *Jennings*, 138 S. Ct. at 840.

Further, as Hamama argues, *Jennings* did not disturb *Ly*'s discussion of constitutional principles. Neither should this court. *See United States v. Adewani*, 467 F.3d 1340, 1342 (D.C. Cir. 2006). Unlike the constitutional avoidance and statutory interpretation of § 1226(c) considered in *Jennings*, this court in *Ly* did not construe the statute to include a bright-line rule regarding a time limitation on pre-removal detention, 351 F.3d at 271, and did not require bond hearings, *id.* at 270. This court instead concluded that "although criminal aliens may be incarcerated pending removal, the time of incarceration is limited by constitutional considerations, and must bear a reasonable relation to removal," *id.* at 269, and that the "reasonableness of the length of detention is subject to review by federal courts in habeas

proceedings," *id.* at 273. The *Jennings* Court explicitly declined to reach these constitutional issues. 138 S. Ct. at 851.

## III.

In sum, I would vacate the preliminary injunction, and remand for reconsideration in light of *Hamama I* and for consideration of any remedies consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-1080

USAMA JAMIL HAMAMA, et al.,

    Petitioners - Appellees,

    v.

REBECCA ADDUCCI, Director of the Detroit
District of United States Immigration and Customs
Enforcement, et al.,

    Respondents - Appellants.

**FILED**
Jan 03, 2020
DEBORAH S. HUNT, Clerk

Before: BATCHELDER, SUTTON, and WHITE, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's injunction is VACATED, and the case is REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk