UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA JAMIL HAMAMA, et al.,

                       Petitioners,

v.

REBECCA ADDUCCI, et al.,

                       Respondents.

_____/

Case No. 17-cv-11910
Hon. Mark A. Goldsmith
Mag. Judge David R. Grand

**ORDER OF THE SPECIAL MASTER**

████████████, a *Hamama* Class Member who has been detained by ICE since the end of 2023, has filed a pro se motion before the Special Master seeking release from detention under the terms of the Class Settlement Agreement (Dkt. 717-2) ("Settlement Agreement").[1] ICE opposes ████████'s release. For the reasons that follow, the motion for release is granted.

**BACKGROUND**

████████ is a citizen of Iraq who entered the United States as a child during the 1990s. Declaration of Quincy R. Hodges III, at ¶ 4 (Aug. 6, 2024) ("Hodges Decl."); ██████████ ████████████████████████████████████████████████████████. On January 17, 2007, an immigration judge ordered ████████'s removal to Iraq, but because ICE was unable to execute the removal order, it released him on an order of supervision. Hodges Decl. ¶¶ 5, 11. Since the removal order remained in effect between March 1, 2017 and June 24, 2017, he is a member of the *Hamama* class. Settlement Agreement § I.A; Order Approving Settlement Agreement and Dismissing Case ¶ 2 (Dkt. 730).

Between 2003 and 2009, ████████ was convicted of multiple state criminal offenses. Hodges Decl. ¶¶ 6–9, 12. Subsequently, in 2018, he was convicted in federal court of violating 18 U.S.C. § 922(g)(1) and sentenced to one hundred months' imprisonment and two years' supervised release. *Id.* ¶ 13. In December 2023, upon the completion of that federal prison term,

---

[1] This Order incorporates and uses the defined terms set forth in the Settlement Agreement.

he was taken directly into ICE custody, and he has remained in immigration detention ever since, a period exceeding 270 days to date. *Id.* ¶ 14–16.

On June 21, 2024, ███████████ filed a pro se motion to reopen proceedings in immigration court, arguing that because of changed country conditions in Iraq that materially affect his eligibility for asylum, withholding of removal, or relief under the Convention Against Torture, he should be afforded an opportunity—as "someone who is Americanized or Westernized, has tattoos, is unable to speak Arabic, is a Muslim convert to Christianity, and has had children with an American"—to apply for one or more of those forms of humanitarian protection. 8 U.S.C. §§ 1158(a)(2)(D), 1229a(c)(7)(C)(ii); *see* Mot. for Release at 3–4; Hodges Decl. ¶ 18; Hodges Decl., Ex. A ("IJ Decision, Aug. 29, 2024"), at 2–3. On June 25, 2024, an immigration judge issued a stay of removal pending consideration of ███████████'s motion to reopen. Hodges Decl. ¶ 18; Mot. for Release at 2.

On August 29, 2024, the Detroit Immigration Court (Mark J. Jebson, Immigration Judge) denied ███████████'s motion to reopen, concluding that ███████████ failed to establish a change in country conditions that was sufficiently material to any non-precluded claims for humanitarian protection. IJ Decision, Aug. 29, 2024. Applying agency precedent, the immigration judge deemed ███████████ categorically precluded from asylum and withholding of removal under the immigration statute because of his federal conviction for violating 18 U.S.C. § 922(g)(1), an offense expressly listed as an "aggravated felony" under 8 U.S.C. § 1101(43)(a)(E)(ii).[2] Deferral of removal under the Convention Against Torture is not similarly subject to any statutory

---

[2] The statute precludes an individual from seeking asylum if "the Attorney General determines" that, "having been convicted . . . of a particularly serious crime," the individual "constitutes a danger to the community of the United States." 8 U.S.C. § 1158(b)(2)(A)(ii) (asylum); 8 U.S.C. § 1231(b)(3)(B)(ii) (withholding). A conviction for an offense constituting an "aggravated felony" is deemed to be a conviction of a "particularly serious crime" for asylum purposes, 8 U.S.C. § 1158(b)(2)(B)(i), and is deemed to be a conviction of a "particularly serious crime" for withholding purposes if the individual has been sentenced to an aggregate term of at least five years' imprisonment for offenses constituting "aggravated felonies," 8 U.S.C. § 1231(b)(3)(B). Although the statutory text appears to call for "separate consideration" and "separate finding[s]" of whether (1) a conviction is for a "particularly serious crime" and (2) the individual poses a danger to the community, *Ahmetovic v. INS*, 62 F.3d 48, 52–53 (2d Cir. 1995), the immigration judge, applying longstanding BIA precedent, treated these as a single inquiry, in which danger to the community is conclusively determined if a conviction is deemed to be for a "particularly serious crime." IJ Decision, Aug. 29, 2024, at 3–4. The Sixth Circuit has previously afforded *Chevron* deference to this interpretation. *Hamama v. INS*, 78 F.3d 233, 240 (6th Cir. 1996) (applying *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)); *see also Ahmetovic*, 62 F.3d at 53 (same); Fatma Marouf, *A Particularly Serious Exception to the Categorical Approach*, 97 B.U. L. Rev. 1427, 1461–63 (2017).

preclusion from eligibility. Nevertheless, the immigration judge concluded that ██████████ did not sufficiently establish a "reasonable likelihood" of a "particularized threat of torture."[3] *Id.* at 4. Upon the immigration judge's denial of the motion to reopen, the stay of removal automatically terminated. *See* Immig. Ct. Practice Manual § 8.3(f), https://www.justice.gov/eoir/reference-materials/ic/chapter-8/3.

Prior to the immigration judge's decision, on August 7, 2024, after conducting a custody review and applying the factors set forth in 8 C.F.R. § 241.4, ICE declined to release ██████████ from detention.[4] Mot. for Release, Tab E ("Decision to Continue Detention"). On August 27, 2024, also prior to the immigration judge's decision, ██████████ filed the present motion for release before the Special Master. In his motion, ██████████ indicates that he would likely seek to appeal any adverse ruling on his motion to reopen. Mot. for Release at 3–4. ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████

## DISCUSSION

Consistent with broader legal and constitutional principles, a basic "governing principle[]" under the Settlement Agreement is that ICE shall not detain any Class Member with a Final Order of Removal except (1) if the Class Member violates an Order of Supervision, or (2) to effectuate removal. Settlement Agreement § III.A; *see United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In

---

[3] The immigration judge recognized, as ICE also "acknowledge[d]," that there had been "significant change in Iraq country conditions since 2007, including the rise of ISIS," and that the record showed not only that ISIS continued to be an active insurgent force, but also that in the course of their armed conflict with ISIS, Iraqi security forces and their allied militias had "continue[d] to engage in human rights abuses throughout the country, including arbitrary arrest, unlawful detention, torture, and killing." IJ Decision, Aug. 29, 2024, at 3, 4–5. However, the immigration judge concluded that because the record indicated that Iraqi forces primarily target certain social groups for abuse, and ██████████ had not alleged his own membership in those specific groups, the change in country conditions documented in the record was not sufficiently material to any potentially valid claim under the requirement that he face a "particularized threat of torture" to obtain deferral of removal. *Id.*

[4] While no formal documentation appears in the record of any Category Review by ICE after the Agreement's Settlement Date of May 13, 2024, ICE represents that ██████████ is considered by ICE to be a Category 1 Individual within the meaning of the Agreement. Opp'n to Release at 2. ██████████ does not challenge the correctness of any classification as a Category 1 Individual while reserving the right to do so. Mot. for Release at 2–3.

our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). Under a series of circumstances set forth in the Settlement Agreement, ICE detention decisions are subject to oversight and review by the Special Master and the Court.

For purposes of this motion, two sets of provisions in the Settlement Agreement concerning the Special Master's review are relevant and applicable.[5] First, the Special Master is authorized to review good faith challenges by Category 1 Individuals who have been granted Stays of Removal, and whom ICE continues to detain after conducting a custody review, to determine if they should remain in detention under Section IV.B.7. Settlement Agreement § VIII.D.2.b.v (cross referencing § IV.B.7). Second, the Special Master also is authorized to review good faith challenges to determine if the Settlement Agreement's requirements under Section IV.B.6 for continued detention of Class Members in custody as of the Settlement Date have been satisfied.[6] *Id.* § VIII.D.2.b.iv (cross-referencing § IV.B.6) For Category 1 Individuals detained as of the Settlement Date, ICE is allowed an initial detention period of up to 90 days for travel document processing and removal efforts, after which ICE must conduct a custody review. Time already spent in detention prior to the Settlement Date counts towards these time limits. *Id.* § IV.B.6.b.

In either case, if ICE continues to detain a Class Member following a custody review, the Detained Class Member may request release by the Special Master. The standard of review and burdens of production and proof are also the same in either case. ICE must provide the Special Master with "evidentiary support" showing (1) that Iraq has indicated that it will issue a Travel Document, and separately (2) that the "Class Member's removal is significantly likely to occur in the reasonably foreseeable future." *Id.* § IV.B.4.d.4. If ICE does not demonstrate a "significantly likelihood of removal within the reasonably foreseeable future," then the Special Master "shall order the Class Member's Release." *Id.* § IV.B.4.d.6. Separately, the Settlement Agreement also provides that if ICE has not removed the Class Member within 180 days, the individual may seek an order for release directly from the Court, rather than from the Special Master. *Id.* § IV.B.4.e. Under that provision, continued detention only is permitted "if ICE clearly demonstrates a very

---

[5] ICE acknowledges that ███████████'s motion for release is properly before the Special Master. Opp'n to Release at 2.

[6] ███████████'s alternative request in his pro se motion for release under Section IV.B.4.d.ii.3, see Mot. for Release at 1 & n.1, is construed as a request for release under Sections VIII.D.2.b.iv and IV.B.6. In turn, Section IV.B.6 cross-references and incorporates Section IV.B.4. Settlement Agreement §§ IV.B.6, VIII.D.2.b.iv.

high likelihood of imminent removal, by demonstrating that Iraq has already provided a Travel Document and ICE has already arranged a removal itinerary for the very near future." *Id.*

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

The fundamental question ████████████████ is whether ICE has sufficiently "demonstrated a significant likelihood of removal within the reasonably foreseeable future," as required under Sections IV.B.4.d.ii.4 and IV.B.4.d.6 for detention to continue. The "significant likelihood of removal within the reasonably foreseeable future" standard under the Settlement Agreement derives from the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Court interpreted 8 U.S.C. § 1231(a)(6), which governs detention of noncitizens with final orders of removal beyond the 90-day statutory "removal period," in light of the Fifth Amendment's Due Process Clause. To avoid "serious constitutional concerns" that would arise from an interpretation of that provision authorizing indefinite detention, the Court construed § 1231(a)(6) only to authorize a noncitizen's detention for a period of time "reasonably necessary" to effectuate that individual's removal. *Zadvydas*, 533 U.S. at 689; *see also Hamama v. Adducci*, 349 F.Supp.3d 665, 686–89, 692 (E.D. Mich. 2018) (Dkt. 490), *vac'd and remanded on other grounds*, 946 F.3d 875 (6th Cir. 2020); *Hamama v. Adducci*, 285 F.Supp.3d 997, 1009–1010 (E.D. Mich. 2018) (Dkt. 191), *vac'd and remanded on other grounds*, 912 F.3d 869 (6th Cir. 2018). "[O]nce removal is no longer reasonably foreseeable," the Court held, "continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

Because "[r]easonableness" must be assessed "primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal," *Zadvydas* held that "if removal is not reasonably foreseeable," a reviewing court "should hold continued detention unreasonable and no longer authorized by statute." *Id.* To ensure uniformity and minimize the need for courts to make "difficult judgments," the Court recognized a six-month period of post-final order detention under § 1231(a)(6) as "presumptively reasonable." *Id.* at 701. Beyond that six-month period, a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* When ICE itself

reviews the custody of individuals detained beyond that "presumptively reasonable" six-month period, it is directed by a post-*Zadvydas* regulation to consider a long, nonexclusive list of factors to determine whether there is a "significant likelihood" of the individual's removal "within the reasonably foreseeable future."[7] 8 C.F.R. § 241.13(f). *Zadvydas* also emphasized that for detention "to remain reasonable as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701; *see also Hamama*, 349 F.Supp.3d at 692.

Under *Zadvydas*'s interpretation of § 1231(a)(6), the noncitizen bears the initial burden of providing "good reason to believe that there is no significantly likelihood of removal in the reasonably foreseeable future," after which "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Under the Settlement Agreement, however, the Class Member's initial burden is only to show that the triggering conditions for the Special Master's review have been satisfied—after which ICE must affirmatively "demonstrate[] a significant likelihood of removal within the reasonably foreseeable future" for detention to continue. Settlement Agreement § IV.B.4.d.4–6.

Broadly speaking, ICE faces substantial impediments when seeking to effectuate removal of noncitizens with final removal orders due to factors that are often beyond the agency's control, including in cases in which travel documents can be obtained. *See generally* Dep't of Homeland Sec., Off. of Inspector Gen., *ICE Faces Barriers in Timely Repatriation of Detained Aliens* 3–4 (Mar. 11, 2019) (Rep. No. OIG-19-28) (hereinafter DHS OIG, *ICE Faces Barriers in Timely Repatriation of Detained Aliens*), https://www.oig.dhs.gov/reports/2019/ice-faces-barriers-timely-repatriation-detained-aliens/oig-19-28-mar19. As the District Court has determined in the course of the *Hamama* litigation, these challenges have been especially pronounced when seeking to effectuate removal of individuals to Iraq, which ICE has characterized as "uncooperative,"

---

[7] The regulation directs agency officials to consider "all the facts of the case" when conducting these reviews, including, "but not limited to":

> the history of the alien's efforts to comply with the order of removal, the history of the [agency's] efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f).

"recalcitrant," and "at risk of noncompliance" at various points in recent years regarding its willingness to accept noncitizens who have been ordered removed. *Hamama*, 349 F.Supp.3d at 674–85, 692–96; *Hamama*, 285 F.Supp.3d at 1010–13; *see also* Cong. Res. Serv., *Immigration: "Recalcitrant" Countries and the Use of Visa Sanctions to Encourage Cooperation with Alien Removals* 1 (July 10, 2020), https://crsreports.congress.gov/product/pdf/IF/IF11025 (noting that as of mid-2020, ICE continued to consider Iraq to be a "recalcitrant" country); DHS OIG, *ICE Faces Barriers in Timely Repatriation of Detained Aliens*, at 30.

Against this backdrop regarding the practical barriers to effectuating removal generally, and to Iraq in particular, the evidentiary support for ICE's position that its obligations under Section IV.B.4.d.6 have been satisfied is somewhat thin, coming essentially from a single paragraph in the declaration supporting ICE's opposition to release. That declaration states that since the stay of removal that was in place when ████████████ filed his motion now has been terminated, ICE predicts—assuming "no legal or practical impediments to removal beyond ICE's control"—the ability to schedule removal within six weeks. Hodges Decl. ¶ 20. The stated basis for this prediction, without elaboration or additional evidentiary support, is experience with "previous removals." *Id*.

The extensive record developed over the course of the *Hamama* litigation casts doubt on whether this brief statement is sufficient to establish a "significant likelihood of removal within the reasonably foreseeable future" in ████████████'s case. As the Court has previously explained at length, the process of effectuating removals to Iraq has long been plagued by major impediments— including in cases in which individuals were not subject to stays of removal and cases in which travel documents had been issued. *Hamama*, 349 F.Supp.3d at 683–85, 695; *see also* DHS OIG, *ICE Faces Barriers in Timely Repatriation of Detained Aliens*. While the Court's prior decisions focused primarily on the "reasonable foreseeability" of removal on a classwide basis, the Court's findings are nevertheless relevant and applicable to the question of what evidence is required for ICE to demonstrate "significant likelihood of removal in the reasonably foreseeable future" in individual cases arising under the Settlement Agreement. Iraq's longstanding reluctance to accept forced repatriations—evidenced in part, for example, by the lack of a clear, written repatriation agreement between Iraq and the United States—creates significant uncertainty and complicates ICE's ability to effectuate removal in individual cases. *Hamama*, 349 F.Supp.3d at 681–85, 695; *see also Hamama*, 285 F.Supp.3d at 1011. Multiple Iraqi officials have made public statements opposing forced repatriations. *Hamama*, 349 F.Supp.3d at 681–84. Even when the United States has

appeared to reach understandings with Iraq in the short term, the process has remained fraught with complications over longer periods of time. *Id.* at 676–79, 680–81.

Any assessment of the likelihood of an individual's removal in the reasonably foreseeable future must be viewed within the broader context of these systemic challenges and the Court's extensive previous findings. While individual circumstances may vary, this larger context remains highly relevant when evaluating the likelihood and foreseeability of any particular individual's removal. *See also* 8 C.F.R. § 241.13(e) (directing agency officials to consider the "the history of the [agency's] efforts to remove aliens to the country in question" when assessing whether there is a "significant likelihood of removal in the reasonably foreseeable future" for any particular individual). The Court's finding that only a small fraction of eligible individuals were actually removed to Iraq, despite extensive government efforts, shows that these broader systemic challenges have had significant effects on individual cases. *Id.* at 677, 679, 692–94. Although some individuals have been removed to Iraq, the low overall success rate demonstrates significant hurdles in effectuating individual removals to Iraq.

In support of its position, ICE does not provide evidentiary support showing that these broader challenges have significantly diminished or been overcome in the years since the Court made its previous findings. Nor does ICE provide particularized or detailed evidence showing that the likelihood of ███████'s removal in the reasonably foreseeable future might be significantly greater than for other Class Members. While it asserts that ███████'s removal is "significantly likely in the reasonably foreseeable future" based on its experience with "previous removals," it does not give any details or data about those previous removals to help explain why ███████'s situation should be understood to be comparable.

By contrast, in support of his motion for release, ███████ draws attention to data indicating only 53 out of approximately 1,143 Class Members with final orders of removal as of June 2, 2024 had in fact been removed—representing only 4.64% of those Class Members. Mot. for Release and to Appear in Pro Per, Ex. A, Declaration of Lisa Gore (Aug. 6, 2024) ¶¶ 2-4 ("Gore Decl.") (Dkt. 731-1); Mot. for Release at 4.[8] That data also suggests that even when Travel Documents were obtained, detainees spent an average of approximately 84 additional days in detention before removal—with some waiting up to 150 days. Gore Decl. ¶ 6. A significant number

[8] While ███████'s pro se motion does not attach this declaration, the document to which the motion refers appears to be the same declaration recently submitted to the Court by another *Hamama* Class Member, and the discussion will proceed on that basis.

8

of these removals were "voluntary" repatriations—particularly in the early stages of the litigation, when prolonged detention may have incentivized individuals to acquiesce to removal, rather than to remain in detention. *Id.* ¶ 7. Although the Court's preliminary injunction has not been a legal barrier since April 2019, when the mandate issued in the Sixth Circuit's decision vacating that injunction, *Hamama v. Adducci*, 912 F.3d 689 (6th Cir. 2018), the data indicates that in the years since the Court's December 2018 decision, only 23 Class Members have been removed, and the record does not indicate how many of these repatriations might have been "voluntary." *Id.* ¶ 8.

These statistics suggest that systemic challenges have persisted in effectuating removals to Iraq in the time since the Court previously examined the state of effectuating removals to Iraq. While it is possible that the overall circumstances have materially changed in a manner not reflected in this data, or that the particular circumstances of any individual case might render the likelihood of removal greater for that individual, under the Settlement Agreement, it is ICE that bears the obligation of demonstrating a "significant likelihood of removal in the reasonably foreseeable future" for individuals it seeks to continue holding in detention, and mere possibility is not sufficient to establish a "significant likelihood." Especially in light of the well-documented difficulties in the process of effectuating removals to Iraq, ICE's cursory statements and generalized assurances fall well short of the evidentiary support required under the Settlement Agreement. Accordingly, ICE has not established a "significant likelihood of removal in the reasonably foreseeable future" sufficient to warrant ██████████'s continued detention under Section IV.B.4.d.ii.6.

The foregoing considerations are sufficient to conclude that ICE has failed to establish a "significant likelihood of removal within the reasonably foreseeable future," and on that basis to resolve the motion in ██████████'s favor. However, it is also relevant and worth noting that the prolonged period of ██████████'s detention to date—more than 270 days as of the date of this order, a period well exceeding the six-month period that *Zadvydas* found "presumptively reasonable"—is relevant to any assessment of "reasonableness" under Section IV.B.4.d of the Settlement Agreement. As *Zadvydas* makes clear, "what counts as the 'reasonably foreseeable future'... shrink[s]" as the "period of prior postremoval confinement grows." *Zadvydas*, 533 U.S. at 701; *see also Hamama*, 349 F.Supp.3d at 692.

Indeed, the Settlement Agreement itself embraces and operationalizes this same *Zadvydas*-derived principle. If a Class Member is detained for more than 180 days, the individual has the option of seeking an order for release directly from the Court, rather than from the Special

Master—upon which the individual must be released unless ICE "clearly demonstrates a very high likelihood of imminent removal, by demonstrating the that Iraq has already provided a Travel Document and ICE has already arranged a removal itinerary for the very near future." Settlement Agreement § IV.B.4.e. While this provision does not purport by its terms to apply its high standard directly to cases under Section IV.B.4.d, it would be anomalous for ICE to be held to different substantive standards, based on the same facts, in cases that concurrently fall within the purview of both the Special Master and the Court.

As such, for Class Members who may be eligible to seek an order of release from the Court under Section IV.B.4.e, the reasonableness analysis under Section IV.B.4.d must be closely guided by the same factors and considerations that underlie Section IV.B.4.e, if not the identical standard. Since, as discussed above, ICE has not provided sufficient evidence to demonstrate a "significant likelihood of removal in the reasonably foreseeable future" even without reference to the length of ██████████'s detention generally, see *Zadvydas*, 533 U.S. at 701, or the criteria and factors reflected in Section IV.B.4.e specifically, it necessarily follows that the evidence provided by ICE is also insufficient to "clearly demonstrate[] a very high likelihood of imminent removal" within the meaning of Section IV.B.4.e.[9]

## CONCLUSION

For the foregoing reasons, the Special Master grants ██████████'s motion for release from detention. Consistent with Section IV.B.4.d.8 of the Settlement Agreement, the order of release does not preclude detention for removal for up to thirty (30) days once an itinerary is finalized and the Class Member has returned to ICE custody.

Date: September 26, 2024

/s/Anil Kalhan
ANIL KALHAN
Special Master

---

[9] As ICE also acknowledges, no travel itinerary has been arranged for ██████████. Hodges Decl. ¶ 18; *see* Settlement Agreement § IV.B.4.e (requiring ICE to have "already arranged a removal itinerary for the very near future").

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served and filed, as required under the terms of the Settlement Agreement (Dkt. 717-2) and Amended Stipulated Order Appointing Special Master (Dkt. 730) in *Hamama v. Adducci*, No. 17-cv-11910 (E.D. Mich.), on September 26, 2024.


/s/Anil Kalhan
Special Master