UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA JAMIL HAMAMA, et al.,

        Petitioners,

v.

REBECCA ADDUCCI, et al.,

        Respondents.
_____/

Case No. 17-cv-11910
Hon. Mark A. Goldsmith
Mag. Judge David R. Grand

## ORDER OF THE SPECIAL MASTER

    ███████████, a *Hamama* Class Member who has been detained by ICE since July 12, 2025, has filed a pro se motion with the Special Master for release from immigration detention under the terms of the Settlement Agreement (Dkt. 717-2).[1] ICE opposes his release. For the reasons that follow, the motion is granted.

## BACKGROUND

    ███████ is a native and citizen of Iraq who was admitted to the United States as a refugee in 2002 and who adjusted status to become a lawful permanent resident in 2005. Declaration of Derek Long, Feb. 4, 2026 ("Long Decl."), at ¶¶ 7–8. In September 2013, ICE issued a notice to appear charging ███████ as removable, and in June 2014, he was ordered removed by an immigration judge. Long Decl. ¶ 9. While ICE represents that the removal order designates ███████'s removal to Lebanon or, in the alternative, to Iraq, Long Decl. ¶ 9, neither ICE nor ███████ has submitted the actual removal order itself as part of the record. Since the removal order remained in effect during the period between March 1, 2017, and June 24, 2017, ███████ is a member of the *Hamama* class. Agreement § I.A; Order Approving Settlement Agreement and Dismissing Case ¶ 2 (Dkt. 730).

    After being held in detention from November 2015 to April 2016 without ultimately being removed, ███████ was released on an order of supervision on April 29, 2016. Long Decl. ¶ 6. Many years later, on July 12, 2025, he was taken directly into ICE custody upon his completion of a state criminal sentence and release from state custody. Long Decl. ¶ 14; Mot. for Release at 3.

---

[1] This Order incorporates and uses terms and definitions set forth in the Settlement Agreement.

1

The present pro se motion for release from ▮▮▮▮▮▮ is dated December 30, 2025 and was received by the Special Master via the U.S. Postal Service on January 16, 2026. Mot. for Release (Jan. 16, 2026); Scheduling Order (Jan. 16, 2026). In the motion, ▮▮▮▮▮▮ states that after submitting multiple requests for information concerning when he might be deported and how long he might remain in detention, he was informed by a deportation officer on October 28, 2025 that ICE "has [been] trying to get [his] travel documents," but that there had been "no response from Iraq yet" and that ICE was "unaware of [his] removal date." Mot. for Release at 3; Ex. [B] to Mot. for Release (PDF at 17–18). ▮▮▮▮▮▮ further states that he is "willing to have an ankle monitor if released and report for removal." Mot. for Release at 5.

ICE states that its request for a Travel Document from the government of Iraq for ▮▮▮▮▮▮'s removal was delivered to the Iraq Embassy on December 30, 2025, and that a telephonic consular interview between ▮▮▮▮▮▮ and the Iraq Embassy occurred on January 16, 2026. Long Decl. ¶ 15–16. Without elaboration, ICE states that it believes there to be a significant likelihood of ▮▮▮▮▮▮'s removal in the reasonably foreseeable future "based upon productive negotiations between the U.S. and Iraqi government officials." Long Decl. ¶ 18. ICE also states that on February 2, 2026, it contacted the State Department in an effort to obtain its assistance in expediting the request for a Travel Document. Long Decl. ¶ 17.

ICE has not submitted evidentiary support indicating that a Travel Document has been issued or that an itinerary for ▮▮▮▮▮▮'s removal has already been arranged. As of the date on his motion for release was filed, ▮▮▮▮▮▮ had been detained by ICE for more than 180 days, and as of the date of this order he has been detained for more than 210 days.

## DISCUSSION

Consistent with broader legal and constitutional principles, a basic "governing principle[]" under the Settlement Agreement is that ICE shall not detain any Class Member with a Final Order of Removal except (1) if the Class Member violates an Order of Supervision, or (2) to effectuate removal. Agreement § III.A; *see United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). Under a series of circumstances set forth in the Settlement Agreement, ICE detention decisions are subject to oversight and review by the Special Master and the District Court.[2] In particular for purposes of this motion, the Special Master is authorized to review good faith challenges to determine whether ICE has satisfied the Settlement Agreement's requirements under Section

---

[2] ICE acknowledges that ▮▮▮▮▮▮ is a *Hamama* class member who has been in immigration detention since July 2025. *See* Opp'n to Release at 1, 2.

IV.B.4.d.ii for continued detention of Category 1 Individuals with final orders of removal who were not detained as of the Settlement Date of May 13, 2024.[3] Agreement § VIII.D.2.b.iii (cross-referencing § IV.B.4.d.ii).

**I. Process and Standard for Review Under Section IV.B.4.d**

For a Class Member with a final order of removal who has been detained by ICE directly upon release from a term of state criminal imprisonment, and who ICE has determined to be a Category 1 Individual, ICE is allowed an initial detention period of up to 90 days for Travel Document processing and removal efforts. Agreement §§ IV.B.1.a, IV.B.4.c. If ICE has not removed the Class Member within that initial 90-day period, it must conduct a custody review, upon which it must either release the Class Member or, if continued detention remains permissible, provide notice that the result of the custody review is to continue detention.[4] *Id.* § IV.B.4.d.

If the Class Member remains in detention after that initial 90-day period, the individual may file a motion for release with the Special Master. *Id.* § IV.B.4.d.ii.3. ICE bears the burden of providing the Special Master with "evidentiary support" showing (1) that "Iraq has indicated that it will issue a Travel Document," and separately (2) that the "Class Member's removal is significantly likely to occur in the reasonably foreseeable future." *Id.* § IV.B.4.d.ii.4. If ICE does not demonstrate a "significant likelihood of removal within the reasonably foreseeable future," then the Special Master "shall order the Class Member's Release." *Id.* § IV.B.4.d.ii.6. The Settlement Agreement also provides that if ICE has not removed the Class Member within 180 days, continued detention only is permitted "if ICE clearly demonstrates a very high likelihood of imminent removal, by demonstrating that Iraq has already provided a Travel Document and ICE has already arranged a removal itinerary for the very near future." *Id.* § IV.B.4.e; Order of the Special Master at 9–10 (Sep. 26, 2024) (Dkts. 735, 736). Under those circumstances, the Class Member has the option of seeking an order for release directly from the Court. Agreement § IV.B.4.e.

The "significant likelihood of removal within the reasonably foreseeable future" standard under the Settlement Agreement derives from the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Court interpreted 8 U.S.C. § 1231(a)(6), which governs

---

[3] While no documentation appears in the record of any formal determination by ICE that ▓▓▓▓▓▓ is a Category 1 Individual, his motion does not challenge the correctness of any such classification, while reserving the right to do so. Mot. for Release at 3 & n.2. The question of whether ▓▓▓▓▓▓ has been properly categorized is therefore not before the Special Master.

[4] No documentation appears in the record of either any formal custody review or notice of its outcome.

3

detention of noncitizens with final orders of removal beyond the 90-day statutory "removal period," in light of the Fifth Amendment's Due Process Clause. To avoid "serious constitutional concerns" that would arise from an interpretation of that provision authorizing indefinite detention, the Court construed § 1231(a)(6) only to authorize a noncitizen's detention for a period of time "reasonably necessary" to effectuate that individual's removal. *Zadvydas*, 533 U.S. at 689; *see also Hamama v. Adducci*, 349 F.Supp.3d 665, 686–89, 692 (E.D. Mich. 2018) (Dkt. 490); *Hamama v. Adducci*, 285 F.Supp.3d 997, 1009–1010 (E.D. Mich. 2018) (Dkt. 191), *vac'd and remanded on other grounds*, 912 F.3d 869 (6th Cir. 2018). "[O]nce removal is no longer reasonably foreseeable," the Court held, "continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

Because "[r]easonableness" must be assessed "primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal," *Zadvydas* held that "if removal is not reasonably foreseeable," a reviewing court "should hold continued detention unreasonable and no longer authorized by statute." *Id.* To ensure uniformity and minimize the need for courts to make "difficult judgments," the Court recognized a six-month period of post-final order detention under § 1231(a)(6) as "presumptively reasonable." *Id.* at 701. Beyond that six-month period, a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

When ICE itself reviews the custody of individuals detained beyond that "presumptively reasonable" period, it is directed by a post-*Zadvydas* regulation to consider a nonexclusive list of factors to determine whether there is a "significant likelihood" of the individual's removal "within the reasonably foreseeable future."[5] 8 C.F.R. § 241.13(f). *Zadvydas* also emphasized that for detention "to remain reasonable as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701; *see also Hamama*, 349 F.Supp.3d at 692. Consistent with these context-sensitive criteria, the Settlement Agreement defines the "reasonably foreseeable future" for purposes of the Special

---

[5] The regulation directs agency officials to consider "all the facts of the case" when conducting these reviews, including, "but not limited to":

> the history of the alien's efforts to comply with the order of removal, the history of the [agency's] efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f).

Master's review under § IV.B.4.d to be "no longer than the next ninety (90) days," but also provides that it "could, depending on the circumstances, be shorter." Agreement § IV.B.4.d.ii.6.

Under *Zadvydas*'s interpretation of § 1231(a)(6), the noncitizen bears the initial burden of providing "good reason to believe that there is no significantly likelihood of removal in the reasonably foreseeable future," after which "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. However, under the Settlement Agreement the Class Member's initial burden is only to show that the triggering conditions for the Special Master's review have been satisfied—at which point ICE must affirmatively "demonstrate[] a significant likelihood of removal within the reasonably foreseeable future" for detention to continue. Agreement §§ IV.B.4.d.ii.4, IV.B.4.d.ii.6. If ICE has not removed the Class Member within 180 days, that standard obliges ICE to "clearly demonstrate[] a very high of imminent removal, by demonstrating that Iraq has already provided a Travel Document and ICE has already arranged a removal itinerary for the very near future." *Id.* § IV.B.4.e; Order of the Special Master at 9–10 (Sep. 26, 2024) (Dkts. 735, 736).

**II. Application to the Motion for Release**

ICE argues that ▮▮▮▮▮▮'s motion should be denied based on evidence indicating that (1) Iraq "will issue" a Travel Document and (2) "once it does, ICE can successfully remove him to Iraq." Opp'n to Release at 3. However, the evidentiary support that ICE has submitted falls well short of what the Settlement Agreement requires.

*First*, while ICE indicates in generalized terms that it has submitted a request for a Travel Document, that a consular interview with ▮▮▮▮▮▮ has occurred, and that "productive negotiations" have taken place between U.S. and Iraqi officials, *id.* at 3–4, these brief and cursory statements lack the specificity, detail, or support necessary to provide an adequate "indicat[ion]" that "Iraq . . . will issue a Travel Document," either at all or with the requisite dispatch.[6] Agreement § IV.B.d.ii.4; *see generally* Order of the Special Master at 5–8 (Mar. 4, 2025) (Dkts. 738, 739). Indeed, the record indicates that on the eve of submitting its opposition to the instant motion, ICE deemed it necessary to enlist the State Department's assistance in expediting its request for a Travel Document—which raises at least some question as to whether Iraq is willing and able to

---

[6] For example, ICE's submission provides no specific information about the typical processing times for Travel Document requests, either generally for Iraq or in circumstances comparable to this case; about whether processing times have been consistent or subject to variation over time; or about factors that can affect processing times which might be present here. Nor does ICE's submission indicate, for example, whether Iraqi officials provided any estimate, either on their own or in response to ICE or State Department inquiries, of how long it would take to issue a Travel Document for ▮▮▮▮▮▮, and if so, the basis for deeming any such estimate reliable.

positively respond to ICE's request within a timeframe that would enable removal to be significantly likely within the reasonably foreseeable future. *See* Order of the Special Master at 6 (Mar. 4, 2025) (Dkts. 738, 739).

If the issuance of Travel Documents were a simple, ministerial process that routinely takes place without any problems or delays, further details might be less important in assessing the sufficiency of evidence submitted to suggest an adequate indication that Iraq will issue a Travel Document. However, the complications involved in obtaining travel documents have been identified and documented as one of the predominant external factors contributing to delays in removal. *See* Dep't of Homeland Sec., Off. of Inspector Gen., *ICE Faces Barriers in Timely Repatriation of Detained Aliens* 3–4 (Mar. 11, 2019) (Rep. No. OIG-19-28) (hereinafter DHS OIG, *ICE Faces Barriers in Timely Repatriation of Detained Aliens*), https://www.oig.dhs.gov/reports/2019/ice-faces-barriers-timelyrepatriation-detained-aliens/oig-19-28-mar19. With respect to Iraq specifically, the District Court's findings in the *Hamama* litigation make clear that Iraqi officials, both officially and in practice, have long resisted involuntary repatriations of individuals who the United States and other governments seek to return, including in moments in which U.S. officials have signaled optimism about Iraqi cooperation. *Hamama*, 349 F.Supp.3d at 693–96; *see also* Order of the Special Master at 6–7 (Sep. 26, 2024) (Dkts. 735, 736). The Court found that diplomatic efforts to obtain greater, more consistent cooperation from the government of Iraq have been highly uneven in their success over a prolonged period of many years. *Hamama*, 349 F.Supp.3d at 674–85. Indeed, at various points in recent years, ICE itself has characterized Iraq as "uncooperative," "recalcitrant," and "at risk of noncompliance" in its willingness to accept noncitizens who have been ordered removed. Cong. Res. Serv., *Immigration: "Recalcitrant" Countries and the Use of Visa Sanctions to Encourage Cooperation with Alien Removals* 1 (July 10, 2020), https://crsreports.congress.gov/product/pdf/IF/IF11025; DHS OIG, *ICE Faces Barriers in Timely Repatriation of Detained Aliens*, at 30.

These findings by the District Court establish a factual baseline which necessarily informs the evidentiary support required to demonstrate an adequate indication under Section IV.B.4.d.4 of Iraq's willingness and ability to issue a Travel Document. *See* Order of the Special Master at 7–8 (Mar. 4, 2025) (Dkts. 738, 739); Order of the Special Master at 7–9 (Sep. 26, 2024) (Dkts. 735, 736). While ICE argues that the history of removals to Iraq in previous years "is not instructive of ICE's ability to remove Iraqi nationals to Iraq currently," Opp'n to Release at 4, ICE affirmatively bears the evidentiary burden under the Settlement Agreement, and the Court's findings about the longstanding resistance of Iraqi officials to forced repatriation of Iraqi citizens necessarily inform

6

whether that burden has been satisfied. *See also* 8 C.F.R. § 241.13(f) (expressly directing agency officials to consider "the history of the [agency's] efforts to remove aliens to the country in question" when assessing whether there is a "significant likelihood of removal in the reasonably foreseeable future" for any particular individual). In this context, ICE's brief and cursory statements in support of its opposition are insufficient to satisfy its evidentiary burden. *See* Order of the Special Master at 7–8 (Mar. 4, 2025) (Dkts. 738, 739); *Hamama*, 349 F.Supp.3d at 693–94, 695–96; *Hamama*, 285 F.Supp.3d at 1010–11.

*Second*, the evidentiary support submitted by ICE also falls well short of satisfying its burden of establishing a significant likelihood of ███████'s removal in the reasonably foreseeable future. As they do with respect to Iraq's willingness and ability to issue Travel Documents, the Court's findings about the longstanding obstacles to effectuating removals to Iraq—including in cases in which individuals were not subject to stays of removal, and in which Travel Documents had been issued, *Hamama*, 349 F.Supp.3d at 695–96—establish a factual baseline that is highly relevant when assessing the evidentiary showing required for ICE to demonstrate a "significant likelihood of removal within the reasonably foreseeable future."

In seeking to satisfy that burden, the only affirmative evidentiary support that ICE provides appears in one paragraph of an ICE official's statement representing (1) that there have been "productive negotiations" between the U.S. and Iraqi government officials, (2) that "ICE has the means to remove Iraqi nationals and has done so successfully in 2024 and 2025," and (3) that it plans to "work expeditiously to remove" ███████ whenever removal eventually "is authorized." Long Decl. ¶ 18. This evidentiary support is even less substantial than the thin evidentiary support that was determined to be inadequate in previous ICE oppositions to motions for release before the Special Master. See Order of the Special Master at 8–11 (Mar. 4, 2025) (Dkts. 738, 739); Order of the Special Master at 5–9 (Sep. 26, 2024) (Dkts. 735, 736).

As with those previous cases, the extensive record developed over the course of the *Hamama* litigation casts doubt on whether such brief, generalized statements are sufficient to establish a "significant likelihood of removal within the reasonably foreseeable future." While the Court's prior decisions focused primarily on the "reasonable foreseeability" of removal on a classwide basis, its findings are also relevant when assessing the evidence required for ICE to demonstrate a "significant likelihood of removal in the reasonably foreseeable future" in individual cases arising under the Settlement Agreement. The Court's findings establish a factual baseline demonstrating that Iraq's longstanding official and unofficial resistance to accepting forced repatriations creates significant uncertainty and complicates ICE's ability to effectuate removal in individual cases. *Id.* at 681–85, 695; *see also Hamama*, 285 F.Supp.3d at 1011.

The likelihood of any particular individual's removal in the reasonably foreseeable future must be assessed within the broader context of the Court's previous findings about these systemic challenges. While individual circumstances may vary, this larger context necessarily remains highly relevant when evaluating the likelihood and reasonable foreseeability of any particular individual's removal. *See also* 8 C.F.R. § 241.13(f) (directing agency officials to consider the "the history of the [agency's] efforts to remove aliens to the country in question" when assessing whether there is a "significant likelihood of removal in the reasonably foreseeable future" for a particular individual). The Court's finding that only a small fraction of eligible individuals were actually removed to Iraq, despite extensive government efforts, shows that broader systemic challenges have significant effects on individual cases, even when it remains possible for some individuals to be removed. *Hamama*, 349 F.Supp.3d at 677, 679, 692–94.

In its opposition to release, ICE argues that the history of removals to Iraq reflected in the Court's findings (and in the data submitted by ▓▓▓▓▓ in support of his motion) "is no longer pertinent." Opp'n to Release at 4. However, while it is possible that the overall circumstances have materially changed, or that individual, particularized circumstances might render the likelihood of removal greater for a specific individual, mere possibility is not sufficient to satisfy ICE's affirmative evidentiary burden under the Settlement Agreement of demonstrating a "significant likelihood of removal in the reasonably foreseeable future."

The only evidentiary support that ICE affirmatively offers does not address whether the systemic barriers to removal previously identified by the Court have meaningfully diminished or been overcome. *See* Order of the Special Master at 9–10 (Mar. 4, 2025) (Dkts. 738, 739). While ICE states that it has "the means to remove Iraqi nationals and has done so successfully in 2024 and 2025," it does not provide details about the number of individuals removed to Iraq during that period, the circumstances of those removals, or other information that might help to explain why those removals are relevant when assessing the likelihood of removal in this case specifically, especially given the baseline established by the Court's extensive factual findings in the *Hamama* litigation. *See id.* at 10–11 & n.13. To be sure, the circumstances of an individual case might, depending on the specifics, make removal of that individual significantly likely even if systemic barriers have persisted. However, ICE's submission does not explain why its previous removals in 2024 and 2025 should be viewed as probative of the likelihood of ▓▓▓▓▓'s own removal in the reasonably foreseeable future, rather than merely reflective of ICE's ability to effectuate some number of removals in particular cases under unspecified circumstances that might or might not be sufficiently comparable. *See id.*

8

The foregoing considerations are sufficient to conclude that ICE has failed to establish a "significant likelihood of removal within the reasonably foreseeable future," and on that basis to resolve the motion in ▮▮▮▮▮'s favor. However, it is also worth noting that the prolonged period of ▮▮▮▮▮'s detention to date—more than 210 days as of the date of this order, a period exceeding the six-month period that *Zadvydas* found "presumptively reasonable"—is relevant to any assessment of "reasonableness" under Section IV.B.4.d of the Settlement Agreement. As *Zadvydas* makes clear, "what counts as the 'reasonably foreseeable future' . . . shrink[s]" as the "period of prior postremoval confinement grows." *Zadvydas*, 533 U.S. at 701; *see also Hamama*, 349 F.Supp.3d at 692.

Indeed, the Settlement Agreement itself embraces and operationalizes this same *Zadvydas*-derived principle. If a Class Member is detained for more than 180 days, the individual has the option of seeking an order for release directly from the Court, rather than from the Special Master—upon which the individual must be released unless ICE "clearly demonstrates a very high likelihood of imminent removal, by demonstrating the that Iraq has already provided a Travel Document and ICE has already arranged a removal itinerary for the very near future." Agreement § IV.B.4.e.

ICE argues that it "is not yet required to show 'a very high likelihood of imminent removal,' by providing a Travel Document and itinerary" under Section IV.B.4.e of the Settlement Agreement. Opp'n to Release at 3. While this provision does not purport by its terms to apply its high standard directly to cases under Section IV.B.4.d, it would be anomalous for ICE to be held arbitrarily to different substantive standards, based on the same facts, in cases that concurrently fall within the purview of both the Special Master and the Court—especially since reasonableness under Section IV.B.4.d itself requires a more stringent standard "as the period of prior postremoval confinement grows." *Zadvydas*, 533 U.S. at 701; *see Hamama*, 349 F.Supp.3d at 692. As such, for Class Members who may be eligible to seek an order of release from the Court under Section IV.B.4.e, the reasonableness analysis under Section IV.B.4.d must be closely guided by the same factors and considerations that underlie Section IV.B.4.e, if not the identical standard. *See* Order of the Special Master at 9–10 (Sep. 26, 2004) (Dkts. 735, 736).

In any event, as discussed above, ICE has not provided sufficient evidence to demonstrate a "significant likelihood of removal in the reasonably foreseeable future" without regard to either the criteria and factors specifically embodied in Section IV.B.4.e or, as instructed by *Zadvydas*, 533 U.S. at 701, the length of ▮▮▮▮▮'s detention generally. Accordingly, it necessarily follows that the evidentiary support provided by ICE is insufficient when taking the prolonged length of

detention for more than 180 days into account, whether under Section IV.B.4.e directly or under the reasonability analysis required by Section IV.B.4.d.ii.6.

## CONCLUSION

For the foregoing reasons, the Special Master grants the motion for release from detention. Consistent with Section IV.B.4.d.8 of the Settlement Agreement, the order of release does not preclude detention for removal for up to thirty (30) days "once an itinerary is finalized and the Class Member has returned to ICE custody."


Date: February 9, 2025                /s/Anil Kalhan
                                      ANIL KALHAN
                                      Special Master

## CERTIFICATE OF SERVICE

  The undersigned certifies that the foregoing document was served and filed, as required under the terms of the Settlement Agreement (Dkt. 717-2) and Second Amended Stipulated Order Appointing Special Master (Dkt. 737) in *Hamama v. Adducci*, No. 17-cv-11910 (E.D. Mich.), on February 9, 2025.

                /s/Anil Kalhan
                Special Master