UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA JAMIL HAMAMA, et al.,

        Petitioners,

v.

REBECCA ADDUCCI, et al.,

        Respondents.

_____/

Case No. 17-cv-11910
Hon. Mark A. Goldsmith
Mag. Judge David R. Grand

# ORDER OF THE SPECIAL MASTER CONDITIONALLY HOLDING MOTION FOR RELEASE IN ABEYANCE

██████, a *Hamama* Class Member who is currently detained by ICE, has filed a pro se motion for release from immigration detention under the terms of the Settlement Agreement (Dkt. 717-2).[1] Mot. for Release ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ICE opposes his release.

On ██████████, ██████ requested expedited consideration of his motion. Upon giving the motion expedited consideration, as he has requested, final disposition of the motion is deferred, and for the reasons that follow, the motion is held in abeyance subject to certain conditions that are specified below.

## BACKGROUND

██████ is a citizen and native of Iraq who was admitted to the United States as a refugee in ██████████████ and who adjusted to lawful permanent resident status the following year. Declaration of Thomas J. Koval, ██████ ("Koval Decl."), at ¶¶ 4–5. In January 2010, ██████ was ordered removed to Iraq by an immigration judge. Koval Decl. ¶¶ 7–8. He was taken into custody for removal purposes in July 2017, but an immigration judge granted a motion to reopen and stayed his removal. Koval Decl. ¶ 11. In March 2018, his application for relief from

---

[1] This Order incorporates and uses terms and definitions set forth in the Settlement Agreement.

1

removal was denied by an immigration judge, and his subsequent appeal to the Board of Immigration Appeals and Petition for Review to the U.S. Court of Appeals for the Sixth Circuit were also both denied. Opp'n to Release at 2; Koval Decl. ¶¶ 12–14. A subsequent request for a stay of removal was denied by the BIA on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Since the removal order remained in effect during the period between March 1, 2017, and June 24, 2017, ▮▮▮▮▮▮ is a member of the *Hamama* class. Agreement § I.A; Order Approving Settlement Agreement and Dismissing Case ¶ 2 (Dkt. 730).

ICE released ▮▮▮▮▮ on supervision in December 2018, as required by the District Court. Koval Decl. ¶ 14; *see Hamama v. Adducci*, 349 F.Supp.3d 665 (E.D. Mich. 2018) (Dkt. 490). On March 10, 2025, ICE provided ▮▮▮▮▮ with notice (as required by Section IV.B.1 of the Settlement Agreement) that it would begin finalizing Travel Documents and a travel itinerary for his removal to Iraq. ICE, Letter of 90-Day Notice (Mar. 10, 2025) (attached as Ex. B to Mot. for Release). According to ▮▮▮▮▮, he was taken into custody "during a supervision check in" in Detroit on July 8, 2025 and "ha[s] been detained since." Mot. for Release at 1. However, ICE states that when ▮▮▮▮▮ reported to ICE as required on July 7, 2025, he was informed that his removal was scheduled for the following day, July 8, 2025, but that he was not in custody at the time and did not report to the airport for removal on the scheduled date. Koval Decl. ¶ 17; Opp'n to Release at 2. His release was formally revoked on July 8, 2025. Notice of Revocation of Release (July 8, 2025) (attached as Ex. E. to Mot. for Release). ICE states that on two subsequent occasions ▮▮▮▮▮ did not cooperate when ICE scheduled flights for his removal. Koval Decl. ¶¶ 19–20. He was served formal notice of failure to comply on August 27, 2025, while in immigration detention. Notice of Failure to Comply Pursuant to 8 CFR 241.4(g) at 2 (Aug. 27, 2025) (attached as Ex. G to Mot. for Release) ("Notice of Failure to Comply, Aug. 27, 2025").

While ▮▮▮▮▮'s motion does not dispute ICE's statements that he declined to board those scheduled deportation flights, he states that his noncooperation stemmed from his "fear[] for [his] life because of [his] religion." Movant Annotation ▮▮▮▮▮▮ (handwritten on Notice of Failure to Comply, Aug. 27, 2025). In his reply to ICE's opposition to release, ▮▮▮▮▮ reiterates that he "fear[s] for [his] life" if removed to Iraq on two bases. Reply in Response to Opp'n to Release at 2 ▮▮▮▮▮▮▮. First, ▮▮▮▮▮ maintains that even if he is permitted to enter Iraq upon his removal, a recent family court ruling in Iraq ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ has concluded that he is not an Iraqi citizen—and that as a result, he will not be permitted to obtain an Iraqi ID document and will "be considered a stateless person who is denied full entry into Iraqi society." Reply in Response to Opp'n to Release at 2; Evidence of Iraqi Court Judgment ▮▮▮▮▮▮▮ (attached as Ex. A to Reply in Response to Opp'n to Release) ("Evidence

2

of Iraqi Court Judgment ▬▬▬"). Second, ▬▬▬ states that he fears harm on the basis of religion. Reply in Response to Opp'n to Release at 2. He further states that "[he] cannot speak or read Arabic," which he fears will make him vulnerable to "extortion, arbitrary arrests, detainment, physical abuse, [or] torture," and that he has not lived in Iraq since he was seven years old and does not have any family in Iraq. Reply in Response to Opp'n to Release at 2–3.

In its opposition to release, ICE has submitted a copy of a Travel Document for ▬▬▬'s removal that was issued on ▬▬▬. Koval Decl. ¶ 21; Iraqi Travel Document ▬▬▬ (attached as Ex. A to Koval Decl.). ICE also states that it has scheduled a commercial flight for ▬▬▬'s removal ▬▬▬ and supports that representation with an itinerary for that flight. Koval Decl. ¶¶ 21–23; ▬▬▬ Travel Itinerary ▬▬▬ (attached as Ex. B. to Koval Decl.). In reply, ▬▬▬ argues that the documentation he has newly submitted, concerning the ostensible ▬▬▬ Iraqi court judgment on his status as an Iraqi citizen and national, calls into question the validity and effectiveness of any Travel Document issued before that date or otherwise casts doubt on the likelihood of Iraq's formal acceptance of ▬▬▬'s repatriation, upon his arrival, as a citizen of Iraq. Reply in Response to Opp'n to Release at 2; Evidence of Iraqi Court Judgment ▬▬▬.

## DISCUSSION

Consistent with broader legal and constitutional principles, a basic "governing principle[]" under the Settlement Agreement is that ICE shall not detain any Class Member with a Final Order of Removal except (1) if the Class Member violates an Order of Supervision, or (2) to effectuate removal. Agreement § III.A; *see United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). Under a series of circumstances set forth in the Settlement Agreement, ICE detention decisions are subject to oversight and review by the Special Master and the District Court.[2] In particular for purposes of this motion, which the District Court ordered (upon stipulation of the parties) to be referred to the Special Master as it was originally filed, the Special Master is authorized to determine whether ICE has satisfied the Settlement Agreement's requirements for continued detention under Section IV.B.4.e. Agreement §§ IV.B.4.e, VIII.D.2.b.vi.

---

[2] ICE acknowledges that ▬▬▬ is a *Hamama* class member who is currently in immigration detention. *See* Opp'n to Release at 1.

3

**I. Process and Standard for Review Under Section IV.B.4.e**

For a Class Member with a final order of removal who has been detained by ICE directly upon release from a term of state criminal imprisonment, and who ICE has determined to be a Category 1 Individual, ICE is allowed an initial detention period of up to 90 days for Travel Document processing and removal efforts.[3] *Id.* §§ IV.B.1.a, IV.B.4.c. If ICE has not removed the Class Member within that initial 90-day period, it must conduct a custody review, upon which it must either release the Class Member or, if continued detention remains permissible, provide notice that the result of the custody review is to continue detention.[4] *Id.* § IV.B.4.d.

If the Class Member remains in detention after that initial 90-day period, the individual may file a motion for release with the Special Master. *Id.* § IV.B.4.d.ii.3. ICE bears the burden of providing the Special Master with "evidentiary support" showing (1) that "Iraq has indicated that it will issue a Travel Document," and separately (2) that the "Class Member's removal is significantly likely to occur in the reasonably foreseeable future." *Id.* § IV.B.4.d.ii.4. If ICE does not demonstrate a "significant likelihood of removal within the reasonably foreseeable future," then the Special Master "shall order the Class Member's Release." *Id.* § IV.B.4.d.ii.6. The Settlement Agreement also provides that if ICE has not removed the Class Member within 180 days, continued detention only is permitted "if ICE clearly demonstrates a very high likelihood of imminent removal, by demonstrating that Iraq has already provided a Travel Document and ICE has already arranged a removal itinerary for the very near future."[5] *Id.* § IV.B.4.e; Order of the Special Master at 9–10 (Sep. 26, 2024) (Dkts. 735, 736).

The "significant likelihood of removal within the reasonably foreseeable future" standard under the Settlement Agreement derives from the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Court interpreted 8 U.S.C. § 1231(a)(6), which governs detention of noncitizens with final orders of removal beyond the 90-day statutory "removal period," in light of the Fifth Amendment's Due Process Clause. To avoid "serious constitutional concerns" that would arise from an interpretation of that provision authorizing indefinite

---

[3] No documentation appears in the record of any formal determination by ICE that ▮▮▮▮ is a Category 1 Individual. While ▮▮▮▮'s motion asserts in passing on information and belief that he is a Category 2 individual, the motion does not squarely challenge the correctness of any such classification in his submission. Mot. for Release at 2. The question of whether ▮▮▮▮ has been properly categorized is therefore not before the Special Master.

[4] No documentation appears in the record of either any formal custody review or notice of its outcome.

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

detention, the Court construed § 1231(a)(6) only to authorize a noncitizen's detention for a period of time "reasonably necessary" to effectuate that individual's removal. *Zadvydas*, 533 U.S. at 689; *see also Hamama v. Adducci*, 349 F.Supp.3d 665, 686–89, 692 (E.D. Mich. 2018) (Dkt. 490); *Hamama v. Adducci*, 285 F.Supp.3d 997, 1009–1010 (E.D. Mich. 2018) (Dkt. 191), *vac'd and remanded on other grounds*, 912 F.3d 869 (6th Cir. 2018). "[O]nce removal is no longer reasonably foreseeable," the Court held, "continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

Because "[r]easonableness" must be assessed "primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal," *Zadvydas* held that "if removal is not reasonably foreseeable," a reviewing court "should hold continued detention unreasonable and no longer authorized by statute." *Id.* To ensure uniformity and minimize the need for courts to make "difficult judgments," the Court recognized a six-month period of post-final order detention under § 1231(a)(6) as "presumptively reasonable." *Id.* at 701. Beyond that six-month period, a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

When ICE itself reviews the custody of individuals detained beyond that "presumptively reasonable" period, it is directed by a post-*Zadvydas* regulation to consider a nonexclusive list of factors to determine whether there is a "significant likelihood" of the individual's removal "within the reasonably foreseeable future."[6] 8 C.F.R. § 241.13(f). *Zadvydas* also emphasized that for detention "to remain reasonable as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701; *see also Hamama*, 349 F.Supp.3d at 692. Consistent with these context-sensitive criteria, the Settlement Agreement defines the "reasonably foreseeable future" for purposes of the Special Master's review under § IV.B.4.d to be "no longer than the next ninety (90) days," but also provides that it "could, depending on the circumstances, be shorter." Agreement § IV.B.4.d.ii.6.

---

[6] The regulation directs agency officials to consider "all the facts of the case" when conducting these reviews, including, "but not limited to":

> the history of the alien's efforts to comply with the order of removal, the history of the [agency's] efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f).

5

Under *Zadvydas*'s interpretation of § 1231(a)(6), the noncitizen bears the initial burden of providing "good reason to believe that there is no significantly likelihood of removal in the reasonably foreseeable future," after which "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. However, under the Settlement Agreement the Class Member's initial burden is only to show that the triggering conditions for the Special Master's review have been satisfied—at which point ICE must affirmatively "demonstrate[] a significant likelihood of removal within the reasonably foreseeable future" for detention to continue. Agreement §§ IV.B.4.d.ii.4, IV.B.4.d.ii.6. If ICE has not removed the Class Member within 180 days, that standard obliges ICE to "clearly demonstrate[] a very high of imminent removal, by demonstrating that Iraq has already provided a Travel Document and ICE has already arranged a removal itinerary for the very near future." *Id.* § IV.B.4.e; Order of the Special Master at 9–10 (Feb. 9, 2026) (Dkts. 750, 751); Order of the Special Master at 9–10 (Sep. 26, 2024) (Dkts. 735, 736).

**II. Application to the Motion for Release**

A. *Evidence "Demonstrating that Iraq Has Already Provided a Travel Document" and that "ICE Has Already Arranged a Removal Itinerary for the Very Near Future"*

With respect to ICE's obligation under Section IV.B.4.e to "demonstrate[] that Iraq has already provided a Travel Document" for ▮▮▮▮▮'s removal, ICE submits a declaration from an official stating that ICE received a Travel Document for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, along with a photocopy of the document appearing to indicate that it is valid for six months. Koval Decl. ¶¶ 21–22; Iraqi Travel Document ▮▮▮▮▮▮▮. This evidentiary support is sufficient to establish that a Travel Document was, in fact, already issued for ▮▮▮▮▮▮▮▮▮▮▮▮. ICE also states that it has scheduled a commercial flight for ▮▮▮▮▮'s removal ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and it supports that representation with a documented itinerary for that flight. Koval Decl. ¶¶ 21–23; ▮▮▮▮▮ Travel Itinerary. This evidentiary support is sufficient to establish that ICE has already arranged a removal itinerary for the very near future.

B. *Effect and Significance of the Ostensible Iraqi Court Judgment*

In his reply, ▮▮▮▮▮ emphasizes and provides documentation of what he describes as an Iraqi family court judgment ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Reply in Response to Opp'n to Release at 2; Evidence of Iraqi Court Judgment ▮▮▮▮▮▮. According to ▮▮▮▮▮, that purported court judgment establishes that he is "not an Iraqi citizen," that "the Iraqi government does not have

6

proof of [his] Iraqi citizenship," and that he is "not entitled to Iraqi nationality." Reply in Response to Opp'n to Release at 2. Because of this judicial determination, ▮▮▮▮ argues, he is at risk of not being allowed to enter Iraq upon his removal, but even if he is allowed to enter, he asserts a fear of persecution owing to the risk of being denied an Iraqi ID, as someone lacking Iraqi citizenship, and being "considered a stateless person who is denied full entry into Iraqi society."[7]

If the evidence submitted is fully credited, the concerns that might potentially arise upon ▮▮▮▮'s removal are not insubstantial. As the country conditions declaration submitted with the motion states, the inability to obtain an official Iraqi ID might lead to the denial of a number of fundamental rights ordinarily afforded to Iraqi citizens, including freedom of movement internally within Iraq. Declaration Concerning Iraq Country Conditions ¶¶ 91–98 (citing and discussing reports from sources including the U.K. Home Office, the Norwegian Refugee Council, the International Rescue Committee, and Human Rights Watch) (attached as Ex. B to Reply in Response to Release). However, to the extent that ▮▮▮▮'s reply asserts a substantive claim for humanitarian protection from removal in some form, the Settlement Agreement does not provide jurisdiction for the Special Master to adjudicate any such fear-based claim. If ▮▮▮▮ wishes to assert such a claim, he would need to do so in another forum that might legally be available.

As such, in the context of the current motion, the evidence that ▮▮▮▮ has submitted concerning the ostensible Iraqi court judgment is relevant only to the more limited extent that it renders ICE unable to successfully carry its evidentiary burden of "clearly demonstrat[ing] a very high likelihood of imminent removal" under Section IV.B.4.e of the Settlement Agreement—for example, by calling into question the validity and effectiveness of any Travel Document issued for ▮▮▮▮ or otherwise by casting doubt on the likelihood of Iraq's formal acceptance of ▮▮▮▮'s repatriation, upon his arrival, as a citizen and national of Iraq. However, on the present record, the potential effect of this evidence is not altogether clear.

Since this evidence was not available to ICE when it submitted its opposition to the motion for release, the Special Master afforded counsel for the government an opportunity to respond as to its potential significance under Section IV.B.4.e. In response, counsel argued that it would be premature to rule on the motion to release at this time, but that if ICE fails to successfully effectuate removal on the currently scheduled itinerary, or if other issues arise with respect to travel documents or itineraries, the Special Master "could then assess the motion and take additional evidence." Supp. Opp'n to Release ▮▮▮▮. Given the limited state of the current record as to the potential effect of this evidence on the likelihood of successfully effectuating removal—

---

[7] ▮▮▮▮ also states that he fears persecution on account of ▮▮▮▮ ▮▮▮▮. Reply in Response to Opp'n to Release at 2–3.

which is imminently scheduled to take place—the suggestion made by counsel for the government is sound, and the motion will conditionally be held in abeyance on the terms specified below.

## CONCLUSION

For the foregoing reasons, the motion for release from detention is held in abeyance, subject to the condition that if removal is not successfully effectuated on the currently scheduled timeline, or if other issues arise with respect to travel documents or itineraries, the parties shall be directed to submit additional evidence and arguments (on a scheduled to be determined) as to the implications for the likelihood of removal of the evidence that ▮▮▮▮ has submitted concerning the status of his Iraqi citizenship and nationality. Those submissions shall include, but not be limited to, additional evidence and argument concerning any potential implications for the validity and effectiveness of any current or future Travel Documents for ▮▮▮▮ and for the likelihood of Iraq's formal acceptance of ▮▮▮▮'s repatriation, upon his arrival, as a citizen and national of Iraq.

Counsel for the government shall provide the Special Master and Class Counsel with a status update within five (5) business days following the date currently scheduled for removal as to whether or not removal was successfully effectuated on that date, including (but not limited to) whether Iraq formally accepted ▮▮▮▮'s repatriation upon his arrival in the country as a citizen and national of Iraq.

Date: February 20, 2026

/s/Anil Kalhan
ANIL KALHAN
Special Master

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served and filed, as required under the terms of the Settlement Agreement (Dkt. 717-2) and Second Amended Stipulated Order Appointing Special Master (Dkt. 737) in *Hamama v. Adducci*, No. 17-cv-11910 (E.D. Mich.), on February 20, 2026.

/s/Anil Kalhan
Special Master