UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA JAMIL HAMAMA, et al.,

        Petitioners,

v.

REBECCA ADDUCCI, et al.,

        Respondents.

_____/

Case No. 17-cv-11910
Hon. Mark A. Goldsmith
Mag. Judge David R. Grand

**ORDER OF THE SPECIAL MASTER**

        ███████, a *Hamama* Class Member who has been detained by ICE since at least August 12, 2025, has filed a pro se motion with the Special Master seeking release from immigration detention under the terms of the Settlement Agreement (Dkt. 717-2).[1] Class Counsel has subsequently submitted a request for Mr. ███████'s immediate release, arguing that removal to Iraq is not significantly likely within the reasonably foreseeable future given the lack of a current removal itinerary and the uncertainties arising from the recently commenced military conflict in the region. For the reasons that follow, Mr. ███████'s motion is granted.

**BACKGROUND**

        Mr. ███████ is a native and citizen of Iraq. Declaration of Tyler C. Adams, Supervisory Detention and Deportation Officer, U.S. Immigr. & Customs Enf't, Feb. 25, 2026, ¶¶ 9–10 (attached as. Ex. 1 to Opp'n to Release) ("Adams Decl."). In March 2015, he entered the United States outside of a designated port of entry in New Mexico and was apprehended by U.S. Border Patrol agents shortly after his entry. Adams Decl. ¶¶ 6–9. He was ordered removed by an immigration judge in September 2015, but in August 2018 the Board of Immigration Appeals granted his motion to reopen and remanded his case to the immigration court. Opp'n to Release at 1–2 (Mar. 9, 2026). Since the September 2015 removal order was in effect during the period between March 1, 2017, and June 24, 2017, Mr. ███████ is a member of the *Hamama* class.[2] Agreement § I.A; Order Approving Settlement Agreement and Dismissing Case ¶ 2 (Dkt. 730).

---

[1] This Order incorporates and uses terms and definitions set forth in the Settlement Agreement.

[2] ICE agrees that Mr. ███████ is a *Hamama* class memeber. Opp'n to Release at 1.

1

Subsequently, in April 2025, the immigration court (James J. Miller, Jr., Immigration Judge) entered a final order of removal. Adams Decl. ¶ 12.

On August 12, 2025, Mr. ▆▆▆▆▆ was taken into custody by ICE from local custody after he was charged with alleged possession of a stolen vehicle. Adams Decl. ¶¶ 13–14. According to ICE, that criminal law charge is still pending. Adams Decl. ¶ 13. The present pro se motion for release from Mr. ▆▆▆▆▆ is dated February 4, 2026 and was received by the Special Master via the U.S. Postal Service on February 18, 2026. Mot. for Release (Feb. 18, 2026); Scheduling Order (Feb. 19, 2026). In the motion, Mr. ▆▆▆▆▆ states that as of January 22, 2026, he had been informed by an ICE supervisor that ICE had been "trying to get travel documents" for him "but ha[d] not been able to get them." Mot. for Release at 3–4. He further states that he "will comply with any supervision requirements ICE may impose" if he is released. Mot. for Release at 5.

In support of its opposition to release, ICE submitted a copy of a Travel Document for Mr. ▆▆▆▆▆'s removal that was issued on ▆▆▆▆▆▆▆▆▆. Adams Decl. ¶ 15; Iraqi Travel Document (▆▆▆▆▆▆▆) (attached as Ex. A to Adams Decl.). ICE also stated that it had scheduled a commercial flight for Mr. ▆▆▆▆▆'s removal during "early March 2026" and supported that representation with an itinerary for that flight.[3] Adams Decl. ¶ 16; Mar. 2026 Travel Itinerary (Feb. 26, 2026) (attached as Ex. B to Adams Decl.). Although ICE stated in support of its opposition that as of February 25, 2026, there were "currently no flight restrictions for his return to Iraq," Adams Decl. ¶ 16, on February 28, 2026 the United States and Israel initiated military action against Iran. Official U.S. government statements and news reports during the ten days following the commencement of those hostilities widely indicated that travel across the region was significantly disrupted and that Iraqi airspace had been closed altogether. *See, e.g.*, U.S. Embassy Baghdad, Iraq, *Security Alert—U.S. Embassy Baghdad, Iraq—March 9, 2026* (Mar. 9, 2026), https://iq.usembassy.gov/security-alert-u-s-embassy-baghdad-iraq-march-9-2026-update-1/ [https://perma.cc/T2U8-FLGM] (reporting that "[c]ommercial flights are currently not operating out of Iraq"); *Updated List of Airspace Closures: Continued Traffic Disruption Felt Across Region*, FLIGHTRADAR24 (Mar. 6, 2026, 09:37 UTC), https://www.flightradar24.com/blog/live/israel-launches-pre-emptive-strikes-on-iran-airspace-closures-going-into-place/ [https://perma.cc/UP3D-KWMD] (reporting "total closure" of airspace as of March 6, 2026 in several countries in the region, including Iraq).

---

[3] While the declaration submitted in support of ICE's opposition is dated February 25, 2026, the itinerary attached as Exhibit B to that declaration is dated February 26, 2026. ICE's opposition itself was filed with the Special Master on March 9, 2026.

On March 9, 2026, ICE filed its opposition to Mr. ▇▇▇▇'s release, which included its February 25, 2026 statement about the lack of any applicable flight restrictions but did not address the potential for flight disruptions arising from the military conflict that had subsequently commenced. Opp'n to Release at 3; Adams Decl. ¶ 15. On March 10, 2026, the day after ICE's opposition was filed, counsel for the government affirmatively informed the Special Master that they "were notified . . . that Mr. ▇▇▇▇ was not able to be removed to Iraq as scheduled due to the ongoing conflict in the region," and that they were "awaiting updated information." Supp. to Opp'n to Release (Mar. 10, 2026).

On March 11, 2026, Class Counsel requested "that the Special Master order ICE to release Mr. ▇▇▇▇ immediately" in light of the "concession that ICE is unable to remove" Mr. ▇▇▇▇. Class Counsel Req. for Immediate Release (Mar. 11, 2026). The request argues that since ICE does not have a current removal itinerary for Mr. ▇▇▇▇, and "[n]o one can predict" how long the military conflict in the region will last, Mr. ▇▇▇▇ would otherwise be at risk of remaining in detention indefinitely while awaiting removal. ICE was afforded an opportunity to respond to Class Counsel's request by March 13, 2026. On that date, counsel for the government stated that they were still awaiting additional information and were unable to provide a response at that time. Response to Class Counsel Req. for Immediate Release (Mar. 13, 2026).

As of February 18, 2026, the date on which his motion for release was filed with the Special Master, Mr. ▇▇▇▇ had been detained by ICE for at least 190 days, and as of the date of this order, he has been detained for at least 215 days.[4] As of the date of this order, the U.S. Embassy in Iraq continues to report that "[a]irspace is closed and commercial flights are not operating out of Iraq." U.S. Embassy Baghdad, Iraq, *Security Alert—U.S. Embassy Baghdad, Iraq—March 15, 2026* (Mar. 15, 2026), https://iq.usembassy.gov/security-alert-u-s-embassy-baghdad-iraq-march-15-2026/ [https://perma.cc/K8G9-E5BK]; *see also* David Mumford, *Middle East Airspace—Current Operational Picture*, OPS GROUP (updated Mar. 12, 2026), https://ops.group/blog/middle-east-airspace-current-operational-picture/ [https://perma.cc/Q2PD-PZKP] (last visited Mar. 15, 2026); *Conflict Zone & Risk Database: Iraq*, SAFE AIRSPACE, https://safeairspace.net/iraq/ [https://perma.cc/NN2C-R6YY] (last visited Mar. 15, 2026).

---

[4] While Mr. ▇▇▇▇ states in his motion that he has been detained by ICE since July 10, 2025, ICE states that he was taken into immigration custody on August 12, 2025. Mot. for Release at 3; Adams Decl. ¶¶ 13–14. No independent documentation corroborates either party's statement, but for purposes of adjudicating Mr. ▇▇▇▇'s claim for release, it is sufficient to find that he has been detained since at least August 12, 2025.

## DISCUSSION

Consistent with broader legal and constitutional principles, a basic "governing principle[]" under the Settlement Agreement is that ICE shall not detain any Class Member with a Final Order of Removal except (1) if the Class Member violates an Order of Supervision, or (2) to effectuate removal. Agreement § III.A; *see United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). Under a series of circumstances set forth in the Settlement Agreement, ICE detention decisions are subject to oversight and review by the Special Master and the District Court.[5] Agreement § VIII.D.2.

### I. Process and Standard for Review Under Section IV.B

Under Section IV.B.1, if ICE seeks to remove a Class Member who has a Final Order of Removal, and who does not have a Stay of Removal, the Settlement Agreement obligates ICE (1) to provide the Class Member with "written notice that the Class Member has ninety (90) days before it will begin finalizing Travel Documents and a travel itinerary for the Class Member's removal to Iraq" and (2) not to "alter the custodial status of the non-detained Class Member unless the Class Member violates [their] Order of Supervision." Agreement § IV.B.1. These obligations do not apply under three expressly specified circumstances: (1) if the Class Member is "detained directly upon release from serving a term of federal or state imprisonment," (2) if the Class Member is "a suspected terrorist or is otherwise engaged in activity that endangers the national security of the United States" under 8 U.S.C. § 1226a or 8 C.F.R. § 241.14, or is otherwise believed by ICE to "pose[] a substantial threat to national security," or (3) in the case of a Category 1 Class Member, if "ICE has credible information that there is a substantial risk that a Category 1 Class Member will engage in a violent crime or other very serious criminal activity during the 90-day notice period" and it has followed a series of expressly prescribed procedural steps. *Id.* §§ IV.B.1.a–c.

Under the first of these three exceptions, for a Class Member with a final order of removal who has been detained by ICE directly upon release from a term of federal or state criminal imprisonment, and who ICE has determined to be a Category 1 Individual, ICE is allowed an initial detention period of up to 90 days for Travel Document processing and removal efforts if it determines there is a significant likelihood of removal within ninety days. *Id.* §§ IV.B.1.a, IV.B.4.b–

---

[5] As noted above, ICE agrees that Mr. ▓▓▓▓▓ is a *Hamama* class member who has been in immigration detention since at least August 2025. *See* Opp'n to Release at 1, 2.

4

c. If ICE has not removed the Class Member within that initial 90-day period, it must conduct a custody review, upon which it must either release the Class Member or, if continued detention remains permissible, provide notice that the result of the custody review is to continue detention.[6] *Id.* § IV.B.4.d.

If the Class Member remains in detention after that initial 90-day period, the individual may file a motion for release with the Special Master. *Id.* § IV.B.4.d.ii.3. ICE bears the burden of providing the Special Master with "evidentiary support" showing (1) that "Iraq has indicated that it will issue a Travel Document," and separately (2) that the "Class Member's removal is significantly likely to occur in the reasonably foreseeable future." *Id.* § IV.B.4.d.ii.4. If ICE does not demonstrate a "significant likelihood of removal within the reasonably foreseeable future," then the Special Master "shall order the Class Member's Release." *Id.* § IV.B.4.d.ii.6. The Settlement Agreement also provides that if ICE has not removed the Class Member within 180 days, continued detention only is permitted "if ICE clearly demonstrates a very high likelihood of imminent removal, by demonstrating that Iraq has already provided a Travel Document and ICE has already arranged a removal itinerary for the very near future." *Id.* § IV.B.4.e; Order of the Special Master at 9–10 (Feb. 9, 2026) (Dkts. 750, 751); Order of the Special Master at 9–10 (Sep. 26, 2024) (Dkts. 735, 736). Under those circumstances, the Class Member has the option of seeking an order for release directly from the Court. Agreement § IV.B.4.e.

The "significant likelihood of removal within the reasonably foreseeable future" standard under the Settlement Agreement derives from the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Court interpreted 8 U.S.C. § 1231(a)(6), which governs detention of noncitizens with final orders of removal beyond the 90-day statutory "removal period," in light of the Fifth Amendment's Due Process Clause. To avoid "serious constitutional concerns" that would arise from an interpretation of that provision authorizing indefinite detention, the Court construed § 1231(a)(6) only to authorize a noncitizen's detention for a period of time "reasonably necessary" to effectuate that individual's removal. *Zadvydas*, 533 U.S. at 689; *see also Hamama v. Adducci*, 349 F.Supp.3d 665, 686–89, 692 (E.D. Mich. 2018) (Dkt. 490); *Hamama v. Adducci*, 285 F.Supp.3d 997, 1009–1010 (E.D. Mich. 2018) (Dkt. 191), *vac'd and remanded on other grounds*, 912 F.3d 869 (6th Cir. 2018). "[O]nce removal is no longer reasonably foreseeable," the Court held, "continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

---

[6] No documentation appears in the record of either any formal custody review or notice of its outcome.

Because "[r]easonableness" must be assessed "primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal," *Zadvydas* held that "if removal is not reasonably foreseeable," a reviewing court "should hold continued detention unreasonable and no longer authorized by statute." *Id.* To ensure uniformity and minimize the need for courts to make "difficult judgments," the Court recognized a six-month period of post-final order detention under § 1231(a)(6) as "presumptively reasonable." *Id.* at 701. Beyond that six-month period, a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

When ICE itself reviews the custody of individuals detained beyond that "presumptively reasonable" period, it is directed by a post-*Zadvydas* regulation to consider a nonexclusive list of factors to determine whether there is a "significant likelihood" of the individual's removal "within the reasonably foreseeable future."[7] 8 C.F.R. § 241.13(f). *Zadvydas* also emphasized that for detention "to remain reasonable as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701; *see also Hamama*, 349 F.Supp.3d at 692. Consistent with these context-sensitive criteria, the Settlement Agreement defines the "reasonably foreseeable future" for purposes of the Special Master's review under § IV.B.4.d to be "no longer than the next ninety (90) days," but also provides that it "could, depending on the circumstances, be shorter." Agreement § IV.B.4.d.ii.6.

Under *Zadvydas*'s interpretation of § 1231(a)(6), the noncitizen bears the initial burden of providing "good reason to believe that there is no significantly likelihood of removal in the reasonably foreseeable future," after which "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. However, under the Settlement Agreement the Class Member's initial burden is only to show that the triggering conditions for the Special Master's review have been satisfied—at which point ICE must affirmatively "demonstrate[] a significant likelihood of removal within the reasonably foreseeable future" for

---

[7] The regulation directs agency officials to consider "all the facts of the case" when conducting these reviews, including, "but not limited to":

> the history of the alien's efforts to comply with the order of removal, the history of the [agency's] efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f).

detention to continue. Agreement §§ IV.B.4.d.ii.4, IV.B.4.d.ii.6; *see* Order of the Special Master at 5–8 (Feb. 9, 2026) (Dkts. 750, 751); Order of the Special Master at 8–11 (Mar. 4, 2025) (Dkts. 738, 739); Order of the Special Master at 5–9 (Sep. 26, 2024) (Dkts. 735, 736); *cf. Roble v. Bondi*, 803 F.Supp.3d 766, 772–73 (D. Minn. 2025) (when seeking to revoke release and detain an individual under 8 C.F.R. § 241.13(i)(2), ICE bears the evidentiary burden to establish that the claimed change in circumstances makes removal significantly likely in the reasonably foreseeable future); *Nguyen v. Hyde*, 788 F.Supp.3d 144, 150 n.2 (D. Mass. 2025) (same). If ICE has not removed the Class Member within 180 days, that standard obliges ICE to "clearly demonstrate[] a very high of imminent removal, by demonstrating that Iraq has already provided a Travel Document and ICE has already arranged a removal itinerary for the very near future." Agreement § IV.B.4.e; Order of the Special Master at 9–10 (Feb. 9, 2026) (Dkts. 750, 751); Order of the Special Master at 9–10 (Sep. 26, 2024) (Dkts. 735, 736).

**II. Application to the Motion for Release**

In its opposition, ICE argued that Mr. ▉▉▉▉'s motion should be denied based on evidence indicating that (1) "Iraq has issued a Travel Document" and (2) removal to Iraq was "scheduled to occur within the next 4 weeks." Opp'n to Release at 2. However, as noted above, ICE subsequently informed the Special Master that removal was not able to take place on the scheduled date because of the military conflict in the region, and that it does not have any updated information about the possible timeline for removal. Supp. to Opp'n to Release; Response to Class Counsel Req. for Immediate Release. Given the absence of any current removal itinerary, and the uncertainties for the foreseeability of removal arising from the ongoing military conflict, Class Counsel has requested Mr. ▉▉▉▉'s immediate release from detention. Class Counsel Req. for Immediate Release. Under these circumstances, the record does not support the conclusion that removal is significantly likely within the reasonably foreseeable future.

At the outset, it is not altogether clear from the present record that Mr. ▉▉▉▉'s detention by ICE in August 2025 took place in a manner consistent with the procedures contemplated by the Settlement Agreement. As noted above, ICE was presumptively obligated (1) to provide Mr. ▉▉▉▉, as a *Hamama* Class Member, with "written notice that the Class Member has ninety (90) days before it will begin finalizing Travel Documents and a travel itinerary for the Class Member's removal to Iraq" and (2) not to "alter [his] custodial status" unless he violated an Order of Supervision. Agreement § IV.B.1. However, the record does not indicate either that this written notice was provided to Mr. ▉▉▉▉ or that he violated any Order of

7

Supervision such that ICE would have been permitted to "alter [his] custodial status" during that 90-day period. Nor is it clear that any of the three enumerated exceptions to these obligations—for individuals who (1) are detained "directly upon release from serving a term of federal or state imprisonment," (2) are suspected or engaged in activities that threaten national security, or (3) are Category 1 Class Members who are credibly believed to present substantial risks of engaging in "violent crime" or other "very serious criminal activity"—would have been applicable in Mr. ▇▇▇'s case. Agreement §§ IV.B.1.a–c. First, while ICE states that Mr. ▇▇▇ was taken into custody from local officials after he was charged with alleged possession of a stolen vehicle, he was not taken into ICE custody directly upon release from a term of imprisonment for that charge—which, according to ICE itself, remains pending and has not yet been adjudicated. Adams Decl. ¶¶ 13–14. Second, there is no indication in the record or any claim by ICE in its opposition that Mr. ▇▇▇ presents a threat to national security under Section IV.B.1.b. Third, there is no indication in the record that ICE has formally categorized Mr. ▇▇▇ as a Category 1 Individual—or if it had, that ICE had "credible information" at the time of his detention of any "substantial risk" that he might engage in "violent crime" or other "very serious criminal activity"—under the exception set forth in Section § IV.B.1.c.

To the extent that Mr. ▇▇▇'s initial detention in August 2025 may have had some proper basis under the Settlement Agreement, the evidence submitted by ICE is nevertheless insufficient to establish that his continued detention is permissible under Section IV.B.4.d.ii. By submitting evidence indicating that Iraq issued a Travel Document for Mr. ▇▇▇ on ▇▇▇ ▇▇▇, ICE has satisfied its obligation under Section IV.B.4.d.ii.4 to establish that a Travel Document was issued for Mr. ▇▇▇. Order of the Special Master at 5 (Aug. 7, 2025) (Dkts. 742, 743). However, ICE has not sufficiently "demonstrated a significant likelihood of removal within the reasonably foreseeable future" for detention to continue. Agreement § IV.B.4.d.ii.6. Although ICE initially submitted evidence of a scheduled travel itinerary via commercial flight for Mr. ▇▇▇'s removal and argued that evidence was sufficient to satisfy its burden, the existence of a scheduled itinerary, by itself, cannot establish that removal is significantly likely within the reasonably foreseeable future where the surrounding circumstances cast substantial doubt on whether that itinerary in fact is likely to be carried out as planned. The subsequent cancellation of the flight scheduled for Mr. ▇▇▇'s removal, together with the significant uncertainties presented by the ongoing regional military conflict, confirm that the present record does not support such a conclusion.

The foregoing considerations are sufficient to conclude that ICE has not established a "significant likelihood of removal within the reasonably foreseeable future," and on that basis to resolve the motion in Mr. ███████'s favor. However, it is also worth noting that the prolonged period of Mr. ███████'s detention to date—at least 215 days as of the date of this order, a period well exceeding the six-month period that *Zadvydas* found "presumptively reasonable"—is relevant to any assessment of "reasonableness" under Section IV.B.4.d of the Settlement Agreement. As *Zadvydas* makes clear, "what counts as the 'reasonably foreseeable future' . . . shrink[s]" as the "period of prior postremoval confinement grows." *Zadvydas*, 533 U.S. at 701; *see also Hamama*, 349 F.Supp.3d at 692. Indeed, the Settlement Agreement itself embraces and operationalizes this same *Zadvydas*-derived principle. If a Class Member is detained for more than 180 days, the individual has the option of seeking an order for release directly from the Court, rather than from the Special Master—upon which the individual must be released unless ICE "clearly demonstrates a very high likelihood of imminent removal, by demonstrating that Iraq has already provided a Travel Document and ICE has already arranged a removal itinerary for the very near future." Agreement § IV.B.4.e. As with the reasonable foreseeability of removal under Section IV.B.4.d, the mere existence of a nominal, tentative, or otherwise uncertain removal itinerary—especially where the circumstances raise significant questions about whether the itinerary is likely to proceed as scheduled, or where the itinerary has subsequently been cancelled—is not itself sufficient to establish "a very high likelihood of imminent removal" under Section IV.B.4.e.

While Section IV.B.4.e does not purport by its terms to apply its high standard directly to cases under Section IV.B.4.d, it would be anomalous for ICE to be held arbitrarily to different substantive standards, based on the same facts, in cases that concurrently fall within the purview of both the Special Master and the Court—especially since reasonableness under Section IV.B.4.d itself requires a more stringent standard "as the period of prior postremoval confinement grows." *Zadvydas*, 533 U.S. at 701; *see Hamama*, 349 F.Supp.3d at 692. As such, for Class Members who may be eligible to seek an order of release from the Court under Section IV.B.4.e, the reasonableness analysis under Section IV.B.4.d must be closely guided by the same factors and considerations that underlie Section IV.B.4.e, if not the identical standard. *See* Order of the Special Master at 9–10 (Feb. 9, 2026) (Dkts. 750, 751); Order of the Special Master at 9–10 (Sep. 26, 2024) (Dkts. 735, 736).

In any event, as discussed above, ICE has not provided sufficient evidence to demonstrate a "significant likelihood of removal in the reasonably foreseeable future" without regard to either

the criteria and factors specifically embodied in Section IV.B.4.e or, as instructed by *Zadvydas*, 533 U.S. at 701, the length of Mr. ██████'s detention generally. Accordingly, it necessarily follows that the evidentiary support provided by ICE is insufficient when taking the prolonged length of detention for more than 180 days into account, whether under Section IV.B.4.e directly or under the reasonableness analysis required by Section IV.B.4.d.ii.6.

## CONCLUSION

For the foregoing reasons, the Special Master grants the motion for release. Consistent with Section IV.B.4.d.8 of the Settlement Agreement, the order of release does not preclude detention for removal for up to thirty (30) days "once an itinerary is finalized and the Class Member has returned to ICE custody." Given the considerations discussed above regarding the uncertainties arising from the military conflict in the region, an itinerary should not be considered "finalized" for this purpose unless, in light of the surrounding circumstances, the itinerary reflects a removal plan that supports a finding that removal is significantly likely to occur within the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 699, 701.

Date: March 15, 2026

/s/Anil Kalhan
ANIL KALHAN
Special Master

## CERTIFICATE OF SERVICE

  The undersigned certifies that the foregoing document was served and filed, as required under the terms of the Settlement Agreement (Dkt. 717-2) and Second Amended Stipulated Order Appointing Special Master (Dkt. 737) in *Hamama v. Adducci*, No. 17-cv-11910 (E.D. Mich.), on March 15, 2026.

                /s/Anil Kalhan
                Special Master