UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA JAMIL HAMAMA, et al.,

                      Petitioners,

v.

REBECCA ADDUCCI, et al.,

                      Respondents.

_____/

Case No. 17-cv-11910
Hon. Mark A. Goldsmith
Mag. Judge David R. Grand

## ORDER OF THE SPECIAL MASTER

███████████, a *Hamama* Class Member who is currently detained by ICE, has filed a motion with the Special Master seeking release from detention under the terms of the Settlement Agreement (Dkt. 717-2).[1] ICE opposes his release. For the reasons that follow, the motion for release is granted.

## BACKGROUND

Mr. ███ is a native and citizen of Iraq who entered the United States in 1996. Declaration of John L. Ramirez, Supervisory Detention and Deportation Officer, at ¶ 11 (Mar. 20, 2026) (attached as. Ex. A to Opp'n to Release) ("Ramirez Decl."). In 1997, he was granted asylum, and he subsequently adjusted status to become a lawful permanent resident. *Id.* ¶ 12. On May 30, 2007, after completing a prison sentence for a state criminal conviction, he was released to ICE custody and charged as removable. *Id.* ¶¶ 13–14; Mot. for Release at 2. On June 13, 2007, he was ordered removed to Iraq by an immigration judge.[2] Ramirez Decl. ¶ 15. Mr. ███ states that he remained in ICE detention for a total 145 days, but he was released on an Order of Supervision on October 22, 2007. Mot. for Release at 2. The removal order was never executed. Since the June 2007 removal order was in effect during the period between March 1, 2017 and June 24, 2017, Mr. ███

---

[1] This Order incorporates and uses terms and definitions set forth in the Settlement Agreement.

[2] Neither ICE nor Mr. ███ has submitted the removal order as part of the record.

1

is a member of the *Hamama* class and covered by the Settlement Agreement.[3] Agreement §§ I.A, I.B.6; *see also* Order Approving Settlement Agreement and Dismissing Case ¶ 2 (Dkt. 728).

In 2018, Mr. ▮ filed a motion to reopen and a request for a stay of deportation with the immigration court, which both were denied. Ramirez Decl. ¶ 17. He filed a subsequent motion to reopen with the immigration court in October 2025, which was denied in January 2026 and for which an appeal to the Board of Immigration Appeals remains pending. *Id.* ¶ 20.

On July 30, 2025, ICE provided Mr. ▮ with notice pursuant to Section IV.B.1 of the Settlement Agreement that he had ninety days before ICE would begin finalizing Travel Documents and a travel itinerary for his removal to Iraq. Ramirez Decl. ¶ 19. During a supervision appointment on January 7, 2026, he was fitted with a GPS ankle monitor and ordered not to leave the state. Email from Counsel (Feb. 6, 2026) (attached as part of Ex. B to Mot. for Release); Ramirez Decl. ¶ 18. However, according to counsel for Mr. ▮, he requested and was granted permission by a supervisory detention and deportation officer to make trips to neighboring states with prior authorization on account of his employment ▮. Email from Counsel (Feb 6. 2026). Counsel states that the BI ISAP Senior Case Specialist responsible for Mr. ▮'s case "expressed to Mr. ▮ her annoyance and dissatisfaction with this arrangement, telling him that if it were up to her, she would have refused his request, and that he had created more work for her." *Id.*

ICE requested a Travel Document for Mr. ▮ from the government of Iraq on ▮. Ramirez Decl. ¶ 21. On January 29, 2026, when he reported to an ICE field office, Mr. ▮ was taken into ICE custody and subsequently transferred out of state, where he currently remains in detention. *Id.* ¶¶ 22–23; Mot. for Release at 2. According to counsel for Mr. ▮, the detention occurred after Mr. ▮ received a phone call from the BI Senior Case Specialist requesting that he come in "so that she could service his ankle monitor." Email from Counsel (Feb 6. 2026). However, upon presenting himself as requested, he was taken into custody. *Id.* Counsel states that when he tried to contact Mr. ▮'s supervisory deportation and deportation officer, he received an auto-reply indicating that the officer "was and would remain out of the office from January 28, 2026 through March 15, 2026." *Id.* In correspondence with counsel for ICE, counsel for Mr. ▮ stated that he "believes that the arrest and detention of Mr. ▮ was planned to occur when the [supervisory detention and deportation officer] was away, and that whoever ordered his arrest and detention may not have been aware of the requirements of the Settlement

---

[3] ICE agrees that Mr. ▮ is a *Hamama* Class Member. Opp'n to Release at 1.

Agreement." *Id.* On ████████████, after Mr. ████ was placed in detention, Iraq issued a Travel Document for Mr. ████. Ramirez Decl. ¶ 26; Travel Document (attached as Ex. B to Opp'n to Release).

According to his lawyer, Mr. ████ was told upon being taken into custody by ICE on January 29, 2026 that the basis for detention was that his spouse had obtained a temporary civil protection order against him based on alleged acts of domestic violence. Email from Counsel (Feb 6. 2026). The record indicates that this order was initially issued in early January 2026 as a temporary ex parte order.[4] Protection Order Case File (Jan.–Feb. 2026) (attached as part of Ex. C to Opp'n to Release); Ramirez Decl. ¶ 25. Although a hearing on the petition for a protection order was scheduled to take place shortly thereafter, a continuance was granted to afford Mr. ████ an opportunity to contest the order with counsel present, and the temporary order was extended accordingly. Protection Order Case File. Mr. ████ was in ICE detention on the date of the continued hearing and did not appear, and a final protection order was subsequently issued. *Id.*

Through counsel, Mr. ████ filed the present motion for release via email on March 10, 2026. ICE filed an opposition to release on March 20, 2026, and Mr. ████ filed a reply to ICE's opposition on March 30, 2026. In support of the motion for release, Mr. ████ makes two arguments. First, Mr. ████ argues that ICE has not applied the Settlement Agreement's categorization framework under Sections II.A–B of the Settlement Agreement, and that he therefore remains a Category 2 Individual whose detention is impermissible under the Agreement.[5] Mot. for Release at 2 & n.2; Reply Brief at 1–5, 6–7. ICE acknowledges that Mr. ████ was a Category 2 Individual "[p]rior to his current period of detention" and that the Special Master (or District Court) has jurisdiction to review "whether ICE applied the categorization framework in Sections II.A–B." Opp'n to Release at 2. However, counsel for ICE maintains that ICE conducted an "updated assessment" after the temporary protection order was issued in early January 2026. Opp'n to Release at 2–3. Deeming the factual allegations in support of the petition for a protection order to be "new criminal conduct," counsel for ICE states that "the totality of the facts and circumstances" support a determination that Mr. ████ is a Category 1 Individual and—citing

---

[4] Counsel for Mr. ████ represents that his client has not violated that protection order, and ICE does not appear to claim that he has done so. Email from Counsel (Feb 6. 2026). According to counsel for Mr. ████, his client has not "otherwise had any criminal convictions or activity for more than a decade." *Id.*

[5] No documentation appears in the record of any formal Category Review by ICE determining that Mr. ████ is a Category 1 Individual.

Section II.C of the Agreement—that its weighing of the factors set out in Sections II.A–B of the Agreement is not subject to review. *Id.* at 3.

Second, Mr. ▇▇ argues in the alternative that he should be released either because (a) he has been detained for more than 90 days and ICE has not demonstrated a significant likelihood of removal within the reasonably foreseeable future under Section IV.B.4.d.ii.6 of the Settlement Agreement or (b) he has been detained for more than 180 days and ICE has failed to demonstrate a "very high likelihood of imminent removal, by demonstrating that Iraq has already provided a Travel Document and ICE has already arranged a removal itinerary for the very near future" under Section IV.B.4.e of the Agreement. Mot. for Release at 3–5; Reply Brief at 5–6. In response, ICE argues that the Settlement Agreement "does not provide that detention time is calculated on an aggregate basis," as Mr. ▇▇'s argument assumes, and that because the most recent period of continuous detention since January 29, 2026 remains less than 90 days, the Special Master does not have jurisdiction to adjudicate Mr. ▇▇'s motion for release because it is not yet ripe for review under the Settlement Agreement. Opp'n to Release at 3–4.

Following the commencement of military action against Iran by the United States and Israel on February 28, 2026, travel across the region has been significantly disrupted, and since then official U.S. government statements regularly have reported that Iraqi airspace has been closed. *See, e.g.*, U.S. Embassy Baghdad, Iraq, *Security Alert— U.S. Embassy Baghdad, Iraq—April 2, 2026* (Apr. 2, 2026), https://iq.usembassy.gov/security-alert-u-s-embassy-baghdad-iraq-april-2-2026/ [https://perma.cc/XND2-B53P] (reporting that "[a]irspace is closed and commercial flights are not operating out of Iraq"); Order of the Special Master at 3–4 (Apr. 3, 2026) (Dkts. 768, 769); Order of the Special Master at 2–3 (Mar. 15, 2026) (Dkts. 766, 767). Mr. ▇▇ argues that in light of the disruptions caused by the war, ICE cannot demonstrate a reasonable likelihood of removal to Iraq in the reasonably foreseeable future. Mot. for Release at 5; Reply Brief at 6. While ICE acknowledges without elaboration that there are "current issues with removal of aliens to the Middle East," it maintains that "airspace at or near Iraq can reopen at any time in the very near future" and that it "has the means to remove Iraqi nationals." Ramirez Decl. ¶¶ 27–28, 30. Without providing specific information about any steps it has taken, ICE represents in general terms that it is "working on securing alternative plans for removal" and, on that basis, that it "believes" there to be a significant likelihood of removal in the reasonably foreseeable future. Ramirez Decl. ¶ 27, 29; Opp'n to Release at 4.

The record indicates that Mr. ▇▇ has been detained by ICE on at least four separate occasions since he was ordered removed in 2007: (1) from June 13, 2007 until October 22, 2007,

4

when he was released under an Order of Supervision; (2) for a single day in 2014, after completing a criminal sentence and being released under an Order of Supervision that same day; (3) from September 28, 2017 until April 16, 2018, when he was again released under an Order of Supervision; and (4) since January 29, 2026. As of March 10, 2026, the date on which the motion for release was filed, the aggregate overall period of Mr. ███'s detention since being ordered removed was at least 370 days. As of that filing date, his current period of detention was 40 days, and as of the date of this order his current period of detention has been at least 70 days. He has been detained for at least 45 days since ICE obtained an Iraqi Travel Document for his removal on ████████.

## DISCUSSION

Consistent with broader legal and constitutional principles, a basic "governing principle[]" under the Settlement Agreement is that ICE shall not detain any Class Member with a Final Order of Removal except (1) if the Class Member violates an Order of Supervision, or (2) to effectuate removal. Agreement § III.A; *see United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). The Agreement establishes a framework for ICE to designate Class Members either as "Category 1 Individuals" or "Category 2 Individuals" and sets forth separate criteria and constraints to govern detention of individuals falling within each category. Category 1 Individuals are defined as Class Members who have been determined by ICE to pose "threat[s] to national security, or . . . current threat[s] to border security or public safety" under criteria expressly specified in the agreement. Agreement § II.A. Category 2 Individuals are defined to include all other Class Members. *Id.* § II.B.

The structure of Section II.A.3 makes the existence of a past criminal conviction a prerequisite for ICE to determine that a Class Member poses a "current threat to public safety" and should therefore be deemed a Category 1 Individual. Agreement § II.A.3.a–b. However, the Agreement also provides that a Class Member "shall not be considered a current threat to public safety based on a past criminal conviction" unless the individual was released from a term of imprisonment less than five years "before the date of the Category Determination." *Id.* § II.A.3.a. For a Class Member released from imprisonment "Less than Five (5) Years" before the date of the Category Determination, Section II.A.3.b provides that a determination of whether the individual presents a "current threat to public safety" requires an "assessment of the individual and the totality of the facts and circumstances as set out in Section II.A.3.c." *Id.* § II.A.3.b. By contrast, for a Class Member released "More than Five (5) Years" before the date of the Category

Determination, ICE may conduct that assessment under Section II.A.3.c—and therefore determine that the individual poses a "current threat to public safety"—only "[i]f such a Class Member commits new criminal conduct." *Id.* § II.A.3.a.

Under a series of circumstances set forth in the Settlement Agreement, ICE detention decisions are subject to oversight and review by the Special Master and the District Court. In particular for purposes of this motion, the Special Master is authorized to review good faith challenges by Class Members with Final Orders of Removal to determine (1) for a Category 2 Individual, whether ICE's detention of the individual is appropriate and permissible under Section IV.B.5 of the Agreement; or (2) for a Category 1 Individual, whether ICE's continued detention of the individual satisfies the Agreement's requirements under Section IV.B.4.d.ii of the Agreement. Agreement §§ II.C, VIII.D.2.b.i–iii (cross-referencing Agreement §§ II.A.3, IV.B.5.c, & IV.B.4.d.ii). While ICE's "weighing of the factors" set forth in Sections II.A–B to make a Category Determination is not subject to review by the Special Master or District Court, review is available of whether ICE has applied the categorization framework in Sections II.A–B and whether a Class Member was most recently released from serving a term of state or federal imprisonment less than five years ago. *Id.* §§ II.C.

## I. Detention for Removal of Category 2 Individuals Under Section IV.B.5

### A. *Criteria and Limits for Detention of Category 2 Individuals for Removal*

Under Section IV.B.1 of the Settlement Agreement, if ICE seeks to remove a non-detained, Category 2 Individual who has a Final Order of Removal, and who does not have a Stay of Removal, it is obligated (1) to provide the individual with "written notice that the Class Member has ninety (90) days before it will begin finalizing Travel Documents and a travel itinerary for the Class Member's removal to Iraq" and (2) not to "alter the custodial status of the non-detained Class Member unless the Class Member violates [their] Order of Supervision." Agreement § IV.B.1. After that initial 90-day period expires, if the individual has not obtained a Travel Document or departed from the United States, and a consular interview is scheduled, ICE may require the Category 2 Individual to report for that interview after serving notice to the individual. *Id.* § IV.B.5.a.

However, detention of Category 2 Individuals for purposes of removal only may take place under limited circumstances and is subject to a series of expressly specified constraints under Section IV.B.5 of the Agreement. Under that provision, ICE may not detain a Category 2 Individual unless (i) detention is necessary to conduct the consular interview, (ii) the individual failed to

appear for a previously scheduled consular interview, or (iii) the individual fails to make good faith efforts, as specified in Section IV.B.2 of the Agreement, to comply with additional informational requests from ICE.[6] Agreement § IV.B.5.b.i–iii. Under the first and third of those enumerated circumstances, detention must be approved in advance by the Special Master. *Id.* § IV.B.5.c. Moreover, under any of those enumerated circumstances, the Agreement provides that detention of a Category 2 Individual under Section IV.B.5.b "shall be as brief as possible" and "in no event" may be longer than "ten (10) days for a video consular interview or thirty (30) days for an in-person consular interview." *Id.* § IV.B.5.d. If Iraq denies a Travel Document, ICE may not detain the individual "unless a Travel Document is subsequently issued, or detention is otherwise permitted" under the Agreement. *Id.* § IV.B.5.f. However, once it obtains a Travel Document from Iraq, ICE "may detain" the individual "for up to thirty (30) days to effectuate removal" and is not required to inform the Class Member in advance of detention that a Travel Document has been issued or that the Class Member will be detained. *Id.* § IV.B.5.g.

B. *Whether ICE Has Applied the Categorization Framework in Sections II.A–B*

As noted above, ICE acknowledges that "[p]rior to his current period of detention," Mr. █████ "qualified as a Category 2 individual," and the record indicates that ICE provided Mr. █████ with the 90-day notice required by Section IV.B.1 of the Agreement. Ramirez Decl. ¶ 19. However, counsel for ICE represents that ICE conducted an "updated assessment" at some unspecified point after the date in early January 2026 on which Mr. ████ became the subject of a temporary civil protection order, and reclassified him as a Category 1 Individual. Opp'n to Release at 2. Evidently deeming the factual allegations in support of the protection order petition to be sufficient to establish the existence of "new criminal conduct" under Section II.A.3.a, counsel for ICE argues that "the totality of the facts and circumstances," including the acts and threats of domestic violence alleged in that petition, support a determination that Mr. ████ is a Category 1 Individual. *Id.* at 2–3. Counsel for ICE represents that "ICE considered several factors in determining [Mr.] ████'s category classification" under Section II.A.3.c. *Id.* at 3. As a mitigating factor, counsel identifies Mr. ████'s long presence in the United States; as aggravating factors, counsel emphasizes Mr. ████'s prior criminal history and the factual allegations in support of the civil

---

[6] In addition, if a non-detained Category 2 Individual "does not appear" for a Travel Document or consular interview appointment, ICE may detain the individual under the provisions of Section IV.A.2. Agreement § IV.B.5.e.

protection orders granted against him. *Id.* On that basis, counsel for ICE states that Mr. ██ is currently a Category 1 Individual.

In his submissions, Mr. ██ disputes these representations, arguing that the evidentiary record does not indicate that any change in his classification properly took place and that he therefore continues to be a Category 2 Individual.[7] Mot. for Release at 3 *& n.2*; Reply Brief at 2–5, 6–7. According to Mr. ██, the evidence demonstrates that "at the time that ICE took Mr. ██ into detention, they had not yet made a determination" that he was a Category 1 Individual and simply took him into custody "in violation of the Settlement Agreement." Reply Brief at 1. He argues that the representations by counsel for ICE in their opposition to release "seek to justify that violation through a post hoc reclassification," and since ICE failed to apply the categorization framework set forth under Sections II.A–B, his detention is governed not by Section IV.B.4 of the Agreement but by Section IV.B.5. *Id.* at 1, 4, 6–7. Given the strict limits on detention of Category 2 Individuals under Section IV.B.5, Mr. ██ argues that ICE not only violated the Settlement Agreement when it initially detained him in January 2026, but also has no permissible basis to continue to detain him now. *Id.* at 4–5.

As ICE correctly notes, its "weighing of the factors" in Sections II.A–B to make a Category Determination is not subject to review by the Special Master or District Court. Opp'n to Release at 2 (citing Agreement § II.C). Those aggravating and mitigating factors are specifically set forth in Section II.A.3.c, which provides a nonexclusive set of considerations for ICE to weigh—after the categorization framework's threshold criteria in Sections II.A.3.a–b have been satisfied—when determining whether a Class Member poses a "current threat to public safety." Agreement § II.A.3.c ("Factors for Determining Category Classifications"). However, as ICE also acknowledges, whether ICE applied the categorization framework and whether a Class Member was released from serving a term of imprisonment less than five years ago are both subject to review by the Special Master or District Court. Opp'n to Release at 2 (citing Agreement § II.C). Those two matters are appropriately reviewable because they are necessary, threshold inquiries whose resolution determines which substantive standards and limits under the Settlement Agreement— Section IV.B.4 for Category 1 Individuals or Section IV.B.5 for Category 2 Individuals—govern the individual's detention.

---

[7] In his motion, Mr. ██ stated that ICE had improperly designated him as a Category 1 Individual but without elaborating on why that designation should be considered improper. Mot. for Release at 2–3 & n.2. In his reply, Mr. ██ elaborates that the designation should be deemed improper because ICE did not apply the categorization framework in Sections II.A–B. Reply Brief at 2–5, 6–7.

Under Section II.A.3.b of the Agreement, for a Class Member most recently released from state or federal imprisonment *less than five years* before the Category Determination, if ICE applied the categorization framework in conducting that determination, then its weighing of the factors in Sections II.A–B is unreviewable and the individual's detention is governed by and assessed under Section IV.B.4. Agreement § II.A.3.b. However, under Section II.A.3.a, for a Class Member most recently released from imprisonment *more than five years* before the Category Determination, application of the categorization framework requires a determination that "new criminal conduct" has been committed before ICE may weigh the factors in Sections II.A–B and classify the Class Member as a Category 1 Individual on that basis. *Id.* § II.A.3.a. For such an individual, if ICE has not determined on an adequate evidentiary basis that "new criminal conduct" has occurred, as Section II.A.3.a requires, then it necessarily has not applied the categorization framework in Sections II.A–B, and the individual remains a Category 2 Individual whose detention is governed and limited by Section IV.B.5. *Id.*

The circumstances of Mr. ████'s motion for release require review under Section II.C of whether ICE applied this categorization framework in Sections II.A–B. Since the record indicates that Mr. ████ was most recently released from a criminal prison sentence more than five years ago, ICE was required under Section II.A.3.a to find that Mr. ████ had engaged in "new criminal conduct" before it could weigh the aggravating and mitigating factors specified in Section II.A.3.c and determine, on that basis, whether he is a "current threat to public safety" who should be reclassified as Category 1 Individual. Agreement §§ II.A.3.a, II.C.1. ICE implicitly acknowledges that Mr. ████ was most recently released from prison more than five years ago, but counsel for ICE argues that ICE properly concluded that the factual allegations underlying the civil protection order issued against Mr. ████ in early January 2026 constitute sufficient evidence of "new criminal conduct" within the meaning of Section II.A.3.a, which thereby permitted it to proceed to weighing the Section II.A.3.c factors to assess whether he is a "current threat to public safety." Opp'n to Release at 2–3.

In reply, Mr. ████ argues that the evidentiary record developed in connection with the civil protection order proceedings in state court is insufficient to demonstrate that he committed "new criminal conduct" under Section II.A.3.a. He argues that even if the facts alleged in the petition for a protection order were sufficient to support the protection order itself—as the state court judge concluded, and as Mr. ████ appears to concede—he has not been "arrested by law

enforcement, charged with a crime, or even accused of a crime."[8] Reply Brief at 3. He emphasizes that as a matter of applicable state law, an ex parte temporary protection order may be granted "without any finding" as long as the petition sufficiently alleges irreparable injury that may result from domestic violence if an order is not issued immediately. *Id.* On that basis, he argues, the evidentiary record does not establish that Mr. ▉▉▉ "commit[ted] new criminal conduct" prior to his detention that was sufficient to "trigger an evaluation to reclassify Mr. ▉▉▉" as a "current threat to public safety" and therefore a Category 1 Individual. *Id.* at 3–4.

Given how the Settlement Agreement structures the categorization framework and the framework's threshold criteria, along with the obligations that the Agreement necessarily places on ICE when applying that framework, the record supports Mr. ▉▉▉'s position that ICE did not apply the categorization framework under Sections II.A–B to determine that Mr. ▉▉▉ is a Category 1 Individual. The question of whether a Class Member "commits new criminal conduct" under Section II.A.3.a presents a host of complexities—especially since the Agreement itself contains no definition or explanation of what constitutes "new criminal conduct" or what evidence is required to support a finding by ICE that a Class Member has "commit[ted] new criminal conduct" under that provision. It is not clear, for example, whether "new criminal conduct" requires a new criminal conviction or arrest, or instead whether ICE may rely upon underlying conduct that has not been the subject of formal factfinding in any criminal proceeding. Nor is it clear whether allegations or findings made in connection with a *civil* proceeding, presented or determined under a civil standard of proof, may be sufficient in some circumstances to support a finding of "new criminal conduct" under the Agreement's categorization framework, which is framed throughout Sections II.A–B in terms of criminal history and criminal convictions—and if so, what types of civil proceedings may or may not suffice. Moreover, if "new criminal conduct" is to be determined by ICE independent of any determinations made in a separate criminal proceeding, it is not clear what sources of substantive criminal law should be used to assess whether the Class Member's conduct should, in fact, be deemed "criminal."[9]

---

[8] While Mr. ▉▉▉ maintains that he had intended to "mount[] a defense" against the allegations in the protection order petition but was unable to appear for the scheduled hearing after being placed in detention, he also appears to implicitly concede in his Reply Brief that the factual allegations in that petition were "sufficient to support a protective order," which, as discussed above, was in fact granted by the state court judge. Reply Brief at 2, 3.

[9] *Cf. Taylor v. United States*, 495 U.S. 575, 600 (1990) (adopting, in the context of a federal sentencing enhancement statute, a "categorical approach" to classifying crimes to avoid "the practical difficulties and potential unfairness of a factual approach").

For purposes of adjudicating Mr. █████'s motion for release, it is not necessary to resolve these difficult questions concerning the meaning of "new criminal conduct" in Section II.A.3.a, either in general or as applied to this case, because the evidence submitted by ICE does not show that it conducted a Category Determination applying the framework in Sections II.A–B at all before detaining Mr. ████ in January 2026. While counsel for ICE provides an account in their brief that purports to describe, in general terms, an updated Category Review of Mr. ████'s designation at some unspecified point following the early January 2026 protection order and before his detention on January 29, 2026, that account comes entirely from counsel's own after-the-fact representations, not from the evidence that ICE has submitted. For example, the declaration from an ICE official submitted in support of ICE's opposition, and cited by counsel to support their account, describes no such updated Category Review, merely stating instead in cursory terms that ICE was "made aware of an active civil protection order" in some manner, and at some unspecified point in time, and detained him "after" that. Ramirez Decl. ¶¶ 24–25. The description by counsel in their brief of an "updated assessment," Opp'n to Release at 2–3, is entirely unsupported by these vague and cursory statements by ICE itself, which are insufficient to demonstrate that any formal Category Determination was conducted applying the categorization framework in Sections II.A–B. See Agreement § II.C.1.

Moreover, even a more elaborate and detailed after-the-fact declaration from an ICE official would remain insufficient, by itself, to retrospectively establish that a formal Category Determination was conducted applying the categorization framework in Sections II.A–B. The need for formal, contemporaneous documentation of a Category Determination that is adequately detailed to permit meaningful review is implied by both the text and structure of the Settlement Agreement. The Agreement describes and characterizes the process by which Class Members are designated as Category 1 or Category 2 Individuals as a structured, formalized classification process that is specifically required under various circumstances, not as a casual or informal activity. Consistent with those characterizations, the Agreement defines and refers to that process using formalized labels such as "Category Determination," "Category Review," and "Categorization Decision." *See, e.g.*, Agreement §§ I.B.5, II.C, II.E.2–3, IV.B.6.a, V.B.3, V.B.4.a, V.B.5.a.i, V.B.6.b.ii, V.B.7. Crucially, Section II.C of the Agreement expressly provides that "whether ICE has applied the categorization framework" in making those designations is a matter subject to review by the Special Master or District Court—which necessarily implies that the determination must be contemporaneously documented in a manner sufficient to permit meaningful review to

take place.[10] A conclusion about classification that exists only as an implicit or incidental decision—whether in passing before detention or fashioned to justify detention after the fact, and without any contemporaneous record in a form adequate to ensure meaningful review—cannot be treated as a "Category Determination" applying the categorization framework under Sections II.A–B.

In prior proceedings before the Special Master, the absence of any formal, contemporaneous documentation from ICE of a Category Determination has been repeatedly and expressly noted. *See* Order of the Special Master at 3 n.4 (Sept. 26, 2024) (Dkts. 735, 736); Order of the Special Master at 3 n.5 (Mar. 4, 2025) (Dkts. 738, 739); Order of the Special Master at 3 n.3 (Aug. 7, 2025) (Dkts. 742, 743); Order of the Special Master at 3 n.3 (Feb. 9, 2026) (Dkts. 750, 751); Order of the Special Master at 4 n.3 (Feb. 20, 2026) (Dkts. 757, 758); Order of the Special Master at 4 n.6 (Feb. 22, 2026) (Dkts. 759, 760); Order of the Special Master at 4 n.3 (Apr. 3, 2026) (Dkts. 768, 769). In each of those proceedings, the failure to provide sufficient evidence of a Category Determination was ultimately immaterial, since those Class Members did not squarely challenge their categorizations under Section II.C while in most instances reserving the right to do so. By contrast, since Mr. ███ disputes whether ICE applied the categorization framework in Sections II.A–B, the absence of sufficient evidence contemporaneously documenting any Categorization Determination is directly relevant.

The ability of the Special Master or District Court to conduct the review contemplated by Section II.C presupposes an adequate, contemporaneous record of the determination that is subject to that review—precisely in part to guard against the risk of arbitrary or post hoc classifications. Given the lack of contemporaneous documentation providing evidence that a Category Determination applying the categorization framework in Sections II.A–B was conducted, Mr. ███ remains a Category 2 Individual.

### C. *Application of Section IV.B.5 to the Motion for Release*

Having determined that Mr. ███ has remained a Category 2 Individual throughout his current period of detention, the permissibility of his detention must be assessed under Section IV.B.5. Applying that provision's requirements, ICE's initial detention of Mr. ███ appears to have been impermissible, since none of the conditions set forth in Sections IV.B.5.b for detention for purposes of a consular interview appear to have been satisfied in Mr. ███'s case. Regardless,

---

[10] *Cf. SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed . . . ."); *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962).

Mr. ████'s detention is no longer permissible under Section IV.B.5. Although Section IV.B.5.g permits ICE to detain a Category 2 Individual for up to thirty days to effectuate removal "[o]nce ICE has obtained a Travel Document from Iraq," and ICE did obtain a Travel Document from Iraq for Mr. ████ while he has been in detention, ████████████, more than thirty days have now passed since that date. Accordingly, even if Mr. ████'s initial detention as a Category 2 Individual might have been permissible on some basis, his continued detention is no longer permissible under Section IV.B.5.

## II. Continued Detention of Category 1 Individuals Under Section IV.B.4.d.ii

In the alternative, Mr. ████ argues that if he is properly classified as a Category 1 Individual, he should be ordered released because his "total length of post-final order detention" exceeds 180 days, and ICE cannot "clearly demonstrate a high likelihood of imminent removal" under Section IV.B.4.e of the Agreement, much less a significant likelihood of removal in reasonably foreseeable future under Section IV.B.4.d.ii. Mot. for Release at 2–5; Reply Brief at 5–6. In response, ICE argues that the Special Master does not have jurisdiction to decide the motion in Mr. ████'s favor on this basis, arguing that Mr. ████ incorrectly calculates whether he has been "detained more than 90 days" for purposes of invoking the Special Master's jurisdiction on an aggregate or cumulative basis, rather than on the basis of his current period of detention. Opp'n to Release at 3–4. Since Mr. ████'s detention since January 29, 2026 has not yet exceeded 90 days, ICE argues that any claim for release under Section IV.B.4.d.ii or Section IV.B.4.e is not yet ripe for review, and the Special Master therefore does not have jurisdiction to review the motion for release on that particular basis.

It is true that in the context of *Zadvydas*, numerous courts have held that the six-month presumptively reasonable period of detention after a final order of removal must be calculated on an aggregate or cumulative basis, "motivated by a concern that the federal government could otherwise detain aliens indefinitely by continuously releasing and re-detaining them." *Abuelhawa v. Noem*, 811 F.Supp.3d 847, 855–56 (S.D. Tex. 2025) (collecting cases); *see also Phan v. Warden of Otay Mesa Detention Facility*, No. 25-cv-02369, 2025 WL 3141205, at *3–4 (S.D. Cal. Nov. 10, 2025) (collecting cases); *Hamama v. Adducci*, No. 17-cv-11910, 2019 WL 2118784, at *3 (E.D. Mich. May 15, 2019) (Dkt. 555). At the same time, it is not altogether clear that the same conclusion should invariably apply in the context of the specific, detailed temporal frameworks established by the Settlement Agreement.

13

In any event, it is unnecessary to reach the question of whether the cumulative approach taken by these courts in the *Zadvydas* context might apply, to any extent, under the temporal frameworks negotiated by the parties to the Settlement Agreement. Because Mr. ███ is a Category 2 Individual whose detention is governed by Section IV.B.5 of the Agreement, his alternative claims for release under Section IV.B.4.d.ii or Section IV.B.4.e need not be considered.

## CONCLUSION

For the foregoing reasons, the motion for release is granted.

Date: March 10, 2026

/s/Anil Kalhan
ANIL KALHAN
Special Master

14

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served and filed, as required under the terms of the Settlement Agreement (Dkt. 717-2) and Second Amended Stipulated Order Appointing Special Master (Dkt. 737) in *Hamama v. Adducci*, No. 17-cv-11910 (E.D. Mich.), on March 10, 2026.

/s/Anil Kalhan
Special Master

15