IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**USAMA JAMIL HAMAMA**, et al.,

    Petitioners and Plaintiffs,

    v.

**REBECCA ADDUCCI**, et al.,

    Respondents and Defendants.

Case No. 2:17-cv-11910
Hon. Mark A. Goldsmith
Mag. David R. Grand

Class Action

### PETITIONERS' STATEMENT REGARDING COMPLIANCE FAILURES WITH SETTLEMENT AGREEMENT, ECF NO. 717-2, AND REGARDING MOTION TO ENFORCE THE ORDER OF THE SPECIAL MASTER, ECF. NOS. 775, 776

**Introduction**

After a hearing on May 11, 2026, the Court ordered the parties to provide by May 26, 2026 their respective positions on corrective steps to address Respondents' violations of the *Hamama v. Adducci* Settlement Agreement ("Settlement"), ECF No. 717-2. The parties engaged in productive negotiations and, as Petitioners understand, reached agreement on some issues. However, Respondents' counsel needed more time to get answers from their clients, and Petitioners agreed to a request for an extension until June 8, 2026, which the Court granted. Unfortunately, Respondents' counsel have still not been able to get answers from their clients so the extent of the parties' agreement and disagreement remains unclear.

Petitioners are concerned that the ongoing delay in addressing the violations of the Settlement is prejudicing class members, and believe it is important that the Court be apprised of the scope of the violations. Accordingly, the parties have agreed that Petitioners will provide this statement and their proposed order (attached as Exhibit A, "Proposed Order"), and Respondents will ask the Court for leave to file their response by June 22, 2026, with Petitioners having an opportunity to reply by July 1, 2026. The parties also request that the Court set a hearing or status conference promptly after briefing concludes.

**Background**

Put simply, Respondents have failed to comply with the Settlement Agreement.  Respondents have removed *Hamama* class members from the United States without notice to Class Counsel, detained class members without issuing them the required 90-day notices, detained class members beyond the Settlement's detention time limits, and have repeatedly failed to provide Class Counsel timely— if any—notice when they take enforcement actions or issue 90-day notices.  As Class Counsel noted at the status conference this Court held on February 23, 2026 (ECF No. 753) and the motion hearing held on May 11, 2026 (ECF No. 780), the problems with Respondents' Settlement compliance are significant, pervasive, and systemic. It is clear that the internal process and procedures ICE is using to comply with the *Hamama* settlement are not working.

As a brief reminder, the Settlement was structured to:

1. Provide class members, in most instances, with 90 days' notice prior to removal or detention for removal. This provision was designed to allow class members (many of whom still have very old final orders) to file motions to reopen or seek other immigration relief.

2. Limit the length of detention. The permissible length of detention is determined by the class member's classification as a Category 1 or Category 2 class member. The Special Master process is the primary vehicle for class members to seek release if detention becomes prolonged.

3. Ensure that class members are informed of their rights, and ensure that Class Counsel and immigration counsel are promptly informed of all enforcement actions (including 90-day notices and detention) so that they can provide timely guidance to class members about how to seek immigration relief, what their rights are under the Settlement, and how to access the Special Master/judicial process for release.

Respondents' violations of the Settlement mean that none of these goals for the Settlement are being met. While space constraints prevent a full accounting of the violations, Petitioners set out some examples to provide the Court with a sense of how systemic the problems are.

First, and most disturbingly, Respondents have removed at least two *Hamama* class members without Class Counsel ever receiving notice that the class members had been detained or that they were removed until long after their removal.[1] Class Counsel still do not know if those class members were issued 90-day notices, as required under Sections II.E.1 and VII.A.1 of the Settlement. Moreover, despite repeated requests, Class Counsel still do not know if other class members have been removed without the class member receiving a 90-day notice, and without Class Counsel being apprised of the enforcement actions. Removal without a 90-day notice would be a grave violation as it deprives the class member of the opportunities contemplated under the Settlement to seek immigration relief. Enforcement actions without notice to Class Counsel and immigration counsel are highly prejudicial since counsel is then unable to provide guidance about the class member's rights.

Second, Respondents have detained class members without providing notice to Class Counsel, in violation of Sections II.E.1 and VII.A.3 of the Settlement, which requires notice to be provided to Class Counsel "within seven (7) business days" of detaining a class member. The result of this lack of notice is that class members have suffered in prolonged detention without guidance from Class Counsel about their

---

[1] Sections II.E.1 and VII.A.3 of the Settlement require Respondents to notify Class Counsel when class members are detained. Sections II.E.1 and VII.A.6 of the Settlement require Respondents to notify Class Counsel within seven business days of a class member's removal

4

right to seek release under the Settlement.  Petitioners are currently aware of at least ten class members who were detained for prolonged periods without timely notice to Class Counsel, and there may well be more.

| Class Member | Initial Book-In-Date | Date Class Counsel Learned of Detention[2] |
|---|---|---|
| NA, XXX-XXX-233 | 10/31/2024 | 3/3/2025 |
| ARHAR, XXX-XXX-378 | 1/26/2025 | 3/14/2025 |
| QAM, XXX-XXX-423 | 7/17/2025 | 8/4/2025 |
| BJ, XXX-XXX-744 | 11/7/2025 | 4/28/2026 |
| SS, XXX-XXX-342 | 11/26/2025 | 12/11/2025 |
| MAH, XXX-XXX-332 | 12/5/2025 | 5/8/2026 |
| TAL, XXX-XXX-491 | 1/2/2026 | 5/8/2026 |
| HG, XXX-XXX-424 | 2/7/2026 | 5/8/2026 |
| SI, XXX-XXX-550 | 3/27/2026 | 5/8/2026 |
| NAA, XXX-XXX-071 | 2/9/2026 | 5/8/2026 |

Two of these class members had already been in detention for over 180 days by the time Respondents informed Class Counsel that they were detained.  Three other class members had respectively spent 90, 126, and 154 days in ICE custody by the time Class Counsel learned of their detention. Class Counsel also had no way to

---

[2] For all class members but BJ, the date listed is when Respondents notified Class Counsel about the class member's detention. Class Counsel only learned of BJ's detention because he sent a letter concerning his detention.

verify whether these class members were Category 1 or Category 2 class members who, pursuant to Section IV.B.5.g of the Settlement, cannot be detained for longer than 30 days to facilitate removal.[3]

Third, Respondents have detained at least eleven class members without providing them with 90-day notices, in violation of Sections II.E.1 and VII.A.1 of the Settlement. Again, there may well be more. In addition, some class members have received 90-day notices that are not on ICE letterhead, making it challenging for class members, their attorneys, and Class Counsel to verify that the documents are official.

Fourth, Respondents have issued 90-day notices to class members either without providing timely notice to Class Counsel or without alerting Class Counsel at all. Class Counsel are currently aware of at least fourteen class members for whom Class Counsel received untimely notice that a 90-day notice had been issued, for whom Class Counsel received no formal notice at all of the issuance, or who did not receive a 90-day notice but should have been issued one under Section IV.B.1 of the Settlement. As described above, Respondents are using a completely decentralized system to issue notices—field officers at ERO facilities across the country issue the notices. The result is that there is often no prior notice—and often not even notice after issuance—to OPLA or Respondents' counsel. They therefore cannot notify

---

[3] Respondents have since released the three class members described.

Class Counsel. This lack of notice to Class Counsel makes it incredibly challenging for Class Counsel to connect with and advise class members, meaning class members lose precious time during which, with guidance from Class Counsel or their immigration counsel, they could be seeking immigration relief.

Finally, Class Counsel emphasize that the full scope of ICE's compliance failure is unclear. Petitioners have for weeks been trying to determine how widespread the problems are. After receiving a letter on April 28, 2026 from a class member who had been in ICE custody for over 180 days about whose detention Class Counsel had never been notified by Respondents, and out of concern about the scope of compliance issues, Class Counsel requested the following information from Respondents:

1) Pursuant to Section II.E.1 of the Settlement, a list of all *Hamama* class members who are currently in ICE custody, and the date on which each person was detained;

2) Pursuant to Section IV.B.1 of the Settlement, a list of all *Hamama* class members who have received a written notice from ICE that the Class Member has 90 days before ICE will begin finalizing Travel Documents and a travel itinerary, and the date on which each person received the 90-day notice letter from ICE;

3) A list of all *Hamama* class members who have been removed since the settlement went into effect.

It has been over a month since Class Counsel submitted these requests, and Respondents still have not produced all the requested information.[4] The information that Respondents have provided in response to Class Counsel's inquiry, however, reveals alarming failures, as described above.

In sum, Respondents are failing to comply with the Settlement and prejudicing class members, who, without Class Counsel's awareness, are left to languish in detention without a full understanding of their rights or who are being removed without receiving the Settlement's full protections. Each proposal Petitioners have put forth in the Proposed Order is intended to ensure that Respondents are in compliance with the Settlement and to prevent class members from slipping through the cracks.

Petitioners below describe each section of the Proposed Order. Because Respondents have not yet provided Class Counsel with their response to some aspects of the proposal, Petitioners are not completely sure which issues are in

---

[4] Class Counsel is still waiting on a list of all class members who have received a 90-day notice and a list of all class members who have been removed since the Settlement went into effect. Respondents have indicated that they will provide a list no later than June 17, 2026.

dispute, but have tried to identify where Petitioners believe agreement has been reached.

## I. Definitions

It is Petitioners' understanding that the parties agree on the language of this section of the Proposed Order.

## II. Designation of Senior Official Responsible for *Hamama* Compliance

It is Petitioners' understanding that there is a disagreement on Section II of the Proposed Order. In Petitioners' view, to ensure compliance with the Settlement's notification requirements and streamline the reporting structure for ICE employees, Respondents should designate a single, senior official housed in either ICE's Office of the Principal Legal Advisor ("OPLA") or Office of Enforcement and Removal Operations ("ERO") who is responsible for overseeing administration of the *Hamama* settlement. The patchwork approach Respondents are currently using does not work. The current process is completely decentralized: Respondents rely on thousands of untrained employees in twenty-five ICE ERO field offices across the country to comply with the Settlement, including reporting information about the issuance of 90-day notices, the detention of class members, and removal.

While field office staff are currently supposed to report such information to a group of people at OPLA, who then communicate with counsel at DOJ, field office staff are frequently failing to report. Crucially, even if field officers do report

information as required, they only report to OPLA *after* taking enforcement actions or issuing 90-day notices: there is no requirement that field officers confirm that their actions comply with the Settlement *before* issuing a notice or taking an enforcement action.

The absence of a front-end check to ensure Settlement compliance has resulted in Respondents' repeated violations of the Settlement. And the decentralized system leaves room for class members to slip through the cracks and go unreported to Class Counsel, which prevents them from being able to obtain the protections of the Settlement. Designating one official ("the Designee") to oversee *Hamama* compliance and provide prior authorization at each stage of the process, from the issuance of 90-day notices, to approving class member detention and removal, to ensuring that Class Counsel and immigration counsel receive timely notice, would help to address this problem.

### III.   Monitoring and Reporting on Compliance

It is Petitioners' understanding that the parties largely agree on what information Respondents will maintain and report as set out in Section III of the Proposed Order, but disagree on the frequency of reporting and on some items to be reported.

As an initial matter, it is Petitioners' understanding that Respondents have agreed to maintain a spreadsheet that tracks all 90-day notices and enforcement

actions under the Settlement. See Proposed Order, Section III.A.1-2. The spreadsheet will be a powerful tool that helps Respondents both make sure they are in compliance with the Settlement Agreement and stay on top of their reporting obligations. The information Class Counsel seeks to have Respondents share largely tracks with the preexisting reporting requirements in the Settlement. ECF No. 717-2, Section VII.A, PageID.18957-18958 (requiring Respondents to report to Class Counsel when ICE has issued a 90-day notice, taken an enforcement action, detained a class member, etc.).

Class Counsel seek to have Respondents share this spreadsheet on a weekly basis to ensure that Class Counsel are promptly aware of all class members who have been issued 90-day notices or are subject to enforcement actions, and can advise them of their rights. Weekly reporting also allows Class Counsel to quickly spot compliance issues; the lack of such reporting till now has allowed class members to be unlawfully held in prolonged detention or removed without notice, with Class Counsel unable to address the violations because they remained hidden. Respondents are already bound by the Settlement and required to report each 90-day notice issued, each time they detain a class member, and each time they remove a class member. And since they will already be keeping an up-to-date spreadsheet as notices issue and enforcement actions occur, there is no reason that spreadsheet cannot simply be sent once a week to Class Counsel. Moreover, weekly reporting is

not new to this case or to the Government, especially when required due to the Government's reporting failures.  This Court has previously ordered Respondents to produce responsive documents on a weekly basis during discovery when Defendants had repeatedly failed to share documents whose disclosure was required during discovery. *See* ECF No. 304, PageID.7239-7240.

As in discovery when this Court ordered weekly reporting, Respondents have repeatedly failed to produce the information that they are required to share with Class Counsel under Section VII of the Settlement, and weekly reporting is similarly appropriate.   Indeed, in some circumstances, the Settlement already requires Respondents to report information to Class Counsel on a *shorter* timeline than that which Petitioners seek here.   *See* ECF No. 717-2, Section VII.A.3, PageID.18958 (requiring Respondents to report detention pursuant to Sections IV.A.1.a and V.B.6.b.i "within twenty-four (24) hours of the start of such detention, but no longer than seventy-two (72) hours of the start of such detention."). It is Respondents' failure to abide by those reporting obligations that necessitates weekly sharing of the spreadsheet.

The second area of disagreement concerns some of the information Petitioners seek to have Respondents report: when they have requested a travel document, information about efforts to effectuate third country removals, and the timing of unsuccessful removal attempts. All of this information is pertinent to Class

Counsel's ability to advise class members who challenge prolonged detention. If, for example, Respondents unsuccessfully attempt to remove a class member, understanding the timing of that removal attempt and the reason the attempt failed may be integral to a class member's ability to show under Section IV.B.4.d.4 of the Settlement that "the Class Member's removal is significantly likely to occur within the reasonably foreseeable future," or under Section IV.B.4.e that Respondents have not "clearly demonstrate[d] a very high likelihood of imminent removal."

## IV.    Revision to EARM Banner and Education of ICE Staff re Settlement

It is Petitioners' understanding that Respondents agree to update the banner in EARM and provide education to ERO staff about the Settlement.

## V.    Automated Notification of Designee Re Enforcement Actions

To reduce the risk of human error that leads to reporting failures, Class Counsel believes it is important for Respondents to automate notice to the Designee about any action taken as to a *Hamama* class member, be it the issuance of a 90-day notice, detention of a class member, or the class member's removal. As articulated in Section II of the proposed Stipulated Order and described above, the Designee should be required to provide approval to ERO staff prior to any action taken as to a *Hamama* class member. However, if a field officer does not follow the instructions in the EARM banner and does not contact the Designee for the requisite prior approval, automated notice would ensure that the Designee is immediately made

13

aware of the field officer's actions and can follow up with them to ensure compliance with the Settlement.

Respondents have indicated that depending on whether the Designee is housed in OPLA or ERO, it may not be possible to automate notice between different systems used by ERO and OPLA. Petitioners do not understand why it is not possible to devise some type of automated notice to the Designee. For example, it seems like it should be quite feasible to run a list of *Hamama* class members daily to determine which class members are in detention, so as to identify any newly detained class members and ensure they were not detained in violation of the Settlement. Petitioners are flexible on exactly how the automated notice occurs, but believe that some such system is necessary. Relying on ERO staff to remember to report is not working. Developing an automated system would prevent reporting oversights to the Designee, and ensure that notice is promptly provided to Class Counsel about all actions taken as to class members.

## VI.    Remedies in the Event of Future Non-Compliance

Petitioners are unsure if there is a dispute on Section VI of the Proposed Order, but Petitioners' proposition is simple. First, if Respondents learn that they have detained a class member in violation of the Settlement, they must immediately release the class member. There have been numerous instances where class members were wrongly detained (for example, without issuance of a 90-day notice). When

Class Counsel have alerted Respondents, the Respondents have recognized that the wrongfully detained class member must be released. This provision makes that explicit.

Second, if Respondents violate the Settlement by issuing an invalid 90-day notice to a class member, they must reissue the notice to the class member in accordance with the Settlement's requirements and restart the 90-day period for that class member. This addresses the problem created by Respondents' routine failure to notify Class Counsel when they issue 90-day notices.

As described above, the 90-day notice period is a crucial period for class members, and a core component of the Settlement. When Respondents fail to notify Class Counsel that they have issued notices, Class Counsel is deprived of the opportunity to provide important guidance to class members—many of whom have lived in the United States for decades and have families here—about how they might seek immigration relief or file a motion to reopen.

## VII.  Specific Class Member Reporting

It is Petitioners' understanding that Respondents agree to the specific class member reporting set out in Section VII.A.1 of the Proposed Order, but disagree about reporting pursuant to VII.A.2.

With respect to the latter, one of the core purposes of the *Hamama* litigation was to ensure that class members are not repatriated to Iraq if Iraq is not willing to

accept them or if a class member's repatriation would be involuntary. This principle is embedded throughout the Settlement: under Section VII.A.5, Respondents must report to Class Counsel if "Iraq has declined to provide a Travel Document for any Detained Class Member…[or] [i]f Iraq has determined that the Class Member is not an Iraqi." And Section IV.A.3 states that the obligation of certain class members "to make good faith efforts to obtain Travel Documents from Iraq shall end if, for reasons not based on Class Member non-cooperation, ICE receives written confirmation from Iraq that Iraq will not provide Travel Documents for the Class Member and the basis for the refusal, or confirmation that Iraq does not consider the Class member to be Iraqi."

16



In light of the serious questions about the circumstances that precipitated the removal of these class members and the unique history in this case where the Government has misrepresented Iraq's willingness to accept people who are involuntarily repatriated, *see Hamama v. Adducci*, 349 F.Supp.3d 665, 692-93 (E.D. Mich. 2018) (rev'd on other grounds), it is crucial for Class Counsel to understand how ICE is obtaining travel documents whose authenticity is then being questioned by Iraqi officials.

## VIII.  Issues to be Referred to Special Master for Adjudication

It is Petitioners' understanding that the parties agree on the language of the Proposed Order regarding the issues to be referred to the Special Master.

IX.   **Dismissal of ECF Nos. 775, 776, Motion to Enforce the Order of the Special Master as Moot**

It is Petitioners' understanding that the parties agree on the language of the Proposed Order dismissing the motion as moot.

X.   **Next Steps**

It is Petitioners' understanding that the parties agree on the language of the Proposed Order regarding next steps.

**CONCLUSION**

Respondents' systemic failures to comply with the *Hamama* Settlement have deprived class members of the protections to which they are entitled and made it incredibly challenging for Class Counsel to provide class members—who have a great deal to lose—with crucial guidance. It is Petitioners' hope that the Court will adopt their Proposed Order, the implementation of which would facilitate Respondents' compliance with the Settlement.

Respectfully Submitted,

s/Ewurama Appiagyei-Dankah
Ewurama Appiagyei-Dankah (P88212)
Miriam Aukerman (P63165)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930

eadankah@aclumich.org
maukerman@aclumich.org

Bonsitu Kitaba-Gaviglio (P78822)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6800
bkitaba@aclumich.org

Kimberly L. Scott (P69706)
Cooperating Attorney, ACLU
   Fund of Michigan
Miller, Canfield, Paddock, & Stone,
PLC
101 N. Main St., 7th Floor
Ann Arbor, MI 48104
(734) 668-7696
scott@millercanfield.com

*Counsel for Plaintiffs-Petitioners*

19

## CERTIFICATE OF SERVICE

I, Ewurama Appiagyei-Dankah, hereby certify that on June 8, 2026, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF filers of record and will serve an unredacted copy of this motion and exhibits upon counsel for Respondents on June 8, 2026.

Respectfully submitted,

*s/Ewurama Appiagyei-Dankah*
Ewurama Appiagyei-Dankah (P88212)
American Civil Liberties Union Fund
  of Michigan
1514 Wealthy St. SE, Ste. 260
Grand Rapids, MI 49506
(616) 301-0930
eadankah@aclumich.org