IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **USAMA JAMIL HAMAMA**, et al., | |
| Petitioners and Petitioners, | Case No. 2:17-cv-11910 |
| | Hon. Mark A. Goldsmith |
| v. | Mag. David R. Grand |
| **REBECCA ADDUCCI**, et al., | Class Action |
| Respondents and Defendants. | |

**RESPONDENTS' STATEMENT IN RESPONSE TO PETITIONERS'
STATEMENT REGARDING COMPLIANCE FAILURES WITH
AGREEMENT, ECF NO. 717-2, AND REGARDING MOTION TO
ENFORCE THE ORDER OF THE SPECIAL MASTER, ECF. NOS. 775, 776**

The Parties, pursuant to this Court's hearing on May 11, 2026, provide their respective positions on corrective steps to address violations of the *Hamama v. Adducci* Settlement Agreement ("Agreement"), ECF No. 717-2.

**BACKGROUND**

On April 28, 2026, Petitioners, through Class Counsel, notified Respondents of a *Hamama* Class Member who had been in U.S. Immigration and Customs Enforcement ("ICE") custody for over 90 days and for whom Class Counsel had not received notice of his detention.[1] In response, Petitioners requested Respondents

---

[1]   This class member, B.J., had already been released at the time of this notification on April 28, 2026.

1

provide information on how *Hamama* Class Members are flagged in the ICE database(s); the instructions provided to ensure compliance with the Agreement; and an explanation on why Class Counsel was not notified of this class member's detention, and how it would be prevented in the future. Petitioners also requested a list of all *Hamama* Class Members who were in ICE custody, and the date on which each person was detained. Lastly, Petitioners requested a list of all *Hamama* Class Members who have received a 90-day notice letter from ICE and the date on which each person received the notice.[2]

On May 8, 2026, Respondents provided Petitioners with a list of detained class members consisting of eight individuals. The list, seen below, provided the class members' first and last names, A-numbers, the date they were served with 90-day notices, the initial book-in date, and the category designation.

| Name | A-Number | Notice Date | Initial Book-In Date | Category |
|---|---|---|---|---|
| Q.A.M. | AXXXXXX423 | 6/26/2024 | 7/17/2025 (from criminal custody) | 1 |
| M.A.H. | AXXXXXX332 | 6/26/2024 | 12/5/2025 | 1 |
| T.A.L. | AXXXXXX491 | 6/26/2024 | 1/2/2026 | 1 |
| H.G. | AXXXXXX424 | 6/26/2024 | 2/7/2026 | 1 |
| N.A.A. | AXXXXXX071 | 2/9/2026 | 2/9/2026 (from criminal custody) | 1 |
| S.B. | AXXXXXX438 | 3/30/2026 | 3/20/2026 (from criminal custody) | 1 |
| S.I. | AXXXXXX550 | 6/26/2024 | 3/27/2026 (from criminal custody) | 1 |

---

[2] Respondents are in the process of procuring this list by conducting an audit of all *Hamama* Class Members.

After the production of this list Petitioners raised three violations of the Agreement: 1) failure to serve a class member with the required 90-day notice; 2) failure to notify class counsel of enforcement action; and 3) detention of class members for longer than 90 days.

Separately, Respondents reported the removal of two other class members whose detention had not been previously reported.

| Name | A-Number | Initial Book-In Date | Removal | Category |
|------|----------|----------------------|---------|----------|
| S. ▇ . | AXXXXXX194 | 1/22/2026 (from criminal custody) | 05/▇/2026 | 1 |
| N. ▇ . | AXXXXXX778 | 11/25/2025 (from criminal custody) | 05/▇/2026 | 1 |

In response, Petitioners requested a list of all *Hamama* Class Members who have been removed since the Agreement went into effect.[3]

On May 11, 2026, the Parties had a motion hearing on an unrelated Motion to Enforce the Order of the Special Master.[4] During this hearing, Petitioners informed the Court of the alleged violations to the Agreement and requested the Court order the Parties to meet and confer to discuss how to remedy Respondents' compliance failures and submit a proposed stipulated order to the Court. The Parties agreed to a deadline of May 26, 2026, and later agreed to extend the deadline until June 8, 2026.

---

[3] Respondents provided this list on June 17, 2026.
[4] The Parties agree that this Motion, ECF Nos. 775, 776, is moot.

The Parties met and conferred on May 20, 2026, and June 3, 2026, but were unable to reach an agreement. Respondents explained the violations of the Agreement were inadvertent oversights at the individual detention centers and Field Offices, due in part to recent hiring initiatives that have brought new officers into contact with class members who are unfamiliar with the Agreement. Additionally, Respondents explained that changing enforcement priorities have also impacted the number of class members encountering ICE officers. Respondents also provided answers to Petitioners' questions about preventative measures moving forward.

Respondents acknowledge that several class members did not receive the required 90-day notice required by the Agreement, and that there was a lapse in reporting detentions which caused periods of detention not authorized by the Agreement. However, as discussed previously, these failures were the result of inadvertent oversights and were not intentional or willful in nature. Upon becoming aware of the deficiencies, Respondents acted promptly to investigate where there could be breakdowns in communication and identified corrective measures to prevent recurrence. Notably, since notifying Class Counsel of the detentions, all but one of the reported class members has been released.[5]

---

[5]   Class member S.I. remains in custody and has not been detained for more 90 days.

In their statement, Petitioners reference other alleged violations for the first time. Pet'rs' Stmt., ECF No. 786 at 5–6. Specifically, Petitioners allege that "at least ten class members" were detained for prolonged periods without timely notice; that "at least eleven class members" were detained without 90-day notices; and that "at least fourteen class members" received untimely notice, insufficient notice, or no notice. *Id.* Petitioners have not previously identified these groups of class members and the list embedded in Petitioners list is inconsistent with the one provided by Respondents.[6] Respondents are unaware of any violations beyond those that were disclosed on and since May 8, 2026, and these unidentified class members have not been the subject of the Parties' recent discussion, giving Respondents no opportunity to remedy these alleged violations. It is unclear why Petitioners did not raise these issues previously given that prior to May 8, 2026, the Parties successfully resolved issues directly or through the dispute resolution procedures outlined in Section VIII of the Agreement.

While the Parties have engaged in several productive exchanges and ultimately agree on the common objective of preventing any violations of the Agreement, Respondents respectfully submit that the relief sought by Petitioners exceeds what is feasible given Respondents' human and technological resource

---

[6]    Petitioners had not previously raised any issues with class members N.A., A.R.H.A.R., or S.S.

constraints. The scope of the alleged violations, when considered in proportion to the total class size, does not warrant the expansive additional measures Petitioners seek to impose. Further, the relief sought by Petitioners would exceed the terms and conditions previously negotiated and contained in the Agreement.

Respondents respond to each section of Petitioners' Proposed Order *infra*. Any provisions that Respondents do not specifically agree to are noted, explained, and reflected in Respondents' Proposed Order, attached as "Exhibit A".

## I.      Definitions

Respondents agree on the language of this section of Petitioners' Proposed Order and have incorporated into their own.

## II.      Designation of Senior Official to Manage Settlement Compliance

Respondents cannot agree to designate a senior official or specific designee to manage compliance for the Agreement. ICE's Office of the Principal Legal Advisor ("OPLA") has a dedicated team of qualified attorneys who manage compliance for the agency and counsel the Office of Enforcement and Removal Operations ("ERO") regarding the *Hamama* Agreement and Class.

While Petitioners take issue with this "decentralized" system, the current system is better suited to ensure compliance than the concentration of responsibility to one person. As Petitioners acknowledge, the potential for breakdowns in communication has already been identified as occurring further down the line at the

Field Office level where the Agreement's requirements are implemented day-to-day. Designating a single individual to take charge of compliance would do nothing to address that reality. By contrast, the current system ensures multiple people are available to assist Field Offices and ensures there is adequate coverage at OPLA by spreading institutional knowledge among multiple people. Further, Respondents have already committed to providing Field Offices with more information and access to OPLA to remedy any current areas where additional guidance can be provided.

### III.   <u>Monitoring and Reporting on Compliance</u>

Respondents agree to create and maintain a spreadsheet of the 90-day notices served on *Hamama* class members since the effective date of the Agreement, and of certain enforcement actions taken against *Hamama* class members. Respondents agree to provide the spreadsheet on a monthly basis.

Respondents agree to provide the spreadsheet to Petitioners in compliance with the requirement for notice under the existing Agreement and to reduce the possibility of any future violations. However, Respondents reject the request to provide any information beyond what is already agreed upon in the Agreement, including privileged communications with foreign governments. Further as Petitioners acknowledge, the reporting requirements outlined in Section VII.A. of the Agreement are still in effect and the list would serve to merely supplement, but not replace or exceed, those requirements. The spreadsheet is meant to act as a

secondary check to the reporting requirements under the Agreement that would allow Petitioners the ability to reach out to Respondents about case-by-case issues.

## IV.   Revision to EARM Banner and Education of ICE Staff re Agreement

Respondents agree to update and disseminate guidance regarding the *Hamama* Agreement to all ERO personnel every three months via email broadcast. The updated guidance will include template forms of the 90-day notice and 7-day notice to properly educate new ERO personnel and refresh existing personnel of the reporting requirements under the Agreement. Respondents submit that this broadcast guidance satisfies Petitioners' request for training as outlined in Petitioners' Proposed Order Section IV.E.

Respondents also agree to revise the EARM banner to the extent it will now include a link and reference to the updated broadcast guidance. The existing language in the EARM banner, attached as "Exhibit B," is not materially different than the one proposed by Petitioners and does not warrant replacement. The banner, which is recurring in each class member's file and cannot be opted out of, reads: "Hamama Class Member. Please contact OPLA and HQ RIO before taking any enforcement action. Click here for a list of POCs."

## V.   Automated Notice to Designee re Enforcement Actions

Respondents cannot agree to the automation of notices. According to ICE, Petitioners' request presumes a technological capability that does not currently exist

within ICE's systems. ICE has explained that there is no automated mechanism capable of identifying class members, flagging relevant actions, and generating notice without human involvement. Instead, ICE must rely on human capital to analyze each case individually. This process requires trained personnel to review the particular circumstances and seek counsel from OPLA to determine what, if any, notice obligations apply under the Agreement. Imposing an automated-notice requirement would demand resources and infrastructure that ICE reports it does not possess and cannot reasonably be expected to build within the bounds of the Agreement.

## VI.   Remedies in the Event of Future Non-Compliance

Respondents agree to remedy detention violations in accordance with the terms and conditions contained in Section VIII of the Agreement.

Respondents do not agree to any modifications of the Agreement. Respondents do not stipulate to granting the Special Master more authority than already granted in the Court's Amended Stipulated Order Appointing Special Master. ECF No. 730, PageID.19078. The limitations on the Special Master's authority were an important part of the bargained-for settlement, and the circumstances do not warrant changes to that important aspect of the Agreement. The Parties can continue to adhere to the procedures in Section VIII of the Agreement.

Similarly, Respondents do not agree to Petitioners' proposed requirements for the validity of a 90-day notice. The Agreement provides that "ICE will provide written notice to the Class Member that the Class Member has ninety (90) days before ICE will begin finalizing Travel Documents and a travel itinerary for the Class Member's return to Iraq." Agreement § IV.B.1.a., ECF No. 717-2, PageID.18946–47. Accordingly, Respondents provide class members with a written 90-day notice, attached as "Exhibit C," which 1) informs the class member of their membership in the *Hamama* class; 2) informs the class member that that they have 90 days from the date of the letter before ICE will begin finalizing their return to Iraq; and 3) sets a check-in date 90 days from the date of the letter.

The purpose of the notices is to provide class members with the opportunity to get their affairs in order, and to potentially provide arrangements for their own removals, before Respondents take enforcement action that may in some cases include detention. The Agreement does not require Respondents to have travel documents or removal itineraries before sending the notices and, depending on the circumstances of individual class members, the accepting country may change after Respondents issue the notice. The notices Respondents have provided to class members and will continue to provide are valid under the Agreement.

VII.   **Specific Class Member Reporting**

10

Respondents agree to the specific class member reporting set out in Section VII.A.1. of Petitioner' Proposed Order but disagree about reporting requirements outlined in Section VII.A.2, which requests Respondents' communication with the Iraqi government beyond what is required by the Agreement. Specifically, Petitioners seek ████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

Respondents reject this provision as it exceeds not only the scope of the Agreement but also the scope of Respondents' obligations to remedy any recent violations of the Agreement. Notably, Petitioners have not articulated any violation of any provision of the Agreement related to these class members. The sections of the Agreement Petitioners rely on deal with prolonged detention not removal. Additionally, contrary to Petitioners characterization of the Agreement, willingness to repatriate to Iraq is neither a governing principle of the Agreement outlined in Section III or a requirement for compliance.

Under the Agreement, Respondents are required to report when "Iraq has declined to provide a Travel Document for any Detained Class Member" or when "Iraq has determined the Class Member is not an Iraqi." Agreement § VII.A.5., ECF No. 717-2, PageID.18958. The Agreement does not require Respondents to report how Iraq came to its determination, except to the extent that Respondents must

11

provide a copy of the travel document. *See* Agreement § IV.B.4.d.ii.4., ECF No. 717-2, PageID.18949. The Agreement itself contemplates a circumstance in which Iraq initially denies a travel document but later issues one. *See* Agreement § IV.B.5.f., ECF No. 717-2, PageID.18950 ("If Iraq denies the Travel Document, ICE will not detain the individual unless a Travel Document is subsequently issued, or detention is otherwise permitted under this Agreement."). Nothing in the Agreement requires Respondents to produce communications with Iraq.

As Petitioners acknowledge, the Agreement requires class members "to make reasonable good faith attempts to obtain Travel Documents and to assist ICE in obtaining Travel Documents." Agreement § IV.B.2., ECF No. 717-2, PageID.18947–48. The purpose of this provision is to limit a class member's detention while their travel document application is pending and to give class members agency over their own applications. However, the Agreement is clear that after the expiration of the 90-day period set out in Section IV.B.1., ICE may intervene to finalize a travel document and itinerary for the class member's removal. *See* Agreement § IV.B.3., ECF No. 717-2, PageID.18948. In the case of ███████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

12

████████     Thus, because Respondents satisfied their obligations under the Agreement, the proposed provision is both unnecessary and untethered to current issues.

## VIII.  Issues to be Referred to Special Master for Adjudication

The Parties agree that the issues outlined in this section of the Petitioners' Proposed Order require further briefing. However, because Respondents do not agree that the Special Master's adjudication should be final, Respondents propose the issues be handled at the District Court to avoid any delay in the resolution of these issues. Respondents also propose an alternate briefing schedule.

## IX.  Dismissal of ECF Nos. 770, 771, Motion to Enforce the Order of the Special Master as Moot

Respondents agree on the language of this section of Petitioners' Proposed Order dismissing the motion as moot.

## X.  Next Steps

Respondents largely agree on the language of this section of Petitioners' Proposed Order. Respondents propose an alternative delivery date of July 8 for the list of 90-day notices. Since the 90-day notice violations of the Agreement came to light, Respondents began conducting an audit of all class members to identify members who did not receive a 90-day notice and those who are eligible to receive a notice. Respondents will provide Petitioners with a copy of all newly issued notices when the audit is complete.

13

**CONCLUSION**

Contrary to Petitioners' characterizations, Respondents have maintained substantial compliance with the Agreement since it was finalized in 2024. The isolated oversights that have occurred are attributable to the operational realities of managing a nationwide settlement during a period of changing enforcement priorities and large numbers of newly hired ICE officers, unfamiliar with the Agreement, encountering class members. There is no evidence of systemic indifferences to the requirements of Agreement and the benefits it confers to the class members. Upon identification of lapses, Respondents acted swiftly to remedy violations and remain firmly committed to preventing their reoccurrences. Respondents have identified areas in which further guidance is needed and have taken efforts to fix the gaps as outlined in the foregoing and in Respondents' Proposed Order.

Respondents' Proposed Order reflects a good-faith effort to address Petitioners' concerns within the bounds of what is operationally achievable based on technological and human resources. While certain constraints may not be immediately apparent to Petitioners, they are nonetheless real and materially limit the scope of what Respondents can implement at any given time. Respondents' Proposed Order accounts for those realities while advancing the joint and core

14

objective of the Agreement in a manner consistent with the terms and conditions in

the Agreement, which were vigorously negotiated and agreed to by the Parties.

For the foregoing reasons, Respondents respectfully request the Court

implement Respondents' Proposed Order.

Respectfully Submitted,

Date: June 22, 2026

BRETT A. SHUMATE
Assistant Attorney
General Civil Division

ANTHONY P. NICASTRO
Acting Director

WILLIAM C. SILVIS
CARA E. ALSTERBERG
Assistant Directors

ANDREW C. ABRAMS
Trial Attorney

/s/    *Camila    Yori*
CAMILA YORI
Trial Attorney
U.S. Department of
Justice Civil Division
Office of Immigration Litigation
P.O. Box 878. Ben Franklin
Station Washington, DC 20044
Tel: (202) 880-0385
camila.yori2@usdoj.gov

*Counsel for Defendants-Respondents*

15

## CERTIFICATE OF SERVICE

I, Camila Yori, hereby certify that on June 22, 2026, I electronically filed the foregoing documents with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF filers of record and will serve an unredacted copy of this motion and exhibits upon counsel for Petitioners on June 22, 2026.

Respectfully submitted,

*/s/    Camila    Yori*
CAMILA YORI
Trial Attorney
U.S. Department of Justice Civil Division
Office of Immigration Litigation
P.O. Box 878. Ben Franklin Station
Washington, DC 20044
Tel: (202) 880-0385
camila.yori2@usdoj.gov