IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **USAMA JAMIL HAMAMA**, et al., | |
| Petitioners and Plaintiffs, | Case No. 2:17-cv-11910 |
| | Hon. Mark A. Goldsmith |
| v. | Mag. David R. Grand |
| **REBECCA ADDUCCI**, et al., | Class Action |
| Respondents and Defendants. | |

**PETITIONERS' REPLY TO RESPONDENTS' RESPONSE TO
STATEMENT REGARDING COMPLIANCE FAILURES WITH
SETTLEMENT AGREEMENT, ECF NO. 717-2, AND REGARDING
MOTION TO ENFORCE THE ORDER OF THE SPECIAL MASTER, ECF.
NOS. 775, 776**

## I.    Overview of Additional Violations

Since filing their June 8, 2026 statement which set out Defendants' systemic failure to comply with the Settlement,[1] Class Counsel have learned of numerous additional violations. Most alarmingly, Respondents removed two additional class members to Iraq without providing notice to Class Counsel of detention or removal, as required under Sections VII.A.3 and VII.A.6 of the Settlement. In total, Respondents have removed four class members without any notice to Class Counsel prior to their removal, undermining a core principle of the Settlement, which was to enable Class Counsel to advise class members facing removal. Further, yesterday evening, Respondents informed us that they issued 750 notices over the last several weeks. An initial sample and review of these notices indicates that many were issued weeks ago without any notice to Class Counsel, in violation of Section VII.A.1 of the Settlement. This lack of notice to Class Counsel occurred even after Petitioners filed their brief (ECF No. 785) calling out earlier failures to comply with notice provisions.

Moreover, even though on April 28, 2026, Class Counsel requested a full list of the 90-day notices issued since the Settlement took effect, Respondents have yet

---

[1] Contrary to Respondents' allegations, Petitioners have reported to Respondents in real time as they have learned of violations. Petitioners are happy to provide documentation to the Court if needed. Regardless, what is relevant here is Respondents' ongoing and escalating pattern of violations.

1

to produce it over two months later, meaning Class Counsel still do not know the full scope of the 90-day notice violations. It appears that the vast majority of the notices issued are invalid under the Settlement because Respondents failed to report to Class Counsel. But without the complete list of which class members received notice, when the notices were issued, and when they were reported to Petitioners, Class Counsel cannot know which notices are valid and which are not.

The failure of Respondents' current, decentralized approach to compliance is even more vividly demonstrated by the fact that Respondents have issued at least 45 90-day notices to class members who cannot be removed to Iraq because they have been granted relief under the Convention Against Torture ("CAT") or withholding of removal, or who do not even have a final order of removal. These notices, which tell class members to prepare for removal to Iraq, even where an immigration judge has found torture likely, have caused panic in Iraqi communities.

These continued violations—even if inadvertent—reinforce that Respondents' compliance issues are endemic, not episodic. A change in Respondents' process is needed to ensure that class members receive the Settlement protections to which they are entitled. As the Order Approving the Settlement both "incorporate[es] the Settlement Agreement in full," and expressly states that the Court "retains jurisdiction to enforce the terms and conditions of the Settlement Agreement," the

2

Court has authority to remedy these violations. ECF No. 728, PageID.19070; *see*

*202 North Monroe, LLC v. Sower*, 850 F.3d 265, 270 (6th Cir. 2017).

## II.    Key Areas In Dispute

Class Counsel has combined the parties' respective proposed orders (*see* Exhibit A), with Petitioners' proposed language highlighted in green and Respondents' proposed language highlighted in blue. Key disputes are set out below.

### A. Centralized Prior Approval Process For Enforcement Actions

ICE field officers should receive approval from ICE's Office of the Principal Legal Advisor (OPLA) (or another centralized unit) before issuing 90-day notices to, detaining, or removing class members. *See* Proposed Order, Section II (Exh. A). Requiring pre-approval will prove helpful—not just to class members, but also to Respondents, as it will 1) eliminate (or at least reduce) violations of the Settlement, including invalid notices, wrongful detentions, and removals without notice; 2) ensure that field officers receive ongoing guidance about the Settlement; and 3) improve compliance with the Settlement's reporting requirements.

Currently, field officers notify OPLA—if they remember to do so—*after* an action is taken. Instead, ICE field officers should receive approval from OPLA *prior* to issuing 90-day notices or taking other enforcement actions. Respondents argue that centralization and pre-approval are unnecessary because they are now providing field officers with more information. But, in the last three weeks—after Respondents

allegedly started providing more information—the situation has become even more chaotic. Field officers have issued dozens of 90-day notices to class members who cannot be removed to Iraq, or don't even have a final order and thus can't be removed at all. And those notices are not being reported to Class Counsel as required. Respondents have agreed to rescind these invalid notices, but their issuance of notices to class members who cannot be removed to Iraq shows the current process isn't working. The absence of pre-approval causes similar compliance problems for detention and removal because field officers do not know what the Settlement requires.

The predictable result of having untrained officers at 25 field offices take enforcement actions without a centralized pre-approval process is that field officers, who are unfamiliar with the Settlement, will violate it. Pre-approval of notices would ensure that OPLA can screen whether a class member is actually eligible to receive a 90-day notice for removal to Iraq, whether and for how long the class member can be detained, and whether the reporting requirements (which are critical to ensuring class members can obtain legal advice prior to removal) are being met. It is critical that Respondents have a centralized process[2] that requires field officers to get pre-approval before issuing 90-day notices or taking enforcement actions.

Relatedly, given the volume of compliance violations and the fact that—even

---

[2] Respondents argue that having a single Designee is unworkable. Class Counsel have no objection to a centralized process where a group of OPLA attorneys provide prior approval to field officers rather than relying on a single Designee.

with a pre-approval process—some field officers may act in error, Respondents should regularly run queries on class members to identify any compliance problems. *See* Proposed Order, Section V.

**B. Requirements for Valid 90-Day Notice**

The parties disagree about the requirements for a 90-day notice to be valid. *See* Proposed Order, Section VI.B (Ex. A) (setting out three criteria for valid notice). First, in order for a notice to be valid, the notice must be issued on letterhead to a class member who in fact has a final order, dated, and for notices that follow the Proposed Order, approved through the centralized process discussed above.

Second, the notice must have been issued in compliance with Section VII.A.1 of the Settlement, which requires Respondents to notify Class Counsel and immigration counsel within seven business days of issuing a 90-day notice and provide the attorneys with a copy of the notice. The parties crafted this provision to ensure that when Respondents issue a 90-day notice, Class Counsel and immigration counsel can advise class members about whether they can file a Motion to Reopen or seek other immigration relief. Failure to notify counsel about a 90-day notice violates Section VII.A.1 of the Settlement and thwarts the very purpose of the notice provisions. A notice that is not properly reported to Class Counsel is invalid.

Third, as Respondents have recognized by agreeing to rescind notices issued to class members with CAT/withholding, ICE can't use a notice about removal to

5

Iraq for people who cannot be removed to Iraq. But ICE must still comply with the 90-day notice requirement for any third-country removals (*see* Section IV.C of the Settlement), and with other legal requirements related to third-country removals. Any 90-day notice for a class member who has CAT/withholding must tell the class member the country to which ICE seeks to remove them and whether the country has agreed to accept them. Noncitizens "cannot properly raise a fear-based claim regarding a third country before receiving notice of removal to that country," as both withholding/CAT require them to show they fear torture or persecution in the specific country to which the government seeks to remove them. *D.V.D. v. U.S. Dept. of Homeland Sec.*, 821 F. Supp. 3d 102, 131-32; 135 (D. Mass. 2026). Further, should Respondents detain a class member for third country removal, the specific country will impact a class member's prolonged detention claim under Sections IV.B.4.d and IV.B.5.g of the Settlement, as the length of time for a third country removal varies greatly by country. *See* Special Master Order, ECF No. 759, PageID.19885-19889 (describing the lengthy process the government must undergo to effectuate a third country removal and how it varies by country).

Respondents admit that they have issued notices that don't satisfy the three simple criteria above. And Respondents have recognized that notices issued to class members who have CAT/withholding are improper, and have agreed to rescind them. But Respondents refuse to agree that other notices that don't meet these three criteria

6

(e.g. those issued without timely notice to Class Counsel) are likewise invalid. If Respondents wish to take enforcement action as to those class members, they must reissue compliant notices in accordance with Section VII.A.1 of the Settlement and restart the 90-day period. Further, absent clarification of what constitutes valid notice, the Court will likely be faced with many motions contesting detention because the parties will dispute whether the required notice was provided.

### C. Designation of Class Members as Category 1 or Category 2

Respondents claim they shouldn't have to report whether they have designated a class member as Category 1 or 2, as defined in Section II.A and II.B of the Settlement. *See* Proposed Order, Section III.B.1.b-c. But Section II.E.2 of the Settlement already provides that Class Counsel or a class member can ask Respondents to explain a class member's category determination, and Section II.E.3 of the Settlement requires ICE to "promptly inform the individual who initiated [the review process] . . . and Class Counsel of the outcome of the headquarters-level review." Petitioners' proposal at Section III.B.1 of the proposed order merely reiterates this.

### III.   Additional Disputes

The proposed order sets out other areas of disagreement, primarily about the scope of information to be reported pursuant to Section III of the Proposed Order. But all the requested information is rooted in the Settlement. For example, if Respondents do not report failed planned/attempted removals, it will impede Class

Counsel's ability to provide guidance to class members who challenge prolonged detention under Section IV of the Settlement.[3] Additionally, Respondents have already agreed to rescind 90-day notices issued to class members with CAT/withholding or who lack a final order of removal. Petitioners seek to have these notices rescinded as soon as practicable, given the panic among class members who have received them.

## IV.   Issues for Separate Briefing

Petitioners agreed to defer briefing on several issues on the understanding that those would be referred to the Special Master, but Respondents now want the issues briefed before this Court. The Court, given its workload and the time it has already expended on compliance issues, and given the Special Master's familiarity with the Settlement, may want to consider referring those issues to the Special Master, with the option that either party may seek review of that decision.

## CONCLUSION

Petitioners ask that this Court adopt their language for the Proposed Order.

Respectfully submitted,

| | |
|---|---|
| s/Ewurama Appiagyei-Dankah | Kimberly L. Scott (P69706) |
| Ewurama Appiagyei-Dankah (P88212) | Cooperating Attorney, ACLU |
| Miriam Aukerman (P63165) | Fund of Michigan |
| Bonsitu Kitaba-Gaviglio (P78822) | Miller, Canfield, Paddock, & Stone, |

---

[3] Respondents have also already reported to Class Counsel on two occasions when they have unsuccessfully attempted to remove class members.

American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
eadankah@aclumich.org
maukerman@aclumich.org
bkitaba@aclumich.org

PLC
101 N. Main St., 7th Floor
Ann Arbor, MI 48104
(734) 668-7696
scott@millercanfield.com

*Counsel for Plaintiffs-Petitioners*

Dated: July 1, 2026