IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**USAMA JAMIL HAMAMA**, et al.,

    Petitioners and Petitioners,

    v.

**REBECCA ADDUCCI**, et al.,

    Respondents and Defendants.

Case No. 2:17-cv-11910
Hon. Mark A. Goldsmith
Mag. David R. Grand

Class Action

**RESPONDENTS' SUR-REPLY IN RESPONSE TO PETITIONERS' REPLY REGARDING COMPLIANCE FAILURES WITH AGREEMENT, ECF NO. 717-2, AND REGARDING MOTION TO ENFORCE THE ORDER OF THE SPECIAL MASTER, ECF. NOS. 775, 776**

On July 17, 2026, the Court held a status conference on the Parties' statements and proposed orders regarding alleged compliance failures with the *Hamama* Settlement Agreement ("the Agreement"). The Court granted Respondents leave to file a sur-reply before setting this matter for argument. Respondents briefly address the disputes not already addressed in Respondents' response, ECF No. 789, below.

**II**. **Updated Proposed Order**

In their reply, Petitioners attach a document combining the parties' respective orders and highlighting the differences in the parties' proposed language. ECF. No 790-1. Because the combined order does not accurately represent some of the Respondents' proposed language and because several developments have rendered some issues moot, Respondents attach an updated proposed order as "Exhibit A."

1

### A. Centralized Prior Approval Process for Enforcement Actions

Petitioners argue that Respondents must implement a "centralized" pre-approval process requiring field officers to get sign-off from the Office of the Principal Legal Advisor ("OPLA") before detaining, removing, or issuing 90-day notices to class members. ECF No. 790, PageID.20366-67. Petitioners allege that this process would "1) eliminate (or at least reduce) violations of the Settlement, including invalid notices, wrongful detentions, and removals without notice; 2) ensure that field officers receive ongoing guidance about the Settlement; and 3) improve compliance with the Settlement's reporting requirements." *Id.*

However, the existing system is better suited to achieve these three objectives while still accounting for the time-sensitive operational realities of immigration enforcement. ICE relies on a team of at least four OPLA attorneys who perform the very function Petitioners would assign to one individual. While pre-approval is not suitable for every enforcement operation, the field offices nonetheless maintain constant communication with the OPLA team for guidance on enforcement decisions involving class members. This communication has only increased since the start of these proceedings and the recent class member audit. In responding to Petitioners' allegations throughout these proceedings, OPLA has clarified Agreement obligations with the field offices and identified the breakdown in communications that gave rise to the violations at issue.

2

It is also worth stating that Petitioners' proposal unreasonably suggests a fundamental restructuring of existing immigration enforcement operations. ICE maintains that a centralized pre-approval process requiring a single officer or office to review and sign off on every 90-day notice and enforcement action generated across 25 field offices nationwide would be operationally impractical. Petitioners' proposal assumes staffing, training, and case-tracking technology that does not exist and exceeds what the Agreement itself requires. Conversely, the existing system has addressed the cause of noncompliance directly, within the bounds of the Agreement, and without the fundamental restructuring Petitioners proposal would require.

## B. Requirements for Valid 90-day Notice

Defendants dispute the need for the 90-day notice to undergo a pre-approval process. The Agreement requires ICE to provide "written notice to the Class Member that the Class Member has ninety (90) days before ICE will begin finalizing Travel Documents and a travel itinerary for the Class Member's return to Iraq." Agreement § IV.B, ECF 717-2, PageID.18947. Respondents have agreed to rescind any 90-day notices issued to class members who (1) did not have a Final Order of Removal; (2) were granted Withholding of Removal to Iraq; (3) were granted protection from removal to Iraq under the Convention Against Torture (CAT); or (4) whose copy of the prior 90-day Notice was not provided to class counsel. However, the Agreement does not dictate the approval process for the notices.

Additionally, Petitioners mischaracterize the Agreement 90-day notice requirement to give class members time to file a motion to reopen or seek other immigration relief. While the *Hamama* litigation did at one point deal with giving class members the opportunity to reopen their cases, the case settled and the Agreement was constructed to limit the detention of class members. The 90-day notice serves to give class members with final orders of removal notice that they may be removed after the 90-day period and gives them the opportunity to participate in the travel document application to facilitate the process and in turn limit detention. The provisions of the Agreement apply equally to those with Withholding of Removal and protection from removal under the Convention Against Torture. *See* Agreement § IV.C., ECF No. 717-2, PageID.18951. The Agreement does not require anything more than 90-day notice and a limit on prolonged detention for those whom ICE seeks to remove to a third country.

Lastly, Respondents conducted an audit of all class members to identify members who did not receive a 90-day notice and those who are eligible to receive a notice. In the course of issuing new 90-day notices, some class members without final orders of removal and class members with Withholding of Removal to Iraq or protection from removal to Iraq under the Convention Against Torture, were issued 90-day notices in error. As Petitioners concede, Respondents have agreed to rescind these notices. After rescission of the erroneously issued 90-day notices is complete,

4

Respondents, who have reserved their right to reissue new 90-day notices to all class members with final orders of removal, will issue new 90-day notices. This process is being overseen by OPLA attorneys in cooperation with ERO.

**C. Designation of Class Members as Category 1 or Category 2**

Respondents do not agree to the inclusion of Categories in the spreadsheet. The monthly spreadsheet is a cumulative reporting mechanism, designed to operate as a check in conjunction with, and not in the place of, the case-specific reporting requirements of the Agreement. *See* Agreement § VII.A., ECF No. 717-2, PageID.18958. The existing framework of the Agreement accounts for the fluidity of category designations and provides for updated information on a case-by-case basis, with notice when the designation actually matters: when detention occurs.

**IV. Issues for Separate Briefing**

Respondents maintain that the issues identified for separate briefing should be resolved by this Court rather than referred to the Special Master. At a minimum, the Parties can agree that these are significant issues that require resolution, and that they should be addressed promptly because they effect the operation of the remainder of the Agreement. The Parties diverge only on the forum. Respondents proposed separate briefings precisely because these issues are distinct from the compliance errors the proposed order is designed to remedy and prevent.

Respondents are mindful of the Court's workload and of the time it has already devoted to compliance matters. However, the Special Master's authority is bound by Section VIII.D. of the Agreement, and familiarity of the Agreement is not enough to overcome the fact that the issues fall outside that grant. *See* Agreement, ECF No. 717-2, PageID.1859; s*ee also* Second Amended Stipulated Order Appointing Special Master, ECF No. 737, PageID.19140. Moreover, referral of these issues to the Special Master would only lengthen the path to resolution as any recommendation by the Special Master would not be final. Either party could seek review before the district court, returning the same questions to the Court on a delayed schedule.

As stated at the hearing, the matter of the Special Master's compensation cap compounds the delay. The briefing and adjudication of these issues would likely exhaust the cap, and any increase would require a request by the Special Master to increase the cap based on "good cause" followed by agency approval, which would only prolong the adjudication of these issues.

Therefore, Respondents respectfully request that the Court order separate briefing in accordance with the schedule proposed in the updated proposed order.

## V. Issues Rendered Moot

Respondents have provided Petitioners with the requested information outlined below.  These issues are now moot and have been omitted from Respondents' updated proposed order.

6

- On July 8, 2016, Respondents provided a list of all *Hamama* class members who received a 90-day Notice from ICE ERO, and the date on which each person received the 90-day notice, as requested by Petitioners on April 28, 2026.

- On July 21, 2026, Respondents rescinded, and provided copies of, any previously identified 90-day notices that were issued to class members without a final order of removal, or those with CAT or withholding or removal to Iraq.

- Respondents have agreed to rescind any 90-day notice issued to class members who (1) did not have a Final Order of Removal; (2) were granted Withholding of Removal to Iraq; (3) were granted protection from removal to Iraq under the Convention Against Torture (CAT); or (4) whose copy of the prior 90-day Notice was not provided to class counsel. Copies have been provided to Class Counsel on a rolling basis.

Respectfully Submitted,

<table>
<tr><td>

BRETT A. SHUMATE<br>
Assistant Attorney General<br>
Civil Division<br>
<br>
ANTHONY P. NICASTRO<br>
Director<br>
<br>
WILLIAM C. SILVIS<br>
CARA E. ALSTERBERG<br>
Assistant Directors<br>
<br>
ANDREW C. ABRAMS<br>
Trial Attorney

</td><td>

*/s/    Camila    Yori*<br>
CAMILA YORI<br>
Trial Attorney<br>
U.S. Department of<br>
Justice, Civil Division<br>
Office of Immigration Litigation<br>
P.O. Box 878. Ben Franklin<br>
Station Washington, DC 20044<br>
Tel: (202) 880-0385<br>
camila.yori2@usdoj.gov<br>
<br>
*Counsel for Defendants-Respondents*

</td></tr>
</table>