# Exhibit 2

Declaration of Kathryn Haroney

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**USAMA JAMIL HAMAMA, et al.,**

Petitioners and Plaintiffs,

v.

**REBECCA ADDUCCI, et al.,**

Respondents and Defendants.

Case No. 2:17-cv-11910
Hon. Mark A. Goldsmith
Mag. David R. Grand

Class Action

**DECLARATION OF KATHRYN HARONEY**

1. My name is Kathryn Haroney. I am a paralegal at the American Civil Liberties Union (ACLU) of Michigan. I have held this position for five years.

2. My responsibilities as a paralegal include litigation support for the *Hamama v. Adducci* case. Since July 2026, I have been working to catalog, organize, and review documents received from Respondents to help counsel for Petitioners track compliance with the settlement. This includes 90-day notices, rescission notices, reissued 90-day notices, 7-day notices, and other documents.

**The Need for Weekly Consolidated Reporting**

3. Under the Settlement Agreement, in most cases class members cannot be detained during the 90-day notice period. It is therefore critical for us to track

for each class member whether and when a 90-day notice was sent, whether it was valid, whether it was rescinded, whether and when a new 90-day notice was issued, and whether the reissued notice was valid. **This task is extraordinarily difficult because of the volume of notices Respondents have issued and because we do not receive standardized reporting from Respondents, but instead must manually input information about hundreds of notices, rescission letters, reissued notices, and other documents.**

4. In a single day, on June 30, 2026, Respondents sent copies of over 700 individual PDF documents related to 90-day notices that had been previously issued to class members on various dates. Respondents did not include any lists or catalogs with this mass file-share. Respondents have subsequently shared several hundred more documents with counsel for Petitioners. In most cases, Respondents upload documents to a Box site. Other documents are shared by email, or by both email and Box.

5. Many of the 90-day notices were invalid because either (1) the class member did not have a Final Order of Removal; (2) the class member was granted Withholding of Removal to Iraq; (3) the class member was granted protection from removal to Iraq under the Convention Against Torture (CAT); or (4) the

notice was not timely provided to class counsel or immigration counsel as required by the Settlement Agreement.

6. Respondents rescinded many of these 90-day notices. When Respondents rescind a 90-day notice, they issue a rescission notice. Between July 17 and July 21, 2026, Respondents provided copies of more than 400 individual rescission notice documents that had been issued to class members.

7. Respondents have also reissued 90-day notices to many class members for whom the original 90-day notices were invalid. These new notices, if valid, may trigger a new 90-day period, and therefore again must be reviewed and verified to determine if and when the class member can potentially be detained. Respondents have not provided any list or catalog of reissued notices.[1]

8. Between June 30 and October 26, 2026, Respondents have sent counsel for Petitioners approximately 1,444 individual PDF documents related to 90-day notices and rescission notices via Box. This does not include other types of documents or documents sent by email.

9. I have tried as best I can to reconstruct and estimate, based on documents that have been sent to class counsel since June 30, 2026, what documents have

[1] In the July 21, 2026 mass file-share, Respondents did include a list previously provided by Petitioners of approximately 64 class members that have CAT, withholding of removal to Iraq, or no final order of removal to Iraq.

been sent. However, our data is incomplete. Given the sheer volume of documents, the number of duplicates, the errors in the documents, and the possibility of human error entering information, the numbers below are my best estimate and may not correspond to the government's data, which has not been shared with us. I estimate that:

a. Respondents have issued approximately 968 documents related to 90-day notices, which includes documents related to both original notices and reissued notices. Especially because some notices were issued prior to the mass document transfers and because there are duplicates, we do not know the actual number of individual 90-day notices that have been issued or the total number of affected class members.

b. Respondents have rescinded approximately 476 90-day notices because they were invalid.

c. Respondents have reissued approximately 150 90-day notices.

10. As soon as counsel for Petitioners began to receive copies of 90-day and rescission notices en masse, I began to catalog them. Because Respondents had not included a list or spreadsheet of any sort, I had to manually create one by individually logging data from each document into a spreadsheet. This process is very tedious and time-consuming.

11. To track settlement compliance, I must capture the following data from each 90-day notice, rescission notice, and reissued notice:

    a. The class member's name;

    b. The class member's A-number;

    c. The date of the notice;

    d. The date a copy of the notice was sent to class counsel;

    e. Whether a copy of the notice was timely sent to class counsel;

    f. The date a copy of the notice was sent to the class member's immigration attorney (if any);

    g. Whether a copy of the notice was timely sent to the class member's immigration attorney (if any);

    h. Whether the class member has CAT, withholding of removal, or no final order; whether the notice contains language about third country removal; and whether any notices sent to such class members are invalid; and

    i. Any deficiencies or errors contained in the notice.

12. The labor required to track this information is exacerbated by the number of errors in the 90-day notices, which include the following. Where possible, I have included an approximate number of affected notice documents:

a. 90-day notices sent to class members who have CAT or withholding of removal to Iraq but which indicate they may be removed to Iraq, or to class members who do not have final orders of removal (64 at least, but possibly more, as we are still processing documents and have incomplete data);

b. Notices that were not timely sent to class counsel (298);

c. For as many as 625 of the 90-day notice documents, we cannot confirm that a copy was timely sent to the class member's immigration attorney. In many instances, we have received no documents showing that attorneys were served (though in some cases class members may not have immigration attorneys or the attorney may not have filed an appearance). In a smaller number of cases, we did receive a notice that was sent to immigration counsel, but it was untimely;

d. Notices with no date (20);

e. Notices with no A-number (11);

f. Notices not printed on ICE/DHS letterhead (5);

g. Duplicate notices issued to the same class member on different dates with different check-in dates (number unknown as we are still processing duplicates); and

h. Check-in dates that fall on weekend dates or holidays during which ICE offices are likely closed (at least 76).

13. When we identify an error or issue in a 90-day notice that we believe renders the notice invalid, we notify counsel for Respondents in order to request a rescission of the notice.

14. Based on my experience with the documents, I am concerned that Respondents may not be sending us all of the relevant documents. Given the volume of documents being generated by ICE field offices across the country, I believe it is possible that DOJ is not receiving all of the relevant documents or that there are inadvertent errors in providing documents to us.

15. For example, I am aware of five class members for whom we received rescission notices, but for whom class counsel did not receive a copy of the original 90-day notice from Respondents. It is possible there are more class members who have received notices that were not shared with class counsel.

16. Due to the volume of documents and errors in the notices, I have had to learn how to use a new document management system to store and organize these documents. I have also needed to involve additional staff in reviewing and cataloging the documents. In addition to myself, two ACLU interns, two other ACLU legal support staff, four associate attorneys from Miller Canfield, and one Miller Canfield staff attorney have collectively spent hundreds and

hundreds of hours reviewing 90-day and rescission notices, tracking data, and flagging errors in the notices.

17. Because Respondents continue to issue notices with no accompanying lists or spreadsheets, this document review and data entry work is ongoing. We continue to identify errors in notices that we believe render them invalid, and we continue to need to contact Respondents to notify them of the errors and request that they rescind those notices.

18. If Respondents provided a weekly cumulative spreadsheet, that would significantly ease the burden of tracking all this information, allow us to confirm the accuracy of the information, enable us to more easily identify errors, and help ensure that the protections in the settlement are followed. For a significant number of class members, the 90-day period in the original notice or reissued notice has expired or will soon expire. We urgently need to receive spreadsheets from the government that will enable us to confirm whether the expiring notices were valid and whether class members can lawfully be detained.

**Additional Information Needed in the Respondents' Spreadsheet**

19. The attorneys for the Petitioners consulted with me this past summer when they prepared the proposed list of information to be included in the government's spreadsheet. *See* 7/0/1/2026 Proposed Order, ECF 790-1,

Section III.B, PageID.20377-20381.

20. In light of developments since that time, it has become clear that there are two additional pieces of information that should be included. Those additions have been added in green (Petitioners' language) in the updated proposed order being submitted with Petitioners' statement.

21. First, because timely reporting to immigration counsel has been an issue, the government's spreadsheet should include information on the immigration attorney(s) notified and the date notice was sent. *See* Proposed Order, Section III.B.4.c and III.B.5.c.

22. Second, it is important that the government's spreadsheet reports include information about 7-day notices. The government has started issuing these notices in relation to enforcement actions such as detention or removal of a class member. To ensure settlement compliance, it is important to track the data from 7-day notices in addition to 90-day notice data. *See* Proposed Order, Ex. 1, Section III.B.5.

**Additional Violations of the Settlement Agreement**

23. As set out in Petitioners' prior briefing, Respondents have repeatedly violated the Settlement Agreement, including by removing class members without notice to Class Counsel of their detention or removal, and by holding class members unlawfully in prolonged detention without ever issuing a 90-day

notice or notifying Class Counsel. *See* ECF Nos. 786, 790.

24. In addition to those previously briefed violations, there have been systemic failures in the issuance of 90-day notices, and in providing timely reports of those notices to Class Counsel and immigration counsel, as set out above.

25. We are also aware of two additional cases where a class member was detained in apparent violation of the Settlement Agreement: (a) ST, A-078-XXX-XXX, and (b) SS, A-098-XXX-XXX. One of the class members was detained despite our records showing no 90-day notice had been issued; the other was detained eight days after the issuance of his 90-day notice, far before the expiration of the required 90-day period. Moreover, the government did not and has yet to provide any categorization determination for either wrongfully detained class member. The government has not responded to our request to explain on what basis these class members were detained.

26. Finally, we do not know what we do not know. For example, if a class member is detained but Respondents do not inform us, we may never find out that the class member is detained, meaning the Petitioners' attorneys cannot assess whether their detention is lawful or provide them with information about their rights.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed: October 27, 2026

KHaroney

Kathryn Haroney