IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **USAMA JAMIL HAMAMA, et al.,** | |
| Petitioners and Plaintiffs, | Case No. 2:17-cv-11910<br>Hon. Mark A. Goldsmith<br>Mag. David R. Grand |
| v. | |
| **REBECCA ADDUCCI, et al.,** | Class Action |
| Respondents and Defendants. | |

**PETITIONERS' RESPONSE TO RESPONDENTS' SUPPLEMENTAL STATEMENT (ECF NO. 802) REGARDING THE PARTIES' UPDATED MERGED PROPOSED ORDER (ECF NO. 801-1)**

## Introduction

The parties have successfully narrowed the issues in dispute not only since Petitioners first raised Respondents' noncompliance with the Settlement Agreement (*see* ECF No. 786, 786-2), but since the most recent hearing on October 28, 2026. Petitioners have withdrawn their requests for certain information, agreed that briefing on some disputes can be deferred, and modified numerous provisions of the Proposed Order to accommodate Respondents' concerns. Respondents, after hearing from the Court at the October 28 hearing, have now agreed to provide certain information, run compliance checks, and set out what constitutes valid notice. *See* Proposed Order, ECF No. 801-1.

Unfortunately, the core dispute remains: should the Court—given the undisputed fact that Respondents have repeatedly violated and continue to violate the Settlement Agreement—enter an order designed to prevent such violations from occurring, or should the Court instead accept a system that merely increases the likelihood that violations will be identified so that they can be remedied after the violation occurs? The answer is clear. Respondents must comply with the Settlement Agreement. The answer is not to violate the Settlement and then attempt to correct the violations—if correction is even possible.

**Centralized Accountability and Pre-Approval**

Respondents have two primary objections to Section II of the Proposed Order, ECF No. 801-1. First, Respondents object to the idea that there be a centralized Designee or Designees with responsibility for Settlement compliance. They argue that enforcement decisions are made in the field and that the current team within the District Court Litigation Division at the Office of the Principal Legal Advisor (OPLA) is best suited to provide guidance. But Petitioners' proposed language situates the Designee(s) within OPLA and allows for more than one Designee to be named. Respondents' objection therefore seems to be to the idea that *someone* be named *responsible* for ensuring compliance. Petitioners' proposal in no way restructures the agency. It simply acknowledges that responsibility for complying

with a complex Settlement Agreement cannot be diffused among hundreds of ICE officers around the country. The buck has to stop somewhere.

Second, and more fundamentally, Respondents object to centralized pre-approval of enforcement actions or issuance of 90-day notices. Yet Respondents' current instructions to the field are: "Please contact OPLA and HQ RIO [Removal and International Operations] before taking any enforcement action." ECF No. 789-3. Essentially, Respondents' argument is that ICE agents should be *encouraged* to seek information about the Settlement from people who understand it, but there should be no *requirement* that a person who understands the Settlement approve enforcement actions. That approach is exactly what is happening now, and it is exactly why Respondents are constantly violating the Settlement.

Indeed, just today Petitioners identified what appears to be yet another instance of Respondents detaining a class member without complying with the Settlement's notice requirements. It appears that the class member is slated for imminent removal, which Petitioners believe would be an even more serious violation of the Settlement. Petitioners have contacted the government to confirm the facts and to seek the class member's immediate release, absent some new information showing the detention is permissible, but have not yet heard back.

Petitioners don't dispute that if agents in the field currently contact OPLA prior to taking action, OPLA provides advice about the requirements of the

Settlement (e.g., agents should not issue 90-day notices to people who do not have final orders; should not remove someone unless such a notice was issued and 90 days have passed; should not detain a Category 2 class member unless travel documents are in hand, etc.). But unless officers affirmatively reach out to OPLA (which is not currently a requirement), they won't have that information. That is precisely the problem.

Respondents' solution to their history of non-compliance is to improve detection of Settlement violations by running queries to see if officers in the field have illegally detained or removed a class member. *See* Proposed Order, ECF No. 801-1, Section V. That is an important safeguard to ensure violations are identified and corrected. But it does nothing to prevent them from happening in the first place.

And even if violations are identified, some violations are impossible to remedy. At least four class members have been removed in violation of the Settlement. ECF No. 790, PageID.20364. At least twelve class members have been unlawfully detained, some for as long as 180 days. ECF No. 786, p. 5; ECF No. 800-3, PageID.20466. Not only will they never get back the time they spent behind bars, but they may well have suffered irremediable emotional, physical and financial harm. Respondents did rescind almost 500 invalid 90-day notices, but only after they caused mass confusion and after Petitioners undertook a laborious process—which

is ongoing—to identify and flag class members who do not have final orders or who have protection from removal to Iraq.

In sum, while Petitioners are glad that Respondents now agree to run queries to detect violations, a "violate and then fix it" approach is no substitute for a system designed to prevent violations from happening in the first place.

**Other Issues in Dispute**

The Court has already received briefing and heard argument on the other remaining issues in dispute. Petitioners therefore note only that among those other issues, the most important are: (1) the frequency with which Respondents provide the spreadsheet and the requirement that the spreadsheet be cumulative from when the Settlement Agreement went into effect, *see* Proposed Order, ECF No. 801-1, Sections III.A, III.C; (2) the inclusion of information about category designations and attorney information in the spreadsheet, *id.*, Section III.B.1(c), (d); and (3) rescission of non-compliant notices, *id.*, Section VI.E.

Respectfully Submitted,

s/Miriam Aukerman
Miriam Aukerman (P63165)
American Civil Liberties Union
Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

Nara Gonczigsuren Orantes (P85778)
Ramis J. Wadood (P85791)
Bonsitu Kitaba-Gaviglio (P78822)
American Civil Liberties Union
Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6800
gonczinj@aclumich.org
rwadood@aclumich.org
bkitaba@aclumich.org

Kimberly L. Scott (P69706)
Cooperating Attorney, ACLU
Fund of Michigan
Miller, Canfield, Paddock, & Stone, PLC
101 N. Main St., 7th Floor
Ann Arbor, MI 48104
(734) 668-7696
scott@millercanfield.com

*Counsel for Plaintiffs-Petitioners*

Dated: November 9, 2026